# THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# GAINSVILLE DIVISION

| | |
|---|---|
| Santana Bryson and Joshua Bryson, as Administrators of the Estate of C.Z.B., and as surviving parents of C.Z.B., a deceased minor,<br><br>    Plaintiffs,<br><br>v.<br><br>Rough Country, LLC<br><br>    Defendant. | Case No. 2:22-CV-017-RWS<br><br>**JURY TRIAL DEMANDED** |

## PLAINTIFFS' COMPLAINT FOR DAMAGES

Plaintiffs Santana Bryson and Joshua Bryson as Administrators of the Estate of C.Z.B.,[1] and as surviving parents of C.Z.B., a deceased minor, file this Complaint for damages and show this Honorable Court the following:

## PREAMBLE

On the night of Sunday, March 15, 2020, Santana Bryson (driving, belted) and Joshua Bryson (front passenger, belted) were traveling westbound on Ga-

---

[1] As of the date of filing this Complaint, Santana and Joshua Bryson are in the process of obtaining Letters of Administration from the Probate Court of Polk County. The undersigned anticipates no problems and knows of no reason that they will not become the Administrator, as the family has agreed. If Plaintiffs are *not* appointed as Administrators for any reason, Plaintiffs will immediately seek leave to substitute in the appointed Administrator.

2/US-76 in Fannin County, with their two-year-old son C.Z.B., who was restrained in a forward-facing child seat behind Ms. Bryson. The Brysons were on their way home from a birthday party for an elderly family member. At roughly 11:15 pm, while sitting at a stoplight at a complete stop, their 2008 Ford Escape was rear-ended by Hunter Elliott in his 2016 Ford F250.

A Rough Country lift raised Elliot's Ford F250 approximately six inches above the factory recommendation. As a result, when the F250 hit the back of the Brysons' vehicle, the frame rails of the F250 bypassed the structural frame and crash protection of the Bryson's Ford Escape causing excessive intrusion into the occupant compartment where C.Z.B. was buckled into his car seat.

The impact barely damaged the lifted Ford F250.



But the damage to the Bryson's vehicle, and particularly to the second row where C.Z.B. sat, was devastating.



Even though the Brysons had properly secured C.Z.B. in a child seat, he was killed in the collision. Joshua and Santana both survived the collision.

Georgia's Specialized Collision Reconstruction Team ("SCRT") investigated the collision and concluded Mr. Elliott was at fault. Elliott pleaded guilty to a long list of criminal charges and is serving a prison sentence for his actions. Although Mr. Elliott caused the collision, Rough Country caused C.Z.B.'s death because it designed, assembled, and manufactured a suspension lift that caused the F250 to strike the Brysons' Ford Escape above the frame rails and thus to bypass the Escape's crash protection capacity. The resulting intrusion into the occupant compartment caused C.Z.B.'s death.

3

## I.  PARTIES, JURISDICTION, AND VENUE

1. Plaintiffs Santana Kelley Bryson and Joshua Bryson are citizens and residents of the State of Georgia.

2. Plaintiffs are the surviving parents of C.Z.B., a deceased minor, who was fatally injured in the March 15, 2020 collision. At the time of his death, C.Z.B. resided with his parents and was a citizen of the State of Georgia.

3. Plaintiffs are the proper parties to bring this action pursuant to O.C.G.A. §§ 51-4-4 and 19-7-1.

4. Defendant Rough Country, LLC is a foreign corporation organized and incorporated under the laws of the State of Delaware with its principal place of business located at 2450 Huish Road, Dyersburg, Tennessee 38024-1725.

5. Rough Country may be served with process by serving its registered agent: Cogency Global Inc., 992 Davidson Drive, Ste. B, Nashville, Tennessee 37205-1051.

6. This Court has diversity subject matter jurisdiction under 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, and there is complete diversity of citizenship between Plaintiffs and Defendant.

7. This Court has personal jurisdiction over Rough Country.

8. Rough Country is engaged in the business of designing, manufacturing, inspecting, marketing, promoting, advertising, distributing, and selling automobile lift kits in the State of Georgia and throughout the United States.

9. Rough Country regularly markets and sells automobile lifts and other types of equipment in the State of Georgia. Rough Country sold the lift that killed C.Z.B. in Georgia, as well as thousands more like it. Plaintiffs' damages, which occurred in Georgia, arise out of and relate to the contacts with Georgia that Rough Country created, including sales directly to customers in the State of Georgia and the placement of its goods into the stream of commerce bound for Georgia.

10. Rough Country's website lists dozens of distributors in the State of Georgia, to which it sells and ships its products.

11. Venue is proper under 28 U.S.C. § 1391(b)(2) because this lawsuit arises out of a collision that occurred in Fannin County, which falls within the Gainesville Division of the Northern District of Georgia.

## II.  OPERATIVE FACTS

*The Bryson's Collision*

12. On the night of Sunday, March 15, 2020, Santana Bryson was wearing her seatbelt properly and driving a 2008 Ford Escape.

13. Ms. Bryson was pregnant.

14. Joshua Bryson was properly belted in the front passenger seat.

15. C.Z.B. was in the second row, behind his mother.

16. C.Z.B. was two years old on March 15, 2020.

17. C.Z.B. was properly restrained in a child seat.

18. The Brysons were traveling westbound on Ga-2/US-76 in Fannin County.

19. At roughly 11:15 pm, while sitting at a stoplight at a complete stop, their 2008 Ford Escape was rear-ended by Hunter Elliott's pickup truck.

20. Mr. Elliott's pickup truck was a 2016 Ford F250 Super Duty Crew Cab, a passenger vehicle with a vehicle identification number of 1FT7W2BT9GEC79140.

21. The impact barely damaged the Ford F250.

22. Mr. Elliott's pickup truck was equipped with a Rough Country suspension lift that raised the frame rails and chassis of the F250 by approximately 6 inches.

23. As a result, when the lifted F250 collided into the rear of the Bryson's vehicle, the frame rails of the lifted F250 passed over the structural frame and crash protections of Brysons' Ford Escape.

24. The Rough Country suspension lift on Mr. Elliott's pickup truck caused the pickup truck to enter the occupant compartment of the Ford Escape.

25. The crush damage intruded so far into the occupant compartment that it forced the second row seat, where C.Z.B. sat, forward.

26. C.Z.B. was aware in the moments before his death, as the Ford F250 came crashing into what had been the safe space of the backseat. During that time, he experienced shock, fear, and terror.

27. As a result of the intrusion, C.Z.B. suffered blunt force trauma to his head and neck and endured an atlanto-occipital disarticulation, a fatal injury.

28. Santana Kelley Bryson and Joshua Bryson, who were in the seats farthest from the intrusion, survived with minimal injuries.

29. Santana Kelley Bryson was 24 weeks pregnant with C.M.B. at the time of the collision. Although C.M.B. was in the same collision as C.Z.B. and was born prematurely, he also survived.

30. The Bryson family did absolutely nothing to cause the March 15, 2020 collision or C.Z.B.'s death.

*Dangers Known to Rough Country, LLC*

31. Rear-end collisions are the most common type of crash and are foreseeable to manufacturers of auto components, including Rough Country.

32. Other people injured in car wrecks have brought claims against Rough Country alleging its products caused severe and dangerous occupant intrusion in foreseeable collisions.

33. Rough Country knew or should have known that Ford explicitly warned against altering the suspension of the F250.

34. Rough Country knew or should have known that lifting the suspension of the F250 was dangerous.

35. Rough Country had actual knowledge that vehicles lifted with Rough Country products are dangerous to occupants of other vehicles on the road.

36. Rough Country knew that a pickup truck equipped with the lift kit on Mr. Elliott's F250 would be dangerous to occupants of other vehicles involved in a foreseeable collision with the F250.

37. Rough Country knew from real-world wrecks and basic principles of physics that bypassing the frame rails and crash protection of other vehicles in crashes can cause catastrophic injuries and deaths.

38. Despite Rough Country's knowledge of the dangers of lifting the F250, its website recommends eight suspension lift kits—ranging from 1.5 to 6 inches—as appropriate for use with the 2016 F250 Super Duty 4x4 pickup truck.

*The Rough Country Suspension Lift*

39. The lift kit on Mr. Elliott's F250 was designed, developed, manufactured, assembled, marketed, distributed, and sold by Rough Country.

40. At the time of the collision, the lift kit was in substantially the same condition as it was when Rough Country sold it.

41. At the time of the collision, the lift kit was being used for the purpose and in the manner for which it was designed, assembled, manufactured, and sold.

42. The Rough Country lift kit on Mr. Elliott's F250 was defective and unreasonably dangerous when being used in a foreseeable manner.

43. As a direct and proximate result of the wrongful conduct of Rough Country, C.Z.B. suffered fatal injuries.

44. Rough Country suspension lifts are defective because they raise the suspension on passenger vehicles, including pickup trucks, above their factory recommendations.

45. Rough Country suspension lifts are defective because they raise the suspension on passenger vehicles, including pickup trucks, to a degree that violates Georgia law.

46. Rough Country suspension lifts are defective because they raise the suspension on passenger vehicles, including pickup trucks, in a manner that

causes vehicles equipped with the product to bypass the crash protection in other vehicles on the road.

47. Specifically, the Rough Country suspension lift on Mr. Elliott's F250 was defective because the lift not only raised the F250 above its factory recommendations, but also raised the F250 so much that it would bypass the crash protection in other vehicles on the road, including the Bryson's 2008 Ford Escape.

48. Rough Country negligently designed, assembled, manufactured, marketed, distributed, sold, and placed into the stream of commerce the defective suspension lift and lift kit. Rough Country is liable for all injuries caused by defects in its suspension lifts and lift kits.

49. Rough Country negligently designed, assembled, manufactured, marketed, distributed, sold, and placed into the stream of commerce the defective lifts and lift kits. Rough County is liable for all injuries caused by its defective products.

50. The Rough Country lift and lift kit were defective, unreasonably dangerous, and not fit for their ordinary use when manufactured and at the time of the subject wreck because Rough Country chose a design that was unreasonably dangerous and the risks of its design outweighed the utility of the design. In

addition, other alternative designs that were safer, feasible, and technologically available were not chosen and used by Rough Country.

51. Rough Country and the defective product for which it is responsible proximately caused the injury and death of C.Z.B.

### III. LIABILITY OF DEFENDANT

### COUNT ONE

### (Strict Liability)

52. Plaintiffs incorporate by reference paragraphs 1-51 of this Complaint.

53. Rough Country owed a duty to the motoring public not to design, assemble, manufacture, or sell products that are defective.

54. Rough Country is strictly liable under O.C.G.A. § 51-1-11 and other applicable law for the injuries and death suffered by Plaintiffs and C.Z.B. because the risks inherent in the design of the suspension lift outweighed the utility of the chosen design, thereby rendering the product unreasonably dangerous and not reasonably suited to the use for which it was intended.

55. Any benefits of the lift used on Mr. Elliott's Ford F250 did not outweigh the value of C.Z.B.'s life.

56. Any benefits of the lift used on Mr. Elliott's Ford F250 do not outweigh the danger to the general motoring public, who could be seriously injured or killed in a collision because of a Rough Country lift.

57. Rough Country did not adequately test the suspension lift to determine whether foreseeable occupants would be exposed to unreasonable risks of physical harm in foreseeable rear-end collisions because of the lift's design.

58. Rough Country knew, or should have known, the design would cause extreme danger to occupants of other vehicles that were involved in foreseeable collisions with a vehicle equipped with a Rough Country lift.

59. Rough Country knew, or should have known, the risk that people would be killed in a collision as a result of the suspension kit did not outweigh the benefits of the suspension kit.

60. Rough Country knew from real-world wrecks and basic principles of physics that bypassing the frame rails and crash protection of other vehicles in crashes can cause catastrophic injuries and deaths.

61. Rough Country did not warn anyone of the dangers that its lifts pose to occupants of other vehicles.

62. If Rough Country warned potential customers that its lifts could cause the death of a child in what was otherwise a non-fatal collision, people would choose not to buy it.

63. The defects described above proximately caused Plaintiffs' damages.

## COUNT TWO

### (Rough Country's Negligence)

64. Plaintiffs incorporate by reference paragraphs 1-51 of this Complaint.

65. Rough Country, as a product designer and manufacturer, owed a duty to the consuming public in general, and Plaintiffs in particular, to exercise reasonable care to design, assemble, test, manufacture, inspect, market, and distribute a product so as to make it free of unreasonable risk of harm to owners, users, and occupants in foreseeable situations.

66. At the time Rough Country designed, assembled, manufactured, inspected, marketed, distributed, and sold the Rough County lift, Rough Country could have reasonably foreseen and did foresee the occurrence of collisions such as the one described in this Complaint.

67. Rough Country breached its duty of reasonable care as described in the preceding paragraphs.

68. Rough Country's negligence proximately caused Plaintiffs' injuries and damages described herein, including C.Z.B.'s death.

## COUNT THREE

### (Punitive Damages Against Rough Country)

69. Plaintiffs incorporate by reference paragraphs 1-51 of this Complaint.

70. Rough Country acted with conscious indifference to the safety and well-being of the consuming public as defined under O.C.G.A. § 51-12-5.1 in designing, assembling, manufacturing, inspecting, marketing, distributing, and selling the Rough Country lift kit because Rough Country had actual knowledge of the safety risks described above.

71. Defendant Rough Country's misconduct was so egregious that it rises to the level of conscious indifference to the safety and well-being of the consuming public. That misconduct warrants the imposition of punitive damages against Rough Country.

72. Punitive damages should be imposed against Rough Country.

## IV. DAMAGES SOUGHT

73. Plaintiffs incorporate by reference paragraphs 1-51 of this Complaint.

74. The damages claimed by Plaintiffs were proximately caused by the tortious acts and omissions of Rough Country, for which Rough Country is liable.

75. Plaintiffs seek to recover the following damages:

   (a) shock, freight, and terror and all other components of the mental, emotional, and physical pain and suffering C.Z.B. endured during the collision, up until his death;

   (b) compensatory damages for all economic damages, including medical bills, medical expenses, and funeral expenses;

   (c) Plaintiffs as Surviving Parents of Decedent C.Z.B., claims general damages against Rough Country, for the full value of the life of C.Z.B., both economic and intangible, pursuant to O.C.G.A. §§ 51-4-2 and other applicable law.

   (d) Plaintiffs, as Administrators for the Estate of C.Z.B., claim general damages against Rough Country, pursuant to O.C.G.A. § 51-4-5 and other applicable law, for all elements of the pain and suffering, physical and mental, including post-impact shock, fright and terror, endured by C.Z.B. from the beginning of the collision until the time of his death, in an amount determined by the enlightened conscience of the jury after hearing the evidence at trial.

   (e) Plaintiffs also claim special damages for all medical expenses and funeral expenses incurred on behalf of the estate in an amount which

reflects the reasonable value of those services as established by the evidence at trial.

(f) Plaintiffs claim punitive damages against Defendant in an amount determined by the enlightened conscience of the jury to be sufficient to punish, penalize, and deter Rough Country in light of the aggravated nature of its conduct and in light of its financial circumstances.

(g) Plaintiffs seek damages from Rough Country to recover all elements of compensatory and punitive damages allowed by law for the claims alleged in this Complaint.

## V. PRAYER FOR RELIEF

WHEREFORE Plaintiffs pray for the following relief:

(a) That summonses issue requiring Defendant to appear as provided by law to answer this Complaint;

(b) That service be had upon Defendant as provided by law;

(c) That Plaintiffs have and recover all damages for all losses compensable under Georgia law;

(d) That punitive damages be imposed against Defendant;

(e)  That all expenses of litigation, including attorneys' fees, be cast against Defendant; and

(f)  For such other and further relief to which Plaintiffs may be entitled at law or equity, as the Court shall deem just and appropriate.

**PLAINTIFFS DEMAND A JURY TRIAL**.

Respectfully submitted this 1st day of February, 2022.

        CANNELLA SNYDER LLC

        *s/ Tedra L. Cannella*
        TEDRA L. CANNELLA
          Georgia Bar No. 881085
          tedra@cannellasnyder.com
        ROBERT H. SNYDER, JR.
          Georgia Bar No. 404522
          rob@cannellasnyder.com
        RORY A. WEEKS
          Georgia Bar No. 113491
          rory@cannellasnyder.com

        315 W Ponce de Leon Ave
        Suite 885
        Decatur, GA 30030
        P.O. Box 1399
        Decatur, GA 30031
        (404)800-4828
        (404)393-0365 (fax)

        **ATTORNEYS FOR PLAINTIFFS**