# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## GAINESVILLE DIVISION

| | |
|---|---|
| Santana Bryson and Joshua Bryson, as Administrators of the Estate of C.Z.B. and as surviving parents of C.Z.B., a deceased minor,<br><br>Plaintiffs,<br><br>v.<br><br>Rough Country, LLC,<br><br>Defendant. | Case No. 2:22-CV-017-RWS<br><br>JURY TRIAL DEMANDED |

## DEFENDANT ROUGH COUNTRY, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Defendant Rough Country, LLC ("Rough Country") has moved for summary judgment, pursuant to Fed. R. Civ. P. 56, on the grounds that there is no genuine issue of material facts as to certain claims asserted by Plaintiffs Santana Bryson and Joshua Bryson, as Administrators of the Estate of C.Z.B. and as surviving parents of C.Z.B., a deceased minor ("Plaintiffs"). As explained below, Rough Country is entitled to summary judgment as to Plaintiff's claims for: (1) failure to warn; (2) negligence per se; (3) conscious pain and suffering, and (4) punitive damages. Further, to the extent that the Court finds that there was an intervening act, Rough Country would be entitled to summary judgment as to the remainder of Plaintiffs' claims because there would be a lack of causation of any claimed injury.

## I.    <u>Introduction and Summary</u>

This case is about a tragic story: the death of a two-year old boy, C.Z.B.,
because Hunter Elliott drove drunk and sped at 51 miles per hour into the rear of
C.Z.B's parents' car while it idled at a stop light. While Plaintiffs acknowledge
Hunter Elliott's gross negligence was the cause of the accident, Plaintiff's First
Amended Complaint seeks damages against Rough Country for C.Z.B.'s death based
solely on the fact that a Rough Country lift kit was installed on Mr. Elliott's Ford F-
250 Super Duty truck. For the following reasons, Rough Country is entitled to partial
summary judgment as to Plaintiff's claims for: (1) failure to warn; (2) negligence
per se; (3) conscious pain and suffering; and (4) punitive damages.

## II.    <u>Statement of Undisputed Facts</u>

### A.    **About Rough Country and Suspension Lift Kits**

Automobile lift kits are intended to raise the suspension or body of a motor
vehicle to provide greater utility and, in some cases, for aesthetics. [Rough Country's
First Supplemental Response to Plaintiffs' First Interrogatories (the "<u>RC
Interrogatory Responses</u>," attached hereto as Exhibit 1), ¶ 6.] Lift kits are a product
that has been on the market for over 40 years. (RC Interrogatory Responses, ¶ 6.)

Rough Country is engaged in the business of designing, manufacturing,
inspecting, marketing, promoting, advertising, distributing, and selling automobile
lift kits. [Rough Country's Answer and Defenses to Plaintiffs' First Amended

Complaint for Damages (the "Answer") (Doc. 40), ¶ 8.] Rough Country does not install lift kits on automobiles.

Rough Country has been placing its products in commerce for over 30 years. [Redacted, Nonconfidential Portion of 30(b)(6) Deposition of Rough Country taken on August 4, 2023 ("RC Depo.," from which the specific pages referenced herein are Exhibit 2), at 10:22-23.[1]] Rough Country makes products for more than 80 different applications. (*Id.*, at 44:14-15.) Rough Country sells lift kits to all 50 states. [Rough Country's Responses and Objections to Plaintiffs' Second Requests to Admit ("RC Admissions," attached hereto as Exhibit 3), ¶ 3.] Rough Country's lift kits go through extensive design to ensure that they maintain the original equipment's (OE) performance. (RC Depo., at 32:11-18.)

There is not a uniform bumper height for all vehicles. [Plaintiff's Responses to Rough Country's First Request for Admissions served on April 21, 2023 ("Plaintiffs' Admissions," attached hereto as Exhibit 4), ¶ 36.] For example, the various trim levels of Ford F-250 trucks have different front bumper heights. (*Id.*, ¶ 8.) Further, there is an infinite number of vehicles that Rough Country's products could be involved with. (RC Depo., at 50:4-6.) As a result, it is not feasible for Rough

---

[1] Certain portions of Rough Country's deposition were designated as confidential. Because those portions are not material to this motion, Rough Country is not tendering them to the Court at the present time. If requested, Rough Country will file a motion to file the confidential portion under seal.

Country to consider every possible bumper height combination and configuration for every lifted vehicle make and model and every non-lifted vehicle make and model in the context of considering the impact of potential bumper heights. (RC Interrogatory Responses, ¶ 6.)

### B.     The Subject Lift Kit

Lifted trucks are not uncommon in the North Georgia area where the accident underlying this action occurred. [Deposition of Plaintiff Santana Bryson taken on April 12, 2023 ("S. Bryson Depo.," from which the specific pages referenced herein are attached as Exhibit 5), at 50:3-9 (2 out of 10 cars are lifted); Deposition of Plaintiff Joshua Bryson taken on April 12, 2023 ("J. Bryson Depo.," from which the specific pages referenced herein are attached as Exhibit 6), at 46:20-47:1; Deposition of Trooper Andrew Phillips taken on April 26, 2023 ("Phillips Depo.," from which the specific pages referenced herein are attached as Exhibit 7), at 60:19-22 (sees them "probably daily").]

Rough Country sold the lift kit at issue to Will Holloway on or about June 21, 2016. (*See* Order Confirmation, RC-BRYSON 005377, attached hereto as Exhibit 8.) The lift kit at issue was mailed by Rough Country to Mr. Holloway at his home address in Blue Ridge, Georgia. (*See id.*) The lift kit at issue was a 4.5-inch lift kit. (*See id.*) Mr. Holloway then took the lift kit to Ronnie Thompson Ford, where a technician installed the lift kit onto his 2016 Ford F-250 Super Duty (the "F-250")

truck on or about July 11, 2016. (See Repair Order Detail – Internal Copy, RONNIE THOMPSON FORD 000027-28, attached hereto as Exhibit 9.) Mr. Elliott subsequently obtained the F-250 truck with the lift kit already installed.

### C.   The Accident at Issue

Sadly, almost four years after the lift kit was purchased, on March 15, 2020, at approximately 11:15 p.m., Mr. Elliott – who was driving with a suspended license – drove the F-250 truck into the rear of Plaintiffs' Ford Escape, which was stopped at a red light ("the Accident"). (Answer, ¶ 19; Plaintiffs' Admissions, ¶ 42.)

As a result of the Accident, Plaintiffs Santana Bryson and Joshua Bryson's two-year old son, C.Z.B., who was asleep in the second row seat behind the driver's position, was killed. (S. Bryson Depo., at 19:15-20:3; J. Bryson Depo., at 25:14.) Thankfully, there is no evidence that C.Z.B. suffered any conscious pain and suffering. [Deposition of Johnathan Eisenstat, MD, taken on January 15, 2024 ("Eisenstat Depo.," from which the specific pages referenced herein are attached as Exhibit 10), at 29:14-17 and 29:24-30:3 ("would agree" that C.Z.B. "did not experience any conscious pain and suffering" after C.Z.B. suffered the fatal atlanto-occipital disarticulation (AOD)); see also id., 30:8-11 (AOD occurred "within milliseconds" of "the blunt impact").]

The simple fact is that Mr. Elliott caused his F-250 truck to collide with Plaintiffs' Escape. (Plaintiffs' Admissions, ¶ 48.) Mr. Elliott failed to stop at a red

light before colliding with Plaintiffs' car while speeding. (*Id.*, ¶¶ 39 and 47.) He was driving at least 50 miles per hour. (*Id.*, ¶ 54.) Indeed, at one second prior to the Accident, the speedometer in Mr. Elliott's F-250 truck registered a speed of 51 miles per hour. [SCRT Investigative Summary, Case Number SCRTB-017-20 (the "<u>SCRT Report</u>," attached hereto (without exhibits) as Exhibit 11), at 5.] Further, the F-250 truck had oversized tires, which could add 5 to 10 miles per hour to the reported speedometer speed. (Phillips Depo., at 43:20-44:19.)

Additionally, Mr. Elliott was driving while intoxicated. (Plaintiffs' Admissions, ¶ 43.) There were more than 25 empty beer cans in his F-250 truck at the time of the Accident. [SCRT Report, at 2; *see also id.*, at 5 ("there were Budweiser cans everywhere").] Mr. Elliott's blood alcohol content (BAC) was at least 0.252, or more than three times the legal limit. (Phillips Depo., at 36:16-37:13; *see also* SCRT Report, at 7.)

When Mr. Elliott drove into the rear of Plaintiff's car, he was on his cell phone and "FaceTiming" with his girlfriend. (Plaintiffs' Admissions, ¶ 44; Phillips Depo., at 36:14 and 41:4-5.)

Following its investigation of the Accident, the Georgia State Patrol determined that the proximate cause of the Accident was Mr. Elliott's operation of his F-250 truck "in a reckless and unsafe manner while under the influence of alcohol," and his "actions were the direct cause" of C.Z.B.'s death. (SCRT Report,

at 7; Phillips Depo., at 39:8-10.) There is no dispute that the lift kit at issue did not contribute to the collision between Mr. Elliott's F-250 truck and Plaintiffs' Escape. (Plaintiffs' Admissions, ¶ 40.)

Mr. Elliott was charged, pleaded guilty and was convicted of DUI and vehicular homicide, as well as other charges, as a result of the accident.

### III.   <u>Procedural History and Claims</u>

Plaintiffs filed their initial Complaint for Damages in this action on February 1, 2022. (Doc. 1.) Plaintiffs subsequently filed their First Amended Complaint (the "<u>FAC</u>") for Damages on December 16, 2022. (Doc. 39.) Plaintiffs' claims are based on the "enhanced injury" allegedly suffered by C.Z.B. (*See* FAC, at 1, Preamble.)

Through their FAC, Plaintiffs assert four claims: *first*, for strict liability; *second*, for negligence; *third*, for punitive damages; and *fourth*, for damages.

Plaintiffs' claim for strict liability, as plead, under O.C.G.A. § 51-1-11 is comprised of two components. The first component is that the "risks inherent in the design" of Rough Country's lift kit "outweighed the utility of the chosen design, thereby rendering the product unreasonably dangerous and not reasonably suited to the use for which it was intended." (FAC, ¶ 54.) Next, Plaintiffs complain that Rough Country "did not warn anyone of the dangers that its lifts pose to occupants of other vehicles." (FAC, ¶ 61; *see also id.*, ¶ 62.)

Plaintiffs' negligence claim is nominally rooted in simple negligence, *i.e.*, that Rough Country owed a duty to the consuming public in general, could have reasonably foreseen the risk of collisions such as the Accident, and breached that duty. (FAC, ¶¶ 65-67.) Plaintiffs' allegations, however, indicate a more specific claim. Specifically, Plaintiff alleges that Rough Country's lift kits "are defective because they raise the suspension on passenger vehicles, including pickup trucks, to a degree that violates Georgia law." (FAC, ¶ 45.)

Plaintiffs' claim for punitive damages is non-specific. It simply alleges that all of Rough Country's conduct was done with a "conscious indifference to the safety and well-being of the consuming public . . . because Rough Country had actual knowledge of the safety risks described above." (FAC, ¶ 70.) Further, Plaintiffs allege that Rough Country's conduct was "so egregious that it rises to the level of conscious indifference to the safety and well-being of the consuming public." (FAC, ¶ 71.)

Finally, Plaintiffs' claim for damages is based on "enhanced injuries." (FAC, ¶ 75.) An "enhanced injury" claim is based on the premise that Rough Country's lift kit caused C.Z.B. to suffer a greater injury (*i.e.*, death) than he would have otherwise suffered as a result of the Accident but for the lift kit.

## IV.   Legal Authority and Argument

### A.   Summary Judgment Standard

The standards applicable to motions for summary judgment are well-known and well-established. *Travelers Prop. Cas. Ins. Co. v. Mouton*, 699 F. Supp. 3d 1385, 1390 (N.D. Ga. 2023). Summary judgment under Rule 56 is proper if there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rough Country, as the moving party, must inform the Court "of the basis for its motion, and identify[] those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Id.*, at 1390 (quoting *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259 (11th Cir. 2004)). Once this is done, "the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist." *Id.* There is a genuine issue of material fact if a reasonable jury could return a verdict in favor of the non-moving party based on the evidence. *Id.* All reasonable inferences to be drawn from the record are considered in the light most favorable to the non-moving party. *Id.*

### B.   To the Extent that Plaintiffs Assert a Failure to Warn Claim, It is Barred Under Georgia Law

Under Georgia law, "[b]efore negligence can be predicated upon a given act, some duty to the individual complaining [*i.e.*, the plaintiff] must be sought and

found, the observance of which duty would have averted or avoided the injury or damage." *CSX Transp., Inc. v. Williams*, 278 Ga. 888 (2005) (quoting *City of Douglasville v. Queen*, 270 Ga. 770 (1999)). "What duty a defendant owed a plaintiff" is for the court to decide as a "matter of law." *Hous. Auth. of Atlanta v. Famble*, 170 Ga. App. 509 (1984). Whether a duty exists is a legal question for the court. *CertainTeed Corp. v. Fletcher*, 300 Ga. 327 (2016).

Georgia law does not support the imposition of a duty to warn in this case. The Georgia Supreme Court has refused to recognize a blanket duty requiring a manufacturer to warn the public of risks associated with the product because "the mechanism and scope of such warnings would be endless," and the recognition of such a duty would "expand traditional tort concepts beyond manageable bounds and create an almost infinite universe of potential plaintiffs." *CertainTeed*, 300 Ga. at 329.

In *CertainTeed*, the plaintiff alleged that she developed mesothelioma from years of washing her father's clothes, which were covered in asbestos dust. *Id.* at 327. The plaintiff sued the manufacturer of the asbestos-covered pipes her father worked with, asserting that the manufacturer had breached an alleged duty to warn her of the dangers of asbestos dust. *Id.* Reversing the Georgia Court of Appeals' imposition of a duty to warn, the Georgia Supreme Court concluded that it would be "unreasonable to impose a duty on CertainTeed to warn all individuals in [the

plaintiff's] position, whether those individuals be family members or simply members of the public who were exposed to asbestos-laden clothing, as the mechanism and scope of such warnings would be endless." *Id.* In other words, no duty was owed because plaintiff had an indirect relationship with CertainTeed.

Following the holding in *CertainTeed*, this Court dismissed a failure to warn claim where the plaintiff, a victim in a car accident, sued the manufacturer of the car driven by the other driver. *Reichwaldt v. Gen. Motors LLC*, 304 F. Supp. 3d 1312 (N.D. Ga. 2018) (Thrash, J.). The plaintiff in that case alleged that the cause of her injuries was the design of the other car's gas tank, and that the defendant manufacturer owed her, as a reasonably foreseeable third party, a duty to warn of the dangers of the design. *Id.* at 1316. The Court dismissed the claim, holding that "it would be impractical, if not impossible, to fulfill this purported duty to warn" because "[i]t is difficult to imagine the manner in which [the defendant] would have been able to make such a warning, and it would be unreasonable to impose such a duty." *Id.* at 1317.

In accordance with *Reichwaldt* and *CertainTeed*, any claim in the present case (either express or implied) that Rough Country failed to warn the Plaintiffs (or C.Z.B.) or Mr. Elliott must fail as a matter of law.

### C.    Plaintiffs' Negligence Claim is Barred by the Unforeseeable Intervening Criminal Act of Mr. Elliott

The question before the Court is simple: should Rough County have foreseen that a user of its product would drive (1) heavily intoxicated, (2) while speeding, (3) while on a mobile telephone, and (4) into the rear of another car? The answer is, simply, no.

"Even if a manufacturer's design is proven to be defective and was so at the time of sale, however, the manufacturer's liability may be negated by an intervening cause, such as the unforeseeable negligence of another person." *Suzuki Motor of Am., Inc. v. Johns*, 351 Ga. App. 186, 191–92, (2019), *aff'd*, 310 Ga. 159 (2020). In Georgia, there is a "well-established doctrine of intervening causes" that insulates a defendant from liability when

> there has intervened between the act of the defendant and the injury of the plaintiff, an independent act or omission of someone other than the defendant, which was not *foreseeable* by the defendant, was not triggered by the defendant's act, and which was sufficient of itself to cause the injury.

*Maynard v. Snapchat, Inc.*, 313 Ga. 533, 539 (2022) (quoting *City of Richmond Hill v. Maia*, 301 Ga. 257, 259 (2017)) (italics in original). Stated another way, "the rule is that an intervening and independent wrongful act of a third person producing the injury, and without which it would not have occurred, should be treated as the proximate cause, *insulating and excluding the negligence of the defendant*." *Johnson*

*v. Avis Rent A Car System, LLC*, 311 Ga. 588, 593 (2021) (quoting *Goldstein, Garber & Salama, LLC v. J.B.*, 300 Ga. 840, 841-2 (2017)) (italics added).[2]

Here, the intervening cause of Plaintiffs' injury was Mr. Elliott's gross criminal misconduct of driving drunk, speeding, and use of his mobile telephone while driving. There can be no substantive dispute as to the final two criteria: Plaintiffs do not – and cannot – allege that Rough Country triggered Mr. Elliott to drink to excess, get in his truck, and then speed down the road while "FaceTiming." And the Accident itself would have caused injury to C.Z.B. Mr. Elliott's Ford F-250 truck weighed significantly more, and was more massive, than Plaintiffs' Escape. (Plaintiffs' Admissions, ¶¶ 16 and 17.) The force of the Ford F-250 truck hitting the Escape at 50 miles per hour would have been extreme and sufficient to cause the injury. *See, e.g., Amos v. Creative Consulting Svcs., Inc.*, 370 Ga. App. 676 (2024) (an unforeseeable "independent, intervening act . . . is treated as the proximate cause of injury superseding any preceding negligence of the defendant").

This leaves the first criteria – foreseeability – before the Court, and it was not foreseeable as a matter of law that Mr. Elliott would engage in his intervening and independent wrongful acts of drinking and driving while driving a truck with Rough

---

[2] To the extent that the Court grants summary judgment as to this issue, Rough Country shows that it would negate any causation of Plaintiffs' claimed injuries under any claim, and therefore summary judgment as to the entirety of the FAC would be appropriate."

Country's 4.5-inch lift kit installed on it. A proper consideration of whether the requisite proximate causation exists looks at two parts: "what happened" and do "the facts measure up to the legal standard set by precedent." *Johnson*, 311 Ga. at 593.

Factually, there are no material facts in dispute. Mr. Elliott was driving while heavily intoxicated with a suspended license. Mr. Elliott was speeding and using his mobile phone at the time of the Accident. Rough Country had no involvement in any of these critical intervening events.

Legally, it is evident that there is no proximate cause between anything that Rough Country may have done and any injury suffered by Plaintiffs given the aforementioned plain and undisputed facts. As a result, Rough County is not liable to Plaintiffs as a matter of law. Another district court reached this conclusion in *Timmons v. Ford Motor Co.*, 982 F.Supp. 1475 (S.D. Ga. 1997), a similar case. In it, two cars collided when the driver causing the accident was "heavily intoxicated," and he was speeding. *Id.*, at 1477. Based on these factors, the district court held that "[t]he Defendant's product was not the proximate case of the victims' death in th[at] case." *Id.*, at 1480. The district court recognized that an automotive "manufacturers cannot reasonably be expected to foresee the probable consequences of these high-speed collisions," and it concluded "as a matter of law that Mr. Carr's drunk driving was the sole proximate cause of the deaths sustained in the ensuing collision." *Id.*, at 1481; *see also Thurmond v. Federal Signal Corp.*, 769 Fed. Appx. 904, 907 (2019)

("Because of Thurmond's 'carelessness,' his injury is too attenuated from Vactor's actions to give rise to liability.").

Overall, Georgia law provides that "[a] negligent actor who breaches a duty to another *is not responsible for a consequence which is merely possible*, according to occasional experience, but only for a consequence which is probable, according to ordinary and usual experience." *Johnson*, 311 Ga. at 592 (quoting *Johnson v. American Nat. Red Cross*, 276 Ga. 270, 273 (2003)) (italics added). As in *Johnson*, where the Supreme Court reversed, finding that an incident that happened one time before was insufficient to support a finding of foreseeability, the consequence of the lift kit at issue was merely "possible," and not a sufficiently "probable or natural consequence" so as to support liability. *Johnson*, 311 Ga. at 594, ("the evidence demanded the conclusion that the subsequent accident caused by Perry's criminal conduct was not a probable or natural consequence that could have been reasonably foreseen by the defendants").

### D. Plaintiffs' Negligence Per Se Claim is Barred Because No Georgia Laws Were Broken by the Lift at Issue

Plaintiffs plainly assert a negligence per se claim in the FAC when they reference that the lift "violates Georgia law." "Negligence per se arises when a statute or ordinance is violated." *Hubbard v. Dept. of Transp.*, 256 Ga. App. 342, 349 (2002). At the time of the Accident, older versions of O.C.G.A. §§ 40-8-6 and 40-8-6.1 were in effect. These statutes were subsequently amended, effective July 1, 2024.

As a result of this amendment, the text of the old O.C.G.A. § 40-8-6 was stricken in its entirety and is no longer the law in Georgia. O.C.G.A. § 40-8-6.1 was re-numbered as O.C.G.A. § 40-8-6. There are two critical revisions of these statutes under the current law. *First*, the calculation of the permissible height of a motor vehicle's suspension system is no longer based on "the factory recommendation for such vehicle;" it is based on the height of the vehicle from "the surface of the street." *Compare* O.C.G.A. § 40-8-6 (old) and § 40-8-6 (new). *Second*, whereas the old statutes distinguished between "private passenger motor vehicles" and "trucks," the new O.C.G.A. § 40-8-6 applies to "any motor vehicle." *Compare* O.C.G.A. § 40-8-6 (old), § 40-8-6.1 (old), and § 40-8-6 (new).

      1.      <u>Mr. Elliott's F-250 truck is governed by the old O.C.G.A. § 40-8-6.1, and it did not violate that statute.</u>

O.C.G.A. § 40-8-6.1 governed the allowable height of "trucks" in Georgia at the time of the Accident. Although the permissible height of a truck is based on weight, the lowest weight's limit is "27 inches as measured from the surface of the street to the lowest point on the frame of the truck." O.C.G.A. § 40-8-6.1(b). It is undisputed that Mr. Elliott's F-250 truck did not exceed the maximum allowable 27-inch height. (*See* Plaintiffs' Admission, ¶ 11.) As such, the only issue is whether Mr. Elliott's F-250 truck is a "truck" within the meaning of this statute or a "passenger motor vehicle" within the scope of the old O.C.G.A. § 40-8-6.

The interpretation of statutes is a question of law for the court. *Montgomery Cnty. v. Hamilton*, 337 Ga. App. 500, 503 (2016). "When presented with a question of statutory interpretation, [the court] begin[s] by examining the statute's plain language, reading the text in its most natural and reasonable way, as an ordinary speaker of the English language would." *Sosebee v. State*, 317 Ga. 424, 427 n. 2 (2023) (quoting *Green v. State*, 311 Ga. 238, 242 (1) (2021)). Statutory terms are given "their plain and ordinary meaning," *Ferguson v. Spraggins*, 371 Ga. App. 727, 902 S.E.2d 708, 714 (2024).

The terms used in O.C.G.A § 40-8-6.1 were defined in O.C.G.A. § 40-1-1, which was also amended, effective July 1, 2024. The old O.C.G.A. § 40-1-1(70) defined "truck" to "mean[] every motor vehicle *designed*, used, or maintained primarily for the transportation of property." (Italics added.) In contrast, O.C.G.A. § 40-8-6's term, "passenger motor vehicle," was (and is) not defined in O.C.G.A. § 40-1-1. The closest term, "passenger car," is defined in subsection (41) to refer to "every motor vehicle . . . designed for carrying ten passengers or less and used for the transportation of persons."

Here, the terms "truck" and "car" are well-known and understood. Sedans, coupes, and sport utility vehicles (SUVs) are designed to carry passengers; they do not have a space designed for the transportation of property like trucks do. These vehicles are "passenger cars" or "passenger motor vehicles," whereas Mr. Elliott's

F-250 truck is unambiguously a "truck." It was designed to carry property in its "bed," a lower walled area specifically designed for that task. The fact that Mr. Elliott's F-250 truck is a "truck" cannot be disputed, as such vehicles are plainly and ordinarily referred to as "trucks" by the manufacturers, dealers, and the public.[3] As described on the Ford Motor Company's website, the F-250 Super Duty is a "truck," has won numerous awards as a "Heavy-Duty Truck," including "North American Truck of the Year™," "America's Most Dependable Heavy-Duty Truck," and its "F-Series® is the best-selling truck in America for the 47th consecutive year."[4]

As such, Mr. Elliott's F-250 truck is governed by the old O.C.G.A. § 40-8-6.1 ("trucks"), and not the old O.C.G.A. § 40-8-6 ("passenger vehicles"). And since Plaintiffs admit that Mr. Elliott's F-250 truck did not exceed a height of 27 inches from street level, notwithstanding the installation of Rough Country's 4.5-inch lift, it was not in violation of Georgia law, as Plaintiffs allege in their FAC, and it cannot be used to support Plaintiffs' negligence claim.

---

[3]   *See* Merriam-Webster's Online Dictionary, https://www.merriam-webster.com/dictionary/pickup%20truck (last visited August 8, 2024) (defining "pickup truck" as "a light truck having an enclosed cab and an open body with low sides and tailgate").

[4]   *See* Ford Motor Company, *2024 Super Duty*, http://ford.com/trucks/super-duty (last visited August 8, 2024).

2.    <u>To the extent that Mr. Elliott's truck is governed by O.C.G.A. §
40-8-6, it is unconstitutionally vague.</u>

In the FAC, Plaintiffs "manifestly base[]" their allegations on the text of
O.C.G.A. § 40-8-6 to support their negligence per se-based claim in Count Two of
the FAC. *See, e.g., Wadley Southern Ry. Co. v. Faglee*, 173 Ga. 814, 161 S.E. 847,
848 (1931) (jury charge was error where it was "manifestly based" on
unconstitutional statute). The material allegations are that (1) "Rough County
suspension lifts are defective because they raise the suspension on passenger
vehicles, including pickup trucks, above their factory recommendations," (FAC, ¶¶
44), and (2) "Rough Country suspension lifts are defective because they raise the
suspension on passenger vehicles, including pickup trucks, to a degree that violates
Georgia law, " (*id.*, ¶ 45). These allegations arise from the express text of the old
O.C.G.A. § 40-8-6, which as shown previously is inapplicable to the present case.

The focus of O.C.G.A. § 40-8-6 is a vehicle's purported "factory
recommendation" for its suspension system. O.C.G.A. § 40-8-6(b) reads, in pertinent
part, that:

> [i]t shall be unlawful to operate any private passenger motor vehicle upon any
> highway, roadway, or street if the suspension system of such vehicle has been
> altered more than two inches above or below *the factory recommendation* for
> any such vehicle.

(Italics added.) This term – "factory recommendation" – is neither defined in the
specific statute, in Title 40, nor the Georgia Code in general.

- 19 -

O.C.G.A. § 40-8-6 is a criminal statute because "[a]ny person violating [it] shall be guilty of a misdemeanor." O.C.G.A. § 40-8-6(d). As a criminal statute, it is held to a higher standard. It must give "fair warning of what constitutes criminal conduct." *McNair v. State*, 285 Ga. 514, 517, 678 S.E.2d 69, 71 (2009).

O.C.G.A. § 40-8-6 is unconstitutionally vague because "it fails to convey [a] 'sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices'," *Franklin v. State*, 279 Ga. 150, 151, 611 S.E.2d 21, 22 (2005). "A statute is impermissibly vague when people of common intelligence are left to guess at its precise meaning or when the standard of conduct is not specified." *Martin v. Wrigley*, 540 F.Supp.3d 1220, 1232 (N.D. Ga. May 21, 2021). Here, O.C.G.A. § 40-8-6's inclusion of the term "factory recommendations" makes the statute impermissibly vague because it "may leave a reasonable individual to speculate as to what conduct is prohibited." *Martin*, 540 F.Supp.3d at 1232. Specifically, because the phrase "factory recommendation" is neither defined nor explained, a person does not know from which height the 2-inch limit begins. There is no evidence in this case establishing the "factory recommended" height for Mr. Elliott's F-250 truck. Indeed, Trooper Phillips, of the Georgia State Patrol, testified that he "would not know how to measure . . . whether it was factory stock or if it was illegal per the statute." (Phillips Dep., 64:4-7.)

When examining O.C.G.A. § 40-8-6, it must be read "in its most natural and reasonable way," *Domingue v. Ford Motor Co.*, 314 Ga. 59, 61, 875 S.E.2d 720, 724 (2022). The first step is to "begin with the ordinary meaning of that phrase," unless the term is one of art or technical in nature. *Harris v. State*, 286 Ga. 245, 246, 686 S.E.2d 777, 778-79 (citing O.C.G.A. § 1-3-1(b)). The analysis therefore begins with its ordinary meaning, provided that "persons of common intelligence need not necessarily guess at its meaning nor differ as to its application," *Franklin*, 279 Ga. at 22-23. The fundamental flaw in O.C.G.A. § 40-6-8 is that there is no such thing as a "factory recommendation" and the statute does not provide a meaning or definition. This is where the vagueness and unconstitutionality arises. *See, e.g., Cotton States Mut. Ins. Co. v. Anderson*, 749 F.2d 663, 669 (11th Cir. 1984) (commercial statutes, despite being subject to lesser scrutiny than criminal ones, are "impermissibly vague . . . if they provide no rule or standard at all," such that they are "substantially incomprehensible"). Because there is no commonly understood meaning to the "factory recommendation," the term is unconstitutionally vague. *Franklin*, 279 Ga. at 23 (examining whether "persons of average intelligence can readily ascertain" the meaning of the term); *see McNair*, 285 Ga. 517, 678 S.E.2d at 71 (driving statute was unconstitutionally vague where material term was left to multiple interpretations). Unlike the old O.C.G.A. § 40-8-6.1, a person "must necessarily guess" at what O.C.G.A. § 40-8-6 means when it references "factory

recommendations," and this renders it "too vague to be enforced . . . and [it] is therefore unconstitutional under the due process clauses of the Georgia and United States Constitutions." *McNair*, 285 Ga. at 517, 678 S.E.2d at 71.

Accordingly, O.C.G.A. § 40-8-6 is unconstitutionally vague, and Rough Country is entitled to a judgment as a matter of law as to any legal argument predicated upon it.

**E.  Summary Judgment is Proper As to Plaintiffs' Claim for Conscious Pain and Suffering**

"Georgia law generally permits recovery for a decedent's pain and suffering." *Byrd v. Wal-Mart Transp., LLC*, No. 609CV014, 2009 WL 3429562, at *4 (S.D. Ga. Oct. 23, 2009) (citing O.C.G.A. § 9-2-41). But such recovery is not authorized where "medical evidence is that death was instantaneous, and there is no evidence that the decedent exhibited consciousness of pain," *Grant v. Georgia Pacific Corp.*, 239 Ga. App. 748, 751, 521 S.E.2d 868 (1999).

Plaintiffs have presented no evidence of conscious pain and suffering by C.Z.B. In fact, to the contrary, the medical examiner who performed C.Z.B.'s autopsy, Dr. Eisenstat, establishes that C.Z.B. died within milliseconds of the blunt force trauma caused by impact of Mr. Elliott's F-250 truck into the rear of Plaintiffs' Escape. (Eisenstat Depo., at 29:14-17, 29:24-30:3, and 30:8-11.) Similarly, the undisputed evidence is that C.Z.B. was asleep at the time of the Accident. He therefore could not suffer any "consciousness of [his] imminent death," *Dep't of*

*Transp. v. Dupree*, 256 Ga. App. 668, 680, 570 S.E.2d 1, 11 (2002). As a result, Plaintiffs are not permitted to recover such damages as a matter of law.

### F.    Punitive Damages is Barred Under Georgia Law

Summary judgment is warranted on Plaintiffs' punitive damages claim against Rough Country because there is no evidence that its conduct rises to the level required under Georgia law to impose punitive damages. "For punitive damages to be recoverable as damages, there must exist some evidence of culpable tortious conduct, and such culpable conduct must be of such nature to justify the imposition of punitive damages to penalize, punish, or deter such conduct." *Taylor v. Powertel, Inc.*, 250 Ga. App. 356, 358 (2001). Culpable conduct sufficient to warrant the imposition of punitive damages must be more than negligence, more than even gross negligence. *Coker v. Culter*, 208 Ga. App. 651, 652 (1993). "There must be circumstances of aggravation or outrage." *Kodadek v. Lieberman*, 247 Ga. App. 606, 610 (2001). "To receive punitive damages a plaintiff must show more than gross negligence because punitive damages are designed to punish wrongdoing by the defendant, not compensate the plaintiff for his injuries." *Hernandez v. Crown Equip. Corp.*, 92 F. Supp. 3d 1325, 1356 (M.D. Ga. 2015).

Accordingly, punitive damages may be awarded only in tort actions in which clear and convincing evidence proves that a defendant's "actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which

would raise the presumption of conscious indifference to consequences." O.C.G.A. § 51 12 5.1. "Georgia defines 'conscious indifference' as 'an intentional disregard of the rights of another, knowingly or willfully disregarding such rights.'" *Hutcherson v. Progressive Corp.*, 984 F.2d 1152 (11th Cir. 1993); *see also Dow Chemical Co. v. Ogletree, Deakins, Nash, Smoak & Stewart*, 237 Ga. App. 27, 31 (1999). "There must be circumstances of aggravation or outrage, such as **spite** or '**malice**,' or fraudulent or evil motive on the part of the defendant, or such a conscious and deliberate disregard of the interests of others that the conduct may be called willful or wanton." *Lewis v. Suttles Truck Leasing, Inc.*, 869 F. Supp. 947, 949 (S.D. Ga. 1994) (emphasis added). "Clear and convincing evidence usually requires more than circumstantial evidence or inferences. [Cit. omitted.] Moreover, 'case law suggests that the wanton and willful standard is not satisfied where there is a bona fide dispute as to the propriety of the defendant's actions.'" *Cosper v. Ford Motor Co.*, No. 2:18-CV-189-RWS, 2022 WL 17939343, at *16 (N.D. Ga. Oct. 17, 2022).

There is no evidence in this case that Rough Country engaged in the kind of intentional misconduct that is necessary to support an award of punitive damages under Georgia law. Specifically, there is no evidence that Rough Country designed or manufactured the subject lift kit with "spite or 'malice,' or fraudulent or evil motive" or with "such a conscious and deliberate disregard of the interests of others that [its conduct] may be called willful or wanton[.]" *Lewis*, 869 F. Supp. at 949

(S.D. Ga. 1994). Further, "[t]here is no evidence in the record to support a finding that [Rough Country] acted with anything approaching the level of culpable conduct required to entitle Plaintiffs to an award of punitive damages." *Freeman v. United Cities Propane Gas of Georgia, Inc.*, 807 F. Supp. 1533, 1542 (M.D. Ga. 1992).

As such, Rough Country respectfully submits that, notwithstanding the underlying claims, Plaintiffs' claim for punitive damages in Count Three must be dismissed as a matter of law at the present time.

### V.   <u>Conclusion</u>

Accordingly, for the foregoing reasons, Rough Country shows that it is entitled to a judgment as a matter of law on Plaintiff's claims for: (1) failure to warn; (2) negligence per se; (3) conscious pain and suffering, and (4) punitive damages. This Motion should therefore be **GRANTED**.

This 15th day of August, 2024.

Respectfully submitted,
WEINBERG,  WHEELER,  HUDGINS,
GUNN & DIAL, LLC

/s/ Aaron B. Chausmer
Richard H. Hill, II
Georgia Bar No. 354425
Lindsay G. Ferguson
Georgia Bar No. 140970
Aaron B. Chausmer
Georgia Bar No. 119998
*Attorneys for Defendant Rough Country, LLC*

3344 Peachtree Road, N.E.
Suite 2400
Atlanta, GA 30326
Phone:  404-876-2700
Fax:   404-875-9433

## **RULE 7.1D CERTIFICATE OF TYPE, FORMAT AND FONT SIZE**

Pursuant to Local Rule 7.1D of the United States District Court of the Northern District of Georgia, the undersigned certifies that the foregoing submission to the Court complies with Local Rule 5.1 in that it was computer-processed, double-spaced between lines, and used Times New Roman font of 14 point size.

## **CERTIFICATE OF SERVICE**

This is to certify that I have electronically served the foregoing filing with the Clerk of Court via CM/ECF, which will send a copy to the following attorneys of record:

Tedra L. Cannella
Robert H. Snyder, Jr.
Rory A. Weeks
Devin Mashman
CANNELLA SNYDER LLC
315 W Ponce de Leon Ave
Suite 885
Decatur, GA 30030
***ATTORNEYS FOR PLAINTIFFS***

This, 15th day of August, 2024.

*/s/Aaron B. Chausmer*
Aaron B. Chausmer
Georgia Bar No. 119998