**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**GAINESVILLE DIVISION**

| | | |
|---|---|---|
| Santana Bryson and Joshua Bryson, | ) | |
| as Administrators of the Estate of | ) | |
| C.Z.B., and as surviving parents of | ) | |
| C.Z.B., a deceased minor, | ) | Case No. 2:22-CV-017-RWS |
| | ) | |
| Plaintiffs, | ) | JURY TRIAL DEMANDED |
| | ) | |
| v. | ) | |
| | ) | |
| Rough Country, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT ROUGH COUNTRY, LLC'S STATEMENT**
**OF UNDISPUTED MATERIAL FACTS**

COMES NOW Defendant Rough Country, LLC ("Rough Country"), by and
through its undersigned counsel, and pursuant to Fed. R. Civ. P. 56 and the Local
Rules, and files this Statement of Undisputed Material Facts in support of its Motion
for Summary Judgment (the "Motion"), filed contemporaneously herewith, and
shows that there is no dispute as to the following material facts:

**A.      Rough Country**

1.      Automobile lift kits are intended to raise the suspension or body of a
motor vehicle to provide greater utility and, in some cases, for aesthetics. [Rough

Country's First Supplemental Response to Plaintiffs' First Interrogatories (the "RC Interrogatory Responses," attached to Rough Country's Memorandum of Law in Support of the Motion (the "Brief") as Exhibit 1), ¶ 6.]

2.      Lift kits are a product that has been on the market for over 40 years. (RC Interrogatory Responses, ¶ 6.)

3.      Rough Country is engaged in the business of designing, manufacturing, inspecting, marketing, promoting, advertising, distributing, and selling automobile lift kits. [Rough Country's Answer and Defenses to Plaintiffs' First Amended Complaint for Damages (the "Answer") (Doc. 40), ¶ 8.]

4.      Rough Country does not install lift kits on automobiles.

5.      Rough Country has been placing its products in commerce for over 30 years. [30(b)(6) Deposition of Rough Country taken on August 4, 2023 ("RC Depo.," from which the specific pages referenced herein are attached to the Brief as Exhibit 2), at 9:22-23 and 10:22-23.]

6.      Rough Country makes products for more than 80 different applications. (RC Depo., at 44:14-15.)

7.      Rough Country sells lift kits to all 50 states. [Rough Country's Responses and Objections to Plaintiffs' Second Requests to Admit ("RC Admissions," attached to the Brief as Exhibit 3), ¶ 3.]

8.      Rough Country's lift kits go through extensive design to ensure that they maintain the original equipment's (OE) performance. (RC Depo., at 32:11-18.)

9.      There is not a uniform bumper height for all vehicles. [Plaintiff's Responses to Rough Country's First Request for Admissions served on April 21, 2023 ("Plaintiffs' Admissions," a copy of which is attached to the Brief as Exhibit 4), ¶ 36.]

10.     Various trim levels of Ford F-250 trucks have different front bumper heights. (Plaintiffs' Admissions, ¶ 8.)

11.      There is an infinite number of vehicles that Rough Country's products could be involved with. (RC Depo., at 50:3-6.)

12.     It is not feasible for Rough Country to consider every possible bumper height combination and configuration for every lifted vehicle make and model and every non-lifted vehicle make and model in the context of considering the impact of potential bumper heights. (RC Interrogatory Responses, ¶ 6.)

**B.     The Subject Lift Kit**

13.     Lifted trucks are not uncommon in the North Georgia area where the accident underlying this action occurred. [Deposition of Plaintiff Santana Bryson taken on April 12, 2023 ("S. Bryson Depo.," from which the specific pages

– 3 –

referenced herein are attached to the Brief as Exhibit 5), at 50:3-9 (2 out of 10 cars are lifted); Deposition of Plaintiff Joshua Bryson taken on April 12, 2023 ("J. Bryson Depo.," from which the specific pages referenced herein are attached to the Brief as Exhibit 6), at 46:20-47:1; Deposition of Trooper Andrew Phillips taken on April 26, 2023 ("Phillips Depo.," from which the specific pages referenced herein are attached to the Brief as Exhibit 7), at 60:19-22 (sees them "probably daily").]

14.    Rough Country sold the lift kit at issue to Will Holloway on or about June 21, 2016. (*See* Order Confirmation, RC-BRYSON 005377, attached hereto to the Brief as Exhibit 8.)

15.    The lift kit at issue was mailed by Rough Country to Mr. Holloway at his home address in Blue Ridge, Georgia. (*See* Exhibit 8.)

16.     The lift kit at issue was a 4.5-inch lift kit. (*See* Exhibit 8.)

17.    Mr. Holloway then took the lift kit to Ronnie Thompson Ford, where a technician installed the lift kit onto his 2016 Ford F-250 Super Duty (the "F-250") truck on or about July 11, 2016. (*See* Repair Order Detail – Internal Copy, RONNIE THOMPSON FORD 000027-28, attached hereto as Exhibit 9.)

18.     Mr. Elliott subsequently obtained the F-250 truck with the lift kit already installed.

## C.     The Accident at Issue

19.     Sadly, almost four years after the lift kit was purchased, on March 15, 2020, at approximately 11:15 p.m., Mr. Elliott – who was driving with a suspended license – drove the F-250 truck into the rear of Plaintiffs' Ford Escape, which was stopped at a red light ("the Accident"). (Answer, ¶ 19; Plaintiffs' Admissions, ¶ 42.)

20.     As a result of the Accident, Plaintiffs Santana Bryson and Joshua Bryson's two-year old son, C.Z.B., who was asleep in the second row seat behind the driver's position, was killed. (S. Bryson Depo., at 19:15-20:3; J. Bryson Depo., at 25:14.)

21.     There is no evidence that C.Z.B. suffered any conscious pain and suffering. [Deposition of Johnathan Eisenstat, MD, taken on January 15, 2024 ("Eisenstat Depo.," from which the specific pages referenced herein are attached to the Brief as Exhibit 10), at 29:14-17 and 29:24-30:3 ("would agree" that C.Z.B. "did not experience any conscious pain and suffering" after C.Z.B. suffered the fatal atlanto-occipital disarticulation (AOD)); *see also id.*, 30:8-11 (AOD occurred "within milliseconds" of "the blunt impact").]

22.     Mr. Elliott caused his F-250 truck to collide with Plaintiffs' Escape. (Plaintiffs' Admissions, ¶ 48.)

23.   Mr. Elliott failed to stop at a red light before colliding with Plaintiffs' car while speeding. (Plaintiffs' Admissions, ¶¶ 39 and 47.)

24.   Mr. Elliott was driving at least 50 miles per hour. (Plaintiffs' Admissions, ¶ 54.)

25.   At one second prior to the Accident, the speedometer in Mr. Elliott's F-250 truck registered a speed of 51 miles per hour. [SCRT Investigative Summary, Case Number SCRTB-017-20 (the "SCRT Report," attached to the Brief (without exhibits) as Exhibit 11), at 6.]

26.   The F-250 truck had oversized tires, which could add 5 to 10 miles per hour to the reported speedometer speed. (Phillips Depo., at 43:20-44:19.)

27.   Mr. Elliott was driving while intoxicated. (Plaintiffs' Admissions, ¶ 43.)

28.   There were more than 25 empty beer cans in his F-250 truck at the time of the Accident. [SCRT Report, at 3; *see also id.*, at 6 ("there were Budweiser cans everywhere").]

29.   Mr. Elliott's blood alcohol content (BAC) was at least 0.252, or more than three times the legal limit. (Phillips Depo., at 36:16-37:13; *see also* SCRT Report, at 8.)

30.     When Mr. Elliott drove into the rear of Plaintiff's car, he was on his cell phone and "FaceTiming" with his girlfriend. (Plaintiffs' Admissions, ¶ 44; Phillips Depo., at 36:14 and 41:4-5.)

31.     Following its investigation of the Accident, the Georgia State Patrol determined that the proximate cause of the Accident was Mr. Elliott's operation of his F-250 truck "in a reckless and unsafe manner while under the influence of alcohol," and his "actions were the direct result of" C.Z.B.'s death. (SCRT Report, at 8; Phillips Depo., at 39:8-10.)

32.     There is no dispute that the lift kit at issue did not contribute to the collision between Mr. Elliott's F-250 truck and Plaintiffs' Escape. (Plaintiffs' Admissions, ¶ 40.)

33.     Mr. Elliott was charged, pleaded guilty and was convicted of DUI and vehicular homicide, as well as other charges, as a result of the accident.

34.     Plaintiffs' Ford Escape weighed less than Mr. Elliott's F-250 truck. (Plaintiffs' Admissions, ¶ 16.)

35.     Plaintiffs' Escape had less mass than Mr. Elliott's F-250 truck. (Plaintiffs' Admissions, ¶ 17.)

[*Signature Page Follows.*]

This 15th day of August, 2024.

Respectfully submitted,
WEINBERG,  WHEELER,  HUDGINS,
GUNN & DIAL, LLC

*/s/ Aaron B. Chausmer*
Richard H. Hill, II
Georgia Bar No. 354425
Lindsay G. Ferguson
Georgia Bar No. 140970
Aaron B. Chausmer
Georgia Bar No. 119998

3344 Peachtree Road, N.E.
Suite 2400
Atlanta, GA 30326
Phone:  404-876-2700
Fax:   404-875-9433

*Attorneys for Defendant Rough Country,
LLC*

## RULE 7.1D CERTIFICATE OF TYPE, FORMAT AND FONT SIZE

Pursuant to Local Rule 7.1D of the United States District Court of the Northern District of Georgia, the undersigned certifies that the foregoing submission to the Court complies with Local Rule 5.1 in that it was computer-processed, double-spaced between lines, and used Times New Roman font of 14 point size.

## CERTIFICATE OF SERVICE

This is to certify that I have electronically served the foregoing filing with the Clerk of Court via CM/ECF, which will send a copy to the following attorneys of record:

Tedra L. Cannella
Robert H. Snyder, Jr.
Rory A. Weeks
Devin Mashman
CANNELLA SNYDER LLC
315 W Ponce de Leon Ave
Suite 885
Decatur, GA 30030
*ATTORNEYS FOR PLAINTIFFS*

This, 15th day of August, 2024.

*/s/ Aaron B. Chausmer*
Aaron B. Chausmer
Georgia Bar No. 119998