# EXHIBIT "4"

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

Santana Bryson and Joshua Bryson,  &ast;
as Administrators of the  &ast;
Estate of C.Z.B., and as surviving  &ast;
parents of C.Z.B., a deceased minor,  &ast;
&ast;
Plaintiffs,  &ast;
&ast;     Civil Action File
v.  &ast;
&ast;     No. 2:22-cv-17-RWS
Rough Country, LLC,  &ast;
&ast;
Defendant.  &ast;

## PLAINTIFFS' RESPONSES TO DEFENDANT
## ROUGH COUNTRY, LLC'S FIRST REQUEST FOR ADMISSIONS

COME NOW Plaintiffs Santana Bryson and Joshua Bryson in the above

captioned matter and responds to Defendant Rough Country LLC's First Requests

for Admissions to Plaintiffs as follows:

## REQUEST NO. 1:

Admit that "factory recommendations," as that term is used in ¶ 44 of
Plaintiff's First Amended Complaint ("the Amended Complaint") [Doc. 39], is not
defined in the Georgia Code.

## RESPONSE:

Plaintiffs object to responding to Request for Admission No. 1 on the

grounds that it impermissibly seeks a pure legal conclusion. *See United States v.*

*Annamalai*, No. 20-10543, 2022 WL 16959207, at *4 (11th Cir. Nov. 16, 2022),

*cert. denied*, No. 22-6889, 2023 WL 2634657 (U.S. Mar. 27, 2023) ("[A] party

cannot use Rule 36 to request admissions to legal conclusions."); *see also In re*

*Tobkin*, 578 Fed. Appx. 962, 964 (11th Cir. 2014) (same).

Plaintiffs further object to Request No. 1 on the grounds that it prematurely

seeks the opinions and work of Plaintiffs' expert witnesses. The precise definition

of the "factory recommendations" for Mr. Elliott's 2016 Ford F-250 is a matter

suited for expert testimony. By asking this request, Rough Country seeks to discern

the information relied upon by Plaintiffs' experts prior to the appropriate time.

Plaintiffs will provide all responsive, discoverable expert materials at the

appropriate time in accordance with the Court's applicable Scheduling Order and

the applicable rules for expert discovery.

## REQUEST NO. 2:

Admit that "factory recommendations," as that term is used in ¶ 44 of the
Amended Complaint, is not explained in the Georgia Code.

## RESPONSE:

Plaintiffs object to responding to Request for Admission No. 2 on the

grounds that it impermissibly seeks a pure legal conclusion. *See United States v.*

*Annamalai*, No. 20-10543, 2022 WL 16959207, at *4 (11th Cir. Nov. 16, 2022),

*cert. denied*, No. 22-6889, 2023 WL 2634657 (U.S. Mar. 27, 2023) ("[A] party

cannot use Rule 36 to request admissions to legal conclusions."); *see also In re Tobkin*, 578 Fed. Appx. 962, 964 (11th Cir. 2014) (same).

## REQUEST NO. 3:

Admit that "factory recommendations," as that term is used in ¶ 44 of the Amended Complaint, is not defined in the Title 40 of the Georgia Code.

## RESPONSE:

Plaintiffs object to responding to Request for Admission No. 3 on the grounds that it impermissibly seeks a pure legal conclusion. *See United States v. Annamalai*, No. 20-10543, 2022 WL 16959207, at *4 (11th Cir. Nov. 16, 2022), *cert. denied*, No. 22-6889, 2023 WL 2634657 (U.S. Mar. 27, 2023) ("[A] party cannot use Rule 36 to request admissions to legal conclusions."); *see also In re Tobkin*, 578 Fed. Appx. 962, 964 (11th Cir. 2014) (same).

## REQUEST NO. 4:

Admit that "factory recommendations," as that term is used in ¶ 44 of the Amended Complaint, is not explained in the Title 40 of the Georgia Code.

## RESPONSE:

Plaintiffs object to responding to Request for Admission No. 4 on the grounds that it impermissibly seeks a pure legal conclusion. *See United States v. Annamalai*, No. 20-10543, 2022 WL 16959207, at *4 (11th Cir. Nov. 16, 2022), *cert. denied*, No. 22-6889, 2023 WL 2634657 (U.S. Mar. 27, 2023) ("[A] party

cannot use Rule 36 to request admissions to legal conclusions."); *see also In re*

*Tobkin*, 578 Fed. Appx. 962, 964 (11th Cir. 2014) (same).

### REQUEST NO. 5:

Admit that there are no generally accepted "factory recommendations," as that term is used in ¶ 44 of the Amended Complaint, for Mr. Elliott's Ford F250.

### RESPONSE:

Denied.  The Owners' Manual and Warranty specifically warn against

modifying the F250 by adding a lift kit.

### REQUEST NO. 6:

Admit that the suspension system of Mr. Elliott's Ford F250 does not have a factory recommendation.

### RESPONSE:

Denied.  The Owners' Manual and Warranty specifically warn against

modifying the F250 by adding a lift kit.

### REQUEST NO. 7:

Admit that the suspension system of Mr. Elliott's Ford F250 does not have a factory recommendation for the height of its suspension system.

### RESPONSE:

Denied.   The Owners' Manual and Warranty specifically warn against

modifying the F250 by adding a lift kit.

**REQUEST NO. 8:**

Admit that the various trim levels of Ford's 2016 F250 have different front bumper heights.

**RESPONSE:**

Admitted. By way of further response, Plaintiffs note that the variations in bumper height that accompany different trim levels are minor.

**REQUEST NO. 9:**

Admit that there are no federal standards for the front bumper height on Mr. Elliott's Ford F250.

**RESPONSE:**

Plaintiffs object to responding to Request for Admission No. 9 on the grounds that it impermissibly seeks a pure legal conclusion. *See United States v. Annamalai*, No. 20-10543, 2022 WL 16959207, at *4 (11th Cir. Nov. 16, 2022), *cert. denied*, No. 22-6889, 2023 WL 2634657 (U.S. Mar. 27, 2023) ("[A] party cannot use Rule 36 to request admissions to legal conclusions."); *see also In re Tobkin*, 578 Fed. Appx. 962, 964 (11th Cir. 2014) (same).

Plaintiffs further object on the grounds that the term "federal standards" is vague.

**REQUEST NO. 10:**

Admit that there are no federal requirements for the front bumper height on Mr. Elliott's Ford F250.

**RESPONSE:**

Plaintiffs object to responding to Request for Admission No. 10 on the grounds that it impermissibly seeks a pure legal conclusion. *See United States v. Annamalai*, No. 20-10543, 2022 WL 16959207, at *4 (11th Cir. Nov. 16, 2022), *cert. denied*, No. 22-6889, 2023 WL 2634657 (U.S. Mar. 27, 2023) ("[A] party cannot use Rule 36 to request admissions to legal conclusions."); *see also In re Tobkin*, 578 Fed. Appx. 962, 964 (11th Cir. 2014) (same).

**REQUEST NO. 11:**

Admit that the frame height, as defined in O.C.G.A. § 40-8-6.1(a)(2), of Mr. Elliott's Ford F250 did not exceed 27 inches as measured from the surface of the street to the lowest point on its frame.

**RESPONSE:**

Plaintiffs admit that, upon information and belief, the frame height of Mr. Elliott's Ford F-250, as measured in a manner set forth in O.C.G.A. § 40-8-6.1(a)(2), does not exceed 27 inches. Plaintiffs deny that O.C.G.A. § 40-8-6.1(a)(2) applies to Mr. Elliott's Ford F-250. Plaintiffs further deny that O.C.G.A. § 40-8-601(a)(2) sets forth the appropriate standard for the height of frame rails, and

6

further deny any suggestion that compliance with government standards renders a

product non-defective.

**REQUEST NO. 12:**

Admit that the frame height, as defined in O.C.G.A. § 40-8-6.1(a)(2), of Mr.
Elliott's Ford F250 did not exceed 30 inches as measured from the surface of the
street to the lowest point on its frame.

**RESPONSE:**

Plaintiffs admit that, upon information and belief, the frame height of Mr.

Elliott's Ford F-250, as measured in a manner set forth in O.C.G.A. § 40-8-

6.1(a)(2), does not exceed 30 inches. Plaintiffs deny that O.C.G.A. § 40-8-6.1(a)(2)

applies to Mr. Elliott's Ford F-250. Plaintiffs further deny that O.C.G.A. § 40-8-

6.1(a)(2) sets forth the appropriate standard for the height of frame rails, and

further deny any suggestion that compliance with government standards renders a

product non-defective.

**REQUEST NO. 13:**

Admit that the frame height, as defined in O.C.G.A. § 40-8-6.1(a)(2), of Mr.
Elliott's Ford F250 did not exceed 31 inches as measured from the surface of the
street to the lowest point on its frame.

**RESPONSE:**

Plaintiffs admit that, upon information and belief, the frame height of Mr.

Elliott's Ford F-250, as measured in a manner set forth in O.C.G.A. § 40-8-

6.1(a)(2), does not exceed 31 inches. Plaintiffs deny that O.C.G.A. § 40-8-6.1(a)(2) applies to Mr. Elliott's Ford F-250. Plaintiffs further deny that O.C.G.A. § 40-8-6.1(a)(2) sets forth the appropriate standard for the height of frame rails, and further deny any suggestion that compliance with government standards renders a product non-defective.

**REQUEST NO. 14:**

Admit that the Owner's Manual for Mr. Elliott's Ford F250 does not state or otherwise provide a "factory recommendation," as that term is used in the Amended Complaint.

**RESPONSE:**

Denied.  The Owners' Manual and Warranty specifically warn against modifying the F250 by adding a lift kit.

**REQUEST NO. 15:**

Admit that, in a collision between large and small vehicles, less force is put on the people inside the heavier vehicle and more force is put on the people in the lighter vehicle.

**RESPONSE:**

Denied.  Stating further, Defendant's Request for Admission No. 15 because is unanswerably vague. Measuring the "force put on the people inside" each vehicle is a complex determination not susceptible to a single measurement, let alone a single variable. Factors such as occupant positioning and characteristics,

relative speed, direction of movement, geometric engagement, and vehicle intrusion all contribute to relative force between vehicle occupants. Plaintiffs are unable to broadly admit this Request as asked.  Therefore, the Request is denied. To the extent Defendants seek information protected by the expert work product privilege, Plaintiffs object.

**REQUEST NO. 16:**

Admit that the Brysons' Ford Escape weighs less than Mr. Elliott's Ford F250.

**RESPONSE:**

Admitted.

**REQUEST NO. 17:**

Admit that the Brysons' Ford Escape has less mass than Mr. Elliott's Ford F250.

**RESPONSE:**

Admitted.

**REQUEST NO. 18:**

Admit that bumper heights on trucks, such as Mr. Elliott's Ford F250, are not regulated.

**RESPONSE:**

Plaintiffs object to responding to Request for Admission No. 18 on the grounds that it impermissibly seeks a pure legal conclusion and that the phrase "not

9

regulated" is unclear and vague. *See United States v. Annamalai*, No. 20-10543, 2022 WL 16959207, at *4 (11th Cir. Nov. 16, 2022), *cert. denied*, No. 22-6889, 2023 WL 2634657 (U.S. Mar. 27, 2023) ("[A] party cannot use Rule 36 to request admissions to legal conclusions."); *see also In re Tobkin*, 578 Fed. Appx. 962, 964 (11th Cir. 2014) (same).

## REQUEST NO. 19:

Admit that bumper heights on trucks, such as Mr. Elliott's Ford F250, are not regulated because such regulation could significantly reduce the truck's utility.

## RESPONSE:

Plaintiffs object to the premise of the request because it requires assumptions that are not in the record. Plaintiffs also object because they cannot possibly know why a state or federal legislature decides whether to impose any sort of regulations. Plaintiffs further object to responding to Request for Admission No. 19 on the grounds that it impermissibly seeks a pure legal conclusion. *See United States v. Annamalai*, No. 20-10543, 2022 WL 16959207, at *4 (11th Cir. Nov. 16, 2022), *cert. denied*, No. 22-6889, 2023 WL 2634657 (U.S. Mar. 27, 2023) ("[A] party cannot use Rule 36 to request admissions to legal conclusions."); *see also In re Tobkin*, 578 Fed. Appx. 962, 964 (11th Cir. 2014) (same).

**REQUEST NO. 20:**

Admit that bumper heights on trucks, such as Mr. Elliott's Ford F250, are not regulated by the National Highway Traffic Safety Administration (NHTSA).

**RESPONSE:**

Plaintiffs object to responding to Request for Admission No. 20 on the grounds that the request is vague and it impermissibly seeks a pure legal conclusion. *See United States v. Annamalai*, No. 20-10543, 2022 WL 16959207, at *4 (11th Cir. Nov. 16, 2022), *cert. denied*, No. 22-6889, 2023 WL 2634657 (U.S. Mar. 27, 2023) ("[A] party cannot use Rule 36 to request admissions to legal conclusions."); *see also In re Tobkin*, 578 Fed. Appx. 962, 964 (11th Cir. 2014) (same).

**REQUEST NO. 21:**

Admit that bumper heights on trucks, such as Mr. Elliott's Ford F250, are not regulated by the National Highway Traffic Safety Administration (NHTSA) because such regulation could significantly reduce the truck's utility.

**RESPONSE:**

Plaintiffs object to the premise of the request because it requires assumptions that are not in the record. Plaintiffs also object to the idea that they could know why NHTSA acts or fails to act. Plaintiffs object to responding to Request for Admission No. 21 on the grounds that it impermissibly seeks a pure legal

conclusion. *See United States v. Annamalai*, No. 20-10543, 2022 WL 16959207, at *4 (11th Cir. Nov. 16, 2022), *cert. denied*, No. 22-6889, 2023 WL 2634657 (U.S. Mar. 27, 2023) ("[A] party cannot use Rule 36 to request admissions to legal conclusions."); *see also In re Tobkin*, 578 Fed. Appx. 962, 964 (11th Cir. 2014) (same).

**REQUEST NO. 22:**

Admit that Rough County does not install any vehicle lifts onto any vehicles.

**RESPONSE:**

Plaintiffs have made a reasonable inquiry and the information known or readily obtainable by Plaintiffs is insufficient to admit or deny whether Rough Country installs "any vehicle lifts onto any vehicles." This Request therefore stands Denied.

**REQUEST NO. 23:**

Admit that Rough County did not install the vehicle lift on Mr. Elliott's Ford F250.

**RESPONSE:**

Admitted upon information and belief.

**REQUEST NO. 24:**

Admit that it is not a recognized industry practice to perform crash testing to measure or otherwise examine the effect of vehicle mismatch.

**RESPONSE:**

Denied.  Crash testing against barriers of various heights a recognized

industry practice in the auto manufacturing industry.

**REQUEST NO. 25:**

Admit that it is not a recognized industry practice to perform sled testing to
measure or otherwise examine the effect of vehicle mismatch.

**RESPONSE:**

Denied. Sled testing using collisions into barriers of various heights is a

recognized industry practice in the auto manufacturing industry

**REQUEST NO. 26:**

Admit that it is not a recognized industry practice to perform dynamic
testing to measure or otherwise examine the effect of vehicle mismatch.

**RESPONSE:**

Denied. Dynamic testing (which would include both crash, sled, and

computer testing) using collisions into barriers of various heights is a recognized

industry practice in the auto manufacturing industry.

**REQUEST NO. 27:**

Admit that bumpers are not intended to be a part of a vehicles' overall safety
cage structure in a high-speed collision.

**RESPONSE:**

Plaintiffs object to the vagueness of the term "overall safety cage structure in a high-speed collision." Given the vagueness of the term used, Plaintiffs are not able to provide a response to this Request.

**REQUEST NO. 28:**

Admit that bumpers are not intended to be structural components that would significantly contribute to vehicle crashworthiness during front or rear collisions.

**RESPONSE:**

Denied.  Vehicle crashworthiness includes preventing excessive intrusion. In a frontal or rear collision, engagement of the bumpers is generally the first step in reducing intrusion.

**REQUEST NO. 29:**

Admit that bumpers are not intended to be structural components that would significantly contribute to occupant protection during front or rear collisions.

**RESPONSE:**

Denied.  Occupant protection includes preventing excessive intrusion.  In a frontal or rear collision, engagement of the bumpers is generally the first step in reducing intrusion.

**REQUEST NO. 30:**

Admit that bumpers are not designed to be structural components that would significantly contribute to vehicle crashworthiness during front or rear collisions.

**RESPONSE:**

Denied.  Vehicle crashworthiness includes preventing excessive intrusion. In a frontal or rear collision, engagement of the bumpers is generally the first step in reducing intrusion.

**REQUEST NO. 31:**

Admit that bumpers are not designed to be structural components that would significantly contribute to occupant protection during front or rear collisions.

**RESPONSE:**

Denied.  Occupant protection includes preventing excessive intrusion.  In a frontal or rear collision, engagement of the bumpers is generally the first step in reducing intrusion.

**REQUEST NO. 32:**

Admit that bumpers are not intended to stop intrusion in a high-speed collision.

**RESPONSE:**

Denied.  In a frontal or rear collision, engagement of the bumpers is generally the first step in reducing intrusion regardless of the speed.

**REQUEST NO. 33:**

Admit that bumpers are not intended to stop intrusion in a low-speed collision.

**RESPONSE:**

Denied.  In a frontal or rear collision, engagement of the bumpers is generally the first step in reducing intrusion regardless of the speed.

**REQUEST NO. 34:**

Admit that bumpers are intended to reduce physical damage to the front and rear ends of a vehicle from low-speed collisions.

**RESPONSE:**

Admitted in part and denied in part.  Plaintiffs admit that that bumpers are intended to reduce physical damage to the front and rear ends of a vehicle from low-speed collisions. Plaintiffs deny the request to the extent that it implies that reducing physical damage to the vehicle in low-speed collisions is the only purpose of bumpers.

**REQUEST NO. 35:**

Admit that bumpers are not intended to reduce physical damage to the front and rear ends of a vehicle from high-speed collisions.

**RESPONSE:**

Denied. In a frontal or rear collision, engagement of the bumpers is generally the first step in reducing intrusion regardless of the speed.  Excessive intrusion is caused by physical damage.

**REQUEST NO. 36:**

Admit that there is not a uniform bumper height for all vehicles.

**RESPONSE:**

Admitted.

**REQUEST NO. 37:**

Admit that a vehicle's crashworthiness degrades as impact speed increases.

**RESPONSE:**

Plaintiffs object to this Request on the grounds that it is unanswerably vague.   Plaintiffs do not have any way of knowing what RC means by "degrades" in this context.  Some elements of vehicle crashworthiness only become an issue as speed increases.

**REQUEST NO. 38:**

Admit that a vehicle's occupant protection degrades as impact speed increases.

**RESPONSE:**

Plaintiffs object to this Request on the grounds that it is unanswerably vague. Plaintiffs do not have any way of knowing what RC means by "degrades" in this context.  Some elements of occupant protection only become an issue as speed increases.

**REQUEST NO. 39:**

Admit that Mr. Elliott failed to stop at a red light before colliding into the rear of the Brysons' Ford Escape.

17

**RESPONSE:**

Admitted.

**REQUEST NO. 40:**

Admit that Rough County's vehicle lift was not a contributing factor to the collision of Mr. Elliott's Ford F250 into the Brysons' Ford Escape.

**RESPONSE:**

Plaintiffs admit that Rough Country's vehicle lift did not contribute to the collision itself. Because Rough Country's lift contributed extensively to the severity of the collision, Plaintiffs deny this Request to the extent that it implies otherwise.

**REQUEST NO. 41:**

Admit that Rough County's vehicle lift was not a proximate cause of the collision of Mr. Elliott's Ford F250 into the Brysons' Ford Escape.

**RESPONSE:**

Plaintiffs admit that there is no evidence that they are aware of that Rough Country's product caused the collision itself. Because Rough Country's lift contributed extensively to the severity of the collision, Plaintiffs deny this Request to the extent that it implies otherwise.

**REQUEST NO. 42:**

Admit that when Mr. Elliott's Ford F250 collided with the Brysons' Ford Escape, Mr. Elliott was driving with a suspended driver's license.

**RESPONSE:**

Admitted.

**REQUEST NO. 43:**

Admit that when Mr. Elliott's Ford F250 collided with the Brysons' Ford Escape, Mr. Elliott was intoxicated.

**RESPONSE:**

Admitted.

**REQUEST NO. 44:**

Admit that when Mr. Elliott's Ford F250 collided with the Brysons' Ford Escape, Mr. Elliott was on a phone call on his cell phone.

**RESPONSE:**

On information and belief, admitted.  Plaintiffs believe this to be true, but

Mr. Elliott did not plead guilty to this charge and he has not been deposed.

**REQUEST NO. 45:**

Admit that when Mr. Elliott's Ford F250 collided with the Brysons' Ford Escape, Mr. Elliott's Ford F250 had an excessive amount of material and glazing, as those terms are used in O.C.G.A. § 40-8-73.1, on its front windshield.

**RESPONSE:**

On information and belief, admitted.  Plaintiffs believe this to be true, but

Mr. Elliott did not plead guilty to this charge and he has not been deposed.

**REQUEST NO. 46:**

Admit that when Mr. Elliott's Ford F250 collided with the Brysons' Ford Escape, Mr. Elliott's Ford F250 had an excessive amount of material and glazing, as those terms are used in O.C.G.A. § 40-8-73.1, on its front windshield.

**RESPONSE:**

On information and belief, admitted.  Plaintiffs believe this to be true, but

Mr. Elliott did not plead guilty to this charge and he has not been deposed.

**REQUEST NO. 47:**

Admit that when Mr. Elliott's Ford F250 collided with the Brysons' Ford Escape, Mr. Elliott was speeding.

**RESPONSE:**

Admitted.

**REQUEST NO. 48:**

Admit that Mr. Elliott caused his Ford F250 to collide with the Brysons' Ford Escape.

**RESPONSE:**

Admitted.

**REQUEST NO. 49:**

Admit that when Mr. Elliott's Ford F250 collided with the Brysons' Ford Escape, Mr. Elliott was not applying his brakes.

**RESPONSE:**

Denied. The pre-crash data on Mr. Elliott's CDR shows that Mr. Elliott

applied the brakes shortly before impact.

**REQUEST NO. 50:**

Admit that when Mr. Elliott's Ford F250 collided with the Brysons' Ford Escape, Mr. Elliott was driving in excess of 20 miles per hour.

**RESPONSE:**

Admitted.

**REQUEST NO. 51:**

Admit that when Mr. Elliott's Ford F250 collided with the Brysons' Ford Escape, Mr. Elliott was driving in excess of 30 miles per hour.

**RESPONSE:**

Admitted.

**REQUEST NO. 52:**

Admit that when Mr. Elliott's Ford F250 collided with the Brysons' Ford Escape, Mr. Elliott was driving in excess of 35 miles per hour.

**RESPONSE:**

Admitted.

**REQUEST NO. 53:**

Admit that when Mr. Elliott's Ford F250 collided with the Brysons' Ford Escape, Mr. Elliott was driving in excess of 40 miles per hour.

**RESPONSE:**

Admitted.

**REQUEST NO. 54:**

Admit that when Mr. Elliott's Ford F250 collided with the Brysons' Ford Escape, Mr. Elliott was driving in excess of 50 miles per hour.

**RESPONSE:**

Denied. The CDR data from Mr. Elliott's Ford F-250 indicates that he was traveling **at** 50 miles per hour at the time of impact.

**REQUEST NO. 55:**

Admit that the greater the impact speed in a collision, the greater the occupant injury risk.

**RESPONSE:**

Denied.  Responding further, Defendant's Request for Admission No. 55 is unanswerably vague. Occupant injury risk varies widely based on a series of factors, including occupant positioning, occupant characteristics, direction of movement, geometric engagement, safety systems, and vehicle intrusion. Plaintiffs are unable to broadly admit this Request as asked. Therefore, the Request is denied.

**REQUEST NO. 56:**

Admit that the greater the impact speed in a collision, the greater the kinetic energy.

**RESPONSE:**

Denied. Responding further, Defendant's Request for Admission No. 56 is unanswerably vague. Stating generally that a greater impact speed necessarily

22

produces greater kinetic energy discounts all other potentially influencing factors on such a measurement. Plaintiffs are unable to broadly admit this Request as asked. Therefore, the Request is denied.

**REQUEST NO. 57:**

Admit that there was no mechanical defect or flaw with Mr. Elliott's Ford F250 that contributed to the proximate cause of the collision between it and the Brysons' Ford Escape.

**RESPONSE:**

Admitted. To the extent that Request No. 57 implies that no mechanical defect or flaw with Mr. Elliott's Ford F-250 contributed to the severity and lethality of the collision, Plaintiffs deny that implication since the installation of Rough Country's lift kit caused the fatality of the crash.

Respectfully submitted on April 21, 2023.

CANNELLA SNYDER LLC

*/s/ Tedra L. Cannella*
TEDRA L. CANNELLA
  Georgia Bar No. 881085
  tedra@cannellasnyder.com
ROBERT H. SNYDER, JR.
  Georgia Bar No. 404522
  rob@cannellasnyder.com
RORY A. WEEKS
  Georgia Bar No. 113491
  rory@cannellasnyder.com

DEVIN L. MASHMAN
 Georgia Bar No. 257588
 devin@cannellasnyder.com

315 W. Ponce de Leon Ave.
Suite 885
Decatur, GA 30030
(404) 800-4828
(404) 393-0365 (fax)

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rules 5.1(B) and 7.1(D), I hereby certify that the foregoing filing complies with the applicable font and size requirements and is formatted in 14-point Times New Roman font.

CANNELLA SNYDER LLC

*/s/ Tedra L. Cannella*
TEDRA L. CANNELLA
  Georgia Bar No. 881085
  tedra@cannellasnyder.com
ROBERT H. SNYDER, JR.
  Georgia Bar No. 404522
  rob@cannellasnyder.com
RORY A. WEEKS
  Georgia Bar No. 113491
  rory@cannellasnyder.com
DEVIN L. MASHMAN
  Georgia Bar No. 257588
  devin@cannellasnyder.com

315 W. Ponce de Leon Ave.
Suite 885
Decatur, GA 30030
(404) 800-4828
(404) 393-0365 (fax)

## CERTIFICATE OF SERVICE

This is to certify that on this date, I served the foregoing pleading on the following counsel of record.

Richard H Hill. Esq.
rhill@wwhgd.com
Lindsay G. Ferguson, Esq.
lferguson@wwhgd.com
Claire C. Murray, Esq.
cmurray@wwhgd.com
Aaron Chausmer, Esq.
achausmer@wwhgd.com
Weinberg, Wheeler, Hudgins, Gunn & Dial, LLC
3344 Peachtree Road, N.E,
Suite 2400
Atlanta, GA 30326

This 21st day of April, 2023.

CANNELLA SNYDER LLC

*/s/ Tedra L. Cannella*
TEDRA L. CANNELLA
  Georgia Bar No. 881085
  tedra@cannellasnyder.com
ROBERT H. SNYDER, JR.
  Georgia Bar No. 404522
  rob@cannellasnyder.com
RORY A. WEEKS
  Georgia Bar No. 113491
  rory@cannellasnyder.com
DEVIN L. MASHMAN
  Georgia Bar No. 257588
  devin@cannellasnyder.com
315 W. Ponce de Leon Ave.
Suite 885
Decatur, GA 30030

(404) 800-4828
(404) 393-0365 (fax)