# EXHIBIT "1"

Page 1

```
 1              IN THE UNITED STATES DISTRICT COURT
                 NORTHERN DISTRICT OF GEORGIA
 2                   GAINESVILLE DIVISION
 3  SANTANA BRYSON AND JOSHUA BRYSON, )
    AS ADMINISTRATORS OF THE ESTATE   )
 4  OF C.Z.B., AND AS SURVIVING       )
    PARENTS OF C.Z.B., A DECEASED     )
 5  MINOR,                            )  CIVIL ACTION FILE NO.:
                                      )
 6         Plaintiffs,                )  2:22-CV-17-RWS
                                      )
 7  v.                                )
                                      )
 8  ROUGH COUNTRY, LLC,               )
                                      )
 9         Defendant.                 )
10      _____

11
12           VIDEOTAPED VIDEOCONFERENCE
13           RULE 30(B)(6) DEPOSITION OF
14                RAD J. HUNSLEY
15                 ON BEHALF OF
16              ROUGH COUNTRY, LLC
17        * NONCONFIDENTIAL PROCEEDINGS *
18               August 4, 2023
19                 10:08 a.m.
20            Dyersburg, Tennessee
21
22
23           Jennifer B. Ourada, CCR
24            Certificate No. 2658
25
```

Redacted 30(B)6 Rad J.  Hunsley                August 4, 2023
Bryson, Santana And Joshua Vs. Rough Country, LLC

                                                        Page 2

 1              INDEX OF NONCONFIDENTIAL EXHIBITS
 2      EXHIBIT              DESCRIPTION                 PAGE
 3      For the Plaintiffs:
 4      Exhibit 1      Defendant Rough Country, LLC's      13
                       Second Supplemental Response to
 5                     Plaintiffs' First Interrogatories
                       dated 6/07/2023
 6
        Exhibit 2      Defendant's Brief In Support Of     29
 7                     Motion To Apportion Fault To
                       Non-Party Under State Law
 8                     (Bacho vs. Rough Country, LLC)
                       file-stamped 1/08/2015
 9
        Exhibit 3      Complaint file-stamped 4/26/2010    36
10                     Bates-stamped RC-BRYSON 005360
                       through 005369
11
        Exhibit 4      Photographs from the Mendoza        40
12                     accident scene (6 pages)
13      Exhibit 5      Email chain Bates-stamped           55
                       RC-BRYSON 006869 through 006871
14
        Exhibit 6      Email chain Bates-stamped           62
15                     RC-BRYSON 006963 through 006965
16      Exhibit 7      Motortrend - Lift Laws You Need     65
                       To Know (9 pages)
17
        Exhibit 8      Rough Country website image         71
18                     printout (4 pages)
19          (*Note: Nonconfidential original Exhibits 1
20          through 8 included with original transcript.)
21
22
23
24
25

Page 3

1                    INDEX OF EXAMINATION

2   WITNESS:  RAD J. HUNSLEY

3   EXAMINATION                                      PAGE

4        Cross-examination by Ms. Cannella              6

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Redacted 30(B)6 Rad J. Hunsley                August 4, 2023
Bryson, Santana And Joshua Vs. Rough Country, LLC

                                                      Page 4

```
 1              APPEARANCES OF COUNSEL
 2    On behalf of the Plaintiffs:
 3         Tedra L. Cannella, Attorney at Law
           Robert H. Snyder, Esquire
 4         Devin L. Mashman, Esquire
           Hannah L. Drosky Amanuel, Attorney at Law
 5         Cannella Snyder, LLC
           315 W. Ponce de Leon Avenue, Suite 885
 6         Decatur, Georgia 30030
           (404) 800-4828
 7         tedra@cannellasnyder.com
           rob@cannellasnyder.com
 8         devin@cannellasnyder.com
           hannah@cannellasnyder.com
 9
      On behalf of the Defendant:
10
           Richard H. Hill, II, Esquire.
11         Aaron B. Chausmer, Esquire
           Weinberg, Wheeler, Hudgins, Gunn & Dial, LLC
12         3344 Peachtree Road, NE, Suite 2400
           Atlanta, Georgia 30326
13         (404) 832-9534
           rhill@wwhgd.com
14         rchausmer@wwhgd.com
15    Also Present:
16         Mr. Patrick Just, CFO, Rough County, LLC
17    The Videographer:
18         Mr. Michael Brown, Veritext Legal Solutions
19              (All parties appeared via Zoom video-
20    conference.)
21              (Pursuant to Article 10(B) of the Rules
22    and Regulations of the Georgia Board of Court
23    Reporting, a written disclosure statement was
24    submitted by the court reporter to all counsel
25    present at the proceeding.)
```

Page 5

1              P R O C E E D I N G S

2                                      (10:08 a.m.)

3          THE VIDEOGRAPHER:  We are on the record.

4      The date is August 4th, 2023.  The time on the

5      video monitor is 10:08 a.m.

6          This marks the beginning of Video Number 1

7      of the 30(b)(6) deposition of Rough Country,

8      LLC in the matter of Bryson versus Rough

9      Country, LLC.

10         My name is Mike Brown representing

11     Veritext Legal Solutions; I'm the videographer.

12     Our court reporter is Jennifer Ourada.

13         Would the court reporter please swear in

14     -- I'm sorry -- counsel, please state your

15     names for the record and whom you represent.

16         MS. CANNELLA:  Tedra Cannella, Rob Snyder,

17     Devin Mashman, and Hannah Drosky Amanuel here

18     for the Plaintiffs.

19         MR. HILL:  Rick Hill and Aaron Chausmer

20     here for Defendant, Rough Country.

21         THE VIDEOGRAPHER:  Will the court reporter

22     please swear in the witness.

23         (The oath was remotely administered to the

24     witness by the court reporter.)

25     Whereupon,

Page 6

```
 1                    RAD JASON HUNSLEY,

 2    after having first been duly remotely sworn, testified

 3    as follows:

 4                    CROSS-EXAMINATION

 5    BY MS. CANNELLA:

 6        Q    Good morning.  How are you doing today?

 7        A    Good.  How about yourself?

 8        Q    Good.  And can you tell the jury, please,

 9    your full name and your position at Rough Country?

10        A    Rad Jason Hunsley, and I'm VP of Research

11    and Development for Rough Country.

12        Q    And, Mr. Hunsley, you're here to speak on

13    behalf of Rough Country today.  Correct?

14        A    Yes, ma'am.

15        Q    Is it Rough Country's position that it's

16    perfectly safe to add a 4-inch Rough Country lift

17    kit to a Ford F-250?

18             MR. HILL:  Object to the form.  Go ahead.

19    BY WITNESS:

20        A    Yes.  We believe that -- yes, we believe

21    it is safe to add a 4-inch lift to an F-250.

22    BY MS. CANNELLA:

23        Q    And there was a deposition notice in this

24    case today.

25             Did you get a chance to look at that?
```

Page 7

1        A     Yes.

2        Q     And it had 13 topics in it.  Correct?

3        A     Yes, ma'am.

4        Q     And is it your understanding that Rough

5   Country had a duty to give you all the information

6   it had on the topics in the notice?

7        A     Yes, ma'am.

8        Q     And as part of your preparation for this

9   deposition, did you review Rough Country's sworn

10  responses to Plaintiff's interrogatories?

11       A     Yes, ma'am.

12       Q     And those were sworn under oath by Patrick

13  Just.  Correct?

14       A     Yes, ma'am.

15       Q     Let me ask you this:  Did Rough Country

16  ever consider the possibility of injury because the

17  Rough Country lift raising a striking vehicle, a

18  vehicle that's hitting another vehicle caused the

19  striking vehicle to bypass the other vehicle's frame

20  rails and its crash protection features?

21       A     Yes.  You know, we reviewed, as in this

22  case, the evidence and reports that have been

23  submitted, you know, from this and other, in Bacho.

24  I've reviewed NHTSA, we've reviewed as a company the

25  NHTSA test data regarding lifts -- regarding upper

Redacted 30(B)6 Rad J. Hunsley                August 4, 2023
Bryson, Santana And Joshua Vs. Rough Country, LLC

                                                        Page 8

 1    heights.

 2         Q    Okay.  So if I heard you correctly, you

 3    said that Rough Country reviewed Bacho's reports,

 4    NHTSA literature.

 5              And was there something else that Rough

 6    Country reviewed?  I'm just trying to remember

 7    everything you said.

 8         A    No, that's it.

 9         Q    Do you know what Rough Country reviewed

10    from NHTSA?

11         A    The 2012 study or evaluation, you know,

12    of -- I can't remember what the exact type the

13    document was regarding vehicle compatibility.

14         Q    And so Rough Country is aware that when

15    someone installs a Rough Country lift, that causes

16    vehicles to be less compatible.  Correct?

17              MR. HILL:  Object to the form.  Go ahead.

18    BY THE WITNESS:

19         A    No.  Not to my knowledge, no.

20    BY MS. CANNELLA:

21         Q    Does Rough Country disagree with NHTSA's

22    conclusions in the 2012 paper that you're talking

23    about?

24         A    No.  To my knowledge, their conclusions

25    were relatively inconclusive.

Redacted 30(B)6 Rad J.  Hunsley                    August 4, 2023
Bryson, Santana And Joshua Vs. Rough Country, LLC

Page 9

1       Q     Okay.  So it's Rough Country's position

2    that no one knows if lifting a truck causes --

3    increases the chance of injury in a wreck; is that

4    right?

5       A     We have never been -- I've never been

6    presented with evidence to that, yes.

7       Q     You've never been presented with evidence

8    that injuries can be caused because of a lift kit?

9             MR. HILL:  Object to the form.  Go ahead.

10   BY THE WITNESS:

11      A     Injuries could be caused in any vehicle

12   accident.

13   BY MS. CANNELLA:

14      Q     I'm sorry, can you repeat that?

15      A     I said:  Injuries could be caused in any

16   vehicle accident.

17      Q     And what did Rough Country do to figure

18   out whether its lift kits would increase or cause --

19   increase the chances of injury or death?

20             MR. HILL:  Object to the form.  Go ahead.

21   BY THE WITNESS:

22      A     Basically, you know, we've been selling

23   the kits for 30 years.  And from consumer feedback,

24   we have -- don't have any evidence that the inherent

25   nature of our kits cause any issue.

Page 10

1          THE COURT REPORTER:  Ms. Cannella?

2          MS. CANNELLA:  Yes, ma'am.

3          THE COURT REPORTER:  I'm sorry, can we go

4      off for one moment.

5          MS. CANNELLA:  Yes, ma'am.

6          THE VIDEOGRAPHER:  Off the record, 10:15.

7          (There was a break in the proceedings from

8   10:15 a.m. through 10:17 a.m.)

9          THE VIDEOGRAPHER:  Back on the record.

10     The time is 10:17.

11  BY MS. CANNELLA:

12     Q    All right.  Mr. Hunsley, you said that

13  no -- that Rough Country has no evidence from

14  consumer feedback that its lift kits are causing an

15  issue with injury.

16          Is it Rough Country's testimony that it's

17  waiting for its consumers to tell it if people are

18  getting hurt in crashes because of the lift kit?

19  How would consumers know that?

20     A    Well, we've never had any feedback from

21  any government agencies.  What I mean by

22  "consumers," we've been putting our product in

23  commerce for 30 years.  And with the millions of

24  kits and billions of miles of exposure of our

25  product on the road, we've never had any incidents.

Page 11

```
 1   I don't know of any incidents where the -- where our
 2   kit is clearly defined as being an inherent negative
 3   factor in any type of incident.
 4       Q    All right.  Mr. Hunsley, we're going to
 5   get back to Rough Country's knowledge of incidents
 6   on the road.  So we'll come back to that in a little
 7   bit, but I want to go back to something that you've
 8   already said and my question specifically, which is:
 9   What has Rough Country done to figure out if its
10   lift kits are increasing the chance of injury to
11   people on the road?
12            MR. HILL:  Object to the form.  Go ahead.
13   BY THE WITNESS:
14       A    Again, we -- you know, we've reviewed data
15   from the Bacho case.  In the last ten-plus years,
16   it's really the only one that I personally have had
17   information on regarding analysis, you know, kind of
18   real analysis of our kit, you know, and their effect
19   in a dynamic crash, you know, scenario.  And from
20   those results, there was, you know, no findings or,
21   you know, no findings that warranted any, you know,
22   need for redesign, corrective action, I guess
23   relative to our protocols and components and kit
24   performance.
25       Q    So is it true that what you're saying is
```

Redacted 30(B)6 Rad J.  Hunsley                    August 4, 2023
Bryson, Santana And Joshua Vs. Rough Country, LLC

Page 12

1    all Rough Country has done to figure out if its lift

2    kits cause injury or increase the chances of injury

3    to people on the road is review the information that

4    it received in the Bacho case in 2014.  Correct?

5              MR. HILL:  Object to the form.

6    BY THE WITNESS:

7        A    As far as any specific data relative to

8    kind of our kits, you know, in a dynamic crash

9    scenario, that would be accurate.

10   BY MS. CANNELLA:

11       Q    What data are you talking about?

12       A    The expert reports that were generated

13   from that -- the investigation of that incident.

14       Q    Okay.  So let me go back to my question.

15   Is it just Bacho that RC -- that Rough Country has

16   looked at to figure out if there's any increase in

17   the chance of injury as a result of these lift kits;

18   is that right?

19             MR. HILL:  Object to the form.  Go ahead.

20   BY THE WITNESS:

21       A    Again, their review of NHTSA, you know,

22   testing that's been done.  There was a 2005 test.

23   Again, I don't recall the name of that test where

24   NHTSA had seven or eight different vehicles from

25   different categories, you know, sizes of vehicles

Redacted 30(B)6 Rad J. Hunsley                          August 4, 2023
Bryson, Santana And Joshua Vs. Rough Country, LLC

Page 13

1    that they did frontal and side impact testing on.

2    And I reviewed that data shortly after joining the

3    Rough Country team in 2014 again because the Bacho

4    case was underway at that time.  But that data that

5    was collected by NHTSA back in the early 2000s again

6    provided no conclusivity that the products that we

7    produce would inherently negatively impact vehicle

8    collisions.  There's just a lot of contributing

9    factors that cause a various degree of...

10            MS. CANNELLA:  Move to strike as

11        nonresponsive.

12            (Plaintiffs' Exhibit Number 1 was marked

13        for identification.)

14    BY MS. CANNELLA:

15        Q    Okay.  Mr. Hunsley, let's look at what

16    Rough Country has said in this case.  I'm going to

17    show you the Defendant Rough Country's Second

18    Supplemental Response to Plaintiff's First

19    Interrogatories, which you mentioned you have

20    reviewed; is that right?

21        A    Yes.

22        Q    Okay.  Can you see my screen?

23        A    Yes.

24        Q    Okay.  And we're going to go to

25    Interrogatory Number 6 here.

Redacted 30(B)6 Rad J. Hunsley            August 4, 2023
Bryson, Santana And Joshua Vs. Rough Country, LLC

                                                Page 14

1          Can you see that there?

2      A    Yes.

3      Q    I'm going to focus on the last sentence

4  here (as read):  Describe all work you -- Rough

5  Country -- have done to account for the possibility

6  of such injury, including all tests, design

7  criteria, and performance objectives.

8          Do you see that?

9      A    Yes.

10     Q    Okay.  And there's a number of objections

11 here and multiple attempts to answer the question

12 including one that was ordered by the court.

13         There is no statement in this

14 interrogatory response that Rough Country did

15 anything to account for the possibility of injury or

16 to figure out whether there was any possibility of

17 injury; is that correct?

18     A    We don't feel that our product -- as I

19 said, we don't feel that our product inherently

20 causes an increased risk of injury.

21         MS. CANNELLA:  Move to strike as

22     nonresponsive.

23 BY MS. CANNELLA:

24     Q    Is it correct that Rough Country in its

25 written responses did not provide any information

Redacted 30(B)6 Rad J. Hunsley                    August 4, 2023
Bryson, Santana And Joshua Vs. Rough Country, LLC

Page 15

1    about work it had done to figure out whether its

2    product cause injury?

3              MR. HILL:  Object to the form.  Go ahead.

4    BY THE WITNESS:

5         A    I'm stating that -- again, you know, we

6    have -- the documents that we have reviewed as a

7    company, that I personally have reviewed, you know,

8    even prior to this litigation.

9    BY MS. CANNELLA:

10        Q    Mr. Hunsley, I understand that and you've

11   talked about that, but I need you to answer my

12   specific question that I'm asking.  We've exchanged

13   written responses in this case.  Correct?

14        A    Yes.

15        Q    Okay.  And Plaintiffs asked, quote

16   (as read):  Describe all work done by you to account

17   for the possibility of such injury, including all

18   tests, design criteria, and performance objectives.

19              Is that correct?

20        A    Yes.

21        Q    Okay.  And in response to that in the

22   written discovery, there is no mention of any

23   testing done.  Correct?

24        A    Yes.  We have not personally conducted any

25   testing.  That is accurate.

Page 16

1      Q     You did not do any physical crash tests.

2  Correct?

3      A     That is correct.

4      Q     And Rough Country did not do any computer

5  crash-testing.  Correct?

6      A     No.  No, we have not been directly

7  involved, again other than expert tests that were

8  done for incidents, like for Bacho.

9      Q     I'm sorry.  Has Rough Country done any

10  computer tests to figure out whether its vehicles --

11  whether its lifts can cause injury?

12          MR. HILL:  Object to the form.  Go ahead.

13  BY THE WITNESS:

14      A     No.

15  BY MS. CANNELLA:

16      Q     And Rough Country hasn't done any research

17  about the possibility of creating such tests.

18  Correct?

19      A     You know, we, again in reviewing the data

20  that's out there from NHTSA, there doesn't appear to

21  be any inherent risk, you know, so, no, we don't --

22  I wouldn't know how to create a test to, you know,

23  verify what you're asking.

24          MS. CANNELLA:  Move to strike as

25      nonresponsive.

Redacted 30(B)6 Rad J.  Hunsley          August 4, 2023
Bryson, Santana And Joshua Vs. Rough Country, LLC

Page 17

1    BY MS. CANNELLA:

2       Q    Did Rough Country do any research to

3    figure out how it might design a test to know and to

4    explore and to research whether lift kits can

5    contribute or cause injury in wrecks?

6       A    No, we did not because we don't -- the

7    issue.

8            MS. CANNELLA:  Move to strike as

9        nonresponsive everything after the word "no."

10   BY MS. CANNELLA:

11      Q    Did Rough Country hire any safety

12   companies to explore this question?

13           MR. HILL:  Object to the form.  Go ahead.

14   BY THE WITNESS:

15      A    No, not that I'm aware.

16   BY MS. CANNELLA:

17      Q    Did Rough Country have any meetings with

18   NHTSA about this issue?

19      A    And what issue specifically?

20      Q    The possibility that vehicle mismatch in

21   raising bumpers can cause injury.

22           MR. HILL:  Object to form.  Go ahead.

23   BY THE WITNESS:

24      A    Again any vehicle impact is going to

25   potentially cause injury.  We have not had any

Redacted 30(B)6 Rad J. Hunsley          August 4, 2023
Bryson, Santana And Joshua Vs. Rough Country, LLC

Page 18

1  direct communications with NHTSA regarding our

2  specific product and its impact, you know, on a

3  crash, no.

4          MS. CANNELLA:  Move to strike as

5      nonresponsive.

6  BY MS. CANNELLA:

7      Q    Has Rough Country had any meeting with

8  NHTSA?

9      A    Not that I'm aware of.

10     Q    Is there somebody else at Rough Country

11 who would know the answer to that question with

12 certainty?

13     A    Yeah.  Possibly Ken Dunn -- again, to my

14 knowledge, there's never been communications with

15 NHTSA, not in the eight years that I've been here.

16     Q    And has Rough Country had any meetings

17 with automakers about the problems that can be

18 created by adding aftermarket lifts?

19         MR. HILL:  Object to the form.  Go ahead.

20 BY THE WITNESS:

21     A    Our direct -- you know, I'm aware that the

22 automakers know that our lifts are installed on

23 their product.  And, again, there's no inherent

24 issue with or increased issue with our lifts being

25 installed on their product, to my knowledge.

Redacted 30(B)6 Rad J.  Hunsley              August 4, 2023
Bryson, Santana And Joshua Vs. Rough Country, LLC

Page 19

1            MS. CANNELLA:  Move to strike as

2        nonresponsive.

3    BY MS. CANNELLA:

4        Q    Mr. Hunsley, has RC, has Rough Country had

5    any meetings with representatives of automakers

6    about the problems that can be caused when

7    aftermarket lift kits are installed on vehicles?

8            MR. HILL:  Object to form.  Go ahead.

9    BY THE WITNESS:

10       A    No, not that I'm aware of, that specific

11   topic, no.

12   BY MS. CANNELLA:

13       Q    Isn't it true that RC has never created

14   any design criteria to account for the possibility

15   of increased crash intrusion caused by a vehicle's

16   aftermarket lift?

17           MR. HILL:  Object to the form.  Go ahead.

18           THE WITNESS:  Could you repeat the

19       question again, please?

20   BY MS. CANNELLA:

21       Q    Isn't it true that RC did not create any

22   design criteria to account for the possibility of

23   increased crash intrusion caused by aftermarket

24   lifts?

25           MR. HILL:  Same objection.  Go ahead.

Redacted 30(B)6 Rad J. Hunsley                     August 4, 2023
Bryson, Santana And Joshua Vs. Rough Country, LLC

                                                        Page 20

 1    BY THE WITNESS:

 2        A    Yeah -- no -- yes, I guess, no, we have

 3    not.

 4    BY MS. CANNELLA:

 5        Q    And isn't it true that Rough Country has

 6    not attempted to create any performance criteria to

 7    account for the possibility of increased crash

 8    intrusion caused by aftermarket lifts?

 9            MR. HILL:  Object to the form.  Go ahead.

10    BY THE WITNESS:

11        A    I'm not sure what you're looking for

12    there, the performance of.  We don't believe that

13    the function or performance of our kits intuitively

14    increase any danger to the crashworthiness of any

15    vehicle.

16    BY MS. CANNELLA:

17        Q    Okay.  Mr. Hunsley, where are the meeting

18    minutes from the discussions that Rough Country is

19    saying today it had about the NHTSA study in 2012?

20            MR. HILL:  Object to the form.  Go ahead.

21    BY THE WITNESS:

22        A    There's no formal meeting minutes that I'm

23    aware of.

24    BY MS. CANNELLA:

25        Q    Who was at that meeting?

Redacted 30(B)6 Rad J. Hunsley                    August 4, 2023
Bryson, Santana And Joshua Vs. Rough Country, LLC

                                                Page 21

1            MR. HILL:  Object to form.

2     BY THE WITNESS:

3        A    It would have been, you know, more

4     reviewing of the documents, of the NHTSA documents,

5     you know as they were brought to our company's

6     attention.  You know, for me, specifically, it would

7     have been in 2014 when I joined the firm -- or the

8     company and was, you know, kind of being brought up

9     to speed on the Bacho case that was present at that

10    time.

11    BY MS. CANNELLA:

12       Q    And so was there a meeting about the Bacho

13    case and the NHTSA study?

14       A    No formal meeting.  Just the documents had

15    been, you know, presented to me to review, and me

16    and my colleagues would have discussed them, you

17    know, internally.

18       Q    And who did you discuss them with?

19       A    Ken Dunn, Patrick Just --

20       Q    And what did they -- I'm sorry.  Anybody

21    else?

22       A    Possibly my senior design manager.  I'm

23    not sure.  It's been eight years ago.

24       Q    Okay. And who was the senior design

25    manager at that time?

Page 22

1        A      Bryan Nale.

2        Q      Bryan Nale.  And what was -- what did the

3   people at that meeting say about their conclusions

4   regarding whether lifts increased the possibility of

5   injury or death in wrecks?

6              MR. HILL:  Object to the form.  Go ahead.

7   BY THE WITNESS:

8        A      I think we were all of the same conclusion

9   that there was no evidence of any -- that increased

10  lift of a vehicle again causes an inherent risk.  In

11  the Bacho case, from the expert testimony that I

12  reviewed and the tests that were done actually

13  showed the latter.

14  BY MS. CANNELLA:

15       Q      And the people that you just referenced,

16  none of them are licensed engineers.  Correct?

17       A      Myself and Ken Dunn are degreed engineers.

18             MS. CANNELLA:  Move to strike as

19        nonresponsive.

20  BY MS. CANNELLA:

21       Q      The people that you just discussed, none

22  of them are licensed engineers.  Correct?

23       A      We're degreed engineers; we're not PEs.

24             MS. CANNELLA:  Move to strike as

25        nonresponsive.

Redacted 30(B)6 Rad J. Hunsley                August 4, 2023
Bryson, Santana And Joshua Vs. Rough Country, LLC

Page 23

1    BY MS. CANNELLA:

2        Q    Yes or no:  Are the people you just

3    discussed, none of them are licensed engineers.

4    Correct?

5        A    I guess in the term that you may be

6    saying.  I'm an engineer.  I'm not a professional, I

7    do not hold the professional engineer stamp.

8        Q    And professional engineering is a

9    credential that makes somebody a licensed engineer.

10   Correct?

11       A    I guess possibly in some states, yeah.  I

12   believe that's correct.

13       Q    Thank you.  And your background is, at the

14   time you came to Rough Country and started reviewing

15   the Bacho documents and deciding whether lifts were

16   dangerous, your background was in smokers.  Correct?

17            MR. HILL:  Object to the form.

18   BY THE WITNESS:

19       A    I came from a smoker manufacturing company

20   when I joined Rough Country --

21       Q    What was the -- sorry -- what was the name

22   of that company?

23       A    Southern Pride.  Prior to that --

24       Q    And Southern Pride -- I'm sorry, go ahead.

25       A    Prior to that, I spent 16 years in the

Redacted 30(B)6 Rad J. Hunsley                    August 4, 2023
Bryson, Santana And Joshua Vs. Rough Country, LLC

Page 24

1    motorcycle industry.

2         Q    I understand.  And Southern Pride is the

3    world leader in the commercial rotisserie smoker

4    oven industry.  Correct?

5         A    Yes, ma'am.

6         Q    All right.  And before that, you were at

7    Boss Hog Cycles as their COO.  Correct?

8         A    Yes, ma'am.

9         Q    All right.  And did you ever design any

10   automotive parts as COO of Boss Hog Cycles?

11        A    Yes.  Relative to motorcycles, yes.

12        Q    Okay.  And what were those parts?

13        A    The frame of the motorcycle.  Primarily

14   the frame but also collaborated with the steering,

15   rear suspension, and transmission design for the --

16        Q    Okay.  So you knew at that time that

17   changing the suspension of a vehicle can change its

18   crash dynamics.  Correct?

19        A    Changing the suspension can sometimes

20   cause a change in the performance of the vehicle,

21   yes.

22        Q    And it can change its crash dynamics.

23   Correct?

24        A    Yes, it could make it better or worse.

25        Q    Okay.  Did RC do anything to find out

Redacted 30(B)6 Rad J. Hunsley          August 4, 2023
Bryson, Santana And Joshua Vs. Rough Country, LLC

Page 25

1   whether changing the suspension on the vehicles that

2   it recommended putting these lifts on would change

3   the crash dynamics?

4          MR. HILL:  Object to form.  Go ahead.

5   BY THE WITNESS:

6      A   There is no historical data from Rough

7   Country prior to us even joining the industry that

8   indicates that raising the height of a truck

9   inherently causes increased risk of injury.

10     Q   Well, let me ask you this:  If Rough

11  Country had evidence that increasing the suspension

12  on these vehicles increased the chance of injury,

13  would it stop selling them?

14         MR. HILL:  Object to form.  Go ahead.

15  BY THE WITNESS:

16     A   If we knew any component of our product

17  offering was unsafe, we would take the appropriate

18  actions to correct that issue.

19  BY MS. CANNELLA:

20     Q   Okay.  So would they stop selling them?

21         MR. HILL:  Same objection.  Go ahead.

22  BY THE WITNESS:

23     A   If it was found that that product could

24  not be made reasonably safe, you know, in providing

25  the utility that was requested or required of the

Page 26

1  consumer, then, yes, I would assume we would.

2  BY MS. CANNELLA:

3      Q    Okay.  Do you agree it's foreseeable that

4  an F-250 with an RC lift will be in a collision?

5      A    Yes.  Any vehicle could be involved in a

6  collision, yes.

7      Q    Okay.  And do you agree it's foreseeable

8  that an F-250 with a Rough Country lift will crash

9  into the rear of a car?

10     A    Yes, there's a potential for that.

11     Q    And do you agree it's foreseeable that an

12 F-250 with a Rough Country lift -- to collide with a

13 vehicle that has a child restrained in the backseat?

14     A    Yes.  Vehicles -- collisions could happen

15 in a multitude of configurations, yeah.

16     Q    And so you agree it's foreseeable that a

17 Rough Country lifted vehicle can crash into a car

18 that has a child restrained in the backseat?

19     A    Yes, ma'am.

20     Q    Okay.  Now, you and Rough Country have

21 been investigating the collision in this case for

22 some time.  Correct?

23     A    Yes, ma'am.

24     Q    You personally inspected the vehicles

25 involved in this collision; is that right?

Redacted 30(B)6 Rad J. Hunsley          August 4, 2023
Bryson, Santana And Joshua Vs. Rough Country, LLC

Page 27

1          A     Yes, ma'am.

2          Q     You looked at the F-250 with the lift.

3     Right?

4          A     Yes, ma'am.

5          Q     And you also inspected the Ford Escape

6     that the Brysons were in at the time of the wreck?

7          A     Yes, ma'am.

8          Q     Okay.  And you made recordings of those

9     inspections; is that right?

10          A     I took some pictures, yes, out there, yes,

11     ma'am.

12          Q     And you also used a voice recorder to make

13     notes.  Correct?

14          A     No, I don't recall making any voice

15     recording.

16          Q     Okay.  If you did make voice recordings,

17     would you still have those?

18          A     Yeah.  Like I said, I don't -- I don't

19     typically do that, so I don't know that that was

20     done.

21          Q     Did anybody tell you to make those

22     recordings?

23          A     No.

24          Q     Okay.  Isn't it true that Rough Country

25     claims that the only reason Cohen Bryson died was

Page 28

```
 1   because the striking driver caused the crash?

 2              MR. HILL:  Object to form.  Go ahead.

 3              THE WITNESS:  What was the question again?

 4   BY MS. CANNELLA:

 5        Q    Isn't it true that Rough Country claims

 6   the only reason Cohen Bryson died was because the

 7   striking driver caused the crash?

 8              MR. HILL:  Same objection.  Go ahead.

 9   BY THE WITNESS:

10        A    I believe the manner in which the driver

11   operated the vehicle, yes, caused the injuries.

12   BY MS. CANNELLA:

13        Q    And the striking driver in this case was

14   the one who was using the Rough Country lift; is

15   that right?

16        A    Yes, ma'am.

17        Q    The people who have these lifts, those are

18   Rough Country's customers.  Right?

19        A    Yes, ma'am.

20        Q    And isn't it true it's straight out of

21   Rough Country's playbook to blame Rough Country's

22   own customers?

23              MR. HILL:  Object to the form.

24   BY THE WITNESS:

25        A    No, I do not agree with that.
```

Redacted 30(B)6 Rad J. Hunsley                    August 4, 2023
Bryson, Santana And Joshua Vs. Rough Country, LLC

Page 29

1    BY MS. CANNELLA:

2        Q    As Rough Country's representative charged

3    with investigating this case and as we've discussed

4    today already, you know about the Bacho versus Rough

5    Country lawsuit filed March 26, 2014.  Correct?

6        A    Yes, ma'am.

7        Q    And that case involved a minor child that

8    was killed.  Correct?

9        A    Yes, ma'am.

10       Q    And in that case, the Plaintiff alleged

11   that the subject lift kit raised the height of the

12   subject truck's front bumper.  When the subject

13   truck impacted the Plaintiff's vehicle, the

14   side-impact protection on the Plaintiff's vehicle

15   was overridden.  Correct?  That was the allegation?

16       A    That was the allegation from Plaintiff,

17   yes.

18       Q    From the Plaintiff.  And the Plaintiff

19   also said that that override caused the front bumper

20   to intrude into the occupant compartment of the

21   Plaintiff's vehicle and strike the Plaintiff's

22   decedent resulting in her fatal injuries.  Correct?

23       A    I believe that's what they claimed, yes.

24            (Plaintiffs' Exhibit Number 2 was marked

25   for identification.)

Veritext Legal Solutions

Redacted 30(B)6 Rad J. Hunsley                    August 4, 2023
Bryson, Santana And Joshua Vs. Rough Country, LLC

Page 30

1    BY MS. CANNELLA:

2        Q    Okay.  I'm going to share with you a

3    document that Rough Country produced in this case,

4    the apportionment of fault notice from January 8th,

5    2018.

6             Do you see that document?

7        A    Yes, ma'am.

8        Q    Okay.  And the title there is, Defendant's

9    Brief in Support of Motion to Apportion Fault to a

10   Nonparty, correct, under state law?

11       A    Yes, ma'am.

12       Q    Okay.  And the Defendant is Rough Country,

13   formerly known as Heckethorn Products.  Correct?

14       A    Yes, ma'am.

15       Q    Okay.  And let's go to the last page of

16   this.  The date on it is January 8th, 2015.

17   Correct?

18       A    Yes, ma'am.

19       Q    And that was eight and a half years ago?

20       A    Yes, ma'am.

21       Q    Okay.  I'm going to move to the second

22   page, the last sentence there.  Rough Country says

23   (as read):  Taylor Long -- and then gives the

24   address -- Mr. Long ran a red light because of

25   inattentiveness due to talking on his cell phone

Page 31

1    with his girlfriend, which caused the crash and all

2    of Plaintiffs' resulting injuries and damages.

3           Did I read that correctly?

4       A    Yes, ma'am.

5       Q    Mr. Long was the driver of the lifted

6    truck in the Bacho case.  Correct?

7       A    Yes, ma'am.

8       Q    And Mr. Long was Rough Country's customer.

9    Correct?

10      A    Yes, ma'am.

11      Q    Isn't it true that Rough Country has been

12   trying to avoid responsibility for its defective

13   lifts for at least eight and a half years by blaming

14   Rough Country's own customers?

15           MR. HILL:  Object to the form.  Go ahead.

16   BY THE WITNESS:

17      A    No, that's not accurate.

18   BY MS. CANNELLA:

19      Q    Isn't it true that Rough Country knows

20   that trucks that have Rough Country lifts are going

21   to be in crashes?  We've talked about that.

22   Correct?

23      A    Yes, ma'am.

24      Q    And isn't it true that Rough Country knows

25   trucks that with Rough Country lifts have to be

Redacted 30(B)6 Rad J. Hunsley          August 4, 2023
Bryson, Santana And Joshua Vs. Rough Country, LLC

Page 32

1   designed to be safe in crashes?

2          MR. HILL:  Object to the form.  Go ahead.

3   BY THE WITNESS:

4       A    The auto manufacturers that design these

5   vehicles go through extensive testing and analysis

6   to make sure that the vehicles are safe on the

7   roads --

8   BY MS. CANNELLA:

9       Q    And the automakers -- oh, I'm sorry, I

10  didn't mean to interrupt you.  Go ahead and finish.

11      A    And then we go through extensive design of

12  our products to ensure that our lifts maintain the

13  OE performance.

14      Q    Can you say that last part again?  That

15  Rough Country goes through extensive what?

16      A    We design our product to ensure the

17  performance of the OE vehicle is maintained, from a

18  suspension handling perspective.

19      Q    Okay.  We're going to get back to that,

20  both of those things.

21          But, first, isn't it true that if trucks

22  didn't get in crashes, they wouldn't need seat

23  belts.  Correct?

24          MR. HILL:  Object to form.  Go ahead.

25

Redacted 30(B)6 Rad J.  Hunsley          August 4, 2023
Bryson, Santana And Joshua Vs. Rough Country, LLC

Page 33

```
 1   BY THE WITNESS:

 2       A    Yeah, I guess you're probably accurate.

 3   BY MS. CANNELLA:

 4       Q    And isn't it true that if trucks didn't

 5   get in crashes, they wouldn't need airbags.

 6   Correct?

 7            MR. HILL:  Same objection.

 8   BY THE WITNESS:

 9       A    Yes.  The intention of an airbag is to

10   lessen the severity of impact in the crash, yes.

11   BY MS. CANNELLA:

12       Q    And Rough Country agrees that trucks do

13   need seat belts and airbags.  Right?

14       A    Yes.

15       Q    Okay.  And isn't it true that Rough

16   Country knows that Rough Country lifts have to be

17   designed to be safe in crashes because crashes

18   happen?

19            MR. HILL:  Object to form.  Go ahead.

20   BY THE WITNESS:

21       A    Yes, we -- I would agree with that.

22   BY MS. CANNELLA:

23       Q    And isn't it true that Rough Country

24   blames its own customers for injuries and deaths

25   that happen in crashes involving Rough Country
```

Redacted 30(B)6 Rad J.  Hunsley                    August 4, 2023
Bryson, Santana And Joshua Vs. Rough Country, LLC

Page 34

1   products, but Rough Country never tells those people

2   that they could kill someone if they choose to use a

3   Rough Country lift?

4            MR. HILL:  Object to the form.

5   BY THE WITNESS:

6       A    It could be false -- they -- that's false

7   because that would -- you're insinuating that the

8   lift of a truck inherently causes an increased risk

9   of severity in a crash, which is not accurate.

10  BY MS. CANNELLA:

11      Q    Does Rough Country agree that the Brysons

12  did nothing wrong?

13           MR. HILL:  Object to the form.  Go ahead.

14  BY THE WITNESS:

15      A    Yeah.  I don't know of anything that the

16  Brysons could have done differently at this point.

17  BY MS. CANNELLA:

18      Q    And does -- I'm sorry.  Finish that.

19      A    Based on what I know of the evidence, you

20  know, of what I've reviewed at this point.

21      Q    And does Rough Country agree that the

22  Bachos back in 2014, in the 2014 case, that the

23  Bachos did nothing wrong?

24      A    No.  I don't know of anything that they

25  did, no.

Redacted 30(B)6 Rad J.  Hunsley                    August 4, 2023
Bryson, Santana And Joshua Vs. Rough Country, LLC

Page 35

1      Q    Isn't it true that both families were

2    stopped at red lights when these fatal crashes

3    happened?

4      A    I believe that in the Bacho case, they

5    were actually traversing through an intersection

6    when they were impacted.

7      Q    Does Rough Country agree that neither

8    family, neither the Brysons nor the Bachos, had a

9    choice about whether the person that hit them had

10   installed a Rough Country lift on their vehicle?

11     A    They had no bearing to what vehicle could

12   have impacted them.

13           MS. CANNELLA:  Move to strike as

14       nonresponsive.

15   BY MS. CANNELLA:

16     Q    Does Rough Country agree that neither

17   family, neither the Brysons nor the Bachos, had a

18   choice about whether the person that hit them chose

19   to install a Rough Country lift on their vehicle?

20     A    I would agree.

21     Q    And do you agree that as long as Rough

22   Country continues to sell 4-inch-and-higher lift

23   kits, Georgia motorists and their families are

24   powerless to avoid any injuries they cause?

25           MR. HILL:  Object to form.  Go ahead.

Redacted 30(B)6 Rad J. Hunsley         August 4, 2023
Bryson, Santana And Joshua Vs. Rough Country, LLC

Page 36

1   BY THE WITNESS:

2        A    I don't know of any -- Rough Country knows

3   of no evidence of increased injury to the public by

4   lifting a vehicle.

5   BY MS. CANNELLA:

6        Q    Is it true that Rough Country has not

7   warned the general public that there could be any

8   risk of lifted vehicles bypassing crash protections

9   of other vehicles?

10            MR. HILL:  Object to form.  Go ahead.

11   BY THE WITNESS:

12       A    No.  We have never -- we don't know of any

13   evidence that would indicate that, what you're

14   stating.

15   BY MS. CANNELLA:

16       Q    I want to ask you about the Mendoza versus

17   Heckethorn Products, doing business as Rough Country

18   Suspension Systems case.

19            Do you know about that case?

20       A    Very little.  But I mean, I haven't seen

21   any, you know, pleadings or responses to anything in

22   that case.  I know that there was a -- I believe a

23   side-impact crash.

24            (Plaintiffs' Exhibit Number 3 was marked

25   for identification.)

Page 37

1    BY MS. CANNELLA:

2        Q    I'm going to show you -- and, Devin, this

3    is not in my folder, it's in yours -- I'm going to

4    show you the Complaint from that case.

5              Do you see that on the screen?

6        A    Yes.

7        Q    I'm sorry, can you repeat that?

8        A    Yes, ma'am, I can see it now.

9        Q    Okay.  And that's a case by the Mendoza

10   family against Rough Country and other people.

11   Correct?

12       A    Yes, ma'am.

13       Q    Okay.  And if we go to page --

14   Bates-marked 5366 -- this was in the documents that

15   Rough Country produced in this case.  Correct?  You

16   can see the Bates number there at the bottom?

17       A    Yes.

18       Q    So going to 5366, the Complaint says that

19   (as read):  The lift kit was defectively designed

20   because, once installed, it results in an

21   unreasonably dangerous bumper height on the subject

22   vehicle.

23              Correct?  Did I read that correctly from

24   (a) right there?

25       A    Yeah.  I would assume that's what the

Redacted 30(B)6 Rad J. Hunsley          August 4, 2023
Bryson, Santana And Joshua Vs. Rough Country, LLC

Page 38

1    Plaintiff is saying, yes.

2        Q    Okay.  And it also says that -- in the

3    next paragraph, that (as read):  The lift kit was

4    defective and unreasonably dangerous because, once

5    it was installed, it resulted in unreasonably

6    dangerous bumper height that bypasses most, if not

7    all, safety protections afforded by passenger

8    vehicles in foreseeable accidents.

9            Correct?

10       A    Yes.  Again, that's the statement from the

11   Plaintiffs, yes.

12       Q    Okay.  And this notice was given to Rough

13   Country, let's see...

14           Do you know the date that Rough Country

15   was sued in this case?

16       A    2010, it looks like.

17       Q    2010.  Correct.  Okay.  So after the

18   Mendoza case, did Rough Country have any other

19   meetings that we talked about earlier where the

20   executives got together and decided that the

21   evidence was enough to prove that Rough Country

22   lifts caused injuries?

23           MR. HILL:  Object to the form.  Go ahead.

24   BY THE WITNESS:

25       A    That was prior to my employment here, so I

Page 39

1    really can't speak to it.

2    BY MS. CANNELLA:

3         Q    Has anyone ever told you about any --

4         A    No.  You know, other than, no.

5              MR. HILL:  If you can hear us, you're

6         frozen on our end.

7              THE COURT REPORTER:  Ms. Cannella is

8         frozen at my end.  Is everyone else still on?

9              MR. HILL:  Yes.  Rob?  It appears he may

10        be frozen too.

11             THE VIDEOGRAPHER:  All right.  Let's go

12        off the record, 10:53.

13             (There was a break in the proceedings from

14   10:53 a.m. through 11:19 a.m.)

15             THE VIDEOGRAPHER:  Back on the record.

16        The time is 11:19.

17   BY MS. CANNELLA:

18        Q    All right.  Mr. Hunsley, we were

19   interrupted there, but we were talking about the

20   Mendoza case from 2010.  Correct?

21        A    Yes, ma'am.

22        Q    All right.  And you mentioned that that

23   was before you joined Rough Country, but part of

24   your responsibility today is to have all the

25   information that Rough Country has about the topics

Page 40

1    in the deposition notice.  Correct?

2         A    Yes, ma'am.

3         Q    Okay.  And you would testify that one of

4    the things that Rough Country does is monitor

5    complaints about injuries caused by its lift kits.

6    Correct?

7              MR. HILL:  Object to the form.  Go ahead.

8    BY THE WITNESS:

9         A    Yes, ma'am.

10        Q    Yes?  And is it your testimony that nobody

11   at Rough Country told you about this particular

12   complaint of Rough Country kits causing injury?

13        A    As I stated before, the Mendoza was

14   referenced I think in Bacho also, so, yeah, there

15   was some reference there.

16             (Plaintiffs' Exhibit Number 4 was marked

17   for identification.)

18   BY MS. CANNELLA:

19        Q    Okay.  So you do know about it, so I'm

20   going to ask you some questions about it.  First, I

21   want to show you some pictures from the Mendoza

22   case.

23             Can you see that picture on the screen?

24        A    Yes, ma'am.

25        Q    All right.  And I'll represent to you that

Case 2:22-cv-00017-RWS  Document 97  Filed 08/15/24  Page 42 of 113
Redacted 30(B)6 Rad J. Hunsley          August 4, 2023
Bryson, Santana And Joshua Vs. Rough Country, LLC

Page 41

1    that's a picture from the Mendoza crash.

2              Have you ever seen that picture before?

3        A    I personally have not.

4        Q    Okay.  Does it appear to you that the

5    lifted truck is lifted in a way that it goes above

6    the crash protections of the vehicle that's been

7    struck?

8              MR. HILL:  Object to the form, but go

9         ahead.

10   BY THE WITNESS:

11       A    I can't state that it would be -- override

12   or lifted above all the crash protections in the

13   vehicle.

14   BY MS. CANNELLA:

15       Q    Mr. Hunsley, what did Rough Country do

16   after it saw this picture to figure out if lifting

17   trucks was going to cause those trucks to override

18   crash protections in other vehicles?

19             MR. HILL:  Object to the form.  Go ahead.

20   BY THE WITNESS:

21       A    Based on my knowledge of the case, the

22   evidence -- the studies that were done did not

23   provide us any information that the lifted vehicle

24   was the cause of the -- whatever the injuries that

25   were sustained.  I'm not privy to the details of

Page 42

1    whatever the injuries were in that accident.

2    BY MS. CANNELLA:

3        Q    Well, what study are you talking about?

4    This was in 2010.  Correct?

5        A    Yeah -- yes.

6        Q    What study did Rough Country review to

7    determine that its lifts didn't cause injuries in

8    2010?

9        A    I'm saying I'm not aware of any expert

10   witness testimony that concluded that the lift kit

11   was the contributing factor to the -- to any

12   injuries.

13       Q    Mr. Hunsley, do you agree that Rough

14   Country has a duty to consumers to make sure its

15   products are safe, even if it doesn't get sued; is

16   that correct?

17           MR. HILL:  Object to the form.  Go ahead.

18   BY THE WITNESS:

19       A    I believe we have a duty to make sure our

20   products are safe, yes, when we're informed that

21   there is an issue.

22   BY MS. CANNELLA:

23       Q    Does Rough Country have any duty to

24   investigate whether its own products are safe?

25           MR. HILL:  Same objection.  Go ahead.

Page 43

1    BY THE WITNESS:

2        A    Basically the same response.  You know,

3    whenever we're notified that there is an issue with

4    the performance of our kit, yes, I feel that we have

5    a duty to investigate and take appropriate action.

6    BY MS. CANNELLA:

7        Q    And what did Rough Country do after it was

8    informed of the Mendoza case?  What did Rough

9    Country do to figure out if its product was safe

10   after the Rough Country -- the Mendoza versus Rough

11   Country case?

12            MR. HILL:  Object to the form.  Go ahead.

13   BY THE WITNESS:

14       A    Again, based on the -- kind of the

15   conclusion of the evidence in that case, I don't

16   think there was any evidence that warranted any

17   redirection of the design of our product.

18       Q    Did Rough Country do a crash test to

19   decide that?

20       A    To the best of my knowledge, there was not

21   a crash test done to simulate the Mendoza case.

22       Q    Did it do any computer crash testing to

23   figure that out?

24       A    Again, not to my knowledge, but, again, I

25   have not reviewed all of the documents or are privy

Page 44

1    to necessarily all the documents in the Mendoza

2    case.

3        Q    Has anyone told you about any crash

4    testing or computer-aided design testing?

5        A    No, ma'am.

6        Q    Okay.  And did Rough Country call up the

7    manufacturer of that truck and say, hey, what

8    happens if we lift this truck?  Is that dangerous?

9    Does that change the crash vehicle dynamics?

10           MR. HILL:  Object to the form.

11   BY THE WITNESS:

12       A    No.  We didn't have any specific

13   communications with the OE manufacturer of the

14   truck.  Again, we design our lift kits to maintain

15   performance -- handling performance characteristics

16   (indiscernible audio).

17           MS. CANNELLA:  Can you guys hear

18       Mr. Hunsley okay?  Yeah, I think you've got to

19       maybe speak up a little bit.

20           THE WITNESS:  Okay.  Sorry.

21           MS. CANNELLA:  Okay.  Thank you.

22           THE COURT REPORTER:  I'm sorry, could you

23       repeat the answer because it was all broken up.

24           THE WITNESS:  Please repeat the question.

25           MS. CANNELLA:  Jennifer, could you give us

Redacted 30(B)6 Rad J. Hunsley          August 4, 2023
Bryson, Santana And Joshua Vs. Rough Country, LLC

Page 45

1        the question again?  I'm sorry.  You're muted.

2              THE COURT REPORTER:  I'm sorry.

3              MS. CANNELLA:  It's okay.

4              (The last question was read back by the

5        court reporter.)

6        BY THE WITNESS:

7        A     My response is:  No.  We did not have any

8        direct communications with the OE manufacturer

9        regarding the Mendoza case.

10       BY MS. CANNELLA:

11       Q     And by "OE manufacturer," you mean the

12       automaker?

13       A     Yes, the manufacturer of that truck.

14       Q     Gotcha.  Okay.  You testified earlier that

15       automakers go through extensive testing to make sure

16       the truck is safe.

17             Did I remember that correctly?  Am I

18       paraphrasing correctly?

19       A     Yes, ma'am.

20       Q     Isn't it true automakers tell people not

21       to raise the suspension of their vehicles?

22             MR. HILL:  Object to the form, but go

23       ahead.

24       BY THE WITNESS:

25       A     They may tell, you know, the end users

1    that are -- I would say -- but not the proper

2    evaluation of any product that would alter the

3    vehicle to do such, yes.

4    BY MS. CANNELLA:

5        Q    I'm sorry, I didn't understand.  I think

6    your answer to the question is yes.

7             But isn't it true that automakers tell

8    people not to raise the suspension on their

9    vehicles?

10            MR. HILL:  Object to the form.  Go ahead.

11   BY THE WITNESS:

12       A    The truck automakers are all aware that

13   Rough Country and others in our industry create kits

14   that lift their trucks.

15            MS. CANNELLA:  Move to strike as

16       nonresponsive.

17   BY MS. CANNELLA:

18       Q    You testified that automakers go through

19   extensive testing to make sure their trucks are

20   safe.

21            And my question to you is:  Isn't it true

22   that automakers tell people not to raise the

23   suspension on their trucks?

24            MR. HILL:  Same objection.

25

Page 47

1    BY THE WITNESS:

2         A     The only statement that I'm aware of

3    relative to that is in the some owners (phonetic)

4    where they tell you, being the end user, not to

5    modify their vehicle.  Again, a company like Rough

6    Country where we evaluate and engineer the

7    performance of our product to maintain the integrity

8    of the O.E. vehicle, that's what we do.

9    BY MS. CANNELLA:

10        Q     Mr. Hunsley, that's not a true statement,

11   is it?

12        A     Yes, I believe it to be true.

13        Q     Rough Country has no idea whether it's

14   maintaining the integrity of the Ford F-250 in this

15   case 'cause it hasn't done any crash tests, has it?

16             MR. HILL:  Object to the form.  Go ahead.

17   BY THE WITNESS:

18        A     No.  We do -- again, from the performance

19   of our vehicle -- the performance of the truck with

20   our kit, you know, we're unaware of any performance

21   features that it doesn't maintain.

22   BY MS. CANNELLA:

23        Q     Rough Country's position is that it's

24   unaware of any performance features that the lift

25   kit doesn't maintain.

Page 48

1          Did I hear that correctly?

2     A    Yes, ma'am.

3     Q    Isn't it true that Rough Country doesn't

4    want to know if its lifts make vehicles more

5    dangerous in a crash?

6          MR. HILL:  Object to form.

7    BY THE WITNESS:

8     A    No, that's not accurate.

9    BY MS. CANNELLA:

10    Q    Okay.  Well, you talked about the 2012

11   study that Rough Country reviewed by NHTSA.

12   Correct?

13    A    Yes, ma'am.

14    Q    All right.  And that's the study written

15   by Nathan Greenwell.  Correct?

16    A    I mean, I'm not looking at it.  I would

17   have to agree with you, yes.

18    Q    Okay.  And it was about the

19   vehicle-to-vehicle crash compatibility agreement.

20   Correct?

21    A    Yes, ma'am.

22    Q    Rough Country is aware of that agreement.

23   Correct?

24    A    Yes, ma'am.

25    Q    All right.  And Rough Country reviewed

Page 49

1   that 2012 study cover to cover.  Correct?

2        A    Yes, ma'am.

3        Q    All right. and it's Rough Country's

4   position that NHTSA's findings in that paper were

5   not enough to cause Rough Country to consider

6   changing the design of its lifts; is that a fair

7   statement?

8        A    Yes, ma'am.

9        Q    And it's Rough Country's position that

10  NHTSA's findings in that study were not even enough

11  to cause Rough Country to do its own testing.

12  Correct?

13       A    Yes.  We wouldn't even know what testing,

14  you know, what tests would be asked to be done and

15  what potential results you or the consumer would be

16  looking for and/or us.

17       Q    And Rough Country doesn't want to know.

18  Correct?

19            MR. HILL:  Object to the form.

20  BY THE WITNESS:

21       A    Again, that's not correct.

22  BY MS. CANNELLA:

23       Q    Well, has Rough Country -- has Rough

24  Country hired anyone who knows how to test vehicles?

25            MR. HILL:  Object to the form.  Go ahead.

Redacted 30(B)6 Rad J. Hunsley                          August 4, 2023
Bryson, Santana And Joshua Vs. Rough Country, LLC

Page 50

1    BY THE WITNESS:

2         A    We've never hired anyone to directly test

3    our product.  Again, we make products for 80-plus

4    different applications, and there's an infinite

5    number of vehicles that our product could be

6    involved with.  Again, there's no structured test

7    that we're even aware of that could be conducted, as

8    you're insinuating -- specific to a lifted vehicle.

9    BY MS. CANNELLA:

10        Q    I'm sorry?

11        A    Specific to a lifted vehicle.

12        Q    One of the things that you testified about

13   earlier was that Rough Country doesn't know of

14   incidents where its lifts have caused injury in real

15   road crashes.  Correct?  Is that a fair paraphrase?

16        A    I'm not saying that there hasn't been

17   wrecks with lifts where injuries were caused.

18   That's not what I'm saying.  I don't know that the

19   injuries that were sustained in any event involving

20   a Rough Country lift caused those injuries to be any

21   more severe.

22        Q    Okay.  Correct me if I'm wrong, but I

23   thought earlier today you testified that Rough

24   Country considers the fact that its customers have

25   not complained about injuries being caused by lifts;

Redacted 30(B)6 Rad J.  Hunsley                 August 4, 2023
Bryson, Santana And Joshua Vs. Rough Country, LLC

Page 51

1   is that correct?

2            MR. HILL:  Object to the form.  Go ahead.

3   BY THE WITNESS:

4       A    I'm stating that -- yes, customer

5   complaints, you know, either general complaints or

6   via any lawsuits similar to Bacho and Mendoza, we've

7   had no -- other than Bacho and Mendoza in the

8   30-year history of this company, I'm unaware of any,

9   you know, height or override complaints or

10  notifications.

11  BY MS. CANNELLA:

12      Q    Mr. Hunsley, if Rough Country doesn't know

13  or claims not to know how to figure out if lifts are

14  causing these injuries, how is it that Rough Country

15  expects people like the Brysons or the Mendozas or

16  the Bachos or anybody else who has been in a wreck

17  with one of these vehicles to figure out if the lift

18  kit caused or contributed to injuries and death?

19           MR. HILL:  Object to the form.  Go ahead.

20  BY THE WITNESS:

21      A    Again, I would say that the document that

22  you referenced regarding the NHTSA

23  vehicle-to-vehicle, that it really wasn't testing

24  the analysis of that over I believe nearly a

25  ten-year period that indicated that, you know, when

Redacted 30(B)6 Rad J. Hunsley          August 4, 2023
Bryson, Santana And Joshua Vs. Rough Country, LLC

Page 52

1   bumper alignment was changed or altered in pickup

2   trucks, they actually have seen an increased risk of

3   injury or fatality.  So, again, there's no evidence

4   that we've been made aware of that the inherent

5   nature of lifting, installing our kit on a vehicle

6   increases the chance of injury to another vehicle.

7            MS. CANNELLA:  Move to strike as

8        nonresponsive.

9   BY MS. CANNELLA:

10       Q    Mr. Hunsley, is it Rough Country's

11   position that it needs to hear from consumers that

12   its lifts are causing injuries before it takes that

13   risk seriously?

14            MR. HILL:  Object to the form.  Go ahead.

15   BY THE WITNESS:

16       A    No.  I mean, we -- you know, if we hear

17   from consumers, government agencies, any entity, we

18   would take it serious.

19   BY MS. CANNELLA:

20       Q    Okay.  And what does Rough Country do to

21   check and see if its lifts -- if lifted vehicles are

22   involved in fatal crashes?

23            MR. HILL:  Object to the form.  Go ahead.

24   BY THE WITNESS:

25       A    One, I don't know of any published crash

Redacted 30(B)6 Rad J. Hunsley          August 4, 2023
Bryson, Santana And Joshua Vs. Rough Country, LLC

Page 53

1   data that specifically indicates the configuration

2   of the vehicles, whether they've been modified or

3   unmodified.

4   BY MS. CANNELLA:

5        Q     Are you aware of the FARS database?

6        A     Yes, ma'am.

7        Q     And do you agree that the FARS database

8   catalogs every death in every vehicle crash that

9   causes death?

10       A     I believe that's accurate.

11       Q     Okay.  And does Rough Country monitor that

12  database?

13       A     Not on a regular basis.

14       Q     Has it ever monitored the FARS database?

15       A     I'm not sure other than, again, the

16  reports that NHTSA has published based on the

17  analysis of that data, like the 2012.

18       Q     So Rough Country has never done any

19  regular monitoring of the FARS database.  Correct?

20       A     No, ma'am.

21       Q     Okay.  It's read one paper that uses FARS

22  crash data.  Correct?

23       A     I believe the 2005 NHTSA study references

24  FARS data as well.  I think there was a -- there's

25  probably been at least one National Institute.

Redacted 30(B)6 Rad J.  Hunsley                August 4, 2023
Bryson, Santana And Joshua Vs. Rough Country, LLC

Page 54

1   Maybe that was included in one of the NHTSA studies,
2   too, but there's been...
3        Q    Which 2005 study are you talking about?
4        A    I'm not -- I don't know exactly what the
5   title of it was.  It was something that was
6   presented during the Bacho case, I believe, and it
7   was part of the information I reviewed, you know,
8   when this claim came about but also back in 2014
9   when I joined the team and I was reviewing the Bacho
10  case.
11       Q    What other studies have you or anyone else
12  at Rough Country reviewed about the risk of
13  increased injury or death as a result of lifted
14  vehicles?
15            MR. HILL:  Object to the form.  Go ahead.
16  BY THE WITNESS:
17       A    None other to my knowledge.
18  BY MS. CANNELLA:
19       Q    Just those two.  Correct?
20       A    Those are the primary two, yes.  Those are
21  the two.
22       Q    Any others?
23       A    Not that I can recall, no, at the moment.
24       Q    All right.  I want to talk about one other
25  thing with you today, and then I'm going to let my

Page 55

1   co-counsel talk about the financial items.

2   Mr. Hunsley, would you agree -- would Rough Country

3   agree that Rough Country has known since at least

4   24 -- I'm sorry, let me start over.

5           Isn't it true that Rough Country has known

6   that since at least 2014 about allegations that its

7   products override the safety features of other

8   vehicles in a collision?

9       A   Yes.  That's when allegations were made,

10  yes.

11      Q   And isn't it true that Rough Country knew

12  about those allegations outside of the context of

13  lawsuits?

14      A   Not to my knowledge.

15          (Plaintiffs' Exhibit Number 5 was marked

16  for identification.)

17  BY MS. CANNELLA:

18      Q   No?  I'm going to show you a December 22,

19  2014 email between some members of Rough Country's

20  executive team and a gentleman named Walt Bradshaw.

21          MS. CANNELLA:  That's the 4:27 p.m. email,

22      Devin.

23          MR. MASHMAN:  Thank you.

24  BY MS. CANNELLA:

25      Q   Can you see my screen, Mr. Hunsley?

Redacted 30(B)6 Rad J. Hunsley                    August 4, 2023
Bryson, Santana And Joshua Vs. Rough Country, LLC

Page 56

1        A    Yes, I can now.

2        Q    Okay.  And I'm going to go to the

3    beginning of the string.  This is an email that

4    starts with Brad -- Walt Bradshaw to Ken Dunn.

5    Correct?

6        A    Yes, ma'am.

7        Q    Okay.

8             MS. CANNELLA:  And we'll number this

9        Plaintiff's Exhibit 4, correct, Devin?

10             MR. MASHMAN:  I believe it's 5.

11             MS. CANNELLA:  Oh, 5?  Okay.  Thank you.

12    BY MS. CANNELLA:

13        Q    And Ken Dunn is Rough Country's CEO.

14    Correct?

15        A    Yes.

16        Q    Okay.  And then later in the string, a

17    gentleman named Patrick Just gets added to the

18    string, correct, and he's -- I'm sorry -- correct?

19        A    Yes, ma'am.

20        Q    All right.  And Patrick Just is Rough

21    Country's CFO; is that right?

22        A    Yes, ma'am.

23        Q    All right.  And at 9:22, Mr. Bradshaw

24    sends an email to Ken Dunn and Patrick Just and says

25    (as read):  One company has asked if we have any

Page 57

1    specific response to the allegation that the

2    insured's product overrides the safety features of

3    other vehicles in a collision.

4              Did I read that correctly?

5         A    Yes, ma'am.

6         Q    Okay.  And Mr. Bradshaw also asks where

7    I'm highlighting (as read):  Is it okay for me to

8    get Dean to prepare a response for this question?

9              Did I read that correctly?

10        A    Yes, ma'am.

11        Q    And who is "Dean"?

12        A    I would assume that that's Dean Dedmon,

13   our local counsel.

14        Q    Your lawyer?

15        A    Yes, ma'am.

16        Q    All right.  What's his last name?

17        A    Dedmon.

18        Q    Dedmon.  All right.  He's not an engineer,

19   is he?

20        A    Not to my knowledge.  I'm not sure what

21   his educational background is.

22        Q    He doesn't do any safety work for Rough

23   Country?

24        A    I don't know if he's been involved in

25   analysis of any safety work with us -- for us.

Page 58

1      Q    Would he know anything about how to make a

2   vehicle structure safe, as a lawyer?

3      A    Again I can't speak to his educational

4   background.  He's a 50- or 60-something-year-old

5   gentleman.  I have no -- I haven't seen his r?sum?.

6   I don't know the details.

7      Q    Okay.  All right.  Okay.  But he's a

8   lawyer anyway, he's Rough Country's lawyer.  He's

9   never designed any products for Rough Country; is

10  that fair?

11     A    Yes, ma'am.

12     Q    Okay.

13     A    That would be fair.

14     Q    All right.  Well, Dean doesn't get a

15  chance to answer the question because Ken Dunn

16  responds at 9:47.  Correct?  Oh, sorry that's the

17  wrong...  Let's see...  Well, Ken Dunn

18  eventually -- let's see -- strike that.  I'm sorry.

19  Let's go through it a little bit more organized way.

20          Do you agree that since at least 2014 when

21  this conversation is going on, Rough Country knew it

22  needed to ensure its products complied with

23  regulations and local laws?

24          MR. HILL:  Object to the form.  Go ahead.

25

Page 59

```
 1   BY THE WITNESS:

 2        A    Yes, ma'am.

 3   BY MS. CANNELLA:

 4        Q    And, in fact, Rough Country was

 5   specifically asked on December 22nd, 2014, if it was

 6   in compliance with the various regulations outlined

 7   in the two links below.  Correct?

 8        A    Yes, ma'am.

 9        Q    Okay.  And those links there, there's one

10   on Lift Laws You Need To Know; is that right?

11        A    Yes, that's what it states.

12        Q    Okay.  And the next one is from AAA.com,

13   drivinglaws.AAA.com, and it appears to be about

14   bumper height.  Correct?

15        A    Yes, ma'am.

16        Q    All right.  Where is the document that

17   shows Rough Country did any kind of analysis about

18   local laws and regulations?

19             MR. HILL:  Object to the form.  Go ahead.

20   BY THE WITNESS:

21        A    We've -- again, your statement as far as

22   for on vehicle -- for on-road use, you know, our

23   vehicles and our kits, you know, would need to

24   comply.  But we tell the consumer, as you're stating

25   here, that they need to verify that, you know, when
```

Redacted 30(B)6 Rad J.  Hunsley                    August 4, 2023
Bryson, Santana And Joshua Vs. Rough Country, LLC

Page 60

1   they make the purchase.

2           MS. CANNELLA:  Okay.  Move to strike as

3       nonresponsive.

4   BY MS. CANNELLA:

5       Q    Where is the document in which Rough

6   Country -- if there is a document; if there isn't a

7   document, that's fine, just tell me -- where is the

8   document where Rough Country does any kind of

9   analysis or research on whether it is in compliance

10  with local laws?

11          MR. HILL:  Object to the form.  Go ahead.

12  BY THE WITNESS:

13      A    I don't know that -- one document that

14  exists.

15      Q    Okay.  And where is the document in which

16  Rough Country does any analysis about whether its

17  products comply with NHTSA guidelines or

18  regulations?

19          MR. HILL:  Object to the form.  Go ahead.

20          THE WITNESS:  Ask the question again.

21      Sorry.

22  BY MS. CANNELLA:

23      Q    Where is the document that shows Rough

24  Country did any kind of analysis about whether its

25  products complied with NHTSA guidelines or

Redacted 30(B)6 Rad J. Hunsley          August 4, 2023
Bryson, Santana And Joshua Vs. Rough Country, LLC

Page 61

1   regulations?

2           MR. HILL:  Same objection.

3   BY THE WITNESS:

4       A    Again, there's -- there is no statute that

5   I'm aware of that, other than like the vehicle

6   stability, you know, which we do test and ensure

7   that our product maintains, you know, with a FMVSS

8   test, so, you know, we are aware of NHTSA

9   guidelines, and we have tested to the prevalent

10  guidelines.

11          MS. CANNELLA:  Move to strike as

12      nonresponsive.

13  BY MS. CANNELLA:

14      Q    My question is very specific about

15  documents.

16          Where is the document that shows Rough

17  Country did any kind of analysis about NHTSA

18  guidelines or regulations with respect to its lifts?

19          MR. HILL:  Object to the form.  Go ahead.

20  BY THE WITNESS:

21      A    Again, I would point to our FMVSS testing

22  as the document that shows that we have complied

23  with NHTSA guidelines.

24  BY MS. CANNELLA:

25      Q    And those are just handling, those are

Redacted 30(B)6 Rad J. Hunsley          August 4, 2023
Bryson, Santana And Joshua Vs. Rough Country, LLC

Page 62

1    handling tests.  Correct?

2         A    Yes.

3         Q    There's no document that shows whether the

4    lifts will affect trucks' compliance with a vehicle

5    compatibility agreement, are there?

6              MR. HILL:  Object to the form.  Go ahead.

7    BY THE WITNESS:

8         A    Not specifically that I know, no.

9    BY MS. CANNELLA:

10        Q    Isn't it true that when it comes to the

11   danger of its lifts, Rough Country is willing to

12   simply misrepresent facts to the people looking for

13   the truth?

14             MR. HILL:  Object to the form.  Go ahead.

15   BY THE WITNESS:

16        A    Absolutely not.

17   BY MS. CANNELLA:

18        Q    Let's go back to that exhibit that we were

19   just looking at -- or actually let's look at a

20   different one.  I'm going to show you, in that same

21   string, which we'll mark as Exhibit -- Devin, which

22   exhibit?

23             MR. MASHMAN:  6.

24             MS. CANNELLA:  6.

25             (Plaintiffs' Exhibit Number 6 was marked

Redacted 30(B)6 Rad J. Hunsley          August 4, 2023
Bryson, Santana And Joshua Vs. Rough Country, LLC

Page 63

1    for identification.)

2    BY MS. CANNELLA:

3        Q    Okay.  And this is an email from Ken Dunn

4    to Mr. Bradshaw and Patrick Just at 4:54 that same

5    day, December 22nd, 2014.  Correct?

6        A    Yes, ma'am.

7        Q    Okay.  And in that first highlighted

8    sentence, Mr. Dunn says (as read):  Patrick is going

9    to get you more, but general comment is that we

10   offer products that are compliant for on-road use in

11   all 50 states.

12            Did I read that correctly?

13       A    Yes, ma'am.

14       Q    Okay.  And that statement by Rough

15   Country's CEO was false, wasn't it, sir?

16       A    Not to my knowledge.

17       Q    Well, isn't it true that at the time

18   Mr. Dunn made that statement, Rough Country sold

19   4-inch lift kits?

20       A    Yes, ma'am.

21       Q    And isn't it true that at the time

22   Mr. Dunn said that statement, Rough Country sold

23   6-inch lift kits?

24       A    Yes, ma'am.

25       Q    And isn't it true that both those lift

Page 64

1   kits were illegal in at least some states at the

2   time Mr. Dunn said that?

3           MR. HILL:  Object to the form.  Go ahead.

4   BY THE WITNESS:

5       A    To my knowledge, we've never been

6   presented with, you know, any claim that our lift

7   kit was in violation of any cited statute in any

8   state until this one.

9   BY MS. CANNELLA:

10      Q    Mr. Hunsley, that's not true, is it?

11      A    To my knowledge, yes, it is.

12      Q    Well, your knowledge is Rough Country's

13  knowledge.  Correct?

14      A    Yes, ma'am.

15      Q    Okay.  So if we scroll down in this very

16  email, all Rough Country has to do is click on these

17  links to know what the laws are in those states.

18  Correct?

19          MR. HILL:  Object to the form.

20  BY THE WITNESS:

21      A    I cannot speak to that.  I've reviewed

22  those documents, but as with the Georgia statute,

23  there's I would say ambiguity or open to

24  interpretation to most all of the references cited,

25  you know, on those documents.  And, again, in the

Page 65

1    30-year history of this company, we've never been

2    presented with a citation relative to the lift -- a

3    lifted vehicle.

4              MS. CANNELLA:  Move to strike as

5         nonresponsive.

6    BY MS. CANNELLA:

7         Q    Give me one moment, please.  Mr. Hunsley,

8    did you just testify, did I hear you correctly that

9    you reviewed the links in that email?

10        A    I've reviewed the lift -- liftlaws.com.

11   It's on our website, yes.  I'm not sure if it's the

12   same one.

13        Q    Okay.  All right.  Well, let's just open

14   up one of the links in this very email, in which you

15   have testified on behalf of Rough Country that Rough

16   Country was not aware that -- it's never been

17   presented with evidence that any of its products

18   violated state laws.

19              Can you see my screen right now?

20        A    Yes, ma'am.

21              (Plaintiffs' Exhibit Number 7 was marked

22   for identification.)

23   BY MS. CANNELLA:

24        Q    In front of us, Exhibit 7 we'll mark it,

25   December 22nd, 2014, a copy of the Motortrend link

Redacted 30(B)6 Rad J. Hunsley          August 4, 2023
Bryson, Santana And Joshua Vs. Rough Country, LLC

Page 66

1    that was sent to Rough Country.  And I'll just

2    scroll down to the very first one.  Body lifts of

3    3 inches are the maximum in Illinois.

4              Correct?  Did I read that correctly?

5              MR. HILL:  Hold on.  I'm going to object

6         to the preamble to the question.  It misstated

7         his testimony.  Go ahead.

8              MS. CANNELLA:  Okay.

9    BY THE WITNESS:

10        A    Yes, that's what it states.  It says (as

11   read):  Body lifts of 3 inches are the maximum too.

12   BY MS. CANNELLA:

13        Q    And Rough Country had access to Google at

14   the time that it sent that email to Mr. Bradshaw.

15   Correct?

16        A    Yes, ma'am.

17        Q    All right.  Okay.  Isn't it true that

18   Rough Country has also falsely claimed that bumper

19   heights are not regulated?

20              MR. HILL:  Object to the form.  Go ahead.

21   BY THE WITNESS:

22        A    Yeah.  There is no federal regulation, I

23   guess, that I'm aware of on bumper heights.

24        Q    Okay.  I'm going to go back to the email

25   at 5:54 p.m. from Mr. Dunn.

Redacted 30(B)6 Rad J. Hunsley                    August 4, 2023
Bryson, Santana And Joshua Vs. Rough Country, LLC

Page 67

1          Can you see that?

2      A    Not yet.  Now, it's up, yes.

3      Q    Okay.  And in that last paragraph it says

4  (as read):  Shown below is bumper heights for

5  different utility vehicles, as they relate to one

6  lifted vehicle.  These are not regulated because

7  federal and state lawmakers recognize the utility

8  needs.

9          Did I read that correctly?

10     A    Yes, ma'am.

11     Q    All right.  Sitting here today, you know

12  that Mr. Dunn's statement was not true.  Correct?

13          MR. HILL:  Object to the form.  Go ahead.

14  BY THE WITNESS:

15     A    No, ma'am, I did not.

16  BY MS. CANNELLA:

17     Q    Well, we just looked at evidence from that

18  same email string that bumper heights are regulated.

19     A    No.  If you could bring it back up, it

20  said body lifts of 3 inches are the max in Illinois.

21     Q    Okay.

22     A    It didn't -- and a body lift is not

23  affecting the bumper height.

24     Q    All right.  Did I hear you correctly that

25  body lifts don't affect the height of the bumper?

Redacted 30(B)6 Rad J. Hunsley          August 4, 2023
Bryson, Santana And Joshua Vs. Rough Country, LLC

Page 68

1      A    Yes.  A body lift would raise the body of

2  the vehicle, but the frame itself is not lifted in

3  that type of a lift kit.

4      Q    Okay.  I'm going to show you that same

5  exhibit.  Scrolling down to page 2 out of 9, it

6  shows that in Illinois frame and bumper heights are

7  regulated.  Correct?

8           MR. HILL:  Object to the form.  Go ahead.

9  BY THE WITNESS:

10     A    Yes, ma'am, yeah, I see that.

11 BY MS. CANNELLA:

12     Q    Okay.  Isn't it true that if bumper

13 heights are regulated and if Rough Country's lifts

14 violated state laws, Rough Country could easily find

15 that out?

16          MR. HILL:  Object to the form.  Go ahead.

17 BY THE WITNESS:

18     A    Again, as I sit here today, I'm unaware of

19 any law that we're in violation of.  The one you've

20 just showed stated gross vehicle weights and bumper

21 heights, which we are well within with our products.

22 BY MS. CANNELLA:

23     Q    Isn't it true that Rough Country either

24 knew its statements that bumper heights are not

25 regulated and that its products are compliant in all

Redacted 30(B)6 Rad J. Hunsley          August 4, 2023
Bryson, Santana And Joshua Vs. Rough Country, LLC

Page 69

1    50 states, that Rough Country either knew these

2    statements were false or it intentionally chose not

3    to find out the truth?

4          MR. HILL:  Object to the form.  Go ahead.

5    BY THE WITNESS:

6     A     (Indiscernible audio) are intuitive --

7          THE COURT REPORTER:  I'm sorry, sir --

8    BY THE WITNESS:

9     A     To the best of my knowledge, again, we --

10   our kits are not in violation of any federal or

11   state laws.  Again, we've never had a citation

12   presented to us where our product is violating the

13   state law until this case.

14   BY MS. CANNELLA:

15    Q     Isn't it true that the same statement is

16   true for the danger of lift kits?  Rough Country

17   knows or should know that lift kits increase the

18   chance of serious injury or death.

19         MR. HILL:  Object to the form.

20   BY THE WITNESS:

21    A     No, I would say that that's patently a

22   false claim.

23   BY MS. CANNELLA:

24    Q     And isn't it true that Rough Country has

25   made a conscious decision not to do its own testing

Redacted 30(B)6 Rad J. Hunsley          August 4, 2023
Bryson, Santana And Joshua Vs. Rough Country, LLC

Page 70

1   to find out whether lift kits increase the chance of

2   injury or death in crashes?

3          MR. HILL:  Object to the form.

4   BY THE WITNESS:

5      A    It is not true.  You know, we analyze data

6   that's available, and there's been no determination

7   of any applicable tests that could or should be

8   done.

9   BY MS. CANNELLA:

10     Q    Now that Rough Country has been presented

11  with the statute in Georgia showing that its lifts

12  are violating Georgia law, will Rough Country stop

13  selling them in Georgia?

14         MR. HILL:  Object to the form.

15  BY THE WITNESS:

16     A    Again, laws, I don't know that we're in

17  violation.  We again contend that we're not in

18  violation of any Georgia laws.

19         MS. CANNELLA:  Can we take a quick break?

20         THE VIDEOGRAPHER:  Off the record, twelve

21      o'clock.

22         (There was a break in the proceedings from

23  12:00 p.m. through 12:13 p.m.)

24         THE VIDEOGRAPHER:  Back on the record.

25      The time is 12:13.

Redacted 30(B)6 Rad J. Hunsley                    August 4, 2023
Bryson, Santana And Joshua Vs. Rough Country, LLC

Page 71

1    BY MS. CANNELLA:

2         Q    Mr. Hunsley, you told the jury in this

3    case that Rough Country has never seen any evidence

4    that its lifts violate any laws.

5              Am I paraphrasing that correctly?

6              MR. HILL:  Object to the form but go

7         ahead.

8    BY THE WITNESS:

9         A    Yes.

10             (Plaintiffs' Exhibit Number 8 was marked

11   for identification.)

12   BY MS. CANNELLA:

13        Q    Okay.  I'm going to share my screen with

14   you and we're going to go to the Rough Country

15   website.  We're here at roughcountry.com.

16             Can you see that?

17        A    Yes, ma'am.

18        Q    Okay.  I'm going to scroll to the bottom

19   of this page and click on the state lift laws link.

20   Do you see that?

21        A    Yes, ma'am.

22        Q    Okay.  And this is a page that says, know

23   your local laws, and it links to a website,

24   http://www.liftlaws.com.  Correct?

25        A    Yes, ma'am.

Redacted 30(B)6 Rad J. Hunsley              August 4, 2023
Bryson, Santana And Joshua Vs. Rough Country, LLC

Page 72

1        Q     Okay.  And you said you reviewed this page

2   in preparation for this deposition; is that right?

3        A     Yeah, and other times.

4   BY MS. CANNELLA:

5        Q     And a couple of other times.  Okay.  So

6   I'm going to click on Georgia, and the first

7   paragraph here about Georgia says (as read):

8   Unfortunately, Georgia is not an off-road-friendly

9   vehicle state.

10             Did I read that correctly?

11        A     Yes, ma'am.

12        Q     And it goes on to say (as read):  In

13   addition to restricting frame height, Georgia has a

14   suspension lift limit of only 2 inches.

15             Did I read that correct?

16        A     Yes, ma'am.

17        Q     Okay.  And, in fact, the state

18   characterizes the lift laws in Georgia so stringent

19   that suspension lift kits might as well be deemed

20   illegal; is that right?

21             MR. HILL:  Object to the form but go

22        ahead.

23   BY THE WITNESS:

24        A     Yes, it states that.

25

Redacted 30(B)6 Rad J. Hunsley          August 4, 2023
Bryson, Santana And Joshua Vs. Rough Country, LLC

Page 73

1   BY MS. CANNELLA:

2       Q    Okay.  And I'm going to scroll down just a

3   little bit here next to Suspension.  According to

4   this website, that Rough Country links to on its own

5   web page, it says (as read):  The suspension lift

6   limit in Georgia is 2 inches.

7            Is that correct?

8       A    Yes, ma'am.

9       Q    All right.  And it cites Georgia code

10  40-8-6; is that right?

11      A    Yes, ma'am.

12      Q    So isn't it true that Rough Country does

13  have evidence that its products violate state laws?

14      A    No, ma'am.  We state on our website, you

15  know, in the statement that -- if you go back to

16  that, we state that we cannot validate the entirety

17  of this liftlaws.com website.  And what you're

18  looking at, what you're showing me here is kind of

19  paraphrasing at best the Georgia law 'cause it's

20  definitely not a one-sentence regulation.

21      Q    Okay.  All right.  Well, let's look at

22  something else, then.  You're aware that Sergeant

23  Matheson of the Georgia State Patrol made a report

24  for this collision.  Correct?

25      A    Yes, ma'am.

Page 74

1      Q    Okay.  And he did the charging documents

2  as well and decided what the striking driver would

3  be charged with.  Correct?

4      A    Yes, ma'am.

5      Q    I'm going to show you the sentence from

6  that case.

7           Before I do that, do you agree that

8  Sergeant Matheson knows more about the criminal laws

9  of Georgia than anyone at Rough Country?

10          MR. HILL:  Object to the form.  Go ahead.

11  BY THE WITNESS:

12      A    Yeah.  I would say that that's probably,

13  you know...

14  BY MS. CANNELLA:

15      Q    And would Rough Country defer to Sergeant

16  Matheson about what's legal and illegal in Georgia?

17          MR. HILL:  Object to the form.

18  BY THE WITNESS:

19      A    No, ma'am.

20  BY MS. CANNELLA:

21      Q    Okay.  Isn't it true that Sergeant

22  Matheson charged the striking driver in this case

23  with the same statute cited on the page that Rough

24  Country's website links to?

25      A    I believe that is accurate.

Page 75

1      Q     Okay.  And isn't it true that the striking

2  driver pled guilty to that charge in connection with

3  Cohen Bryson's death?

4      A     Yes, I believe that is accurate as well.

5      Q     Okay.  Well, then I don't need to show you

6  the sentence, but let me ask you this:  Isn't it

7  true that it's clear that Rough Country knows these

8  lifts are illegal, it knows they're dangerous and

9  nothing but a jury verdict is going to make Rough

10 Country accept that fact?

11         MR. HILL:  Object to the form.

12 BY THE WITNESS:

13     A     Completely false.  Even the statute that

14 you're citing doesn't -- contend that we're not in

15 violation.  To my knowledge, none of our lifts would

16 be in violation of that Georgia 6.0 that you're

17 referring to.

18         MS. CANNELLA:  I don't have any more

19     questions.

20         MR. HILL:  Okay.  So we're done?

21         MR. SNYDER:  No, hang on a minute, Rick.

22     I want to do the financial questions.  Teejorga

23     (phonetic) and I are going to tag-team that,

24     and it's probably not going to take more than

25     20 or 30 minutes.  So we can take a break if

Redacted 30(B)6 Rad J. Hunsley          August 4, 2023
Bryson, Santana And Joshua Vs. Rough Country, LLC

Page 76

1        y'all and the witness want to take a lunch

2        break and come back, or we could just get it

3        done, so your call.

4            MR. HILL:  Well, it's only 11:20 here.  So

5        if you're only going to take 20 minutes, I

6        think -- Rad, would you like to be done?

7            MR. SNYDER:  Okay.  Twenty, thirty.  I

8        can't imagine being more than 30 minutes.

9            (Confidential portion of transcript,

10    page 76, line 9 through page 102, line 19 has been

11    excerpted into a confidential excerpted proceedings

12    transcript.)

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 77

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20          MS. CANNELLA:  Thank you.  Have a good

21      one.

22          MR. HILL:  Hold on, before we go off the

23      record, I would go ahead now and designate the

24      entire portion of the deposition that Rob took

25      regarding Paragraphs 6, 7, and 8 as

Redacted 30(B)6 Rad J. Hunsley                 August 4, 2023
Bryson, Santana And Joshua Vs. Rough Country, LLC

Page 78

1        confidential since he was referencing

2        confidential documents.  Go ahead and designate

3        that as confidential now, and then reserve our

4        right to review the remaining deposition

5        transcript and designating the other pages and

6        lines that we deem are confidential.  I don't

7        think there will be any more, but under our

8        protective order, we have the right to do that

9        once we get the transcript.  And between now

10       and five days after we get the transcript, this

11       all remains confidential under that protective

12       order that everybody agreed to.

13             MS. CANNELLA:  Sounds good.

14             MR. SNYDER:  Okay.

15             THE VIDEOGRAPHER:  Off the record, 1:01.

16             (Deposition concluded at 1:01 p.m.)

17             (Signature reserved.)

18

19

20

21

22

23

24

25

Page 79

```
 1          The following reporter and firm disclosures
 2  were presented by me at this proceeding for review by
 3  counsel:
 4                  REPORTER DISCLOSURES
 5          The following representations and disclosures
    are made in compliance with Georgia Law, more
 6  specifically:
            Article 10 (B) of the Rules an Regulations of
 7  the Board of Court Reporting
    (disclosure forms)
 8          O.C.G.A. Section 9-11-28(c)(disqualification
    of reporter for financial interest)
 9          O.C.G.A. Sections 15-14-37 (a) and (b)
    (prohibitions against contracts except on a
10  case-by-case basis).
    - I am a certified court reporter in the State of
11  Georgia.
    - I am a subcontractor for Veritext.
12  - I have been assigned to make a complete and accurate
    record of these proceedings.
13  - I have no relationship of interest in the matter on
    which I am about to report which would disqualify me
14  from making a verbatim record or maintaining my
    obligation of impartiality in compliance with the Code
15  of Professional Ethics.
    - I have no direct contract with any party in this
16  action, and my compensation is determined solely by the
    terms of my subcontractor agreement.
17
                  FIRM DISCLOSURES
18
    - Veritext was contacted to provide reporting services
19  by the noticing or taking attorney in this matter.
    - There is no agreement in place that is prohibited by
20  O.C.G.A. 15-14-37 (a) and (b).  Any case-specific
    discounts are automatically applied to all parties at
21  such time as any party receives a discount.
    - Transcripts:  The transcript of this proceeding as
22  produced will be a true, correct, and complete record
    of the colloquies, questions, and answers as
23  submitted by the certified court reporter.
24
25
```

Redacted 30(B)6 Rad J.  Hunsley          August 4, 2023
Bryson, Santana And Joshua Vs. Rough Country, LLC

                                              Page 80

1    - Exhibits:  No changes will be made to the exhibits as

     submitted by the reporter, attorneys, or witnesses.

2    - Password-Protected Access:  Transcripts and exhibits

     relating to this proceeding will be uploaded to a

3    password-protected repository, to which all ordering

     parties will have access.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 81

```
 1                        CERTIFICATE
 2   STATE OF GEORGIA:
 3   COUNTY OF CHEROKEE:
 4            I hereby certify that the foregoing
     nonconfidential excerpt of transcript, comprising of
 5   pages 1 through 76 (lines 1 through 8) and pages 102
     (lines 20 to 25) and page 103 was taken down remotely
 6   via videoconference, as stated in the caption, and the
     colloquies, questions and answers were reduced to
 7   typewriting by me; and that the transcript is a true
     and correct record of the evidence given upon said
 8   proceeding.
              I further certify that I am not a relative or
 9   employee or attorney of any party, nor am I financially
     interested in the outcome of this action.
10            I have no relationship of interest in this
     matter which would disqualify me from maintaining my
11   obligation of impartiality in compliance with the Code
     of Professional Ethics.
12            I have no direct contract with any party in
     this action and my compensation is based solely on the
13   terms of my subcontractor agreement.
              Nothing in the arrangements made for this
14   proceeding impacts my absolute commitment to serve all
     parties as an impartial officer of the court.
15
16            This, the 27th day of September, 2023.
17
18
19
                 JENNIFER B. OURADA, CCR
20               Certificate No. 2658
21
22
23
24
25
```

Page 82

```
1   To:  Richard H. Hill, II, Esquire,
         Weinberg, Wheeler, Hudgins, Gunn & Dial, LLC
2

    Re:  Signature of Rad. J. Hunsley, Job#6038075
3   Date Errata due back at our offices:  11/03/2023
4   Greetings:
5   This deposition has been requested for read and sign by
    the deponent.  It is the deponent's responsibility to
6   review the transcript, noting any changes or
    corrections on the attached PDF Errata.  The deponent
7   may fill out the Errata electronically or print and
    fill out manually.
8

    Once the Errata is signed by the deponent and
9   notarized, please email it to the offices of Veritext
    at litsup-ga@veritext.com
10

    When the signed Errata is returned to us, we will seal
11  and forward same to the taking attorney to file with
    the original transcript.  We will also send copies of
12  the Errata to all ordering parties.
13  If the signed Errata is not returned within the time
    above, the original transcript may be filed with the
14  Court without the signature of the deponent.
15  Please send completed Errata to:
16  Veritext Production Facility
    20 Mansell Court, Suite 300
17  Roswell, Georgia  30076
    770.343.9696
18
19
20
21
22
23
24
25
```

Page 83

1    ERRATA FOR ASSIGNMENT # 6038075
2    I, the undersigned, do hereby certify that I have read
     the transcript of my testimony, and that
3
     ___   There are no changes noted;
4
     ___   The following changes are noted:
5
6    Pursuant to Rule 30(7)(e) of the Federal Rules of Civil
     Procedure and/or O.C.G.A. 9-11-30(e), any changes in
7    form or substance which you desire to make to your
     testimony shall be entered upon the deposition with a
8    statement of the reasons given for making them.  To
     assist you in making any such corrections, please use
9    the form below.  If additional pages are necessary,
     please furnish same and attach.
10
11   PAGE___LINE___CHANGE_____
12   _____
13   PAGE___LINE___CHANGE_____
14   _____
15   PAGE___LINE___CHANGE_____
16   _____
17   PAGE___LINE___CHANGE_____
18   _____
19   PAGE___LINE___CHANGE_____
20   _____
21   PAGE___LINE___CHANGE_____
22   _____
23   PAGE___LINE___CHANGE_____
24   _____
25

Redacted 30(B)6 Rad J. Hunsley                    August 4, 2023
Bryson, Santana And Joshua Vs. Rough Country, LLC

Page 84

```
1    PAGE___LINE___CHANGE_____

2    _____

3    PAGE___LINE___CHANGE_____

4    _____

5    PAGE___LINE___CHANGE_____

6    _____

7    PAGE___LINE___CHANGE_____

8    _____

9    PAGE___LINE___CHANGE_____

10   _____

11   PAGE___LINE___CHANGE_____

12   _____

13

14                    _____

15                        DEPONENT'S SIGNATURE

16

17   Sworn to and subscribed before me this _____ day of

18   _____ 2023.

19

20

21   _____

22   NOTARY PUBLIC

23

24   My Commission Expires: _____

25
```

Bryson, Santana And Joshua Vs. Rough Country, LLC

Page 85

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Redacted 30(B)6 Rad J.  Hunsley                    August 4, 2023
Bryson, Santana And Joshua Vs. Rough Country, LLC

[& - 832-9534]                                                    Page 1

| & | | |
|---|---|---|
| **&**  4:11 82:1 | | |

**0**

005360   2:10
005369   2:10
006869   2:13
006871   2:13
006963   2:15
006965   2:15

**1**

**1**   2:4,19 5:6
   13:12 81:5,5
**1/08/2015**   2:8
**10**   4:21 79:6
**102**   76:10 81:5
**103**   81:5
**10:08**   1:19 5:2
   5:5
**10:15**   10:6,8
**10:17**   10:8,10
**10:53**   39:12,14
**11/03/2023**
   82:3
**11:19**   39:14,16
**11:20**   76:4
**12:00**   70:23
**12:13**   70:23,25
**13**   2:4 7:2
**15-14-37**   79:9
   79:20
**16**   23:25
**17**   1:6
**17084**   81:19

**19**   76:10
**1:01**   78:15,16

**2**

**2**   2:6 29:24
   68:5 72:14
   73:6
**20**   75:25 76:5
   81:5 82:16
**2000s**   13:5
**2005**   12:22
   53:23 54:3
**2010**   38:16,17
   39:20 42:4,8
**2012**   8:11,22
   20:19 48:10
   49:1 53:17
**2014**   12:4 13:3
   21:7 29:5
   34:22,22 54:8
   55:6,19 58:20
   59:5 63:5
   65:25
**2015**   30:16
**2018**   30:5
**2023**   1:18 5:4
   81:16 84:18
**22**   55:18
**22nd**   59:5 63:5
   65:25
**24**   55:4
**2400**   4:12
**25**   81:5
**250**   6:17,21
   26:4,8,12 27:2
   47:14

**26**   29:5
**2658**   1:24
   81:20
**27th**   81:16
**29**   2:6
**2:22**   1:6

**3**

**3**   2:9 36:24
   66:3,11 67:20
**30**   1:13 5:7
   9:23 10:23
   51:8 65:1
   75:25 76:8
   83:6
**300**   82:16
**30030**   4:6
**30076**   82:17
**30326**   4:12
**315**   4:5
**3344**   4:12
**36**   2:9

**4**

**4**   1:18 2:11,18
   6:16,21 35:22
   40:16 56:9
   63:19
**4/26/2010**   2:9
**40**   2:11
**40-8-6**   73:10
**404**   4:6,13
**4:27**   55:21
**4:54**   63:4
**4th**   5:4

**5**

**5**   2:13 55:15
   56:10,11
**50**   58:4 63:11
   69:1
**5366**   37:14,18
**55**   2:13
**5:54**   66:25

**6**

**6**   1:13 2:12,14
   3:4 5:7 13:25
   62:23,24,25
   63:23 77:25
**6.0**   75:16
**6/07/2023**   2:5
**60**   58:4
**6038075**   82:2
   83:1
**62**   2:14
**65**   2:16

**7**

**7**   2:16 65:21,24
   77:25 83:6
**71**   2:17
**76**   76:10 81:5
**770.343.9696**
   82:17

**8**

**8**   2:17,20 71:10
   77:25 81:5
**80**   50:3
**800-4828**   4:6
**832-9534**   4:13

Redacted 30(B)6 Rad J. Hunsley                              August 4, 2023
Bryson, Santana And Joshua Vs. Rough Country, LLC

**[885 - appearances]**                                              Page 2

**885**  4:5
**8th**  30:4,16

**9**

**9**  2:16 68:5
 76:10
**9-11-28**  79:8
**9-11-30**  83:6
**9:22**  56:23
**9:47**  58:16

**a**

**a.m.**  1:19 5:2,5
 10:8,8 39:14
 39:14
**aaa.com**  59:12
**aaron**  4:11
 5:19
**above**  41:5,12
 82:13
**absolute**  81:14
**absolutely**
 62:16
**accept**  75:10
**access**  66:13
 80:2,3
**accident**  2:12
 9:12,16 42:1
**accidents**  38:8
**account**  14:5
 14:15 15:16
 19:14,22 20:7
**accurate**  12:9
 15:25 31:17
 33:2 34:9 48:8
 53:10 74:25

75:4 79:12
**action**  1:5
 11:22 43:5
 79:16 81:9,12
**actions**  25:18
**actually**  22:12
 35:5 52:2
 62:19
**add**  6:16,21
**added**  56:17
**adding**  18:18
**addition**  72:13
**additional**  83:9
**address**  30:24
**administered**
 5:23
**administrators**
 1:3
**affect**  62:4
 67:25
**affecting**  67:23
**afforded**  38:7
**aftermarket**
 18:18 19:7,16
 19:23 20:8
**agencies**  10:21
 52:17
**ago**  21:23
 30:19
**agree**  26:3,7,11
 26:16 28:25
 33:21 34:11,21
 35:7,16,20,21
 42:13 48:17
 53:7 55:2,3

58:20 74:7
**agreed**  78:12
**agreement**
 48:19,22 62:5
 79:16,19 81:13
**agrees**  33:12
**ahead**  6:18
 8:17 9:9,20
 11:12 12:19
 15:3 16:12
 17:13,22 18:19
 19:8,17,25
 20:9,20 22:6
 23:24 25:4,14
 25:21 28:2,8
 31:15 32:2,10
 32:24 33:19
 34:13 35:25
 36:10 38:23
 40:7 41:9,19
 42:17,25 43:12
 45:23 46:10
 47:16 49:25
 51:2,19 52:14
 52:23 54:15
 58:24 59:19
 60:11,19 61:19
 62:6,14 64:3
 66:7,20 67:13
 68:8,16 69:4
 71:7 72:22
 74:10 77:23
 78:2
**aided**  44:4

**airbag**  33:9
**airbags**  33:5,13
**alignment**  52:1
**allegation**
 29:15,16 57:1
**allegations**
 55:6,9,12
**alleged**  29:10
**alter**  46:2
**altered**  52:1
**amanuel**  4:4
 5:17
**ambiguity**
 64:23
**analysis**  11:17
 11:18 32:5
 51:24 53:17
 57:25 59:17
 60:9,16,24
 61:17
**analyze**  70:5
**answer**  14:11
 15:11 18:11
 44:23 46:6
 58:15
**answers**  79:22
 81:6
**anybody**  21:20
 27:21 51:16
**anyway**  58:8
**appear**  16:20
 41:4
**appearances**
 4:1

Redacted 30(B)6 Rad J. Hunsley                     August 4, 2023
Bryson, Santana And Joshua Vs. Rough Country, LLC

**[appeared - bradshaw]**                                    Page 3

appeared  4:19
appears  39:9
  59:13
applicable  70:7
applications
  50:4
applied  79:20
apportion  2:7
  30:9
apportionment
  30:4
appropriate
  25:17 43:5
arrangements
  81:13
article  4:21
  79:6
asked  15:15
  49:14 56:25
  59:5
asking  15:12
  16:23
asks  57:6
assigned  79:12
assignment
  83:1
assist  83:8
assume  26:1
  37:25 57:12
atlanta  4:12
attach  83:9
attached  82:6
attempted  20:6
attempts  14:11

attention  21:6
attorney  4:3,4
  79:19 81:9
  82:11
attorneys  80:1
audio  44:16
  69:6
august  1:18 5:4
auto  32:4
automaker
  45:12
automakers
  18:17,22 19:5
  32:9 45:15,20
  46:7,12,18,22
automatically
  79:20
automotive
  24:10
available  70:6
avenue  4:5
avoid  31:12
  35:24
aware  8:14
  17:15 18:9,21
  19:10 20:23
  42:9 46:12
  47:2 48:22
  50:7 52:4 53:5
  61:5,8 65:16
  66:23 73:22

**b**

b  1:13,23 4:11
  4:21 5:7 79:6,9
  79:20 81:19

bacho  2:8 7:23
  11:15 12:4,15
  13:3 16:8 21:9
  21:12 22:11
  23:15 29:4
  31:6 35:4
  40:14 51:6,7
  54:6,9
bacho's  8:3
bachos  34:22
  34:23 35:8,17
  51:16
back  10:9 11:5
  11:6,7 12:14
  13:5 32:19
  34:22 39:15
  45:4 54:8
  62:18 66:24
  67:19 70:24
  73:15 76:2
  82:3
background
  23:13,16 57:21
  58:4
backseat  26:13
  26:18
based  34:19
  41:21 43:14
  53:16 81:12
basically  9:22
  43:2
basis  53:13
  79:10
bates  2:10,13
  2:14 37:14,16

bearing  35:11
beginning  5:6
  56:3
behalf  1:15 4:2
  4:9 6:13 65:15
believe  6:20,20
  20:12 23:12
  28:10 29:23
  35:4 36:22
  42:19 47:12
  51:24 53:10,23
  54:6 56:10
  74:25 75:4
belts  32:23
  33:13
best  43:20 69:9
  73:19
better  24:24
billions  10:24
bit  11:7 44:19
  58:19 73:3
blame  28:21
blames  33:24
blaming  31:13
board  4:22
  79:7
body  66:2,11
  67:20,22,25
  68:1,1
boss  24:7,10
bottom  37:16
  71:18
brad  56:4
bradshaw
  55:20 56:4,23

Redacted 30(B)6 Rad J. Hunsley                    August 4, 2023
Bryson, Santana And Joshua Vs. Rough Country, LLC

[bradshaw - chance]                                          Page 4

57:6 63:4
66:14
**break**  10:7
39:13 70:19,22
75:25 76:2
**brief**  2:6 30:9
**bring**  67:19
**broken**  44:23
**brought**  21:5,8
**brown**  4:18
5:10
**bryan**  22:1,2
**bryson**  1:3,3
2:10,13,15 5:8
27:25 28:6
**bryson's**  75:3
**brysons**  27:6
34:11,16 35:8
35:17 51:15
**bumper**  29:12
29:19 37:21
38:6 52:1
59:14 66:18,23
67:4,18,23,25
68:6,12,20,24
**bumpers**  17:21
**business**  36:17
**bypass**  7:19
**bypasses**  38:6
**bypassing**  36:8

**c**

**c**  5:1 79:8
**c.z.b.**  1:4,4
**call**  44:6 76:3

**cannella**  3:4
4:3,5 5:16,16
6:5,22 8:20
9:13 10:1,2,5
10:11 12:10
13:10,14 14:21
14:23 15:9
16:15,24 17:1
17:8,10,16
18:4,6 19:1,3
19:12,20 20:4
20:16,24 21:11
22:14,18,20,24
23:1 25:19
26:2 28:4,12
29:1 30:1
31:18 32:8
33:3,11,22
34:10,17 35:13
35:15 36:5,15
37:1 39:2,7,17
40:18 41:14
42:2,22 43:6
44:17,21,25
45:3,10 46:4
46:15,17 47:9
47:22 48:9
49:22 50:9
51:11 52:7,9
52:19 53:4
54:18 55:17,21
55:24 56:8,11
56:12 59:3
60:2,4,22
61:11,13,24

62:9,17,24
63:2 64:9 65:4
65:6,23 66:8
66:12 67:16
68:11,22 69:14
69:23 70:9,19
71:1,12 72:4
73:1 74:14,20
75:18 77:20
78:13
**cannellasnyd...**
4:7,7,8,8
**caption**  81:6
**car**  26:9,17
**case**  6:24 7:22
11:15 12:4
13:4,16 15:13
21:9,13 22:11
26:21 28:13
29:3,7,10 30:3
31:6 34:22
35:4 36:18,19
36:22 37:4,9
37:15 38:15,18
39:20 40:22
41:21 43:8,11
43:15,21 44:2
45:9 47:15
54:6,10 69:13
71:3 74:6,22
79:10,10,20
**catalogs**  53:8
**categories**
12:25

**cause**  9:18,25
12:2 13:9 15:2
16:11 17:5,21
17:25 24:20
35:24 41:17,24
42:7 47:15
49:5,11 73:19
**caused**  7:18 9:8
9:11,15 19:6
19:15,23 20:8
28:1,7,11
29:19 31:1
38:22 40:5
50:14,17,20,25
51:18
**causes**  8:15 9:2
14:20 22:10
25:9 34:8 53:9
**causing**  10:14
40:12 51:14
52:12
**ccr**  1:23 81:19
**cell**  30:25
**ceo**  56:13 63:15
**certainty**  18:12
**certificate**  1:24
81:1,20
**certified**  79:10
79:23
**certify**  81:4,8
83:2
**cfo**  4:16 56:21
**chain**  2:13,14
**chance**  6:25 9:3
11:10 12:17

Redacted 30(B)6 Rad J. Hunsley                    August 4, 2023
Bryson, Santana And Joshua Vs. Rough Country, LLC

**[chance - conclusions]**                                    Page 5

25:12 52:6
58:15 69:18
70:1
**chances**  9:19
12:2
**change**  24:17
24:20,22 25:2
44:9 83:11,13
83:15,17,19,21
83:23 84:1,3,5
84:7,9,11
**changed**  52:1
**changes**  80:1
82:6 83:3,4,6
**changing**  24:17
24:19 25:1
49:6
**characteristics**
44:15
**characterizes**
72:18
**charge**  75:2
**charged**  29:2
74:3,22
**charging**  74:1
**chausmer**  4:11
5:19
**check**  52:21
**cherokee**  81:3
**child**  26:13,18
29:7
**choice**  35:9,18
**choose**  34:2
**chose**  35:18
69:2

**citation**  65:2
69:11
**cited**  64:7,24
74:23
**cites**  73:9
**citing**  75:14
**civil**  1:5 83:6
**claim**  54:8 64:6
69:22
**claimed**  29:23
66:18
**claims**  27:25
28:5 51:13
**clear**  75:7
**clearly**  11:2
**click**  64:16
71:19 72:6
**code**  73:9 79:14
81:11
**cohen**  27:25
28:6 75:3
**collaborated**
24:14
**colleagues**
21:16
**collected**  13:5
**collide**  26:12
**collision**  26:4,6
26:21,25 55:8
57:3 73:24
**collisions**  13:8
26:14
**colloquies**
79:22 81:6

**come**  11:6 76:2
**comes**  62:10
**comment**  63:9
**commerce**
10:23
**commercial**
24:3
**commission**
84:24
**commitment**
81:14
**communicati...**
18:1,14 44:13
45:8
**companies**
17:12
**company**  7:24
15:7 21:8
23:19,22 47:5
51:8 56:25
65:1
**company's**
21:5
**compartment**
29:20
**compatibility**
8:13 48:19
62:5
**compatible**
8:16
**compensation**
79:16 81:12
**complained**
50:25

**complaint**  2:9
37:4,18 40:12
**complaints**
40:5 51:5,5,9
**complete**  79:12
79:22
**completed**
82:15
**completely**
75:13
**compliance**
59:6 60:9 62:4
79:5,14 81:11
**compliant**
63:10 68:25
**complied**  58:22
60:25 61:22
**comply**  59:24
60:17
**component**
25:16
**components**
11:23
**comprising**
81:4
**computer**  16:4
16:10 43:22
44:4
**concluded**
42:10 78:16
**conclusion**  22:8
43:15
**conclusions**
8:22,24 22:3

Redacted 30(B)6 Rad J. Hunsley                    August 4, 2023
Bryson, Santana And Joshua Vs. Rough Country, LLC

**[conclusivity - country]**                                    Page 6

conclusivity
 13:6
conducted
 15:24 50:7
conference
 4:20
confidential
 76:9,11 78:1,2
 78:3,6,11
configuration
 53:1
configurations
 26:15
connection
 75:2
conscious
 69:25
consider  7:16
 49:5
considers  50:24
consumer  9:23
 10:14 26:1
 49:15 59:24
consumers
 10:17,19,22
 42:14 52:11,17
contacted
 79:18
contend  70:17
 75:14
context  55:12
continues
 35:22
contract  79:15
 81:12

contracts  79:9
contribute  17:5
contributed
 51:18
contributing
 13:8 42:11
conversation
 58:21
coo  24:7,10
copies  82:11
copy  65:25
correct  6:13
 7:2,13 8:16
 12:4 14:17,24
 15:13,19,23
 16:2,3,5,18
 22:16,22 23:4
 23:10,12,16
 24:4,7,18,23
 25:18 26:22
 27:13 29:5,8
 29:15,22 30:10
 30:13,17 31:6
 31:9,22 32:23
 33:6 37:11,15
 37:23 38:9,17
 39:20 40:1,6
 42:4,16 48:12
 48:15,20,23
 49:1,12,18,21
 50:15,22 51:1
 53:19,22 54:19
 56:5,9,14,18,18
 58:16 59:7,14
 62:1 63:5

64:13,18 66:4
66:15 67:12
68:7 71:24
72:15 73:7,24
74:3 79:22
81:7
corrections
 82:6 83:8
corrective
 11:22
correctly  8:2
 31:3 37:23
 45:17,18 48:1
 57:4,9 63:12
 65:8 66:4 67:9
 67:24 71:5
 72:10
counsel  4:1,24
 5:14 55:1
 57:13 79:3
country  1:8,16
 2:4,8,17 5:7,9
 5:20 6:9,11,13
 6:16 7:5,15,17
 8:3,6,9,14,15
 8:21 9:17
 10:13 11:9
 12:1,15 13:3
 13:16 14:5,14
 14:24 16:4,9
 16:16 17:2,11
 17:17 18:7,10
 18:16 19:4
 20:5,18 23:14
 23:20 25:7,11

26:8,12,17,20
27:24 28:5,14
29:5 30:3,12
30:22 31:11,19
31:20,24,25
32:15 33:12,16
33:16,23,25
34:1,3,11,21
35:7,10,16,19
35:22 36:2,6
36:17 37:10,15
38:13,14,18,21
39:23,25 40:4
40:11,12 41:15
42:6,14,23
43:7,9,10,11,18
44:6 46:13
47:6,13 48:3
48:11,22,25
49:5,11,17,23
49:24 50:13,20
50:24 51:12,14
52:20 53:11,18
54:12 55:2,3,5
55:11 57:23
58:9,21 59:4
59:17 60:6,8
60:16,24 61:17
62:11 63:18,22
64:16 65:15,16
66:1,13,18
68:14,23 69:1
69:16,24 70:10
70:12 71:3,14
73:4,12 74:9

Redacted 30(B)6 Rad J. Hunsley                    August 4, 2023
Bryson, Santana And Joshua Vs. Rough Country, LLC

[country - design]                                          Page 7

74:15 75:7,10
**country's** 6:15
7:9 9:1 10:16
11:5 13:17
28:18,21,21
29:2 31:8,14
47:23 49:3,9
52:10 55:19
56:13,21 58:8
63:15 64:12
68:13 74:24
**county** 4:16
81:3
**couple** 72:5
**court** 1:1 4:22
4:24 5:12,13
5:21,24 10:1,3
14:12 39:7
44:22 45:2,5
69:7 79:7,10
79:23 81:14
82:14,16
**cover** 49:1,1
**crash** 7:20
11:19 12:8
16:1,5 18:3
19:15,23 20:7
24:18,22 25:3
26:8,17 28:1,7
31:1 33:10
34:9 36:8,23
41:1,6,12,18
43:18,21,22
44:3,9 47:15
48:5,19 52:25

53:8,22
**crashes** 10:18
31:21 32:1,22
33:5,17,17,25
35:2 50:15
52:22 70:2
**crashworthin...**
20:14
**create** 16:22
19:21 20:6
46:13
**created** 18:18
19:13
**creating** 16:17
**credential** 23:9
**criminal** 74:8
**criteria** 14:7
15:18 19:14,22
20:6
**cross** 3:4 6:4
**customer** 31:8
51:4
**customers**
28:18,22 31:14
33:24 50:24
**cv** 1:6
**cycles** 24:7,10

**d**

**d** 5:1
**damages** 31:2
**danger** 20:14
62:11 69:16
**dangerous**
23:16 37:21
38:4,6 44:8

48:5 75:8
**data** 7:25 11:14
12:7,11 13:2,4
16:19 25:6
53:1,17,22,24
70:5
**database** 53:5
53:7,12,14,19
**date** 5:4 30:16
38:14 82:3
**dated** 2:5
**day** 63:5 81:16
84:17
**days** 78:10
**de** 4:5
**dean** 57:8,11
57:12 58:14
**death** 9:19 22:5
51:18 53:8,9
54:13 69:18
70:2 75:3
**deaths** 33:24
**decatur** 4:6
**deceased** 1:4
**decedent** 29:22
**december**
55:18 59:5
63:5 65:25
**decide** 43:19
**decided** 38:20
74:2
**deciding** 23:15
**decision** 69:25
**dedmon** 57:12
57:17,18

**deem** 78:6
**deemed** 72:19
**defective** 31:12
38:4
**defectively**
37:19
**defendant** 1:9
2:4 4:9 5:20
13:17 30:12
**defendant's** 2:6
30:8
**defer** 74:15
**defined** 11:2
**definitely** 73:20
**degree** 13:9
**degreed** 22:17
22:23
**deponent** 82:5
82:6,8,14
**deponent's**
82:5 84:15
**deposition** 1:13
5:7 6:23 7:9
40:1 72:2
77:24 78:4,16
82:5 83:7
**describe** 14:4
15:16
**description** 2:2
**design** 14:6
15:18 17:3
19:14,22 21:22
21:24 24:9,15
32:4,11,16
43:17 44:4,14

Redacted 30(B)6 Rad J. Hunsley                August 4, 2023
Bryson, Santana And Joshua Vs. Rough Country, LLC

**[design - ethics]**                                               Page 8

49:6
**designate** 77:23
78:2
**designating**
78:5
**designed** 32:1
33:17 37:19
58:9
**desire** 83:7
**details** 41:25
58:6
**determination**
70:6
**determine** 42:7
**determined**
79:16
**development**
6:11
**devin** 4:4,8
5:17 37:2
55:22 56:9
62:21
**dial** 4:11 82:1
**died** 27:25 28:6
**different** 12:24
12:25 50:4
62:20 67:5
**differently**
34:16
**direct** 18:1,21
45:8 79:15
81:12
**directly** 16:6
50:2

**disagree** 8:21
**disclosure** 4:23
79:7
**disclosures**
79:1,4,5,17
**discount** 79:21
**discounts** 79:20
**discovery**
15:22
**discuss** 21:18
**discussed** 21:16
22:21 23:3
29:3
**discussions**
20:18
**disqualificati...**
79:8
**disqualify**
79:13 81:10
**district** 1:1,1
**division** 1:2
**document** 8:13
30:3,6 51:21
59:16 60:5,6,7
60:8,13,15,23
61:16,22 62:3
**documents**
15:6 21:4,4,14
23:15 37:14
43:25 44:1
61:15 64:22,25
74:1 78:2
**doing** 6:6 36:17
**driver** 28:1,7
28:10,13 31:5

74:2,22 75:2
**drivinglaws.a...**
59:13
**drosky** 4:4 5:17
**due** 30:25 82:3
**duly** 6:2
**dunn** 18:13
21:19 22:17
56:4,13,24
58:15,17 63:3
63:8,18,22
64:2 66:25
**dunn's** 67:12
**duty** 7:5 42:14
42:19,23 43:5
**dyersburg** 1:20
**dynamic** 11:19
12:8
**dynamics**
24:18,22 25:3
44:9

**e**

**e** 5:1,1 83:6,6
**earlier** 38:19
45:14 50:13,23
**early** 13:5
**easily** 68:14
**educational**
57:21 58:3
**effect** 11:18
**eight** 12:24
18:15 21:23
30:19 31:13
**either** 51:5
68:23 69:1

**electronically**
82:7
**email** 2:13,14
55:19,21 56:3
56:24 63:3
64:16 65:9,14
66:14,24 67:18
82:9
**employee** 81:9
**employment**
38:25
**engineer** 23:6,7
23:9 47:6
57:18
**engineering**
23:8
**engineers**
22:16,17,22,23
23:3
**ensure** 32:12
32:16 58:22
61:6
**entered** 83:7
**entire** 77:24
**entirety** 73:16
**entity** 52:17
**errata** 82:3,6,7
82:8,10,12,13
82:15 83:1
**escape** 27:5
**esquire** 4:3,4
4:10,11 82:1
**estate** 1:3
**ethics** 79:15
81:11

Redacted 30(B)6 Rad J. Hunsley                          August 4, 2023
Bryson, Santana And Joshua Vs. Rough Country, LLC

**[evaluate - form]**                                                Page 9

evaluate   47:6
evaluation   8:11
  46:2
event   50:19
eventually
  58:18
everybody
  78:12
evidence   7:22
  9:6,7,24 10:13
  22:9 25:11
  34:19 36:3,13
  38:21 41:22
  43:15,16 52:3
  65:17 67:17
  71:3 73:13
  81:7
exact   8:12
exactly   54:4
examination
  3:1,3,4 6:4
except   79:9
excerpt   81:4
excerpted
  76:11,11
exchanged
  15:12
executive   55:20
executives
  38:20
exhibit   2:2,4,6
  2:9,11,13,14,16
  2:17 13:12
  29:24 36:24
  40:16 55:15

56:9 62:18,21
  62:22,25 65:21
  65:24 68:5
  71:10
exhibits   2:1,19
  80:1,1,2
exists   60:14
expects   51:15
expert   12:12
  16:7 22:11
  42:9
expires   84:24
explore   17:4,12
exposure   10:24
extensive   32:5
  32:11,15 45:15
  46:19

**f**

f   6:17,21 26:4,8
  26:12 27:2
  47:14
facility   82:16
fact   50:24 59:4
  72:17 75:10
factor   11:3
  42:11
factors   13:9
facts   62:12
fair   49:6 50:15
  58:10,13
false   34:6,6
  63:15 69:2,22
  75:13
falsely   66:18

families   35:1
  35:23
family   35:8,17
  37:10
far   12:7 59:21
fars   53:5,7,14
  53:19,21,24
fatal   29:22 35:2
  52:22
fatality   52:3
fault   2:7 30:4,9
features   7:20
  47:21,24 55:7
  57:2
federal   66:22
  67:7 69:10
  83:6
feedback   9:23
  10:14,20
feel   14:18,19
  43:4
figure   9:17
  11:9 12:1,16
  14:16 15:1
  16:10 17:3
  41:16 43:9,23
  51:13,17
file   1:5 2:8,9
  82:11
filed   29:5 82:13
fill   82:7,7
financial   55:1
  75:22 79:8
financially   81:9

find   24:25
  68:14 69:3
  70:1
findings   11:20
  11:21 49:4,10
fine   60:7
finish   32:10
  34:18
firm   21:7 79:1
  79:17
first   2:5 6:2
  13:18 32:21
  40:20 63:7
  66:2 72:6
five   78:10
fmvss   61:7,21
focus   14:3
folder   37:3
following   79:1
  79:5 83:4
follows   6:3
ford   6:17 27:5
  47:14
foregoing   81:4
foreseeable
  26:3,7,11,16
  38:8
form   6:18 8:17
  9:9,20 11:12
  12:5,19 15:3
  16:12 17:13,22
  18:19 19:8,17
  20:9,20 21:1
  22:6 23:17
  25:4,14 28:2

Redacted 30(B)6 Rad J. Hunsley                    August 4, 2023
Bryson, Santana And Joshua Vs. Rough Country, LLC

**[form - handling]**                                          Page 10

28:23 31:15
32:2,24 33:19
34:4,13 35:25
36:10 38:23
40:7 41:8,19
42:17 43:12
44:10 45:22
46:10 47:16
48:6 49:19,25
51:2,19 52:14
52:23 54:15
58:24 59:19
60:11,19 61:19
62:6,14 64:3
64:19 66:20
67:13 68:8,16
69:4,19 70:3
70:14 71:6
72:21 74:10,17
75:11 83:7,9
**formal** 20:22
21:14
**formerly** 30:13
**forms** 79:7
**forward** 82:11
**found** 25:23
**frame** 7:19
24:13,14 68:2
68:6 72:13
**friendly** 72:8
**front** 29:12,19
65:24
**frontal** 13:1
**frozen** 39:6,8
39:10

**full** 6:9
**function** 20:13
**furnish** 83:9
**further** 81:8

**g**

**g** 5:1
**ga** 82:9
**gainesville** 1:2
**general** 36:7
51:5 63:9
**generated**
12:12
**gentleman**
55:20 56:17
58:5
**georgia** 1:1 4:6
4:12,22 35:23
64:22 70:11,12
70:13,18 72:6
72:7,8,13,18
73:6,9,19,23
74:9,16 75:16
79:5,11 81:2
82:17
**getting** 10:18
**girlfriend** 31:1
**give** 7:5 44:25
65:7
**given** 38:12
81:7 83:8
**gives** 30:23
**go** 6:18 8:17
9:9,20 10:3
11:7,12 12:14
12:19 13:24

15:3 16:12
17:13,22 18:19
19:8,17,25
20:9,20 22:6
23:24 25:4,14
25:21 28:2,8
30:15 31:15
32:2,5,10,11,24
33:19 34:13
35:25 36:10
37:13 38:23
39:11 40:7
41:8,19 42:17
42:25 43:12
45:15,22 46:10
46:18 47:16
49:25 51:2,19
52:14,23 54:15
56:2 58:19,24
59:19 60:11,19
61:19 62:6,14
62:18 64:3
66:7,20,24
67:13 68:8,16
69:4 71:6,14
72:21 73:15
74:10 77:22,23
78:2
**goes** 32:15 41:5
72:12
**going** 11:4
13:16,24 14:3
17:24 30:2,21
31:20 32:19
37:2,3,18

40:20 41:17
54:25 55:18
56:2 58:21
62:20 63:8
66:5,24 68:4
71:13,14,18
72:6 73:2 74:5
75:9,23,24
76:5
**good** 6:6,7,8
77:20 78:13
**google** 66:13
**gotcha** 45:14
**government**
10:21 52:17
**greenwell**
48:15
**greetings** 82:4
**gross** 68:20
**guess** 11:22
20:2 23:5,11
33:2 66:23
**guidelines**
60:17,25 61:9
61:10,18,23
**guilty** 75:2
**gunn** 4:11 82:1
**guys** 44:17

**h**

**h** 4:3,10 82:1
**half** 30:19
31:13
**handling** 32:18
44:15 61:25
62:1

**[hang - increased]**                                                                                 Page 11

| | | | |
|---|---|---|---|
| **hang**  75:21 | 21:1 22:6 | **hog**  24:7,10 | 29:14 33:10 |
| **hannah**  4:4,8 | 23:17 25:4,14 | **hold**  23:7 66:5 | 36:23 |
| 5:17 | 25:21 28:2,8 | 77:22 | **impacted**  29:13 |
| **happen**  26:14 | 28:23 31:15 | **http**  71:24 | 35:6,12 |
| 33:18,25 | 32:2,24 33:7 | **hudgins**  4:11 | **impacts**  81:14 |
| **happened**  35:3 | 33:19 34:4,13 | 82:1 | **impartial**  81:14 |
| **happens**  44:8 | 35:25 36:10 | **hunsley**  1:14 | **impartiality** |
| **hear**  39:5 44:17 | 38:23 39:5,9 | 3:2 6:1,10,12 | 79:14 81:11 |
| 48:1 52:11,16 | 40:7 41:8,19 | 10:12 11:4 | **inattentiveness** |
| 65:8 67:24 | 42:17,25 43:12 | 13:15 15:10 | 30:25 |
| **heard**  8:2 | 44:10 45:22 | 19:4 20:17 | **inch**  6:16,21 |
| **heckethorn** | 46:10,24 47:16 | 39:18 41:15 | 35:22 63:19,23 |
| 30:13 36:17 | 48:6 49:19,25 | 42:13 44:18 | **inches**  66:3,11 |
| **height**  25:8 | 51:2,19 52:14 | 47:10 51:12 | 67:20 72:14 |
| 29:11 37:21 | 52:23 54:15 | 52:10 55:2,25 | 73:6 |
| 38:6 51:9 | 58:24 59:19 | 64:10 65:7 | **incident**  11:3 |
| 59:14 67:23,25 | 60:11,19 61:2 | 71:2 82:2 | 12:13 |
| 72:13 | 61:19 62:6,14 | **hurt**  10:18 | **incidents**  10:25 |
| **heights**  8:1 | 64:3,19 66:5 | **i** | 11:1,5 16:8 |
| 66:19,23 67:4 | 66:20 67:13 | | 50:14 |
| 67:18 68:6,13 | 68:8,16 69:4 | **idea**  47:13 | **included**  2:20 |
| 68:21,24 | 69:19 70:3,14 | **identification** | 54:1 |
| **hey**  44:7 | 71:6 72:21 | 13:13 29:25 | **including**  14:6 |
| **higher**  35:22 | 74:10,17 75:11 | 36:25 40:17 | 14:12 15:17 |
| **highlighted** | 75:20 76:4 | 55:16 63:1 | **inconclusive** |
| 63:7 | 77:22 82:1 | 65:22 71:11 | 8:25 |
| **highlighting** | **hire**  17:11 | **ii**  4:10 82:1 | **increase**  9:18 |
| 57:7 | **hired**  49:24 | **illegal**  64:1 | 9:19 12:2,16 |
| **hill**  4:10 5:19 | 50:2 | 72:20 74:16 | 20:14 69:17 |
| 5:19 6:18 8:17 | **historical**  25:6 | 75:8 | 70:1 |
| 9:9,20 11:12 | **history**  51:8 | **illinois**  66:3 | **increased** |
| 12:5,19 15:3 | 65:1 | 67:20 68:6 | 14:20 18:24 |
| 16:12 17:13,22 | **hit**  35:9,18 | **image**  2:17 | 19:15,23 20:7 |
| 18:19 19:8,17 | **hitting**  7:18 | **imagine**  76:8 | 22:4,9 25:9,12 |
| 19:25 20:9,20 | | **impact**  13:1,7 | 34:8 36:3 52:2 |
| | | 17:24 18:2 | |

Redacted 30(B)6 Rad J. Hunsley                    August 4, 2023
Bryson, Santana And Joshua Vs. Rough Country, LLC

**[increased - kind]**                                                    Page 12

54:13
**increases**  9:3
52:6
**increasing**
11:10 25:11
**index**  2:1 3:1
**indicate**  36:13
**indicated**  51:25
**indicates**  25:8
53:1
**indiscernible**
44:16 69:6
**industry**  24:1,4
25:7 46:13
**infinite**  50:4
**information**
7:5 11:17 12:3
14:25 39:25
41:23 54:7
**informed**  42:20
43:8
**inherent**  9:24
11:2 16:21
18:23 22:10
52:4
**inherently**  13:7
14:19 25:9
34:8
**injuries**  9:8,11
9:15 28:11
29:22 31:2
33:24 35:24
38:22 40:5
41:24 42:1,7
42:12 50:17,19

50:20,25 51:14
51:18 52:12
**injury**  7:16 9:3
9:19 10:15
11:10 12:2,2
12:17 14:6,15
14:17,20 15:2
15:17 16:11
17:5,21,25
22:5 25:9,12
36:3 40:12
50:14 52:3,6
54:13 69:18
70:2
**insinuating**
34:7 50:8
**inspected**  26:24
27:5
**inspections**
27:9
**install**  35:19
**installed**  18:22
18:25 19:7
35:10 37:20
38:5
**installing**  52:5
**installs**  8:15
**institute**  53:25
**insured's**  57:2
**integrity**  47:7
47:14
**intention**  33:9
**intentionally**
69:2

**interest**  79:8,13
81:10
**interested**  81:9
**internally**
21:17
**interpretation**
64:24
**interrogatories**
2:5 7:10 13:19
**interrogatory**
13:25 14:14
**interrupt**  32:10
**interrupted**
39:19
**intersection**
35:5
**intrude**  29:20
**intrusion**  19:15
19:23 20:8
**intuitive**  69:6
**intuitively**
20:13
**investigate**
42:24 43:5
**investigating**
26:21 29:3
**investigation**
12:13
**involved**  16:7
26:5,25 29:7
50:6 52:22
57:24
**involving**  33:25
50:19

**issue**  9:25
10:15 17:7,18
17:19 18:24,24
25:18 42:21
43:3
**items**  55:1

**j**

**j**  1:14 3:2 82:2
**january**  30:4
30:16
**jason**  6:1,10
**jennifer**  1:23
5:12 44:25
81:19
**job**  82:2
**joined**  21:7
23:20 39:23
54:9
**joining**  13:2
25:7
**joshua**  1:3
**jury**  6:8 71:2
75:9

**k**

**ken**  18:13
21:19 22:17
56:4,13,24
58:15,17 63:3
**kill**  34:2
**killed**  29:8
**kind**  11:17 12:8
21:8 43:14
59:17 60:8,24
61:17 73:18

Redacted 30(B)6 Rad J. Hunsley                    August 4, 2023
Bryson, Santana And Joshua Vs. Rough Country, LLC

**[kit - lifts]**                                                    Page 13

**kit** 6:17 9:8
10:18 11:2,18
11:23 29:11
37:19 38:3
42:10 43:4
47:20,25 51:18
52:5 64:7 68:3
**kits** 9:18,23,25
10:14,24 11:10
12:2,8,17 17:4
19:7 20:13
35:23 40:5,12
44:14 46:13
59:23 63:19,23
64:1 69:10,16
69:17 70:1
72:19
**knew** 24:16
25:16 55:11
58:21 68:24
69:1
**know** 2:16 7:21
7:23 8:9,11
9:22 10:19
11:1,14,17,18
11:19,20,21,21
12:8,21,25
15:5,7 16:19
16:21,22,22
17:3 18:2,11
18:21,22 21:3
21:5,6,8,15,17
25:24 27:19
29:4 34:15,19
34:20,24 36:2

36:12,19,21,22
38:14 39:4
40:19 43:2
45:25 47:20
48:4 49:13,14
49:17 50:13,18
51:5,9,12,13,25
52:16,25 54:4
54:7 57:24
58:1,6 59:10
59:22,23,25
60:13 61:6,7,8
62:8 64:6,17
64:25 67:11
69:17 70:5,16
71:22 73:15
74:13
**knowledge**
8:19,24 11:5
18:14,25 41:21
43:20,24 54:17
55:14 57:20
63:16 64:5,11
64:12,13 69:9
75:15
**known** 30:13
55:3,5
**knows** 9:2
31:19,24 33:16
36:2 49:24
69:17 74:8
75:7,8

**l**

**l** 4:3,4,4
**law** 2:7 4:3,4
30:10 68:19
69:13 70:12
73:19 79:5
**lawmakers**
67:7
**laws** 2:16 58:23
59:10,18 60:10
64:17 65:18
68:14 69:11
70:16,18 71:4
71:19,23 72:18
73:13 74:8
**lawsuit** 29:5
**lawsuits** 51:6
55:13
**lawyer** 57:14
58:2,8,8
**leader** 24:3
**legal** 4:18 5:11
74:16
**leon** 4:5
**lessen** 33:10
**licensed** 22:16
22:22 23:3,9
**lift** 2:16 6:16,21
7:17 8:15 9:8
9:18 10:14,18
11:10 12:1,17
17:4 19:7,16
22:10 26:4,8
26:12 27:2
28:14 29:11

34:3,8 35:10
35:19,22 37:19
38:3 40:5
42:10 44:8,14
46:14 47:24
50:20 51:17
59:10 63:19,23
63:25 64:6
65:2,10 67:22
68:1,3 69:16
69:17 70:1
71:19 72:14,18
72:19 73:5
**lifted** 26:17
31:5 36:8 41:5
41:5,12,23
50:8,11 52:21
54:13 65:3
67:6 68:2
**lifting** 9:2 36:4
41:16 52:5
**liftlaws.com**
73:17
**liftlaws.com.**
65:10
**lifts** 7:25 16:11
18:18,22,24
19:24 20:8
22:4 23:15
25:2 28:17
31:13,20,25
32:12 33:16
38:22 42:7
48:4 49:6
50:14,17,25

Redacted 30(B)6 Rad J. Hunsley                           August 4, 2023
Bryson, Santana And Joshua Vs. Rough Country, LLC

[lifts - meetings]                                                    Page 14

51:13 52:12,21
61:18 62:4,11
66:2,11 67:20
67:25 68:13
70:11 71:4
75:8,15
**light** 30:24
**lights** 35:2
**limit** 72:14 73:6
**line** 76:10,10
83:11,13,15,17
83:19,21,23
84:1,3,5,7,9,11
**lines** 78:6 81:5
81:5
**link** 65:25
71:19
**links** 59:7,9
64:17 65:9,14
71:23 73:4
74:24
**literature** 8:4
**litigation** 15:8
**litsup** 82:9
**little** 11:6 36:20
44:19 58:19
73:3
**llc** 1:8,16 2:8
4:5,11,16 5:8,9
82:1
**llc's** 2:4
**local** 57:13
58:23 59:18
60:10 71:23

**long** 30:23,24
31:5,8 35:21
**look** 6:25 13:15
62:19 73:21
**looked** 12:16
27:2 67:17
**looking** 20:11
48:16 49:16
62:12,19 73:18
**looks** 38:16
**lot** 13:8
**lunch** 76:1

**m**

**ma'am** 6:14 7:3
7:7,11,14 10:2
10:5 24:5,8
26:19,23 27:1
27:4,7,11
28:16,19 29:6
29:9 30:7,11
30:14,18,20
31:4,7,10,23
37:8,12 39:21
40:2,9,24 44:5
45:19 48:2,13
48:21,24 49:2
49:8 53:6,20
56:6,19,22
57:5,10,15
58:11 59:2,8
59:15 63:6,13
63:20,24 64:14
65:20 66:16
67:10,15 68:10
71:17,21,25

72:11,16 73:8
73:11,14,25
74:4,19
**made** 25:24
27:8 52:4 55:9
63:18 69:25
73:23 79:5
80:1 81:13
**maintain** 32:12
44:14 47:7,21
47:25
**maintained**
32:17
**maintaining**
47:14 79:14
81:10
**maintains** 61:7
**make** 24:24
27:12,16,21
32:6 42:14,19
45:15 46:19
48:4 50:3 58:1
60:1 75:9
79:12 83:7
**makes** 23:9
**making** 27:14
79:14 83:8,8
**manager** 21:22
21:25
**manner** 28:10
**mansell** 82:16
**manually** 82:7
**manufacturer**
44:7,13 45:8
45:11,13

**manufacturers**
32:4
**manufacturing**
23:19
**march** 29:5
**mark** 62:21
65:24
**marked** 13:12
29:24 36:24
37:14 40:16
55:15 62:25
65:21 71:10
**marks** 5:6
**mashman** 4:4
5:17 55:23
56:10 62:23
**matheson**
73:23 74:8,16
74:22
**matter** 5:8
79:13,19 81:10
**max** 67:20
**maximum** 66:3
66:11
**mean** 10:21
32:10 36:20
45:11 48:16
52:16
**meeting** 18:7
20:17,22,25
21:12,14 22:3
**meetings** 17:17
18:16 19:5
38:19

Redacted 30(B)6 Rad J. Hunsley                     August 4, 2023
Bryson, Santana And Joshua Vs. Rough Country, LLC

**[members - number]**                                              Page 15

| | | | |
|---|---|---|---|
| **members**  55:19 | **monitoring** | **ne**  4:12 | **non**  2:7 |
| **mendoza**  2:11 | 53:19 | **nearly**  51:24 | **nonconfident...** |
| 36:16 37:9 | **morning**  6:6 | **necessarily** | 1:17 2:1,19 |
| 38:18 39:20 | **motion**  2:7 30:9 | 44:1 | 81:4 |
| 40:13,21 41:1 | **motorcycle** | **necessary**  83:9 | **nonparty**  30:10 |
| 43:8,10,21 | 24:1,13 | **need**  2:16 11:22 | **nonresponsive** |
| 44:1 45:9 51:6 | **motorcycles** | 15:11 32:22 | 13:11 14:22 |
| 51:7 | 24:11 | 33:5,13 59:10 | 16:25 17:9 |
| **mendozas** | **motorists**  35:23 | 59:23,25 75:5 | 18:5 19:2 |
| 51:15 | **motortrend** | **needed**  58:22 | 22:19,25 35:14 |
| **mention**  15:22 | 2:16 65:25 | **needs**  52:11 | 46:16 52:8 |
| **mentioned** | **move**  13:10 | 67:8 | 60:3 61:12 |
| 13:19 39:22 | 14:21 16:24 | **negative**  11:2 | 65:5 |
| **michael**  4:18 | 17:8 18:4 19:1 | **negatively**  13:7 | **northern**  1:1 |
| **mike**  5:10 | 22:18,24 30:21 | **neither**  35:7,8 | **notarized**  82:9 |
| **miles**  10:24 | 35:13 46:15 | 35:16,17 | **notary**  84:22 |
| **millions**  10:23 | 52:7 60:2 | **never**  9:5,5,7 | **note**  2:19 |
| **minor**  1:5 29:7 | 61:11 65:4 | 10:20,25 18:14 | **noted**  83:3,4 |
| **minute**  75:21 | **multiple**  14:11 | 19:13 34:1 | **notes**  27:13 |
| **minutes**  20:18 | **multitude** | 36:12 50:2 | **notice**  6:23 7:6 |
| 20:22 75:25 | 26:15 | 53:18 58:9 | 30:4 38:12 |
| 76:5,8 | **muted**  45:1 | 64:5 65:1,16 | 40:1 |
| **mismatch** | **n** | 69:11 71:3 | **noticing**  79:19 |
| 17:20 | | **nhtsa**  7:24,25 | **notifications** |
| **misrepresent** | **n**  5:1 | 8:4,10 12:21 | 51:10 |
| 62:12 | **nale**  22:1,2 | 12:24 13:5 | **notified**  43:3 |
| **misstated**  66:6 | **name**  5:10 6:9 | 16:20 17:18 | **noting**  82:6 |
| **modified**  53:2 | 12:23 23:21 | 18:1,8,15 | **number**  5:6 |
| **modify**  47:5 | 57:16 | 20:19 21:4,13 | 13:12,25 14:10 |
| **moment**  10:4 | **named**  55:20 | 48:11 51:22 | 29:24 36:24 |
| 54:23 65:7 | 56:17 | 53:16,23 54:1 | 37:16 40:16 |
| **monitor**  5:5 | **names**  5:15 | 60:17,25 61:8 | 50:5 55:15 |
| 40:4 53:11 | **nathan**  48:15 | 61:17,23 | 56:8 62:25 |
| **monitored** | **national**  53:25 | **nhtsa's**  8:21 | 65:21 71:10 |
| 53:14 | **nature**  9:25 | 49:4,10 | |
| | 52:5 | | |

Redacted 30(B)6 Rad J. Hunsley                    August 4, 2023
Bryson, Santana And Joshua Vs. Rough Country, LLC

**[o - paragraphs]**                                          Page 16

| **o** | | | |
|---|---|---|---|
| **o** 5:1 | 75:11 | 48:18 50:22 | **oven** 24:4 |
| **o'clock** 70:21 | **objection** 19:25 | 52:20 53:11,21 | **overridden** |
| **o.c.g.a.** 79:8,9 | 25:21 28:8 | 56:2,7,11,16 | 29:15 |
| 79:20 83:6 | 33:7 42:25 | 57:6,7 58:7,7 | **override** 29:19 |
| **o.e.** 47:8 | 46:24 61:2 | 58:12 59:9,12 | 41:11,17 51:9 |
| **oath** 5:23 7:12 | **objections** | 60:2,15 63:3,7 | 55:7 |
| **object** 6:18 | 14:10 | 63:14 64:15 | **overrides** 57:2 |
| 8:17 9:9,20 | **objectives** 14:7 | 65:13 66:8,17 | **own** 28:22 |
| 11:12 12:5,19 | 15:18 | 66:24 67:3,21 | 31:14 33:24 |
| 15:3 16:12 | **obligation** | 68:4,12 71:13 | 42:24 49:11 |
| 17:13,22 18:19 | 79:14 81:11 | 71:18,22 72:1 | 69:25 73:4 |
| 19:8,17 20:9 | **occupant** 29:20 | 72:5,17 73:2 | **owners** 47:3 |
| 20:20 21:1 | **oe** 32:13,17 | 73:21 74:1,21 | |
| 22:6 23:17 | 44:13 45:8,11 | 75:1,5,20 76:7 | **p** |
| 25:4,14 28:2 | **offer** 63:10 | 78:14 | **p** 5:1 |
| 28:23 31:15 | **offering** 25:17 | **old** 58:4 | **p.m.** 55:21 |
| 32:2,24 33:19 | **officer** 81:14 | **once** 37:20 38:4 | 66:25 70:23,23 |
| 34:4,13 35:25 | **offices** 82:3,9 | 78:9 82:8 | 78:16 |
| 36:10 38:23 | **oh** 32:9 56:11 | **open** 64:23 | **page** 2:2 3:3 |
| 40:7 41:8,19 | 58:16 | 65:13 | 30:15,22 37:13 |
| 42:17 43:12 | **okay** 8:2 9:1 | **operated** 28:11 | 68:5 71:19,22 |
| 44:10 45:22 | 12:14 13:15,22 | **order** 78:8,12 | 72:1 73:5 |
| 46:10 47:16 | 13:24 14:10 | **ordered** 14:12 | 74:23 76:10,10 |
| 48:6 49:19,25 | 15:15,21 20:17 | **ordering** 80:3 | 81:5 83:11,13 |
| 51:2,19 52:14 | 21:24 24:12,16 | 82:12 | 83:15,17,19,21 |
| 52:23 54:15 | 24:25 25:20 | **organized** | 83:23 84:1,3,5 |
| 58:24 59:19 | 26:3,7,20 27:8 | 58:19 | 84:7,9,11 |
| 60:11,19 61:19 | 27:16,24 30:2 | **original** 2:19 | **pages** 2:12,16 |
| 62:6,14 64:3 | 30:8,12,15,21 | 2:20 82:11,13 | 2:18 78:5 81:5 |
| 64:19 66:5,20 | 32:19 33:15 | **ourada** 1:23 | 81:5 83:9 |
| 67:13 68:8,16 | 37:9,13 38:2 | 5:12 81:19 | **paper** 8:22 49:4 |
| 69:4,19 70:3 | 38:12,17 40:3 | **outcome** 81:9 | 53:21 |
| 70:14 71:6 | 40:19 41:4 | **outlined** 59:6 | **paragraph** |
| 72:21 74:10,17 | 44:6,18,20,21 | **outside** 55:12 | 38:3 67:3 72:7 |
| | 45:3,14 48:10 | | **paragraphs** |
| | | | 77:25 |

Redacted 30(B)6 Rad J. Hunsley                    August 4, 2023
Bryson, Santana And Joshua Vs. Rough Country, LLC

**[paraphrase - procedure]**                                    Page 17

**paraphrase**
   50:15
**paraphrasing**
   45:18 71:5
   73:19
**parents**  1:4
**part**  7:8 32:14
   39:23 54:7
**particular**
   40:11
**parties**  4:19
   79:20 80:3
   81:14 82:12
**parts**  24:10,12
**party**  2:7 79:15
   79:21 81:9,12
**passenger**  38:7
**password**  80:2
   80:3
**patently**  69:21
**patrick**  4:16
   7:12 21:19
   56:17,20,24
   63:4,8
**patrol**  73:23
**pdf**  82:6
**peachtree**  4:12
**people**  10:17
   11:11 12:3
   22:3,15,21
   23:2 28:17
   34:1 37:10
   45:20 46:8,22
   51:15 62:12

**perfectly**  6:16
**performance**
   11:24 14:7
   15:18 20:6,12
   20:13 24:20
   32:13,17 43:4
   44:15,15 47:7
   47:18,19,20,24
**period**  51:25
**person**  35:9,18
**personally**
   11:16 15:7,24
   26:24 41:3
**perspective**
   32:18
**pes**  22:23
**phone**  30:25
**phonetic**  47:3
   75:23
**photographs**
   2:11
**physical**  16:1
**pickup**  52:1
**picture**  40:23
   41:1,2,16
**pictures**  27:10
   40:21
**place**  79:19
**plaintiff**  29:10
   29:16,18,18
   38:1
**plaintiff's**  7:10
   13:18 29:13,14
   29:21,21 56:9

**plaintiffs**  1:6
   2:3,5 4:2 5:18
   13:12 15:15
   29:24 31:2
   36:24 38:11
   40:16 55:15
   62:25 65:21
   71:10
**playbook**  28:21
**pleadings**
   36:21
**please**  5:13,14
   5:22 6:8 19:19
   44:24 65:7
   82:9,15 83:8,9
**pled**  75:2
**plus**  11:15 50:3
**point**  34:16,20
   61:21
**ponce**  4:5
**portion**  76:9
   77:24
**position**  6:9,15
   9:1 47:23 49:4
   49:9 52:11
**possibility**  7:16
   14:5,15,16
   15:17 16:17
   17:20 19:14,22
   20:7 22:4
**possibly**  18:13
   21:22 23:11
**potential**  26:10
   49:15

**potentially**
   17:25
**powerless**
   35:24
**preamble**  66:6
**preparation**
   7:8 72:2
**prepare**  57:8
**present**  4:15,25
   21:9
**presented**  9:6,7
   21:15 54:6
   64:6 65:2,17
   69:12 70:10
   79:2
**prevalent**  61:9
**pride**  23:23,24
   24:2
**primarily**
   24:13
**primary**  54:20
**print**  82:7
**printout**  2:18
**prior**  15:8
   23:23,25 25:7
   38:25
**privy**  41:25
   43:25
**probably**  33:2
   53:25 74:12
   75:24
**problems**  18:17
   19:6
**procedure**  83:6

Redacted 30(B)6 Rad J. Hunsley                    August 4, 2023
Bryson, Santana And Joshua Vs. Rough Country, LLC

**[proceeding - referenced]**                                        Page 18

**proceeding**
4:25 79:2,21
80:2 81:8,14
**proceedings**
1:17 10:7
39:13 70:22
76:11 79:12
**produce** 13:7
**produced** 30:3
37:15 79:22
**product** 10:22
10:25 14:18,19
15:2 18:2,23
18:25 25:16,23
32:16 43:9,17
46:2 47:7 50:3
50:5 57:2 61:7
69:12
**production**
82:16
**products** 13:6
30:13 32:12
34:1 36:17
42:15,20,24
50:3 55:7 58:9
58:22 60:17,25
63:10 65:17
68:21,25 73:13
**professional**
23:6,7,8 79:15
81:11
**prohibited**
79:19
**prohibitions**
79:9

**proper** 46:1
**protected** 80:2
80:3
**protection** 7:20
29:14
**protections**
36:8 38:7 41:6
41:12,18
**protective** 78:8
78:11
**protocols** 11:23
**prove** 38:21
**provide** 14:25
41:23 79:18
**provided** 13:6
**providing**
25:24
**public** 36:3,7
84:22
**published**
52:25 53:16
**purchase** 60:1
**pursuant** 4:21
83:6
**putting** 10:22
25:2

**q**

**question** 11:8
12:14 14:11
15:12 17:12
18:11 19:19
28:3 44:24
45:1,4 46:6,21
57:8 58:15
60:20 61:14

66:6
**questions** 40:20
75:19,22 79:22
81:6
**quick** 70:19
**quote** 15:15

**r**

**r** 5:1 58:5
**rad** 1:14 3:2
6:1,10 76:6
82:2
**rails** 7:20
**raise** 45:21
46:8,22 68:1
**raised** 29:11
**raising** 7:17
17:21 25:8
**ran** 30:24
**rc** 2:10,13,15
12:15 19:4,13
19:21 24:25
26:4
**rchausmer**
4:14
**read** 14:4 15:16
30:23 31:3
37:19,23 38:3
45:4 53:21
56:25 57:4,7,9
63:8,12 66:4
66:11 67:4,9
72:7,10,12,15
73:5 82:5 83:2
**real** 11:18
50:14

**really** 11:16
39:1 51:23
**rear** 24:15 26:9
**reason** 27:25
28:6
**reasonably**
25:24
**reasons** 83:8
**recall** 12:23
27:14 54:23
**received** 12:4
**receives** 79:21
**recognize** 67:7
**recommended**
25:2
**record** 5:3,15
10:6,9 39:12
39:15 70:20,24
77:23 78:15
79:12,14,22
81:7
**recorder** 27:12
**recording**
27:15
**recordings**
27:8,16,22
**red** 30:24 35:2
**redesign** 11:22
**redirection**
43:17
**reduced** 81:6
**reference** 40:15
**referenced**
22:15 40:14
51:22

Redacted 30(B)6 Rad J. Hunsley                     August 4, 2023
Bryson, Santana And Joshua Vs. Rough Country, LLC

**[references - road]**                                            Page 19

**references**
53:23 64:24
**referencing**
78:1
**referring**  75:17
**regarding**  7:25
7:25 8:13
11:17 18:1
22:4 45:9
51:22 77:25
**regular**  53:13
53:19
**regulated**
66:19 67:6,18
68:7,13,25
**regulation**
66:22 73:20
**regulations**
4:22 58:23
59:6,18 60:18
61:1,18 79:6
**relate**  67:5
**relating**  80:2
**relationship**
79:13 81:10
**relative**  11:23
12:7 24:11
47:3 65:2 81:8
**relatively**  8:25
**remaining**  78:4
**remains**  78:11
**remember**  8:6
8:12 45:17
**remotely**  5:23
6:2 81:5

**repeat**  9:14
19:18 37:7
44:23,24
**report**  73:23
79:13
**reporter**  4:24
5:12,13,21,24
10:1,3 39:7
44:22 45:2,5
69:7 79:1,4,8
79:10,23 80:1
**reporting**  4:23
79:7,18
**reports**  7:22
8:3 12:12
53:16
**repository**  80:3
**represent**  5:15
40:25
**representations**
79:5
**representative**
29:2
**representatives**
19:5
**representing**
5:10
**requested**
25:25 82:5
**required**  25:25
**research**  6:10
16:16 17:2,4
60:9
**reserve**  78:3

**reserved**  78:17
**respect**  61:18
**responds**  58:16
**response**  2:4
13:18 14:14
15:21 43:2
45:7 57:1,8
**responses**  7:10
14:25 15:13
36:21
**responsibility**
31:12 39:24
82:5
**restrained**
26:13,18
**restricting**
72:13
**result**  12:17
54:13
**resulted**  38:5
**resulting**  29:22
31:2
**results**  11:20
37:20 49:15
**returned**  82:10
82:13
**review**  7:9 12:3
12:21 21:15
42:6 78:4 79:2
82:6
**reviewed**  7:21
7:24,24 8:3,6,9
11:14 13:2,20
15:6,7 22:12
34:20 43:25

48:11,25 54:7
54:12 64:21
65:9,10 72:1
**reviewing**
16:19 21:4
23:14 54:9
**rhill**  4:13
**richard**  4:10
82:1
**rick**  5:19 75:21
**right**  9:4 10:12
11:4 12:18
13:20 24:6,9
26:25 27:3,9
28:15,18 33:13
37:24 39:11,18
39:22 40:25
48:14,25 49:3
54:24 56:20,21
56:23 57:16,18
58:7,14 59:10
59:16 65:13,19
66:17 67:11,24
72:2,20 73:9
73:10,21 78:4
78:8
**risk**  14:20
16:21 22:10
25:9 34:8 36:8
52:2,13 54:12
**road**  4:12
10:25 11:6,11
12:3 50:15
59:22 63:10
72:8

**roads** 32:7
**rob** 4:7 5:16
  39:9 77:24
**robert** 4:3
**roswell** 82:17
**rotisserie** 24:3
**rough** 1:8,16
  2:4,8,17 4:16
  5:7,8,20 6:9,11
  6:13,15,16 7:4
  7:9,15,17 8:3,5
  8:9,14,15,21
  9:1,17 10:13
  10:16 11:5,9
  12:1,15 13:3
  13:16,17 14:4
  14:14,24 16:4
  16:9,16 17:2
  17:11,17 18:7
  18:10,16 19:4
  20:5,18 23:14
  23:20 25:6,10
  26:8,12,17,20
  27:24 28:5,14
  28:18,21,21
  29:2,4 30:3,12
  30:22 31:8,11
  31:14,19,20,24
  31:25 32:15
  33:12,15,16,23
  33:25 34:1,3
  34:11,21 35:7
  35:10,16,19,21
  36:2,6,17
  37:10,15 38:12

38:14,18,21
39:23,25 40:4
40:11,12 41:15
42:6,13,23
43:7,8,10,10,18
44:6 46:13
47:5,13,23
48:3,11,22,25
49:3,5,9,11,17
49:23,23 50:13
50:20,23 51:12
51:14 52:10,20
53:11,18 54:12
55:2,3,5,11,19
56:13,20 57:22
58:8,9,21 59:4
59:17 60:5,8
60:16,23 61:16
62:11 63:14,18
63:22 64:12,16
65:15,15 66:1
66:13,18 68:13
68:14,23 69:1
69:16,24 70:10
70:12 71:3,14
73:4,12 74:9
74:15,23 75:7
75:9
**roughcountry...**
71:15
**rule** 1:13 83:6
**rules** 4:21 79:6
  83:6
**rws** 1:6

**s**

**s** 5:1
**safe** 6:16,21
  25:24 32:1,6
  33:17 42:15,20
  42:24 43:9
  45:16 46:20
  58:2
**safety** 17:11
  38:7 55:7 57:2
  57:22,25
**santana** 1:3
**saw** 41:16
**saying** 11:25
  20:19 23:6
  38:1 42:9
  50:16,18
**says** 30:22
  37:18 38:2
  56:24 63:8
  66:10 67:3
  71:22 72:7
  73:5
**scenario** 11:19
  12:9
**scene** 2:12
**screen** 13:22
  37:5 40:23
  55:25 65:19
  71:13
**scroll** 64:15
  66:2 71:18
  73:2
**scrolling** 68:5

**seal** 82:10
**seat** 32:22
  33:13
**second** 2:4
  13:17 30:21
**section** 79:8
**sections** 79:9
**see** 13:22 14:1
  14:8 30:6 37:5
  37:8,16 38:13
  40:23 52:21
  55:25 58:17,18
  65:19 67:1
  68:10 71:16,20
**seen** 36:20 41:2
  52:2 58:5 71:3
**sell** 35:22
**selling** 9:22
  25:13,20 70:13
**send** 82:11,15
**sends** 56:24
**senior** 21:22,24
**sent** 66:1,14
**sentence** 14:3
  30:22 63:8
  73:20 74:5
  75:6
**september**
  81:16
**sergeant** 73:22
  74:8,15,21
**serious** 52:18
  69:18
**seriously** 52:13

**[serve - study]**                                                    Page 21

| | | | |
|---|---|---|---|
| **serve** 81:14 | **sitting** 67:11 | **specifically** | 69:1 72:24 |
| **services** 79:18 | **sizes** 12:25 | 11:8 17:19 | **stating** 15:5 |
| **seven** 12:24 | **smoker** 23:19 | 21:6 53:1 59:5 | 36:14 51:4 |
| **severe** 50:21 | 24:3 | 62:8 79:6 | 59:24 |
| **severity** 33:10 | **smokers** 23:16 | **speed** 21:9 | **statute** 61:4 |
| 34:9 | **snyder** 4:3,5 | **spent** 23:25 | 64:7,22 70:11 |
| **share** 30:2 | 5:16 75:21 | **stability** 61:6 | 74:23 75:13 |
| 71:13 | 76:7 78:14 | **stamp** 23:7 | **steering** 24:14 |
| **shortly** 13:2 | **sold** 63:18,22 | **stamped** 2:8,9 | **stop** 25:13,20 |
| **show** 13:17 | **solely** 79:16 | 2:10,13,14 | 70:12 |
| 37:2,4 40:21 | 81:12 | **start** 55:4 | **stopped** 35:2 |
| 55:18 62:20 | **solutions** 4:18 | **started** 23:14 | **straight** 28:20 |
| 68:4 74:5 75:5 | 5:11 | **starts** 56:4 | **strike** 13:10 |
| **showed** 22:13 | **somebody** | **state** 2:7 5:14 | 14:21 16:24 |
| 68:20 | 18:10 23:9 | 30:10 41:11 | 17:8 18:4 19:1 |
| **showing** 70:11 | **sorry** 5:14 9:14 | 64:8 65:18 | 22:18,24 29:21 |
| 73:18 | 10:3 16:9 | 67:7 68:14 | 35:13 46:15 |
| **shown** 67:4 | 21:20 23:21,24 | 69:11,13 71:19 | 52:7 58:18 |
| **shows** 59:17 | 32:9 34:18 | 72:9,17 73:13 | 60:2 61:11 |
| 60:23 61:16,22 | 37:7 44:20,22 | 73:14,16,23 | 65:4 |
| 62:3 68:6 | 45:1,2 46:5 | 79:10 81:2 | **striking** 7:17 |
| **side** 13:1 29:14 | 50:10 55:4 | **stated** 40:13 | 7:19 28:1,7,13 |
| 36:23 | 56:18 58:16,18 | 68:20 81:6 | 74:2,22 75:1 |
| **sign** 82:5 | 60:21 69:7 | **statement** 4:23 | **string** 56:3,16 |
| **signature** 78:17 | **sounds** 78:13 | 14:13 38:10 | 56:18 62:21 |
| 81:19 82:2,14 | **southern** 23:23 | 47:2,10 49:7 | 67:18 |
| 84:15 | 23:24 24:2 | 59:21 63:14,18 | **stringent** 72:18 |
| **signed** 82:8,10 | **speak** 6:12 39:1 | 63:22 67:12 | **struck** 41:7 |
| 82:13 | 44:19 58:3 | 69:15 73:15 | **structure** 58:2 |
| **similar** 51:6 | 64:21 | 83:8 | **structured** 50:6 |
| **simply** 62:12 | **specific** 12:7 | **statements** | **studies** 41:22 |
| **simulate** 43:21 | 15:12 18:2 | 68:24 69:2 | 54:1,11 |
| **sir** 63:15 69:7 | 19:10 44:12 | **states** 1:1 23:11 | **study** 8:11 |
| **sit** 68:18 | 50:8,11 57:1 | 59:11 63:11 | 20:19 21:13 |
| | 61:14 79:20 | 64:1,17 66:10 | 42:3,6 48:11 |

Redacted 30(B)6 Rad J. Hunsley                        August 4, 2023
Bryson, Santana And Joshua Vs. Rough Country, LLC

**[study - transcript]**                                                      Page 22

48:14 49:1,10
53:23 54:3
**subcontractor**
79:11,16 81:13
**subject**  29:11
29:12,12 37:21
**submitted**  4:24
7:23 79:23
80:1
**subscribed**
84:17
**substance**  83:7
**sued**  38:15
42:15
**suite**  4:5,12
82:16
**sum**  58:5
**supplemental**
2:4 13:18
**support**  2:6
30:9
**sure**  20:11
21:23 32:6
42:14,19 45:15
46:19 53:15
57:20 65:11
**surviving**  1:4
**suspension**
24:15,17,19
25:1,11 32:18
36:18 45:21
46:8,23 72:14
72:19 73:3,5
**sustained**  41:25
50:19

**swear**  5:13,22
**sworn**  6:2 7:9
7:12 84:17
**systems**  36:18

**t**

**tag**  75:23
**take**  25:17 43:5
52:18 70:19
75:24,25 76:1
76:5
**taken**  81:5
**takes**  52:12
**talk**  54:24 55:1
**talked**  15:11
31:21 38:19
48:10
**talking**  8:22
12:11 30:25
39:19 42:3
54:3
**taylor**  30:23
**team**  13:3 54:9
55:20 75:23
**tedra**  4:3,7
5:16
**teejorga**  75:22
**tell**  6:8 10:17
27:21 45:20,25
46:7,22 47:4
59:24 60:7
**tells**  34:1
**ten**  11:15 51:25
**tennessee**  1:20
**term**  23:5

**terms**  79:16
81:13
**test**  7:25 12:22
12:23 16:22
17:3 43:18,21
49:24 50:2,6
61:6,8
**tested**  61:9
**testified**  6:2
45:14 46:18
50:12,23 65:15
**testify**  40:3
65:8
**testimony**
10:16 22:11
40:10 42:10
66:7 83:2,7
**testing**  12:22
13:1 15:23,25
16:5 32:5
43:22 44:4,4
45:15 46:19
49:11,13 51:23
61:21 69:25
**tests**  14:6 15:18
16:1,7,10,17
22:12 47:15
49:14 62:1
70:7
**thank**  23:13
44:21 55:23
56:11 77:20
**thing**  54:25
**things**  32:20
40:4 50:12

**think**  22:8
40:14 43:16
44:18 46:5
53:24 76:6
78:7
**thirty**  76:7
**thought**  50:23
**time**  5:4 10:10
13:4 21:10,25
23:14 24:16
26:22 27:6
39:16 63:17,21
64:2 66:14
70:25 79:21
82:13
**times**  72:3,5
**title**  30:8 54:5
**today**  6:6,13,24
20:19 29:4
39:24 50:23
54:25 67:11
68:18
**together**  38:20
**told**  39:3 40:11
44:3 71:2
**took**  27:10
77:24
**topic**  19:11
**topics**  7:2,6
39:25
**transcript**  2:20
76:9,12 78:5,9
78:10 79:21
81:4,7 82:6,11
82:13 83:2

**[transcripts - videographer]**                                                  Page 23

transcripts
  79:21 80:2
transmission
  24:15
traversing  35:5
truck  9:2 25:8
  29:13 31:6
  34:8 41:5 44:7
  44:8,14 45:13
  45:16 46:12
  47:19
truck's  29:12
trucks  31:20,25
  32:21 33:4,12
  41:17,17 46:14
  46:19,23 52:2
  62:4
true  11:25
  19:13,21 20:5
  27:24 28:5,20
  31:11,19,24
  32:21 33:4,15
  33:23 35:1
  36:6 45:20
  46:7,21 47:10
  47:12 48:3
  55:5,11 62:10
  63:17,21,25
  64:10 66:17
  67:12 68:12,23
  69:15,16,24
  70:5 73:12
  74:21 75:1,7
  79:22 81:7

truth  62:13
  69:3
trying  8:6
  31:12
twelve  70:20
twenty  76:7
two  54:19,20
  54:21 59:7
type  8:12 11:3
  68:3
typewriting
  81:7
typically  27:19

**u**

unaware  47:20
  47:24 51:8
  68:18
under  2:7 7:12
  30:10 78:7,11
undersigned
  83:2
understand
  15:10 24:2
  46:5
understanding
  7:4
underway  13:4
unfortunately
  72:8
united  1:1
unmodified
  53:3
unreasonably
  37:21 38:4,5

unsafe  25:17
uploaded  80:2
upper  7:25
use  34:2 59:22
  63:10 83:8
used  27:12
user  47:4
users  45:25
uses  53:21
using  28:14
utility  25:25
  67:5,7

**v**

v  1:7
validate  73:16
various  13:9
  59:6
vehicle  7:17,18
  7:18,19 8:13
  9:11,16 13:7
  17:20,24 20:15
  22:10 24:17,20
  26:5,13,17
  28:11 29:13,14
  29:21 32:17
  35:10,11,19
  36:4 37:22
  41:6,13,23
  44:9 46:3 47:5
  47:8,19 48:19
  48:19 50:8,11
  51:23,23 52:5
  52:6 53:8 58:2
  59:22 61:5
  62:4 65:3 67:6

68:2,20 72:9
vehicle's  7:19
  19:15
vehicles  8:16
  12:24,25 16:10
  19:7 25:1,12
  26:14,24 32:5
  32:6 36:8,9
  38:8 41:18
  45:21 46:9
  48:4 49:24
  50:5 51:17
  52:21 53:2
  54:14 55:8
  57:3 59:23
  67:5
verbatim  79:14
verdict  75:9
verify  16:23
  59:25
veritext  4:18
  5:11 79:11,18
  82:9,16
veritext.com
  82:9
versus  5:8 29:4
  36:16 43:10
video  4:19 5:5
  5:6
videoconfere...
  1:12 81:6
videographer
  4:17 5:3,11,21
  10:6,9 39:11
  39:15 70:20,24

**[videographer - zoom]**                                                    Page 24

78:15
**videotaped**
   1:12
**violate**   71:4
   73:13
**violated**   65:18
   68:14
**violating**   69:12
   70:12
**violation**   64:7
   68:19 69:10
   70:17,18 75:15
   75:16
**voice**   27:12,14
   27:16
**vp**   6:10
**vs**   2:8

**w**

**w**   4:5
**waiting**   10:17
**walt**   55:20 56:4
**want**   11:7
   36:16 40:21
   48:4 49:17
   54:24 75:22
   76:1
**warned**   36:7
**warranted**
   11:21 43:16
**way**   41:5 58:19
**we've**   7:24 9:22
   10:20,22,25
   11:14 15:12
   29:3 31:21
   50:2 51:6 52:4

59:21 64:5
65:1 69:11
**web**   73:5
**website**   2:17
   65:11 71:15,23
   73:4,14,17
   74:24
**weights**   68:20
**weinberg**   4:11
   82:1
**wheeler**   4:11
   82:1
**willing**   62:11
**witness**   3:2
   5:22,24 6:19
   8:18 9:10,21
   11:13 12:6,20
   15:4 16:13
   17:14,23 18:20
   19:9,18 20:1
   20:10,21 21:2
   22:7 23:18
   25:5,15,22
   28:3,9,24
   31:16 32:3
   33:1,8,20 34:5
   34:14 36:1,11
   38:24 40:8
   41:10,20 42:10
   42:18 43:1,13
   44:11,20,24
   45:6,24 46:11
   47:1,17 48:7
   49:20 50:1
   51:3,20 52:15

52:24 54:16
59:1,20 60:12
60:20 61:3,20
62:7,15 64:4
64:20 66:9,21
67:14 68:9,17
69:5,8,20 70:4
70:15 71:8
72:23 74:11,18
75:12 76:1
**witnesses**   80:1
**word**   17:9
**work**   14:4 15:1
   15:16 57:22,25
**world**   24:3
**worse**   24:24
**wreck**   9:3 27:6
   51:16
**wrecks**   17:5
   22:5 50:17
**written**   4:23
   14:25 15:13,22
   48:14
**wrong**   34:12,23
   50:22 58:17
**wwhgd.com**
   4:13,14
**www.liftlaws...**
   71:24

**y**

**y'all**   76:1
**yeah**   18:13
   20:2 23:11
   26:15 27:18
   33:2 34:15

37:25 40:14
42:5 44:18
66:22 68:10
72:3 74:12
**year**   51:8,25
   58:4 65:1
**years**   9:23
   10:23 11:15
   18:15 21:23
   23:25 30:19
   31:13

**z**

**zoom**   4:19

Federal Rules of Civil Procedure

Rule 30

(e)  Review By the Witness; Changes.

(1)  Review; Statement of Changes. On request by the
deponent or a party before the deposition is
completed, the deponent must be allowed 30 days
after being notified by the officer that the
transcript or recording is available in which:

(A)  to review the transcript or recording; and

(B)  if there are changes in form or substance, to
sign a statement listing the changes and the
reasons for making them.

(2)  Changes Indicated in the Officer's Certificate.
The officer must note in the certificate prescribed
by Rule 30(f)(1) whether a review was requested
and, if so, must attach any changes the deponent
makes during the 30-day period.

DISCLAIMER:  THE FOREGOING FEDERAL PROCEDURE RULES
ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY.
THE ABOVE RULES ARE CURRENT AS OF APRIL 1,
2019.  PLEASE REFER TO THE APPLICABLE FEDERAL RULES
OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS

COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the
foregoing transcript is a true, correct and complete
transcript of the colloquies, questions and answers
as submitted by the court reporter. Veritext Legal
Solutions further represents that the attached
exhibits, if any, are true, correct and complete
documents as submitted by the court reporter and/or
attorneys in relation to this deposition and that
the documents were processed in accordance with
our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining
the confidentiality of client and witness information,
in accordance with the regulations promulgated under
the Health Insurance Portability and Accountability
Act (HIPAA), as amended with respect to protected
health information and the Gramm-Leach-Bliley Act, as
amended, with respect to Personally Identifiable
Information (PII). Physical transcripts and exhibits
are managed under strict facility and personnel access
controls. Electronic files of documents are stored
in encrypted form and are transmitted in an encrypted

fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.