# EXHIBIT 2

Case 2:22-cv-00017-RWS   Document 103-4   Filed 09/05/24   Page 2 of 4
Paul Lewis, Jr., M.S., BME                                March 18, 2024
Bryson, Santana and Joshua v. Rough Country, LLC

Page 1

```
 1                 UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF GEORGIA
 2                      GAINESVILLE DIVISION
 3
 4    SANTANA BRYSON AND JOSHUA BRYSON,
      AS ADMINISTRATORS OF THE ESTATE OF
 5    C.Z.B., AND AS SURVIVING PARENTS OF
      C.Z.B., A DECEASED MINOR,
 6
            Plaintiffs,
 7    v.                                CASE NO. 2:22-CV-017-RWS
 8    ROUGH COUNTRY, LLC,
 9          Defendant.
10
11
12
               The videotaped deposition of PAUL LEWIS,
13
         JR., M.S., BME, taken on behalf of the Defendant,
14
         taken pursuant to agreement of counsel, taken for
15
         all purposes authorized by the Federal Rules
16
         of Civil Procedure; the reading and signing
17
         of the deposition being waived; taken before
18
         Leita J. Seaborn, Certified Court Reporter,
19
         commencing at 10:38 a.m., on this the 18th day
20
         of March 2024, at the law offices of Cannella
21
         Snyder, LLC, 315 W Ponce de Leon Ave, Suite 885
22
         Decatur, Georgia.
23
24
25
```

Case 2:22-cv-00017-RWS   Document 103-4   Filed 09/05/24   Page 3 of 4
Paul Lewis, Jr., M.S., BME                                March 18, 2024
Bryson, Santana and Joshua v. Rough Country, LLC

Page 83

1  softer than what part of the seat there was.
2      Q.  Right.  And is that also true with regard to
3  the injuries to his left side, his left leg and his
4  left arm?  There was no physical evidence on the seat
5  showing that those parts of his body impacted the
6  driver's seat?
7      A.  Correct, there was not, I mean even though we
8  know absolutely its interaction with the seat.
9      Q.  And you know that why?  Give me all of the
10 bases for why you conclude that all of his injuries
11 I've just mentioned -- his basilar skull fracture and
12 the injuries to his left extremities -- that they all
13 occurred via impact with the driver's seat.
14     A.  Because there is nothing about his occupant
15 kinematics in the rear crash that in any way could
16 create an axial load or bending load to his left femur
17 to cause that fracture nor realistically even for his
18 left arm.  So all of that is associated with being
19 jammed and shoved forward into the seat (indicating).
20     Q.  Could the left-sided injuries be due to -- to
21 impact with the door or the left-sided frame of the
22 vehicle?
23     A.  No.
24     Q.  And how did you rule that out?
25     A.  Because this is all basically a straight front

1  certainly I couldn't -- I couldn't crush the front of
2  the child seat much and whatever.  So, you know, again,
3  it's not meant to be exact, but it certainly gives us
4  an understanding of some of the spacial requirements or
5  so based on the child and all being there.
6       Q.  And is the purpose of your surrogate study to
7  show that based upon the static condition of the
8  accident vehicle that the child was pushed far enough
9  forward for his head to have struck the driver's seat.
10 Is that basically what -- the purpose of the study?
11      A.  Well, kind of.  I think it's a combination.
12 Like I said, we know there is some deflection of the
13 driver's seat, so it's kind of like they're sort of
14 both coming at each other.  And certainly the big
15 driving force is the intrusion and crush shoving that
16 child and seat forward, but also that distance is
17 getting closed a little bit by some deflection of the
18 driver seat back.
19      Q.  Okay.  In this photo on page 18 you're
20 obviously not showing -- showing the deflection
21 backward of the driver's seat.
22      A.  I know I did some with --
23      Q.  Right.
24      A.  -- the seat back, so let me see if I can find
25 that photo just to make sure I don't answer you