# EXHIBIT 16

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**GAINESVILLE DIVISION**

| | | |
|---|---|---|
| Santana Bryson and Joshua Bryson, | ) | |
| as Administrators of the Estate of | ) | |
| C.Z.B., and as surviving parents of | ) | |
| C.Z.B., a deceased minor, | ) | Case No. 2:22-CV-017-RWS |
| | ) | |
|    Plaintiffs, | ) | JURY TRIAL DEMANDED |
| | ) | |
| v. | ) | |
| | ) | |
| Rough Country, LLC, | ) | |
| | ) | |
|    Defendant. | ) | |

**DEFENDANT ROUGH COUNTRY, LLC'S SECOND SUPPLEMENTAL**
**RESPONSE TO PLAINTIFFS' FIRST INTERROGATORIES**

Rough Country, LLC ("Rough Country"), named as a Defendant herein, provides the following supplemental response to Plaintiffs' First Interrogatories, subject to and without waiver of the objections asserted:

**INTERROGATORIES**

1.

Please identify the model number and any internal designation code for the subject lift kit.

**RESPONSE:  Based on Rough Country's single visual inspection of Hunter Elliott's vehicle (during which Rough Country was not allowed to disassemble or uninstall the components of the lift kit), Rough Country believes that a 4.5" lift kit was installed on Hunter Elliott's 2016 Ford F250 pickup truck, and that the product is the one called 534.20.  By way of further response, Rough Country refers Plaintiffs to the photographs and video of the lift kit previously produced.**

**<u>AMENDED SUPPLEMENTAL RESPONSE</u>:**

**After receiving the purchase information from Ronny Thompson Ford, Rough Country was able to identify the Sales Order (Bates No. RC-BRYSON 005377) for the subject lift kit.  The correct part number is 567.20, as identified on the Sales Order.  The only difference in the two kits is the length of the U-bolt.**

2.

Please identify all persons you know to have, or believe may have, knowledge relevant to any issue in this case and describe the knowledge each person has or may have.

**RESPONSE:  Plaintiffs, Hunter Elliott, the Georgia State Patrol Specialized Collision Reconstruction Team ("SCRT") investigators, first**

**responders and local authorities have knowledge regarding the accident. In accordance with Fed.R.Civ.P. 33(d), Rough Country refers Plaintiffs to the SCRT team documents, Fannin County documents, and the police report. Patrick Just, CFO, and Rad Hunsley who is V.P. of Product Development, at this time are considered persons with knowledge of Defendant's business and product lines. Mr. Hunsley has knowledge of the lift kit in question, including the post-accident photographs and video taken of Hunter Elliott's F250.**

3.

Please state the date and place of manufacture of the subject lift kit; the date the subject lift kit left Rough Country's control; and the date and place the subject lift kit was installed on Hunter Elliot's 2016 Ford F250.

**RESPONSE: Rough Country assembled the components that make up the subject lift kit; however, without additional information about the date of sale, Rough Country is unable to determine whether the components of the subject lift kit were manufactured by a third-party or by Rough Country and the date/place on which the components were manufactured. Rough Country is also unable to determine, at this time, the date the subject lift kit left its control or the date/place the subject lift kit was installed on Hunter Elliott's 2016 Ford F250.**

-3-

**AMENDED SUPPLEMENTAL RESPONSE:**

Pursuant to FED.R.CIV.P. 33(d), Rough Country refers Plaintiffs to the Sales Order produced (Bates No. RC-BRYSON 005377) and the Ronny Thompson Ford records previously produced (Bates Nos. RONNIE THOMPSON FORD 000004-000030), which reflect the date of purchase and installation of the subject lift kit.  By way of further response, Rough Country refers Plaintiffs to the exemplar component parts invoices for the subject lift kit produced subject to Stipulated Confidentiality Agreement and Protective Order (Bates Nos. RC-BRYSON CONFIDENTIAL 005349-005359).  Rough Country is unable to provide the exact manufacturing date or place for each component part; therefore, Rough Country provided exemplar invoices for the component parts shortly preceding the date of the sale to identify each supplier.

4.

Please describe in detail how you contend the subject incident occurred and how C.Z.B. suffered his fatal injuries.

**RESPONSE:  It appears the accident and injuries were caused by a drunk driver, Hunter Elliott, who was driving with a suspended license and failed to stop at the red light while distracted on a cell phone, causing his**

-4-

pickup truck to collide with the rear of Plaintiff's vehicle and causing the death of C.Z.B.   According to the SCRT report, "it can be stated the proximate cause of this collision is Mr. Hunter Elliott operated [sic] his vehicle in a reckless and an unsafe manner while under the influence of alcohol.  Mr. Elliott's actions were the direct result in the death of [C.Z.] Bryson."  (SCRT Investigative Summary, p. 6, Case Number SCRTB-017-20).  Discovery has just commenced, and, therefore, Rough Country will supplement as necessary as evidence is developed.

<center>5.</center>

Please state what Rough Country did to ensure that the lift kits it sold in the State of Georgia were legal for use in the State of Georgia.

**RESPONSE:   All lift kits are designed for the OEM (Original Equipment Manufacturer) vehicles that they fit.  Shocks are valved according to vehicle weight and suspension characteristics with careful consideration to suspension modifications.   Rough Country is not aware of any Georgia standard specific to lift kits or modified suspension/frame systems, except for the Georgia statute regulating the height of raised vehicles, which is the responsibility of the installer and ultimate user.  Rough Country includes information on instruction sheets and its website regarding local laws:**

<center>-5-</center>

**Rough Country Suspension Systems advises that you check your state and local ordinances prior to installing a suspension kit or other aftermarket vehicle modification.  While some states have almost no restrictions, others have many regulations concerning just what is and isn't considered street-legal.  To ensure your purchase falls within your state's guidelines, call your local DMV. Many customers have also recommended using this website: www.liftlaws.com.  Liftlaws.com is not maintained by Rough Country and we subsequently cannot attest to its accuracy.  It is always the buyers responsibility to comply with all Federal, State, and Local laws governing the sale of Rough Country product.**

6.

Please state whether you considered the possibility of injury to a person arising from a collision with a vehicle using a Rough Country lift kit because the Rough Country lift kit raised the striking vehicle such that (a) the lifted vehicle bypassed the other vehicle's frame rails and crash protection features or (b) the lifted vehicle intruded (i.e., crushed) too far into the other vehicle. If so, describe all work done by you to account for the possibility of such injury, including all tests, design criteria, and performance objectives.

**RESPONSE:   Rough Country objects to this Interrogatory on the grounds that it is an improper characterization of Georgia product liability law.  Rough Country further objects to this Interrogatory on the grounds that it is vague and ambiguous as to the terms "bypass" and "crash protection features".**

Subject to and without waiver of these objections, Rough Country states that it is an aftermarket automotive parts seller.  It is not a manufacturer of passenger vehicles or trucks.  Rough Country makes lift kits which are a product that has been on the market for 40 plus years.  Rough Country products are well manufactured to accomplish their purpose (for a lift kit, to raise the suspension or body of a vehicle to provide greater utility and in some cases aesthetics) with proper fabrication and robust dimensions and materials.

<u>SUPPLEMENTAL RESPONSE</u>:

Rough Country further objects to this Interrogatory on the grounds that it is vague, ambiguous, and confusing in its use of the word "considered" and the phrase "too far".  Subject to and without waiver of these objections and the objections above, Rough Country states that it was aware the subject lift kit would increase the height of the bumper when the subject kit was designed; however, it is not feasible to consider every possible bumper height combination and configuration for every lifted vehicle make and model and every non-lifted vehicle make and model in the context of considering the impact of potential bumper heights, including the possibility of injury to a person arising from a collision with a vehicle using a Rough Country lift kit,

for every collision type, collision condition, and collision circumstance. Rough Country is not withholding information and provides the above information without waiver of its objections.

**SECOND SUPPLEMENTAL RESPONSE:**

Yes, Rough Country generally considered the remote possibility of injury to a person arising from a collision with a vehicle using a Rough Country lift kit, including the remote possibility that those scenarios specified in Interrogatory No. 6 might occur. Rough Country does not believe that the installation of a Rough Country lift kit necessarily means that the lifted vehicle will bypass the other vehicle's frame rails or that the lifted vehicle will intrude too far into the other vehicle, as suggested in Interrogatory No. 6. Rather, Rough Country believes that the benefit and utility of the design of its lift kits significantly outweighs any associated risk of harm, if any.

While the remote possibility addressed in Interrogatory No. 6 is known to Rough Country, the only way to address this risk would be to significantly change how roadways are utilized by requiring all vehicles on the road to operate at the same height. Such a requirement is not feasible, given the various capabilities, uses, and purposes of vehicles that share our roadways. Rough Country is not aware of specific testing, design criteria, and/or

03677722.DOCX

**performance objectives that are both feasible and "account" for the remote possibility of injury as described in Interrogatory No. 6, to include, as implicated, every potential scenario involving the increased bumper height of every potentially lifted vehicle and the different bumper heights of every non-lifted vehicle, while also providing the benefits and utility that lift kits provide consumers.**

7.

Please state whether anyone (regardless of whether the person worked for Rough Country) ever stated or suggested to Rough Country that a person could be injured in a collision with a lifted vehicle because (a) the lifted vehicle can bypass the other vehicle's frame rails and crash protection features or (b) the lifted vehicle can intrude (i.e., crush) too far into the other vehicle. For each such statement, state who made it, how it was provided to Rough Country, the date it was made, the substance of it, and identify all documents evidencing it.

**RESPONSE:   Rough Country objects to this Interrogatory on the grounds that it is vague and ambiguous as to the terms "bypass" and "crash protection features".   Rough Country further objects to this Interrogatory because it is overbroad, irrelevant, and seeks information that is not reasonably calculated to lead to the discovery of admissible evidence.  Among**

-9-

other things, the Interrogatory is not limited in time, to the type of vehicle involved in this case (a Ford F250), to the amount of lift involved in this case (4.5"), or to the type of crash involved in this case (rear-end accident).

Subject to and without waiver of this objection, Rough County states that there has been one accident which occurred in the last 10 years where these types of allegations were made (*Bacho v. Rough Country, LLC, et al*). In *Bacho,* a plaintiff contended that a lift kit raised the height of a truck's front bumper causing the side impact protection to be overridden and the front bumper to intrude into the side occupant compartment of the vehicle. The *Bacho* case involved a different vehicle with a different lift kit of a different height and a different type of collision.

SUPPLEMENTAL RESPONSE:

Beyond the last 10 years, Rough Country states that these types of allegations were made in the *Mendoza v. Heckethorn Products, Inc.*, case in Texas; and in the *Gomez v. Munoz*, case in Texas.

In *Mendoza*, plaintiffs contended that an unlicensed driver, operating a 2006 Dodge Ram with a lift kit, struck the driver side door of the vehicle while the driver proceeded through an intersection. Plaintiffs claimed that the lift kit was defective and unreasonably dangerous by raising the bumper height

and bypassing the safety protections of the driver side compartment of the vehicle.   The *Mendoza* case involved a different vehicle with a different lift kit of a different height and a different type of collision.

In *Gomez*, a plaintiff contended that a leveling kit was defective because it raised the front bumper of the vehicle to an allegedly dangerous height because it would no longer properly engage with a bumper of a passenger vehicle in a collision.   The *Gomez* case involved a different vehicle and a different product.

Rough Country does not concede these incidents are "similar," but will nevertheless produce a copy of the Mendoza and Gomez Complaints.   Rough Country refers Plaintiffs to the Complaints produced (Bates Nos. RC-BRYSON 005360-5376).   Rough Country is not withholding information and provides the above information without waiver of its objections.

8.

Please identify the key personnel involved in designing, manufacturing, or testing the subject lift kit. For each person identified, state what role each played. This request is not limited to employees of Rough Country.

**RESPONSE:   The subject lift kit was designed and reviewed by the Product Development team, which included Rad Hunsley, V.P. of Product**

Development; Bryan Nale, Senior Design Engineer/R&D Supervisor; Ryan

Sawyers, Designer; and Matt Long, Designer.

**SUPPLEMENTAL RESPONSE:**

Prior to Rad Hunsley, the V.P. of Product Development was Danny

Whittle, who is retired.

9.

Please identify all customer complaints, customer comments, letters, emails,

messages, claims (litigated and nonlitigated), warranty claims, or other notice

about a collision in which an occupant was allegedly injured because a Rough

Country lift kit raised the striking vehicle such that (a) the lifted vehicle bypassed

the other vehicle's frame rails and crash protection features *or* (b) the lifted vehicle

intruded (i.e., crushed) too far into the other vehicle.

**RESPONSE:   Rough Country objects to this Interrogatory on the**

**grounds that it is vague and ambiguous as to the terms "bypassed" and "crash**

**protection features".   Rough Country further objects to this Interrogatory**

**because it is overbroad, irrelevant, and seeks information that is not**

**reasonably calculated to lead to the discovery of admissible evidence.   Among**

**other things, the Interrogatory is not limited in time, to the type of vehicle**

**involved in this case (a Ford F250), the amount of lift involved in this case**

03677722.DOCX

(4.5"), or the type of crash involved in this case (a rear-end collision).

Subject to and without waiver of this objection, Rough Country states that, other than the *Bacho* case previously referenced, to the best of its knowledge, it has not received any complaints, customer comments, letters, emails, messages, warranty or property damage claims about "override" accidents involving Ford F250 vehicles and/or rear-end "override" accidents which occurred in the last 10 years.

<u>SUPPLEMENTAL RESPONSE</u>:

Beyond the last 10 years, Rough Country states that these types of allegations were made in the *Mendoza v. Heckethorn Products, Inc.*, case in Texas; and in the *Gomez v. Munoz*, case in Texas. Rough Country states that, other than the *Bacho*, *Mendoza* and *Gomez* cases previously referenced, to the best of its knowledge, it has not received any complaints, customer comments, letters, emails, messages, warranty or property damage claims about "override" accidents involving Ford F250 vehicles and/or rear-end "override" accidents. Rough Country is not withholding information and provides the above information without waiver of its objections.

This 7th day of June, 2023.

<div style="margin-left: 50%;">

WEINBERG, WHEELER, HUDGINS,
GUNN & DIAL, LLC

*/s/Aaron Chausmer*
Richard H. Hill
Georgia Bar No. 354425
Lindsay G. Ferguson
Georgia Bar No. 140970
Claire C. Murray
Georgia Bar No. 225885
Aaron B. Chausmer
Georgia Bar No. 119998

*Attorneys for Defendant Rough Country,
LLC*

</div>

3344 Peachtree Road, N.E.
Suite 2400
Atlanta, Georgia 30326
404-876-2700
404-875-9433 (fax)

# VERIFICATION

STATE OF ___TN___

COUNTY OF ___Dyer___

**PERSONALLY APPEARED** before me, the undersigned officer duly authorized

by law to administer oaths, the undersigned deponent who, on oath deposed and

states that the following interrogatory responses are true and correct:

1. Defendant Rough Country, LLC's Second Supplemental Response to

   Plaintiffs' First Interrogatories.

_Patrick Just / CFO_

Sworn to and subscribed before me
This _5th_ day of June, 2023

_Beverly Headden_
Notary Public

My commission expires: _2/10/27_



## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have electronically served the foregoing DEFENDANT ROUGH COUNTRY, LLC FIRST SECOND SUPPLEMENTAL RESPONSE TO PLAINTIFFS' FIRST INTERROGATORIES via email to the attorneys of record:

TEDRA L. CANNELLA
tedra@cannellasnyder.com
ROBERT H. SNYDER, JR.
rob@cannellasnyder.com
RORY A. WEEKS
rory@cannellasnyder.com
DEVIN L. MASHMAN
devin@cannellasnyder.com
CANNELLA SNYDER LLC
315 W Ponce de Leon Ave
Suite 885
Decatur, GA 30030

### *ATTORNEYS FOR PLAINTIFFS*

This 7th day of June, 2023.

WEINBERG, WHEELER,
HUDGINS, GUNN & DIAL, LLC

*/s/Aaron Chausmer*
Claire C. Murray
Georgia Bar No. 119998

*Attorneys for Defendant Rough Country, LLC*