## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## GAINESVILLE DIVISION

|  |  |
|---|---|
| SANTANA BRYSON and JOSHUA BRYSON, as Administrators of the Estate of C.Z.B., and as surviving parents of a deceased minor, C.Z.B.,<br><br>Plaintiffs,<br><br>v.<br><br>ROUGH COUNTRY, LLC,<br><br>Defendant. | Civil Action No.<br><br>2:22-CV-17-RWS |

## ORDER

This case comes before the Court on Defendant Rough Country, LLC's

Motion for Summary Judgment [Dkt. 95 – Def.'s Mot. for Summ. J.]. After

reviewing the Motion and record, the Court enters the following Order.

## BACKGROUND

### I.    Factual Background

This case arises from a tragic incident involving the Bryson family and a

truck modified by a Rough Country lift kit.  Plaintiffs Santana and Joshua Bryson

are the parents of C.Z.B.—a two-year-old child that died during the incident. [Dkt.

39 – Pls.' Am. Compl., at ¶¶ 1–2]. Defendant Rough Country, LLC is a company

that manufactures and sells automobile lift kits. [Id. at ¶ 9]. "A lift kit is a collection of parts that are added to a vehicle's suspension to raise the ride-height." Bacho v. Rough Country, LLC, No. 3:14-CV-40-TCB, 2016 WL 4607880, at *1 (N.D. Ga. Mar. 17, 2016).

On March 15, 2020, the Brysons were stopped at a traffic light when their Ford Escape was rear-ended by Hunter Elliot's Ford F-250 truck—which had been outfitted with a Rough Country lift kit. [Id. at ¶¶ 19–20, 39]. Mr. Elliot was driving at 51 miles per hour, under the influence, and distracted by his phone at the time of the incident. [Dkt. 95-1 – Def.'s Br. in Supp. of Mot. for Summ. J., at 12; Dkt. 103 – Pls.' Resp. in Opp'n to Def.'s Mot. for Summ. J., at 18 n.46].

The crash caused extensive damage to the Brysons' Escape, as Mr. Elliot's truck intruded far into the smaller vehicle's passenger compartment. [Dkt. 39, at ¶ 24]. The significant intrusion fatally injured C.Z.B. [Id. at ¶ 27].

The Brysons argue that the defective design of Rough Country's lift kit caused C.Z.B.'s death. [Id. at ¶ 63]. They allege that by raising Mr. Elliot's F-250 at least 4.5 inches, the lift kit bypassed "the structural frame and crash protections of the Brysons' Ford Escape." [Id. at ¶¶ 22–23, 63]. If not for this design, the Brysons argue that Mr. Elliot's F-250 would not have intruded so far into their Escape. [Id. at ¶ 24].

2

Rough Country argues that it is not liable to the Brysons, asserting that the accident was unforeseeable due to Mr. Elliot's intervening act. [Dkt. 95-1, at 12]. It further contends that it had no duty to warn the Brysons of each possible danger arising from its lifts. [Id. at 9–11].

## II.    Procedural History

On February 1, 2022, the Brysons filed their original Complaint in the Northern District of Georgia, asserting claims of strict liability (Count I), negligence (Count II), and punitive damages (Count III). [Dkt. 1 – Pls.' Compl., at ¶¶ 52–72]. The Brysons filed their Amended Complaint on December 12, 2022, seeking recovery on the same claims. [Dkt. 39]. Rough Country submitted timely responses to both filings. [Dkt. 9 – Def.'s Answer to Pls.' Compl.; Dkt. 40 – Def.'s Answer to Pls.' Am. Compl.].

On August 15, 2024, Rough Country filed its Motion for Summary Judgment, arguing there is no genuine issue of material fact "as to Plaintiff[s'] claims for: (1) failure to warn; (2) negligence per se; (3) conscious pain and suffering; and (4) punitive damages." [Dkt. 95, at 1]. In addition, Rough Country argues "to the extent that the Court finds that there was an intervening act," it would be "entitled to summary judgment as to the remainder of Plaintiff's claims . . . ." [Id. at 2]. The Brysons filed their Response to the Motion on September 5,

2024. [Dkt. 103]. The Motion is fully briefed and ripe for this Court's consideration. [Dkt. 95-1; Dkt. 103; Dkt. 107 – Def.'s Reply in Supp. of Mot. for Summ. J.].

## DISCUSSION

### I.    Summary Judgment Standard

The standard for summary judgment is well-established. Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is "material" if it "might affect the outcome of the suit under the governing law." BBX Capital v. Fed. Deposit Ins. Corp, 956 F.3d 1304, 1314 (11th Cir. 2020) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A dispute over such a fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

On a motion for summary judgment, the court's duty is not "to weigh the evidence and determine the truth of the matter," but rather "to determine whether there is a genuine issue for trial." Sears v. Roberts, 922 F.3d 1199, 1205 (11th Cir. 2019) (citing Anderson, 477 U.S. at 249). Accordingly, the Court must "consider

the record and draw all reasonable inferences in the light most favorable to the non-moving party." Blue v. Lopez, 901 F.3d 1352, 1357 (11th Cir. 2018).

## II.    Analysis

Rough Country seeks summary judgment on each of the Brysons' claims. First, Rough Country argues that it cannot be held strictly liable to the Brysons because it had no duty to warn them of the lift kit's alleged defects. [Dkt. 95-1, at 9–11]. Second, Rough Country asserts that the Brysons' negligence claim must be dismissed because (1) Mr. Elliot's actions constitute an intervening cause and (2) no Georgia laws were broken. [Dkt. 95-1, at 12–22]. Third, Rough Country argues that neither punitive nor pain and suffering damages are warranted because (1) its conduct did not rise to the level which justifies punitive damages, and (2) there is no evidence suggesting that C.Z.B. experienced conscious pain. [Dkt. 95-1, at 22–25]. The Court will address each claim, along with the corresponding bases for summary judgment.

### A.    Strict Liability

Rough Country argues that it is not strictly liable to the Brysons because it had no duty to warn them of any product defect. Under Georgia law, a plaintiff may bring a variety of claims under a strict liability theory—including failure to warn. See generally Jones v. Amazing Prods., Inc., 231 F. Supp. 2d 1228, 1230

(N.D. Ga. 2002) (discussing the variety of product-related claims that may be alleged based on strict liability). However, the Brysons assert that they have not brought a failure to warn claim and "ask the Court to deny the motion for summary judgment on the failure to warn claim as moot." [Dkt. 103, at 13 n.4 (citing McDonald v. Nicholas Fin., Inc., No. 1:10-CV-1732-MHS, 2011 WL 13319305, at *2 (N.D. Ga. Mar. 14, 2011)); see also id. at 13 ("Defendant seeks summary judgment on two claims Plaintiffs have not made: 'failure to warn,' and 'negligence per se.'")].

The Brysons' assertion is difficult to reconcile with its Amended Complaint, which claims that Rough Country "did not warn anyone of the dangers that its lifts pose to occupants of other vehicles." [Dkt. 39, at ¶ 61]. Because the Brysons appear to have pled a failure to warn claim in their Amended Complaint, the Court cannot deny summary judgment as to that claim for mootness. Cf. McDonald, 2011 WL 13319305, at *2 (denying motion for summary judgment as moot where the underlying claim was not raised against the movant).

The Court accordingly **GRANTS** Rough Country's Motion as it relates to the failure to warn claim because the Brysons have not raised a genuine dispute of fact that would prevent summary judgment. However, the Court declines to grant

summary judgment to all possible strict liability claims the Brysons have raised, such as defective design.

## B.    Negligence

Rough Country argues that the Brysons' negligence claim should fail for two reasons. First, it maintains that Mr. Elliot's actions constitute an intervening cause, thus relieving it of potential liability. Second, it asserts that the lift kit's compliance with applicable law undermines any negligence per se claim. This Court disagrees with both arguments because (1) Mr. Elliot's actions do not, as a matter of law, satisfy the elements of the intervening cause defense, and (2) the Brysons have never argued negligence per se.

### 1.    Intervening Cause

Rough Country first argues that Mr. Elliot's independent acts absolve it from liability. Under Georgia law, it is "well-established" that defendants are insulated from liability when a third party's independent act "was not *foreseeable* by the defendant, was not triggered by the defendant's act, and which was sufficient itself to cause the injury." Maynard v. Snapchat, Inc., 313 Ga. 533, 539 (2022) (quoting City of Richmond Hill v. Maia, 301 Ga. 257, 259 (2017)). This Court finds that Mr. Elliot's actions did not constitute an intervening cause because the Brysons have raised material fact disputes regarding (1) whether the incident was

foreseeable and (2) if Mr. Elliot's actions were sufficient to cause C.Z.B.'s fatal injury.

### a.    Foreseeability

The first element requires that the third party's act be foreseeable. Id. Foreseeability is "intextricably entwined with concepts of negligence and proximate cause . . . ." Maia, 301 Ga. 257, 258–59 (citing Brandvain v. Ridgeview Inst., Inc., 188 Ga. App. 106, 115 (1988)). In a product defect case, an injury is deemed foreseeable where "'a prudent [manufacturer] would foresee an appreciable risk that,' as a result of an unreasonable design decision, 'some harm would happen' 'according to ordinary and usual experience.'" Maynard, 313 Ga. at 540 (alterations in original) (quoting Blakely v. Johnson, 220 Ga. 572, 592 (1965)). A manufacturer "is not responsible for a consequence which is merely possible . . . but only for a consequence which is probable, according to ordinary and usual experience." Johnson v. Avis Rent A Car System, LLC, 311 Ga. 588, 593 (2021) (quoting Goldstein, Garber & Salama, LLC v. J.B., 300 Ga. 840–42 (2017)).

Rough Country argues that it was not foreseeable that Mr. Elliot would speed while intoxicated and distracted by his phone. [Dkt. 95-1, at 13–14]. The Brysons disagree, asserting that Rough Country frames the foreseeability inquiry too narrowly upon the acts giving rise to the incident—rather than the incident

itself. [See Dkt. 103, at 16 ("Georgia law requires that the collision itself be foreseeable—not the *reason* the collision happened.")].

This Court agrees with the Brysons because Georgia law does not require Rough Country to have "foresee[n] the precise manner in which the collision occurred." Granger v. MST Transp., LLC, 329 Ga. App. 268, 271 (2014). "The foreseeability analysis is not that specific: the relevant inquiry is not whether the exact intervening negligent act was foreseeable, but whether, as a general matter, the original negligent actor should have anticipated that this general type of harm might result." Id. (quoting Smith v. Com. Transp., 220 Ga. App. 866, 867 (1996)). Here, the proper inquiry asks not whether Rough Country should have anticipated Mr. Elliot's drinking, speeding, and phone use, but rather if an injurious rear-end collision between lifted and standard vehicles was foreseeable.

Rough Country cannot demonstrate that collisions involving its lifts are generally unforeseeable as a matter of law because Georgia courts have held that vehicular collisions are foreseeable, particularly to entities responsible for vehicular design. See Ford Motor Co. v. Stubblefield, 171 Ga. App. 331, 336 (1984) ("Vehicular collision is an event which is foreseen by the manufacturer.")

(citations omitted).[1] However, Rough Country asserts that two key facts undermine foreseeability here: (1) the Brysons have identified only two similar incidents involving Rough Country lift kits, and (2) Mr. Elliot crashed into the Brysons' Escape at a high speed. [Dkt. 107, at 7–8].

First, Rough Country argues that the incident was not foreseeable because the Brysons have only identified two prior cases involving its lifts. [Id. at 7]. It relies upon Georgia precedent suggesting that defendants who negligently enable criminal activity should not be responsible for merely possible outcomes of the criminal activity. See Johnson, 311 Ga. at 594 ("The present case in analogous to those in which a car owner has left his or her keys unattended and a car thief then uses those keys to steal the car and causes an accident through his own negligent driving. In such cases, the car owner generally cannot be held liable for injuries caused by the car thief because those injuries would not ordinarily be something foreseeable to the car owner.") (internal citations omitted).

In Johnson, the Supreme Court of Georgia held that a car rental company would not be liable for damages caused by a thief who—because of the rental

---

[1] This Court recognizes that the cited case involved a vehicle manufacturer, as opposed to Rough Country, which designs, manufactures, and sells structural modifications to vehicles. As an entity responsible for modifying vehicles through its lifts, Rough Country "may be held liable for negligently producing a vehicle [modification] which causes injury when activated by a foreseeable collision." Id.

company's own negligence—stole a rental car and subsequently crashed it during a high-speed police chase. Id. at 594. The court reasoned that because only two other instances of high-speed chases involving rental car theft had occurred, the injury was merely possible, and thus not foreseeable. Id. at 595–97.

The Johnson case is less applicable here because nothing in the record suggests that Rough Country negligently enabled Mr. Elliot's actions. [See Dkt. 95-1, at 13 ("Plaintiffs do not—and cannot—allege that Rough Country triggered Mr. Elliot to drink to excess, get in his truck, and then speed down the road while 'Facetiming.'")]. Thus, the relevant inquiry is not whether Rough Country should have foreseen that—as a result of its own negligence—Mr. Elliot would crash into the Brysons while driving under the influence, distracted, and at excessive speed. Rather, this Court must determine if Rough Country could have foreseen that someone would be injured after a lifted vehicle crashed into a standard vehicle. See Maynard, 313 Ga. at 539 (requiring that the independent act and its consequences be unforeseeable).

Focused on the proper inquiry, this Court cannot conclude that only two instances of prior incidents render the present incident unforeseeable as a matter of law. As emphasized earlier, Georgia courts have held collisions to be foreseeable in actions regarding vehicular design. Stubblefield, 171 Ga. App. at 336; see also

11

<u>Timmons v. Ford Motor Co.</u>, 982 F. Supp. 1475, 1481 (S.D. Ga. 1997) ("It is obviously foreseeable that motor vehicle collisions will occur."). As an entity that sells products altering the structural design of vehicles, Rough Country cannot successfully argue that—as a matter of law—it could not have foreseen this collision merely because it has only been sued for two similar collisions.

Second, Rough Country argues that it could not have anticipated "[s]uch a high-speed and violent collision." [Dkt. 107, at 8]. It relies on <u>Timmons</u>—a case involving two vehicles that collided at a closing speed of 102 miles per hour. 982 F. Supp. at 1477. The Southern District of Georgia held that a vehicle manufacturer could not be held liable for injuries sustained in such a high-speed crash because "it is unreasonable to expect manufacturers to conduct crash testing at extremely high speeds . . . ." <u>Id.</u> Likewise, Rough Country asserts that the present incident was not foreseeable because "Mr. Elliot was speeding at 51 miles per hour when he slammed into Plaintiffs' stationary vehicle." [Dkt. 107, at 8].

This Court disagrees because a great disparity exists between the collision speeds in the present case and <u>Timmons</u>. "There comes a point . . . when the circumstances of the crash itself rise to such an extreme level of violence that manufacturers cannot reasonably and cost-effectively protect consumers." <u>Timmons</u>, 982 F. Supp. at 1479. The Southern District held that a collision

occurring at 102 miles per hour crossed that threshold as a matter of law. See id. at 1481 (finding that "reasonable minds could not differ" on whether the consequences of such high-speed collision were foreseeable). Here, the collision occurred at 51 miles per hour. [Dkt. 107, at 8]. That speed falls under Georgia's catch-all speed limit of 55 miles per hour. See O.C.G.A. § 40-6-181 (enumerating speed limits for specific areas and concluding that no driver should exceed "[f]ifty-five miles per hour in other locations"). While this fact is not dispositive, a reasonable juror could find that Rough Country should have anticipated similar injuries arising from a lifted vehicle colliding with a standard vehicle at 51 miles per hour. This Court accordingly holds that the collision and its resulting consequences were not unforeseeable as a matter of law.

### b.   Rough Country's Involvement

The second element of intervening cause requires that the third party's act "was not triggered by the defendant's act." Maynard, 313 Ga. at 539. Rough Country asserts that it did not "trigger[] Mr. Elliott to drink to excess, get in his truck, and then speed down the road while 'Facetiming.'" [Dkt. 95-1, at 13]. The Brysons have neither contested this argument nor put forth evidence that Rough Country contributed to any of Mr. Elliot's decisions. The Court accordingly holds that the second element is satisfied as a matter of law.

### c.    Sufficiency of the Act

The third element of intervening cause requires that the third party's act be "sufficient itself to cause the injury." Maynard, 313 Ga. at 539. To satisfy this element of the defense, the record must show that—as a matter of law—Mr. Elliot's actions would have caused C.Z.B.'s death regardless of Rough Country's negligence.

Rough Country argues that the incident would have caused C.Z.B.'s death simply because Mr. Elliot's vehicle was larger than the Brysons' vehicle and was traveling at considerable speed. [Dkt. 95-1, at 13]. However, the Brysons' lawsuit is premised upon their argument that C.Z.B.'s fatal injury occurred because Rough Country's lift kit caused significant intrusion into their vehicle. [See Dkt. 103, at 21 ("If the lift kit had not been installed and the structure of the F250 had engaged with the structure of the Escape, it would have reduced the F250's intrusion into the Escape by roughly 2.3 feet, resulting in intrusion that stopped in the cargo area and never reached C.Z.B.") (citing Dkt. 103-3 – Buchner Report, at 001360)]. Because the Brysons have produced credible evidence to support this contention, Rough Country cannot show as a matter of law that the incident would have caused C.Z.B.'s death regardless of the lift kit.

This Court accordingly **DENIES** summary judgment based on intervening cause because the first and third elements of the defense are not satisfied as a matter of law.

### 2.    Negligence Per Se

Rough Country's second argument also fails because the Brysons have not asserted a negligence per se claim. The Amended Complaint does not reference negligence per se. [See Dkt. 103, at 18 ("The term 'per se' appears nowhere in Plaintiff's Complaint or Amended Complaint.")]. While the Brysons have asserted that Rough Country's lifts violate Georgia law, they have never argued that Rough Country is per se negligent as a result. [See id. (acknowledging reference to Georgia law violations)]. This Court accordingly **DENIES** summary judgment as to any negligence per se claim as moot. See McDonald, 2011 WL 13319305, at *2 (denying summary judgment motion as moot where the claim was not raised against the movant).

Rough Country further asks this Court to determine whether the lift at issue complied with Georgia law. Because this Court denies summary judgment as to the negligence per se claim for mootness, it does not consider this issue relevant at this time. However, the parties may raise this issue at a later date.

## C.    Damages

Rough Country further argues that the Brysons are not entitled to either punitive or pain and suffering damages. First, it alleges that its conduct did not—as a matter of law—rise to the level necessary to justify punitive damages. Second, Rough Country contends that C.Z.B.'s death was instaneous and thus did not involve conscious suffering. This Court disagrees with Rough Country regarding punitive damages because a reasonable jury could find its conduct justified such damages. However, this Court agrees that pain and suffering damages are inappropriate because no evidence suggests that C.Z.B. experienced conscious suffering.

### 1.  Punitive Damages

Rough Country argues that punitive damages are unjustified as a matter of law. [Dkt. 95-1, at 23]. Georgia law only allows punitive damages when "it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantoness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." O.C.G.A. § 51-12-5.1. A "conscious indifference to consequences" refers to the "intentional disregard of the rights of another." Tyler v. Lincoln, 272 Ga. 118, 120 (2000). Although mere negligence—or even gross negligence—is

insufficient to grant punitive damages, "intentional misconduct is not required, either." <u>Taylor v. Devereux Found., Inc.</u>, 316 Ga. 44, 55 (2023). "A jury may award punitive damages where the clear and convincing evidence only creates an inference of the defendant's conscious indifference . . . ." <u>McDonald v. Silver Hill Homes, LLC</u>, 343 Ga. App. 194, 196 (2017) (quoting <u>Weller v. Blake</u>, 315 Ga. App. 214, 219–20 (2012)). "Whether the tort was sufficiently aggravating to authorize punitive damages is generally a jury question." <u>Tookes v. Murray</u>, 297 Ga. App. 765, 768 (2009).

First, Rough Country argues "there is no evidence in this case that [it] engaged in the kind of intentional misconduct necessary to support an award of punitive damages under Georgia law." [Dkt. 95-1, at 24]. This Court disagrees with Rough Country's assertion that evidence of intentional misconduct is "necessary" for punitive damages. While evidence of intentional misconduct undoubtedly supports awarding punitive damages, the Supreme Court of Georgia recently stated that "intentional misconduct is not required" for a jury to award punitive damages. <u>Taylor</u>, 316 Ga. at 55. Even assuming the Brysons had no evidence of Rough Country's intentional misconduct, this Court could not grant summary judgment based solely on such absence.

17

Second, Rough Country argues that the Brysons have produced no evidence showing it "'acted with anything approaching the level of culpable conduct required to entitle Plaintiffs with an award of punitive damages.'" [Dkt. 95-1, at 25 (quoting Freeman v. United Propane Gas of Ga., Inc., 807 F. Supp. 1533, 1542 (M.D. Ga. 1992))]. The Court disagrees. The Brysons have produced evidence in support of its argument that Rough Country expressed a "conscious indifference to the consequences" of its actions. [See, e.g., Dkt. 103, at 24 (comparing the facts of similar cases involving Rough Country lift kits and alleging that Rough Country changed none of its practices afterwards); Dkt. 103-9 – Hunsley Depo., at 15–17 (admitting that Rough Country performed no testing to ensure product safety)].

This Court accordingly **DENIES** Rough Country's Motion as it pertains to punitive damages because the Brysons have raised a dispute of material fact regarding a question typically reserved to a jury.

### 2.  Pain and Suffering Damages

Rough Country argues that pain and suffering damages are precluded as a matter of law because C.Z.B.'s death was instantaneous. The Court agrees.

Georgia law permits pain and suffering damages to remedy "[t]he fright, shock, and mental suffering" an individual experiences due to another's negligence. Cannon v. Barnes, 357 Ga. App. 228, 229 (2020) (citations omitted).

In a vehicle collision case, plaintiffs may seek pre-impact or post-impact pain and suffering damages. See id. at 229–31 (analyzing both forms of pain and suffering damages). Pre-impact pain and suffering damages "require[] some evidence that the decedent[] actually anticipated the collision . . . ." Byrd v. Wal-Mart Transp. LLC, No. 609-CV-14, 2009 WL 3429562, at *5 (S.D. Ga. Oct. 23, 2009) (citing Crockett v. Norfolk S. Ry. Co., 95 F. Supp. 2d 1353, 1366 (N.D. Ga. 2000)). Here, the Brysons have not produced evidence that C.Z.B. anticipated the crash before it occurred. Rather, the Brysons claim "Rough Country is responsible for the fright, confusion, sadness, and pain, that the Brysons' son experienced between [the start of the impact] and [the end of the impact]." [Dkt. 103, at 22].

Georgia law does not allow post-impact pain and suffering damages where "medical evidence is that death was instantaneous, and there is no evidence the decedent exhibited consciousness of pain." Grant v. Georgia Pac. Corp., 239 Ga. App. 748, 751 (1999). However, pain and suffering damages have been permitted in cases involving near-instantaneous deaths. See Dep't of Hum. Res. v. Johnson, 264 Ga. App. 730, 738 (2003) (upholding jury award of pain and suffering damages based upon "expert testimony that [decedent] was conscious for up to 15 seconds"); Holland v. Cypress Ins. Co., No. 2:17-CV-120-RWS, 2020 WL 5742250, at *10 (N.D. Ga. Aug. 31, 2020) (upholding jury award of pain and

suffering damages based upon witness testimony of a single moan).

Here, the Brysons have produced evidence that C.Z.B.'s potential fright, shock, or pain would have occurred, at most, over a period of milliseconds. The incident itself lasted 140 milliseconds. [Dkt. 103, at 22]. C.Z.B.'s fatal injury occurred sometime within that 140-millisecond timeframe. [See id. at 22 ("C. did not receive his blunt head trauma until well into the crash.")]. C.Z.B. would have been unconscious within milliseconds after the fatal injury occurred. [See Dkt. 101 – Dr. Eisenstat Depo., at 30, 49 (stating that C.Z.B. was incapable of experiencing "conscious pain and suffering . . . within milliseconds of . . . impact")]. The Brysons allege that pain and suffering damages should compensate for both (1) any pain C.Z.B. experienced due to his fatal injury, and (2) "the fright and shock C.Z.B. experienced during the 140-millisecond crash . . . ." Rough Country rebuts that any pain, fright, or shock would have occurred within an instant, thus precluding pain and suffering damages.

The issue before the Court is whether a timeframe of milliseconds qualifies as "instantaneous" under Georgia law. While Georgia courts have been hesitant to describe the term "instantaneous," Black's Law Dictionary defines "instantaneous death" as "[d]eath occurring in an instant or within an extremely short time after an injury or seizure." Instantaneous Death, Black's Law Dictionary (12th ed. 2024). It

further describes the term:

> "'Although the possibility of a death that is truly simultaneous with the injury that caused it has been denied, it has been pointed out that death may be so contemporaneous with the fatal injury as to be instantaneous in the sense that there could be no recovery for the victim's pain and suffering. Ordinarily, death is not regarded as instantaneous if an appreciable length of time elapsed between the injury and the death. Indeed, even where the injury causing the death is necessarily fatal and death results therefrom in a few moments, it has been held that although it would commonly be called an instantaneous death, still if the injured person survives the injury for a brief period, it may not be said that the death is instantaneous … In such case it is immaterial that the period of time between the injury and death is short.'"

Id. (quoting 22 Am. Jur. 2d Death § 43, at 158 (1988)).

Black's Law Dictionary also distinguishes "instantaneous death" from "immediate death." It defines "immediate death" as "a death occurring within a short time after an injury . . . *but not instantaneously*." Immediate Death, Black's Law Dictionary (12th ed. 2024) (emphasis added). It further provides an example of immediate death as "'the situation in which a blow on the head produces unconsciousness and renders the victim incapable of intelligent thought, speech, or action for several minutes until [the victim] dies.'" Id. (quoting 22 Am. Jur. 2d Death § 43, at 159 (1988)).

The Brysons argue that C.Z.B.'s death was not instantaneous because a measurable length of time passed between both (1) the initiation of the accident and C.Z.B.'s death and (2) C.Z.B.'s injury and C.Z.B.'s death. This Court

disagrees because an instantaneous death may be one which occurs "within an extremely short time." Instantaneous Death, Black's Law Dictionary (12th ed. 2024). In fact, it is difficult to imagine circumstances in which death occurred so quickly that no observable time elapsed between injury and unconsciousness. Here, C.Z.B. may have experienced fright, shock, and pain for, at most, the time it takes to blink an eye. [See Dkt. 107, at 11 n.5 ("'Each blink lasts between 0.1 and 0.4 seconds . . . .'") (quoting Erica Hersh, How Many Times Do You Blink in a Day?, Healthline (Sept. 24, 2020), https://www.healthline.com/health/how-many-times-do-you-blink-a-day)].

While this Court has upheld pain and suffering damages for short durations, it has never permitted recovery for a period of milliseconds. The Brysons cite several cases involving brief time periods, asserting that "'[t]here is no principled way to distinguish those 'almost instantaneous' deaths allowing recovery from the instant case.'" [Dkt. 103, at 20, 23 (citing Woodard v. Ford Motor Co., No. 1:06-CV-2191-TWT, 2007 WL 4125519, at *3 (N.D. Ga. Nov. 2, 2007))].

In Woodard, this Court found that evidence showed a decedent may have (1) anticipated a deadly vehicular accident and (2) survived the rollover accident, or at least a portion of the accident. 2007 WL 4125519, at *2–3. After surveying cases, the Court concluded that Georgia law had allowed pain and suffering damages

"where victims survived less than a minute after impact, including one case with survival of a mere fifteen seconds past the accident." Id. at *3 (first citing Johnson, 264 Ga. App. at 738 (upholding pain and suffering damages where decedent survived electrocution for "up to 15 seconds"); then citing TGM Ashley Lakes, Inc. v. Jennings, 264 Ga. App. 456, 456 (2003) (allowing pain and suffering damages to remedy a 40-second survival duration); and then citing Beam v. Kingsley, 255 Ga. App. 715, 716 (2002) (allowing pain and suffering damages where decedent survived up to two minutes)). While the Court stated that a period of less than 15 seconds could justify pain and suffering damages, it emphasized "[t]his is especially true considering that the decedent may have anticipated the accident." Id.

The present case is distinguishable from Woodard. First, the Brysons have not produced evidence suggesting that C.Z.B. anticipated the collision with Mr. Elliot's truck. Second, the evidence clearly shows that C.Z.B. did not survive the collision—which itself only lasted 140 milliseconds. Further, to the extent the Court in Woodard suggested that pain and suffering could be recovered for a period less than 15 seconds, it never stated that those damages could compensate for any observable measure of time. Id. In the present case, the survival duration is a small fraction of 15 seconds. This Court accordingly finds that C.Z.B.'s death

was instantaneous because it occurred over a period of milliseconds.

To preclude pain and suffering in post-impact relief cases, Georgia law further requires there be "no evidence the decedent exhibited consciousness of pain." Grant, 239 Ga. App. at 751. Here, the Brysons have failed to produce evidence that C.Z.B. expressed consciousness of pain due to the incident. Because C.Z.B.'s death occurred instantaneously and without evidence of expressed conscious pain, this Court **GRANTS** summary judgment as to pain and suffering damages.

## CONCLUSION

For the foregoing reasons, Rough Country's Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part. It is **GRANTED** only as to the Brysons' failure to warn claim and request for pain and suffering damages and **DENIED** on all other bases.

**SO ORDERED** this 20th day of November, 2024

_____
**RICHARD W. STORY**
United States District Judge