# EXHIBIT 3

Dr. Lisa P. Gwin                                    May 3, 2024
Bryson, Santana and Joshua v. Rough Country, LLC

Page 1

```
  1                  UNITED STATES DISTRICT COURT
  2                  NORTHERN DISTRICT OF GEORGIA
  3                     GAINESVILLE DIVISION
  4
  5     SANTANA BRYSON and JOSHUA        )
        BRYSON, as adminsitrators of    )
  6     the Estate of C.Z.B. and as     )
        surviving parents of C.Z.B., a  )
  7     deceased minor.,                )
                                        )
  8                  PLAINTIFF,         )
                                        )
  9     VS.                             )CASE NO.:2:22=CV=017-RWS
                                        )
 10     ROUGH COUNTRY LLC,              )
                                        )
 11                  DEFENDANT.         )
        _____)
 12
 13            REPORTER'S TRANSCRIPT OF PROCEEDINGS
 14                   FRIDAY, MAY 5, 2024
 15     APPEARANCES:
 16          FOR THE PLAINTIFF:
 17              CANNELLAS NYDER
                 BY:  Tedra Cannella
 18                   Devin Mashman
                      Attorneys at Law
 19              315 West. Ponce De Leon Avenue, Suite 885
                 DECATUR, GA 30030
 20              TELEPHONE: (404) 800-4828
                 FACSIMILE: (404) 393-0365
 21              E-MAIL:  info@cannellasnyder.com
 22
 23     (Appearances continued next page.)
 24
 25          REPORTED BY:           JUSTUS BALENTINE, CSR 13859
```

Dr. Lisa P. Gwin                    May 3, 2024
Bryson, Santana and Joshua v. Rough Country, LLC

Page 9

1    looking at me right now, so for what that's worth.

2            THE WITNESS:  I am now, yes.

3            MS. CANNELLA:  Okay.  Great.

4    BY MS. CANNELLA:

5        Q.   Would you consider yourself a scientist,

6    Dr. Gwin?

7        A.   Yes.

8        Q.   And do you experiments as part of your work?

9        A.   Yes.

10       Q.   What is the control in the context of an

11   experiment?

12       A.   Someone who is not being subjected to whatever

13   the experiment is about.  So like a drug study, the

14   control does not get drug, and the subject does get the

15   drug.

16       Q.   So the control would be basically the normal

17   condition?

18           MR. HILL:  Object to form.

19           THE WITNESS:  Well, it's the one who's not

20   getting the experimental thing, whether it's a drug or

21   a -- whatever the thing we're testing.

22   BY MS. CANNELLA:

23       Q.   And what's a variable?

24       A.   Something that can change.

25       Q.   And there's two kinds of variables, right,

Dr. Lisa P. Gwin                              May 3, 2024
Bryson, Santana and Joshua v. Rough Country, LLC

Page 10

1    independent and dependant variables?

2        A.   Probably, yes.

3        Q.   And independent is a variable that the

4    researcher changes?

5        A.   Yes.

6        Q.   And the dependant variable, are those variables

7    that change as a result of the independent variable;

8    correct?

9        A.   Correct.

10       Q.   Okay.  Do you agree that a good experiment

11   should change just one variable?

12       A.   Not always.  I mean ideally, sure, but there are

13   almost never can you only do one thing.

14       Q.   The gold standard would be to just change one

15   variable?

16            MR. HILL:  Object to form.

17            THE WITNESS:  I don't know if it's the gold

18   standard, but it would be the ideal world, Nirvana.

19   BY MS. CANNELLA:

20       Q.   And if you change just one variable from the

21   control, then you can really isolate the effects of that

22   one variable; do you agree with that?

23       A.   Yes.  That's why it would be Nirvana or ideal.

24       Q.   Okay. And do you agree that the more variables a

25   researcher changes, the more difficult it is to isolate

Dr. Lisa P. Gwin                                    May 3, 2024
Bryson, Santana and Joshua v. Rough Country, LLC

                                                    Page 11

1    which of those variables caused the changed condition in

2    test subject?

3         A.   Yes, in general.

4         Q.   And can you think of a way to use a control to

5    design a set of crashes that would be able to isolate the

6    amount of crush that is due just to a lift in a crash?

7         A.   Can I think of a test?  Is that what the first

8    part of the question was?

9         Q.   Yes.  Can you think of a way to use a control to

10   design a set of crash tests that would be able to isolate

11   the amount of crush that is due just to the lift?

12        A.   Yes.

13        Q.   And what is that?

14        A.   Well, you -- we would take a lifted truck, which

15   is what you're talking about, about a lift, a lift kit,

16   so we would take a lifted truck and do a crash, or we

17   would look at a crash with a lifted truck that already

18   happened.  And then we would take a non-lifted truck,

19   sort of an OEM, or original equipment, OE truck, and do

20   essentially the same crash.

21             So with the same two vehicle, same vehicle

22   lineup, same speeds, et cetera, and then compare the two.

23        Q.   Okay.  And do you agree there were at least two

24   independent variables in the crash test that Exponent did

25   in this case?

Dr. Lisa P. Gwin                                    May 3, 2024
Bryson, Santana and Joshua v. Rough Country, LLC

Page 12

1      A.    Sure, yes.

2      Q.    And what would those be?

3      A.    Oh, my gosh.  So independent variables are

4    things that we can create or we can set up, and those

5    would be things like -- this is not an exhaustive list --

6    things like both -- each vehicle's speed, angles of the

7    vehicle, offset of the vehicles, weights of the vehicles,

8    whether there's a lift kit or we're looking at OE,

9    original equipment.  I'm sure I'm missing things, but

10   those are some great examples.

11     Q.    And my question is about the crash test that

12   Exponent did in this case.  So there were at least two

13   independent variables in the crash test that were

14   different than the control or the crash that actually

15   happened; correct?  The lift was different; correct?

16     A.    Right.  We were testing whether OE equipment --

17   well, original equipment, i.e. no lift kit, would result

18   in similar deformation of the target vehicle.

19     Q.    Right.  So the lift kit was -- the height of the

20   vehicle was changed from the original crash, from the

21   subject crash; correct?

22     A.    Correct.

23     Q.    And then the presence of cargo was also

24   different in the Exponent test than the subject crash;

25   correct?

Dr. Lisa P. Gwin                                                    May 3, 2024
Bryson, Santana and Joshua v. Rough Country, LLC

Page 13

1      A.   Yes.  Because the only people who could tell us

2   exactly what cargo and where it was didn't know, so

3   that's an important part of science is not guessing.  And

4   so if we were to try to put cargo in the test vehicle at

5   Exponent, then we would be guessing, and so we can't do

6   that.

7      Q.   Okay.  So it's important not to guess in

8   science; correct?

9      A.   Right, yeah.

10     Q.   And the presence of cargo and the lift are two

11  things that were different from the subject crash and

12  Exponent crash; correct?

13     A.   Yes.

14     Q.   And then there was also a difference in whether

15  there was a car seat in the Exponent test; correct?

16     A.   Correct.  A child safety seat, I would call it,

17  but yes.

18     Q.   And then there was a difference in whether there

19  were actually dummies placed in the Exponent test;

20  correct?

21     A.   Correct.  And that would be different than the

22  subject crash anyway because we wouldn't have live humans

23  in this crash test.  So you're right, though, there were

24  no dummies.

25     Q.   Could you do a test where you put -- strike

Dr. Lisa P. Gwin                                    May 3, 2024
Bryson, Santana and Joshua v. Rough Country, LLC

Page 195

1    STATE OF CALIFORNIA        )

2                               )  ss.

3    COUNTY OF ALAMEDA          )

4

5

6           I, JUSTUS BALENTINE, Certified Shorthand

7    Reporter No. 13859, hereby certify that the foregoing

8    proceeding was taken by me at the time and place herein

9    set forth;

10          That the said proceeding was taken down by me

11   in shorthand and thereafter transcribed under fmy

12   direction and supervision, and I hereby certify the

13   foregoing proceeding is a full, true, and correct

14   transcript of my shorthand notes so taken;

15          That dismantling this transcript will void the

16   certification by the Certified Shorthand Reporter.

17          I further certify that I am neither counsel for

18   nor am I in any way related to any party to said action,

19   nor am I in any way interested in the outcome thereof.

20          IN WITNESS WHEREOF, I have subscribed my name

21   this 17th day of June, 2024.

22

23

24

          JUSTUS BALENTINE, CSR NO. 13859

25