**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**GAINESVILLE DIVISION**

| | |
|---|---|
| Santana Bryson and Joshua Bryson, as Administrators of the Estate of C.Z.B., and as surviving parents of C.Z.B., a deceased minor, <br><br> Plaintiffs, <br><br> v. <br><br> Rough Country, LLC, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Case No. 2:22-CV-017-RWS <br><br> JURY TRIAL DEMANDED |

**DEFENDANT ROUGH COUNTRY, LLC'S MOTION
TO STRIKE UNTIMELY AND IMPROPER
EXPERT DISCLOSURES BY PAUL LEWIS**

Defendant Rough Country, LLC, by and through its undersigned counsel, hereby moves this Court to strike the untimely "supplemental" and improper "rebuttal" reports of Paul Lewis, one of Plaintiffs' designated experts in this case. As shown below, five months after Mr. Lewis served his initial report, after Plaintiffs' disclosure deadline, and on the eve of his deposition, Mr. Lewis belatedly served a "supplemental" report that impermissibly added additional opinions and new areas of testimony. Then, to compound their efforts, Plaintiffs later re-tendered the "supplemental" report as a "rebuttal" report. Such machinations are wholly improper,

and Mr. Lewis's "supplemental report," attached hereto as Exhibit 1, should be stricken.

I. INTRODUCTION AND BACKGROUND

This case arises out of a fatal motor vehicle collision that occurred on March 15, 2020, when a drunk driver, driving a Ford F-250 Super Duty truck with a suspended license, failed to stop at a red light while he was distracted on a cell phone. The drunk driver struck the Plaintiffs' vehicle which was stopped at the red light, killing a child. The drunk driver's vehicle was equipped with a Rough Country lift kit.

As might be expected in a case such as this, Plaintiffs retained numerous experts. The deadline for Plaintiffs to disclose their expert witnesses was October 16, 2023. One of Plaintiffs' experts is Paul Lewis, Jr. Mr. Lewis issued his initial report on October 16, 2023 ("the October Report"), but he then issued a "supplemental" report on Friday, March 15, 2024 ("the March Report").[1] The March Report was tendered to Rough Country's counsel on the eve of Mr. Lewis's deposition, taken on Monday, March 18, 2024. It is this "supplemental" report that is at issue in this motion.

---

[1] The October Report was previously filed under seal by Plaintiffs at Doc. 104-2. The March Report accompanies this Motion as Exhibit 1.

a. The *Bacho* and *Mendoza* Cases

Rough Country has not been sued often because of its lift kits. It was, however, sued in two prior cases, the so-called *Bacho* and *Mendoza* cases. *Bacho* involved an accident from 2012, and *Mendoza* involved an accident in 2009. Mr. Lewis was an expert in both of these cases against Rough Country. Neither case resulted in an adverse judgment against Rough Country.

The details of *Bacho* and *Mendoza* are different from this case. [*See* Ex. 1, March Report, at 2 ("the details of these cases are different from *Bryson*").] This case concerns a rear-end collision; *Bacho* involved a side impact collision; and *Mendoza* involved a frontal impact. [*See*, *e.g.*, Deposition of Mr. Lewis, taken on March 18, 2024 (the "Lewis Depo."), at 147:3-16.][2] Additionally, the speeds of the vehicles involved in the respective accidents were different. (Ex. 2, Lewis Depo., at 147:20.)

Despite this, Mr. Lewis avers that *Bacho* and *Mendoza* are relevant because "the underlying premise is the same and they are similar cases." (Ex. 1, March Report, at 2.) But the only similarities between this case, *Bacho*, and *Mendoza* is that they each involved Rough Country lift kits, the victims suffered catastrophic head injuries, and there was some form of intrusion into the occupants' compartment. (Ex. 2, Lewis Depo., at 160:8-9.)

---

[2] The Lewis Depo., without exhibits, accompanies this Motion as Exhibit 2.

– 3 –

### b. The October Report

Mr. Lewis's initial expert report was dated October 16, 2023. The October Report makes no mention of either *Bacho* or *Mendoza*. [*See*, *e.g.*, Doc. 104-2, October Report; *see* Ex. 2, Lewis Depo., at 49:15-24, 52:1 ("They were not in my first report."), 52:17-18, and 188:16-19.]

### c. The March Report

Mr. Lewis's deposition was originally scheduled for November, 2023. It was subsequently delayed until Monday, March 18, 2024, for various reasons and always with Plaintiffs' consent.

On the afternoon of Friday, March 15, 2024, the last business day before Mr. Lewis's deposition, Plaintiffs served the March Report on Rough Country. As Mr. Lewis testified, the March Report was not prompted by any changes in the case or in Mr. Lewis's initial opinions. It was not based upon any new information that did not exist when Mr. Lewis issued the October Report. *Rather, the only reason that Mr. Lewis issued the March Report was because Plaintiffs' counsel "asked [him] to add additional information."* [Ex. 2, Lewis Depo., at 50:22-51:4; *see also id.*, at 140:2-7 ("I don't spontaneously generate any report until an attorney asked me to do that").] But for Plaintiffs' counsel sending Mr. Lewis the additional information, Mr. Lewis

– 4 –

would not have "relied upon [it] in anyway in giving [his] opinions in this case." (Ex. 2, Lewis Depo., at 162:7-10.)

Plaintiffs' counsel waited more than four months after the October Report to even ask Mr. Lewis to prepare the March Report. [*See* Ex. 2, Lewis Depo., at 51:11-14 (counsel asked Mr. Lewis to discuss *Bacho* and *Mendoza* a "couple of weeks" earlier).] Mr. Lewis then began working on the March Report only a week or two before his March 18, 2024 deposition. (Ex. 2, Lewis Depo., at 139:17-23.)

The March Report was purportedly intended to "address two similar cases [*Bacho* and *Mendoza*] and testing," (Ex. 1, March Report, at 1). First, Mr. Lewis expanded his opinion to include references to *Bacho* and *Mendoza*. Critically, the opinions issued by Mr. Lewis in the March Report are based on other expert witnesses from the *Bacho* and *Mendoza* cases who are not designated as expert witnesses in this case and Rough Country cannot cross-examine them about their underlying conclusions and opinions. (Ex. 2, Lewis Depo., at 153:10-154:3.)

Second, Mr. Lewis stated that he received "testing data for two sets of testing" *after* he issued his October Report. Mr. Lewis obtained the two data sets from Plaintiffs' counsel. (Ex. 2, Lewis Depo., at 161:12-15.) Mr. Lewis did not ask Plaintiffs' counsel for the testing data, which Mr. Lewis did not need to give the opinions from his October Report. (Ex. 2, Lewis Depo., at 161:16-25.) More

specifically, but for Plaintiffs' counsel sending the tests to him, Mr. Lewis would have not relied on them in "anyway in giving [his] opinions in this case." (Ex. 2, Lewis Depo., at 162:7-10.) The testing data existed prior to Mr. Lewis's issuance of his October Report. One set of testing data was from April 1, 2019, and the other set was from December 2, 2022.

### d. Mr. Lewis's Deposition

Despite Plaintiffs' last minute disclosure of the March Report, Rough Country proceeded with Mr. Lewis's deposition on March 18, 2024. During his deposition, Mr. Lewis unambiguously admitted that he was aware of both the *Bacho* and *Mendoza* cases when he issued his October Report. (*See*, *e.g.*, Ex. 2, Lewis Depo., at 14:1-6 and 141:1-6.) In fact, Mr. Lewis had had the material related to *Bacho* and *Mendoza* that accompanied the March Report "for almost 20 years." (Ex. 2, Lewis Depo., at 13:25.)

### e. Rough Country's Expert Witness Disclosure

Rough Country then timely identified its expert witnesses on March 29, 2024, and they were deposed by May 15, 2024.

### f. The March Report is Re-Tendered as a "Rebuttal" Report

Under the parties' Consent Scheduling Order, the parties were required to disclose "any rebuttal expert witnesses" by June 17, 2024. In connection with this

deadline, Plaintiffs *re-tendered* the March Report, ostensibly as a "rebuttal expert report" on June 17, 2024 ("the June Report"). The June Report was identical to the March Report; in fact, it was still dated March 15, 2024.

## II. ARGUMENT AND CITATIONS OF LEGAL AUTHORITY

This motion seeks to strike the March and June Reports because Rule 26(e) was not intended to allow the disclosure of new opinions after the pertinent expert disclosure deadlines. Further, Plaintiffs' delay in producing the March Report was neither justified nor harmless.

Rule 26(e) authorizes the supplementation of an expert's previously disclosed report if "the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e)(1)(A). But "[t]he only purpose of Rule 26(e) supplementation is 'for the narrow purpose of correcting inaccuracies or adding information that was not available at the time of the initial report'." *Molbogot v. MarineMax E., Inc.*, No. 20-CV-81254, 2022 WL 2132105, at *3 (S.D. Fla. June 14, 2022).

For a supplemental disclosure to be timely under Rule 26(e)(2), "[a]ny additions or changes" to the information "must be disclosed by the time the party's pretrial disclosures . . . are due." *Morrow v. Allstate Indem. Co.*, No. 5:16-CV-137 (HL), 2020 WL 11629213, at *11 (M.D. Ga. June 1, 2020). "Because the expert witness discovery rules are designed to allow both sides in a case to prepare their

cases adequately and to prevent surprise, [cit. omitted], compliance with the requirements of Rule 26 is not merely aspirational." *Cooper v. Southern Co.*, 390 F.3d 695, 728 (11th Cir. 2004). Thus, to the extent that Plaintiffs desired to supplement Mr. Lewis's October Report to include references to *Bacho* or *Mendoza*, they were required to do so by their October 16, 2023 deadline.

a. <u>The March Report Constitutes an Abuse of Rule 26(e)</u>

The March Report is a blatant abuse of Rule 26(e). "It is disingenuous to argue that the duty to supplement under Rule 26(e)(1) can be used as a vehicle to disclose entirely new expert opinions after the expert disclosure deadline established by the court." *Falcone Global Solutions, LLC v. Maurice Ward Networks, Ltd.*, 1:18-CV-3379-MHC, 2022 WL 20056934, *2 (N.D. Ga. Sept. 13, 2022). "Rule 26(e) is not an excuse to rewrite an expert report or present new opinions." *Coward v. Forestar Realty, Inc.*, 282 F. Supp. 3d 1317, 1329 (N.D. Ga. 2017). A supplemental report "is not a device to allow a party's expert to engage in additional work, or to annul opinions or offer new ones to perfect a litigating strategy." *Cochran v. Brinkmann Corp.*, No. 1:08-CV-1790-WSD, 2009 WL 4823858, *5 (N.D. Ga. Dec. 9, 2009), *aff'd sub nom. Cochran v. The Brinkmann Corp.*, 381 F. App'x 968 (11th Cir. 2010). For these reasons, "a supplemental expert report setting out additional opinions or rationales or seeking to strengthen opinions expressed in the original expert report

exceeds the bounds of Rule 26 supplementation and is subject to exclusion under Rule 37(c)(1)," *Scott v. Remington Arms Co., LLC*, No. 2:19-CV-1891-GMB, 2024 WL 2981179, at *5 (N.D. Ala. June 13, 2024).

Similarly, Rule 26(e) cannot be abused by using a supplement to "merely bolster a defective or problematic expert witness report." *Potish v. R.J. Reynolds Tobacco Co.*, No. 15-81171-CV, 2017 WL 5952892, at *3 (S.D. Fla. Nov. 30, 2017) (quoting *Companhia Energetica Potiguar v. Caterpillar Inc.*, No. 14-CV-24277, 2016 WL 3102225, *6 (S.D. Fla. June 2, 2016)); *see also Ruiz v. SharkNinja Operating LLC*, No. 6:21-CV-1628-WWB-LHP, 2024 WL 640859, at *2 (M.D. Fla. Feb. 6, 2024) ("[s]upplementation is not appropriate simply because the expert did an inadequate or incomplete preparation"). "Rule 26 does not allow parties 'to cure deficient expert reports by supplementing them with later deposition testimony." *CSX Transportation, Inc. v. Gen. Mills, Inc.*, No. 1:14-CV-201-TWT, 2024 WL 3089652, at *3 (N.D. Ga. June 21, 2024).

The March Report violates each of these tenets. Plaintiffs' effort to supplement the October Report with new opinions about new topics constitutes an abuse of Rule 26.

> b. <u>The Delay in Issuing the March Report Was Neither Justified Nor Harmless</u>

"If supplemental information is not disclosed by the deadline, the party is prohibited from using the information 'unless the failure to supplement its disclosure was substantially justified or is harmless'." *Morrow v. Allstate Indem. Co.*, No. 5:16-CV-137 (HL), 2020 WL 11629213, at *11 (M.D. Ga. June 1, 2020) (quoting Fed. R. Civ. P. 37(c)(1)).

There is no justification for Plaintiffs' service of the March Report five months after Mr. Lewis's initial disclosure was made and five months after the disclosure deadline. Mr. Lewis makes two critical admissions: first, Mr. Lewis admits that he knew about *Bacho* and *Mendoza* when he issued the October Report and, second, he admits that Plaintiffs' counsel not only asked him to add the information to his report, but that they waited four months to do so.

Moreover, there is no justification to warrant the substantive addition of the *Bacho* and *Mendoza* references or the tests. As Mr. Lewis testified, he only referenced those topics because Plaintiffs' counsel asked him to do so. The new opinions and topics were not intended to correct any portion of the October Report.

Further, the March Report's inclusion of the *Bacho* and *Mendoza* cases, along with the test information, is harmful to Rough Country at this late stage of the

litigation. Rough Country – which disclosed its experts shortly after the March Report was issued – was unable to present counter-expert testimony in response to Mr. Lewis's tardy invocation of the *Bacho* and *Mendoza* cases. For example, to properly rebut this, Rough Country would need additional time to engage counter-experts, such as its experts from those two cases, and then the experts would have to effectively re-litigate both *Bacho* and *Mendoza*. This would be a significant undertaking and be very time-consuming. In *Bacho* alone, each side identified four (4) experts, for a total of eight (8) different experts. Further, this would also be confusing to the jury, however, because the three accidents involved different mechanisms of injury; they are not similar incidents, as Mr. Lewis admitted during his deposition.

      c. <u>Alternatively, the March Report Re-Tendered in June is Not a "Rebuttal" Report</u>

Apparently sensing the error of their ways, Plaintiffs re-tendered the March Report as the "rebuttal" June Report. This attempt is intellectually dishonest because the June Report does not rebut anything; it was issued *before* Rough Country disclosed its expert witnesses on March 29, 2024.

Further, under Rule 26(a)(2)(D)(ii), rebuttal evidence "is intended *solely* to contradict or rebut evidence on the same subject matter *identified by another party*

under Rule 26(a)(2)(B) or (C)," (italics added). "A report is not truly a rebuttal if it solely expands the party's case-in-chief, introduces new legal theories, or presents the same opinions previously provided," *Reese v. CSX Transportation, Inc.*, No. CV 118-215, 2020 WL 5740253, at *13 (S.D. Ga. Sept. 24, 2020). As explained further,

> Rebuttal expert reports are proper if they contradict or rebut the subject matter of the affirmative expert report. *They are not, however, the proper place for presenting new arguments*. If the purpose of expert testimony is to contradict an expected and anticipated portion of the other party's case-in-chief, then the witness is not a rebuttal witness or anything analogous to one. Rather, *rebuttal expert testimony is limited to new unforeseen facts brought out in the other side's case*.

*Id.*, 2020 WL at *12 (quoting *Leaks v. Target Corp.*, No. CV 414-106, 2015 WL 4092450, at *3 (S.D. Ga. July 6, 2015)) (italics added). It is undisputed that the March/June Reports present new arguments and do not rebut Rough Country's expert witnesses, none of whom identified or referenced either the *Bacho* or the *Mendoza* cases in their reports. Moreover, as Mr. Lewis admitted, the information contained in the March/June Reports was known to him prior to the issuance of his October Report. As such, the March/June Reports do not respond to "new unforeseen facts brought out in" Rough Country's case. It is plainly evident that Plaintiffs impermissibly seek to use the March/June Reports to present new, impermissible arguments and not to "contradict or rebut evidence . . . identified by another party,"

– 12 –

as required by Rule 26. Simply stated, the March/June Reports are "not a rebuttal [report] or anything analogous to one."

        d. <u>Court Should Strike Mr. Lewis's March and June Reports</u>

Given the foregoing, Rough Country asks that the Court strike the March and June Reports. "Courts have broad discretion to exclude untimely-disclosed expert witness testimony even if they are designated as 'supplemental reports'." *Potish v. R.J. Reynolds Tobacco Co.*, No. 15-81171-CV, 2017 WL 5952892, at *3 (S.D. Fla. Nov. 30, 2017). "Affidavits from expert witnesses, which are served after the deadline for disclosing expert reports and also contain new opinions and/or restructure the original expert opinions may be stricken as untimely." *Walker v. Yamaha Motor Co.*, No. 613CV1546ORL37GJK, 2016 WL 7325525, at *2 (M.D. Fla. Jan. 20, 2016); *Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1252 (11th Cir. 2007) ("We have held that a supplemental expert report may be excluded pursuant to Federal Rule of Civil Procedure 37(c) if a party fails to file it prior to the deadline imposed.")

The March and June Reports, including both Mr. Lewis's opinions contained therein and the exhibits to the reports, should therefore be stricken because they were not timely disclosed, they contain new, improper opinions, and the June Report is not a proper "rebuttal" report.

## III. CONCLUSION

Accordingly, for the aforementioned reasons, Rough Country shows that Mr. Lewis's March and June Reports should be stricken, and this Motion should be GRANTED.

This 20th day of January, 2025.

          WEINBERG, WHEELER, HUDGINS, GUNN & DIAL, LLC

          /s/ Aaron Chausmer
          Richard H. Hill, II
          Georgia Bar No. 354425
          Aaron B. Chausmer
          Georgia Bar No. 119998

3344 Peachtree Road, N.E.
Suite 2400
Atlanta, GA 30326
Phone: 404-876-2700
Fax: 404-875-9433

          *Attorneys for Defendant Rough Country, LLC*

## RULE 7.1D CERTIFICATE OF TYPE, FORMAT AND FONT SIZE

Pursuant to Local Rule 7.1D of the United States District Court of the Northern District of Georgia, the undersigned certifies that the foregoing submission to the Court complies with Local Rule 5.1 in that it was computer-processed, double-spaced between lines, and used Times New Roman font of 14 point size.

## CERTIFICATE OF SERVICE

This is to certify that I have electronically served the foregoing filing with the Clerk of Court via CM/ECF, which will send a copy to the following attorneys of record:

>Tedra L. Cannella
>Robert H. Snyder, Jr.
>Devin Mashman
>CANNELLA SNYDER LLC
>315 W Ponce de Leon Ave
>Suite 885
>Decatur, GA 30030

*ATTORNEYS FOR PLAINTIFFS*

This 20th day of January, 2025.

>*/s/ Aaron Chausmer*
>Aaron B. Chausmer
>Georgia Bar No. 119998

– 15 –