# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### GAINESVILLE DIVISION

| | | |
|---|---|---|
| Santana Bryson and Joshua Bryson, | ) | |
| as Administrators of the Estate of | ) | |
| C.Z.B., and as surviving parents of | ) | |
| C.Z.B., a deceased minor, | ) | Case No. 2:22-CV-017-RWS |
| | ) | |
|   Plaintiffs, | ) | JURY TRIAL DEMANDED |
| | ) | |
| v. | ) | |
| | ) | |
| Rough Country, LLC, | ) | |
| | ) | |
|   Defendant. | ) | |

## DEFENDANT ROUGH COUNTRY, LLC'S MOTION TO STRIKE UNTIMELY AMENDED REPORT AND RELATED SIMULATIONS  BY G. BRYANT BUCHNER

Defendant Rough Country, LLC, by and through its undersigned counsel, hereby moves this Court to strike the untimely and improper "amended report" of G. Bryant Buchner, one of Plaintiffs' designated experts in this case. As shown below, Mr. Buchner issued an "amended report" that was based on computer simulations performed *after* he issued his initial report, *after* Plaintiffs' deadline to disclose their expert reports, and *after* Rough Country disclosed its expert witnesses. Accordingly, Mr. Buchner's "amended report," attached hereto as Exhibit 2, should be stricken, and Mr. Buchner should be precluded from relying on his second round of

simulations, any graphical representations of his second round of simulations or other related materials, or offering any opinions based on his second round of simulations in this case.

## I. INTRODUCTION AND BACKGROUND

This case arises out of a fatal motor vehicle collision that occurred on March 15, 2020, when a drunk driver, driving a Ford F-250 Super Duty truck with a suspended license, failed to stop at a red light while he was distracted on a cell phone. The drunk driver struck the Plaintiffs' Ford Escape which was stopped at the red light, killing their child. The drunk driver's vehicle was equipped with a Rough Country lift kit.

As might be expected in a case such as this, Plaintiffs retained numerous experts. The deadline for Plaintiffs to disclose their expert witnesses was October 16, 2023. One of Plaintiffs' experts is G. Bryant Buchner, an accident reconstructionist. Mr. Buchner issued his initial report on October 12, 2023 ("the Initial Report").[1]

Rough Country then disclosed its expert witnesses to Plaintiffs by its March 29, 2024 deadline. [Doc. 76, at 1.] Rough Country's disclosure include a report

---

[1] The Initial Report accompanies this Motion as Exhibit 1. The Amended Report at issue accompanies this Motion as Exhibit 2. Due to the size and volume of the attachments to Mr. Buchner's Reports, they are not included with this Motion. Rough Country will file them with the Court if either the Court or Plaintiffs' counsel request that it do so.

issued by Wesley Grimes (the "Grimes Report"), dated March 27, 2024, a copy of which accompanies this Motion as Exhibit 3. Plaintiffs deposed Mr. Grimes, Rough Country's accident reconstruction expert on May 9, shortly before their May 15, 2024 deadline to do so. [*Id.*]

But *the day before* Mr. Grimes's deposition, on May 8, 2024, Plaintiffs produced the "Amended Report" from Mr. Buchner. This was served seven months after Mr. Buchner's Initial Report.[2] Mr. Buchner then produced a different rebuttal report on June 14, 2024. (This rebuttal report is not directly at issue in this Motion, except to the extent that Mr. Buchner relied on any of the simulations he performed in connection with his Amended Report.)

   a.   The Initial Report's HVE Simulations Were Not Maintained and Mr. Buchner Produced Unverifiable Reports.

In connection with his Initial Report, Mr. Bucher performed various computer simulations of an F-250 colliding with an Escape: "[t]he collision was simulated in HVE (Human Vehicle Environment), a physics-based 3d computer simulation

---

[2] This is a recurring theme for Plaintiffs. Just as they served Mr. Buchner's Amended Report seven months after his Initial Report on the day before Mr. Grimes's deposition, Plaintiff did the same thing for another of their experts, Paul Lewis. Plaintiffs served Mr. Lewis's "supplemental report" on Rough Country on the eve of Mr. Lewis's deposition, five months after his initial report. Rough Country has filed a similar motion to exclude Mr. Lewis's untimely report.

program used in accident reconstruction, using SIMON (Simulation Model Non-Linear)." (Ex. 1, Initial Report, at 10.) But Mr. Buchner did not run a single simulation. Rather, Mr. Buchner (through his staff) ran multiple, "iterative" simulations until he found what he believed to be an appropriate outcome.[3] [Ex. 4, Initial Depo., at 15:20-16:8 ("a junior engineer" does "the vast majority"); *id.*, at 15:23-25 ("We would have basically used an iterative process – an iterative process to get the answer to match the download").] Despite running multiple simulations, Mr. Buchner did not "save" them or track the differences in the various simulations. (Ex. 4, Initial Depo., at 154:10-11 and 154:20-23.) Based on this series of simulations ("the Initial Simulations"), Mr. Buchner reached the conclusion that a stock (*i.e.*, unlifted) F250 "at factory height produced collisions that reduced the Escape's crush and resulted in damage which would not have penetrated to the rear seat such that the rear occupant compartment would not have been compromised." (Ex. 1, Initial Report, at 11.)

Mr. Buchner's lack of verifiability or accountability ultimately came back to haunt him, however. In advance of his Initial Deposition, Mr. Buchner produced

---

[3] Deposition of Mr. Buchner, taken on January 23, 2024 ("the Initial Depo."), a copy of which was previously filed with the Court as Doc. 102-1. Notwithstanding this prior filing, a transcript of the Initial Depo. accompanies this Motion as Exhibit 4 for the Court's reference and convenience.

certain (but not all) printed reports ("the Initial Reports") based on his Initial Simulations.[4] Mr. Buchner did not, however, provide Rough Country with the "actual digital electronic version of the HVE case file" for the Official Initial Simulation. (Ex. 4, Initial Depo., at 6:2-7.) Mr. Buchner continued: "I'm not saying I don't have it, I'm saying I couldn't find it when they looked for it this weekend." (Ex. 4, Initial Depo., at 7:11-13.) But for Rough Country "[t]o make a full evaluation of [the Official Initial] [E]valuation, the HVE file, vehicle geometries, and any site images and geometries [would] be required." (Ex. 3, Grimes Report, at 23.) Mr. Grimes "attempted to reproduce Mr. Buchner's [Initial] HVE materials using his printouts, but [he was] unable to verify his [Initial] HVE runs."[5] [Ex. 5, at 2.]

*Months after his Initial Deposition*, Mr. Buchner learned (at least) two things.[6] [Ex. 6, Second Depo., at 20:11-12 ("It was months after the deposition.").] *First*, Mr. Buchner went back and tried to locate the actual digital data file for the Official

_____

[4] Because Mr. Buchner ran multiple Initial Simulations, Rough Country will refer to the simulation that Mr. Buchner relied on – whichever one that may be – in reaching his conclusion as the "Official Initial Simulation."

[5] Supplemental Report of Mr. Grimes, dated November 26, 2024, a copy of which was previously filed with the Court as Doc. 116-4. Notwithstanding this prior filing, a copy of Mr. Grimes's Supplemental Report accompanies this Motion as Exhibit 5 for the Court's reference and convenience.

[6] Deposition of Mr. Buchner, taken on July 11, 2024 ("the Second Depo."), a transcript of which accompanies this Motion as Exhibit 6.

Initial Simulation. Mr. Buchner was unable to do so, and he found that "it basically didn't exist." [Ex. 6, Second Depo., at 7:3-4 and 18:21-23 ("We could never find a file that we had any confidence – or that was the file that we had used in October").].

*Second*, Mr. Buchner also learned that he could not confirm that the limited Initial Reports he previously produced were reliable. [Ex. 6, Second Depo., at 11:7-11 ("They clearly weren't all of the reports, . . . and we could not resurrect anything that I can be confident was what I had looked at back in October") and 23:1-4 ("We started trying to use the reports, and I found some things that – that were inconsistent with what my memory was as to what should have been there.")].

      b.  For the Amended Report, Mr. Buchner Ran a Second Round of HVE Simulations

Because Mr. Buchner could not find the data file related to the Official Initial Simulation, and his Initial Reports were unreliable, he elected to conduct a second round of HVE simulations ("the Amended Simulations"). As stated in the Amended Report:

> This document serves as an *amendment* to the FR26 report previously submitted on October 12, 2023, regarding the case of Bryson v. Rough Country. The purpose of this *amendment* is to address an unforeseen technical issue that resulted in the loss of the original simulation file, which was used in some of my initial findings.

My intention was to produce the entire simulation, including raw data and all reports *but because data was lost*, *we ran an amended simulation* as spelled out below.

(Ex. 2, Amended Report, at 1 (italics added); *see also id.* ("Since this [Initial] simulation had been corrupted *and the precise parameters can no longer be extracted*, a simulation was run again and is discussed in this report") (italics added).] Mr. Buchner had to do his Amended Simulations "from scratch basically because the old data was not the correct data." (Ex. 6, Second Depo., at 57:18-22 and 57:12-13.) From the Amended Simulations, Mr. Buchner generated "new images" ("the Amended Images"). [Ex. 6, Second Depo., at 14:6-11 (when asked if the "graphical representation of the crush" was consistent, Mr. Buchner responded that he "can't tell. That's part of the problem. So we've generated new images.").]

Ultimately, Mr. Buchner admits that he tailored the Amended Simulations to mirror and validate his prior deposition testimony, which came months after he issued his Initial Report. [Ex. 6, Second Depo., at 64:22-23 ("in the rerun when we were making sure to do things per my deposition") and 88:1-2 ("I wanted to do it exactly from my depo.").]

The Amended Simulations were different from the Initial Simulations, however. *First*, Mr. Buchner obtained and used a different "stiffness coefficient" for the F250. (Ex. 2, Amended Report, at 2; Ex. 6, Second Depo., at 64:12-13.) The

second "stiffness coefficient" was available to Mr. Buchner when he ran the Initial Simulations; he "just didn't recognize that [it] was a possibility when [he] did the original run." (Ex. 6, Second Depo., at 66:2-4.) *Second*, Mr. Buchner changed the F-250's tire size. (Ex. 2, Amended Report, at 2.) This change was not based on any new information because Mr. Buchner admits that he had the correct tire size when he did the Initial Simulations, but he "didn't catch that [he] should change the size of the tire by that – you know, by that much." (Ex. 6, Second Depo., at 67:7-16.) *Third*, Mr. Buchner revised the Initial Simulations to "include[] no braking on either vehicle." (Ex. 2, Amended Report, at 2.) *Fourth*, Mr. Buchner adjusted the weights of both the F-250 and Escape for the Amended Simulations. [Ex. 2, Amended Report, at 2-3.] *Finally*, Mr. Buchner changed the "offset" (how the F-250 aligned with the Escape at the time of the collision) in the simulation by an inch, changing it to 12 inches to the left of the Escape. [Ex. 2, Amended Report, at 2; Ex. 6, Second Depo., at 86:12-23 ("in the original simulation, . . . I don't know if it was eleven inches or one foot. . . . I don't know the precise offset that was used other than from my memory").]

The net result was that Mr. Buchner refined his simulations *after* Rough Country issued its expert reports in response to Mr. Buchner's Initial Report. Mr. Buchner's Amended Simulations were not done in response to any of Rough Country's experts or new information. Rather, they were run solely because Mr.

Buchner failed to properly maintain his files, could not produce all of the Initial Reports related to the Initial Simulations or used the wrong variables in the Initial Simulations. In short, Mr. Buchner confirmed through his actions and testimony, that he failed to provide the necessary raw digital data and information to Rough Country's experts for them to properly evaluate his Initial Simulations.

   c. <u>Rough Country's Response to the Rebuttal Report</u>

 As Mr. Buchner admits, Rough Country could not accurately reproduce his Official Initial Simulation based on what was produced to it or his deposition testimony. [Ex. 6, Second Depo., at 50:17-51:9 ("You could do a reasonable rerun of the date we gave . . . [b]ut they're not going to be as accurate as they need to be so that what's in my report would be precisely produced" and "they would get a reasonable result of what we got. It just wouldn't be the same results that were in my [Initial] FR26 report").]

 Accordingly, Rough Country's response to the Official Initial Simulation and Initial Reports was fundamentally hindered because Mr. Buchner's production was flawed and incomplete. Rough Country was unable to properly respond to Mr. Buchner's opinion and conclusions because it lacked the requisitely reliable data until

after the Amended Report was issued. Rough Country subsequently served a second report from Mr. Grimes, its accident reconstruction expert, on Plaintiffs.[7]

## II.  ARGUMENT AND CITATIONS OF LEGAL AUTHORITY

The question posed in this Motion is simple: Can Mr. Buchner redo, and rely on, HVE simulations performed long after Plaintiffs' deadline to disclose Mr. Buchner's report, after his deposition, and after Rough Country's experts responded to his Initial Report? The answer is no.

Accordingly, this motion seeks to strike the Amended Report because Rule 26(e) was not intended to allow Plaintiffs' disclosure of new "rerun" simulations after the pertinent expert disclosure deadlines. Further, Plaintiffs' delay in producing the Amended Report until after Rough Country had already responded to the Initial Report was neither justified nor harmless.

Rule 26(e) authorizes the supplementation of an expert's previously disclosed report if "the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e)(1)(A). But "[t]he only purpose of Rule 26(e) supplementation is 'for the narrow purpose of correcting inaccuracies or adding information that was not available at the

---

[7] Plaintiffs have moved to strike this report as untimely. [*See* Doc. 116 (Plaintiffs' Motion to Strike the Untimely and Improper Sur-Rebuttal Report of Wesley Grimes, filed on January 15, 2024).] Rough Country will respond to this motion in a timely manner.

time of the initial report'." *Molbogot v. MarineMax E., Inc.*, No. 20-CV-81254, 2022 WL 2132105, at *3 (S.D. Fla. June 14, 2022).

Rule 26(e) does not authorize the belated amendment of a previously disclosed report. For an amended disclosure to be timely under Rule 26(e)(2), "[a]ny additions or changes" to the information "must be disclosed by the time the party's pretrial disclosures . . . are due." *Morrow v. Allstate Indem. Co.*, No. 5:16-CV-137 (HL), 2020 WL 11629213, at *11 (M.D. Ga. June 1, 2020). "Because the expert witness discovery rules are designed to allow both sides in a case to prepare their cases adequately and to prevent surprise, [cit. omitted], compliance with the requirements of Rule 26 is not merely aspirational." *Cooper v. Southern Co.*, 390 F.3d 695, 728 (11th Cir. 2004). Thus, to the extent that Plaintiffs desired to amend Mr. Buchner's Initial Report to rely upon the Amended Simulations, they were required to do so by their October 16, 2023 deadline.

### a. The Amended Report Constitutes an Abuse of Rule 26(e)

The Amended Report is a blatant abuse of Rule 26(e). "Rule 26(e) is not an excuse to rewrite an expert report," *Coward v. Forestar Realty, Inc.*, 282 F. Supp. 3d 1317, 1329 (N.D. Ga. 2017). A supplemental report "is not a device to allow a party's expert to *engage in additional work* . . . to perfect a litigating strategy." *Cochran v. Brinkmann Corp.*, No. 1:08-CV-1790-WSD, 2009 WL 4823858, *5

(N.D. Ga. Dec. 9, 2009), *aff'd sub nom. Cochran v. The Brinkmann Corp.*, 381 F. App'x 968 (11th Cir. 2010) (italics added). For these reasons, "a supplemental expert report . . . seeking to strengthen opinions expressed in the original expert report exceeds the bounds of Rule 26 supplementation and is subject to exclusion under Rule 37(c)(1)," *Scott v. Remington Arms Co., LLC*, No. 2:19-CV-1891-GMB, 2024 WL 2981179, at *5 (N.D. Ala. June 13, 2024).

Similarly, Rule 26(e) cannot be abused by using a supplement or amendment to "merely bolster a defective or problematic expert witness report." *Potish v. R.J. Reynolds Tobacco Co.*, No. 15-81171-CV, 2017 WL 5952892, at *3 (S.D. Fla. Nov. 30, 2017) (quoting *Companhia Energetica Potiguar v. Caterpillar Inc.*, No. 14-CV-24277, 2016 WL 3102225, *6 (S.D. Fla. June 2, 2016)); *see also Ruiz v. SharkNinja Operating LLC*, No. 6:21-CV-1628-WWB-LHP, 2024 WL 640859, at *2 (M.D. Fla. Feb. 6, 2024) ("[s]upplementation is not appropriate simply because the expert did an inadequate or incomplete preparation"). "Rule 26 does not allow parties 'to cure deficient expert reports by supplementing them with later deposition testimony," or in this case, the Amended Simulations. *CSX Transportation, Inc. v. Gen. Mills, Inc.*, No. 1:14-CV-201-TWT, 2024 WL 3089652, at *3 (N.D. Ga. June 21, 2024).

The Amended Report violates each of these tenets. Plaintiffs' effort to amend the Initial Report to replace the Initial Simulations and Reports with the Amended

Simulations, Amended Graphics, and related materials constitutes an abuse of Rule 26.

      b. <u>The Delay in Issuing the Amended Report Was Neither Justified Nor Harmless</u>

"If supplemental information is not disclosed by the deadline, the party is prohibited from using the information 'unless the failure to supplement its disclosure was substantially justified or is harmless'." *Morrow v. Allstate Indem. Co.*, No. 5:16-CV-137 (HL), 2020 WL 11629213, at *11 (M.D. Ga. June 1, 2020) (quoting Fed. R. Civ. P. 37(c)(1)).

There is no justification for Plaintiffs' service of the Amended Report seven months after the Initial Report and four months after his Initial Deposition. Indeed, Mr. Buchner even admitted that he waited "months" to confirm that he had lost the data related to the Initial Simulations and Report. Moreover, Mr. Buchner makes another critical admission: he admits that many of the changes between the Initial and Amended Simulations, such as vehicles' weights, the tire size, and the proper "stiffness coefficient" were available to Mr Buchner at the time of his Initial Report.

Moreover, there is no justification to warrant the substantive addition of the Amended Simulations, Amended Graphics, and related materials to this case by Plaintiffs. The Amended Report and Simulations are harmful to Rough Country to

the extent that the Court restricts their ability to rebut or analyze them in response. In fact, Plaintiffs are now seeking to strike Mr. Grimes's responsive report. [*See* Doc. 116.] Rough Country – which disclosed its experts *before* the Amended Report even existed – was unable to present counter-expert testimony in response until Mr. Grimes issued his subsequent report.

c.   Court Should Strike the Amended Report and Bar Plaintiffs from Relying on the Amended Simulations or Any Related Materials

Given the foregoing, Rough Country asks that the Court strike the Amended Reports. "Courts have broad discretion to exclude untimely-disclosed expert witness testimony even if they are designated as 'supplemental reports'." *Potish v. R.J. Reynolds Tobacco Co.*, No. 15-81171-CV, 2017 WL 5952892, at *3 (S.D. Fla. Nov. 30, 2017). "Affidavits from expert witnesses, which are served after the deadline for disclosing expert reports and also contain new opinions and/or restructure the original expert opinions may be stricken as untimely." *Walker v. Yamaha Motor Co.*, No. 613CV1546ORL37GJK, 2016 WL 7325525, at *2 (M.D. Fla. Jan. 20, 2016); *Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1252 (11th Cir. 2007) ("We have held that a supplemental expert report may be excluded pursuant to Federal Rule of Civil Procedure 37(c) if a party fails to file it prior to the deadline imposed.")

The Amended Report, including any related materials, should therefore be stricken because they were not timely disclosed.

III. CONCLUSION

Accordingly, for the aforementioned reasons, Rough Country shows that Mr. Buchner's Amended Report should be stricken, Plaintiffs should not be allowed to rely on the Amended Simulations, Amended Graphics, or other related materials in this case, and this Motion should be GRANTED.

This 20th day of January, 2025.

WEINBERG, WHEELER, HUDGINS, GUNN & DIAL, LLC

/s/ Aaron Chausmer
Richard H. Hill, II
Georgia Bar No. 354425
Aaron B. Chausmer
Georgia Bar No. 119998

*Attorneys for Defendant Rough Country, LLC*

3344 Peachtree Road, N.E.
Suite 2400
Atlanta, GA 30326
Phone:  404-876-2700
Fax:   404-875-9433

## RULE 7.1D CERTIFICATE OF TYPE, FORMAT AND FONT SIZE

Pursuant to Local Rule 7.1D of the United States District Court of the Northern District of Georgia, the undersigned certifies that the foregoing submission to the Court complies with Local Rule 5.1 in that it was computer-processed, double-spaced between lines, and used Times New Roman font of 14 point size.

## CERTIFICATE OF SERVICE

This is to certify that I have electronically served the foregoing filing with the Clerk of Court via CM/ECF, which will send a copy to the following attorneys of record:

Tedra L. Cannella
Robert H. Snyder, Jr.
Devin Mashman
CANNELLA SNYDER LLC
315 W Ponce de Leon Ave
Suite 885
Decatur, GA 30030

*ATTORNEYS FOR PLAINTIFFS*

This 20th day of January, 2025.

/s/ Aaron Chausmer
Aaron B. Chausmer
Georgia Bar No. 119998

– 16 –