UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | | |
|---|---|---|
| Santana Bryson and Joshua Bryson, | * | |
| as Administrators of the | * | |
| Estate of C.Z.B., and as surviving | * | |
| parents of C.Z.B., a deceased minor, | * | |
| | * | Civil Action File |
| Plaintiffs, | * | |
| | * | No. 2:22-cv-17-RWS |
| v. | * | |
| | * | |
| Rough Country, LLC | * | |
| | * | |
| Defendant. | * | |

**PLAINTIFFS' RESPONSE TO DEFENDANT ROUGH COUNTRY
LLC'S MOTION TO STRIKE AMENDED REPORT AND
<u>RELATED SIMULATIONS BY G. BRYANT BUCHNER</u>**

## I.    INTRODUCTION

Plaintiffs produced Mr. Buchner's Amended Report nearly nine months ago,

well within the Court's deadlines for expert discovery.  Mr. Buchner's Amended

Report did not disclose any new opinions.  It simply provided RC with a re-run

computer simulation, so it had full access to data that was lost due to an unforeseen

technical problem.  RC has deposed Mr. Buchner *twice* about his computer

simulation and had over a month to disclose any rebuttal report within the Court's

deadlines.

RC did not file its motion to strike Mr. Buchner's Amended Report because

it was prejudiced.  Instead, its motion is revenge for Plaintiff's motion to strike

RC's expert report, which it served six months after the Court's deadline.[1]  RC

hopes this Court will throw up its hands and deny both motions.  However, there is

a dispositive difference between what Plaintiffs did and what RC has done:

Plaintiffs produced Mr. Buchner's Amended Report as a true supplemental

disclosure under the federal rules within the deadline for doing so, and produced

him for a second deposition within the deadline as well.  RC, on the other hand,

chose not to supplement its expert's report for six months, until after this Court's

ruling on summary judgment.  It chose not to ask for additional time to serve a

supplemental report.  And it made these choices even though Plaintiffs asked RC

for months to provide any supplemental report it was going to offer.  There are no

similarities between RC's violation of the rules and Plaintiffs' compliance with

them.

The Court should deny RC's motion to strike Mr. Buchner's Amended

Report for several reasons.

*First*, Mr. Buchner's Amended Report was a proper and timely supplemental

disclosure under Rule 26(e).  Mr. Buchner's office could not produce the

underlying simulation data files because they were lost due to an unforeseen

technical error.  Those files were the electronic equivalent of how one might "show

---

[1] RC filed this motion just five days after Plaintiff's motion to strike Mr. Grimes'
sur-rebuttal report. *See* Doc. 116.

their work" when doing hand calculations.  Mr. Buchner performed a re-run

computer simulation for RC's *benefit*—he used it to re-create the underlying

simulation data file lost due to an unforeseen technological problem.[2]  By

providing an Amended Report with his re-run simulation, Mr. Buchner ensured

RC's equal access to the parameters and results of his computer simulation and

allowed RC's experts to review and validate his underlying data.  The results of the

re-run simulation were the same as the initial simulation, and he did not change

any of his opinions.  Mr. Buchner's Amended Report served the exact purpose

permitted by Rule 26(e)—to remedy an "incomplete or incorrect" disclosure by re-

creating the lost data supporting his opinions.  Fed. R. Civ. P. 26(e)(1)(A).

*Second*, Mr. Buchner's Amended Report was both "substantially justified"

and "harmless."  *See* Fed. R. Civ. P. 37(c)(1).  Mr. Buchner did not create his

Amended Report to change any opinions or surprise RC—he did it to remedy a

technological error resulting in a loss of data through no fault of his own.

Additionally, RC was not harmed by the Amended Report because it fully

discovered Mr. Buchner's opinions on his initial and re-run computer simulations

during the expert discovery period through *two* depositions.  RC also had the

opportunity to designate rebuttal opinions within the Court's deadlines.  RC

suffered no prejudice through Mr. Buchner's Amended Report—it actually *cured*

---

[2] *See* Ex. A, 7/11/24 Buchner Dep., at 7:17-8:20.

any prejudice by providing the inadvertently lost data to *help* RC understand his opinions.

Mr. Buchner's Amended Report was proper, timely, substantially justified, and harmless. The Court should deny RC's motion to exclude it.

## II.    FACTUAL BACKGROUND

On October 16, 2023, Plaintiffs disclosed Bryant Buchner as an expert in accident reconstruction, engineering, and vehicle dynamics.[3] Plaintiffs disclosed that Mr. Buchner's testimony would include his analysis of "how the crash would have been different if the bumper structures of the vehicle had engaged."[4] In addition to providing Mr. Buchner's full initial report, Plaintiffs' disclosure informed RC that his testimony would be based on several categories of information, including "computer simulations."[5]

Plaintiffs timely produced Mr. Buchner's Initial Report with their expert disclosures.[6] Mr. Buchner's Initial Report contained a detailed summary of his opinions, including his opinion that a stock F-250 would have intruded less into the Ford Escape than the subject F-250 equipped with RC's lift kit.[7] Mr. Buchner also provided a detailed summary of the support for each of his opinions.

---

[3] *See* Ex. B, 10/16/2023 Plaintiffs' Expert Disclosure.
[4] *Id.* at 10.
[5] *Id.* at 11.
[6] *See* Ex. C, Buchner Initial Report.
[7] *Id*. at 10-11.

Mr. Buchner did not rely solely—or even primarily—on computer simulations to form his opinion about the amount of intrusion that can be attributed to RC's lift kit. Instead, he primarily bases that opinion on a mathematical calculation he performed.[8] Mr. Buchner performed a standard calculation based on the vehicles' speeds, known vehicle characteristics, geometry of the collision, and stiffness to determine the amount a "stock" (or unlifted) F-250 would have crushed into the rear of the Bryson family's Escape.[9] By comparing the results of his calculation to the physical damage to both vehicles, Mr. Buchner determined that an unlifted F-250 would have crushed *over two fewer feet* into the Bryson family's Ford Escape.[10]

Mr. Buchner has never changed or supplemented his crush calculations. He provided his underlying file data showing the hand calculations he performed,[11] and RC had the opportunity to question him extensively about those calculations at his deposition.[12]

Mr. Buchner also performed a computer simulation to confirm his crush calculations. In his Initial Report, Mr. Buchner disclosed that he used an HVE/SIMON 3D vehicle dynamic simulation model, which is frequently used by

---

[8] *Id.* at 10 (describing the crush analysis he performed).
[9] *Id.*
[10] *Id.* at 11.
[11] *See* Ex. D, Buchner Crush Calculation Summary.
[12] *See, e.g.,* Ex. E, 1/23/24 Buchner Dep., at 116:8-120:23.

accident reconstruction experts.  That simulation showed what would have happened in the subject collision if the F-250 had been a "stock" (i.e., unlifted) vehicle hitting the Brysons Escape.[13]  Mr. Buchner's report disclosed the inputs and assumptions he relied on for the simulation and the results of that simulation.[14] Like his crush calculation, Mr. Buchner's simulation confirmed that an unlifted F-250 would have intruded significantly *less* into the Escape than the lifted F-250 did in the subject collision.[15]

Shortly before his deposition, Mr. Buchner discovered he could not find the underlying simulation data to produce it for RC's lawyer.[16]  At the time of his deposition, he believed it had been misplaced or mis-saved.  He informed RC that he would keep searching for it and produce whatever he could find.[17]  He also offered to re-run the simulation if needed to provide the underlying data to RC.[18]

RC deposed Mr. Buchner extensively about the parameters and results of his initial simulation.[19]  Mr. Buchner answered RC's questions about the simulation he

---

[13] *See* Ex. C, Buchner Initial Report, at 10.
[14] *Id.*
[15] *Id.* at 11.
[16] *See* Ex. E, 1/23/24 Buchner Dep., at 7:3-23.
[17] *Id.* at 6:2-19.
[18] *Id.* at 8:5-25.
[19] *See, e.g., id.* at 114:6-115:23; 127:20-128:6; 155:1-156:2; 178:12-179:2; 181:21-182:22.

performed, the assumptions underlying that simulation, and its impact on his opinions.

After his deposition, Mr. Buchner searched extensively for the underlying simulation data file and discovered it had been lost due to an unforeseen technical problem.[20]  The only data file he could find was corrupted and could not be opened.[21]  Although Mr. Buchner does not know precisely what happened to the original data file, he knows there was no available data that could be validated as the data from his original simulation.[22]

To fix the problem and provide a full dataset for RC to review and validate, Mr. Buchner re-ran his computer simulation.[23]  Mr. Buchner's re-run simulation was consistent with the methodology he testified to in his first deposition.[24]  On May 8, 2024, Plaintiffs produced Mr. Buchner's Amended Report containing a detailed explanation of his re-run simulation, along with the data from Mr. Buchner's re-run simulation.[25]

---

[20] *See* Ex. F, Buchner Amended Report, at 1; *see also* Ex. A, 7/11/24 Buchner Dep., at 7:17-8:20.
[21] *Id.* at 9:13-10:9.
[22] *Id.* at 11:20-23.
[23] *See* Ex. F, Buchner Amended Report, at 1 ("My intention was to produce the entire simulation, including raw data and all reports but because data was lost, we ran an amended simulation as spelled out below.").
[24] *Id.*
[25] *Id.*

Mr. Buchner made only two minor adjustments to the inputs in his re-run simulation. First, he updated the source of vehicle data for the Ford F-250 because he realized the HVE program had pre-loaded F-250 data.[26] The resulting change to the F-250's stiffness coefficient was a conservative assumption in RC's favor—applying a stiffer F-250 structure for the re-run simulation tends to *increase* the intrusion of the unlifted F-250 into the Escape (thereby slightly reducing the intrusion that Plaintiffs would attribute to the lift).[27] Second, he corrected a 0.35-inch discrepancy in the F-250's tire size that Mr. Grimes pointed out.[28]

Mr. Buchner did *not* change the lateral offset, vehicle weights, or braking between the two simulations—he inputted data consistent with his initial deposition testimony. Although he could not recover the inputs he put into the initial simulation, Mr. Buchner inputted the same lateral offset[29] and vehicle weights[30] he testified to in his first deposition. He also applied the same

---

[26] *Id.* at 2.

[27] *See* Ex. A, 7/11/24 Buchner Dep., at 62:15-64:13.

[28] *Id.* at 66:12-67:6.

[29] Although Mr. Buchner could not find documentation showing the lateral offset input he used in his initial simulation, he testified in his first deposition that he measured 12 inches of lateral offset in the subject collision. Mr. Buchner applied 12 inches of offset to his re-run simulation. *See* Ex. A, 7/11/24 Buchner Dep., at 85:22-87:5.

[30] Mr. Buchner testified that he adjusted the weights of the vehicles from the program's default settings, not that he adjusted the weights from his initial simulation. He matched the weight inputted into the re-run simulation to the weight calculations he testified to in his first deposition. *Id.* at 78:15-85:17.

conservative assumption from the first simulation that the F-250 did not apply the brakes before the crash.[31]  Despite RC's unexplained assertion that these variables "changed" between the two simulations,[32] they were entirely consistent with his earlier testimony.

The results of the re-run simulation were representative of the initial simulation.  Both simulated crashes showed almost exactly the same amount of crush into the rear of the Ford Escape.[33]  A graphical comparison between the amount of intrusion in the subject crash, initial simulation, and re-run simulation shows that the difference in bumper-level crush between the two simulations was less than 0.1 feet.[34]  The difference is so minuscule that the line showing the results of the first simulation (in blue) and the second simulation (in green) are largely merged together:

---

[31] *See* Ex. A, 7/11/24 Buchner Dep., at 162:14-163:6.
[32] *See* Doc. 119, at 7-8.
[33] *See* Ex. A, 7/11/2024 Buchner Dep., at 16:2-17:11.
[34] *See* Ex. F, Buchner Amended Report, at 4.



As a result, Mr. Buchner's re-run simulation did not change any of his opinions.[35]  His conclusions were the same as the conclusions he reached in his initial report and testified to in his first deposition.[36]  Nevertheless, Mr. Buchner attended a second deposition on July 11, 2024, where he answered every question from RC's counsel about the details of his re-run simulation.[37]

Plaintiffs' disclosure of Mr. Buchner's Amended Report and file materials gave RC's experts plenty of time to examine his re-run simulation data and prepare any rebuttal reports within the Court's deadline.  RC's experts had *over a month* to prepare any rebuttal to Mr. Buchner's re-run simulation.[38]  However, RC did not

---

[35] *Id.* at 5.
[36] *Id.*
[37] *See generally,* Ex. A, 7/11/24 Buchner Dep.
[38] Plaintiffs produced Mr. Buchner's Amended Report and re-run simulation data on May 8, 2024.  *See* Ex. F, Buchner Amended Report; *see also* Ex. G, 5/8/24 email T. Cannella to R. Hill (producing the Report and re-run simulation file

disclose any rebuttal reports from its experts before the Court's June 17, 2024 deadline.

Instead, RC disclosed Mr. Grimes' sur-rebuttal report on December 2, 2024—six months past the Court's deadline.[39]  The vast majority of the opinions Mr. Grimes included in that report had nothing to do with Mr. Buchner's re-run simulation—he mostly provided additional opinions about the crash test he helped design and orchestrate in May 2023.[40]  The portion of his report that addressed Mr. Buchner's re-run simulation offered the same criticism he had already provided in his initial report: that he believes it was improper for Mr. Buchner to use an HVE simulation *at all*.[41]

## III.    LEGAL STANDARD

Parties are permitted and required to supplement their expert disclosures "if the party learns that in some material respect the disclosure or response is incomplete or incorrect."  Fed. R. Civ. P. 26(e)(1)(A).  The duty to supplement

---

materials).  RC's rebuttal reports were not due until June 17, 2024.  *See* Doc. 76, at 2.

[39] *See* Ex. H, 11/26/24 Grimes Rebuttal Report.

[40] *Id.*

[41] *Compare* Ex. I, Grimes Initial Report, at 23 ("Mr. Buchner's use of HVE/SIMON/DyMesh to predict crush on the Escape in this case is improper and beyond the capabilities of the software.") *with* Ex. H, Grimes Rebuttal Report, at 24 ("These results show the SIMON tool is not accurately modeling the crush on the Ford Escape in this case.  Mr. Buchner's usage of the HVE/SIMON tool is invalid.").

disclosures "extends both to information included in the report and to information given during the expert's deposition."  Fed. R. Civ. P. 26(e)(2).

Supplemental reports are allowed for the purpose of "correcting inaccuracies or adding information that was not available at the time of the initial report." *Jouria v. CE Res., Inc.*, No. 15-61165-CIV, 2018 WL 11459496, at *2 (S.D. Fla. Apr. 18, 2018) (internal quotation omitted).  Parties have a duty to provide supplemental disclosures "by the time the party's pretrial disclosures under Rule 26(a)(3) are due."  Fed. R. Civ. P. 26(e)(2).  Pretrial disclosures must be made "at least 30 days before trial."  Fed. R. Civ. P. 26(a)(3)(B); *see also* LR 26.1(C) ("The duties of a party to supplement and amend prior initial, expert or pretrial disclosures are set forth in Fed. R. Civ. P. 26(e).").[42]  But disclosures can only be supplemented that late if they are truly "supplemental" under the rules, i.e., they correct errors in the original report that couldn't have been corrected earlier.[43]

Additionally, even untimely supplemental disclosures are permitted as long as the untimely disclosure is "substantially justified or is harmless."  Fed. R. Civ.

---

[42] RC's brief conflates the deadline for initial expert disclosures under Rule 26(a)(2) with pretrial disclosures under Rule 26(a)(3).  Of course, if all supplemental expert opinions were required before the initial expert disclosure date, supplemental disclosures would never be possible.

[43] Unlike Mr. Buchner's supplemental disclosure, which served the appropriate purpose under Rule 26(e) to remedy an error, Mr. Grimes' "supplemental" disclosure contains entirely new opinions and therefore is not an appropriate "supplement" under Rule 26(e).  *See* Doc. 116.

P. 37(c)(1); *see also Kondragunta v. Ace Doran Hauling & Rigging Co.*, 2013 WL 1189493, at *7 (N.D. Ga. 2013), *abrogated on other grounds by Cedant v. United States*, 75 F.4th 1314 (11th Cir. 2023).  The test for substantial justification "is satisfied if there exists a genuine dispute concerning compliance." *KW Plastics v. U.S. Can Co.*, 199 F.R.D. 687, 690 (M.D. Ala. 2000).  Additionally, an untimely supplemental disclosure must be permitted as harmless whenever "there is no prejudice to the party entitled to the disclosure." *Caviness v. Holland*, No. CV 109-098, 2011 WL 13160390, at *2 (S.D. Ga. Mar. 17, 2011).

## IV.    ARGUMENT

Mr. Buchner's Amended Report serves the exact purpose permitted by Rule 26(e)—"correcting inaccuracies or adding information that was not available at the time of the initial report." *Companhia Energetica Potiguar v. Caterpillar Inc.*, No. 14-CV-24277, 2016 WL 3102225, at *6 (S.D. Fla. 2016).  By re-running his computer simulation to create the data lost by a technical malfunction, Mr. Buchner made it *easier* for RC to inquire into his methodology.  Because Mr. Buchner's disclosure was permissible, substantially justified, and did not prejudice RC, the Court should deny RC's motion to exclude it.

### A.    Mr. Buchner's Amended Report was a permissible supplemental report under Rule 26(e).

The Federal rules explicitly authorize parties to do what Plaintiffs did here—supplement an expert disclosure they discover was "incomplete or incorrect."  Fed.

R. Civ. P. 26(e).  Because Mr. Buchner's Amended Report falls under the narrow

purpose of "allow[ing] a party to correct mistakes or unavoidable omissions[,]" the

Court should not exclude it.  *SD3, LLC v. Rea*, 71 F.Supp.3d 189, 194 (D.D.C.

2014).

Mr. Buchner's Amended Report is a *true* supplemental disclosure.  The re-

run simulation did not change Mr. Buchner's analysis or conclusions—he

specifically crafted his re-run simulation to remain consistent with the

measurements he had testified to in his deposition.[44]  With only minor exceptions,

the methodology and results of Mr. Buchner's initial and re-run simulations were

identical.[45]  Mr. Buchner's Amended Report solely sought to correct the

inadvertent deletion of the underlying data from his initial simulation; that is the

exact permissible purpose of a supplemental disclosure.  *See, e.g., Perrigo Co. v.

Merial Ltd.*, No. 1:15-CV-03674-SCJ, 2018 WL 11350563, at *6 (N.D. Ga. Apr.

30, 2018) (permitting a supplemental report where an expert corrected their

estimate by replacing an incorrect dataset); *In re Disposable Contact Lens

AntiTrust Litig.*, No. 3:15-MD-2626-J-20JRK, 2020 WL 13890156, at *3 (M.D.

Fla. Dec. 29, 2020) ("The undersigned finds, however, that the Williams Errata is

more akin to a supplement under Rule 26(e) in that it corrects that data considered

---

[44] *See* Ex. F, Buchner Amended Report, at 5.
[45] *Id.*

by Dr. Williams in forming his opinions, and it revises the opinions using the correct data.").

Additionally, Mr. Buchner's Amended Report was timely. The Rules allow parties to provide supplemental disclosures "by the time the party's pretrial disclosures under Rule 26(a)(3) are due." Fed. R. Civ. P. 26(e)(2). Those disclosures, in turn, are required "at least 30 days before trial." Fed. R. Civ. P. 26(a)(3)(B). Plaintiffs produced Mr. Buchner's Amended Report on May 8, 2024, well in advance of any deadline for pretrial disclosures.

RC's own cases show precisely why Mr. Buchner's Amended Report did not "abuse" Rule 26(e)—each of those cases involves an expert engaging in entirely new work to create or bolster opinions. *See, e.g.*, *Coward*, 282 F. Supp. 3d at 1329 (expert created new opinions based on new documents); *Cochran v. Brinkmann Corp.*, No. 1:08-CV-1790-WSD, 2009 WL 4823858, *5 (N.D. Ga. Dec. 9, 2009) (expert sought to rely on new testing). Unlike in those cases, Mr. Buchner's Amended Report remedied a technological issue by re-creating the underlying data from a simulation he already testified to. Mr. Buchner did not change any of his opinions—he inputted data in his simulation software to allow both parties to verify his results. That comes nowhere near the impermissible use of "engag[ing] in additional work to perfect a litigation strategy." *Cochran*, 2009 WL 4823858, at *5.

Mr. Buchner's Amended Report was a proper and timely supplemental disclosure.  The Court should deny RC's motion to exclude it for that reason alone.

**B.    Any alleged delay in Mr. Buchner's Amended Report was substantially justified and harmless.**

The Court can preclude the use of untimely disclosures "unless the failure was substantially justified *or* harmless."  Fed. R. Civ. P. 37(c)(1) (emphasis added).  In addition to serving the exact permitted purpose for supplemental disclosures, Mr. Buchner's Amended Report was both.

Mr. Buchner's need to issue a supplemental disclosure was substantially justified.  In the context of expert disclosures, "[s]ubstantially justified means that reasonable people could differ as to the appropriateness of the contested action." *Dobbs v. Allstate Indem. Co.*, No. 21-13813, 2022 WL 1686910, at *2 (11th Cir. 2022).  Mr. Buchner's conduct comfortably meets that standard—the problem necessitating his Amended Report was a technological issue leading to a loss of the data from his initial simulations.  That is precisely the sort of "substantial justification" envisioned by the rules—Mr. Buchner's Amended Report was necessary to cure a loss of information that occurred through no fault of his own.

Mr. Buchner's Amended Report was also harmless.  RC suffered no surprise from Mr. Buchner's supplemental disclosure—it had already deposed Mr. Buchner extensively about the methodology and results of his initial simulation.  RC deposed Mr. Buchner *again* after he produced the re-run simulation, and Mr.

Buchner answered all of RC's questions about the methodology and results of his re-run simulation.  Even standing alone, RC's ability to depose Mr. Buchner *twice* about his initial and re-run simulations within the discovery period shows it was not prejudiced.  *See Blacklick Hotspot Corp. v. Mansfield Oil Co. of Gainesville, Inc.*, No. 2:21-CV-214-RWS, 2023 WL 6373897, at *4 (N.D. Ga. Aug. 14, 2023) ("With regard to the harmlessness inquiry, courts often look to whether the non-disclosing party has been unable to prepare its case by deposing the witness during the discovery period.") (citation omitted) (Story, J.).[46]

RC was not only unprejudiced by Mr. Buchner's Amended Report—it actually ***helped*** RC's experts fully inquire into his opinions.  Mr. Buchner created a re-run simulation for RC's benefit to "produce the entire simulation, including all raw data and all reports" for RC's review and validation.[47]  RC cannot claim Mr. Buchner's re-run simulation caused harm when its purpose was to *cure* any harm by allowing RC to fully understand Mr. Buchner's simulation.

Courts consider several factors when determining whether an alleged failure to disclose is harmless, including: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of

---

[46] Unlike Mr. Buchner's Amended Report, Mr. Grimes' belated sur-rebuttal report was produced six months *after* the Court's expert discovery deadline.
[47] *See* Ex. F, Amended Report, at 1.

the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." *Riley v. Lake City Nursing & Rehab. Ctr., LLC*, No. 1:20-CV-04986-VMC, 2023 WL 3627889, at *5 (N.D. Ga. Mar. 7, 2023).  Each factor supports denial of RC's motion.  RC suffered no surprise due to Mr. Buchner's Amended Report because opinions did not change.[48]  Additionally, any alleged surprise has *already* been cured—Mr. Buchner produced his Amended Report and supporting materials in time for RC's rebuttal disclosure deadline and answered extensive questioning from RC's counsel about the Amended Report during a *second* deposition.[49]  RC cannot identify any disruption to the trial—Mr. Buchner produced his Amended Report and sat for his second deposition during the Court's expert discovery period.  The evidence ***is*** important because it is a portion of Mr. Buchner's methodology supporting his causation opinions.  Finally, the explanation of the alleged delay is a well-supported need to cure an unforeseen technological problem.

RC's sole attempt to identify any harm caused by Mr. Buchner's Amended Report fails.  Despite RC's unexplained claim to the contrary,[50] Mr. Buchner disclosed his Amended Report well before RC's deadline to issue rebuttal

---

[48] *See* Ex. F, Buchner Amended Report, at 5.
[49] *See* Doc. 119-6.
[50] *See* Doc. 119 at 13 ("Rough Country […] was unable to present counter-expert testimony in response until Mr. Grimes issued his subsequent report.").

reports.[51]  Mr. Grimes—and his team of eight support engineers working on this

case[52]—had over a month to review Mr. Buchner's re-run simulation data and

issue rebuttal opinions.  RC's failure to produce Mr. Grimes' untimely rebuttal

report until *seven months later*, and six months after the Court's deadline, was no

fault of Mr. Buchner's.

     RC cannot credibly point to Mr. Grimes's tardiness as evidence of prejudice

for yet another reason—Mr. Grimes's rebuttal report focused almost entirely on

new opinions that had nothing to do with the simulation in Mr. Buchner's

Amended Report.[53]  The portion of Mr. Grimes' belated rebuttal report that

addressed Mr. Buchner's simulation offered the same criticism he had already

provided in his initial report: that it was improper for Mr. Buchner to use an HVE

simulation *at all*.[54]

---

[51] Plaintiffs produced Mr. Buchner's Amended Report and all associated file
materials on May 8, 2024.  *See* Ex. F, Buchner Amended Report.  RC's deadline to
disclose rebuttal reports was June 17, 2024.  *See* Doc. 76.

[52] Mr. Grimes has a team of 16 support staff, including 8 support engineers,
working on this case.  *See* Ex. J, Grimes Dep., at 52:7-22.

[53] *See* Ex. H, Grimes Rebuttal Report.

[54] *Compare* Ex. I, Grimes Initial Report, at 23 ("Mr. Buchner's use of
HVE/SIMON/DyMesh to predict crush on the Escape in this case is improper and
beyond the capabilities of the software.") *with* Ex. H, Grimes Rebuttal Report, at
24 ("These results show the SIMON tool is not accurately modeling the crush on
the Ford Escape in this case. Mr. Buchner's usage of the HVE/SIMON tool is
invalid.").

Excluding evidence under Rule 37(c)(1) is an extreme and heavy sanction reserved for belated disclosures that cause significant prejudice. *See Bloch v. Beard Marine Air Conditioning & Refrigeration, Inc.*, No. 18-61821, 2019 WL 6468858, at *5 (S.D. Fla. Nov. 7, 2019) ("When evaluating whether to impose the extreme sanction of excluding evidence courts look to whether the alleged failure to comply with Rule 26 was harmless."); *Black Card, LLC v. Visa USA Inc.*, No. 15-CV-27-S, 2020 WL 13328679, at *5 (D. Wyo. Aug. 13, 2020) (explaining that "striking of the supplemental expert reports is a heavy sanction"). Here, that sanction is unwarranted because Mr. Buchner's Amended Report was substantially justified and did not harm Rough Country.

## V.    CONCLUSION

Mr. Buchner's Amended Report served the exact purpose permitted by the Federal Rules—to correct a technical malfunction that resulted in the loss of underlying data from his first simulation. Because Mr. Buchner's Amended Report was a proper supplemental report and RC did not suffer any prejudice, the Court should deny RC's motion.

Respectfully submitted on February 12, 2025,

CANNELLA SNYDER LLC

*/s/ Tedra L. Cannella*
TEDRA L. CANNELLA
 Georgia Bar No. 881085
 tedra@cannellasnyder.com

20

ROBERT H. SNYDER, JR.
  Georgia Bar No. 404522
  rob@cannellasnyder.com
DEVIN L. MASHMAN
  Georgia Bar No. 257588
  devin@cannellasnyder.com

315 W. Ponce de Leon Ave.
Suite 885
Decatur, GA 30030
(404) 800-4828
(404) 393-0365 (fax)
***Attorneys for Plaintiffs***

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rules 5.1(B) and 7.1(D), I hereby certify that the

foregoing filing complies with the applicable font and size requirements and is

formatted in 14-point Times New Roman font.

CANNELLA SNYDER LLC

*/s/ Tedra L. Cannella*

TEDRA L. CANNELLA
  Georgia Bar No. 881085
  tedra@cannellasnyder.com
ROBERT H. SNYDER, JR.
  Georgia Bar No. 404522
  rob@cannellasnyder.com
DEVIN L. MASHMAN
  Georgia Bar No. 257588
  devin@cannellasnyder.com

315 W. Ponce de Leon Ave.
Suite 885
Decatur, GA 30030
(404) 800-4828
(404) 393-0365 (fax)

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing *PLAINTIFFS' RESPONSE TO DEFENDANT ROUGH COUNTRY LLC'S MOTION TO STRIKE AMENDED REPORT AND RELATION SIMULATIONS BY G. BRYANT BUCHNER* was electronically filed with the Clerk of Court via CM/ECF, which will automatically serve the following attorneys of record:

Richard H. Hill
Claire C. Murray
Lindsay G. Ferguson
Aaron B. Chausmer
3344 Peachtree Road, N.E.
Suite 2400
Atlanta, GA 30326
rhill@wwhgd.com
cmurray@wwhgd.com
lferguson@wwhgd.com
achausmer@wwhgd.com

This 12th day of February, 2025.

CANNELLA SNYDER LLC

*/s/ Tedra L. Cannella*
Tedra L. Cannella
Georgia Bar No. 881085
*Attorney for Plaintiffs*