# EXHIBIT B

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | | |
|---|---|---|
| Santana Bryson and Joshua Bryson, as Administrators of the Estate of C.Z.B., and as surviving parents of C.Z.B., a deceased minor, | * * * * * | |
| Plaintiffs, | * * | |
| v. | * * | Civil Action File |
| Rough Country, LLC | * * | No. 2:22-cv-17-RWS |
| Defendant. | * * | |

## SUPPLEMENT TO PLAINTIFFS' INITIAL DISCLOSURES

Pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure and Local Rule 26.1 (N.D. Ga.), Plaintiffs supplement their Initial Disclosures as follows:

**Initial Disclosure No. 1:** State precisely the classification of the cause of action being filed, a brief factual outline of the case including plaintiff's contentions as to what defendant did or failed to do, and a succinct statement of the legal issues in the case.

**Response to Disclosure No. 1:**

This is a products liability case against Rough Country LLC for the defective design of its lift kit used on the 2016 Ford F250 truck that struck the Brysons' car.

On the night of Sunday, March 15, 2020, Santana Bryson (driving, belted) and Joshua Bryson (front passenger, belted) were traveling west on Ga-2/US-76 in Fannin County, with their two-year-old son C.Z.B., who was restrained in a forward-facing child seat behind Ms. Bryson. The Brysons were on their way home from a birthday party for an elderly family member. At roughly 11:15 p.m., while sitting at a stoplight at a complete stop, their 2008 Ford Escape was rear-ended by Hunter Elliott in his 2016 Ford F250.

A Rough Country lift raised Elliot's Ford F250 approximately six inches above the factory recommendation.  As a result, when the F250 hit the Brysons' vehicle, the frame rails of the F250 bypassed the structural frame and crash protection of the Brysons' Ford Escape causing excessive intrusion into the occupant compartment where C.Z.B. was buckled into his car seat.

The impact barely damaged the lifted Ford F250.  But the damage to the Brysons' vehicle, and particularly to the second row where C.Z.B. sat, was devastating.  Even though the Brysons had properly secured C.Z.B. in a child seat, he was killed in the collision.  Joshua and Santana both survived the collision.

Georgia's Specialized Collision Reconstruction Team investigated the collision and concluded Elliott was at fault. Elliott pleaded guilty to a long list of criminal charges and is serving a prison sentence for his actions.  Although Elliott caused the collision, Rough Country caused C.Z.B.'s death because it designed,

assembled, and manufactured a suspension lift that caused the F250 to strike the Brysons' Ford Escape above the frame rails and thus to bypass the Escape's crash protection capacity. The resulting intrusion into the occupant compartment caused C.Z.B.'s death.

Rough Country knew from other similar incidents, from its own work designing the lift kit, and from basic engineering principles that the lift kit was defective and dangerous in its foreseeable use. In addition to being liable for its negligent design of the lift kit, Rough Country is also strictly liable for selling a defective product, and its conscious indifference to the foreseeable result of selling the lift kit—major injuries and death—warrant the imposition of punitive damages.

The legal issues in the case are liability, causation, and damages.

**Initial Disclosure No. 2:** Describe in detail all statutes, codes, regulations, legal principles, standards and customs or usages, and illustrative case law which plaintiff contends are applicable to this action.

**Response to Disclosure No. 2:** Applicable law includes, but is not limited to, general negligence principles; the Restatement (Second) of Torts § 395 and § 402(a); strict liability principles; Georgia products liability law including O.C.G.A. § 51-1-11; Georgia punitive damages law including O.C.G.A. § 51-12-5.1; Georgia wrongful death law including O.C.G.A. §§ 51-4-2 and 51-4-5; and O.C.G.A. § 40-8-6.

3

**Initial Disclosure No. 3:** Provide the name and, if known, the address and telephone number of each individual likely to have discoverable information that you may use to support your claims or defenses, unless solely for impeachment, identifying the subjects of the information. (Attach witness list to Initial Disclosures as Attachment A.)

**Response to Disclosure No. 3:** *See* Plaintiffs' initial witness list attached as Attachment A.

**Initial Disclosure No. 4:** Provide the name of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence. For all experts described in Fed. R. Civ. P. 26(a)(2)(B), provide a separate written report satisfying the provisions of that rule. (Attach expert witness list and written reports to Initial Disclosures as Attachment B).

**Response to Disclosure No. 4:** At this time, Plaintiffs have not yet determined who they will call as a testifying expert(s). Plaintiffs will supplement this response as required by the Federal Rules.

**Supplemental Response to Disclosure No. 4:** See Plaintiffs' expert list attached as First Supplemental Attachment B, and the other information that has been made known during the discovery process or in writing.

**Initial Disclosure No. 5:** Provide a copy of, or a description by category and location of, all documents, data compilations, and tangible things in your

possession, custody, or control that you may use to support your claims or defenses unless solely for impeachment, identifying the subjects of the information. (Attach document list and descriptions to Initial Disclosures as Attachment C).

**Response to Disclosure No. 5:** *See* Plaintiffs' initial document list attached as Attachment C. The documents listed are being produced with these disclosures.

**Initial Disclosure No. 6:** In the space provided below, provide a computation of any category of damages claimed by you. In addition, include a copy of, or describe by category and location of, the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of injuries suffered, making such documents or evidentiary material available for inspection and copying as under Fed. R. Civ. P. 34. (Attach any copies and descriptions to Initial Disclosures as Attachment D).

**Response to Disclosure No. 6:** Plaintiffs, as Parents of and Administrators of the Estate of C.Z.B, deceased, seek all economic and noneconomic damages allowed by law, including the shock, fright and terror C.Z.B experienced from the time of the incident up and until his death; mental and physical pain and suffering endured by C.Z.B, the measure of which is the enlightened conscience of a fair and impartial jury; medical bills, funeral and burial expenses; the full value of C.Z.B.'s life; and punitive damages.

Documents containing information about punitive damages include documents showing Rough Country's knowledge of the harm and its conscious indifference for the value of human life; those documents are in Rough Country's possession, custody, or control.  Documents relating to Plaintiffs' compensatory damages that are currently in Plaintiffs' possession are identified in Attachment C.

**Supplemental Response to Disclosure No. 6:**  See the documents listed on Attachment D supporting Plaintiffs' claims for special damages.

**Initial Disclosure No. 7:**  Attached for inspection and copying as under Fed. R. Civ. P. 34 any insurance agreement under which any person carrying on an insurance business may be liable to satisfy all or part of a judgment which may be entered in this action or to indemnify or reimburse for payments made to satisfy the judgment.  (Attach copy of insurance agreement to Initial Disclosures as Attachment E).

**Response to Disclosure No. 7:**  Plaintiffs purchased car insurance through Progressive.  The striking driver Elliot also had insurance through Progressive.  The declaration pages for those two policies are attached as Ex. E.  Plaintiffs are unaware of the defendant's insurance coverage.

**Initial Disclosures No. 8:**  Disclose the full name, address, and telephone number of all persons or legal entities who have a subrogation interest in the cause

of action set forth in plaintiff's cause of action and state the basis and extent of such interest.

**Response to Disclosure No. 8:** None.

Respectfully submitted on October 16, 2023.

                          CANNELLA SNYDER LLC

                          */s/ Tedra L. Cannella*
                          TEDRA L. CANNELLA
                            Georgia Bar No. 881085
                            tedra@cannellasnyder.com
                          ROBERT H. SNYDER, JR.
                            Georgia Bar No. 404522
                            rob@cannellasnyder.com
                          DEVIN L. MASHMAN
                            Georgia Bar No. 257588
                            devin@cannellasnyder.com

                          315 W. Ponce de Leon Ave.
                          Suite 885
                          Decatur, GA 30030
                          (404) 800-4828
                          (404) 393-0365 (fax)

                          ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rules 5.1(B) and 7.1(D), I hereby certify that the foregoing filing complies with the applicable font and size requirements and is formatted in 14-point Times New Roman font.

                                                CANNELLA SNYDER LLC

                                                */s/ Tedra L. Cannella*
                                                TEDRA L. CANNELLA
                                                  Georgia Bar No. 881085
                                                  tedra@cannellasnyder.com
                                                ROBERT H. SNYDER, JR.
                                                  Georgia Bar No. 404522
                                                  rob@cannellasnyder.com
                                                DEVIN L. MASHMAN
                                                  Georgia Bar No. 257588
                                                  devin@cannellasnyder.com
                                                315 W. Ponce de Leon Ave.
                                                Suite 885
                                                Decatur, GA 30030
                                                (404) 800-4828
                                                (404) 393-0365 (fax)

## CERTIFICATE OF SERVICE

This is to certify that on October 16, 2023, I electronically served filed the foregoing document on the following attorneys:

Richard H Hill
rhill@wwhgd.com
Claire C. Murray
cmurray@wwhgd.com
Weinberg, Wheeler, Hudgins, Gunn & Dial, LLC
3344 Peachtree Road, N.E.,
Suite 2400
Atlanta, GA 30326

CANNELLA SNYDER LLC

*/s/ Tedra L. Cannella*
TEDRA L. CANNELLA
  Georgia Bar No. 881085
  tedra@cannellasnyder.com
ROBERT H. SNYDER, JR.
  Georgia Bar No. 404522
  rob@cannellasnyder.com
DEVIN L. MASHMAN
  Georgia Bar No. 257588
  devin@cannellasnyder.com
315 W. Ponce de Leon Ave.
Suite 885
Decatur, GA 30030
(404) 800-4828
(404) 393-0365 (fax)

# PLAINTIFF'S SUPPLEMENT AND ATTACHMENT B: EXPERT LIST

**(B)   The name of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence. For all experts described in Fed. R. Civ. P. 26(a)(2)(B), provide a separate written report satisfying the provisions of that rule.**

Plaintiffs provide the following list of experts they may call at trial:

**G. Bryant Buchner, P.E.**
**Quest Engineering & Failure Analysis, Inc.**
**1937 Raymond Diehl Road**
**Tallahassee, FL 32308**

Mr. Buchner is a professional engineer and an expert in the fields of accident reconstruction, engineering, and vehicle dynamics. Mr. Buchner is expected to testify as to the accident reconstruction of the collision in this case, including the speed, forces, movements, and interactions of the vehicles. Mr. Buchner will explain the dynamics of the vehicles during the crash, including the extent to which the F-250 intruded into the Escape during the crash. Mr. Buchner will explain the effect that the lift had on the crash dynamics, and testify about how the crash would have been different if the bumper structures of the vehicle had engaged. Mr. Buchner bases his testimony on his inspection of the subject vehicles and car seat; his inspection and scans of exemplar vehicles, lift kits, and car seat; his inspection of the wreck scene; the download of the F-250's black box; photographs of the vehicles and of the scene; witness statements; police reports

and investigation file; computer simulations; depositions taken in this case; vehicle specifications; documents produced in this case; the laws of physics; and his education, experience and training.

As additional information becomes available in this case, Mr. Buchner will review that information and update his opinions if necessary. Mr. Buchner will provide his file at his deposition scheduled for October 26, 2023. Plaintiffs refer Defendant to Mr. Buchner's expert report, which summarizes his opinions, qualifications, and includes his CV, testimony list, and a statement of compensation at BRYSON 001350 – 1386.

**Christopher D. Roche**
**Mechanical/Automotive Engineer**
**Robson Forensic**
**354 North Prince Street**
**Lancaster, PA 17603**

Mr. Roche is an expert in the fields of automotive engineering, vehicle structural design, and crashworthiness. Mr. Roche is expected to testify about the principles of crashworthiness and occupant protection, primary and secondary energy absorption systems, and the standard of care for engineers when altering vehicle ride height. He is expected to testify that Rough Country's lift kit created an unreasonable risk of injury and/or death in foreseeable collisions by causing excessive override and intrusion. Mr. Roche is further expected to testify that this unreasonable danger was known or should have been known to Rough Country;

that Rough Country's design process was inadequate; that this was a foreseeable hazard for a lift kit manufacturer; and that safer, feasible, alternative designs existed at the time the subject lift kit was manufactured that would have preserved the utility of the design and resulted in significantly less risk of injury and/or death due in foreseeable collisions.

Mr. Roche's testimony is based on inspections of the subject vehicles; his inspection of exemplar vehicles and parts; his review of documents produced in discovery and discovery responses; photographs of the vehicles and of the scene; alternative feasible design options for the subject lift kit; police reports and investigation file; his previous experience in crash protection; depositions taken in this case; specifications; the opinions of other experts in this case; his education, experience, and training; scientific and other literature; and methods generally accepted in the field of automotive safety, automotive design, and crash protection.

As additional information becomes available in this case, Mr. Roche will review that information and update his opinions if necessary. Mr. Roche will provide his file at his deposition scheduled for November 15, 2023. Plaintiffs refer Defendant to Mr. Roche's expert report, which contains a more detailed explanation of his opinions and how he arrived at them, the description of his background and qualifications in his CV, testimony list, and a statement of compensation at BRYSON 001387 – 1423.

**Paul Lewis, Jr., M.S., BME**
**Bioforensic Consulting, Inc.**
**867 Mimosa Blvd.**
**Roswell, GA 30075**

Mr. Lewis is an expert in the fields of biomechanics, injury causation, prevention and control, and occupant kinematics in motor vehicle collisions. Mr. Lewis is expected to testify about the biomechanics and occupant kinematics in this case. Specifically, Mr. Lewis will discuss the biomechanics of the occupants inside the Escape, with a primary focus on C.Z.B. He will discuss their movements, the forces on their bodies, the types of injuries that those forces cause, and the relationship of those injuries to the crash intrusion into the occupant compartment. Mr. Lewis is also expected to testify that the forces C.Z.B. would have experienced—if the bumper structures would have engaged—were survivable.

Mr. Lewis's testimony is based on an inspection of the subject vehicles; his inspection of an exemplar Escape and car seat; surrogate testing; his review of documents produced in discovery and discovery responses; photographs of the vehicles and of the scene; police reports and investigations; his previous experience in studying biomechanics in real-world wrecks; depositions taken in this case; the opinions of other experts in this case; his education, experience, and training; scientific and other literature; and methods generally accepted in the field of biomechanics.

Mr. Lewis will provide his file at his deposition scheduled for November 29, 2023. Plaintiffs also refer to Mr. Lewis's report, which contains a more detailed explanation of his opinions and how he arrived at them, the description of his background and qualifications in his CV, testimony list, and a statement of compensation at BRYSON 001424 – 1484.

**Jonathan Eisenstat, M.D.**
**3121 Panthersville Road**
**Decatur, GA 30034**

Dr. Eisenstat is a medical doctor, and he was the chief medical examiner for the Georgia Bureau of Investigations (GBI). He is an expert in fields of medicine and forensic pathology. Dr. Eisenstat is expected to testify about C.Z.B.'s injuries and cause of death. Dr. Eisenstat is also expected to testify about the facts and opinions identified in the autopsy he performed. Dr. Eisenstat's testimony is based on his review of the investigator's report and his personal examination of C.Z.B.'s body, and his education, training, knowledge, and experience as a medical doctor and medical examiner.

No expert report under Rule 26 is produced because Dr. Eisenstat is not a retained expert in this case; he is a fact witness with expert opinions as a result of performing C.Z.B.'s autopsy in his capacity as Chief Medical Examiner for the GBI.

**Police**

Several police officers who responded to the subject fatal accident have significant factual information, some of which is of a technical nature. Based on their training, education, experience, and investigation, these police officers may be called to give expert opinion testimony related to this case. No expert reports under Rule 26 are produced because these experts are fact witnesses who may have expert opinions as a result of their involvement in the crash investigation. They are not experts Plaintiffs have retained in the case.