# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### GAINESVILLE DIVISION

| | |
|---|---|
| SANTANA BRYSON and JOSHUA BRYSON, as Administrators of the Estate of C.Z.B., and as surviving parents of a deceased minor, C.Z.B., <br><br> Plaintiffs, <br><br> v. <br><br> ROUGH COUNTRY, LLC, <br><br> Defendant. | Civil Action No. <br><br> 2:22-CV-17-RWS |

## DEFENDANT ROUGH COUNTRY'S RESPONSE TO PLAINTIFFS' MOTION TO STRIKE THE UNTIMELY AND IMPROPER <u>SUR-REBUTTAL REPORT OF WESLEY GRIMES</u>

In their Motion to Strike the Untimely the Untimely and Improper Sur-Rebuttal Report of Wesley Grimes ("<u>the Motion</u>") (Doc. 116), Plaintiffs make two arguments. They first argue that Mr. Grimes's Supplemental Report, dated November 26, 2024 ("<u>the Grimes Report</u>") was untimely.[1] This argument is erroneous, as demonstrated by Plaintiffs' own conduct, and should be overruled.

---

[1] A copy of the Grimes Report was previously filed with the Court at Doc. 116-4.

Second, Plaintiffs contend that the Grimes Report is an improper sur-rebuttal report. Again, this argument fails and should be rejected by the Court.

But even if the Court accepts Plaintiffs' arguments, it should not strike the Grimes Report. The Grimes Report was prompted by Plaintiffs' own misconduct and delays. As a result, Rough Country's conduct was neither so severe nor done in bad faith so as to warrant the striking of the Grimes Report. Moreover, Plaintiffs requested additional discovery related to the Grimes Report, and Rough Country has already consented to it. [Doc. 120 at 3 (in parties' proposed Pretrial Order, Rough Country "consent[ed] to additional discovery by Plaintiffs related to" the Grimes Report).] Any issues that Plaintiffs have with the Grimes Report can be resolved through this additional discovery.

I.  STATEMENT OF PERTINENT FACTS

To properly consider the Motion, it is critical that it be placed into its proper context. Plaintiffs' primary expert regarding the collision at issue is G. Bryant Buchner, P.E. Based on computer (HVE) simulations that he modeled, Mr. Buchner opined that the an unlifted truck would not cause the same amount of "crush" as a lifted truck.[2] In response, Rough Country designated Mr. Grimes as its primary

---

[2] Mr. Buchner's HVE simulation-based opinion served as a foundational basis for another of Plaintiffs' experts, Paul Lewis, to opine that Rough Country's lift kit caused the death of C.Z.B.

expert regarding the collision at issue. Relying on a real-life crash test ("the Crash Test"), Mr. Grimes countered that the "crush" to Plaintiffs' 2008 Ford Escape would have been substantially similar whether Hunter Elliott's 2016 Ford F-250 truck was lifted or equipped with a stock suspension (*i.e.*, unlifted).

### A. Mr. Buchner's Initial Report was Admittedly Deficient and Was Followed By an Amended Report

Mr. Buchner issued an initial expert report on October 16, 2023 that was based on certain computer (HVE) simulations.[3] According to Mr. Buchner, his initial HVE simulations show that an unlifted F-250 truck would have significantly less "crush" than a lifted F-250 truck when it impacted an Escape.

But Mr. Buchner did not preserve the electronic data or all of the reports related to his initial HVE simulations.[4] As a result, Mr. Buchner was forced to run an entirely new set of HVE simulations, with different variables, and he issued an amended report on May 8, 2024; *this was seven months after the deadline for Plaintiffs to disclose their experts and their opinions, five months after his deposition, more than a month after Mr. Grimes issued his report in response to Mr.*

---

[3] A copy of the Mr. Buchner's initial report was previously filed with the Court at Docs. 103-3 and 119-1.

[4] The issues with Mr. Buchner's initial report at addressed in-depth in Rough Country's Motion to Strike Untimely Amended Report and Related Simulations by G. Bryant Buchner (Doc. 119), and specifically at pages 3 through 6, and Rough Country incorporates the same herein by reference.

*Buchner's initial report, and the day before Plaintiffs deposed Mr. Grimes.*[5] Plaintiffs and Mr. Buchner then *waited another month* to produce the digital HVE case files, dated June 19, 2024, for Mr. Buchner's amended HVE simulations to Rough Country and Mr. Grimes. Thus, Rough Country and Mr. Grimes did not receive the HVE case files necessary to properly respond to Mr. Buchner's opinion until eight months later.

Without a doubt, any delay or inaccuracies in the HVE simulation data provided by Plaintiffs to Rough Country materially impacted Rough Country and Mr. Grimes's ability to properly consider and respond to Mr. Buchner's opinions.

B. Rough Country Conducted A Live Crash Test That Was Disclosed in Connection with Rough Country's Expert Disclosures

Separately, as part of their defense of the case, Rough Country's experts chose to conduct an actual, non-simulated Crash Test during which an unlifted 2016 Ford F-250 was physically crashed into the rear of a 2008 Ford Escape. The outcome of the Crash Test was brutal, and it showed the Escape suffering a massive amount of damage and "crush."[6] Rough Country disclosed the Crash Test to Plaintiff on March

---

[5] *See e.g.,* Doc. 119, at pages 6-9, which are incorporated herein by reference.

[6] Rough Country has tendered a flash drive containing the video of the Crash Test to the Clerk of Court so that the Court can review the video itself. (Doc. 123.) The report related to the Crash Test, complete with extensive photographs, was previously filed with the Court at Docs. 115-7 and 115-8.

29, 2024, at the same time that it disclosed Mr. Grimes's initial report, and prior to Rough Country's expert report disclosure deadline.

Three months after Mr. Grimes's initial report and one month after Mr. Buchner issued his amended report, Plaintiffs had a deadline of June 17, 2024 to disclose their rebuttal experts in response to Rough Country's experts. At this time, and for the first time, Plaintiffs' experts expressed their opinions and criticisms of the Crash Test. Plaintiffs' experts were then deposed in July, 2024.

C. The Grimes Report at Issue in the Motion

Mr. Grimes then issued the Grimes Report, five months later.[7] In the Grimes Report, Mr. Grimes did two things:

First, Mr. Grimes responded to the amended HVE simulations that Mr. Buchner disclosed in his May 8, 2024 amended report, but which were not actually produced to Rough Country until after June 19, 2024. This was Mr. Grimes' first full opportunity to respond to Mr. Buchner's HVE simulations because, as noted in Mr. Grimes's initial report, in order for Rough Country "[t]o make a full evaluation of [Mr. Buchner's initial] simulation [in his initial report], the HVE file, vehicle geometries, and any site images and geometries [would] be required." [Doc. 119-3 (Grimes's initial report), at 24.] The "separate 'new' HVE case file, dated June 19,

_____

[7] Rough Country's counsel produced the Grimes Report to Plaintiffs' counsel as soon as they received it from Mr. Grimes.

2024," produced by Plaintiffs "was the file [that Mr. Grimes] utilized in [his] analysis of [Mr. Buchner's] HVE work." [Doc. 116-4 (Grimes Report), at 4.] As Mr. Grimes explained:

> Mr. Buchner failed to produce his HVE case file prior to his deposition in January 2024. He apparently did not preserve the computer file and thus only produced some printouts that had been saved. *MSSC attempted to reproduce Mr. Buchner's HVE materials using his printouts, but we were unable to verify his HVE runs.* Later, Mr. Buchner produced a separate 'new' HVE case file, dated June 19, 2024, and *this is the file we utilized in our analysis of his HVE work.*

[*Id.* (italics added).] Mr. Buchner admits that, without the underlying HVE materials from his initial simulations, any attempt by Mr. Grimes or Rough Country to recreate or test his initial simulations was "not going to be as accurate as they need to be so that what's in [his initial] report would be precisely produced." [Doc. 119-6 (Second Buchner Depo.), at 14 (50:17-51:19).]

Mr. Buchner was then deposed on July 10, 2024, about his "new" HVE case file. Rough Country received the transcript for this deposition on August 2, 2024. In short, it was not until after August 2, 2024 (after Mr. Buchner issued his amended report, produced a complete batch of his digital HVE files and reports, and Rough Country received Mr. Buchner's sworn testimony regarding the amended report) that Mr. Grimes was able to begin working on his full and complete opinion in response to Mr. Buchner's HVE simulations.

Once Mr. Grimes received Mr. Buchner's digital HVE files and was able to review Mr. Buchner's testimony regarding the same in August, 2024, he was able to "re-execute[]" Mr. Buchner's computer simulations "to ensure duplication of Mr. Bucher's simulation results." [Doc. 116-4 (Grimes Report) at 5.]

Mr. Grimes proceeded to examine Mr. Buchner's simulations and opinion by running an HVE simulation on a "lifted" HVE truck using Mr. Buchner's newly disclosed simulation parameters. [Doc. 116-4 (Grimes Report) at 5.] Mr. Grimes also ran an HVE simulation using Mr. Buchner's newly disclosed parameters using different "offsets." [Doc. 116-4 (Grimes Report) at 5.] The simulations' "damage patterns" for each variation were captured using the HVE software. [Doc. 116-4 (Grimes Report) at 5.] The outcome of these simulations confirmed Mr. Grimes's previously disclosed opinion that Mr. Buchner's HVE simulations were unreliable because Mr. Buchner utilized the HVE software in an inappropriate and unreasonable manner.[8]

> As expected, the crush depths vary a little between the different impact configurations, *but overall are very consistent, even though the impact configurations were significantly different.* These results show that the SIMON tool is not accurately modeling the crush on the Ford Escape in this case, as these speeds and impact configurations. The SIMON model is very

---

[8] As Mr. Grimes stated in his initial report: "When using a simulation model, one must understand the limitations of the model. . . . Mr. Buchner's use of HVE/SIMON/DyMesh to predict crush on the Escape in this case is improper and beyond the capabilities of the software." [Doc. 119-3 (Grimes's initial report) at 24.]

capable of simulating the crash, but it has not been validated for accurately predicting vehicle crush or occupant compartment intrusion. . . . *In summary, Mr. Buchner's usage of HVE to predict crush on the Ford Escape is not reliable.*

[Doc. 116-4 (Grimes Report), at 10 (italics added).] The HVE simulations that Mr. Grimes ran and discussed in the Grimes Report could only have been run *after* Plaintiffs provided complete HVE case files to Rough Country in June 2024 and provided testimony explaining those HVE runs in July 2024. In sum, Mr. Grimes was unable able to begin his review and analysis of Mr. Buchner's HVE simulations for *approximately nine months after Mr. Buchner first issued his initial report*.

Second, Mr. Grimes replied to comments and criticisms that Plaintiffs' experts, Mr. Buchner and Christopher Roche, had with the Crash Test. Among other items, Mr. Grimes explained, in detail and with photographic evidence, that Plaintiffs' experts' calculations of the offset between the test vehicles was wrong.[9] Mr. Grimes affirmatively demonstrated this by comparing damage to both the subject Escape and the test Escape, as shown by Figure 59 to the Grimes Report, reproduced below. In Figure 59, the red "index" lines were placed on the images to compare the marks that the F-250s' "Ford" logo left on the Escapes after impact.

---

[9] The offset issue is significant because Plaintiffs contend that it invalidates the Crash Test. [*See*, *e.g.*, Doc. 115 (Plaintiffs' *Daubert* Motion to Exclude the Crash Test), at 6-12 (contending that the offset of the Crash Test was not "substantially similar" to the actual collision).]

Based on this visual comparison, it was confirmed that "the logo scuff on the crash test Ford Escape was approximately 1 inch to 1.25 inches farther left from the longitudinal centerline that was the logo scuff on the subject crash Ford Escape." [Doc. 116-4 (Grimes Report) at 19.]



Figure 59: Image overlays depicting F-250 logo scuff on Ford Escape with index marks.

(Doc. 116-4 at 18.)

D. <u>The Chronology of Events Shows that the Grimes Report was Proper and Timely</u>

As explained above, the Grimes Report was necessitated by Plaintiffs' constant delays in producing the foundation of Mr. Buchner's initial report, his HVE case files. Ultimately, it took Plaintiffs *more than eight months after their disclosure deadline set forth in the Court's Consent Scheduling Order (Doc. 63)* to produce the digital HVE files that were necessary for Mr. Grimes to properly and fairly evaluate and respond to Mr. Buchner's opinion. Of course, the fact that Plaintiffs did not provide the digital HVE file until *after* their deadline to disclose their rebuttal experts' opinions further hampered Rough Country's ability to respond to Plaintiffs' experts. A chronology of events summarizing Plaintiffs' delay in producing a proper HVE data and reports from Mr. Buchner is below:

**October 16, 2023:** Plaintiffs' deadline to disclose Mr. Buchner's initial report

**January 23, 2024:** Mr. Buchner is deposed by Rough Country

**March 29, 2024:** Rough Country discloses Mr. Grimes's initial report and the existence of the Crash Test

| | |
|---|---|
| **May 8, 2024:** Mr. Buchner issues his Amended Report (*seven months after initial report*) | **May 9, 2024:** Mr. Grimes is deposed by Plaintiffs |
| **June 17, 2024:** Mr. Buchner issues his rebuttal report which addresses the Crash Test for the first time | |
| **June 19, 2024: Mr. Buchner produces his HVE case file for the first time (*eight months after initial report*)** | |
| **July 11, 2024:** Mr. Buchner is deposed about his rebuttal report and his Crash Test-related opinions | |
| **August 2, 2024:** Rough Country receives Mr. Buchner's deposition transcript | |
| | **November 26, 2024**: Mr. Grimes issued his follow-up report in response to Mr. Buchner's amended and rebuttal reports (four months after Mr. Buchner's deposition) |

E.  The Grimes Report is Not Incomplete

Plaintiffs argue that the Grimes Report is incomplete because Rough Country allegedly did not produce Mr. Grimes's "supporting materials," (Motion, at 3). This argument is misplaced and misleading to the Court.

First, the Grimes Report fully complied with Fed. R. Civ. P. 26(a)(2)(B)'s requirements, which do not require experts to produce their "supporting materials." Experts are required to disclose the materials that they relied on, and Mr. Grimes did that in the Grimes Report.

Second, the parties' established practice and course of conduct was that they would produce "supporting materials" in advance of the expert's deposition and not in connection with the issuance of their reports. This agreement and understanding was memorialized in the parties' respective notices of deposition to experts in this case: "*[p]er the agreement of counsel*, the deponent is to produce his entire expert file, including documents and materials set forth in Exhibit 'A' prior to the deposition." [Doc. 92 (Rough Country's Third Amended Notice of Taking Videotaped Deposition Duces Tecum of G. Bryant Buchner, P.E., dated July 8, 2024) (italics added); *see also* Doc. 86 (Plaintiffs' Notice of Videotaped Deposition of Wesley Grimes, dated May 3, 2024) (stating that "[t]he deponent is hereby directed to produce the materials, documents, things, and information described in Schedule A of Documents, attached [t]hereto.").]

Plaintiffs never requested that Rough Country produce Mr. Grimes' "supporting materials," and they never requested Mr. Grimes's deposition after the Grimes Report was issued. Rough Country has never refused to – and will – produce

the "supporting materials" consistent with the parties' agreement and prior course of practice or as otherwise directed by the Court.

F.  Plaintiffs' Failure to Promptly Address to the Grimes Report and Rough Country's Willingness to Allow Related Discovery

While Plaintiffs' counsel reserved the right to object to the Grimes Report, they never attempted to discuss the issues raised in their Motion with Rough Country's counsel.[10] Plaintiffs' counsel never requested Mr. Grimes's "supporting materials" related to the Grimes Report, and they never inquired about the possibility of deposing Mr. Grimes about the Grimes Report prior to filing the Motion. Had they done so, Rough Country's counsel would have consented to such discovery. (Indeed, as the parties did for all other experts, Rough Country would have voluntarily made Mr. Grimes's working materials available in advance of his deposition consistent with the parties' agreement.)

Instead, Plaintiffs waited two months – until just before the parties were due to submit their proposed Pretrial Order – to raise this issue with either Rough Country or the Court. Had Plaintiffs raised the issue earlier, there would have been

---

[10] "It appears a simple conversation . . . might have remedied the problem posed by [movant]'s motion" to strike the expert report. *United States ex rel. Bibby v. Wells Fargo Bank, N.A.*, No. 1:06-CV-0547-AT, 2016 WL 7365194, at *2 (N.D. Ga. Aug. 1, 2016).

more time for the Court to consider the issue, and there would have been ample time for Plaintiffs to engage in the discovery that they are now requesting in the Motion.

II.    ARGUMENT AND CITATIONS OF LEGAL AUTHORITY

Under Rule 26(a)(2)(B), a party should timely supplement an expert's prior disclosures. Consistent with the baseline set by Plaintiffs when they took seven months to amend Mr. Buchner's initial report and eight months to produce the HVE files needed to evaluate Mr. Buchner's opinions, Rough Country supplemented Mr. Grimes's opinions only five months later. By Plaintiffs' own standard, Rough Country's supplementation of Mr. Grimes's opinions was timely.

But even if the Court does not think that Mr. Grimes's Supplemental Report was not timely, the remedy is not to strike it. Under Rule 37(c)(1)(C), "[i]n addition to or instead of this sanction [*i.e.*, striking] the court . . . may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi). "Rule 37, by its own terms, does not require exclusion of evidence." *Boyd v. Nationstar Mortgage, LLC*, 1:15-CV-01835-ELR, 2017 WL 11633924, *2 (N.D. Ga. March 7, 2017). "This means that 'the Court has discretion . . . as to whether to exclude evidence under this rule, or whether to fashion a remedy or sanction to better fit the circumstances of the case'." *United States ex rel. Bibby*, 2016 WL at *2; *see also Prieto v. Malgor*, 361 F.3d 1313, 1318 (11th Cir. 2004) ("The district court may

impose other appropriate sanctions in addition to or in lieu of the evidentiary exclusion.")

Rule 37 grants the Court significant "discretion to sanction a party who fails to provide information required by Rule 26." *Collins v. U.S.*, 2010 WL 4643279, *4 (M.D. Fla. 2010). When conducting its evaluation,

> [t]he court should consider the following factors: (1) prejudice or surprise to the party against whom the report is offered; (2) ability of the party to cure the prejudice; (3) extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness.

*Holmes v. Nat'l R.R. Passenger Corp.*, No. 1:20-CV-00131-VMC, 2023 WL 2372711, at *2 (N.D. Ga. Jan. 25, 2023) (quoting *U.S. ex rel. Bibby*, 2016 WL at *2)).

A. The June 17, 2024 Deadline Applied to Plaintiffs, not Rough Country

Plaintiffs complain that the Grimes Report was not disclosed until after the June 17, 2024 deadline for rebuttal experts. This is inaccurate because that deadline only applied to Plaintiffs. There was no deadline by which Rough Country was required to disclose its reply opinions. Rough Country served the Grimes Report far more than 30 days before trial. *See Redstone M&A Grp., LLC v. LaSalle Cap. Grp. II-A, L.P.*, No. 1:18-CV-3659-AT, 2020 WL 9813533, at *2 (N.D. Ga. Dec. 29, 2020) (while discussing supplementation of expert reports, citing Fed. R. Civ. P. 26(a)(3),

"[f]or experts, these supplementations must be made by the time pre-trial disclosures are made (within 30 days before trial)").

Moreover, it was impossible for Mr. Grimes to fully and fairly reply to Plaintiffs' experts' criticisms of the Crash Test before June 17, 2024 because they were not disclosed until that very day; Mr. Grimes could not reply to Plaintiffs' experts' rebuttal reports instantaneously.

B. Rough Country is Entitled to Respond to Mr. Buchner's Late Disclosed Opinions About His Amended HVE Simulations and to Reply in Support Of The Crash Test

Any delays associated with the Grimes Report were justified. First, as discussed throughout this Response, Mr. Grimes could not fully and properly respond to Mr. Buchner's opinion until he was provided with Mr. Buchner's HVE case files and his testimony regarding those new HVE simulations. This did not occur until July 2024, nine months after Mr. Buchner issued his initial opinion and Plaintiffs' deadline to disclose such data.

Second, Rough Country is entitled to present its reply in response to Plaintiffs' experts' opinions or criticisms of the Crash Test, which were newly raised on June 17, 2024. *See Hill v. Ford Motor Co.*, 1:11-CV-799-JEC, 2014 WL 916486, *6 (N.D. Ga. March 10, 2014) ("it was a 'new' argument that called for a" response). Such responsive opinions or criticisms were unknown to Rough Country's experts when they served their initial reports; indeed, this was because Rough Country was not

required to disclose the Crash Test until that time. The first time that Rough Country became aware of Plaintiffs' experts' responsive opinions and criticisms of the Crash Test was when they issued their rebuttal opinions on June 17, 2024. *See, e.g., U.S. ex rel. Bibby*, 2016 WL at *3 ("Plainly Wells Fargo would be negatively affected if it were unable to supplement its rebuttal reports in response to Mr. Alexander's amended expert report.")

Just as Plaintiffs were afforded the opportunity to reply in support of their initial opinions, Rough Country was entitled to do so, and so it did.[11] If Rough Country had not disclosed the Grimes Report, then the first time Plaintiffs (or their experts) would have heard Mr. Grimes's explanations and responses in support of the Crash Test would have been at trial.

Apparently, under Plaintiffs' theory, while their experts are able to defend and support their opinions in the face of Rough Country's experts' comments in response

---

[11] Using motion practice as an analogy, the initial opinion issued by Expert A is followed by a responsive opinion issued by Expert B, after which Expert A is then entitled to reply. With respect to the non-amended HVE simulations, Mr. Buchner's October 16 initial report was responded to by Mr. Grimes's March 29 initial report, which was replied to through Mr. Buchner's June 17 rebuttal report. But for the Crash Test, the initial opinion was issued on March 29 by Mr. Grimes, and responded to by Mr. Buchner and Mr. Roche on June 17; Mr. Grimes is entitled to reply to their June 17 opinions about the Crash Test.

contained in their initial reports through their subsequently issued rebuttal/reply reports, Rough Country does not get the same right or opportunity.

C.  It would be Improper to Strike the Grimes Report Because Other Remedies are Available

Plaintiffs' requested relief of striking the Grimes Report and Mr. Grimes' related opinions is drastic. Of the four factors identified above for the Court to consider, none of them are present in favor of striking the Grimes Report or Mr. Grimes's related opinions. The striking of the Grimes Report would be inappropriate because (1) Plaintiff should not be surprised by Mr. Grimes's opinions, which are limited to topics (HVE simulations and the Crash Test) well known to them; (2) because this case is not on a trial calendar, any potential surprise can be cured through the very discovery requested by Plaintiffs (and consented to by Rough Country); (3) it will not disrupt the not-yet-scheduled trial; and (4) any failure to not timely disclose Mr. Grimes's November Report was not the result of bad faith by Rough Country. *See, e.g., Holmes*, 2023 WL at *2; *see also Southern States Rack and Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003).

For the first factor, prejudice or surprise to Plaintiffs, the Grimes Report did not come as a surprise to them because, as noted in the Motion, Rough Country told them that it was forthcoming. Plaintiffs have long known about the issues they created through their failure to timely produce Mr. Buchner's HVE case files to

Rough Country. Similarly, Plaintiffs knew that Rough Country would respond to their experts' stated concerns with the Crash Test, but these concerns were not fully disclosed to Rough Country until July 2024, when Rough Country could depose Plaintiffs' experts about them.

Second, Plaintiffs have the ability to cure any perceived prejudice. This case has not yet been set down for trial. Therefore, Plaintiffs "have suffered no prejudice that cannot be cured, as there is no pending trial date," and the Court has not yet scheduled a pre-trial conference for this case. *Redstone M&A Grp., LLC*, 2020 WL at *4. Even with Plaintiffs' two month delay in filing of the Motion (time which could have been used to resolve any potential timing issues), "there is plenty of time for the [Plaintiffs] to re-depose [Mr. Grimes]" or conduct other related discovery. *Id.* Any time limitations that Plaintiffs may now face are the result of their inaction. Although the Grimes Report was disclosed in November, Plaintiffs chose to wait to bring this matter to the attention of the Court rather than work to remedy things in a prompt manner. *See, e.g., Perkins v. Smith, Gambrell & Russell, LLP*, No. 1:08-CV-2673-JEC, 2010 WL 11507605, at *9 (N.D. Ga. July 27, 2010) ("[e]xclusion is particularly unwarranted . . . when it easily could have been remedied"). Indeed, Rough Country has already consented to additional discovery by Plaintiffs as to the Grimes Report.

Finally, Rough Country did not act in bad faith in connection with the Grimes Report. First, as discussed above, any delays in the issuance of Mr. Grimes's opinions in the Grimes Report were the result of Plaintiffs' own delays in disclosing Mr. Buchner's amended report in May 2024 and, second, by not providing Rough Country with Mr. Buchner's HVE case file until June 2024, eight months after Mr. Buchner issued his initial opinion in October 2023. Second, Rough Country provided the Grimes Report to Plaintiffs as soon as it was received from Mr. Grimes. There was no bad faith by Rough Country. "Without a finding of bad faith or gamesmanship on the eve of trial, many courts are loathe to invoke the strong medicine of precluding expert testimony." *Perkins v. Smith, Gambrell & Russell, LLP*, No. 1:08-CV-2673-JEC, 2010 WL 11507605, at *9 (N.D. Ga. July 27, 2010) (quoting *McClain v. Metabolife Int'l, Inc.*, 193 F. Supp. 2d 1252, 1259 (N.D. Ala. 2002)).

D.  <u>The Striking of the Grimes Report and Mr. Grimes's Related Opinions Would Have a Fundamentally Harmful Impact to Rough Country's Defense</u>

This case should be decided on its merits, and this would not occur if the Court strikes the Grimes Report and Mr. Grimes's related opinions. The content of the Grimes Report would not "disrupt the trial, as it appears to be relevant and useful information that would be appropriate and useful information that would be appropriate for the jury's consideration," *Redstone M&A Grp., LLC*, 2020 WL at *4.

The Crash Test – which is addressed by Mr. Grimes – is unquestionably important to Rough Country's defense and striking Mr. Grimes's supplemental opinions about it or Mr. Buchner's amended HVE simulations would have a disproportionate impact on Rough Country's defense compared to any potential prejudice or harm suffered by Plaintiffs. *See, e.g.*, *Brooks v. United States*, 837 F.2d 958, 961 (11th Cir. 1988) ("the district court's refusal to permit the use of Dr. Rojkind as a witness cannot be sustained. The sanction was drastic, for it went to the ability of plaintiff to make out a prima facie case against the government."); *Orjias v. Stevenson*, 31 F.3d 995, 1005 (10th Cir. 1994) (noting that "the district court may be found to have abused its discretion if the exclusion of testimony results in fundamental unfairness in the trial of the case"); and *Redstone M&A Grp., LLC*, 2020 WL at *2 (citing *Orjias*). The Court should neither strike the Grimes Report nor preclude Mr. Grimes from offering his opinions about Mr. Buchner's amended HVE simulations or Plaintiffs' experts' comments about the Crash Test.

III.    CONCLUSION

Accordingly, for the foregoing reasons, Rough Country shows that it would be fundamentally unfair for the Court to strike the Grimes Report, and the Motion should be **DENIED**.

This, the 12th day of February, 2025.

WEINBERG, WHEELER, HUDGINS, GUNN & DIAL, LLC

*/s/ Aaron Chausmer*

3344 Peachtree Road, N.E.
Suite 2400
Atlanta, GA 30326
Phone:  404-876-2700
Fax:   404-875-9433
rhill@wwhgd.com
achausmer@wwhgd.com

Richard H. Hill, II
Georgia Bar No. 354425
Aaron B. Chausmer
Georgia Bar No. 119998
*Attorneys for Defendant Rough Country, LLC*

## RULE 7.1D CERTIFICATE OF TYPE, FORMAT AND FONT SIZE

Pursuant to Local Rule 7.1D of the United States District Court of the Northern District of Georgia, the undersigned certifies that the foregoing submission to the Court complies with Local Rule 5.1 in that it was computer-processed, double-spaced between lines, and used Times New Roman font of 14 point size.

WEINBERG, WHEELER, HUDGINS, GUNN & DIAL, LLC

3344 Peachtree Road, N.E.
Suite 2400
Atlanta, GA 30326
Phone: 404-876-2700
Fax: 404-875-9433
rhill@wwhgd.com
achausmer@wwhgd.com

*/s/ Aaron Chausmer*
Richard H. Hill, II
Georgia Bar No. 354425
Aaron B. Chausmer
Georgia Bar No. 119998
*Attorneys for Defendant Rough Country, LLC*

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have electronically served the foregoing filing with the

Clerk of Court via CM/ECF, which will send a copy to the following attorneys of

record:

Tedra L. Cannella
Robert H. Snyder, Jr.
Devin Mashman
CANNELLA SNYDER LLC
315 W Ponce de Leon Ave, Suite 885
Decatur, GA 30030
***ATTORNEYS FOR PLAINTIFFS***

This 12th day of February, 2025.

WEINBERG, WHEELER, HUDGINS, GUNN & DIAL, LLC

*/s/ Aaron Chausmer*

| | |
|---|---|
| 3344 Peachtree Road, N.E. | Richard H. Hill, II |
| Suite 2400 | Georgia Bar No. 354425 |
| Atlanta, GA 30326 | Aaron B. Chausmer |
| Phone: 404-876-2700 | Georgia Bar No. 119998 |
| Fax:   404-875-9433 | *Attorneys for Defendant Rough Country,* |
| rhill@wwhgd.com | *LLC* |
| achausmer@wwhgd.com | |