UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

Santana Bryson and Joshua Bryson,      *
as Administrators of the               *
Estate of C.Z.B., and as surviving     *
parents of C.Z.B., a deceased minor,   *
                                       *     Civil Action File
         Plaintiffs,                   *
                                       *     No. 2:22-cv-17-RWS
v.                                     *
                                       *
Rough Country, LLC                     *
                                       *
         Defendant.                    *

**PLAINTIFFS' RESPONSE TO DEFENDANT ROUGH COUNTRY
LLC'S MOTION TO STRIKE
<u>EXPERT DISCLOSURES BY PAUL LEWIS</u>**

## I.    INTRODUCTION

Plaintiffs disclosed the supplemental report of their biomechanical expert,

Paul Lewis, to Rough Country ("RC") nearly a year ago, *three months before* the

deadline for expert discovery.  Although RC could have used those three months to

disclose a rebuttal to Mr. Lewis's supplemental report, it chose not to—and still

has not done so.

Timing is very important in assessing the merits of RC's motion, but not for

the reasons RC claims.  RC filed its motion five days after Plaintiffs filed their

motion to exclude RC's untimely expert report.[1]  It is easy to see RC's strategy: it hopes the Court will declare "a pox on both their houses" and allow both reports and opinions to stand.

But the facts in the two motions could not be more different: RC served its untimely report by Mr. Grimes *six months after* the Court's deadline for expert discovery; Plaintiffs served Mr. Lewis's supplemental report *three months before* the close of expert discovery.  RC deposed Mr. Lewis about the opinions in his supplemental report three months before discovery ended; Plaintiffs did not have the opportunity to depose Mr. Grimes about the supplemental report during discovery because the report did not exist until discovery was over.  Mr. Lewis's supplemental report contained facts that RC had in its possession for years, and which RC produced to Plaintiff in this case; Mr. Grimes created the data in his report after discovery was over.[2]

Most importantly, RC suffered no harm from the timing of Mr. Lewis's supplemental disclosure—as demonstrated by the fact that it never sought to take a

---

[1] Plaintiffs moved to exclude Mr. Grimes' untimely and improper sur-rebuttal opinions on January 15, 2025.  *See* Doc. 116.  RC filed the instant motion just five days later.

[2] Plaintiffs also pursued RC for any supplemental or rebuttal report it had for months after discovery closed.  They sent multiple emails asking RC if it was going to disclose a supplement report, to try to avoid being prejudiced by a late disclosure.  But RC refused to produce its supplemental report until long after Plaintiffs stopped asking.

second deposition of Mr. Lewis or identify anyone to rebut Mr. Lewis's opinions. Plaintiffs, however, will be greatly prejudiced by being forced to engage in discovery when they should be preparing for trial, and potentially having to develop new evidence and testimony to respond to whatever new facts that discovery unearths. The Court should therefore deny RC's motion to exclude Mr. Lewis's supplemental report.

Two facts make the admissibility of *Bacho* and *Mendoza* cases—and Mr. Lewis's ability to testify about them—unique. *First*, regardless of whether the Court rules they are "substantially similar" to the subject collision and regardless of whether Mr. Lewis can testify as to their similarity, they are both relevant and admissible **because RC made them so**. RC testified that *Mendoza* and *Bacho* were "customer complaints" related to "height or override."[3] Proving the substantial similarity of other incidents in a products case is typically necessary to establish relevance, because the prior incident needs to be "similar enough to the present incident to allow the jury to draw a reasonable inference regarding the defendant's knowledge or ability to foresee the incident at issue." *Henderson v. Ford Motor Co.*, 72 F.4th 1237, 1242 (11th Cir. 2023). However, *Bacho* and *Mendoza* not only gave RC *notice* of the exact defect that caused C.Z.B.'s death,

---

[3] *See* Doc. 97, RC 30(b)(6) Dep., at 50:22-51:10.

RC testified that its review of that "consumer feedback" was its *only method* of evaluating the safety of its products.[4]

Plaintiffs therefore do not have to prove that the *Bacho* and *Mendoza* cases are sufficiently similar for a jury to conclude they provided notice of the alleged defect, because **RC testified under oath that those cases served as notice for the same kinds of allegations in this case**.  Specifically, RC testified it relied solely on its "review [of] data from the *Bacho* case"[5] to determine whether its lift kits cause potentially fatal intrusion in foreseeable crashes.[6]  As a result, RC has admitted that the information it gained from the *Bacho* and *Mendoza* incidents is directly at issue in this case.

*Second*, Mr. Lewis not simply acting as a testifying expert that will opine as to similarity of other similar instances.  Instead, he was the biomechanic expert in

---

[4] *See* Doc. 97, RC 30(b)(6) Dep., at 9:17-12:9.
[5] *Id.*
[6] It also testified that *Mendoza* was referenced as part of the Plaintiff's allegations in *Bacho*.  Doc. 97, RC 30(b)(6) Dep., at 40:10-15.  The documents that RC produced to Plaintiffs in this case also demonstrate that *Mendoza* was at issue as an "other similar incident" ("OSI") in *Bacho*.  *See* Ex. A, RCBRYSON 3937-3938 (Paul Lewis's report in *Bacho*, which references *Mendoza*, and which RC produced in this case); Ex. B, BRYSON 9262-9279 Paul Lewis's report in *Mendoza*, produced by Plaintiffs with his supplemental report on March 15, 2024).

both *Bacho* and *Mendoza*, so he is a fact witness regarding what RC knew or should have known about his work in those cases.[7]

Importantly, the issue presented by RC's motion is narrow—the admissibility of the *Bacho* and *Mendoza* cases is not before the Court. The sole question is whether the Court should allow Mr. Lewis to testify about the opinions in his supplemental report. The answer is yes because Mr. Lewis's late disclosure was harmless—and if there was any harm, RC had plenty of opportunity to remedy it, but it chose not to.

The Federal Rules provide that a party can use information contained in a late disclosure if the timing of the disclosure was either "substantially justified" **or** "harmless." *See* Fed. R. Civ. P. 37(c)(1).[8] RC already knew Mr. Lewis's opinions related to *Bacho* and *Mendoza* long before Mr. Lewis's supplemental disclosure. RC also deposed Mr. Lewis extensively about his supplemental opinions and had ample time to designate rebuttal testimony within the Court's deadlines. Each factor courts use to determine whether a supplemental disclosure was "harmless" weighs strongly against exclusion, as detailed below.

---

[7] Fact witnesses are not subject to expert disclosure rules. Arguably, Mr. Lewis is not required to give an expert report to testify as to what he told RC in the prior cases. But Plaintiffs provided the report in an abundance of caution.

[8] The omission from Mr. Lewis's initial report of the *Bacho* and *Mendoza* cases was entirely an oversight of Plaintiffs' counsel. It was not "substantially justified" under the Rules, it was simply a mistake.

## II.    FACTUAL BACKGROUND

In reality, the dispute over the timing of Mr. Lewis's supplemental report was a discovery dispute that RC chose not to pursue during the discovery period. After Plaintiffs produced Mr. Lewis's report on March 15, 2024, RC complained to Plaintiffs.  Plaintiffs attempted to remedy the dispute with several options, which were memorialized in a March 26, 2024 email: they offered "to allow Rough Country's experts to file supplemental reports on OSIs up to the date of their deposition without any objection," noting that two months remained for RC's expert depositions.[9]  RC raised the possibility that it "might want to disclose additional experts to address discussions of *Bacho* and *Mendoza* as a result of Mr. Lewis's report."  Plaintiffs' explained "that's a contingency that has not arisen. The best solution in our view is to address that question if it arises."  Plaintiffs offered to work through that issue if RC disclosed rebuttal witnesses on the other similar instances.  But RC never did so at any time in the remaining three-and-a-half months of expert discovery, and it still hasn't.  RC did not certify under the Rules that it made a good-faith attempt to resolve this dispute, because it did not make *any* attempt to resolve it.

The *Bacho* and *Mendoza* cases have been at issue in this case since long before Mr. Lewis's supplemental report.  In February and March of 2023, RC

---

[9] *See* Ex. I, 3/26/24 Cannella Email to Hill.

produced documents from the *Bacho* and *Mendoza* cases to Plaintiff.  Mr. Lewis

On October 16, 2023, Plaintiffs disclosed Paul Lewis Jr., M.S., BME as an expert

in biomechanics, injury causation, and occupant kinematics.[10]  Plaintiffs disclosed

that Mr. Lewis's testimony would include his analysis of "the biomechanics and

occupant kinematics in this case."[11]  Plaintiffs also disclosed that Mr. Lewis's

opinions would be based in part on "his previous experience studying

biomechanics in real-world wrecks."[12]

    As RC knows, Mr. Lewis was retained as an expert in two prior cases

involving injuries and deaths caused by RC's lift kits.[13]  In *Mendoza v.

Heckenthorn Products*, an RC lift kit caused a pickup truck to bypass a Ford

Mustang's bumper and directly contact the driver's head, causing brain damage.[14]

In *Bacho v. Rough Country*, a nine-year-old girl was killed when an RC lift kit

caused a truck to bypass the crash protection features of the family's minivan.[15]

Mr. Lewis drafted detailed reports summarizing his opinions in both cases and

provided them to RC.

---

[10] *See* Ex. C, Pls' Supp. Initial Disclosures, at 13.

[11] *Id.*

[12] *Id.*

[13] RC's representation to the Court that "neither case resulted in an adverse
judgment against Rough Country" is misleading, as RC settled both cases for
confidential amounts before trial.  *See* Def's Br., at 3 [Doc. 118].

[14] *See* Doc. 103-8, *Mendoza v. Heckenthorn Products d/b/a Rough Country
Suspension Systems* Complaint.

[15] *See* Doc. 103-7, *Bacho v. Rough Country* Complaint.

The *Bacho* and *Mendoza* collisions both involved the same defect[16] that caused the death of C.Z.B. in this case: an RC lift kit causing a three-quarter-ton pickup truck to bypass the crash protection features of other vehicles.  In both *Bacho* and *Mendoza,* Mr. Lewis reached the conclusion that the plaintiffs' injuries were caused by intrusion into the occupant compartment of the vehicle, and not the collision forces alone.[17]

Plaintiffs produced Mr. Lewis's initial *Bryson v. RC* report with their expert disclosures.[18]  Mr. Lewis's initial report contained a detailed summary of his methodology and opinions, including his opinion that C.Z.B.'s fatal injuries were consistent with intrusion into the occupant compartment of the Bryson family's Ford Escape, not collision forces alone.[19]

Plaintiffs disclosed Mr. Lewis's supplemental report on March 15, 2024, as soon as the error of omitting Mr. Lewis's opinions about the *Mendoza* and *Bacho* cases was discovered.[20]  Mr. Lewis's three-page supplemental report summarized

---

[16] In an attempt to argue otherwise, RC uses a partial quotation from Mr. Lewis's supplemental report, where he says that "the details of these cases are different from *Bryson*."  *See* Def's Br., at 3 [Doc. 118].  However, RC selectively quoted the full sentence: "While the details of these cases are different from *Bryson*, the underlying premise is the same, and they are similar cases."  *See* Ex. D, Lewis Supp. Report, at 2.

[17] *See* Ex. A, Lewis *Bacho* Report; Ex. B, Lewis *Mendoza* Report.

[18] Plaintiffs filed Mr. Lewis's initial report under seal at Doc. 104-2.

[19] *Id.*

[20] *See* Ex. D, Lewis Supp. Report.

his conclusions in the *Bacho* and *Mendoza* cases and how they relate to his opinions in this case. Specifically, Mr. Lewis disclosed his opinion that, as in this case, the injuries and death in *Bacho* and *Mendoza* could be attributed to the occupant compartment intrusion from the RC lift kit, not collision forces alone.[21] These were the same opinions Mr. Lewis had when he disclosed them to RC years before in the *Bacho* and *Mendoza* cases themselves.

Mr. Lewis's supplemental report also disclosed two additional sets of testing data that provided additional support for the opinions he had already formed and disclosed. Both are rear-impact tests showing the survivability of rear-impact collisions when vehicles' safety features engage at the bumper level as designed.[22] Along with Mr. Lewis's supplemental report, Plaintiffs produced the testing data for RC's review and validation.

On March 18, 2024, RC conducted the deposition of Mr. Lewis. During the deposition, RC's counsel questioned Mr. Lewis extensively about each of the opinions in his supplemental report. Mr. Lewis testified to his opinions on the *Bacho* and *Mendoza* cases, including his conclusions related to those cases,[23] similarities and differences of those cases,[24] and the limitations of his opinions.[25]

---

[21] *Id.*
[22] *Id.* at 3 (describing the tests).
[23] *See* Ex. E, Lewis Dep., at 148:16-149:12.
[24] *Id.* at 145:21-147:16; 159:10-160:17.
[25] *Id.* at 151:9-152:12.

Mr. Lewis answered all of RC's questions about his opinions on *Bacho* and

*Mendoza* disclosed in his supplemental report.

RC also deposed Mr. Lewis extensively about the two tests he disclosed in

his supplemental report.  Mr. Lewis answered all of RC's numerous questions

about the setup and results of those tests, as well as their application to his opinions

in this case.[26]

In addition to deposing Mr. Lewis about his supplemental report, RC also

had the opportunity to designate rebuttal experts in response to Mr. Lewis's

supplemental opinions.  Based on the timing of Mr. Lewis's supplemental report,

RC had *three months* to designate any rebuttal expert.[27]  RC declined to do so.

On June 17, 2024, Plaintiffs supplemented their initial disclosures to RC.[28]

In the interest of creating a formalized pleading reflecting Mr. Lewis's March 15

supplemental report, Plaintiffs re-attached it to the second supplemental initial

disclosure.[29]

RC dedicates large swaths of its brief to attacking what it perceives as an

"intellectually dishonest" rebuttal report.  But Plaintiffs have never characterized

Mr. Lewis's supplemental report as a "rebuttal report," nor do they now.  They also

---

[26] *Id.* at 161:5-178:22.

[27] Plaintiffs disclosed Mr. Lewis's supplemental report on March 15, 2024.  The
Court's deadline for rebuttal disclosures was June 17, 2024.  *See* Doc. 76, at 2.

[28] *See* Ex. F, Pls' 2nd Supp. Initial Disclosures.

[29] *Id.*

did not wait until the rebuttal deadline to disclose it.  Plaintiffs produced the same

March 15, 2024 supplemental report a second time on June 17, 2024, explicitly

telling RC that it was merely formalizing the earlier production of Mr. Lewis's

supplemental report: "Mr. Lewis's ***supplemental*** report produced to defense

counsel via email on March 15, 2024, is being formally produced here at BRYSON

009132-9134."[30]

## III.   LEGAL STANDARD

Parties are permitted and required to supplement their expert disclosures "if

the party learns that in some material respect the disclosure or response is

**incomplete** or incorrect."  Fed. R. Civ. P. 26(e)(1)(A) (emphasis added).  The duty

to supplement disclosures "extends both to information included in the report and

to information given during the expert's deposition."  Fed. R. Civ. P. 26(e)(2).

Supplemental reports are allowed for the purpose of "correcting inaccuracies

or adding information that was not available at the time of the initial report."

*Jouria v. CE Res., Inc.*, No. 15-61165-CIV, 2018 WL 11459496, at *2 (S.D. Fla.

Apr. 18, 2018) (internal quotation omitted).

Parties have a duty to provide supplemental disclosures "by the time the

party's pretrial disclosures under Rule 26(a)(3) are due."  Fed. R. Civ. P. 26(e)(2).

Pretrial disclosures must be made "at least 30 days before trial."  Fed. R. Civ. P.

---

[30] *Id.* at 14 (emphasis added).

26(a)(3)(B); *see also* LR 26.1(C) ("The duties of a party to supplement and amend prior initial, expert or pretrial disclosures are set forth in Fed. R. Civ. P. 26(e)."). Because the Court's Scheduling Order did not modify the deadlines for pretrial disclosures, any otherwise permitted supplemental disclosure is due at least 30 days before trial.

Even untimely supplemental disclosures are permitted as long as the untimely disclosure is "substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *see also Kondragunta*, 2013 WL 1189493, at *7. An untimely supplemental disclosure must be permitted as harmless whenever "there is no prejudice to the party entitled to the disclosure." *Caviness v. Holland*, No. CV 109-098, 2011 WL 13160390, at *2 (S.D. Ga. Mar. 17, 2011). This Court has "broad discretion to determine whether a violation of Rule 26(a)(2) is harmless." *Silverstein v. Procter & Gamble Mfg. Co.*, 700 F. Supp. 2d 1312, 1320 (S.D. Ga. 2009).

## IV.   ARGUMENT

Because RC suffered no prejudice from Mr. Lewis's supplemental report, the Court should deny RC's motion to exclude it.

### A. The timing of Mr. Lewis's supplemental report was harmless.

Courts consider several factors when determining whether an alleged failure to disclose is harmless, including: "(1) the surprise to the party against whom the

evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclos[e] the evidence."[31] *McEver v. Nw. Mut. Life Ins. Co.*, No. 5:19-CV-00394-TES, 2021 WL 5140930, at *3 (M.D. Ga. Nov. 3, 2021) (quoting *Rangel v. Anderson*, 202 F.Supp.3d 1361, 1366 (S.D. Ga. 2016)).  Each of those factors weigh against excluding Mr. Lewis's supplemental report.

### a.  RC was not surprised by the contents of Mr. Lewis's report.

The first factor weighs heavily against exclusion—the contents of Mr. Lewis's supplemental report did not surprise RC.  RC was acutely aware of the *Bacho* and *Mendoza* cases before Mr. Lewis's report.  In fact, RC disclosed its awareness of those prior cases *to Plaintiffs* in its interrogatory responses.[32]  It was equally aware of Mr. Lewis's expert analyses in those cases—RC produced Mr. Lewis's *Bacho* Report *to Plaintiffs* in discovery.[33]  That Report, which details the

---

[31] The fifth factor "pertains only to whether a Rule 26 violation was substantially justified."  *Riley v. Lake City Nursing & Rehab. Ctr., LLC*, No. 1:20-CV-04986, 2023 WL 3627889, at *6 n.2 (N.D. Ga. Mar. 7, 2023); *see also Thornton v. United States*, No. CV 111-106, 2013 WL 443666, at *6 n.10 (S.D. Ga. Feb. 5, 2013) (same).

[32] *See* Ex. G, RC's 2nd Supp. Resps. to Pls' First Interrogs., at No. 7.

[33] *See* Ex. A, Paul Lewis's *Bacho* Report (showing RC's bates stamps from its production in this case).

opinions Mr. Lewis reached in *Bacho* and *Mendoza*,[34] gave RC advanced notice of every opinion related to those cases that Mr. Lewis included in the supplemental report he provided in this case.

RC not only knew about *Bacho* and *Mendoza*—its primary method of evaluating the safety of its products was to wait for "consumer feedback" in the form of injuries and deaths like those cases.[35] In fact, all RC has done to determine whether its lift kits cause injuries and deaths in foreseeable crashes was to "review[] data from the *Bacho* case."[36] RC cannot credibly claim it was surprised by Mr. Lewis's opinions he disclosed in *Bacho* when its only method for assessing the defectiveness of its lifts was to review the materials from that case.

Mr. Lewis's supplemental report states the same opinions as those in his *Bacho* report—a document RC already had in its possession. RC did not suffer any surprise or prejudice from Mr. Lewis's disclosure of opinions RC already knew he had. *See Williams v. Dollar Tree Stores, Inc.*, No. 1:21-CV_01609-WMR, 2022 WL 22868732, at *2 (N.D. Ga. Nov. 8, 2022) (Ray, J.) (holding disclosure of medical billing expert did not surprise defendant where defendant was "on notice" of planned testimony). Because RC already knew the contents of Mr. Lewis's

---

[34] *Id.* The Report discusses his opinions from the *Mendoza* case as an "Other Similar Incident."

[35] *See* Doc. 97, RC's 30(b)(6) Dep., at 9:17-12:9.

[36] *Id.*

opinions concerning *Bacho* and *Mendoza*, RC suffered no surprise from Mr. Lewis's supplemental report.

### b. RC had multiple opportunities to cure any purported surprise.

RC also had the chance to—and did—cure any purported surprise caused by Mr. Lewis's supplemental report. At Mr. Lewis's deposition, RC's counsel thoroughly cross-examined him about each of the opinions contained in his supplemental report.[37] *See Blacklick Hotspot Corp. v. Mansfield Oil Co. of Gainesville, Inc.*, No. 2:21-CV-214-RWS, 2023 WL 6373897, at *4 (N.D. Ga. Aug. 14, 2023) ("With regard to the harmlessness inquiry, courts often look to whether the non-disclosing party has been unable to prepare its case by deposing the witness during the discovery period.") (citation omitted) (Story, J.); *see also Roberts v. Philadelphia Express Tr.*, No. CV420-236, 2023 WL 6878744, at *3 (S.D. Ga. Oct. 18, 2023) (denying motion to exclude expert report in part due to opportunity to cross-examine the expert during a deposition). Mr. Lewis answered every question RC's counsel posed about the opinions in his supplemental report, including his opinions about *Bacho* and *Mendoza* cases and the tests he relied on.[38] That deposition cured any surprise RC claims it suffered.

---

[37] *See, e.g.*, Ex. E, Lewis Dep., at 145:21-147:16; 148:16-149:12; 151:9-152:12; 159:10-160:17; 161:5-178:22.
[38] *Id.*

RC's deposition of Mr. Lewis allowed it to fully explore the basis of Mr. Lewis's supplemental opinions—RC "has not cited any specific examples of information [it] wished to obtain or extract but was unable to, nor any questions [it was] unable to ask." *Roberts*, 2023 WL 6878744, at *3 (quoting *Abdulla v. Klosinski*, 898 F. Supp. 2d 1348, 1360 (S.D. Ga. 2012)).  Therefore, even if RC was surprised by Mr. Lewis's supplemental report, it "suffered no harm from it." *Id.*

RC also had a *second* opportunity to depose Mr. Lewis.  Plaintiffs re-produced an identical copy of Mr. Lewis's supplemental report on June 17, 2024, along with a formalized disclosure pleading.[39]  Despite scheduling depositions of Plaintiffs' other two experts, RC declined to even *ask* for the opportunity to re-depose Mr. Lewis about his supplemental report.[40]

RC's sole attempt to articulate any prejudice it suffered fails.  Despite RC's assertion that it "was unable to present counter-testimony in response" to Mr. Lewis's supplemental report,[41] RC had *three months* to designate any rebuttal to Mr. Lewis's supplemental report.[42]  RC cannot claim it was prejudiced against

---

[39] *See* Ex. F, Pls' 2nd Supp. Initial Disclosures.

[40] *See* Ex. H, 6/24/24 email R. Hill to T. Cannella (scheduling re-depositions of Mr. Buchner and Mr. Roche, but not Mr. Lewis).

[41] *See* RC's Br., at 11. [Doc. 118].

[42] Mr. Lewis's supplemental report was produced to RC on March 15, 2024. Plaintiffs agreed to extend the deadline for any OSI experts until May 15, 2024.

providing rebuttal testimony when it refused to exercise the mechanism provided by the Court's scheduling order for doing exactly that.

RC's repeated opportunities to cure any surprise it claims to have suffered weigh heavily against excluding Mr. Lewis's report. *See Blacklick Hotspot*, 2023 WL 6373897, at *5 (weighing the second factor against exclusion where a party did not seek discovery on an untimely disclosure during the discovery period and instead "chose to wait over four months to file the instant motion"); *see also Kondragunta*, 2013 WL 1189493, at *8 ("The problem for defendants, though, is that they had the ability to complain, and thereby cure this surprise, prior to the expiration of expert discovery [....] Defendants did not do so, but instead laid in wait[.]").

### c. Allowing Mr. Lewis's supplemental report would not disrupt the trial.

The third factor also weighs against exclusion. Mr. Lewis disclosed his supplemental report nearly a year ago, and RC already had the opportunity to depose him and designate rebuttal testimony during expert discovery. This case has not been scheduled for trial. Because RC fully discovered Mr. Lewis's supplemental opinions well before any trial date, Mr. Lewis's supplemental report did not disrupt the trial. *See Bruce v. Classic Carrier, Inc.*, No.

---

*See* Ex. I, 3/26/24 email T. Cannella to R. Hill. Additionally, RC had until June 17, 2024, to disclose rebuttal reports. *See* Doc. 76, at 2.

111CV01472JECJCF, 2012 WL 12835705, at *4 (N.D. Ga. Oct. 31, 2012) (the

third factor "cuts against exclusion because here the case is not yet scheduled for

trial"); *Barba v. Shire US, Inc.*, No. 13-21158-CIV, 2016 WL 3964607, at *5 (S.D.

Fla. Feb. 3, 2016) (weighing the third factor against exclusion because "this is not

a disclosure made on the eve of trial that disrupts the proceedings"); *Blacklick*

*Hotspot*, 2023 WL 6373897, at *5 (Story, J.) (weighing the third factor against

exclusion because "there is no trial date set, nor have there been any deadlines

established for pretrial motions").

### d.  The evidence contained in Mr. Lewis's supplemental report is important.

Finally, Mr. Lewis's supplemental report is unquestionably important.  RC

says that *Bacho* and *Mendoza* are what it relied upon when it concluded that its

lifts were not dangerous.  Mr. Lewis's opinions related to the injury mechanisms in

*Bacho* and *Mendoza* are critical to understanding the information RC had available

to it when it declined to further investigate the hazards its lift kits cause in

foreseeable crashes or create an alternative, safer design.  The tests he disclosed are

equally important—they provide the jury with a complete picture of scientific

research regarding the causation of C.Z.B.'s death.

### B.  Mr. Lewis's supplemental report does not warrant exclusion.

Excluding evidence under Rule 37(c)(1) is an extreme and heavy sanction.

*Bloch v. Beard Marine Air Conditioning & Refrigeration, Inc.*, No. 18-61821-CIV,

2019 WL 6468858, at *5 (S.D. Fla. Nov. 7, 2019) ("When evaluating whether to impose the extreme sanction of excluding evidence courts look to whether the alleged failure to comply with Rule 26 was harmless."); *Black Card, LLC v. Visa USA Inc.*, No. 15-CV-27-S, 2020 WL 13328679, at *5 (D. Wyo. Aug. 13, 2020) (explaining that "striking of the supplemental reports is a heavy sanction" and denying motion to strike experts but allowing rebuttal testimony).

Unlike Mr. Grimes's sur-rebuttal report, which RC did not disclose until six months *after* the Court's deadlines for expert reports, Mr. Lewis's supplemental report was disclosed during expert discovery, three months before it closed. RC had the opportunity to fully inquire into Mr. Lewis's opinions within the expert discovery period and had ample time to formulate and disclose its own related rebuttal reports. *See Landivar v. Celebrity Cruises, Inc.*, 340 F.R.D. 192, 196 (S.D. Fla. 2022) (denying motion to strike plaintiff's expert because defendant "could have attempted to cure any purported surprise by advising plaintiff of its position, seeking to depose [the expert] again, and, failing that course, seeking judicial relief."); *Griffith v. Gen. Motors Corp.*, 303 F.3d 1276, 1283 (11th Cir. 2002) (affirming denial of a motion to strike an expert where the party "allowed the impasse to continue well beyond the point of good faith efforts to resolve the issue without court intervention."). Mr. Lewis's supplemental report does not warrant exclusion.

## V.   CONCLUSION

Expert discovery rules "are designed to allow both sides in a case to prepare their cases adequately and prevent surprise."  *Cooper v. Southern Co.*, 390 F.3d 695, 728 (11th Cir. 2004).  RC can claim no surprise from Mr. Lewis's disclosure that he will testify to other cases involving RC lift kits where he was retained and reached conclusions.  RC already had access to those documents, produced them in this case, and deposed Mr. Lewis regarding his opinions.  Because Mr. Lewis's disclosure was harmless, the Court should deny RC's motion.

Respectfully submitted on February 12, 2025,

CANNELLA SNYDER LLC

*/s/ Tedra L. Cannella*

TEDRA L. CANNELLA
  Georgia Bar No. 881085
  tedra@cannellasnyder.com
ROBERT H. SNYDER, JR.
  Georgia Bar No. 404522
  rob@cannellasnyder.com
DEVIN L. MASHMAN
  Georgia Bar No. 257588
  devin@cannellasnyder.com

315 W. Ponce de Leon Ave.
Suite 885
Decatur, GA 30030
(404) 800-4828
(404) 393-0365 (fax)
***Attorneys for Plaintiffs***

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rules 5.1(B) and 7.1(D), I hereby certify that the foregoing filing complies with the applicable font and size requirements and is formatted in 14-point Times New Roman font.

CANNELLA SNYDER LLC

*/s/ Tedra L. Cannella*
TEDRA L. CANNELLA
  Georgia Bar No. 881085
  tedra@cannellasnyder.com
ROBERT H. SNYDER, JR.
  Georgia Bar No. 404522
  rob@cannellasnyder.com
DEVIN L. MASHMAN
  Georgia Bar No. 257588
  devin@cannellasnyder.com

315 W. Ponce de Leon Ave.
Suite 885
Decatur, GA 30030
(404) 800-4828
(404) 393-0365 (fax)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing *PLAINTIFFS' RESPONSE TO DEFENDANT ROUGH COUNTRY LLC'S MOTION TO STRIKE UNTIMELY AND IMPROPER EXPERT DISCLOSURES BY PAUL LEWIS* was electronically filed with the Clerk of Court via CM/ECF, which will automatically serve the following attorneys of record:

Richard H. Hill
Claire C. Murray
Lindsay G. Ferguson
Aaron B. Chausmer
3344 Peachtree Road, N.E.
Suite 2400
Atlanta, GA 30326
rhill@wwhgd.com
cmurray@wwhgd.com
lferguson@wwhgd.com
achausmer@wwhgd.com

This 12th day of February, 2025.

CANNELLA SNYDER LLC

*/s/ Tedra L. Cannella*
Tedra L. Cannella
Georgia Bar No. 881085
*Attorney for Plaintiffs*