# EXHIBIT 2

Dr. Lisa P. Gwin                                          May 3, 2024
Bryson, Santana and Joshua v. Rough Country, LLC

Page 1

```
 1                 UNITED STATES DISTRICT COURT
 2                 NORTHERN DISTRICT OF GEORGIA
 3                    GAINESVILLE DIVISION
 4
 5    SANTANA BRYSON and JOSHUA        )
      BRYSON, as adminsitrators of    )
 6    the Estate of C.Z.B. and as     )
      surviving parents of C.Z.B., a  )
 7    deceased minor.,                )
                                      )
 8                 PLAINTIFF,         )
                                      )
 9    VS.                             )CASE NO.:2:22=CV=017-RWS
                                      )
10    ROUGH COUNTRY LLC,              )
                                      )
11                 DEFENDANT.         )
      _____)
12
13           REPORTER'S TRANSCRIPT OF PROCEEDINGS
14                  FRIDAY, MAY 5, 2024
15    APPEARANCES:
16        FOR THE PLAINTIFF:
17            CANNELLAS NYDER
              BY:  Tedra Cannella
18                 Devin Mashman
                   Attorneys at Law
19            315 West. Ponce De Leon Avenue, Suite 885
              DECATUR, GA 30030
20            TELEPHONE: (404) 800-4828
              FACSIMILE: (404) 393-0365
21            E-MAIL:  info@cannellasnyder.com
22
23    (Appearances continued next page.)
24
25        REPORTED BY:              JUSTUS BALENTINE, CSR 13859
```

Dr. Lisa P. Gwin                                                    May 3, 2024
Bryson, Santana and Joshua v. Rough Country, LLC

Page 19

1    injuries, in the Exponent crash test without the cargo?

2        A.    Still likely because of the amount of

3    deformation that we can see on the -- mostly on the

4    videos of the crash test.  So even so, yes, but there

5    would have been more deformation forward had all the

6    stuff been in the cargo area.

7        Q.    How do you know that he would have died in the

8    Exponent crash test, even without the cargo?

9        A.    Because I have seen the crash test results

10   including the videos that show the deformation and

11   forward movement of the Row 2 seat backs, and it's very

12   violent, it's very fast, it's very -- it's a lot of

13   movement, and so all of that structure would have been

14   pushed right into the back of Master Bryson.

15       Q.    So then the cargo is irrelevant?

16       A.    Well, not really irrelevant, like let's not talk

17   about it at all because it was part of the subject crash.

18       Q.    And isn't it true that if the Exponent crash

19   test had included a Hybrid III instrumented dummy in the

20   same place that Cohen was, then we would have a very good

21   idea of whether he would have survived, but for the

22   cargo, regardless of the cargo?

23            MR. HILL:  Object to form.

24            THE WITNESS:  So in other words, had we put a

25   dummy, either an infant or three-year-old dummy, neither

Dr. Lisa P. Gwin                                    May 3, 2024
Bryson, Santana and Joshua v. Rough Country, LLC

                                                    Page 20

1    of which match Cohen Bryson, in the spot, in the No. 4

2    position, and ran the Exponent test -- an instrumented

3    child dummy, and ran the Exponent test, we would have had

4    a really good idea, is what you're saying, of whether he

5    would have had fatal injuries?

6    BY MS. CANNELLA:

7        Q.   Correct.

8        A.   We would have had numbers, but we already know

9    that based on the movement and deformation of the rear

10   structures of the Escape.

11       Q.   Well, you wouldn't have just had numbers, you

12   would have had numbers that correspond to injury values;

13   correct?

14       A.   Right, right, exactly.  We would have had

15   numbers.

16       Q.   And that's -- sorry.  I didn't mean to interrupt

17   you.

18            That's what NHTSA and car manufacturers use to

19   determine whether someone is likely to survive a crash;

20   correct?

21       A.   In frontal and side crashes, yes, that's what

22   they use.

23       Q.   Okay.  The -- you said something else I wanted

24   to ask you about, and I think I've lost it now.

25            Oh, it's your opinion, then, that you can tell

Dr. Lisa P. Gwin                                    May 3, 2024
Bryson, Santana and Joshua v. Rough Country, LLC

Page 21

1      that Cohen would have died in this crash just by looking

2      at the crash test videos and what's -- and the violence,

3      you said, of the movement inside the car; correct?

4          A.   I mean, it's not just watching the videos.

5      That's the most obvious way to see how much movement

6      there is and how violent it is, et cetera, but based on

7      my experience in injuries, biomechanics, et cetera, and

8      all the other crash tests that I've seen and performed

9      and all the literature regarding real-world crashes as

10     well as crash tests, then I can see that that would have

11     resulted also in catastrophic, i.e. fatal injuries had

12     Master Bryson been in the Exponent test.

13         Q.   Is there any NHTSA procedure that allows someone

14     to decide whether a crash is survivable or someone's

15     likely to get an injury based on looking at the crash

16     tests without any dummy data at all?

17         A.   A NHTSA procedure, no.  But they also don't --

18     there is no NHTSA procedure for injuries in rear crashes

19     at all.

20         Q.   Is there any IIHS procedure that allows someone

21     to decide the likelihood of death or injury based on

22     looking at crash tests with no instrumented dummies at

23     all?

24         A.   Same answer as the NHTSA.

25         Q.   In your experience in the automotive industry,

Dr. Lisa P. Gwin                                    May 3, 2024
Bryson, Santana and Joshua v. Rough Country, LLC

Page 22

1    did Ford ever have a crash test procedure where a person

2    could just look at the crash test and say whether there's

3    likely to be significant injury or death?

4        A.    I didn't work in crash testing at all at Ford,

5    so I have no idea.

6        Q.    Your disclosure says you will testify regarding

7    all aspects of the exemplar crash testing; is that

8    correct?

9        A.    All as it pertains to kinematics and

10   biomechanics and injury causation.  There are others,

11   including Mr. Grimes and Mr. Crosby, who will talk about

12   their parts of it.

13       Q.    And can you talk about the setup of the crash

14   test at all, or is that left to somebody else?

15       A.    In terms of biomechanics and injury caution and

16   kinematics, yes, but not, you know, how the crash testing

17   data collectors work and things like that.  That would be

18   others.

19       Q.    Did you help design the crash that Exponent did?

20       A.    In terms of biomechanics and injury caution,

21   yes, but not in terms of speeds and vehicle lineups and

22   things like that.  That was others.

23       Q.    Okay.  And how did that -- how did you give your

24   contributions to the design setup.

25       A.    We had calls before the testing with the group

Dr. Lisa P. Gwin                                    May 3, 2024
Bryson, Santana and Joshua v. Rough Country, LLC

                                                    Page 195

1    STATE OF CALIFORNIA        )

2                               )  ss.

3    COUNTY OF ALAMEDA          )

4

5

6              I, JUSTUS BALENTINE, Certified Shorthand

7    Reporter No. 13859, hereby certify that the foregoing

8    proceeding was taken by me at the time and place herein

9    set forth;

10             That the said proceeding was taken down by me

11   in shorthand and thereafter transcribed under fmy

12   direction and supervision, and I hereby certify the

13   foregoing proceeding is a full, true, and correct

14   transcript of my shorthand notes so taken;

15             That dismantling this transcript will void the

16   certification by the Certified Shorthand Reporter.

17             I further certify that I am neither counsel for

18   nor am I in any way related to any party to said action,

19   nor am I in any way interested in the outcome thereof.

20             IN WITNESS WHEREOF, I have subscribed my name

21   this 17th day of June, 2024.

22

23

24

               JUSTUS BALENTINE, CSR NO. 13859

25

Veritext Legal Solutions
800.808.4958                                         770.343.9696