# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# GAINESVILLE DIVISION

| | |
|---|---|
| Santana Bryson and Joshua Bryson, as Administrators of the Estate of C.Z.B., and as surviving parents of C.Z.B., a deceased minor,<br><br>    Plaintiffs,<br><br>v.<br><br>Rough Country, LLC,<br><br>    Defendant. | )<br>)<br>)<br>)  Case No. 2:22-CV-017-RWS<br>)<br>)  JURY TRIAL DEMANDED<br>)<br>)<br>)<br>)<br>)<br>) |

### DEFENDANT ROUGH COUNTRY, LLC'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE UNTIMELY AMENDED REPORT AND RELATED SIMULATIONS BY G. BRYANT BUCHNER

Defendant Rough Country, LLC moved to strike and exclude the untimely and improper Amended Report [1], [2] of G. Bryant Buchner, P.E., one of Plaintiffs'

---

[1] This Reply uses the same defined terms as the Motion, including for Mr. Buchner's October 12, 2023 report ("the Initial Report," Doc. 119-1) and his May 8, 2024 report ("the Amended Report," Doc. 119-2), which is the report at issue.

[2] Mr. Buchner personally designated his Amended Report as being "amended" and not "supplemental." [*See* Doc. 119-2, at 1 (identifying the document as his "FR26 Amended Report" and "[t]he purpose of this *amendment*") (italics added).]

designated experts in this case. (Doc. 119.)[3] In their Response (Doc. 125), Plaintiffs do not dispute the substantive point of the motion: that the Amended Report was issued seven months late. Rather, Plaintiffs argue that the delay was justified because the report was "supplemental," and that Rough Country was not harmed by Plaintiffs' delay. (Response, at 2-3.) The Amended Report at issue was based on Mr. Buchner's HVE computer simulations performed *after* Mr. Buchner issued his initial report, seven months *after* Plaintiffs' deadline to disclose their expert reports, and more than one month *after* Rough Country disclosed its responsive expert witnesses, including Mr. Grimes. The Amended Report was disclosed too late, and it should be stricken and excluded.

In considering the Response, there are certain matters which Plaintiffs do not dispute and which are relevant to this dispute:

- *First*, Mr. Buchner knew he did not have the underlying HVE data *before* his deposition on January 23, 2024, [*see* Response, at 6 ("before

---

[3] Plaintiffs attempt to deflect from their own misconduct by referring to Rough Country's motion as a "revenge" filing because they moved to strike Mr. Grimes's supplemental report. This is (obviously) without merit. Rough Country's motion stands on its own, and it is based on Plaintiffs' own delays and misconduct. The parties' motions were all filed in advance of the Court's deadline for the parties to submit a proposed Consolidated Pretrial Order, which requires the parties to identify pending motions. Thus, both sides intended to file their motions before this "deadline." Plaintiffs just happened to file their motion regarding Mr. Grimes first.

his deposition, Mr. Buchner discovered he could not find the underlying simulation data to produce it for RC's lawyer")];

- *Second*, Plaintiffs did not produce the Amended Report and re-run HVE data until May 8, 2024[4], almost *four months* after his deposition;

- *Third*, Plaintiffs did not produce the Amended Report and re-run HVE data until *after* Rough Country disclosed its expert reports in March 2024; and

- *Fourth*, the re-run HVE data was necessary to "provide a full dataset for RC *to review and validate*," (Response, at 7).

1. **Plaintiffs' Claim that the Initial HVE Data Was Lost Through No Fault of Mr. Buchner is Incorrect**

Plaintiffs assert that Mr. Buchner's loss of his initial HVE data "occurred through no fault of his own." (Response, at 16.) This ignores the simple fact that the initial HVE data was always in the possession, custody, and control of Mr. Buchner or his firm. Moreover, Mr. Buchner does not actually contend that the data files were corrupted. Rather, Mr. Buchner admits that he (and his staff) ran multiple, "iterative" simulations until he found what he believed to be an appropriate outcome. [Doc. 119-

---

[4] As noted previously, this is a recurring tactic for Plaintiffs, who repeatedly engaged in gamesmanship by disclosing their experts' untimely "supplemental" reports to Rough Country *the day before* related depositions.

– 3 –

4 (Buchner Initial Depo.), at 15:20-16:8 and 15:23-25]. The problems was that, despite running multiple simulations, Mr. Buchner did not "save" them or track the differences in the various simulations. [Doc. 119-4 (Buchner Initial Depo.), at 154:10-11 and 154:20-23.] This lack of verifiability or accountability is the root cause of Mr. Buchner's failure to preserve his initial HVE data, and this methodology and practice was established by Mr. Buchner. It was undoubtedly his sloppy administrative controls that caused the "loss" of his initial HVE data; this was squarely Mr. Buchner's responsibility. It was not an unexpected loss of data for technical reasons.

## 2. Rough Country Needed the Late Produced HVE Data to Properly Evaluation Mr. Buchner's Initial Opinions

Mr. Buchner noted throughout his Amended Report that the re-run HVE data (or Amended Simulation Data) was necessary for Rough Country to properly evaluate his initial opinion. Mr. Buchner similarly testified that he was not "confident" in the data related to his Initial Report, and that he therefore needed to re-run his HVE simulations. [Amended Report, at 1 ("the precise parameters can no longer be extracted"); Doc. 119-6 (Buchner Second Depo.), at 7:3-4 and 18:21-23; *id.*, at 11:7-11 ("we could not resurrect anything that I can be confident was what I had looked at back in October") and 23:1-4 ("We started trying to use the reports,

and I found some things that – that were inconsistent with what my memory was as to what should have been there.")]. If Mr. Buchner could not be confident in his own data, how could Rough Country? Plaintiffs similarly acknowledge this issue in their Response: "By providing an Amended Report with his re-run simulation, Mr. Buchner ensured RC's *equal access to the parameters* and results of his computer simulation and *allowed RC's experts to review and validate his underlying data.*" [Response, at 3 (italics added).] Rough Country should have had "equal access" to Mr. Buchner's HVE data from the very beginning, not seven months later.

As a result, Mr. Buchner's testimonial process was flipped on its head. Instead of testifying about his initial HVE simulations, Mr. Buchner tailored his re-run HVE simulations to match his deposition testimony, which was given three months after his Initial Report was issued. [*See, e.g.*, Doc. 119-6 (Buchner Second Depo.), at 64:22-23 ("in the rerun when we were making sure to do things per my deposition") and 88:1-2 ("I wanted to do it exactly from my depo.").] Mr. Buchner "specifically crafted his re-run simulation to remain consistent with the measurements he had testified to in his deposition," not those consistent with his Initial Report. (Response, at 14.) Likewise, Mr. Buchner was then able to adjust his re-run HVE simulations in response to criticisms of his initial HVE runs that were raised by Rough Country's counsel at this deposition. For example, Mr. Buchner subsequently changed a

– 5 –

stiffness coefficient, tire size, and vehicle weight, (see Motion, at 7-8), *after* these defects were identified during his deposition or by Mr. Grimes. [*See, e.g.*, Doc. 119-4 (Initial Buchner Depo.), at 46 (179:17-20, discussing "database of stiffness coefficients . . . within the HVE database") and at 58 (227:14-228:5, regarding tire size); *see also* Doc. 119-6 (Second Buchner Depo.), at 67:23-68:1 ("Mr. Grimes is the one that located it and pointed it out").]

### 3. The Amended Report Was Not A Proper Supplemental Report Because It Did Not Complete or Correct Anything

Plaintiffs contend that the Amended Report was a "supplemental" report, despite Mr. Buchner expressly stating it was an "amendment." (Amended Report, at 1.) Plaintiffs are wrong because the Amended Report did not complete or correct anything. A supplemental report is intended to remedy an "incomplete or incorrect" report. *See, e.g.*, Fed. R. Civ. P. 26(e)(1)(A). This is a "narrow purpose" intended to correct[] inaccuracies or add[] information that was not available at the time of the initial report'." *Molbogot v. MarineMax E., Inc.*, No. 20-CV-81254, 2022 WL 2132105, at *3 (S.D. Fla. June 14, 2022). Although Plaintiffs assert that the Amended Report was intended to "remedy an 'incomplete or incorrect' disclosure," (Response, at 3), this is not accurate and Plaintiffs – aside from stating this standard – never argue the merits of this statement.

First, Plaintiffs do not argue that the Initial Report was incomplete or that it lacked information that was unavailable when the Initial Report was issued. To the contrary, Plaintiffs admit that they had the initial HVE data when the Initial Report was issued. They just lost it. Additionally, Mr. Buchner testified that he had the adjusted data that he used in his amended HVE runs when he did his initial HVE simulations. [*See, e.g.*, Motion, at 7-8 (explaining that the data – stiffness coefficients, tire size, and weight – Mr. Buchner changed between the initial and amended HVE runs were available at the time of the Initial Report).]

Second, Plaintiffs do not argue that the Initial Report was inaccurate. They in fact argue that the Amended Report confirms the accuracy of the Initial Report. [Response, at 9 (arguing that "[t]he results of the re-run simulation were representative of the initial simulation").]

Plaintiffs instead improperly seek to use the Amended Report to "bolster" the Initial Report. But a supplemental report cannot be used to "bolster" a previously disclosed report. *See, e.g.*, *Noel v. BP Expl. & Prod., Inc.*, 346 F.R.D. 139, 144 (S.D. Ala. 2024) (listing cases against "bolstering" of reports). If the Amended Report is allowed to stand, then Plaintiffs will likely argue to the jury that it supports (*i.e.*, "bolsters") the Initial Report because it shows that the Initial Report was accurate. This is the exact opposite of what a supplemental report is intended to accomplish.

Plaintiffs' reliance on *Perrigo Co. v. Merial Ltd.*, No. 1:15-CV-03674-SCJ, 2018 WL 11350563 (N.D. Ga. Apr. 30, 2018), is inapposite because the two situations are fundamentally different. In *Perrigo Co.*, the plaintiff disclosed its expert's supplemental report *only eight days* after the expert "learned of the miscommunication" that led to his error. 2018 WL at *4 (expert "learned of the miscommunication on August 8th, . . . and provided his supplemental report on August 16th"). Here, Plaintiffs waited *at least four months* from Mr. Buchner's deposition in January to May, and *seven months after* his initial disclosure, to provide the Amended Report to Rough Country. Tellingly, Plaintiffs never attempt to explain or offer a good reason why it took them seven months from the Initial Report to disclose the Amended Report. Additionally, in *Perrigo Co.*, the district court found that the error was due to a "bona fide miscommunication," 2018 WL at *7. That is not the case here. It was Mr. Buchner's own deficient actions that led to the "loss" of his initial HVE data. Ultimately, *Perrigo Co.* warns against the very conduct that Plaintiffs and Mr. Buchner engaged in. A supplemental report "is not a device to allow a party's expert to engage in additional work," *Id.*, 2018 WL at *5 (quoting *Cochran v. Brinkmann Corp.*, No. 1:08-cv-1790, 2009 WL 4823858, at *5 (N.D. Ga. Dec. 9, 2009)).

### 4. Plaintiffs' Delay Was Not Substantially Justified

Plaintiffs admit that they knew Mr. Buchner had lost the initial HVE data in January, before his deposition. But neither Plaintiffs nor Mr. Buchner did anything for another four months, until they disclosed the Amended Report in May, seven months after his Initial Report. Plaintiffs contend that this delay and the Amended Report was "substantially justified" because "reasonable people could differ as to the reasonableness of the contested action." [Response, at 16 (citing *Dobbs v. Allstate Indem. Co.*, No. 21-13813, 2022 WL 1686910 (11th Cir. 2022).] This reliance is misplaced, as the quoted language became distorted through its duplication over time. The *Dobbs* opinion quoted *Knight ex rel. Kerr v. Miami-Dade Cnty.*, 856 F.3d 795, 812 (11th Cir. 2017), which quoted from *Maddow v. Procter & Gamble Co., Inc.*, 107 F.3d 846, 853 (11th Cir. 1997). But *Maddow* did not involve the supplementation of an expert witness report under Rule 26. While examining an award of "attorney's fees and expenses when compelling discovery," the *Maddow* court looked at whether "the party was substantially justified in resisting discovery." 107 F.3d at 853. In other words, could "reasonable people . . . differ as to the appropriateness of" resisting discovery so as to warrant or preclude an award of attorney's fees under Rule 37(a)(4)(A)? The *Maddox* court then found that the resisting parties "were substantially justified in relying on Supreme Court dictum

regarding the attorney's fees issue, and relying on out-of-circuit district court caselaw, where there was no in-circuit caselaw, regarding the tax form issue," and therefore the award of sanctions against them was improper. *Id.* Plaintiffs' reliance on *Maddox*'s "reasonable person" standard is misplaced because this is not a situation where the issue of whether to disclose Mr. Buchner was in dispute; Plaintiffs admit that they were required to disclose Mr. Buchner's opinions so there is nothing for reasonable people to differ about.

Ultimately, Plaintiffs never explain or justify their delay in tendering the Amended Report to Rough Country, and this is dispositive. *Rice v. Self*, No. 1:21-CV-0820-SCJ, 2023 WL 6518863, at *6 (N.D. Ga. Feb. 22, 2023) ("the inquiry is not whether the opposing party is prejudiced by the untimely disclosure but whether the delay was substantially justified").

### 5. Plaintiffs' Actions Were Harmful to Rough Country

Rough Country was harmed by Plaintiffs' seven-month delay in issuing the Amended Report because its own expert, Mr. Grimes, was not able to properly consider or "validate" Mr. Buchner's re-run HVE simulation runs when Mr. Grimes issued his initial report in this case in late March, well more than a month before

Plaintiffs tendered the Amended Report in May.[5] After all, the HVE simulations performed by Mr. Buchner were complex computer simulations that were dependent on precise variables. There is no room for half measures, or for Rough Country to "approximate" Mr. Buchner's initial HVE simulations' variables. (Indeed, had Rough Country done so, then Plaintiffs would have contested them as not being reliable, substantially similar, or the like.)

Just as Mr. Buchner could not duplicate his own initial HVE simulations, neither could Mr. Grimes. Indeed, as noted in his initial report, in order for Mr. Grimes "[t]o make a full evaluation of [Mr. Buchner's HVE] simulation, the HVE file, vehicle geometries, and any site images and geometries will be required." (Doc. 119-3, at 24.) Mr. Buchner further explained the harm suffered by Rough Country based on Mr. Buchner's failure to properly maintain the initial HVE data:

> Mr. Buchner failed to produce his HVE case file prior to his deposition in January 2024. He apparently did not preserve the computer file and this only produced some printouts that had been saved. *MSSC attempted to reproduce Mr. Buchner's HVE materials using his printouts, but [was] unable to verify his HVE runs.* Later, Mr. Buchner produced a separate 'new' HVE case file,

---

[5] Plaintiffs deceptively argue that Mr. Grimes had a single month, from May 8 to June 17, to prepare a response to the Amended Report. (Response, at 10.) But this contention distracts from the simple fact that Rough Country would have had five months to properly prepare the report if the Amended Report been timely produced in October.

dated June 19, 2024, and this is the file that we utilized in our analysis of his HVE work.

[Doc. 116-4, at 4 (italics added).]

Plaintiffs tacitly recognized Rough Country's need for accurate and complete HVE files, noting that the "re-run computer simulation [was] for RC's *benefit*," [Response, at 3 (italics in original).] Plaintiffs continued: "with his re-run simulation, Mr. Buchner *ensured RC's equal access* to the parameters and results of his computer simulation and *allowed RC's experts to review and validate* his underlying data."[6] [Response, at 3 (italics added).] (As noted previously, Plaintiffs admit that Rough Country therefore lacked "equal access" to Mr. Buchner's HVE data when he issued his Initial Report.)

Rough Country then needed the opportunity to depose Mr. Buchner about his Amended Report, which did not happen until July in connection with the issuance of Mr. Buchner's rebuttal report. Once Mr. Buchner's second, rebuttal deposition was completed, Mr. Grimes could then move forward with preparing his supplemental report to respond to Mr. Buchner's Amended Report, lest Mr. Buchner change his

---

[6] Unfortunately for Plaintiffs, when Rough Country was finally provided with "equal access," its expert, Mr. Grimes, confirmed that HVE simulations cannot "accurately model[] the crush on the Ford Escape in this case," (Doc. 116-4, at 10.)

– 12 –

Amended Report at his second deposition, like he did through his first deposition for the Initial Report.

By delaying their tender of the Amended Report until May 2024, Plaintiffs made it impossible for Rough Country to properly respond to Mr. Buchner's opinions in this case. And if the Amended Report is not excluded, then Rough Country will be severely prejudiced because Mr. Buchner will be able to testify about his re-run HVE simulations, including Plaintiffs' contention that the re-run HVE simulations somehow validate his initial, non-preserved HVE simulations, while Rough Country is deprived of a full and fair opportunity to respond to the Amended Report.[7]

### 6. Mr. Buchner's Amended Report Should be Stricken

Plaintiffs do not present any justifiable reasons for their delay in issuing the Amended Report, and Rough Country was harmed by these delays. Accordingly, the Court should strike the Amended Report, Mr. Buchner's re-run HVE simulations and data, and any opinions based on the same.

Accordingly, for the aforementioned reasons and as set forth in its motion (Doc. 119), Rough Country shows that Mr. Buchner's Amended Report should be

---

[7] It took Plaintiffs seven months, from the Initial Report in October 2023 to May 2024, to provide Rough Country with the Amended Report, but when Rough Country took four months, from Mr. Buchner's deposition in July to November 2024, Plaintiffs complain that Mr. Grimes's supplemental report is untimely.

stricken, Plaintiffs should not be allowed to rely on the Amended Simulations, Amended Graphics, or other related materials in this case, and this Motion should be GRANTED.

This 26th day of February, 2025.

WEINBERG, WHEELER, HUDGINS, GUNN & DIAL, LLC

/s/ Aaron Chausmer
Richard H. Hill, II
Georgia Bar No. 354425
Aaron B. Chausmer
Georgia Bar No. 119998

*Attorneys for Defendant Rough Country, LLC*

3344 Peachtree Road, N.E.
Suite 2400
Atlanta, GA 30326
Phone: 404-876-2700
Fax: 404-875-9433
rhill@wwhgd.com
achausmer@wwhgd.com

## **RULE 7.1D CERTIFICATE OF TYPE, FORMAT AND FONT SIZE**

Pursuant to Local Rule 7.1D of the United States District Court of the Northern District of Georgia, the undersigned certifies that the foregoing submission to the Court complies with Local Rule 5.1 in that it was computer-processed, double-spaced between lines, and used Times New Roman font of 14 point size.

## **CERTIFICATE OF SERVICE**

This is to certify that I have electronically served the foregoing filing with the Clerk of Court via CM/ECF, which will send a copy to the following attorneys of record:

Tedra L. Cannella
Robert H. Snyder, Jr.
Devin Mashman
CANNELLA SNYDER LLC
315 W Ponce de Leon Ave
Suite 885
Decatur, GA 30030

*ATTORNEYS FOR PLAINTIFFS*

This 26th day of February, 2025.

*/s/ Aaron Chausmer*
Aaron B. Chausmer
Georgia Bar No. 119998