## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## GAINESVILLE DIVISION

| | | |
|---|---|---|
| Santana Bryson and Joshua Bryson, as Administrators of the Estate of C.Z.B., and as surviving parents of C.Z.B., a deceased minor, | ) ) ) ) | Case No. 2:22-CV-017-RWS |
| | ) | |
| Plaintiffs, | ) | JURY TRIAL DEMANDED |
| | ) | |
| v. | ) | |
| | ) | |
| Rough Country, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT ROUGH COUNTRY, LLC'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE UNTIMELY AND IMPROPER EXPERT DISCLOSURES BY PAUL LEWIS

Defendant Rough Country, LLC moved to strike the untimely "supplemental" report of Paul Lewis, one of Plaintiffs' designated experts in this case. (Doc. 118.) In their Response to that motion (Doc. 128), Plaintiffs make a number of arguments, each of which is without merit.

Plaintiffs attempt to interject three new topics into this case through Mr. Lewis's March Report: (1) *Bacho*; (2) *Mendoza*; and (3) certain "testing data for two sets of testing," (*see, e.g.*, Doc. 128-4). None of these topics were identified in Mr. Lewis's initial October Report, which had been issued five months earlier, subject to

the October 16, 2023 deadline set forth in the Court's June 13, 2023 Consent Scheduling Order. (Doc. 63, at ¶ 2.) As a result, RC moved this Court to exclude the March Report for being untimely. When considering the Response, there are certain facts that are undisputable and which are material to the Court's consideration:

- *First,* Plaintiffs knew about the *Bacho* and *Mendoza* cases, as well as Mr. Lewis's role in those cases, prior to October 16, 2023;

- *Second*, the "testing data for two sets of testing" referenced in the March Report were from April 1, 2019 and December 2, 2022, long before October 16, 2023;

- *Third,* Plaintiffs were required to disclose their expert's opinions by October 16, 2023; and

- *Fourth*, Plaintiffs did not disclose the March Report until five months later, on the business day before Mr. Lewis's deposition; and

- *Fifth*, RC's deadline to disclose its responsive experts was March 29, 2024, just 14 days after Plaintiffs disclosed the March Report.

### 1.  The March Report is Not a Supplemental Report

The issue before the Court is whether the March Report is a properly authorized "supplemental report."[1] It is not. The law is clear that a supplemental report is not – and cannot be – an attempt "to perfect a litigating strategy" or to "bolster" a previously disclosed report (here, the October Report). *See, e.g.*, *Noel v. BP Expl. & Prod., Inc.*, 346 F.R.D. 139, 144 (S.D. Ala. 2024) (listing cases against "bolstering" of reports); *Cochran v. Brinkmann Corp.,* No. 1:08-CV-1790-WSD, 2009 WL 4823858, *5 (N.D. Ga. Dec. 9, 2009), *aff'd sub nom. Cochran v. The Brinkmann Corp.,* 381 F. App'x 968 (11th Cir. 2010) (cannot "perfect a litigating strategy"). For this reason, "[u]nder Rule 26 of the Federal Rules of Civil Procedure, a party intending to call an expert witness at trial must provide a written report containing, among other things, 'a *complete statement of all opinions* the witness will express," *Race v. Smith*, No. 21-11851, 2022 WL 3649650, at *6 (11th Cir. Aug. 24, 2022) (italics added). In sum, "[**t]he purpose of a supplemental expert report is not** 'to provide an extension of the deadline by which a party must deliver the lion's share of its expert information,' [cit. omitted], or **to 'cover failures of omission**

---

[1] For purposes of consistency, this Reply will use the same defined terms as the motion. Specifically, "March Report" refers to Mr. Lewis's report issued on March 15, 2024, filed as Doc. 118-1, and the "October Report" refers to Mr. Lewis's initial report issued on October 16, 2023, filed under seal at Doc. 104-2.

**because the expert did an adequate or incomplete preparation**,'" *Culliver v. BP EXploration & Prod., Inc.*, No. 3:21CV4942-MCR-HTC, 2023 WL 11261158, at *6 (N.D. Fla. Sept. 19, 2023) (bold added). This is exactly what Plaintiffs are admittedly trying to do because – through no fault of RC – they forgot to include "all [of the] opinions" that Plaintiffs' counsel wanted Mr. Lewis to provide in his October Report, as required by Rule 26.

From the outset, Mr. Lewis did not think that *Bacho* or *Mendoza* were relevant to his opinions in this case. Mr. Lewis admitted that would not have "relied upon [them] in any way in giving [his] opinions in this case." [Doc. 118-2 (Lewis Depo.), at 162:7-10.] Instead, his *Bacho-* and *Mendoza*-related opinions are entirely the byproduct of Plaintiffs' counsel's attempt to refine their litigation strategy. Mr. Lewis only addressed them in the March Report because Plaintiffs' counsel "asked" him to do so. [Doc. 118-2 (Lewis Depo.), at 50:22-51:4.] Plaintiffs' counsel asked him to do it because they forgot about *Bacho* and *Mendoza* in the October Report. *Bacho* and *Mendoza* were not a part of Plaintiffs' litigation strategy until Plaintiff's counsel moved to "bolster" it in March, five months after the deadline. As explained below, this was a substantial addition to Mr. Lewis's initial October Report.

"The purpose of supplementation under Rule 26(e) is to complete or correct an expert report that contains information that was otherwise timely disclosed." *Falcone*

*Glob. Sols., LLC v. Maurice Ward Networks, Ltd.*, No. 1:18-CV-3379-MHC, 2022 WL 20056934, at \*2 (N.D. Ga. Sept. 13, 2022). These are "narrow" purposes. *Molbogot v. MarineMax E., Inc.*, No. 20-CV-81254, 2022 WL 2132105, at \*3 (S.D. Fla. June 14, 2022). Plaintiffs do not argue or contend that the March Report corrects any inaccuracies in Mr. Lewis's initial October Report, so the first purpose is not met and Plaintiffs do not even attempt to try to meet it. This means that the March Report must involve "information that was not available" to Plaintiffs or Mr. Lewis when he prepared the October Report. Plaintiffs, however, admit throughout the Response that they and Mr. Lewis were well-aware of *Bacho*, *Mendoza*, and the "testing data" when the October Report was issued. But "[i]t is well settled Rule 26(e) 'does not permit supplementation to add points that could have been made in the original expert report or to otherwise shore up weaknesses or inadequacies.'" *Kawas v. Spies*, No. 2:20-CV-138, 2023 WL 2403779, at \*2 (S.D. Ga. Mar. 8, 2023).

Moreover, Plaintiffs do not argue that the March Report is a supplemental report anywhere in the Response. Plaintiffs simply identify the March Report as a "supplemental" report as if it were some *fait accompli*. Because the March Report involved matters well-known to them when Mr. Lewis prepared his October Report, the March Report is not a "supplemental" report, however Plaintiffs characterize it.

### 2. The March Report Attempts to Add New Areas to Mr. Lewis's Scope of Testimony

The focus of RC's motion is specific, as Plaintiffs acknowledge in their Response, (Doc. 128, at 5.) RC seeks to exclude the March Report and its invocation of *Bacho*; *Mendoza*; and the "two sets of testing," because they were not identified in Mr. Lewis's initial October Report. Despite this, Plaintiffs dedicate numerous pages discussing *Bacho* and *Mendoza*, and Mr. Lewis's role as an expert witness in those cases, in an effort to distract the Court.

Although Plaintiffs describe the March Report as only three pages, (Response, at 8), this is patently misleading. Plaintiffs and Mr. Lewis are attempting to incorporate Mr. Lewis's prior opinions in *Bacho* and *Mendoza* by reference and incorporation into the March Report. His report in *Bacho* was 32 pages, (Doc 128-1), and his report in *Mendoza* was 18 pages, (Doc. 128-2). Mr. Lewis's "three-page" report is actually 53 pages, far more than his initial 20 page report, (Doc. 104-2).

The March Report also expands Mr. Lewis's testimony from one set of opinions about Plaintiffs' singular accident into three separate opinions about three separate collisions. Plaintiffs' collision is no longer the only one at issue, as Plaintiffs are now trying to litigate three separate and distinct opinions, one for each collision.

### 3. Plaintiffs Effectively Abandoned the "Testing Data" Issue in their Response

As noted, one of Mr. Lewis's topics in the March Report was his reference to "testing data for two sets of testing," both of which occurred long before Mr. Lewis issued his October Report. The first data set was from April 1, 2019 and the second was from December 2, 2022. (Motion, at 6.) Tellingly, Plaintiffs barely mention the "testing data" in their Response, and, when they do, it is solely to factually state that they were included in the March Report. (Response, at 9). Plaintiffs never argue why Mr. Lewis's opinion about the "testing data" should not be excluded. Plaintiffs do not explain why they were not included with Mr. Lewis's initial October Report; they do not claim that the failure to identify the "testing data" was "substantially justified" or "harmless." Plaintiffs simply ignore the issue and therefore they substantively abandoned the issue.

### 4. Both *Bacho* And *Mendoza* Differ Significantly from this Case and Are Not Important to this Case

Plaintiffs spend significant effort attempting to argue the importance of *Bacho* and *Mendoza* to their case. If this were true, then Plaintiffs would have had Mr. Lewis address them in his October Report. But Mr. Lewis did not do so and Plaintiffs' counsel later identified their omission in an improper attempt "to perfect a litigating strategy" or to "bolster" the previously disclosed October Report. This is

what Plaintiffs' counsel is trying to do now because they admit that they failed to ask Mr. Lewis to include *Bacho* or *Mendoza* in his October Report. Plaintiffs' counsel did not seek to include *Bacho* or *Mendoza* as part of Mr. Lewis's opinion until a "couple of weeks" before the March Report. [Motion, at 5 (citing Lewis Depo.).]

*Bacho* and *Mendoza* are fundamentally different from Plaintiffs' accident. [Motion, at 3 (citing Lewis Depo.); *see also* March Report, at 2 ("the details of these cases are different from *Bryson*").] Each involved a different location of impact: rear (Plaintiffs), side (*Bacho*), and front (*Mendoza*). Further, they occurred at different speeds and at different lift kit heights. Given this, if Mr. Lewis is able to testify about these other cases, then RC will need to engage counter-experts from both *Bacho* and *Mendoza*. [Motion, at 11 (*Bacho* involved four experts per side).] It is not simply re-litigating injury causation in the *Bacho* and *Mendoza* cases because the jury will also need to learn about how the collisions differed, which would involve experts other than those similar to Mr. Lewis. This would then result in the Plaintiffs' trial devolving into three different mini-trials, one of each collision.

In the Response, Plaintiffs argue that *Bacho* and *Mendoza* relate to notice to RC. But that is not what Mr. Lewis's March Report addresses. The March Report focuses on areas within Mr. Lewis's purported areas of expertise, "biomechanics, injury causation, and occupant kinematics," (Response, at 7), ostensibly of the

– 8 –

distinct and separate collisions. Plaintiffs attempt to circumvent this issue by claiming now – for the first time – that Mr. Lewis is a "fact" witness. (Response, at 5.) This statement strains the bounds of credibility. The idea that Mr. Lewis can testify as a non-expert witness about his prior expert testimony is not supported by any viable legal principle, and Plaintiffs do not cite any. Plaintiffs never identified Mr. Lewis as a fact witness in this case until the Response. Plaintiffs' attempt to switch Mr. Lewis for an expert witness to a fact witness is without merit.

Separately, in another strained effort to justify Mr. Lewis's potential testimony about *Bacho* and *Mendoza*, Plaintiffs contend that RC introduced *Bacho* and *Mendoza* into this case by disclosing them in discovery. This statement is misleading and deceiving to the Court because Plaintiffs asked RC to identify them in discovery. Specifically, Plaintiffs asked RC "whether anyone . . . ever stated or suggested to [RC] that a person could be injured in a collision with a lifted vehicle," [Doc. 128-7, ¶ 7.] RC identified them as follows:

> . . . Rough Country states that there has been one accident which occurred in the last 10 years where these types of allegations were made (*Bacho v. Rough Country, LLC, et al*). In *Bacho*, a plaintiff contended that a lift kit raised the height of a truck's front bumper causing the side impact protection to be overridden and the front bumper to intrude into the side occupant compartment of the vehicle. *The Bacho case involved a different vehicle with a different lift kit of a different height and a different type of collision.*

– 9 –

(*Id.* (italics added).) In its Supplemental Response, RC then identified the *Mendoza* case, stating: "Beyond the last 10 years, Rough Country states that these types of allegations were made in the [*Mendoza*] case in Texas" and that "*[t]he Mendoza case involved a different vehicle with a different lift kit of a different height and a different type of collision*." [*Id.* (italics added).] RC only produced the pleadings and Mr. Lewis's *Bacho* Report in discovery because Plaintiffs asked for them.

### 5. Plaintiffs' Delay was Not Substantially Justified

In a rare moment of candor, Plaintiffs admit that their delay in disclosing the March Report "was not 'substantially justified' under the Rules," (Response, at 5 n. 8). But this does not end or avoid the issue because Plaintiffs never explain why it took their counsel five months – from October to March – to disclose the opinions in the March Report to RC. According to Plaintiffs, it was "an oversight of Plaintiffs' counsel," which means that Plaintiffs' counsel was well-aware of the *Bacho*, *Mendoza*, and "testing" issues in October. So why then did Plaintiffs' counsel wait four months, until "a couple of weeks" before March 15, 2024, to ask Mr. Lewis to provide the additional *Bacho* and *Mendoza* opinions? And why did Plaintiffs wait until the eve of Mr. Lewis's deposition to tender the March Report? Plaintiffs simply ignore these fundamental questions.

### 6.  The Delay in Disclosing the March Report Was Not Harmless

Plaintiffs' long-delayed production of the March Report was not harmless. Plaintiffs are attempting to interject massive issues – Mr. Lewis's prior expert testimony in *Bacho* and *Mendoza* – into this case long after Plaintiffs were required to identify their expert witnesses testimony. This is improper and prejudicial to RC, as explained above, because it converts this case from one to three.

Next, Plaintiffs argue that RC had time to "cure any purported surprise." This premise further ignores Plaintiffs' gamesmanship. Plaintiffs withheld the March Report from RC until the Friday before Mr. Lewis's Monday deposition. Plaintiffs delayed their disclosure of the March Report until the last possible moment in an attempt to litigate by ambush.

Plaintiffs argue that RC was able to question Mr. Lewis about his March Report at his deposition. But this is improper:

> "Rule 26(a)(2) does not allow parties to cure deficient expert reports by supplementing them with later deposition testimony," because "the purpose of Rule 26(a)(2) is to provide notice to opposing counsel – before the deposition – as to what the expert witness will testify and this purpose would be completely undermined if parties were allowed to cure deficient reports with later deposition testimony."

*Brashevitzky v. Reworld Holding Corp.*, 348 F.R.D. 107, 125 (S.D. Fla. 2024). It goes without saying that RC could not adequately prepare to properly cross-examine

Mr. Lewis about the *Bacho* or *Mendoza* cases, both of which involved numerous experts and counter-experts, over a weekend. Nor could RC depose Mr. Lewis a second time during rebuttal discovery because, as Plaintiffs squarely and unambiguously affirm that the March Report is not intended to be a "rebuttal report." (Response, at 10.)

Plaintiffs further argue that RC could have engaged some counter-experts to Mr. Lewis's March Report in the three months between its disclosure and the June 17, 2024 rebuttal expert disclosure deadline. This is without merit and is based on a false calculation. First, Plaintiffs attempt to blame RC seeks to put the onus and burden on RC when Plaintiff's misconduct caused this issue. This is improper.

According to Plaintiffs, the March Report included Mr. Lewis's initial opinions in the case. As such, RC was required to disclose its responsive experts by March 29, 2024, just two weeks after the March Report was disclosed. Such experts are not proper "rebuttal" experts, despite Plaintiffs' characterization of them as such. Had Plaintiffs timely disclosed the March Report in October, RC would have had over five months to retain responsive experts and for the responsive experts to prepare their opinions. There was no way that RC could have done this in two weeks

or even three months, given all of the logistics involved in retaining the numerous additional experts from *Bacho* and *Mendoza*, respectively.[2]

Plaintiffs contend that RC was not surprised by Plaintiffs' invocation of *Bacho* and *Mendoza* because it was already aware of their existence and Plaintiffs' interest in them. Whether RC knew about *Bacho* or *Mendoza* is irrelevant. What is relevant is whether Plaintiffs knew about *Bacho* or *Mendoza* when they disclosed their expert witnesses in October 2023. It is undisputed that they were well aware of *Bacho* and *Mendoza* then and, if they were going to rely on Mr. Lewis's expert opinions from them, it was incumbent on them to disclose them in October. Neither Plaintiffs nor Mr. Lewis did so, and RC was not put on notice about the role of *Bacho*, *Mendoza*, or the testing in connection with Mr. Lewis's expert testimony until the March Report.

*Williams v. Dollar Tree Stores, Inc.*, No. 1:21-CV-01609-WMR, 2022 WL 22868732 (N.D. Ga. Nov. 8, 2022), does not support Plaintiffs' contention that RC was not surprised by their invocation of *Bacho* and *Mendoza*. In *Williams*, at a pretrial conference, the district court "granted Plaintiff leave to conduct third-party discovery to find a witness who could establish a proper basis for [certain] cost estimates." *Id.*, at 1. Thus, because the district court expressly allowed the plaintiff to

---

[2] If the Court does not exclude the March Report, then RC should be granted leave to locate and identify its prior experts from *Bacho* and *Mendoza*.

find such a witness, the defendant was not surprised when plaintiff did exactly that. Similarly, the district court found that the plaintiff's late disclosure of the witness was "substantially justified because the need for this testimony only arose due to a Court order." *Id.*, at 2. There was no surprise to the defendant because it "ha[d] been on notice that [p]laintiff was seeking a medical billing representative from Ortho Sport since the pretrial conference," *id.*

It would significantly disrupt the trial to allow Mr. Lewis to testify about *Bacho* or *Mendoza* in this case. In effect, Plaintiffs are attempting to turn this trial into three different mini-trials within the trial about three different accidents – one for Plaintiffs' accident and two others for *Bacho* and *Mendoza*, even though neither of those cases resulted in an adverse judgment against RC, as explained above.

### 7. Plaintiffs' Misconduct Related to Mr. Lewis is Fundamentally Different from the Issuance of Mr. Grimes's Supplemental Report.

The final factor for the Court to consider is Plaintiffs' "explanation for [their] failure to disclose the evidence." Plaintiffs make no effort whatsoever to provide any such explanation for their failure and dilatory conduct anywhere in the Response.

In this regard, Mr. Lewis's March Report is fundamentally different from the supplemental expert report of Wesley Grimes, one of RC's experts. Mr. Grimes's report was delayed by Plaintiffs' belated production of evidence or testimony that

Mr. Grimes needed to issue his report, as explained in RC's response to Plaintiffs' motion (Doc. 126). In direct contrast, neither Plaintiffs nor Mr. Lewis needed anything from RC or its experts when they issued the March Report. Their delay in issuing the March Report was entirely a creature of their own creation.

### 8. The March Report Should be Excluded

In closing, Plaintiffs knew about *Bacho*, *Mendoza*, and the "testing" when Mr. Lewis issued his initial October Report, but they did nothing until they then dropped the March Report on RC on the Friday before its expert's Monday deposition. Such intentional gamesmanship should not be rewarded. Similarly, Plaintiffs admit that the March Report was their counsel's improper attempt to refine and bolster their strategy after the applicable disclosure deadline.

Accordingly, for the aforementioned reasons, and as set forth in its motion (Doc. 118), RC shows that Mr. Lewis's March Report should be excluded, and its motion should be GRANTED.

This 26th day of February, 2025.

WEINBERG, WHEELER, HUDGINS, GUNN & DIAL, LLC

/s/ Aaron Chausmer
Richard H. Hill, II
Georgia Bar No. 354425

3344 Peachtree Road, N.E.
Suite 2400
Atlanta, GA 30326
Phone:  404-876-2700
Fax:    404-875-9433
rhill@wwhgd.com
achausmer@wwhgd.com

Aaron B. Chausmer
Georgia Bar No. 119998

*Attorneys for Defendant Rough Country, LLC*

## **RULE 7.1D CERTIFICATE OF TYPE, FORMAT AND FONT SIZE**

Pursuant to Local Rule 7.1D of the United States District Court of the Northern District of Georgia, the undersigned certifies that the foregoing submission to the Court complies with Local Rule 5.1 in that it was computer-processed, double-spaced between lines, and used Times New Roman font of 14 point size.

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have electronically served the foregoing filing with the Clerk of Court via CM/ECF, which will send a copy to the following attorneys of record:

Tedra L. Cannella
Robert H. Snyder, Jr.
Devin Mashman
CANNELLA SNYDER LLC
315 W Ponce de Leon Ave
Suite 885
Decatur, GA 30030

***ATTORNEYS FOR PLAINTIFFS***

This 26th day of February, 2025.

*/s/ Aaron Chausmer*
Aaron B. Chausmer
Georgia Bar No. 119998