IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| SANTANA BRYSON and JOSHUA BRYSON, as Administrators of the Estate of C.Z.B., and as surviving parents of a deceased minor, C.Z.B., | |
| Plaintiffs, | Civil Action No. |
| v. | 2:22-CV-17-RWS |
| ROUGH COUNTRY, LLC, | |
| Defendant. | |

**DEFENDANT ROUGH COUNTRY'S *DAUBERT* MOTION TO EXCLUDE CERTAIN OPINIONS FROM PAUL R. LEWIS, JR.**

COMES NOW Defendant Rough Country, LLC, and hereby moves this Court, pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and Federal Rules of Evidence 403, 702 and 703, to exclude certain opinions, testimony, or evidence by or from Paul R. Lewis, Jr. that (1) relate to vehicle design; (2) structural intrusion; (3) vehicle safety features; (4) the causation of injuries in either *Bacho* or *Mendoza*, as more fully set

forth herein; or (5) from any other of Plaintiffs' experts that is based on the foregoing.[1]

    I.    STATEMENT OF PERTINENT FACTS AND BACKGROUND

    A. <u>Plaintiffs' Claims and Allegations</u>

This case arises from a collision ("the Accident") in which a 2016 Ford F-250 truck driven by Hunter Elliott slammed into the rear of Plaintiffs' 2008 Ford Escape at 51 miles per hour. [Doc. 109 (Order on Rough Country's Motion for Summary Judgment), at 2.] Mr. Elliott's F-250 truck had a Rough Country lift kit installed on it. The crux of Plaintiffs' case is their allegation that Rough Country's lift kit caused Mr. Elliott's F-250 truck to bypass certain "frame and crash protections" of their Escape and that, but for the lift kit, "Mr. Elliott's F-250 would not have intruded so far into their Escape," (*Id.*) Plaintiffs are therefore asserting a claim for "enhanced injury," arguing that an unlifted 2016 Ford F-250 truck would not have caused such a significant intrusion into Plaintiffs' Escape, and C.Z.B. would not have been killed. (*See, e.g., id.*, at 14.)

---

[1] Lewis's Supplemental Report, dated March 15, 2024, which discusses these topics, *Bacho*, and *Mendoza* is currently subject to a Motion to Strike because it was untimely produced to Rough Country. (Doc. 118.)

B. <u>Lewis's Opinions and Testimony at Issue in this Motion</u>

Lewis issued two reports in this case, and he was deposed once. *First*, he issued his initial report on October 16, 2023 (the "<u>October Report</u>"), which was previously filed under seal with the Court as Doc. 104-2; because it was filed under seal, a copy of the Initial Report does not accompany this motion. *Second*, on the eve of his deposition, Lewis issued his "Supplemental Report" on March 15, 2024 (the "<u>March Report</u>," a copy of which was previously filed with the Court at Doc. 118-1, and which accompanies this motion as Exhibit 1). *Third*, Lewis was then deposed on March 18, 2024 (the "<u>Lewis Depo.</u>"), which was previously filed with the Court as Doc. 118-2.[2]

Because Plaintiffs and Lewis admittedly forgot to include any mention of either *Bacho* or *Mendoza* in the October Report, Lewis prepared the March Report. [Doc. 128, at 8 (March Report was prepared "as soon as the error of omitting Mr. Lewis's opinions about the *Mendoza* and *Bacho* cases was discovered"); *id.*, at 5 (their omission from the October Report "was 'not substantially justified'").]

In the March Report, Lewis makes the following statements (the "<u>Opinions</u>") that are material and relevant to this motion:

---

[2] Unlike the March Report, which is relatively small in size, Rough Country is not re-tendering the Lewis Depo. due to its volume.

1. The *Bacho* victim's "fatal head injuries were . . . due to Rough Country's lift-kit elevating it high enough to impact it through her window and side curtain airbag," [Ex. 1 (March Report), at 2-3];

2. In connection with *Mendoza*, "[d]ue to the Rough Country lift-kit significantly elevated the structures of the vehicle, it essentially ran over the Mustang and struck Mrs. Mendoza's head," (*id.*, at 3);

3. "The lift kits elevated the striking vehicles such that when they impacted the struck vehicle, due to the elevation and resultant size differentiation, the structural intrusion was catastrophic," (*id.*);

4. "The size differential created by the Rough Country lift kits causes the striking vehicle to completely override all of the vehicle's structural and component safety features rendering them ineffective leaving the occupant unprotected and vulnerable to receive fatal and permanently debilitating injuries," (*id.*); and

5. "In all three of these cases had the striking vehicles not been equipped with a Rough Country lift kit, the intrusion would have been significantly lessened, the safety features of the struck vehicles would have been allowed to function as designed, and these occupants would not have received fatal or permanently disabling injuries," (*id.*).

C. Lewis's Experience

Lewis is a biomechanical engineer. His specified areas of "expertise" "are related to medicine but are separate disciplines." [Doc. 104-2 (October Report), at 3.] His role "is to identify the injury and consider the forces and motions necessary to cause the injury," (*id.*). Lewis is *not* an accident reconstruction expert. Similarly, Lewis is *not* an expert in automotive design or manufacturing. As he notes in the October Report, Plaintiffs had "[t]his case evaluated by engineers with expertise in reconstruction and vehicle structure design," (*id.*) to wit, G. Bryant Buchner and Christopher Roche.[3]

Material to this motion is the fact that neither Buchner nor Roche offer any opinions about either the *Bacho* or the *Mendoza* cases.

II. ARGUMENT AND CITATIONS OF LEGAL AUTHORITY

The standards applicable to *Daubert* motions are well-established. "District courts are charged with this gatekeeping function 'to ensure that speculative, unreliable expert testimony does not reach the jury' under the mantle of reliability that accompanies the appellation 'expert testimony.'" *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005). Ultimately, the Court must determine if expert testimony is admissible, and a three-part inquiry is conducted to determine whether:

---

[3] Rough Country has contemporaneously filed *Daubert* motions as to both Buchner and Roche.

> [t]he expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert;* and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1340–41 (11th Cir. 2003).

As the party proffering Lewis's testimony, Plaintiffs have "the burden of satisfying each of these three elements by a preponderance of the evidence." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1292 (11th Cir. 2005). Plaintiffs cannot do this because Lewis is not qualified to testify about the matters raised in this motion.

> A. <u>Lewis is Not Qualified to Opine About Accident Reconstruction or Vehicular Structural Matters</u>

In the March Report, Lewis proffers certain opinions about the accidents at issue in this case, *Bacho*, and *Mendoza*. Lewis is not, however, an expert in accident reconstruction.

> Counsel: . . . You're not going – holding yourself out as an expert in accident reconstruction?
>
> Lewis: I certainly am not.

[Doc. 118-2 (Lewis Depo.), at 10 (34:20-23); *see also id.*, at 3 (36:7) ("I don't, you know, provide reconstruction opinions"); and *id.*, at 10 (35:14-18) ("in the *Bacho* and *Mendoza* cases, it's also true in those cases [he] did not act as an accident

reconstructionist").] Nor is Lewis "an expert in automotive design or manufacturing," and he has "never worked for an automobile manufacturer," [*id.*, at 11 (39:7-12)]. Thus, Lewis admits that he is not properly an expert in the very areas where he seeks to offer the opinions at issue in this motion.

> While "an expert's training does not always need to be narrowly tailored to match the exact point of dispute in a case," an expert may not qualify through reading and preparation as an expert in "an entirely different field or discipline," and a court may exclude an expert's testimony if it determines the expert is "testifying to an area outside of-but related to-his expertise."

*Kipperman v. Onex Corp.*, 411 B.R. 805, 843 (N.D. Ga. 2009).

Inherent in Lewis's Opinion No. 1 through 5 are opinions related to accident reconstruction and vehicle design. As Lewis summarized his opinions, he intends to testify that Rough Country's lift kits "created a significant *incompatible vehicle-to-vehicle situation* where [it] cause[d] much more catastrophic *deformation of the occupant's survival space*," and, as a result, the "vehicle [was] not capable to utilize the *as-designed safety features* of the cage and all to *manage the energy to crumple zones* to help with the deformation *and dissipation of energy.*" [Doc. 118-2, at 38 (1-9) (italics added).] These are all terms and concepts that are outside of Lewis's purported expertise.

In Opinion No. 1, Lewis attempts to opine about where the striking vehicle hit the victim's vehicle in *Bacho*, and he specifically attributes this to Rough Country's lift kit. Then, in Opinion No. 2, Lewis opines about whether Rough Country's lift kit

"elevated the structures of the vehicle" in *Mendoza*. These opinions then culminate in Lewis's Opinion Nos. 3, 4, and 5, which blames Rough Country's lift kit for "structural intrusion [which] was catastrophic" because of "complete[] override all of the vehicles structural and component safety features. Lewis then concludes with an opinion about the amount of intrusion and whether the "safety features . . . would have . . . function[ed] as designed." If any testimony about accident reconstruction, override, or vehicle safety and structures is admissible, then it would fall within the province of Buchner and Roche, not Lewis.

But this is exactly what Lewis is attempting to do – testify about "structural intrusion" and vehicular "safety features" – and any such effort to do so should be excluded from trial.

        B. <u>Lewis Cannot Offer Any Opinions About the Cause of the Injuries in *Bacho* or *Mendoza*</u>

As noted previously, neither Buchner nor Roche have any opinions about either *Bacho* or *Mendoza*. They therefore have done no analysis of either case or their underlying collisions. And has been explained elsewhere, the collisions in *Bacho*, *Mendoza*, and this case are not substantially similar because they all involved different vehicles, with lift kits of different heights, and different types of collisions. Lewis has frequently admitted that "the details of [*Bacho* and *Mendoza*] are different from *Bryson*," [Ex. 1 (March Report), at 3; *see also* Doc. 118-2 (Lewis Depo), at 38

(147:3-16) (*Bryson* involved a front-to-rear collision, but *Bacho* involved a side impact (T-bone) collision, and *Mendoza* involved a frontal impact); *id.* at 38 (147:17-20) (*Bryson*, *Bacho*, and *Mendoza* all involved different speeds and different "Delta-v's,"); *id.*, at 38 (146:3-147:2) (*Bryson*, *Bacho*, and *Mendoza* all involved different vehicles of different weights and different "coefficient[s] of restitution and stiffness"); and *id.*, at 38 (147:21-148:1) (*Bryson*, *Bacho*, and *Mendoza* all involved lift kits of different sizes).] In sum, neither *Bacho* nor *Mendoza* are substantially similar to this case.

Accordingly, any opinions that Lewis may have about the effect of Rough Country's lift kit may have had in either *Bacho* or *Mendoza* would be based on the opinions of experts who have not been identified as experts in this case. Lewis cannot rely on such hearsay evidence.

"[A]n expert may rely on hearsay evidence as part of the foundation for his opinion so long as the hearsay evidence is the type of evidence reasonably relied upon by experts in the particular field in forming opinions or inferences on the subject." *Colardo-Keen v. CorrectHealth, LLC*, No. 1:14-CV-489-MHC, 2022 WL 18778990, at *7 (N.D. Ga. June 7, 2022) (quoting *Knight through Kerr v. Miami-Dade Cnty.*, 856 F.3d 795, 809 (11th Cir. 2017)). Ordinarily, experts may rely on peer reviewed treatises, validated testing and methodologies, and other presumed accurate evidence. But here, Lewis seeks to rely on "evidence" proffered by other

experts retained by the plaintiffs in *Bacho* and *Mendoza*, not un-interested experts conducting objective experiments or testing. In other words, Lewis seeks to be a mere conduit through which those experts' opinions are proffered to the jury simply because Lewis read their reports. This is improper. See, e.g., *Kipperman v. Onex Corp.*, 411 B.R. 805, 843 (N.D. Ga. 2009) ("an expert may not qualify through reading and preparation as an expert in "an entirely different field or discipline"). Lewis should not be allowed to regurgitate what he thinks he learned in *Bacho* or *Mendoza* as his own expert opinion in this case.

### C. It Would Be Unduly Prejudicial to Allow Lewis to Opine About *Bacho* and *Mendoza*

Even if the Court allows Lewis to rely on the undisclosed experts from *Bacho* and *Mendoza* as "admissible" hearsay under Rule 703, such evidence should be excluded because its prejudicial effect far outweighs any probative value. *Jones v. Coty Inc.*, 362 F. Supp. 3d 1182, 1197 (S.D. Ala. 2018).

It would be prejudicial to allow Lewis to rely on experts *retained by the plaintiffs* in *Bacho* and *Mendoza*, especially when Rough Country was not given the opportunity to cross examine those other experts in this case. Similarly, Rough Country was not able to identify counter-experts to the *Bacho* and *Mendoza* experts relied on by Lewis because of how late in the process the March Report was disclosed to it. Finally, the Supplemental Report was deficient under Rule 26 because

it did not set forth all of the materials upon which it was based. Rule 26(a)(2)(B)(ii) requires that an expert's report set forth "the facts or data considered by the witness in forming" their opinions. While Lewis provided Rough Country with "the reports that [he] wrote and [a] case review" with the Supplemental Report, Lewis "did not produce each and every individual file" upon which his opinions in *Bacho* and *Mendoza* were based. [Doc. 118-2 (Lewis Depo.), at 37 (142:2-17).] Similarly, Lewis "didn't individually produce a medical record or a deposition" that he relied on when reaching his opinions in *Bacho* or *Mendoza*. [*Id.*, at 37 (145:19-20).]

      D. <u>It is Improper for Lewis to Offer His Opinion As to the Ultimate Issue in This Case: Whether Rough Country's Lift Kit Caused the Fatal Injuries in this Case</u>

While "an opinion is not objectionable just because it embraces an ultimate issue," it is axiomatic that an expert may not, however, merely tell the jury what result to reach. *Gaylor v. Georgia Dep't of Nat. Res.*, No. 2:11-CV-288-RWS, 2014 WL 4545810, at *6 (N.D. Ga. Sept. 12, 2014). That is exactly what Lewis – who is neither an accident reconstructionist nor a vehicle engineer – seeks to do with his Opinions 4 and 5 above: that Rough Country's lift kit "cause[d] the striking vehicle to completely override all of the vehicle's structural and component safety features," thereby resulting in "fatal or permanently disabling injuries." There is no underlying evidence related to the accidents in *Bacho* or *Mendoza*, so the jury cannot consider that evidence on its own to determine whether Rough Country's lift kits are the cause

of the "fatal or permanently disabling injuries." Lewis simply tells the jury that is the result they should reach.

### E. If Lewis's Opinions are Excluded, Then Any Expert Opinion Based on Them Should Also be Excluded

To the extent that any of Plaintiffs' other experts base their opinions on Lewis's excluded opinions or proposed testimony, then the absence of his opinions as a foundation would render their opinions inadmissible. *See Cosper v. Ford Motor Co.*, No. 2:18-CV-189-RWS, 2022 WL 17908815, at *6 (N.D. Ga. Oct. 17, 2022) ("experts may rely on the opinion of another expert so long as there is a reasonable belief that the other expert's opinion is reliable").

### III. CONCLUSION

As explained above, Lewis's Opinion Nos. 1 through 5 should be excluded from trial. Lewis is simply not the proper expert to opine as to the matters contained within them, and he lacks the requisite evidentiary basis or foundation to present his opinions about *Bacho* or *Mendoza* in this case. As such, Lewis's aforementioned testimony and opinions, as well as any other expert's reliance on Lewis's opinions, should be excluded, and this Motion should be GRANTED.

This 10th day of March, 2025.

          WEINBERG, WHEELER, HUDGINS,
          GUNN & DIAL, LLC

          */s/ Aaron Chausmer*

| | |
|---|---|
| 3344 Peachtree Road, N.E.<br>Suite 2400<br>Atlanta, GA 30326<br>Phone:  404-876-2700<br>Fax:   404-875-9433<br>rhill@wwhgd.com<br>achausmer@wwhgd.com | Richard H. Hill, II<br>Georgia Bar No. 354425<br>Aaron B. Chausmer<br>Georgia Bar No. 119998<br>*Attorneys for Defendant Rough Country, LLC* |

## **RULE 7.1D CERTIFICATE OF TYPE, FORMAT AND FONT SIZE**

Pursuant to Local Rule 7.1D of the United States District Court of the Northern District of Georgia, the undersigned certifies that the foregoing submission to the Court complies with Local Rule 5.1 in that it was computer-processed, double-spaced between lines, and used Times New Roman font of 14 point size.

|  |  |
|---|---|
|  | WEINBERG, WHEELER, HUDGINS, GUNN & DIAL, LLC |
| 3344 Peachtree Road, N.E.<br>Suite 2400<br>Atlanta, GA 30326<br>Phone:  404-876-2700<br>Fax:  404-875-9433<br>rhill@wwhgd.com<br>achausmer@wwhgd.com | */s/ Aaron Chausmer*<br>Richard H. Hill, II<br>Georgia Bar No. 354425<br>Aaron B. Chausmer<br>Georgia Bar No. 119998<br>*Attorneys for Defendant Rough Country, LLC* |

## **CERTIFICATE OF SERVICE**

This is to certify that I have electronically served the foregoing filing with the Clerk of Court via CM/ECF, which will send a copy to the following attorneys of record:

Tedra L. Cannella
Robert H. Snyder, Jr.
Devin Mashman
CANNELLA SNYDER LLC
315 W Ponce de Leon Ave
Suite 885
Decatur, GA 30030

***ATTORNEYS FOR PLAINTIFFS***

This 10th day of March, 2025.

                                            */s/ Aaron Chausmer*
                                            Aaron B. Chausmer
                                            Georgia Bar No. 119998