# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# GAINESVILLE DIVISION

| | |
|---|---|
| SANTANA BRYSON and JOSHUA BRYSON, as Administrators of the Estate of C.Z.B., and as surviving parents of a deceased minor, C.Z.B., <br><br> Plaintiffs, <br><br> v. <br><br> ROUGH COUNTRY, LLC, <br><br> Defendant. | Civil Action No. <br><br> 2:22-CV-17-RWS |

## DEFENDANT ROUGH COUNTRY'S MOTION IN LIMINE REGARDING GEORGIA'S OLD O.C.G.A. § 40-8-6

COMES NOW Defendant Rough Country, LLC, and hereby moves this Court *in limine* requesting that an Order be entered prohibiting, excluding, limiting, and suppressing any and all evidence, proffers, tenders, comments, statements, testimony, colloquy, or any other utterance or allusion in the presence of the jury with respect to Georgia's old O.C.G.A. § 40-8-6.

Throughout this case, Plaintiffs have alleged that the Rough Country lift kit installed on Hunter Elliott's 2016 Ford F-250 Super Duty truck violated Georgia law and, more specifically, the old § 40-8-6. Accordingly, Rough Country reasonably anticipates that Plaintiffs will attempt to introduce evidence, testimony, or argument

about whether the lift kit on Mr. Elliott's 2016 Ford F-250 Super Duty truck violated Georgia law or some similar premise.

Specifically, in 2020, at the time of Plaintiffs' accident ("the Accident"), there were two statutes that addressed alterations to a vehicle's suspension: O.C.G.A. §§ 40-8-6 and 40-8-6.1 (collectively, "the Old Statutes"). The first Old Statute, § 40-8-6, pertained to "private passenger motor vehicle[s]," and the second Old Statute, § 40-8-6.1, pertained to "truck[s]." The Old Statutes have since been amended, effective July 1, 2024, and replaced with a new O.C.G.A. § 40-8-6 ("the Current Statute"), which struck the Old § 40-8-6 in its entirety. The Old § 40-8-6.1 was renumbered as the Current Statute, and it dropped any distinction among motor vehicles (*i.e.*, was the motor vehicle a "private passenger motor vehicle" or "truck"). There are two critical revisions of these statutes under the Current Statute. *First,* whereas the Old Statutes distinguished between "private passenger motor vehicles" and "trucks," the new Current Statute simply applies to "any motor vehicle." *Compare* O.C.G.A. § 40-8-6 (old), § 40-8-6.1 (old), and § 40-8-6 (new). *Second*, the calculation of the permissible height of a motor vehicle's suspension system is no longer based on "the factory recommendation for such vehicle;" it is based on the height of the vehicle from "the surface of the street." *Compare* O.C.G.A. § 40-8-6 (old) and § 40-8-6 (new).

There is no dispute that Mr. Elliott's F-250 Super Duty truck complied with both the Old § 40-8-6.1 and the Current Statute.

### ARGUMENT AND CITATIONS OF LEGAL AUTHORITY

I. <u>Applicable Law</u>

A motion *in limine* is a pretrial motion by which a party seeks to exclude inadmissible or prejudicial evidence before it is actually offered at trial. *See, e.g., Luce v. United States*, 469 U.S. 38, 40 n. 2 (1984). "The real purpose of a Motion in Limine is to give the trial judge notice of the movants' position so as to avoid the introduction of damaging evidence which may irretrievably affect the fairness of the trial." *Soto v. Geico Indem. Co.*, No. 6:13-CV-181-ORL-40KRS, 2014 WL 3644247, at *1 (M.D. Fla. July 21, 2014) (citation and internal quotation marks omitted). Judges have broad discretion when ruling on such motions. *See, e.g., Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1104-5 (11th Cir. 2005). Further, "[i]t is 'an important tool available to the trial judge to ensure the expeditious and evenhanded management of the trial proceedings'." *Benjamin v. Experian Info. Sols., Inc.*, No. 1:20-CV-2466-RWS, 2022 WL 1697876, at *1 (N.D. Ga. Mar. 25, 2022).

Rough Country shows that the matters set forth herein are not relevant to any issue at trial in this case, and they are inadmissible under the law for any purpose. Alternatively, the prejudicial nature or likelihood of confusing the jury based on such

matters exceed any probative value that they might have in connection with this case. Permitting the questioning of witnesses, comments in the presence of the jurors or prospective jurors or the offering documentary or other evidence in the matters addressed herein would unduly prejudice or likely mislead the jury, and sustaining objections to such questions, comments, or other such matters would not cure such prejudice. Rather, doing so would reinforce the impact of such prejudicial matters in contraventions of the law.

Accordingly, Rough Country moves *in limine* to bar and preclude Plaintiffs from making inquiry, reference, or argument as to the topics addressed herein. Rough Country further requests an order directing Plaintiffs' counsel to inform any and all of Plaintiffs' witnesses of the Court's orders regarding the matters set forth and instructing any and all such witnesses to refrain from mentioning any such matters in the presence and hearing of all jurors or prospective jurors until such time as the Court may enter an order that such matters have become admissible in this case.

II. The Old § 40-8-6 Would Likely Mislead the Jury and Would be Prejudicial to Rough Country

Although Rough Country contests the constitutionality of the Old § 40-8-6 in this case, established Georgia law states that the Court should address evidentiary issues before considering whether a statute is constitutional. *See, e.g.*, *State v. Randall*, 897 S.E.2d 444, 447 – 48 (2024) ("if evidence . . . is due to be excluded as

more prejudicial than probative, there will be 'no occasion to reach the merits of his constitutional claim'," and "rather than 'jumping straight to the constitutional question, the trial court should have resolved the [evidentiary] question first'.")

Rule 403 allows the exclusion of "relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Rough Country shows that any evidence, testimony, or argument about the Old § 40-8-6 should be excluded because its vagueness would likely mislead the jury. Additionally, it would be unfairly prejudicial to Rough Country.

This case is not about whether Mr. Elliott's lift kit violated the Old § 40-8-6.[1] Rather, it is about whether the lift kit caused the death of C.Z.B. As such, while the Old Statutes may be probative about some ancillary issues, its overall value would is excludable under Rule 403.

*First*, the Old § 40-8-6 reads, in pertinent part, that:

> [i]t shall be unlawful to operate any private passenger motor vehicle upon any highway, roadway, or street if the suspension system of such vehicle has been altered more than two inches above or below *the factory recommendation* for any such vehicle.

---

[1] Plaintiffs previously represented to the Court that their negligence claim is not a negligence per se claim based on the Old § 40-8-6. [Doc. 109, at 7 ("the Brysons have never argued negligence per se").]

(Italics added.) The Old § 40-8-6's reference to "factory recommendation" is unduly vague because that term is neither defined in the specific statute, in Title 40, nor the Georgia Code in general.[2] Nor is it known the general public. *See, e.g.*, *Taylor v. Keltch*, No. 1:06-CV-705-WSD, 2007 WL 9701955, at *3 (N.D. Ga. Jan. 31, 2007) (excluding "the phrase 'acting stupid' [a]s inherently vague"). The fundamental flaw in Old § 40-6-8 is that there is no such thing as a "factory recommendation" and the statute does not provide a meaning or definition. This is where the vagueness arises. *See, e.g., Cotton States Mut. Ins. Co. v. Anderson,* 749 F.2d 663, 669 (11th Cir. 1984) (commercial statutes, despite being subject to lesser scrutiny than criminal ones, are "impermissibly vague . . . if they provide no rule or standard at all," such that they are "substantially incomprehensible"). The jurors would be left to guess at its precise meaning because it does not sufficiently define or explain the actual point from which the two inches are to be measured. The jurors would be left to speculate as to what the "factory recommendation" is or should be.

---

[2] This argument is similar to, but different than, Rough Country's argument that the Old § 40-8-6 is unconstitutionally vague raised below. Among other distinctions, the two arguments are subject to different legal standards.

In response, Plaintiffs argue that "'factory recommendation' refers to the manufacturer's suggestion of the advisable suspension height of its vehicle."[3] (Doc. 120-12, at 12.) Plaintiffs then contend that Ford prohibits "lifting the suspension of its vehicles *at all*." [*Id.* (italics in original).] This is not accurate. First, Plaintiffs admit that "[v]arious trim levels of Ford F-250 trucks have different front bumper heights," (Doc. 104-1, at 5 ¶ 10). The fact that Ford F-250 trucks come out of the "factory" with different suspension heights further shows that that there is no such "recommendation" by Ford for its F-250 trucks. Second, Ford itself sells lift kits under its "FordPerformance" moniker.[4] Third, Ford's own dealers routinely advertise and install lift kits.[5] In fact, the lift kit installed on Mr. Elliott's F-250 truck was installed by a local Ford dealership. The idea that Ford "prohibits" lift kits "of

---

[3] According to Plaintiff's own expert, Christopher Roche, Ford "doesn't make recommendations." [Ex. 1 (Excerpt from Initial Deposition of Roche), at 149:2-5 (referring to Ford's "Body Builder Layout Book").]

[4] *See* https://performanceparts.ford.com/category/24/Shocks-Adj-Suspension (last visited on March 4, 2025) (listing lift kits and other suspension modifications for various Ford models).

[5] *See, e.g.*, https://www.lathamfordmotors.com/service/service-parts-tips/lifted-truck-cost/ (last visited March 4, 2025) ("While you can choose to [install a lift kit] yourself, we strongly recommend that you leave this to the professionals at Ford of Latham."); https://www.portervilleford.net/service/service-and-parts-tips/lifted-truck-cost/ (last visited March 4, 2025) ("Learn more about the average cost to lift a truck with Porterville Ford and the different types of lift kits available to see which is the best decision for your Visalia driving demands").

its vehicles at all" is not supported by any evidence and it is based solely on Plaintiffs' speculative conclusions.

*Second*, the Old § 40-8-6 has been replaced in its entirety by the Current Statute. Under Georgia law, the Current Statute therefore controls. *Bellsouth Telecommunications, LLC v. Cobb Cnty.*, 824 S.E.2d 233, 239 (2019) ("where two statutes are in conflict, the later-enacted statute prevails over the one enacted earlier"). Here, the Old § 40-8-6 is in conflict with the Current Statute. Because the Old § 40-8-6 is no longer good law, it would be prejudicial to Rough Country if the jury were allowed to consider it (an outdated and superseded statute), especially because the Current Statute drops any reference to the 2-inch adjustment or the "factory recommendation" language found in the Old § 40-8-6 and replaced it with the language from the Old § 40-8-6.1.

*Third*, the Old § 40-8-6's reference to a 2-inch adjustment could improperly be construed by the jury in connection with Plaintiff's enhanced injury claim, *i.e.*, that C.Z.B. was somehow killed because Rough Country's lift kit exceeded the 2-inch adjustment. There is no evidence whatsoever that would support any such inference by the jury.

*Fourth*, while the Old § 40-8-6 may limit the installation of lift kits greater than two inches, that limitation only applies for "any highway, roadway, or street."

It does not apply to offroad usage, and there is no evidence that Rough Country knew how the lift kit would be used by the buyer.

As such, it would be misleading to the jury and prejudicial to Rough Country to allow any evidence, testimony, or argument about the Old § 40-8-6.

### III. The Lift Kit at Issue Did Not Violate the Old § 40-8-6 Because It was Installed on a Truck

Additionally, it would be misleading and confusing to the jury if they heard evidence, testimony, or argument about the Old § 40-8-6 because Rough Country's lift kit in this case did not violate that statute. The lift kit in this case was admittedly in compliance with both Old § 40-8-6.1 and the Current Statute. Similarly, it would be misleading to the jury for Plaintiffs to argue that Mr. Elliott's F-250 Super Duty truck was anything other than a "truck" under Georgia Law.

The Old § 40-8-6.1 governed the allowable height of "trucks" in Georgia at the time of the Accident. Although the permissible height of a truck is based on weight, the lowest weight's limit was "27 inches as measured from the surface of the street to the lowest point on the frame of the truck." Old § 40-8-6.1(b). It is undisputed that Mr. Elliott's F-250 Super Duty truck did not exceed the maximum allowable 27-inch height. (*See* Doc. 95-6, at ¶ 11.) As such, the only issue is whether Mr. Elliott's F-250 Super Duty truck is a "truck" within the meaning of this statute or a "passenger motor vehicle" within the scope of the Old § 40-8-6.

The interpretation of statutes is a question of law for the court. *Montgomery Cnty. v. Hamilton,* 337 Ga. App. 500, 503 (2016). "When presented with a question of statutory interpretation, [the court] begin[s] by examining the statute's plain language, reading the text in its most natural and reasonable way, as an ordinary speaker of the English language would." *Sosebee v. State,* 317 Ga. 424, 427 n. 2 (2023) (quoting *Green v. State,* 311 Ga. 238, 242 (1) (2021)). Statutory terms are given "their plain and ordinary meaning," *Ferguson v. Spraggins,* 371 Ga. App. 727, 902 S.E.2d 708, 714 (2024).

The terms used in Old § 40-8-6.1 were defined in O.C.G.A. § 40-1-1, which was also amended, effective July 1, 2024. The old O.C.G.A. § 40-1-1(70) defined "truck" to "mean[] every motor vehicle *designed,* used, or maintained primarily for the transportation of property." (Italics added.) In contrast, Old § 40-8-6's term, "passenger motor vehicle," was (and is) not defined in O.C.G.A. § 40-1-1. The closest term, "passenger car," is defined in subsection (41) to refer to "every motor vehicle . . . designed for carrying ten passengers or less and used for the transportation of persons." Here, the terms "truck" and "car" are well-known and understood. Sedans, coupes, and sport utility vehicles (SUVs) are designed to carry passengers; they do not have a space designed for the transportation of property like trucks do.

Mr. Elliott's F-250 Super Duty truck is unambiguously a "truck." It was designed to carry property in its "bed," a lower walled area specifically designed for that task. The 2016 F-250 Super Duty truck's ability to transport up to 23,500 lbs.[6] is further evidence that it was designed to transport property and not people. According to Plaintiffs, the 2016 F-250 Super Duty truck had only five seats. (Doc. 120-12, at 7). If the average person weighed 200 lbs., that would only total 1,000 lbs., *leaving the 2016 F-250 Super Duty truck with capacity to haul another 22,500 lbs. of property. Passenger weight would require only 5% of the F-250 Super Duty's hauling capacity*. The 2016 Ford F-250 Super Duty truck would not have been designed with that much power or hauling capacity if its primary purpose was the transportation of people.

The fact that Mr. Elliott's F-250 Super Duty truck is a "truck" cannot be disputed, as such vehicles are plainly and ordinarily referred to as "trucks" by the manufacturers, dealers, and the public.[7] Further, as described on the Ford Motor Company's website, the F-250 Super Duty truck is a "truck," has won numerous

---

[6] *See* Exhibit 2 hereto (Excerpt from Owner's Manual for the 2016 Ford F-250, at 3 (194; BRYSON 000954) (stating the its Gross Combined Weight Rating).

[7] *See* Merriam-Webster's Online Dictionary, https://www.merriam-webster.com/dictionary/pickup%20truck (last visited August 8, 2024) (defining "pickup truck" as "a light truck having an enclosed cab and an open body with low sides and tailgate").

awards as a "Heavy-Duty Truck," including being "America's #1 Heavy-Duty Truck,"[8] and "For 48 years straight, Ford F-Series® has been America's best-selling line of trucks."[9] As such, Mr. Elliott's F-250 truck is governed by the Old § 40-8-6.1 ("trucks"), and not the Old § 40-8-6 ("passenger vehicles"). And since Plaintiffs admit that Mr. Elliott's F-250 Super Duty truck did not exceed a height of 27 inches from street level, notwithstanding the installation of Rough Country's 4.5-inch lift, it was not in violation of Georgia law and Plaintiffs' assertion is wrong.

Plaintiffs argue that Mr. Elliott's F-250 Super Duty truck is governed by the Old § 40-8-6 because it is a "passenger car" under Georgia statute. (Doc. 120-12, at 7.) This argument is wrong for two reasons. *First,* as discussed above, the term "passenger car" is not found anywhere in the Old § 40-8-6; that statute uses the term "private passenger vehicle." *Second*, even if that definition applied to the Old § 40-8-6, Mr. Elliott's F-250 Super Duty truck does not meet the definition because it was *designed* and used *primarily* for the transportation of property, as contemplated by Old § 40-8-61, as previously demonstrated. Even Plaintiffs acknowledge that "[t]he Owner's Manual for the 2016 Ford F-250 confirms that passengers should not ride in the cargo space of the vehicle," (Doc. 120-12, at 7 n. 6.) This is because the F-250

---

[8] *See* Ford Motor Company, *2025 Super Duty,* http://ford.com/trucks/super-duty (last visited March 3, 2025).

[9] *See id.*, *2025 Super Duty,* http://ford.com/trucks/super-duty (last visited March 3, 2025).

Super Duty truck's cargo bed is designed for the transportation of property. Mr. Elliott's F-250 Super Duty truck falls squarely within O.C.G.A. § 40-1-1(70)'s definition.[10] As such, the specific "truck" definition controls over the more general description of a "passenger car." *See Bellsouth Telecommunications, LLC*, 824 S.E.2d at 239 ("the more specific statute governs over the more general one").

    IV.    <u>Old § 40-8-6 is Unconstitutionally Vague</u>

Based on their pleadings and filings with the Court, it appears that Plaintiffs' assertion is based on the Old § 40-8-6, which as shown previously is inapplicable to the present case. But to the extent that Plaintiffs may still attempt to present or argue Old § 40-8-6 to the jury, the statute is impermissible vague, as explained above.

The Old § 40-8-6 was a criminal statute because "[a]ny person violating [it] shall be guilty of a misdemeanor." Old § 40-8-6(d). As a criminal statute, the Old § 40-8-6 was held to a higher standard. It must give "fair warning of what constitutes criminal conduct." *McNair v. State,* 285 Ga. 514, 517, 678 S.E.2d 69, 71 (2009).

---

[10] Plaintiffs assert that Rough Country's expert (Mr. Grimes) testified that the primary purpose of an F-250 truck is to transport people. (Doc. 120-12, at 8 n. 9.) This is misleading because Mr. Grimes was never designated as an expert to determine whether an F-250 truck is a "truck" or passenger car" under Georgia law. Further, Mr. Grimes did not say what Plaintiffs assert he said. At that moment, Mr. Grimes was discussing how he does work with "heavy trucks," such as "a tractor-trailer, a tractor semitrailer, commercial heavy truck: a Freightliner, a Peterbilt." (Doc. 102-3, at 12:20-13:17.)

Because the Old § 40-8-6 is a criminal statute, Plaintiffs contend that Rough Country lacks standing to contest its constitutionality. (Doc. 120-12, at 9 *et seq.*). Plaintiffs' argument is that the Old § 40-8-6 has not been applied to Rough Country and it therefore has not suffered an "injury in fact." They are wrong. That is exactly what Plaintiffs seek to do in this case: apply the Old § 40-8-6 to Rough Country and its conduct. Rough Country has standing in this instance because of Plaintiffs' invocation of the statute against it. *See, e.g., Interest of C.C.*, 314 Ga. 446, 453 (2022) ("a party raising an as-applied vagueness challenge has standing to assert only his own, actual rights, not hypothetical situations or the rights of others"). It would be unfair and inequitable to allow Plaintiffs to invoke the Old § 40-8-6 but not allow Rough Country to defend itself against it.

The Old § 40-8-6 is unconstitutionally vague because "it fails to convey [a] 'sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices'," *Franklin v. State,* 279 Ga. 150, 151, 611 S.E.2d 21, 22 (2005). "A statute is impermissibly vague when people of common intelligence are left to guess at its precise meaning or when the standard of conduct is not specified." *Martin v. Wrigley,* 540 F.Supp.3d 1220, 1232 (N.D. Ga. May 21, 2021). Here, the Old § 40-8-6's inclusion of the term "factory recommendations" makes the statute impermissibly vague because it "may leave a reasonable individual to speculate as to what conduct is prohibited." *Martin,* 540 F.Supp.3d at 1232.

Specifically, because the phrase "factory recommendation" is neither defined nor explained, a person does not know from which height the 2-inch limit begins. There is no evidence in this case establishing the "factory recommended" height for Mr. Elliott's F-250 Super Duty truck. Indeed, Trooper Phillips, of the Georgia State Patrol, testified that he "would not know how to measure . . . whether it was factory stock or if it was illegal per the statute." (Doc. 95-9, at 64:4-7.)

When examining the Old § 40-8-6, it must be read "in its most natural and reasonable way," *Domingue v. Ford Motor Co.,* 314 Ga. 59, 61, 875 S.E.2d 720, 724 (2022). The first step is to "begin with the ordinary meaning of that phrase," unless the term is one of art or technical in nature. *Harris v. State,* 286 Ga. 245, 246, 686 S.E.2d 777, 778-79 (citing O.C.G.A. § 1-3-1(b)). The analysis therefore begins with its ordinary meaning, provided that "persons of common intelligence need not necessarily guess at its meaning nor differ as to its application," *Franklin,* 279 Ga. at 22-23. The fundamental flaw in the Old § 40-6-8 is that there is no such thing as a "factory recommendation" and the statute does not provide a meaning or definition. This is where the vagueness and unconstitutionality arises. *See, e.g., Cotton States Mut. Ins. Co. v. Anderson,* 749 F.2d 663, 669 (11th Cir. 1984) (commercial statutes, despite being subject to lesser scrutiny than criminal ones, are "impermissibly vague . . . if they provide no rule or standard at all," such that they are "substantially incomprehensible"). Because there is no commonly understood

meaning to the "factory recommendation," the term is unconstitutionally vague. *Franklin,* 279 Ga. at 23 (examining whether "persons of average intelligence can readily ascertain" the meaning of the term); *see McNair,* 285 Ga. 517, 678 S.E.2d at 71 (driving statute was unconstitutionally vague where material term was left to multiple interpretations). Unlike the old O.C.G.A. § 40-8-6.1, a person "must necessarily guess" at what O.C.G.A. § 40-8-6 means when it references "factory recommendations," and this renders it "too vague to be enforced . . . and [it] is therefore unconstitutional under the due process clauses of the Georgia and United States Constitutions." *McNair,* 285 Ga. at 517, 678 S.E.2d at 71.

Therefore, because O.C.G.A. § 40-8-6 is unconstitutionally vague, Plaintiffs should be barred from presenting any evidence, testimony, or argument about it to the jury.

## CONCLUSION

Accordingly, for the foregoing reasons, any reference to the Old § 40-8-6 should be excluded from the trial of this case.

This 10th day of March, 2025.

                                          WEINBERG, WHEELER, HUDGINS, GUNN & DIAL, LLC

                                          */s/ Aaron Chausmer*

| 3344 Peachtree Road, N.E. | Richard H. Hill, II |
| Suite 2400 | Georgia Bar No. 354425 |
| Atlanta, GA 30326 | Aaron B. Chausmer |
| Phone: 404-876-2700 | Georgia Bar No. 119998 |

Fax:   404-875-9433  
rhill@wwhgd.com  
achausmer@wwhgd.com

*Attorneys for Defendant Rough Country, LLC*

**RULE 7.1D CERTIFICATE OF TYPE, FORMAT AND FONT SIZE**

Pursuant to Local Rule 7.1D of the United States District Court of the Northern District of Georgia, the undersigned certifies that the foregoing submission to the Court complies with Local Rule 5.1 in that it was computer-processed, double-spaced between lines, and used Times New Roman font of 14 point size.

|  |  |
|---|---|
|  | WEINBERG, WHEELER, HUDGINS, GUNN & DIAL, LLC |
|  | */s/ Aaron Chausmer* |
| 3344 Peachtree Road, N.E. | Richard H. Hill, II |
| Suite 2400 | Georgia Bar No. 354425 |
| Atlanta, GA 30326 | Aaron B. Chausmer |
| Phone:  404-876-2700 | Georgia Bar No. 119998 |
| Fax:  404-875-9433 | *Attorneys for Defendant Rough Country,* |
| rhill@wwhgd.com | *LLC* |
| achausmer@wwhgd.com |  |

**CERTIFICATE OF SERVICE**

This is to certify that I have electronically served the foregoing filing with the Clerk of Court via CM/ECF, which will send a copy to the following attorneys of record:

Tedra L. Cannella
Robert H. Snyder, Jr.
Devin Mashman
CANNELLA SNYDER LLC
315 W Ponce de Leon Ave
Suite 885
Decatur, GA 30030

*ATTORNEYS FOR PLAINTIFFS*

This 10th day of March, 2025.

*/s/ Aaron Chausmer*
Aaron B. Chausmer
Georgia Bar No. 119998