## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## GAINESVILLE DIVISION

| | |
|---|---|
| SANTANA BRYSON and JOSHUA BRYSON, as Administrators of the Estate of C.Z.B., and as surviving parents of a deceased minor, C.Z.B., | |
| Plaintiffs, | Civil Action No. |
| v. | 2:22-CV-17-RWS |
| ROUGH COUNTRY, LLC, | |
| Defendant. | |

## DEFENDANT ROUGH COUNTRY'S OMNIBUS MOTIONS IN LIMINE

COMES NOW Defendant Rough Country, LLC, and hereby move this Court *in limine* requesting that an Order be entered prohibiting, excluding, limiting, and suppressing any and all evidence, proffers, tenders, comments, statements, testimony, colloquy, or any other utterance or allusion in the presence of the jury with respect to the following:

(1)    Filing this Motion;

(2)    Vouching for Witnesses;

(3)    Uncalled Witnesses;

(4)    Financial Status of the Parties;

(5)    Manner of the Litigation and Discovery Issues;

(6)    Offers in Compromise

(7)    Admission of Evidence Not Previously Produced and Documents Not previously Addressed in the Pre-Trial Order;

(8)    Liability Insurance Coverage;

(9)    "Send a Message" Arguments;

(10)   Asking Jurors to Put Themselves in Plaintiffs' Place;

(11)   Ineffectiveness of Money Damages;

(12)   Evidence of How Plaintiffs' Injury Has Impacted Others;

(13)   New Theories of Recovery;

(14)   Lift Kit Industry in General;

(15)   References to the "Safety Rules," "Safety of the Community," "Safety of the Jurors," or Potential Harm;

(16)   Commentary Regarding Rough Country's Anticipated Evidence During Opening Statements;

(17)   Reptile Theory;

(18)   Improper Use of Treatises and Materials; or

(19)   Approaching the Bench.

## ARGUMENT AND CITATION OF AUTHORITY

### I.    APPLICABLE LAW

A motion *in limine* is a pretrial motion by which a litigant seeks to exclude inadmissible or prejudicial evidence before it is actually offered at trial. *Luce v. United States*, 469 U.S. 38, 40 n. 2 (1984). "The real purpose of a Motion in Limine is to give the trial judge notice of the movants' position so as to avoid the introduction of damaging evidence which may irretrievably affect the fairness of the trial." *Soto v. Geico Indem. Co.*, No. 6:13-CV-181-ORL-40KRS, 2014 WL 3644247, at *1 (M.D. Fla. July 21, 2014) (citation and internal quotation marks omitted). Judges have broad discretion when ruling on such motions. *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1104-05 (11th Cir. 2005). Further, "[i]t is 'an important tool available to the trial judge to ensure the expeditious and evenhanded management of the trial proceedings'." *Benjamin v. Experian Info. Sols., Inc.*, No. 1:20-CV-2466-RWS, 2022 WL 1697876, at *1 (N.D. Ga. Mar. 25, 2022).

Rough Country assert the matters set forth herein are irrelevant to any issue on trial in this case and are inadmissible under the law for any purpose. Permitting interrogation of witnesses, comments in the presence of the jurors or prospective jurors or offering documentary or other evidence of the matters listed herein below would unduly prejudice the jury, and sustaining objections to such question,

comments, or offers would not cure such prejudice, but rather reinforce the impact of such prejudicial matters on the jurors, in contravention of the law.

Rough Country moves *in limine* to bar Plaintiff from making inquiry, reference or argument as to the following topics. Rough Country further request an order directing Plaintiffs' counsel to inform any and all Plaintiffs' witnesses of the Court's orders regarding the matters set forth within Rough Country' Motions *in limine*, and to instruct any and all such witnesses to refrain from mentioning any such matters in the presence and hearing of all jurors or prospective jurors until defense counsel has obtained a ruling in compliance with this order such that matters would be admissible in this case.

## II.    <u>MOTIONS</u>

### 1.    Filing this Motion.

Any comment, reference, suggestion or inference or the introduction of any evidence by Plaintiffs' counsel that Motions *in limine* have been presented to or ruled upon by the Court. Rough Country moves that Plaintiffs' counsel is instructed not to suggest to the jury, directly or indirectly, that Rough Country has sought to exclude any matters to this suit by filing its Motions *in limine*. FRE 401, 402, and 403.

### 2.    Vouching for Witnesses.

Any comment, reference, question, suggestion, or inference by Plaintiffs'

counsel as to whether or not any party or any party's witnesses or attorneys believe that any of the other parties or witnesses are honorable or otherwise worthy of belief. FRE 401, 402, and 403; *United States v. Cano,* 289 F.3d 1354, 1365 (11th Cir. 2002) (A party improperly vouches for the credibility of a witness when it makes statements that a reasonable jury could believe suggest a "personal belief in the witness's credibility"). This type of questioning is wholly improper under the Federal Rules of Evidence and invades the province of the jury, which will be charged with weighing the ample evidence related to Plaintiffs' witnesses' credibility and deciding whether their testimony is worthy of belief. Rough Country respectfully request Plaintiffs' counsel be instructed to refrain from eliciting testimony vouching for the credibility of any witness.

      **3.    Uncalled Witnesses.**

Any comment, reference, suggestion or inference or the introduction of any evidence by Plaintiffs' counsel that Rough Country has not called to testify any witness equally available to both parties in this case.  FRE 401, 402, and 403. Further, Rough Country request the Court exclude any comment, reference, suggestion, or inference or the introduction of any evidence by Plaintiffs' counsel as to the possible testimony of a witness available to Rough Country or Plaintiff who is not actually called to testify in this case. Comments regarding what an uncalled witness might say or not say at trial would constitute improper

speculation by Plaintiffs and would prejudice the jury against the Rough Country by suggesting that Rough Country are "hiding" relevant or valuable testimony and evidence from them. Rough Country requests an order precluding counsel from offering speculative commentary and argument regarding the potential testimony of uncalled witnesses.  FRE 401, 402, and 403.

>    4.    **Financial Status of the Parties.**

>        a.  **Such Evidence is Inadmissible During Liability Phase (Phase I)**

Any comment, reference, suggestion, or inference or the introduction of any evidence by Plaintiffs' counsel as to the financial status of the parties to this suit should be excluded at trial. The size of Rough Country or its profits, among other issues, are irrelevant to any matter to be determined at the trial of this matter unless and until the jury finds that punitive damages should be awarded to Plaintiffs. FRE 401, 402, and 403; *see also Alimenta (U.S.A.), Inc. v. Cargill, Inc.*, 861 F.2d 650, 652 (11th Cir. 1988) (affirming trial court's order to exclude *in limine* reference to defendant corporation's size); *Adams Labs., Inc. v. Jacobs Eng'g Co. Inc.*, 761 F.2d 1218, 1226 (7th Cir. 1985) (internal quotations omitted) ("If the wealth and size of a corporation are not at issue, counsel is bound to refrain from making reference to such size and wealth, or bear the risk of an unfavorable appellate reception."); *Sarantis v. AD, Inc.*, No. CV–06–2153, 2008 WL 4057007, * 8-9 (D. Ariz. Aug. 28, 2008) (evidence of size, market share, and financial condition not

admissible until such time as plaintiff presents sufficient evidence to warrant an instruction on punitive damages); *Fidelity Nat. Financial, Inc. v. Friedman*, No. CV 00–06902, 2002 WL 34369457, *1 (C.D. Cal. May 14, 2002) (evidence of corporation's profits, financial condition, and size excluded and irrelevant for all issues other than bifurcated punitive damages phase of trial). Such evidence can only serve to improperly suggest Rough Country has significant assets to pay a substantial verdict award. Therefore, Rough Country requests that all evidence suggesting the wealth of Rough Country be excluded, including but not limited to, the following: assets or other reference to its size or revenue. FRE. 401, 402, and 403.

### b. If the Case Reaches Phase II, Financial Status, Size, and Wealth Should Also Be Limited.

If this case reaches the punitive damages phase, the financial status evidence that may be admitted should be limited to Rough Country's net worth attributable to its activities in Georgia.  In *State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408 (2003),* the Supreme Court ruled on this issue, stating that "[a] State cannot punish a defendant for conduct that may have been lawful where it occurred." *State Farm*, 538 U.S. at 421. The Supreme Court continued: "Nor as a general rule, does a State have a legitimate concern in imposing punitive damages to punish a defendant for unlawful acts committed outside of the State's

jurisdiction." *Id.; see also BMW of N. Am., Ins. v. Gore*, 517 U.S. 559, 585 (1996) ("While each State has ample power to protect its own consumers, none may use the punitive damages deterrent as a means of imposing its regulatory policies on the entire Nation."). State and federal courts have applied this *State Farm* principle in limiting plaintiffs' use of financial evidence to that connected to in-state activities. *See also Johansen v. Combustion Eng'g, Inc.*, 170 F.3d 1320, 1333 (11th Cir. 1999) ("punitive damages must be based upon conduct in a single state-the state where the tortuous conduct occurred-and reflect a legitimate state interest in punishing and deterring that conduct"); *Hockensmith v. Ford Motor Co., No. 1:01–cv–3645,* 2003 WL 25639639 (N.D. Ga. April 17, 2003) (evidence of defendant's sales and/or profits for the purpose of establishing the profitability of the defendant's wrongdoing in punitive damages phase shall be limited to defendant's conduct occurring in Georgia); *White v. Ford Motor Co.,* 312 F.3d 998, 1014-16 & n.69 (9th Cir. 2002) (stating that the Supreme Court "imposed a territorial limitation on punitive damages in the interest of federalism," and holding that allowing the jury "to measure damages by [the alleged] harm to the whole country" was a "substantive error ... of federal constitutional law").

In order for out-of-state misconduct, including the accumulation of wealth, to be considered, it "must have a nexus to the specific harm suffered by the plaintiff." Furthermore, "[a] defendant's dissimilar acts, independent from the acts

upon which liability was premised, may not serve as the basis for punitive damages. A defendant should be punished for the conduct that harmed the plaintiff, not for being an unsavory individual or business." State Farm, 538 U.S. at 422-23; *see also Mathias v. Accor Economy Lodging, Inc.*, 347 F.3d 672, 676 (7th Cir. 2003) ("sanctions should be based on the wrong done rather than on the status of the defendant; a person is punished for what he does, not for who he is, even if the who is a huge corporation").

To safeguard these constitutionally mandated due process protections, the jury should not be permitted to consider Rough Country's net worth, income, or wealth attributable to out-of-state activities. If the jury were permitted to consider Rough Country's consolidated net worth, it would by necessity take into account wealth acquired in other states with no nexus to any conduct that allegedly harmed these Plaintiffs. In doing so, the jury would implicitly punish Rough Country for lawful out-of-state activities in violation of Rough Country's due process rights and penalize it, not just for its conduct, but for being a large national company. Accordingly, if *any* evidence of net worth is presented, Plaintiffs should be precluded from offering evidence of, or making reference to Rough Country's wealth, net worth, or income attributable to activities outside of Georgia.

### 5.    Manner of the Litigation and Discovery Issues

Over the course of this litigation, the parties have engaged in extensive discovery and, naturally, discovery disputes have arisen and were dealt with by the parties most frequently, and on occasion, by the Court. Evidence related to these discovery disputes and the manner in which the case has been litigated has no bearing on the issues the jury will be deciding in the trial of this matter (liability and possibly damages). This type of evidence would only serve to confuse the jury, prejudice the parties, and possibly lead to a verdict based on the parties attorneys' litigation tactics, rather than the permissible evidence in the case.

Because discovery disputes and the manner in which the parties prosecute and/or defend their cases are patently irrelevant and prejudicial, courts routinely exclude this type of evidence. *Swoope v. CSX Transportation, Inc*., 4:13-CV-0307, 2015 WL 12564948, *6 (N.D. Ga. July 29, 2015) (discovery disputes are irrelevant to issues in trial); *Borden v. Saxon Mortgage Services, Inc.*, No. 08–61851, 2010 WL 3834609 (S.D. Fla. Sept. 28, 2010); *Barrett v. Negrete*, No. 02–cv–2210, 2010 WL 2106235 (S.D. Cal. May 25, 2010). Therefore, the parties should be prohibited from introducing any evidence in this matter regarding discovery disputes, including discovery motions, discovery objections, the timing of document productions and any other evidence regarding the manner in which the case has been prosecuted and/or defended.

**6.      Offers in Compromise**

Any comment, reference, suggestion, or inference or the introduction of any evidence by Plaintiffs' counsel as to any offer in compromise, compromise itself, offers to mediate, offers of judgment, or the declination of an offer to mediate or compromise. FRE 401, 402, 403, and 408(b) (bars settlements or offers to settled in order to prove liability for, invalidity of, or amount of a claim); *Westchester Specialty Ins. Servs., Inc. v. U.S. Fire Ins. Co.*, 119 F.3d 1505, 1513 (11th Cir. 1997) ("Rule 408 generally bars the introduction of evidence regarding settlements or offers to settle if such evidence is offered to prove the validity or invalidity of a claim or its amount"). Under Rule 408, evidence of settlement is inadmissible for purposes of establishing liability.

Therefore, when weighed against the exclusion of Rule 408 and the concerns of undue prejudice and cumulative evidence, this Court should not permit evidence of settlements or settlement negotiations arising out of the subject accident, pursuant to FRE 403 and 408.

**7.      Admission of Evidence Not Previously Produced and Documents Not Previously Addressed in the Pre-Trial Order.**

Any comment, reference, suggestion, or inference or the introduction of any evidence by Plaintiffs' counsel regarding any testimony or documentary or other evidence which Plaintiff or his agents or witnesses failed or refused to produce in discovery, either due to objection or otherwise, in accordance with Rule 26, should

be excluded. Rough Country further requests this Court order that should Plaintiffs wish to introduce any document, photograph, video, or the like not previously addressed by the pre-trial order into evidence, that the same be tendered to the court and opposing counsel outside the presence of the jury to determine its relevance and suitability for introduction into evidence prior to and before informing the jury as to its existence or its tender into evidence.

### 8.    Liability Insurance Coverage

Any comment, reference, suggestion, or inference or the introduction of any evidence by Plaintiffs' counsel during *voir dire* that Rough Country has liability insurance should be barred at trial. Attorneys are expressly prohibited during *voir dire* from questioning the jury as to insurance when the trial court in qualifying the jury panel has previously asked the proper qualifying questions while under oath. FRE 411.

Prospective jurors should further not be prequalified or *voir dired* as to insurance by the Court, unless a prospective juror states (in response to an inquiry concerning current employment) that he or she presently works for an insurance company. Additionally, Rough Country requests that the Court itself qualify the jury as to the existence of insurance and instruct all parties and their counsel not to inject the prejudicial issue of insurance into this case at any time. Any mention of the existence of Rough Country's insurance coverage should be excluded as it has

no relevance to the issues to be tried. The only motivation for mentioning the existence of insurance would be to generate prejudice against Rough Country. It is, therefore, appropriate for the Court to order in advance of trial that no mention be made of any issue concerning the existence of insurance coverage in this action, including but not limited to the amount of liability insurance coverage available.

**9.    "Send a Message" Arguments.**

Plaintiffs' counsel should not be allowed to make any damages argument aimed at suggesting that Rough Country or its industry should be deterred from any future conduct. Under Georgia law, counsel may not argue or otherwise encourage the jury to "send a message" to the industry in connection with an award of compensatory damages as such arguments are improper, irrelevant and substantially prejudicial. FRE 401, 402, and 403. Rough Country hereby moves the Court to exclude any argument, testimony, exhibits, or mention to the jury encouraging it to "send a message," by the size of the verdict or otherwise. Georgia courts have condemned "send a message" arguments as improper and highly prejudicial. *Central of Georgia R.R. Co. v. Swindle*, 260 Ga. 685, 398 S.E.2d 365, 367 (1990). Arguing to the jury that it should return an award that "sends a message" improperly allows a jury to infer purposeful wrongdoing on the part of a defendant and that there is a punitive aspect to the damages. Such arguments are only proper during the punitive damages phase of trial.

**10.    Asking Jurors to Put Themselves in Plaintiffs' Place.**

Any reference to the value of the case, or liability as if a juror were in Plaintiffs' position is improper and should be excluded. This is the classic "golden rule" argument, which has been resisted under Federal law. Plaintiffs' counsel should be ordered *in limine* not to make any such argument or suggestion to the jury during any phase of the trial. *McNely v. Ocala Star-Banner Corp.*, 99 F.3d 1068, 1071 n.1 (11th Cir. 1996); *Burrage v. Harrell*, 537 F.2d 837, 839 (5th Cir. 1976).

**11.    Ineffectiveness of Money Damages.**

Any argument that money damages are ineffective to fully compensate Plaintiffs, with the implicit idea that additional damages should be awarded, should be excluded *in limine*. Counsel's opinion that money damages are ineffective to compensate Plaintiffs is irrelevant to the issues to be tried in this case and, therefore, can only serve to improperly mislead the jury with prejudicial information. FRE 401, 402 and 403.

**12.    Evidence of How Plaintiffs' Injury Has Impacted Others.**

Any evidence of how Plaintiffs' injury, *i.e.*, the death of C.Z.B., has impacted family or friends should be excluded. Plaintiffs' family or friends cannot recover for their own emotional stress, hardship, or suffering as a result of the alleged injury to Plaintiffs. The only purpose of evidence of the emotional impact

of Plaintiffs' family and friends is to improperly solicit sympathy from the jury, and it should be excluded as irrelevant, immaterial, and unduly prejudicial. FRE 401, 402, and 403.

### 13.    New Theories of Recovery.

The Court should prohibit Plaintiffs from arguing any new or undisclosed theories of liability, causation, opinions, damages opinions, or theories of recovery at trial. Such arguments would be highly prejudicial to Rough Country and would violate the Federal Rules of Civil Procedure governing discovery, which were enacted to eliminate the possibility of surprise witness and expert opinions at trial. FRCP 26(a)(2) and 26(b). Plaintiffs should not be permitted to introduce new testimony or opinions that have not been disclosed to Rough Country in advance of trial such that Rough Country had an opportunity to explore same during the discovery period. Accordingly, this Court should exclude any testimony about any new or undisclosed theories of liability, causation, damages, or theories of recovery attributable to Rough Country.

### 14.    Lift Kit Industry in General

Counsel for Plaintiffs should not be allowed to make any argument aimed at suggesting that the lift kit industry will be punished by the jury's verdict or would deter future conduct of the industry. Under Georgia law, counsel may not argue or otherwise encourage the jury to "send a message" to the industry in connection

with an award of compensatory damages. *See Alexander Underwriters General Agency, Inc. v. Lovett*, 182 Ga. App. 769, 357 S.E.2d 258 (1987) (where plaintiff's counsel made reference to the "big" or "wealthy" status of defendants, trial court properly instructed jury to erase comment from their minds and admonished jury the case should be decided on its merits without regard to size, influence, or affluence of either party).

### 15.    References to the "Safety Rules," "Safety of the Community," "Safety of the Jurors," or Potential Harm.

Plaintiffs' counsel should be prohibited from arguing or presenting evidence of generalized "safety rules," "the safety of the community," or the "safety of the jurors," as such arguments ask the jury to make decisions based upon improper considerations and are not related to the issues relevant to this case. It is expected that Plaintiffs will seek to elicit evidence regarding certain generalized "safety rules," general rules for the "safety of the community," or testimony regarding the safest possible action. However, all such argument or evidence is irrelevant and prejudicial in that it seeks to permit the jury to make its decision based upon improper standards and bases.

Any evidence or argument related to the safest possible course of action is irrelevant and prejudicial in that it suggests to the jury that a standard higher than reasonableness applies. Moreover, a breach of that standard of reasonable care is relevant only if it caused or contributed to Plaintiffs' injuries. Whether an alleged

breach could cause other injuries or creates different risks is irrelevant. Likewise, generalized safety rules related to certain acts being for "safety" are irrelevant and improper.

Finally, appealing to the "safety of the community" or the "safety of jurors" is simply an appeal to a juror's self-interest. Such self-interest arguments are improper. *Naiman v. Shelbyville Bottling Co.*, 240 Ga. App. 693, 697, 524 S.E.2d 749 (1999). "It is improper because it asks the jurors to consider the case, not objectively as fair and impartial jurors, but rather from the biased, subjective standpoint of a litigant." *Id.*

### 16.    Commentary Regarding Rough Country's Anticipated Evidence During Opening Statements.

Rough Country requests the Court prevent Plaintiffs' counsel from commenting on what Rough Country may present as evidence in its opening statement. The burden of proving a case by a preponderance of the evidence is a responsibility exclusive to Plaintiffs. Rough Country have no similar obligation. Rough Country, if it so desires, may put forth as little evidence as it deems appropriate to include the presentation of no evidence at all.

Plaintiffs' counsel should be instructed to avoid argumentative tactics in the opening statement amounting to explicit or implicit comments about evidence the defense may or may not present. A jury not receiving the evidence from Rough Country that was promised by Plaintiffs would be unduly prejudicial to Rough

Country. Plaintiffs' counsel should be ordered to refrain from referring to the expected testimony of any witness unless Plaintiff will call such a witness in their case-in-chief.

### 17. Reptile Theory.

Rough Country seeks to preclude Plaintiffs and their counsel from raising, invoking, referring to, arguing, questioning witnesses, etc. regarding any "send a message/punish/deter," "community law," and/or violation of the golden rule, including, but not limited to, any statement that refers to:

    a.  The "safety" of the community;

    b.  The "safety" of the jurors themselves;

    c.  The community deserving or being entitled to a standard of care;

    d.  Sending a message about society's or the community's beliefs through a jury verdict;

    e.  Insinuation or suggestion that Rough Country presents a danger to the survival of the jurors, their families, or the community at large;

    f.  Insinuation or suggestion that the jury is the conscience of the community; and

    g.  Insinuation or suggestion that the jurors need a "system" that will protect them from harm.

This Motion seeks to preclude prohibited "send a message/punish/deter," "community law," and "golden rule" arguments that have been repackaged into the so-called "Reptile Theory" questions and arguments. The Reptile Theory is a trial strategy that is used by the Plaintiffs' bar as "a way of showing the jury that the defendant's conduct represents a danger to the survival of the jurors and their families." *See, e.g., Hensely v. Methodist Healthcare Hosp.*, No. 13–2436–STA–CGC, 2015 WL 5076982 (W.D. Tenn., August 27, 2015). The Reptile Theory "arguments are meant to use a general sense of promoting safety to *evoke an emotional response in the jury*." *Turner v. Salem*, No. 3:14-CV-289-DCK, 2016 WL 4083225 (W.D.N.C., July 29, 2016) (emphasis added). In short, the Reptile Theory is the type of improper appeal to juror self-interest, emotions, and passions prohibited by Georgia state and federal courts.

### A. Reptile Theory.

The "Reptile" theory originates from REPTILE: <u>The 2009 Manual of the Plaintiffs' Revolution</u>. The premise of the theory is for a plaintiff to establish a broad, over-generalized "umbrella rule" or "safety rule" that plaintiff will allege was violated by a defendant. In medical malpractice cases, the authors of the Reptile Theory use rules such as: "a healthcare provider must not needlessly endanger patients" or "when there are more than one treatment option available, a healthcare provider must always choose the safest option." This book calls for such "rules" to be

established at trial because "errors and mistakes don't motivate verdicts (especially med-mal verdicts); patient safety rule violations do." *Id*. at p. 243.

The Reptile authors, Don Keenan and David Ball, boast over $6.37 billion in verdicts and settlements using these techniques. In their book, the authors, Keenan and Ball, argue that the valid measure of damages for a plaintiff is not the amount of harm actually caused in the case, but instead the maximum harm that a defendant's alleged conduct *could have caused* (emphasis added). The intent is to inspire the jury to return a verdict for the plaintiff out of fear of safety for themselves and their community, rather than the evidence regarding the standard of care and causation.

The book encourages plaintiffs' attorneys to "spread the tentacles of danger" beginning in *voir dire*, opening statement, and throughout the trial as a means to *manipulate* the jurors into a favorable verdict. *Id*. at pp. 35, 58, 138. The tactics are purported to awaken the inner "reptilian brain" of the jurors to cause them to fear for their own safety and the safety of others. That emotion overrides reason and the juror will make a decision out of self-preservation rather than based on the evidence. Simply put, fear wins over facts.

The book is promoted as a means of *exacting revenge* for tort reform. *See* Chapters 3 "The Toxicology of Tort Reform" and 4 "Antidote for Tort Reform Poison". The strategy explicitly urges the jury to disregard the standard of care elements of a negligence action and violates the golden rule on the most fundamental

level. It runs afoul of FRE 401 and 403, and deprives Rough Country of its right to a fair and impartial trial.

**B.    Reptile Strategies are Improper "Golden Rule" Arguments.**

The Reptile Theory is nothing more than a backdoor attempt to make golden rule arguments before a jury, which are improper as a matter of law. A golden rule argument is one that urges jurors to put themselves in a particular party's shoes. Golden rule arguments are prohibited in both criminal and civil matters. *See, e.g., Myrick v. Stephanos*, 220 Ga.App. 520, 472 S.E.2d 431 (1996). They are improper because they ask the jury to remove themselves from the facts of the case and decide upon their own emotions and sympathy.

The Reptile Theory asks juries to focus on fear that they or members of the community could be injured as the plaintiff was injured. Although Plaintiffs' counsel may not specifically ask jurors to put themselves into Plaintiffs' shoes, the use of the terms "personal safety" and "community safety" has the same intent. Therefore, the Reptile Theory arguments and statements mentioned herein should be excluded.

**C.    Telling the Jury to "Send A Message" or Implying that a Plaintiffs' Verdict Will Make Society Safer is Improper Under Georgia Law.**

Rough Country anticipate opposing counsel, plaintiff, or witnesses may attempt to make statements or suggestions that Rough Country should be "punished" or the jury should "send a message." Such is the entire purpose of the Reptile strategies. The goal is to make a juror protect himself or herself "against anyone"

21

who "breaks any…kind of safety rule that your Reptile depends on." <u>Reptile</u> at p. 52. They encourage the jury to look at what might have happened and "send a message" rather than to consider the facts of what actually did happen.

### D.    Conclusion.

Rough Country are entitled to a jury that can dispassionately weigh the evidence and apply the law. As such, Rough Country request that the Court sustain this Motion and enter an Order prohibiting Plaintiffs' counsel from raising, invoking, referring to, arguing, questioning witnesses, etc., whether in *voir dire*, opening statements, during the questioning of any witness or in closing argument, with the matter or issues set forth above.

### 18.    Improper Use of Treatises and Materials

Rough Country hereby request that Plaintiffs' counsel be prohibited from improperly using treatises during the examination of witnesses. Rough Country also seek an order precluding treatises to be offered into evidence.

FRE 803(18) provides:

The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness: …

(18)   Statements in Learned Treatises, Periodicals, or Pamphlets. A statement contained in a treatise periodical, or pamphlet if:

> (A)   the statement is called to the attention of an expert witness on cross-examination or relied on by the expert on direct examination; and

(B)    the publication is established as a reliable authority by the expert's admission or testimony, by another expert's testimony, or by judicial notice.

If admitted, the statement may be read into evidence but not received as an exhibit.

## A.    Direct Examination of Experts.

Rough Country requests an order precluding Plaintiffs' counsel from reading from treatises during the direct examination of any witness. Rough Country anticipates that various statements contained in published treatises, periodicals, or pamphlets, "on a subject of history, medicine, or other science or art" will be testified to by Plaintiffs' witnesses on direct examination. It is well-settled that reading from treatises during the direct examination of any witness is not allow and cannot be circumvented by counsel by asking expert witnesses to read directly from treatises. "While an expert witness may support his opinion by reference to books, statistical sources and other learned sources, his testimony is inadmissible when it is merely a restatement of a textbook opinion rather than an independent expression of his own expert opinion." *Spruell v. Smith*, 185 Ga. App. 484, 364 S.E.2d 594 (1987). Based on the foregoing, Rough Country requests an order precluding Plaintiffs' counsel from reading from treatises or during the direct examination of his own witnesses.

**B.    Cross-Examination of Experts.**

Rough Country requests an order precluding Plaintiffs' counsel from cross examining expert witnesses using treatises that have not been first established as reliable authorities. It is likely that Plaintiffs' counsel will attempt to cross examine Rough Country' expert witnesses with unauthoritative treatises. FRE 803(18) explicitly allows treatise statements to be read into evidence during cross examination of an expert witness only after it has been established as a reliable authority by: 1) the testimony or admission of the [expert] witness [under cross examination], 2) by other expert testimony, 3) or by judicial notice. *Id.* (emphasis added). Clearly, a treatise can only be used to cross examine an expert witness after it is established as a reliable authority by an expert or via judicial notice.

**C.    Exhibits.**

Although the procedure outlined in FRE 803(18) has been recognized as a legitimate use of authoritative material on cross examination, the texts or treatises themselves have never been allowed to be entered into evidence as it would violate the hearsay rule and continuing witness rule. *Brannen v. Prince*, 204 Ga.App. 866, 421 S.E.2d 76 (1992), *overruled in part on other grounds*; *Department of Transportation v. Benton*, 214 Ga.App. 221, 447 S.E.2d 159 (1994). This position has not been altered by FRE 803(18), which prevents learned treatises from being

received as exhibits or read into evidence during direct examination. *Id.*; O.C.G.A. § 24-8-803(18).

Rough Country moves this Court for an order in limine preventing Plaintiffs' counsel and/or Plaintiffs' experts from reading from treatises during direct examination; preventing Plaintiffs' counsel from impeaching Rough Country' witnesses with literature if that literature is not recognized as authoritative by an expert witness or by judicial notice; and excluding from evidence textbooks, articles, treatises, medical texts, pamphlets or any other texts which Plaintiff has identified as a possible exhibit at trial and attempt to have received as exhibits.

## 19.    Approaching the Bench.

Rough Country requests an order prohibiting Plaintiffs' counsel from making any comment, directly or indirectly, in any manner whatsoever, concerning any of the matters set forth herein, without first approaching the Bench and obtaining a ruling of the Court outside the presence and hearing of all jurors or prospective jurors, in regard to any alleged theory of admissibility regarding these matters, at trial or in the presence of the jury during *voir dire*.

This 10th day of March, 2025.

WEINBERG,  WHEELER,  HUDGINS, GUNN & DIAL, LLC

*/s/ Aaron Chausmer*
Richard H. Hill, II
Georgia Bar No. 354425

3344 Peachtree Road, N.E.
Suite 2400

Atlanta, GA 30326
Phone: 404-876-2700
Fax: 404-875-9433
rhill@wwhgd.com
achausmer@wwhgd.com

Aaron B. Chausmer
Georgia Bar No. 119998
*Attorneys for Defendant Rough Country,*
*LLC*

## RULE 7.1D CERTIFICATE OF TYPE, FORMAT AND FONT SIZE

Pursuant to Local Rule 7.1D of the United States District Court of the Northern District of Georgia, the undersigned certifies that the foregoing submission to the Court complies with Local Rule 5.1 in that it was computer-processed, double-spaced between lines, and used Times New Roman font of 14 point size.

WEINBERG, WHEELER, HUDGINS, GUNN & DIAL, LLC

/s/ Aaron Chausmer
Richard H. Hill, II
Georgia Bar No. 354425
Aaron B. Chausmer
Georgia Bar No. 119998
*Attorneys for Defendant Rough Country, LLC*

3344 Peachtree Road, N.E.
Suite 2400
Atlanta, GA 30326
Phone:  404-876-2700
Fax:  404-875-9433
rhill@wwhgd.com
achausmer@wwhgd.com

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have electronically served the foregoing filing with the Clerk of Court via CM/ECF, which will send a copy to the following attorneys of record:

Tedra L. Cannella
Robert H. Snyder, Jr.
Devin Mashman
CANNELLA SNYDER LLC
315 W Ponce de Leon Ave
Suite 885
Decatur, GA 30030

### *ATTORNEYS FOR PLAINTIFFS*

This 10th day of March, 2025.

*/s/ Aaron Chausmer*
Aaron B. Chausmer
Georgia Bar No. 119998

28