UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| Santana Bryson and Joshua Bryson, as Administrators of the Estate of C.Z.B., and as surviving parents of C.Z.B., a deceased minor,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>Rough Country, LLC<br><br>　　　　Defendant. | Civil Action File<br><br>No. 2:22-cv-17-RWS |

**PLAINTIFFS' MOTION TO LIMIT THE TESTIMONY OF
WESLEY GRIMES UNDER RULE 702 AND *DAUBERT***

## I.   INTRODUCTION

Rough Country ("RC") sold a lift kit that raised the striking driver's Ford F-250's frame rails by six inches. In doing so, RC knowingly designed, marketed, and sold a lift kit that violated an industry-wide safety agreement designed to protect users from deadly override in foreseeable crashes and caused its customers to break Georgia's law. Its conduct flew in the face of decades of industry research showing that excessively raised pickup trucks turn otherwise survivable crashes into fatal ones.

Instead of facing responsibility for its role in two-year-old C.Z.B.'s death, RC has doubled down. RC asserts a defense that *again* contradicts decades of

industry research: it claims lifted trucks and unlifted trucks intrude the same amount into passenger vehicles during crashes.

To promote that claim, RC designated Wesley Grimes as its expert accident reconstructionist. Mr. Grimes performs accident reconstruction for trucking companies and insurance companies for litigation.[1] Over the past twelve years, Mr. Grimes testified on behalf of the defendant in all but three cases.[2] Throughout his career, Mr. Grimes has never testified that a safety defect caused or contributed to a collision.[3]

Plaintiffs challenge three of Mr. Grimes' opinions:

*First,* Mr. Grimes opines that an Exponent crash test done for this case proves the Escape's second-row seat where C.Z.B. was sitting would have deformed the same regardless of whether the F-250 had a lift kit installed.[4] That opinion rests entirely on the results of Exponent's crash test. Plaintiffs have separately briefed why that crash test must be excluded. Doc. 115. It likely goes without saying, but if the Court excludes the Exponent crash test, Mr. Grimes has no facts to support this opinion, and such testimony must be excluded. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591 (1993).

---

[1] *See* Ex. 1, Grimes Dep., at 14:13-15:20.
[2] *Id.* at 28:15-24.
[3] *Id.* at 31:7-14.
[4] *See* Doc. 115-3, Grimes Report, at 36, Opinion 9.

***Second***, Grimes' opinion that there would be similar deformation in an unlifted truck must be excluded even if the Court allows evidence of the Exponent crash test, because the test's conclusion contradicts what a person's eyes can see from the objective photos, and what Mr. Grimes admits the results of the crash test were. Mr. Grimes *acknowledges* the crash test Escape had *less* deformation than the subject Escape, thus contradicting his conclusion that lifting a truck does not increase intrusion. He claims that the absence of cargo in the crash test Escape accounts for that difference, but that claim is pure ungrounded ipse dixit, or inadmissible expert "say so." He also did not perform measurements to support his opinion that the deformation in the second row in the two vehicles was "similar." The Court should exclude his opinion that an unlifted F-250 would have caused the same damage as the Rought Country lifted truck did here because he did not support it with reliable facts and data (or *any* facts or data).

***Third***, Mr. Grimes opines that the reason the delta-V (the change in velocity of impact) in the crash test was different from the delta-V in the subject crash was that there was no cargo in the rear of the subject Escape. That opinion must be excluded if the Court excludes the crash test, of course. But it should also be excluded because Mr. Grimes admits he did not perform "a detailed analysis [of] why the [Delta-V\s] are different."[5] The reality is that he did not perform *any*

---

[5] *See* Ex. 1, Grimes Dep., at 207:16-208:16.

analysis of that question. The Court should exclude this "subjective belief" as unreliable. *Daubert*, 509 U.S. at 590.

Plaintiffs do not seek the exclusion of all Mr. Grimes' opinions. Mr. Grimes can offer his opinions about the reconstruction of the subject collision—Plaintiffs will save their challenges to those opinions for cross-examination. However, Mr. Grimes should not be permitted to offer his speculative, unsupported opinions interpreting Exponent's unreliable crash test.

## II.   SUMMARY OF MR. GRIMES' INADMISSIBLE OPINIONS

Plaintiffs challenge the following opinions of Mr. Grimes regarding the Exponent crash test and his interpretation of the results:

(1) The crash test showed substantially similar "rear seat deformation between the subject and test vehicles."[6]

(2) The differences between the Delta-V in the crash test and subject crash "can likely be attributed to the lack of cargo" in the crash test Escape.[7]

(3) "[T]he deformation and accelerations of the Escape would have been substantially similar whether the F-250 was lifted or was equipped with a stock suspension."[8]

Mr. Grimes admits that reaching scientifically valid conclusions about a crash test requires that it match variables such as speeds, offsets, angles, and

---

[6] *See* Doc. 115-3, Grimes Report, at 36, Opinion 9.
[7] *Id.* at 37, Opinion 10.
[8] *Id.* at 37, Opinion 11.

4

weights to the subject crash.[9]  But Exponent's crash test did not do that.  Exponent changed four *additional* confounding variables, each of which skewed the exact variable Mr. Grimes was studying: the amount of intrusion into the Ford Escape.  Exponent's crash test (1) had 45 percent more offset between the two vehicles, (2) used a Ford Escape with weaker structural characteristics, (3) did not account for the braking that Mr. Grimes admits occurred in the subject collision, and (4) contained different cargo than the subject collision (Exponent changed this variable even though RC's experts contend cargo had a large impact on the test results).[10]  Each of these variables tends to *increase* the intrusion shown on the crash test— that means the expert biased the test in *RC's favor*.  If the Court excludes that rigged test as Plaintiffs' have urged, Doc. 115, then all of Grimes' opinions about intrusion must necessarily be excluded.

Despite all the variables Exponent changed in RC's favor, the test *still* showed that C.Z.B.'s second-row seat deformed significantly less with an un-lifted F250 than in the subject collision with the lifted F250.[11]

---

[9] *See* Ex. 1, Grimes Dep., at 172:13-173:8.
[10] For a more detailed discussion of each variable Exponent changed in the crash test, *see* Doc. 115.
[11] See Ex. 1, Grimes Dep., at 192:24-194:11.

5



Image 5: Rear Seat Comparison

*Figure 1. Exponent crash test vehicle (post crash) on left; Bryson crash vehicle on right.  See Doc. 115-12 (Roche Supp. Report).*

Despite the obvious difference in the deformation of the two second row seats, Mr. Grimes plans to opine that the deformation is "similar."  Mr. Grimes admits (as he must) that the crash test vehicle shows **less** deformation than the subject vehicle.  He does not know *how much* less the crash test second-row seat deformed because he chose not to measure the second-row seat deformation in either the subject crash or the crash test.[12]  Despite having no measurements or analysis, Mr. Grimes will offer the opinion based on his impression from "looking at the two vehicles and looking at photographs."[13]

Mr. Grimes claims "the difference in the seat deformation in both Escapes was probably due to the lack of cargo in the rear cargo area of the Escape"[14]—cargo that he and Exponent knew about, but *chose not to include*.  Mr. Grimes does

---

[12] *Id.* at 196:17-197:13.
[13] *Id.* at 204:20-205:4.
[14] *See* Doc. 115-3 Grimes Report, at 33.

6

not support that belief with any calculations, testing, or literature.[15] He did not measure the volume or physical strength of the cargo in the Brysons' trunk.[16] He did not run a crash test that added the cargo, even though RC purchased and Exponent stored another Escape vehicle for the purposes of running additional tests in this case. Mr. Grimes' opinion that a shop-vac (which was flattened in the wreck), a single umbrella stroller, bag-style camping chairs (that were folded up), and a plastic bag of loose clothing would have been strong enough to displace the Bryson family's bolted-down second-row seat has no tangible support at all—it is based solely on his *belief.*

    Mr. Grimes acknowledges the crash test's delta-v measurements were different from the subject crash. Specifically, the crash test F-250 achieved a higher delta-V in less time than the subject crash.[17] Mr. Grimes attributes that discrepancy in part to the lack of cargo in the crash test Escape's trunk.[18] He admits he did not perform "a detailed analysis why they are different."[19] He has no basis for that opinion—it just "make[s] sense to [him]."[20]

---

[15] *See* Ex. 1, Grimes Dep., at 197:25-201:4.
[16] *Id.*
[17] *Id.* at 206:16-207:5.
[18] *See* Doc. 115-3, Grimes Report, at 36, Opinion 10.
[19] *See* Ex. 1, Grimes Dep., at 207:15-208:16.
[20] *Id.*

7

Finally, on December 2, 2024, RC disclosed Mr. Grimes' sur-rebuttal report.[21] Plaintiffs did not receive that report until six months after the Court's deadline, and five months after expert discovery had closed. Mr. Grimes' sur-rebuttal report includes several new tests and opinions—including four new crash test simulations, a new exemplar test, a new photogrammetry analysis, and new "measurements" of the Exponent crash test he participated in.[22] Because RC disclosed Mr. Grimes' sur-rebuttal report long after expert discovery closed, Plaintiffs have not been able to engage in discovery on those new opinions and they cannot adequately assess whether they meet the *Daubert* standard. Plaintiffs therefore moved to strike Mr. Grimes' new sur-rebuttal opinions.[23] Given the pending motion to strike, this motion does not address Mr. Grimes' sur-rebuttal opinions—if the Court denies Plaintiffs' motion to strike his untimely sur-rebuttal report, Plaintiffs respectfully seek leave to file a supplemental *Daubert* motion addressing Mr. Grimes' newly-raised sur-rebuttal opinions.

## III.  LEGAL STANDARD

Federal Rule of Evidence 702 governs the admissibility of expert testimony. It provides:

---

[21] *See* Doc. 116-4, Grimes Sur-Rebuttal Report.
[22] *Id.*
[23] *See* Doc. 116.

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> > (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> >
> > (b) the testimony is based on sufficient facts or data;
> >
> > (c) the testimony is the product of reliable principles and methods; and
> >
> > (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702(b). The party proffering expert testimony must prove that the Rule 702 requirements have been satisfied. *United States v. Frazier,* 387 F.3d 1244, 1260 (11th Cir. 2004) (en banc).

Rule 702 requires the Court to perform a "gatekeeping" role concerning the admissibility of expert testimony. *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 597 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999). To determine whether an expert's opinion is sufficiently reliable, the Court should consider whether the methodology employed is generally accepted in the relevant scientific community. *McClain v. Metabolife Intern., Inc.*, 401 F.3d 1233, 1251 (11th Cir. 2005) (citing *Daubert*, 509 U.S. at 593-94).

Ultimately, the purpose of the *Daubert* inquiry "is to make certain that an expert, whether basing testimony upon professional studies or personal experience,

employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire*, 526 U.S. at 152. The Court's gatekeeping must ensure "that speculative and unreliable opinions do not reach the jury." *McClain*, 401 F.3d at 1237. The Court's exclusion of expert testimony "will not be disturbed absent a manifest abuse of discretion." *Chapman v. Procter & Gamble Distrib., LLC*, 766 F.3d 1296, 1308 (11th Cir. 2014) (citing *Kumho Tire*, 526 U.S. at 152).

## IV.  ARGUMENT

Both of RC's star expert witnesses, Dr. Lisa Gwin and Mr. Grimes, advance opinions about things that *can be* measured, yet they neglected to *actually measure* those things. Dr. Gwin opines about forces and injuries in a hypothetical wreck without measuring a surrogate, the inside of a vehicle, or injury scores. Mr. Grimes opines about the similarity of deformation without measuring the deformation of the two supposedly "similar" things. Mr. Grimes' opinions do not have "sufficient facts or data" or use "reliable principles and methods,"—although a better description would be that his opinions are fabricated out of thin air. Fed. R. Civ. P. 702(b)-(c).

### A. Mr. Grimes' opinion that the Ford Escape's overall deformation would be "similar" if the F-250 were unlifted relies upon Exponent's unreliable crash test results.

Mr. Grimes claims a stock F-250 and lifted F-250 would have intruded a "similar" amount into the Bryson family's Ford Escape.[24] However, that opinion depends entirely on the validity of Exponent's invalid crash test—Mr. Grimes has no other support for his belief of the amount a stock F-250 *would have* intruded into the Bryson family's Escape.

Plaintiffs have already moved to exclude Exponent's crash test.[25] The same reasons that make Exponent's crash test *inadmissible* also make it an *unreliable* basis to draw expert conclusions. In addition to the presence of the lift kit, Exponent significantly changed the lateral offset, speeds, braking, vehicle strength, and presence of cargo in the trunk.[26] Each of those variables directly influences the amount of intrusion into the Ford Escape—Exponent introduced several confounding variables that impact the *exact* aspect of the crash test Mr. Grimes purports to draw conclusions about.

Mr. Grimes helped to design a test that manipulated four variables—all in the favor of his client Rough Country—then did nothing to determine how much those confounding variables skewed the results. Mr. Grimes' reliance on the crash

---

[24] *See* Doc. 115-3, Grimes Report, at 36.
[25] *See* Doc. 115.
[26] *Id.*

test to conclude how much a stock F-250 *would have* intruded into the Bryson family's Escape amounts to nothing more than his *guess* that Exponent's four confounding variables did not contribute to the crash test results *at all*.

Because Mr. Grimes' intrusion opinion is premised entirely on the Exponent crash test's results, it lacks support from any "*reliable* principles and methods" and therefore must be excluded. *See* Fed. R. Civ. P. 702(b) (emphasis added); see also *Frazier*, 387 F.3d at 1263 (the reliability standard is only satisfied when "the reasoning or methodology underlying the testimony is scientifically valid […] [and] properly can be applied to the facts in issue") (emphasis added). The Court should exclude Mr. Grimes' opinions based on the Exponent crash test, including his opinion that the intrusion into the Ford Escape would have been the same without RC's defective lift kit installed on the F-250.

**B. Mr. Grimes opinion that the second-row seat deformation in the crash test and subject crash were "substantially similar" warrants exclusion.**

Even if the Exponent crash test were admitted, the Court should still exclude Mr. Grimes' conclusion that the Escape's second-row seat deformed "similarly" in the crash test and subject crash. Mr. Grimes failed to support that opinion with any calculations, measurements, or data at all. His belief that the second row appears "similar" between the two crashes is contrary to the photographs of the seat, and based on nothing more than his own say-so. *See McDowell v. Brown*, 392 F.3d

12

1283, 1298 (11th Cir. 2004) ("[E]xpert testimony must be reliable, so that it must be 'scientific,' meaning grounded in the methods and procedures of science, and must constitute 'knowledge,' meaning something more than subjective belief or unsupported assumptions.") (citing *Daubert*, 509 U.S. at 590).

Despite Exponent changing variables in RC's favor, Mr. Grimes admits the second-row seat where C.Z.B. would have been sitting deformed significantly *less* in the crash test than it did in the subject collision.[27] His conclusion that the deformation was "similar" has no support—he did nothing to measure or quantify the difference in rear-seat deformation *at all*.[28]

Mr. Grimes' attempt to explain away the difference between the second-row seat deformations equally fails. Mr. Grimes claims that *if* Exponent had placed cargo in the test Escape's trunk, the second-row seat *would have* deformed the same as in the subject collision.[29] That opinion is pure ipse dixit—Mr. Grimes does not support it with any calculations, testing, or literature.[30] He did not measure the volume or strength of the cargo in the Brysons' trunk.[31] He did not run a second crash test with cargo in it to test this theory—even though RC purchased a second Escape to use in crash tests and it was stored at the Exponent

---

[27] *See* Ex. 1, Grimes Dep., at 196:17-23.
[28] *Id.* at 196:17-197:13.
[29] *Id.* at 197:25-200:6.
[30] *Id.*
[31] *Id.*

crash test site. His conclusion that the flimsy contents of the Bryson family's trunk *would have* somehow increased the amount the test Escape's bolted-down second-row seat deformed is a theory he has simply spoken into existence, with nothing to support it. *See Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004) ("The trial judge in *all* cases of proffered expert testimony must find that it is properly grounded, well-reasoned, and not speculative before it can be admitted.") (citing Fed. R. Evid. 702) (emphasis in original); *McClain*, 401 F.3d at 1255 (experts cannot "substitute[] their own *ipse dixit* for scientific proof on essential points").

### C. Mr. Grimes' opinion attributing the difference in delta-V between the crash test and subject crash to a lack of cargo is unreliable.

Mr. Grimes recognizes the Exponent crash test registered a different delta-V and timing than the subject collision. Despite admitting he did not perform "a detailed analysis why they are different," Mr. Grimes seeks to provide expert testimony attributing the difference to the lack of cargo in the test Escape's trunk.[32] His sole basis for that opinion is that it "make[s] sense to [him]."[33] For the same reasons articulated above, that is not enough under federal law. Mr. Grimes has no concrete support for that opinion—the Court should exclude it as based on nothing more than his "subjective belief." *Daubert*, 509 U.S. at 590.

---

[32] *See* Doc. 115-3, Grimes Report, at 36, Opinion 10; Ex. 1, Grimes Dep., at 207:6-208:16.
[33] *See* Ex. 1, Grimes Dep., at 207:15-21.

## II. CONCLUSION

Plaintiffs respectfully request that the Court exclude Mr. Grimes' opinions that (1) the crash test showed "similar" rear-seat deformation as the subject crash; (2) the differences between the Delta-V in the crash test and subject collision is attributable to the lack of cargo in the crash test Escape's trunk; (3) the Escape's intrusion would have been "substantially similar" if a lift kit had not been installed on the F-250.

Respectfully submitted on March 10, 2025,

                         CANNELLA SNYDER LLC

                         */s/ Tedra L. Cannella*
                         TEDRA L. CANNELLA
                          Georgia Bar No. 881085
                          tedra@cannellasnyder.com
                         ROBERT H. SNYDER, JR.
                          Georgia Bar No. 404522
                          rob@cannellasnyder.com
                         DEVIN L. MASHMAN
                          Georgia Bar No. 257588
                          devin@cannellasnyder.com

                         315 W. Ponce de Leon Ave.
                         Suite 885
                         Decatur, GA 30030
                         (404) 800-4828
                         (404) 393-0365 (fax)

                         ***Attorneys for Plaintiffs***

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rules 5.1(B) and 7.1(D), I hereby certify that the foregoing filing complies with the applicable font and size requirements and is formatted in 14-point Times New Roman font.

                      CANNELLA SNYDER LLC

                      */s/ Tedra L. Cannella*
                      TEDRA L. CANNELLA
                        Georgia Bar No. 881085
                        tedra@cannellasnyder.com
                      ROBERT H. SNYDER, JR.
                        Georgia Bar No. 404522
                        rob@cannellasnyder.com
                      DEVIN L. MASHMAN
                        Georgia Bar No. 257588
                        devin@cannellasnyder.com

                      315 W. Ponce de Leon Ave.
                      Suite 885
                      Decatur, GA 30030
                      (404) 800-4828
                      (404) 393-0365 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing *PLAINTIFF'S MOTION TO LIMIT CERTAIN OPINIONS OF WESLEY GRIMES UNDER RULE 702 AND DAUBERT* was electronically filed with the Clerk of Court via CM/ECF, which will automatically serve the following attorneys of record:

Richard H. Hill
Claire C. Murray
Lindsay G. Ferguson
Aaron B. Chausmer
3344 Peachtree Road, N.E.
Suite 2400
Atlanta, GA 30326
rhill@wwhgd.com
cmurray@wwhgd.com
lferguson@wwhgd.com
achausmer@wwhgd.com

This 10th day of March, 2025.

CANNELLA SNYDER LLC

*/s/ Tedra L. Cannella*
Tedra L. Cannella
Georgia Bar No. 881085
*Attorney for Plaintiffs*