UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| Santana Bryson and Joshua Bryson, as Administrators of the Estate of C.Z.B., and as surviving parents of C.Z.B., a deceased minor, <br><br> Plaintiffs, <br><br> v. <br><br> Rough Country, LLC <br><br> Defendant. | * <br> * <br> * <br> * <br> *    Civil Action File <br> * <br> *    No. 2:22-cv-17-RWS <br> * <br> * <br> * <br> * <br> * |

**PLAINTIFFS' MOTION TO EXCLUDE THE TESTIMONY OF
ROBERT PASCARELLA UNDER RULE 702 AND *DAUBERT***

**I.      INTRODUCTION**

Robert Pascarella is a former Ford employee who is well known in the automotive safety world. He helped design the Ford Explorer that infamously was prone to rollovers and left Ford facing hundreds of lawsuits and for serious injuries

and deaths all over the country.[1] After he signed off on that disastrous design,[2] he went to work for "Tandy Engineering," a litigation consulting company that earned over $75 million in revenue from Ford work and SUV rollovers.[3] He returned to Ford in 2012, where he helped Ford in litigation or other matters where a defect was alleged in a vehicle. *Id*. 17:18-24. In 2022, he returned to Tandy as a "Principle Engineer."[4]

Although in his report, he claims to be "familiar" with the "design and development of the 2016 Model Year F-250 and F-350 Super duty trucks," his prior sworn testimony proves that he did not work on the team that actually designed or engineered the vehicle. Instead, he worked as a "design analysis engineer," which is what Ford calls engineers who help with *lawsuits*. His testified

---

[1] Ex. 1, Pascarella Dep., at 7:10-22, *Smith v. Ford Motor Company*, 27-cv-16-900273, Cir. Ct. of Ala., Dallas County (2018), (he worked on the Explorer before leaving in 2006); *see also* "Rollover: the hidden history of the SUV," PBS Frontline, https://www.pbs.org/wgbh/pages/frontline/shows/rollover/etc/synopsis.html (last visited Mar. 10, 2025).

[2] Ex. 1, Pascarella Dep., at 19:22-20:3, *Smith v. Ford Motor Company* (admitting he signed off on a portion of the rollover resistance requirements for the Ford Explorer).

[3] *Id.* 14:4-11.

[4] https://www.tandyengineering.com/consultants/Robert.Pascarella.pdf (last visited Mar. 10, 2025).

in 2017 that his role was "primarily [to] analyz[e] the spec vehicles and components that are alleged to have some type of issue, whether it be warranty, a claim, or some that come from lawsuits."[5] In his department, the engineers had areas of specialty.[6] His area of expertise "vehicle dynamics, chassis design, brakes, vehicle performance from a handling and steering perspective. Those are the things I traditionally do."[7] If something else came in like a rollover crashworthiness case, he would not "claim to have any expertise in that area."[8]

Nothing in Mr. Pascarella's report or CV indicates that he worked on the 2016 F250 structures team or its warnings program. Indeed, Rough Country has not designated him as a fact witness, but as an *expert* witness—which is an acknowledgment that Mr. Pascarella does not have personal knowledge of the topics on which he will offer an opinion. It has designated him as an "expert" on Ford's intent and knowledge.

There is an obvious way to find out what Ford's intent and knowledge was at the time it designed the 2016 F250: subpoena Ford documents or a Ford

---

[5] Ex. 2, Pascarella Dep., at 5:25-6:7, *Yepez v. Ford Motor Co.*, C-3505-14-F 332nd Jud. Dist., Hildlalgo Co., Texas (2017).

[6] *Id.* 9:17 -23.

[7] *Id.* 9:24-10:11.

[8] *Id.* 10:6-11.

3

employee or representative who actually worked on the F250 structures team or its warnings team. That is what Plaintiffs did: they subpoenaed Ford documents that show Ford believed vehicle compatibility prevented injuries and death. Plaintiffs' expert Christopher Roche relies on those documents to support his opinion of defect.

In addition to authoring those documents that confirm the deadly effects of excessive vehicle height, in Ford's 2016 F-250 Owner's Manual, it "strongly recommend[ed]" that its customers not install aftermarket lift kits on its trucks.[9]

Mr. Pascarella will tell the jury that Ford "was aware" of aftermarket lift kits and that Ford's multiple warnings against lift kits were not **intended** to "restrict" them.[10] Both opinions have no methodology—Mr. Pascarella cites no facts, data, publications, or methodology supporting his *belief* of Ford's position on lift kits. His report contains "a *complete statement* of […] the basis and reasons" for his opinions and "the facts or data" supporting them. But Mr. Pascarella identifies *nothing* supporting his opinions. *See* Fed. R. Civ. P. 26(a)(2)(B)(i); 26(a)(2)(B)(ii). He supports his opinions about *Ford*'s position on lift kits with nothing but his own say-so.

---

[9] *See* Ex. 3, Ford F-250 Owner's Manual Excerpts, at BRYSON002529
[10] *See* Ex. 4, Pascarella Report, at 3-4.

RC cannot use Mr. Pascarella to masquerade as Ford's corporate representative by offering "expert" testimony about Ford's position on lift kits. Mr. Pascarella has no facts, data, or methodology supporting his *belief* about Ford's awareness and intentions related to lift kits. The Court should exclude Mr. Pascarella from testifying at trial.

## II.   SUMMARY OF OPINIONS

Mr. Pascarella's report contains only two opinions:

(1) Ford "was aware" that aftermarket manufacturers like RC designed and sold lift kits for Ford F-250s.[11]

(2) The 2016 Ford F-250 Owner's Manual warning against installing aftermarket lift kits had nothing to do with crashworthiness and "was not intended to be a blanket prohibition or restriction" on installing lift kits.[12]

Neither RC's disclosure nor Mr. Pascarella's report provides any methodology or basis for those opinions. Mr. Pascarella does not explain how he reached his opinions—he merely states them as fact.

Mr. Pascarella's report includes a list of the facts and data he reviewed to form his opinions.[13] He only reviewed eight categories of documents, six of which

---

[11] *See* Ex. 4, Pascarella Report, at 3.
[12] *Id.*
[13] *Id.* at 4.

are specific to the facts of this case.[14] The other two—the final Owner's Manual and Warranty Guide for the Ford F-250—only provide the text of the F-250's warnings with no special insight into their meaning.[15] None of the materials Mr. Pascarella reviewed contain any evidence about Ford's awareness of lift kits or the "purpose" the warning—except that the owner's manual tells people not to install lift kits and not to modify the frame or bumper of the vehicle.

> The suspension and steering systems on your vehicle have been designed and tested to provide predictable performance whether loaded or empty. For this reason, we strongly recommend that you do not make modifications such as adding or removing parts (i.e. lift kits or stabilizer bars) or by using replacement parts not equivalent to the original factory equipment.

> **CRASH SENSORS AND AIRBAG INDICATOR**
>
> **WARNING**
>
> ⚠ Modifying or adding equipment to the front end of the vehicle (including frame, bumper, front end body structure and tow hooks) may affect the performance of the airbag system, increasing the risk of injury. Do not modify the front end of the vehicle.

---

[14] *Id.* Those six documents are: the service records for the subject F250, the police and SCRT reports, Mr. Roche's expert report, Rough Country's 30(b)(6) deposition, and generally "discovery response and document production of Rough Country," which does not contain any Ford documents.
[15] *Id.*

6

### III. LEGAL STANDARD

Federal Rule of Evidence 702 governs the admissibility of expert testimony. It provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702(b). The party proffering expert testimony must prove that the Rule 702 requirements have been satisfied. *United States v. Frazier,* 387 F.3d 1244, 1260 (11th Cir. 2004) (en banc).

Ultimately, the purpose of the *Daubert* inquiry "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire*, 526 U.S. at 152. The Court's gatekeeping must ensure "that speculative and unreliable opinions do not

7

reach the jury." *McClain*, 401 F.3d at 1237. The Court's exclusion of expert testimony "will not be disturbed absent a manifest abuse of discretion." *Chapman v. Procter & Gamble Distrib., LLC*, 766 F.3d 1296, 1308 (11th Cir. 2014) (citing *Kumho Tire*, 526 U.S. at 152).

## IV.  ARGUMENT

The scope of expert testimony is not limitless. "The trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589. RC hopes that it can call Mr. Pascarella "an expert" and have that "expert" tell the jury what "purpose" the warning served—instead of simply letting the jury read the warnings themselves.

### A. Mr. Pascarella's opinion about Ford's "awareness" of aftermarket lift kit modifications is unreliable.

Mr. Pascarella will offer "expert" opinion that Ford "was aware that some of its independent dealers would install modifications including lift kits on new Ford vehicles"[16] He does not relate any factual information on which this is based—there is no statement of any fact that Mr. Pascarella knows upon which he could base such "expert" testimony, and if there were such a basis, it had to be disclosed long ago under Federal Rule of Civil Procedure 26. An opinion is not based on

---

[16] *See* Ex. 4, Pascarella Report, at 3.

8

"reliable principles and methods" if it is based on no facts. *See* Fed. R. Evid. 702(b); *Daubert*, 509 U.S. at 592 (an expert's opinion must have "a grounding in the methods and procedures of science" based on actual knowledge, not "subjective belief or unsupported speculation"); *id.* at 590 (expert testimony "must be supported by appropriate validation—*i.e.* 'good grounds,' based on what is known."). "Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Joiner*, 522 U.S. at 137.

Mr. Pascarella's opinion that Ford was "aware" of aftermarket lift manufacturers installing lift kits on its vehicles is precisely the sort of "ipse dixit" opinion that warrants exclusion. Mr. Pascarella's report provides *no* basis for his opinion—he does not cite any publications, standards, practices, minutes, writings, or evidence of any sort confirming his understanding of what *Ford* knew about aftermarket lift kits manufacturers.[17] He does not even explain what it means to generically say Ford was "aware" of such modifications. Mr. Pascarella's opinion not only lacks "*sufficient* facts or data" supporting it—it lacks *any* citation to supporting facts, data, or methodology at all.

---

[17] *See generally* Ex. 4, Pascarella Report.

As the proponent of Mr. Pascarella's opinions, RC bears the burden of establishing their reliability. *See Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty., Fla*, 402 F.3d 1092, 1113 (11th Cir. 2005) ("[W]e stress that the burden of laying the proper foundation for the admission of expert testimony rests with its proponent."). That burden requires more than Mr. Pascarella claiming to have sufficient facts or data supporting his conclusion—even his failure to adequately articulate any discernable basis for his conclusion warrants exclusion. *Id.* at 1111 ("Thus, a trial court may exclude expert testimony that is 'imprecise and unspecific,' or whose factual basis is not adequately explained.").

Mr. Pascarella's passing reference to his "experience" does not satisfy RC's burden. "When an expert witness relies mainly on experience to show he is qualified to testify, the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Payne v. C.R. Bard, Inc.*, 606 F.App'x 940, 942-43 (11th Cir. 2015) (quoting *Frazier*, 387 F.3d at 1261). Mr. Pascarella makes no attempt to connect his experience to his broad opinion about Ford's awareness of third parties violating Ford's warnings by installing aftermarket lift kit modifications.

### B. Mr. Pascarella's opinion about the "purpose" or "intent" behind Ford's warnings against lift kits must be excluded.

#### 1. Mr. Pascarella is not qualified to offer expert opinions about the meaning behind Ford's warnings.

Mr. Pascarella is an engineer, not an expert in warnings. RC agrees—it did not list warnings as one of Mr. Pascarella's areas of expertise.[18] Yet, Mr. Pascarella purports to offer expert testimony interpreting the "purpose" or "meaning" behind Ford's warnings. The Court should exclude Mr. Pascarella's opinion because he is not qualified to offer expert testimony in this field.

An expert can only offer opinion testimony within their field of expertise. Experts must be sufficiently qualified "to testify competently regarding the matters he intends to address." *Daubert*, 509 U.S. at 589. The expert's qualifications must be "assessed in reference to the matter to which the expert seeks to testify, i.e., 'to the task at hand.'" *Moore v. Intuitive Surgical, Inc.*, 995 F.3d 839, 854 (11th Cir. 2021) (citing *Daubert*, 509 U.S. at 597). In short, "expertise in one field does not qualify a witness to testify about others." *Id.*

Mr. Pascarella's experience in engineering and vehicle design does not make him a warnings expert. Therefore, he cannot offer his opinion about the meaning behind Ford's warnings against installing aftermarket lift kits. Several courts in

---

[18] *See* Ex. 5, RC's Expert Disclosure.

this circuit have excluded engineers for the same reason—engineering experience does not qualify a person to offer warnings opinions. *See, e.g.*, *Brown v. SharkNinja Operating, LLC*, No. 1:22-CV-2896-MLB, 2024 WL 4269671, at *9 (N.D. Ga. Sept. 20, 2024) (excluding engineer from offering warnings opinions because his "professional background does not involve drafting" warnings and his "resume does not mention that subject at all"); *Medina v. Louisville Ladder, Inc.*, 496 F. Supp. 2d 1324 (M.D. Fla. 2007) (mechanical engineer not qualified to offer warnings opinion); *Shiver v. Taurus Int'l Mfg., Inc.*, No. 5:22-CV-125-AW-MJF, 2024 WL 1069944, at *2 (N.D. Fla. Feb. 14, 2024), *aff'd*, No. 24-10730, 2025 WL 573686 (11th Cir. Feb. 21, 2025) (mechanical engineer not qualified to offer opinion on need for warning or adequacy of warning). The Court should do the same here.

      **2.    Mr. Pascarella's opinion about Ford's purpose for its Owner's Manual warnings does not assist the trier of fact.**

Mr. Pascarella's belief about Ford's "intent" or "purpose" for warning against aftermarket lift kit modifications does not meet the "helpfulness" prong for expert testimony. *See* Fed. R. Evid. 702(a). To be admissible, expert testimony must apply scientific knowledge to explain a matter "beyond the understanding of the average lay person." *Frazier*, 387 F.3d at 1262. Applying that standard, expert testimony "is properly excluded when it is not needed to clarify facts and issues of

common understanding which jurors are able to comprehend for themselves." *Hibiscus Assocs. Ltd. v. Bd. Of Trustees of Policemen and Firemen Ret. Sys. of city of Detroit*, 50 F.3d 908, 917 (11th Cir. 1995).

Mr. Pascarella cites *no* specialized method for interpreting Ford's Owner's Manual. Based on the sparse materials he reviewed, the only *possible* basis for his opinion is a plain-text reading of the Owner's Manual cloaked in references to his "experience" at Ford. But the jury is equally capable of reading Ford's Owner's Manual. Mr. Pascarella's reading of the Manual "offers nothing more than what lawyers for the parties can argue in closing arguments," and therefore must be excluded as unhelpful to the jury. *See Cook*, 402 F.3d at 1111.

> **3. Mr. Pascarella's opinion about Ford's intent for warning against aftermarket lift kit modifications is speculative and unreliable.**

The 2016 Ford F-250 Owner's Manual warns against installing aftermarket lift kits on the vehicle. But Mr. Pascarella speculates that those warnings were "not intended to be a blanket prohibition or restriction" against installing lift kits.[19] Mr. Pascarella does not even *pretend* to support his claims about Ford's intentions behind its warnings—his report does not cite a single fact or methodology justifying that opinion. He merely *states* what he believes to be Ford's purpose for

---

[19] *See* Ex. 4, Pascarella Report, at 4.

13

the warnings without supporting his belief. That is precisely the sort of "ipse dixit" opinion prohibited by Rule 702.

In addition to lacking any reliable methodology, Mr. Pascarella's opinion about Ford's Owner's Manual contradicts the warnings' language. The Owner's Manual expressly "restricts" lift kits—it "strongly recommends that you do not make modifications such as adding or removing parts (i.e., lift kits or stabilizer bars) . . . ."[20] Ford reiterated that restriction against lift kits with several warnings, including that aftermarket lift kits (1) increase the chances of vehicle rollovers,[21] (2) cause "an increased risk of loss of vehicle control, vehicle rollover, personal injury and death[,]"[22] and (3) result in "wheel shimmy" while driving.[23] Ford also added an enforcement mechanism—its warranty does not cover damage caused by aftermarket lift kit installations.[24] In addition, Ford warned that consumers should not alter the bumper, frame, or front end body structure, because such alterations could affect the airbag function.[25] That warning came to fruition in this case:

---

[20] *See* Ex. 3, Ford F-250 Owner's Manual Excerpts, at BRYSON002529.
[21] *Id.*
[22] *Id.* at BRYSON002537.
[23] *Id.* at BRYSON002640.
[24] *See* Ex. 6, Ford F-250 Warranty Excerpt.
[25] *Id*.

14

Hunter Elliott's airbag *did not deploy* in a collision where his F250 intruded all the way into the second row of the car he hit.

Mr. Pascarella's opinion also contradicts sworn testimony from Ford itself. In a separate case, Ford testified in an Interrogatory response that its similar Owner's Manual warnings "strongly recommending" against installing lift kits are "meant to discourage the installation of lift kits."[26] Mr. Pascarella cannot credibly claim that Ford's Owner's Manual did not intend to "restrict" lift kits when *Ford itself* contends that it did.

Although he used to work at Ford, Mr. Pascarella never worked in Ford's warnings department.[27] As Mr. Pascarella testified in a previous case, Ford had a "different group that is responsible for the overall publishing and release of the owner's manual."[28] Although his group occasionally provided "input" on the manuals, he was not responsible for drafting the manuals.[29] Mr. Pascarella's prior employment with Ford does not give him omniscience of decisions made by

---

[26] *See* Ex. 7, Ford's Responses to Plaintiff's Interrogatories, at No. 38, *Quijada v. Ford Motor Company et al.*, Case No. 34-2010-00085696, Superior Court of Calif., Sacramento County (2010).
[27] *See* Ex. 8, Pascarella CV.
[28] *See* Ex. 9, Pascarella Dep., at 11:18-12:6, *Est. of Moreno v. Continental Tire of the Americas, et al.*, Case No. CIVDS1406296, Superior Court of Calif., San Bernadino County (2015).
[29] *Id.*

15

separate Ford departments, nor does it allow him to speak on Ford's behalf—he is a retained expert, not Ford's corporate representative.

Mr. Pascarella provided *zero* basis for his speculation about Ford's warnings against lift kits. This is not an instance of an expert's *inadequate* scientific basis for his opinion—Mr. Pascarella's "complete statement" of facts, data, principles, and methods supporting his opinion contains no basis *at all*. Because Mr. Pascarella's assertions about the meaning behind Ford's Owner's Manual have no support besides his own say-so, the Court should exclude them. *See Frazier*, 387 F.3d at 1261 ("The trial court's gatekeeping function requires more than simply taking the expert's word for it.") (citation omitted); *Cook ex rel. Est. of Tessier*, 402 F.3d at 1112 (opinions are properly excluded when "connected to existing data only by the ipse dixit of the expert").

**C.     Mr. Pascarella's testimony about Ford's awareness and position concerning aftermarket lift kits should be excluded under Rule 403.**

Mr. Pascarella cannot testify on Ford's behalf—he has not been designated as Ford's corporate representative. *See* Fed. R. Civ. P. 30(b)(6). If RC wanted to introduce testimony about Ford's knowledge and intentions, the proper procedure was to introduce testimony from Ford's corporate representative. RC now seeks to bypass that requirement by eliciting testimony about Ford's "awareness" and

"intent" surrounding lift kits by paying someone to disagree with Ford's own prior statements about Ford's warnings.

Even if the Court concluded Mr. Pascarella met the *Daubert* standard, the "opinions" RC wants him to give are irrelevant. Ford's "awareness" that aftermarket lift kit manufacturers are selling lift kits for F250s has no bearing at all on questions for the jury. Ford's "awareness" that "independent dealers would install modifications on lift kits" is likewise irrelevant. What RC wants the jury to conclude is that Ford knowing about these things means that Ford approves of these things. The evidence—from Ford's internal documents and Ford's owners' manual—is precisely the opposite.

Allowing Mr. Pascarella to take positions as an "expert" about Ford's awareness and position on aftermarket lift kits *will* mislead the jury into believing Mr. Pascarella can speak on Ford's behalf, and that Ford thinks lift kits are safe and acceptable. This will unfairly prejudice Plaintiffs, and that prejudice significantly outweighs any probative value of his testimony. *See* Fed. R. Civ. P. 403.

## V.   CONCLUSION

Both of Mr. Pascarella's opinions are speculative. His opinions about *Ford*'s knowledge and *Ford*'s intention behind its Owner's Manual warnings have

17

no basis in reliable principles and methods. Instead, they are precisely the "ipse dixit" opinions Rule 702 prohibits. Because neither of Mr. Pascarella's opinions are permissible, Plaintiffs ask the Court to exclude him from testifying at trial.

Respectfully submitted on March 10, 2025,

                         CANNELLA SNYDER LLC

                         */s/ Tedra L. Cannella*
                         TEDRA L. CANNELLA
                           Georgia Bar No. 881085
                           tedra@cannellasnyder.com
                         ROBERT H. SNYDER, JR.
                           Georgia Bar No. 404522
                           rob@cannellasnyder.com
                         DEVIN L. MASHMAN
                           Georgia Bar No. 257588
                           devin@cannellasnyder.com

                         315 W. Ponce de Leon Ave.
                         Suite 885
                         Decatur, GA 30030
                         (404) 800-4828
                         (404) 393-0365 (fax)

                         ***Attorneys for Plaintiffs***

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rules 5.1(B) and 7.1(D), I hereby certify that the foregoing filing complies with the applicable font and size requirements and is formatted in 14-point Times New Roman font.

        CANNELLA SNYDER LLC

        */s/ Tedra L. Cannella*
        TEDRA L. CANNELLA
         Georgia Bar No. 881085
         tedra@cannellasnyder.com
        ROBERT H. SNYDER, JR.
         Georgia Bar No. 404522
         rob@cannellasnyder.com
        DEVIN L. MASHMAN
         Georgia Bar No. 257588
         devin@cannellasnyder.com

        315 W. Ponce de Leon Ave.
        Suite 885
        Decatur, GA 30030
        (404) 800-4828
        (404) 393-0365 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing *PLAINTIFF'S DAUBERT MOTION TO EXCLUDE THE TESTIMONY OF ROBERT PASCARELLA* was electronically filed with the Clerk of Court via CM/ECF, which will automatically serve the following attorneys of record:

Richard H. Hill
Claire C. Murray
Lindsay G. Ferguson
Aaron B. Chausmer
3344 Peachtree Road, N.E.
Suite 2400
Atlanta, GA 30326
rhill@wwhgd.com
cmurray@wwhgd.com
lferguson@wwhgd.com
achausmer@wwhgd.com

This 10th day of March, 2025.

CANNELLA SNYDER LLC

*/s/ Tedra L. Cannella*
Tedra L. Cannella
Georgia Bar No. 881085
*Attorney for Plaintiffs*