## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## GAINESVILLE DIVISION

| | |
|---|---|
| SANTANA BRYSON and JOSHUA BRYSON, as Administrators of the Estate of C.Z.B., and as surviving parents of a deceased minor, C.Z.B., | |
| Plaintiffs, | Civil Action No. |
| v. | 2:22-CV-17-RWS |
| ROUGH COUNTRY, LLC, | |
| Defendant. | |

## DEFENDANT ROUGH COUNTRY, LLC'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE CHARLES CROSBY UNDER RULE 702 AND *DAUBERT*

Plaintiffs' motion to exclude Charles Crosby's testimony (Doc. 152) is nothing more than a re-hashed airing of grievances about Rough Country's actual crash test that is designed and intended to sow distrust and disfavor against Rough Country without any actual legal basis. As shown by the video from that crash test (Doc. 123), the impact from an unlifted/stock 2016 Ford F-250 truck into the rear of a 2006 Ford Escape at approximately 50 miles per hour is violent and exceedingly destructive. This video undermines Plaintiffs' claim that the lift kit was the sole cause of C.Z.B.'s death, which is why they seek to have the crash test and Mr. Crosby's

related testimony excluded. But there is no sustainable reason to exclude the crash test, as Rough Country has previously explained to the Court. (Doc. 127.)

A. PLAINTIFFS DO NOT CONTEST MR. CROSBY'S EXPERT WITNESS QUALIFICATIONS

Plaintiffs do not dispute or otherwise challenge Mr. Crosby's qualifications as an expert witness in this case. They admit that he is a qualified expert with regard to vehicle crash testing.

First, Mr. Crosby obtained his Bachelor of Science degree in mechanical engineering from Brigham Young University in 2006. He returned to Brigham Young University and earned Master of Science degree, also in mechanical engineering, in 2010. [Ex. 1 (Crosby Curriculum Vitae), at 2.] Mr. Crosby is a member of the Society of Automotive Engineers (SAE). (*Id.*) Finally, Mr. Crosby has written extensively about vehicle impacts and collisions. (*Id.*, at 3.)

Second, Mr. Crosby's areas of expertise include accident reconstruction and vehicle crash analysis, including full scale crash testing, which he has done for almost 20 years. (*Id.*, at 2.) In fact, Exponent, where Mr. Crosby works, does "well over 100 crash tests in a year," and Mr. Crosby is personally involved in between 25 to 50 percent of them. [Doc. 127-1 (Crosby Depo.), at 14 (52:17-24).]

B. MR. CROSBY'S OPINIONS SHOULD NOT BE EXCLUDED BECAUSE THE CRASH TEST SHOULD NOT BE EXCLUDED

Plaintiffs' motion as to Mr. Crosby is based entirely on their previously filed "*Daubert* Motion to Exclude Defendant's Unrepresentative Crash Test" (Doc. 115; *see also* Doc. 152, at 3 ("Mr. Crosby's testimony pertains solely to" crash test).] If that motion is denied, then the foundation of Plaintiffs' instant motion crumbles. Accordingly, for the reasons set forth previously by Rough Country in response to the Crash Test motion (*see, e.g.,* Doc. 127) and in other similar filings, this motion should be denied.

C. THE OFFSET ISSUE IS NOT ONE OF RELIABILITY, AND IT IS AN ISSUE FOR THE JURY

Plaintiffs take the instant motion as an opportunity to again argue the "offset issue" to the Court. The fundamental reality is, however, that Plaintiffs do not contest the reliability of the crash test or its methodology, *i.e.*, how the unlifted 2016 Ford F-250 truck was crashed into the 2008 Ford Escape. There is no legitimate dispute that the crash test was reliable; it showed exactly what it professed to be – a crash test. Further, Plaintiffs do not dispute how the crash test was physically set up, which involved placing the test F-250 truck on a "crash rail tow system" with an "offset 10.9 inches to the right of the crash rail centerline," launching the test F-250 truck towards the test Escape, and then having it "released from the tow system *just prior to impact*," [Doc. 115-7 (Crosby Report), at 5. (italics added).]

Plaintiffs admit there is disagreement about the actual amount of offset (Doc. 152, at 1), and this is the basis for their "reliability" argument. In actuality, Plaintiffs are questioning whether the test's offset changed immediately prior to impact, between when it was released from the tow system and when it collided with the stationary test Escape, and not how Mr. Crosby set up the crash test. But "[a]n expert's method need not be perfect, nor need he apply it perfectly." *Banta Properties, Inc. v. Arch Specialty Ins. Co.*, No. 10-61485-CIV, 2011 WL 13096149, at *4 (S.D. Fla. Dec. 20, 2011).

Plaintiffs' claim that the test F-250 truck did not accurately collide with the test Escape is a basis to deny Plaintiffs' efforts to exclude the crash test. *Watt v. Butler*, 744 F. Supp. 2d 1315, 1320 (N.D. Ga. 2010), *aff'd,* 457 F. App'x 856 (11th Cir. 2012) ("objections [that] go to the weight and accuracy of Dr. Averill's testimony, not the reliability of his methodology," are dealt with on cross-examination); *Adams v. Lab'y Corp. of Am.*, 760 F.3d 1322, 1334 (11th Cir. 2014) (alleged "shakiness goes to the weight of her testimony, not its admissibility"); *Jones v. Otis Elevator Co.*, 861 F.2d 655, 662–63 (11th Cir. 1988) ("absolute certainty is not required" and any alleged "weaknesses in the underpinnings of the expert's opinion go to its weight rather than its admissibility"); and *McMickens v. Volkswagen of Am., Inc.*, No. CIV.A. 00-0088-WS-C, 2003 WL 26093375, at *1 (S.D. Ala. July 23, 2003) ("any resulting doubt about the accuracy of the GAS goes to its weight,

not to its threshold reliability for purposes of *Daubert* analysis"). To the extent that Plaintiffs contend the "offset issue" affected Mr. Crosby's opinions and the crash test, they can raise it with the jury. *See, e.g., Jones*, 861 F.2d at 662–63 ("[o]n cross-examination, the opposing counsel is given the opportunity to ferret out the opinion's weaknesses to ensure the jury properly evaluates the testimony's weight and credibility").

Plaintiffs now focus their argument on their position that the crash test was unreliable because Mr. Crosby did not use a "marker pin or similar procedure" to help ascertain the amount of offset in the crash test. (Doc. 152, at 2.) However, as Mr. Crosby explained during his deposition, the lack of a marker pin was of no consequence.

| | |
|---|---|
| Counsel: | And did you do that [use a marker pin] with your crash test? |
| Mr. Crosby: | We did not. |
| Counsel: | And why not? |
| Mr. Crosby: | It – one, its not following that specific protocol, and so *that reference window would not necessarily mean anything in this particular case.* |

[Doc. 127-1 (Crosby Depo.), at 19 (71:20-71:25) (italics added).] Moreover, while Plaintiffs purport to complain that Mr. Crosby did a visual examination of the vehicles following the crash test, they fail to inform the Court that a visual examination is required even with the marking pin. [*Id.*, at 19 (72:18-21) ("you can

visually see where the mark was made").] Similarly, as Plaintiffs admit in their

motion, the marker pin is just one protocol; it is not the sole, definitive protocol.[1]

(Doc. 152, at 2). Mr. Crosby explained that there are numerous other acceptable

protocols when performing crash tests.

> . . . that marker's only in the one protocol that I can remember. So *there's other
> protocols that don't have that marker that you would just visually look at* to
> make sure that you've got your alignment correct that you hit the target the
> way you needed to.

[Doc. 127-1 (Crosby Depo.), at 19 (73:5-10) (italics added); *see also id.*, at 20 (74:3-

5) ("some of the IIHS offset tests have just a visual marker where you just look at it

and see if it impacted in that area").]

Finally, Plaintiffs present nothing to invalidate the crash test based on the

offset or any other stated concerns. Their experts, Buchner and Roche, admit that

they did no testing or anything else to ascertain what effect – if any – an increase in

offset might have on the "crush" incurred by the test Escape. [Doc. 119-6 (Second

Buchner Depo.), at 70 (275:19-276:6) (admitting that he did not "calculate the – the

increase in crush" and he cannot "quantify the difference in crush that would be

---

[1] Plaintiffs do not cite to any standards or legal authority to support their claims
and arguments in the motion that a crash test must have a marking pin to be reliable.
The source of Plaintiff's argument for the use of a marking pin is Mr. Crosby's
testimony, and he immediately explained that a marking pin is neither required nor
standard.

caused by the alleged five plus or minus one inch additional offset that occurred in the crash test").] Roche similarly did nothing to test, analyze, calculate, or otherwise determine what impact Plaintiffs' cited concerns would have on the crash test. [Doc. 127-2 (Second Roche Depo.), at 17 (65:24-10); *see also id.*, at 18 (67:22-68:2 and 68:8-10).] Given that Plaintiffs' argument is based solely on speculative conclusions, the Court should deny their motion and leave Plaintiffs free to argue this issue to the jury.

D. CONCLUSION

If Plaintiffs believe that Mr. Crosby's testimony and/or the crash test are "shaky," then they are free to address that issue with the jury. The Eleventh Circuit has

> repeatedly stressed *Daubert's* teaching that the gatekeeping function under Rule 702 "is not intended to supplant the adversary system or the role of the jury: vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."

*Guinn v. Norfolk S. Ry. Co.*, 441 F. Supp. 3d 1319, 1327 (N.D. Ga. 2020). Accordingly, for the foregoing reasons, Rough Country shows that Plaintiffs' *Daubert* motion to exclude Mr. Crosby (Doc. 152) should be DENIED.

*[Signature Page Follows.]*

This 17th day of March, 2025.

WEINBERG, WHEELER, HUDGINS, GUNN & DIAL, LLC

3344 Peachtree Road, N.E.
Suite 2400
Atlanta, GA 30326
Phone:  404-876-2700
Fax:  404-875-9433
rhill@wwhgd.com
achausmer@wwhgd.com

/s/ Aaron Chausmer
Richard H. Hill, II
Georgia Bar No. 354425
Aaron B. Chausmer
Georgia Bar No. 119998
*Attorneys for Defendant Rough Country, LLC*

## RULE 7.1D CERTIFICATE OF TYPE, FORMAT AND FONT SIZE

Pursuant to Local Rule 7.1D of the United States District Court of the Northern District of Georgia, the undersigned certifies that the foregoing submission to the Court complies with Local Rule 5.1 in that it was computer-processed, double-spaced between lines, and used Times New Roman font of 14 point size.

This 17th day of March, 2025.

/s/ Aaron Chausmer
Aaron B. Chausmer
Georgia Bar No. 119998

## **CERTIFICATE OF SERVICE**

This is to certify that I have electronically served the foregoing filing with the

Clerk of Court via CM/ECF, which will send a copy to the following attorneys of

record:

Tedra L. Cannella
Robert H. Snyder, Jr.
Devin Mashman
CANNELLA SNYDER LLC
315 W Ponce de Leon Ave
Suite 885
Decatur, GA 30030

### *ATTORNEYS FOR PLAINTIFFS*

This 17th day of March, 2025.

*/s/ Aaron Chausmer*
Aaron B. Chausmer
Georgia Bar No. 119998