# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

| | |
|---|---|
| NATALIE BACHO & STEPHEN BACHO, AS SURVIVING PARENTS OF A.B., A DECEASED MINOR , <br><br> Plaintiff, <br><br> vs. <br><br> ROUGH COUNTRY, LLC F/K/A HECKETHORN PRODUCTS, INC.D/B/A ROUGH COUNTRY SUSPENSION SYSTEMS AND/OR ROUGH COUNTRY <br><br> Defendant. | CIVIL ACTION FILE <br> NO:   3:14-CV-40-TCB |

## DEFENDANT'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

### I.    Introduction

This case presents a tragic example of the consequences of distracted driving. On Saturday, December 22, 2012, Plaintiffs and their family had been roller skating and to dinner, and were going to look at Christmas lights on the way home in Newnan. Shortly after 8:00 p.m. in their Toyota Sienna minivan heading east on Lower Fayetteville Road at the intersection with Newnan Crossing Bypass, a southbound Chevy Silverado pickup truck ran the red light without stopping and crashed into the driver's side of the minivan. The driver of the truck, Taylor Long, age 18, was distracted and ran the red light without stopping or slowing because he

RC-BRYSON 000855

was talking to his girlfriend on his cellphone. (Long deposition, page 19: line 13 (hereafter 19:13).

After the crash, Mrs. Bacho the driver, and her father who was the front seat passenger, were treated in the emergency room and discharged home with pain prescriptions. The daughter seated in the second row right side was treated for abrasions on her forehead and bruised shoulder, chest and lung. The daughter who was seated in the third row right side was noted to have for abrasions to chest and pelvis and swelling to the shoulder; later radiology revealed she had a broken pelvis from her seatbelt. The most serious injuries were to Natalie's husband Stephen, seated second row driver's side, and their daughter Abigail, seated third row behind her father on the left side. Mr. Bacho had alteration of consciousness, chest bruising, ruptured diaphragm, collapsed lungs worse on the left, broken ribs worse on the left, fractured pelvic bones, and fractured components of the lumbar spine. He was admitted to the hospital, put on ventilation, underwent surgical procedures, and eventually discharged to inpatient rehab until February 5, 2013. (Raphael Def. Rule 26 Report, pp. 4-7).

However, this lawsuit only concerns the injury and death of Abigail, age 9. After the accident she was unresponsive and barely breathing when she was pulled

RC-BRYSON 000856

from the van. All observers noted her lack of consciousness. While the EMTs were ventilating her, she began to vomit large amounts of food, which medics suctioned as they intubated. Thirty minutes later the life flight crew noted decortical posturing, and more vomit was suctioned from her airway. At the Children's Hospital emergency room she was found to have broken bones in three places in her pelvis area. No significant injuries to her thorax were noted. Her head and face had no abrasion, lacerations, or bruising, except a superficial laceration under her left eye containing a small foreign body, possibly a shard of glass, and minor edema on her forehead. Her pupils were fixed and dilated. CT scan of the inside of head showed no skull fracture, but hematomas on both sides of her brain, diffuse cerebral swelling, and poor gray-white matter differentiation consistent with loss of oxygen to her brain cells. She did not regain consciousness, and was declared dead on December 24, 2012. An autopsy was not performed. (Raphael report at 6).

Taylor Long, whose license had been suspended for points between his high school graduation in May and November of 2012, pleaded guilty to causing the death of another without intention to do so, [dis]obedience to traffic control devices, underage possession of alcohol, and window tint violation. (Long 26:13; 57-58). He was sentenced in Coweta County to six months in jail, two years on

3

RC-BRYSON 000857

probation, and community service. (Long 26:18). As a condition of his probation, he was directed to work with the Bacho family to record a public service announcement on the topic "obeying the rules of the road and consequences of ignoring them." (Long 58:12-59:6; "Abby's Angels: A Public Service Announcement" https://youtu.be/k-I1EWnAsXY ). The Bachos started the Abby's Angels foundation to aid worthy causes, and they have spoken in public about the dangers of distracted driving. (http://bit.ly/1GFxNmO, http://bit.ly/1JASmVf, accessed at http://www.Abbysangelsfoundation.org/). Plaintiffs did not include Mr. Long as a Defendant; this lawsuit claims Rough Country should be financially responsible for their daughter's death.

### A. The product liability claims

Prior to the accident Taylor Long made a number of legal modifications (in contrast to the illegal window tint) to his pickup truck, including having a lift kit installed by a local dealer. A lift kit is a collection of parts that are added to the suspension of a vehicle to raise the ground clearance. There are quite a few companies that sell lift kits, and many dealers of new pickup trucks sell lifted trucks. (Ex. 7 Dunn Aff't). Rough County is a Dyersburg, Tennessee company that makes automobile accessories including a line of lift kits. The product in this case

4

RC-BRYSON 000858

is the 276S, six inch lift kit for GMC trucks model years 1988 to 1998. Long paid a Newnan dealer to install the kit, along with some oversized Dick Cepek tires that he bought elsewhere (Long 44:14).

Nearly every state has enacted legislation that restricts certain aspects of vehicle height; Georgia Code Ann. § 40-8-6.1 dictates the maximum distance from the street to the lowest point on the frame of the truck. The lift kit on Taylor Long's truck undisputedly complied with this Georgia law. (Renfroe Vol. 1 at 15:11 (all refs to Vol.1 unless otherwise stated), McAllister 35:25-36:13).

The Complaint claims that the lift kit is a defective product because it "requires the use of oversized tires, which adversely affects a vehicle's braking capacity" and because the lift kit "increases a vehicle's ride-height, causing the vehicle's bumper to override the side impact protection of a target vehicle, which causes intrusion into the target vehicle's occupant compartment…" The Complaint sounds in strict liability and negligence, and also alleges failure to test and failure to warn. The Complaint seeks actual and punitive damages for wrongful death.

### B. Expert testimony

The plaintiffs and the defendant hired a number of experts who submitted Rule 26 reports. Unsurprisingly, there are some differences of opinion. However,

RC-BRYSON 000859

there are relevant things that are undisputed by all the witnesses. The National Highway Traffic Safety Administration (NHTSA) does not regulate lift kits, vehicle bumper heights, or pickup truck bumpers. (McAllister 42:9, Lewis 39:20). It is undisputed that Long's lifted truck crushed the driver's side of the Bacho's minivan and caused intrusion into the passenger compartment, and that if it had not been lifted, it would have also caused crush (the amount is disputed)(McCort 29:8, 35:14, Renfroe 104:9). It is undisputed that vehicle crush causes a longer crash pulse which decreases the forces placed on occupants of a motor vehicle (Renfroe 132:17, Lewis 93:7-94:3 ("time is our friend"), McCort 41:4, 57:23-58:9; NHTSA study, Ex. 4 ). All the experts who considered occupant kinematics say that Abigail's head made contact with the side air curtain which covers the window of the third row. (Lewis 64:10, Dagi 59:15-20). It is undisputed that Abigail had widespread brain anoxia (lack of oxygen to the brain cells), but no skull fractures, and no significant lacerations, abrasions, contusions or bruises. (Dagi 97:7; 99:9, 104:12-105:1). "…[O]ther than a little bit of edema to the left side of her head, she really has no significant external evidence of injury" (Lewis 55:13; cf. 56:3-16(to him, "forehead" means "left side"). It is undisputed that there was no evidence of conscious pain and suffering; Plaintiffs have withdrawn that contention (Dagi

6

78:17-79:17). Plaintiffs' braking test for lifted trucks showed no difference with the lift kit; Plaintiffs have withdrawn that contention. (Renfroe 136:16–137:21). It is undisputed that Taylor Long the driver of the lifted truck suffered no injury despite the fact that he did not wear his seat safety belt, and his airbag did not go off. (Dagi at 109:3; Accident Report, Ex. 2).

## II.  ARGUMENT AND CITATION OF AUTHORITY

### A. Summary Judgment Standard

Summary judgment is proper when no genuine issue as to any material fact is present, and the moving party is entitled to judgment as a matter of law. The movant carries the initial burden and must show that there is an absence of evidence to support the nonmoving party's case. Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment. The nonmovant is then required to go beyond the pleadings and present competent evidence in the form of affidavits, depositions, admissions and the like, designating specific facts showing that there is a genuine issue for trial. The mere existence of a scintilla of evidence supporting the nonmovant's case is insufficient to defeat a motion for summary judgment. Resolving all doubts in favor of the nonmoving party, the

7

Court must determine whether a fair-minded jury could return a verdict for the nonmoving party on the evidence presented. *Ivy v. Ford Motor Co.*, 2010 WL 9115838 (N.D. Ga. 2010) aff'd, 646 F.3d 769 (11th Cir. 2011)[Internal citations omitted].

### B. Plaintiffs' Design Defect Claims are Not Supported by Law

Plaintiffs erroneously contend that the lift kit meets Georgia's definition of a defective product because it is "unreasonably dangerous". But under Georgia law there is no liability for an "unreasonably dangerous" product absent some defect or defective condition. *Wheat v. Sofamor*, 46 F. Supp. 2d 1351, 1360 (N.D. Ga. 1999). The mere fact that someone is injured while using a product does not render that product defective. *Bunch v. Maytag Corp.*, 211 Ga.App. 546, 547, (1993). Manufacturers have no obligation to produce accident-proof products. *Banks v. ICI Americas, Inc.,* 264 Ga. 732, 736 (1994) ("[A] manufacturer is not an insurer that its product is, from a design viewpoint, incapable of producing injury"). The law does not even require that a manufacturer produce or sell only the safest products it is capable of making. *Vax v. Albany Lawn & Garden Ctr*., 209 Ga. App. 371 (1993). Specifically there is no legal duty to design, for instance, an accident-proof vehicle *Doyle v. VW*, 267 Ga. 574, 577 (1997), much less an accident-proof

RC-BRYSON 000862

aftermarket component. <u>Cf.</u>, *Jonas v Isuzu*, 210 F.Supp.2d. 1373 (MDGa 2002)(rollover case, manufacturer had no duty to guard against driver falling asleep, and has no duty to create a product incapable of causing injury).

Plaintiffs have no evidence that a lift kit is defective. Plaintiffs argue the lifted truck caused Abigail Bacho worse injuries than a non-lifted truck would have caused in the same wreck. This is disputed. But even taken in the light most favorable to Plaintiffs as non-movants with the burden of proof, a product is not defective because it made a certain kind of crash between certain vehicles more dangerous in hindsight. That is like saying a turbocharger, or a fuel additive, is defective if it makes a car go faster and crash into other people's cars with more force. Or saying a knife sharpener is defective because it makes a knife more dangerous when used by a criminal. An Escalade or a Hummer or their bumpers are not defective because they are higher than a Prius or a Smart Car, nor is a car defective because it is lower than other vehicles, nor is a product to raise a truck's suspension defective.

Along with attempting to show that a particular accident was worse in hindsight, Plaintiffs may argue that a  lift kit has no utility. This belies reality. Any person who has scraped the underside of their car on a North Georgia

9

driveway knows the use of a taller riding vehicle. Likewise, the popularity of lifted trucks in Coweta County, in Georgia and the Southeast speaks to their benefits, as does the fact that OEM manufacturers have come out with their own versions sold at factory dealers. (Ex. 7, Dunn Aff't). Legally in regard to the benefits aspect of the balancing test, factors that could be considered include the appearance and aesthetic attractiveness of the product; its utility for multiple uses; the convenience and extent of its use, especially in light of the period of time it could be used without harm resulting from the product; and the collateral safety of a feature other than the one that harmed the plaintiff. *Kelley v. Hedwin Corp.*, 308 Ga. App. 509, 511-12 (2011). Many public entities, such as police and fire, use lifted trucks, and in Alabama, the Southern Company uses them.[1]

An instructive case from another jurisdiction is *Beatty v Trailmaster Products*, 330 Md. 726, 625 A.2d 1005 (1993), which held that the testimony of an engineer David McAllister (one of the Bacho's experts in this case) created no issue of fact in a case against a lift kit manufacturer when it was "readily apparent that the Maryland legislature has considered the issue of vehicle bumper heights for the purpose of protecting the public from any dangers posed by mismatched

---

[1] Counsel's personal observation, on the way to one of the depositions. See also sample vehicles in public use, Ex 8).

RC-BRYSON 000864

bumpers on colliding vehicles…." *Beatty* goes on to say:

> [T]he mere fact that the Bronco's bumper was higher than that of the Honda does not render the Lift Kit "defective" or "unreasonably dangerous." Indeed, the legislative scheme plainly contemplates that bumper mismatch between different classes of vehicles is an inevitable occurrence and, as such, sanctioned by the legislature as a matter of public policy.

330 Md. at 743, 625 A.2d at 1014.

The *Beatty* Court also noted that NHTSA had declined to make rules about

vehicle bumper heights or require underride guards:

> NHTSA believes it would be inappropriate to require bumpers of these vehicles to be at the same height as those of passenger cars. These types of vehicles require greater ground clearance than passenger cars, to enable them to clear obstacles and hazards characteristic of commercial and occasional off-road operation. For the same reason, requiring underride guards on [light] trucks and multipurpose passenger vehicles would be inappropriate.

(Id., see also Exhibit 5, 56 Fed.Reg 7826-01)(clarification in brackets

added). NHTSA noted that its safety standards apply only to new vehicle

manufacturers; that states regulate subsequent modifications more effectively

through state motor vehicle equipment laws. Id. *Beatty* concluded:

> Consequently, we think the trial judge was correct in granting summary judgment for the defendants where the expert's opinion did not adequately create a genuine issue of material fact that the defendants' Lift Kit product, either for negligence or strict liability purposes, was foreseeably unsafe, defective, or unreasonably

11

RC-BRYSON 000865

dangerous. This is so notwithstanding the fact that the Lift Kit device raised the Bronco's suspension by some 4 inches above its original design with the result, as with other bumper mismatches, that it may ride over another vehicle having a lesser bumper height in a collision.

330 Md. at 744, 625 A.2d. at 1014.

This analysis is equally applicable to the law in Georgia today, where the Legislature has declared its purpose was "to require every vehicle to be in safe mechanical condition and not to endanger the driver or other occupant or any person upon the highway." Equipment and Inspection of Motor Vehicles, O.C.G.A. § 40-8-7(a). Pertinently, O.C.G.A. § 40-8-6.1 dictates the maximum distance from the street to the lowest point on the frame of a lifted truck, with which height Taylor Long's truck undisputedly complied. Georgia law contemplates different sized vehicles operating on the public roads, and those differences do not make them defective.

In summary, Plaintiffs contend the Rough County lift kit is a defective product because it, when added onto Taylor Long's car, allegedly worsened the accident his carelessness caused. Georgia law does not supply a remedy for every hurt, and this argument fails as a matter of law. Under strict liability or negligence, Plaintiffs' claims fail because they have no evidence of defect. The lift kit did not

12

malfunction or fail. The witnesses all agree that the lift kit served its purpose of raising the suspension of Taylor Long's Chevy Silverado about six inches. There is no claim that the lift kit was not made as intended, should have been made differently, or that any other lift kit in the world has a different better design that would have prevented injury here. The only witness on defect, Mr. Renfroe, did not examine any other manufacturer's lift kit design (Renfroe 155:10-22). See also, Defendant's *Daubert* motion.

### C. Plaintiffs' design defect claims fail as a matter of law, for lack of admissible evidence of a feasible alternative design

Plaintiffs have the burden of proof of design defect under the risk-utility analysis of *Banks v ICI Americas*, 264 Ga. 732. Although many relevant factors inform this risk-utility analysis, the most important factor cited in every case is "whether the design chosen was a reasonable one from among the feasible choices of which the manufacturer was aware or should have been aware" -- this factor is the "heart" of design defect cases. Id. at 736. There may be cases where proof of existing feasible alternative design is not required, but this is not one of them. The risk-utility analysis adopted in Banks for product liability design defect claims requires evidence of "the reasonableness of selecting from among alternative product designs and adopting the safest feasible one." *Jones v. NordicTrack, Inc.*,

13

RC-BRYSON 000867

274 Ga. 115, 118 (2001); *Parks v. Hyundai Motor Am., Inc.*, 294 Ga. App. 112, 114 (2008). When Plaintiffs lack evidence of a feasible alternative design, courts have granted summary judgment in strict liability cases. See, e.g., *Folsom v Kawasaki Motors Corp.*, 509 F.Supp. 1364 (2007); *Timmons v Ford Motor Co.*, 982 F.Supp. 1475 (1997); *Kelley v Hedwin Corp.*, 308 Ga.App. 509 (2011); *Moore v ECI Management*, 246 Ga.App. 601 (2000). Where the defendant can show that by applying the risk-utility test the lack of a defect is plain and indisputable, summary judgment is appropriate. *Raymond v. Amada Co.*, 925 F.Supp. 1572 (N.D.Ga.1996).

Plaintiffs have no admissible evidence that a safer alternative design exists even now, or at the time Rough Country made the lift kit. The only expert with testimony about defect is David Renfroe. He has no idea how to make a better lift kit. His only attempt at an alternative design is neither existing, feasible, or alternative: it comes from a 2005 internet article entitled "Cal Poly Student Designers Propose Solutions to Bumper Height Incompatibility" which discusses a college classroom project to redesign steel bumpers. The project, sponsored by steel manufacturers, narrowed 30 student designs down to three (See Exhibit 6). The article defines the class problem as:

14

> Bumper height incompatibility, which is the difference in height between light trucks or SUVs and passenger cars, has been the focus of a concerned [sic] effort by automakers worldwide looking to minimize the repair cost for damage that occurs when two such vehicles meet in a minor "fender bender." Because of the difference in heights, cars don't always bump together bumper to bumper, and excessive damage can occur to the vehicle with a lower bumper.

Id. These general theoretical concepts, which were not even intended to help the Plaintiffs' situation, have never been final designed, prototyped, crash tested, tested under real world conditions, or manufactured and sold anywhere. Renfroe performed no calculations or testing with these concepts to determine if they would make any difference to the Bachos in the side impact into their van. There is no evidence of cost, or of customer acceptance. There is no testing or analysis of whether they would instead create new and different problems, or whether they would comply with NHTSA bumper standards, or state law. The article concludes with an explicit caution:

> Even with Finite Element Modeling, the analysis completed is not sufficient for a final design. Many more factors must be considered including: dynamic loading, plastic deformation, and packaging constraints within the vehicle. Actual high-speed crash data would also be invaluable for future analysis. These designs are general concepts for a theoretical problem. Any of these concepts must be

15

RC-BRYSON 000869

specifically adapted to the vehicle in which they would be implemented.

In other words, "do not try this at home." Under the law, concepts which are "not sufficient for final design" cannot be legally sufficient evidence of a feasible alternative design in a court applying Georgia law. See also, Defendant's *Daubert* motion.

### D. There is no legal duty under Georgia law for an automobile component manufacturer to ensure the safety of occupants of other vehicles.

Plaintiffs' claim that the lift kit made the injuries in the wreck worse hearkens to the "crashworthiness doctrine" enunciated in Georgia in *Polston v Boomershine*, 262 Ga. 616 (1992). But crashworthiness – the determination of apportionment of damage between the striking driver and the enhanced injury caused by a defective design – applies to new vehicle manufacturers, not to manufacturers of components that are not occupant safety devices such as seatbelts or airbags. In the absence of a legally cognizable duty, there can be no fault or negligence. *DaimlerChrysler Motors Co. v. Clemente*, 294 Ga.App. 38, 58(13), 668 S.E.2d 737 (2008); *Ford Motor Co. v. Reese*, 300 Ga. App. 82, 84, 684 S.E.2d 279, 283 (2009); cf., *Barris v. Bob's Drag Chutes & Safety Equip., Inc.*, 685 F.2d 94, 100 (3d Cir. 1982) (strict liability, not crashworthiness, is proper legal test for a

16

RC-BRYSON 000870

seatbelt component, where court was "unable to find any reported case in which the crashworthiness doctrine has been asserted against a component parts manufacturer"). NHTSA published guidance states that automobile and truck bumpers themselves are "not a safety feature intended to prevent or mitigate injury severity to occupants in the passenger cars." (Exhibit 6, Question 2).

Likewise, the crashworthiness doctrine applies to occupants of a manufacturer's vehicle, not to occupants of other vehicles. There is no evidence that Taylor Long was even injured in this wreck. The U.S. Code defines crashworthiness as "the protection that a passenger motor vehicle affords <u>its passengers</u> against personal injury or death as a result of a motor vehicle accident." 49 U.S.C.A. § 32301 (emphasis supplied). No Georgia case has considered the issue, but *DeVeer v Land Rover*, 2001 WL 34354946 (unpublished, California 2nd District 2001) is instructive. A Range Rover crashed into Ms. DeVeer's Saab sport sedan and she had a head injury. She sued, alleging enhanced injuries because the Range Rover front end was too stiff and too high. The Court analyzed the offered evidence and testimony and found that crashworthiness is not applicable where there is no legal duty to make different sized vehicles compatible. <u>Id</u>. No cases hold that a manufacturer of an aftermarket vehicle part that is not part of the impact

17

RC-BRYSON 000871

protection system and makes no contact with other vehicles or pedestrians[2] has a legal duty to passengers of other automobiles.

### E. Evidence concerning oversized tires creates no liability on the part of Rough Country that did not make or sell them

In addition to the lift kit, Mr. Long installed other accessories on his truck, including oversized Dick Cepek tires that added to the height of the frame and front bumper. Rough Country did not manufacture or sell these tires that Taylor bought and had put on his truck when the lift kit was installed. Plaintiffs have repeatedly contended that Rough Country is responsible for the tires because lift kit manufacturers are aware that owners who install lifts may also install oversized tires that raise the truck, which would not otherwise fit on the standard truck. But again, Georgia law does not recognize any such claim for "known use with" liability. "A manufacturer has the absolute right to have his strict liability for injuries adjudged on the basis of the design of its own marketed product and not that of someone else." *Hall v. Scott USA*, 198 Ga. App. 197, 201 (1990); *Talley v. City Tank Corp.*, 158 Ga.App. 130, 134 (1981). In *Hall* the plaintiff was wearing

---

[2] A manufacturer of an accessory that actually makes contact with other vehicles or pedestrians causing injury might have such a duty under Georgia law. <u>Cf.</u>, *Passwaters v. Gen. Motors Corp.*, 454 F.2d 1270 (8th Cir. 1972)(Plaintiff injured by unshielded metal flanges protruding from automobile was entitled to jury under Iowa law).

RC-BRYSON 000872

protective goggles, on which was attached a device called "Roll-Off's by Smith" which broke and caused injuries. The Scott Company was not liable for Smith's product, even where Scott allegedly knew users would use them together. Id. The requirement that strict liability is limited to a manufacturer's own product also applies to a claim that a defendant could be liable for failure to provide additional safety equipment (such as an add-on bumper). A manufacturer cannot insure the safety and reliability of a product that it does not make. There is no duty on manufacturers to specify what kind of safety or protective equipment should be used with their products. *Jones v. Amazing Products, Inc.*, 231 F. Supp. 2d 1228, 1245-46 (N.D. Ga. 2002).

### F. Evidence concerning alleged rollover risks with lift kits is irrelevant to risk-utility and inadmissible in a case where no rollover occurred

As the Court is aware from discovery, Plaintiffs contend that lift kits pose a rollover risk in accidents because they raise the center gravity of a lifted vehicle, and that this factor should be considered in the risk utility analysis in this case, even though no rollover occurred. But such claims are irrelevant as a matter of law. Under Georgia law, "[n]o matter how negligent a party may be, if their act stands in no causal relation to the injury it is not actionable." *Jonas v. Isuzu Motors Ltd.*,

19

RC-BRYSON 000873

210 F.Supp.2d 1373, 1377 (M.D.Ga.2002) aff'd, 58 F. Appx. 837 (11th Cir.2003)

(quoting *Finney v. Machiz*, 218 Ga.App. 771 (1995). "Strict liability is imposed for

injuries which are the proximate result of product defects, not for the manufacture

of defective products. Unless the manufacturer's defective product can be shown to

be the proximate cause of the injuries, there can be no recovery. Id. (quoting *Talley*

*v. City Tank Corp.*, 158 Ga.App. 130 (1981). It is unreasonable and prejudicial to

inject a risk into this case which is not relevant, and force the defendant to defend

something that has not happened.

### G. Claims for failure to warn and defective marketing fail because there is no evidence to support them

Plaintiffs Complaint alleged failure to warn, and marketing defects. But after

discovery Plaintiffs have no evidence that any known warning would make any

difference to the Bachos or to Taylor Long. None of the Plaintiffs' experts

expressed any opinions about warnings, what they should say, or what they might

change. Absent such evidence these claims must be dismissed.

### H. Plaintiff's claims for failure to test fail as a matter of law

A claim of failure of Defendant to test lift kits is anticipated. The Eleventh

Circuit has noted that "Georgia does not recognize a cause of action for negligent

testing." *Villegas v. Deere & Co.*, 135 Fed.Appx. 279, 281 (11th Cir.2005).

20

RC-BRYSON 000874

Plaintiffs' experts have produced no evidence to show any hidden danger that a test would reveal. The only testing the experts did proved (1) that oversized tires are too big to fit on regular truck suspensions (any Coweta County mechanic could have told them that) and (2) lift kits do not interfere with braking. No law requires aftermarket component manufacturers to conduct crash tests. NHTSA published crash tests with vehicles of differing Average Height of Force (AHOF) which showed:

> However, this test series and others have shown that override does not always relate to a reduced safety outcome for the driver of the vehicle with the lower AHOF. These results seem to show that for lower speed vehicle-to-vehicle crashes, some override can improve occupant safety by providing a slower deceleration; however, at higher impact speeds this can lead to occupant compartment intrusion. For side impact crashes, the safety correlation with the AHOF difference seems to have been reduced, if not removed, by the presence of side curtain air bags.

Summers, Prasad, <u>NHTSA's Recent Compatibility Test Program</u>, Paper Number 05-0278 (Exhibit 4). In this case, Plaintiffs' expert McCord and Defendant's expert Fenton conducted simulations using the HVE software program. Mr. McCort disputes some of the engineering judgments used by Fenton, but both simulations show lower accelerations caused by a lifted truck, compared to the unlifted truck. (McCort at 40:16, Kineticorp/Fenton Second Report at 4).

21

## I.  Plaintiffs' negligence claim fails as a matter of law

In order to have a viable negligence action, Plaintiffs must demonstrate, among other things, the existence of a legal duty on the part of Defendant, which can arise either from valid legislative enactment by statute, or be imposed by a common law principle recognized in the case law. *Rasnick v. Krishna Hospitality, Inc.,* 289 Ga. 565, 566 (2011). No matter how innocent the Plaintiffs may be, they are not entitled to recover unless Defendant did something that it should not have done, or failed to do something that it should have done pursuant to the duty owed the Plaintiffs. *Douglasville v. Queen*, 270 Ga. 770, 771 (1999). "In a products liability case predicated on negligence, the duty imposed is the traditional one of reasonable care, and the manufacturer need not provide, from a design standpoint, a product incapable of producing injury. Generally, if a manufacturer does everything necessary to make the product function properly for the purpose for which it is designed, if the product is without any latent defect, and if its functioning creates no danger or peril that is not known to the user, then the manufacturer has satisfied the law's demands." *Jones v. Amazing Products, Inc.*, 231 F. Supp. 2d 1228, 1240 (N.D. Ga. 2002)(internal cites and punctuation

RC-BRYSON 000876

omitted). Plaintiffs have not and cannot identify any such legal duty, so negligence claims should be dismissed.

### J.  Plaintiffs' claim for punitive damages fail as a matter of law

A claim for punitive damages is governed by O.C.G.A. § 51–12–5.1(b), which provides that punitive damages "may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." In a farfetched claim for strict liability of a legal product with no evidence of wrongdoing, there can be no such showing. As a general rule, punitive damages are not appropriate in cases where a manufacturer complies with regulatory standards or conforms to industry state of the art. *Stone Man, Inc. v. Green*, 263 Ga. 470, 471–72 (1993); *Welch v. Gen. Motors Corp.*, 949 F.Supp. 843, 845–46 (N.D.Ga.1996). Taylor Long's lifted truck complied with Georgia state law. Finally, it is conceded in this case that there is no evidence of conscious pain and suffering (Dagi 78:17-79:17), so there is no predicate for an award of punitive damages in this wrongful death case. *Donson Nursing Facilities v. Dixon*, 176 Ga. App. 700, 701 (1985).

23

RC-BRYSON 000877

## **Conclusion**

Someone might conceivably prefer if all cars were the same size, shape, speed, weight, color and capacity. But society has a demand for different sized vehicles, and no law prohibits them or judges them defective. People have no legal responsibility to drive cars that are the same size as others, and no legal right to expect they will only be crashed into by vehicles that are the same. Plaintiffs have identified no legal duty that Defendant Rough Country breached in the design of the lift kit in this case, nor have they met their burden to produce evidence to prove the lift kit defective, as a matter of law. Rough Country is entitled to judgment as a matter of law on all of the Plaintiffs' claims.

Respectfully submitted, this 1st day of May, 2015.

DODSON & ASSOCIATES
/s/Charles R. Beans
Charles R. Beans
Georgia State Bar No. 006720

Attorney for Defendant, Rough Country LLC

Mailing Address
Caller Service #1808
Alpharetta GA 30023-1808
T: 678-317-7104
F: 678-317-8917
cbeans@travelers.com

24

RC-BRYSON 000878

**CERTIFICATE OF SERVICE AND OF FORMATTING**

I hereby certify that these pleadings are in 14 point Times New Roman, and that I have this day served a copy of this Defendant's Brief in Support of Motion for Summary Judgment, upon all counsel through the Court's CM/ECF system:

C. Neal Pope, Esq.                     David C. Rayfield, Esq.
Michael L. McGlamry, Esq.              Pope McGlamry, et. al.
R. Timothy Morrison, Esq.              111 Bay Avenue, Suite 450
Pope McGlamry, et. al.                 Columbus, GA 31901-2412
3455 Peachtree Road, NE
Atlanta, GA 30326-3243                 Thomas P. Willingham, Esq.
                                       3800 Colonnade Parkway, Suite 330
                                       Birmingham, AL 35243

This 1st day of May, 2015.

                                       DODSON & ASSOCIATES
                                       /s/Charles R. Beans
                                       Charles R. Beans
                                       Georgia State Bar No. 006720

Caller Service #1808
Alpharetta GA 30023-1808
T: 678-317-7104
F: 678-317-8917
cbeans@travelers.com

RC-BRYSON 000879