**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**GAINESVILLE DIVISION**

| | |
|---|---|
| SANTANA BRYSON and JOSHUA BRYSON, as Administrators of the Estate of C.Z.B., and as surviving parents of a deceased minor, C.Z.B., | |
| Plaintiffs, | Civil Action No. |
| v. | 2:22-CV-17-RWS |
| ROUGH COUNTRY, LLC, | |
| Defendant. | |

**DEFENDANT ROUGH COUNTRY, LLC'S RESPONSE**
**TO PLAINTIFFS' OMNIBUS MOTIONS IN LIMINE**

A. LEGAL STANDARD AND DISCUSSIONS

"A motion in limine is 'any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered.'" *Benjamin v. Experian Info. Sols., Inc.*, No. 1:20-CV-2466-RWS, 2022 WL 1697876, at *1 (N.D. Ga. Mar. 25, 2022) (quoting *Luce v. United States*, 469 U.S. 38, 40 n. 2 (1984)). "The true purpose of a motion in limine is to avoid the introduction of evidence at trial that is 'clearly inadmissible on all potential grounds' and could irretrievably impact the fairness of trial." *United States v. Jackson*, No. 7:23-CR-80 (WLS-TQL), 2025 WL 394959, at *1 (M.D. Ga. Feb. 4, 2025). "In fairness to the

parties and their ability to put on their case, a court should exclude evidence in limine only when it is clearly inadmissible on all potential grounds." *United States. v. Gonzalez*, 718 F. Supp. 2d 1341, 1345 (S.D. Fla. 2010). "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context." *Ward*, 2025 WL at *1.

B. PLAINTIFFS' INDIVIDUAL MOTIONS IN LIMINE

1. *Any reference to product tests or safety tests unrelated to vehicle intrusion or crash compatibility.*

2. *Any reference to Rough Country allegedly designing its lift kits to meet any FMVSS standards or to the lift's alleged "overall safety."*

Plaintiffs' first and second topics are substantively similar, and they are addressed jointly herein.

Plaintiffs have made Rough Country's design and testing a pivotal issue in this case.[1] Specifically, Plaintiffs have consistently argued that Rough Country has not done any testing in connection with its lift kits. This is inaccurate because Rough Country tested its lift kits for compliance with FMVSS 126 as a means to determine

---

[1] At outset of their argument on this topic, Plaintiffs mention the 2005 Enhancing Vehicle-to-Vehicle Compatibility Agreement ("EVC") (Doc. 156, at 3) which they identify as a "design standard." This description is incomplete; it is a *voluntary* design standard. In any event, the reason for Plaintiffs' invocation of the EVC in connection with this topic is unclear because the EVC does not address testing.

their "overall safety" and the lift kits' effect on vehicle stability and handling. As

Rad Hunsley stated on behalf of Rough Country:

> [T]here is no statute that I'm aware of that, other than like I'm aware of that, other than like the vehicle stability, you know, which we do test and ensure that our product maintains, you know, with a FMVSS test, so, you know, we are aware of NHTSA guidelines, and we have tested to the prevalent guidelines.
>      . . .
> Again, I would point to our FMVSS testing as the document that shows that we have complied with NHTSA guidelines.

[Doc. 97 (Rough Country Depo.), at 62 (61:4-23).] While Plaintiffs may dispute this

position, Rough Country remains entitled to present such evidence to the jury.

At a minimum, it is relevant to Plaintiffs' claim for punitive damages because

*both* Plaintiffs *and the Court* have raised the issue of testing in connection with that

claim. [*See* Doc. 109 (Order on Rough Country's Motion for Summary Judgment),

at 18 (finding Plaintiffs "have produced evidence in support of its argument that

Rough Country expressed a 'conscious indifference to the consequences' of its

actions," based in part on Plaintiffs' argument that Rough Country "performed no

testing to ensure product safety").] The fact that Rough Country did some testing is

evidence in its favor against Plaintiffs' punitive damages claim.

Further, Rough Country's FMVSS 126 testing is admissible because Plaintiffs

have made it clear that they intend to argue that Ford's Owner's Manual mandates

that lift kits should not be installed on its trucks. [*See* Doc. 151, at 4 n. 9 (referencing

the Owner's Manual for the proposition that Ford "recommend[ed] that its customers not install aftermarket lift kits on its trucks").]

Plaintiffs incompletely cite to Ford's Owner's Manual. The passage relied on by Plaintiffs specifically begins as follows: "*The suspension and steering systems* on your vehicle have been designed and tested *to provide predictable performance*, and it continues: "Any modifications to your vehicle that raise the center of gravity *may cause your vehicle to roll over when there is a loss of vehicle control*." (Doc. 151-6 (Owner's Manual excerpt), at 4 (italics added).] Ford's printed concern is exactly what FMVSS 126 – the testing performed by Rough Country – was designed and intended to test.[2] It targets "Electronic Stability Control Systems (ESC) [which] ha[ve] been found to be highly effective in preventing single-vehicle loss-of-control, run-off-the road crashes, of which a significant portion are rollover crashes."[3]

_____

[2] *See* 49 CFR § 571.126, "Standard No. 126; Electronic stability control systems for light vehicles," ("The purpose of this standard is to reduce the number of deaths and injuries that result from crashes in which the driver loses directional control of the vehicle, including those resulting in vehicle rollover.")

[3] *See also* NHTSA Final Regulatory Impact Analysis of FMVSS No. 126, Electronic Stability Control Systems, at 4 (E-1) [https://www.nhtsa.gov/sites/nhtsa.gov/files/fmvss/ESC_FRIA_%252003_2007.pdf) (last visited March 16, 2025)]. "Some ESC systems used on vehicles with a high center of gravity (c.g.), such as SUVs, are programmed for an additional function known as roll stability control. Roll stability control is a direct countermeasure for on-pavement rollover crashes of high c.g. vehicles." [*Id.*, at 37-38 (III-8-9).]

Plaintiffs' citation to *Boateng v. Bayerische Motoren Werke Aktiengesellschaft*, is distinct from this case because the FMVSS in that case had "no special relevance" to that case. No. 17-CV-209(KAM)(SIL), 2024 WL 1513601, at *12 (E.D.N.Y. Apr. 8, 2024). Here, FMVSS 126 has direct relevance to the case because Plaintiffs make it so by citing to the section in Ford's Owner's Manual that addresses "predictable performance" and "rollover" concerns "when there is a loss of vehicle control;" these are the precise issues that FMVSS 126 is intended to test.

Alternatively, if the Court grants Plaintiffs' requests to exclude testimony, evidence, or argument as to these two topics, then Plaintiffs should similarly be precluded from arguing that Rough Country did not do any testing whatsoever or any similar statements because it would be unfair and prejudicial to Rough Country to allow Plaintiffs to make an objectively incorrect statement without Rough Country having the ability to refute the statement.

Rough Country should be able to fully defend itself against Plaintiffs' accusations, allegations, and claim for punitive damages by referencing testing that it performed on its lift kits, including its FMVSS 126 testing, which focuses on Ford's stated concerns in its Owner's Manual, as identified by Plaintiffs.

3.    *Suggestion that C.Z.B.'s car seat was defective.*

This topic is moot because it has already been resolved through a Consent Order. (*See, e.g.*, Doc. 160, at ¶ 4.)

    4.   *Any suggestion that there was no feasible alternative design.*

Plaintiffs' argument on this topic is predicated on their expert, Chris Roche, and his contested "expert" testimony about "inexpensive and easy alternative designs," (Doc. 156, at 5). Roche's "designs" are nothing more than his speculative proposals, and they are not supported by any testing or other validation. For those reasons, among others, Rough Country previously moved to exclude Roche's testimony about alternative designs. (Doc. 138.)

Through this topic, Plaintiffs now seek to preclude Rough Country from arguing against Plaintiffs' alleged feasible alternative designs. This is nothing more than an attempt to handicap Rough Country by limiting its ability to properly and fully cross-examine Roche about his opinions.

For example, the idea proposed by Roche was that Rough Country offer SEAS "brackets that are big enough to account for the height of the lift," (Doc. 156, at 6), *but Rough Country disputes that the proposed design is "feasible."* Among other things, it could impact the lift kit's utility when "not associated with road use, that would be associated with off-road use, farm use, dealing with mud, snow, flooding rains in areas where a significant approach or departure angle is necessary," [Doc. 138-4 (Roche Initial Depo.), at 51 (195:2-6).] Roche's response to those situations "is that they are relatively easy to remove, so one option would be to advise customers that if they need additional utility, to remove them when off-road; and to

maintain them when they are on road," [*Id.*, at 51 (195:11-15).] Alternatively, Roche could "conceive of other solutions that are more complicated, are more expensive, . . . [b]ut [his] example is the cheapest, *maybe not the most convenient*." [*Id.*, at 51 (195:16-22) (italics added).] Whether asking a vehicle owner to constantly remove and replace Roche's proposed brackets is feasible or reasonable is an issue for the jury to consider.

Plaintiffs' request to bar Rough Country from arguing "that no reasonable alternative design existed or that the alternative design somehow impaired the utility of the lift kit," (Doc. 156, at 5), is excessive and inappropriate. Plaintiffs are effectively asking the Court to grant it summary judgment as to this issue. There are three other issues with Plaintiffs' request. First, Plaintiffs assert that Rough Country has "no evidence" to argue against Roche's proposed design, (Doc. 156, at 7). But as noted in their motion to exclude Roche's testimony and proposed design, Roche, and therefore Plaintiffs, has no evidence to support his design because he has never tested it; it is simply something he thought up.[4] *See, e.g., Sneed v. Crown Equip. Corp.*, No. 3:23-CV-743-K, 2025 WL 449330, at *9 (N.D. Tex. Feb. 10, 2025)

---

[4] Plaintiffs present Roche's alternative design as an answer for compliance with the EVC, but this misses the target. The question is whether Roche's alternative design renders Rough Country's lift kits safer by adequately stopping intrusion, and Roche did *no testing whatsoever* about this. He simply thinks that it would comply with the EVC.

(proposed "feasible design alternatives [we]re without support from appropriate engineering work, product development, or testing" and they "amount to speculative concepts, which is insufficient to rise to the level of an admissible expert opinion"). The truth is that Plaintiffs have no evidence to support Roche's proposed designs, and this topic is an improper attempt to switch the burden of proof on this issue from themselves to Rough Country.

Second, while Plaintiffs contend that Rough Country lacks "documents" to support its defense, they ignore Rough Country's ability to present testimony from its witnesses about the feasibility of Roche's ideas and designs. As noted elsewhere in this response, such testimony can be based on their personal knowledge or experiences or their opinions formed from their perceptions consistent with Rule 701.

Third, Plaintiffs complain that Rough Country's response to Roche's alternative design is "simply statements by lawyers" and "[a]ttorney argument is not evidence." (Doc. 156, at 7). Plaintiffs also contend that "Rough Country has produced no documents that indicate Mr. Roche's alternative design is not feasible or would impede the F250's utility," (*id.*).

Plaintiffs are asking that they be allowed to make their arguments and case on this issue to the jury free from cross-examination or the adversarial process. Whether Roche's proposed "fix" of constantly removing and re-installing brackets is

"feasible" or "reasonable" is an issue for the jury, and Rough Country should be allowed to present testimony, evidence, or argument in response to Plaintiff's premise.[5]

      5.    *Suggestion that the striking driver was misusing the lift or that the lift should not have been used on public roads.*

Plaintiffs' request for this topic is unduly vague because the phrase "misusing the lift" is unclear. Rough Country does not dispute that its lift kits can be used on public roads, but Hunter Elliott was not just driving on a public road. He was grossly "misusing" his F-250 truck, with the lift kit installed, when he collided with Plaintiffs' Escape. Without further clarity on this topic from Plaintiffs, the Court should deny Plaintiffs' request as to this topic.

      6.    *Suggestion or argument that Rough Country has been placing its products into commerce for over 30 years or that lift kits have been around for 40 years.*

Plaintiffs seek to preclude Rough Country from mentioning these highly relevant facts to the jury. Plaintiffs falsely inform the Court that there is no evidence of this because Rough Country "did not disclose any documents to support it during

---

[5] Plaintiffs' statement that "[a] lay person is not qualified to render an opinion that Mr. Roche's alternative design would impede the utility of the F250 or the suspension lift," (Doc. 156, at 7), is wrong and contrary to the law. Rule 701 specifically authorizes lay witnesses to offer opinions that are "rationally based on the witness's perception," and Rough Country witnesses have ample experience with lift kits to form perceptions that address Plaintiffs' theory on this topic.

discovery," (Doc. 156, at 9), and outright ignore the fact that Rough Country testified to these facts during its deposition.[6] [*See* Doc. 97, at 10 (9:22-23) ("we've been selling *the kits* for 30 years") (italics added); *see id.*, at 11 (10:22-23) (in response to question specifically about "lift kits," stating "we've been putting our product in commerce for 30 years").] Rough Country and its witnesses operate in this industry, and they are necessarily familiar with its industry. *See, e.g., Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co.*, 320 F.3d 1213, 1223 (11th Cir. 2003) (affirming "testimony offered by [party]'s employees and/or officers []as a type traditionally and properly considered lay witness testimony" and they "testified based upon their particularized knowledge garnered from years of experience within the field" under Rule 701); *Union Pac. Res. Co. v. Chesapeake Energy Corp.*, 236 F.3d 684, 693 (Fed. Cir. 2001) (when "witnesses have extensive personal experience in the oil drilling industry" and "were employees of major drilling companies," they could "testif[y] based on their own personal experiences under Fed. R. Evid. 701"). Rough Country witnesses can testify about matters within their personal knowledge and pursuant to Rule 701. This would include Rough Country's operational history and

---

[6] Plaintiffs also disingenuously assert that they "have not had the opportunity to explore this claim with any discovery," (Doc. 156, at 9). This statement is categorically false because Rough Country specifically mentioned these facts in its 30(b)(6) deposition, as noted herein, and Plaintiffs did nothing afterwards.

their independent knowledge and experience. Plaintiffs are then free to cross-examine such witnesses about their testimony at trial.

As with other issues, this topic also goes to Rough Country's "notice" of any potential defect with lift kits. If Plaintiffs present any testimony, evidence, or argument that lawsuits or people's deaths placed Rough Country on notice, then Rough Country should be entitled to present testimony, evidence, or argument to place Plaintiffs' contention into a proper historical context, and this topic goes directly to those matters.

> 7.    *Reference to "OVMs" or Ford placing lift kits on vehicles or Ford or Ford dealerships shipping vehicles to converters to put lift kits on.*

The foundation of Plaintiffs' argument about this topic is Rough Country's lack of "a meeting with Ford" and "no communications with Ford about vehicle compatibility," (Doc. 156, at 11). This premise is unduly narrow when compared to the scope of Plaintiffs' request. Even it was adequate, Plaintiffs' request as to these topics is grossly premature.

First, Rough Country witnesses are entitled to testify about matters within their personal knowledge or about opinions that they have formed based on their experience in the industry. *See* Fed. R. Evid. 701; *Tampa Bay Shipbuilding & Repair Co.* Mr. Hunsley for example, testified that he was "aware that the automakers know that our lifts are installed on their product." [Doc. 97 (Rough Country Depo.), at 19

(18:21-23).] Plaintiff never followed up and asked Mr. Hunsley for the basis of his testimony. Similarly, Plaintiffs have not deposed any other Rough Country employees. They may have similar testimony or have other testimony to offer about these topics. Rough Country's witnesses may be able to provide a proper foundation, such as their personal dealings with third-party installers, converters, or QVM relationships, for them to testify as to other aspects of this topic. Further, Rough Country's witnesses may have personally seen things that go to this topic, *i.e.*, lift kits installed by Ford or had other personal dealings with converters or QVMs. Again, Plaintiff chose not to delve into these topics with Mr. Hunsley. Plaintiff simply has no idea what he might actually say about these matters because it did not explore them in discovery. Plaintiffs cannot exclude potentially admissible evidence based on their current ignorance.

Second, it is undisputed that a Ford dealership installed the lift kit at issue in this case. [*See, e.g.*, Doc. 103-2 (Plaintiffs' Response to Rough Country LLC's Statement of Undisputed Material Facts), at ¶ 17.] The scope of this topic seems to indicate that Rough Country cannot mention this fact to the jury. The fact that a Ford dealership installed the lift kit at issue is highly relevant and probative, and Plaintiffs should not be allowed to exclude any such testimony from trial, to the extent that they are seeking to do so through this topic.

Third, Plaintiffs assert that Rough Country has "failed to" meet its "burden to show that any evidence it would introduce regarding third-party installers, converters, or QVM relationships is" admissible at trial. (Doc. 156, at 12.) This argument is premature. Rough Country has certain evidentiary burdens to meet *at trial*; it is not required to do so preemptively *prior to trial*. The Court is amply capable of – and should – simply resolve any evidentiary issues relating to this topic at trial when it has a proper record and the actual testifying witnesses before it. Plaintiffs' request as to this topic is simply premature. *See Ward*, 2025 WL at *1.

8.   *Any reference to offers of settlement or compromise*

This topic is moot because it has already been resolved through a Consent Order. (*See, e.g.*, Doc. 160, at ¶ 6.)

9.   *Evidence, suggestion, or argument regarding the original owner of the F250 who purchased the lift.*

Rough Country is not invoking "privity of contract" as a defense in this case, as Plaintiffs allude to in their motion. (Doc. 156, at 14.)

But the lift kit's history provides important background context, including the fact that the lift kit at issue was installed by a Ford dealership. If Rough Country cannot tell the history of the lift to the jury, then they may not fully understand the Ford dealership's connection to the lift kit at issue. For example, if Rough Country tenders documents related to the Ford dealership's installation of the lift kit, the jury

will see Mr. Holloway's name and not Mr. Elliott's. They will be left wondering what exactly  the Ford dealership's role was in this case. Rough Country needs to be able to explain to the jury that Mr. Holloway bought the lift kit and had it installed at a Ford dealership. Rough Country can then explain to the jury that the F-250 truck was subsequently acquired by Mr. Elliott. Background information is not always directly probative, but it is often relevant and of assistance to the jury. For example, the fact that Plaintiffs were anywhere before the accident is irrelevant because – as Plaintiffs frequently assert to the Court – it has no bearing on the issue in this case. What matters is simply that the Plaintiffs were in the wrong place at the wrong time. But Plaintiffs will undoubtedly present such testimony to the jury. Accordingly, if the Court finds that the history of the lift kit, including its purchase and ownership by Mr. Holloway, should be excluded then Plaintiffs should similarly be precluded from presenting any testimony, evidence, or argument about what they were doing in the hours before the accident.

The history of the lift kit, including its purchase and delivery to Mr. Holloway is admissible evidence and the Court should not exclude testimony, evidence, or argument at issue in this topic.

10. *Suggestion or argument that Plaintiffs contend all suspension lifts are defective, the entire lift kit industry should be shut down, all cars with suspension lifts should be removed from the road, or any similar suggestion or argument.*

There is no dispute: Rough Country's lift kit is not a unique design. It is essentially the same design offered by other lift kit manufacturers. Plaintiffs do not contend that the actual design of the lift kit was defective. They argue that it is defective because of its height. Multiple other manufacturers sell lift kits of the same or greater height. Plaintiffs' case is necessarily against the lift kit industry, not just Rough Country.

Further, Plaintiffs' motion mislead the Court when they say that this case is only "about *this* Rough Country suspension lift" and "*this* F-250," [Doc. 156, at 15 (italics in original)]. In Plaintiffs' *own words*:

> For decades, Rough Country *and other manufacturers* in the auto industry have known that designing pickup trucks with taller bumpers than passenger cars creates a serious safety risk. Established industry safety research has shown for years that *raising the height of vehicles causes potentially fatal intrusion levels during crashes*.

[Doc. 120-5 (Plaintiffs' Outline of the Case), at 2-3 (italics added).] Plaintiffs want to show that raising the height of any vehicle is dangerous, but this is what the entire lift kit industry sells. Plaintiffs similarly do not argue that their "alternative designs" will apply only to Rough Country's lift kits. Roche's proposed "fix" applies to the entire industry and Plaintiffs' perception that all lift kit manufacturers are unsafe by

not complying with the EVC. Plaintiffs further make this case about all lift kits when they say that Ford does not approve of them or that they violate the EVC.

Plaintiffs request to exclude testimony, evidence, or argument under this topic should be denied.

> 11. *Suggestion or argument that there are millions of vehicles on the road with lift kits or that hundreds of thousands of these lift kits are installed on vehicles every year.*

As discussed above in response to topic no. 7, Rough Country witnesses are entitled to testify about matters within their personal knowledge or about opinions that they have formed based on their experience in the industry. *See* Fed. R. Evid. 701; *Tampa Bay Shipbuilding & Repair Co.* This topic also goes to notice because the jury can draw inferences based on the fact that many vehicles on the road have lift kits or that many lift kits are installed annually, but there is a very limited number of related lawsuits known to Rough Country. Ultimately, the Court can resolve any evidentiary issues relating to this topic at trial when it has a proper record and the actual testifying witnesses before it. Plaintiffs' request as to this topic is premature.

> 12. *Evidence, argument, or suggestion that very few people are killed or seriously injured given the number of lift kits on the road.*

This topic goes directly to Plaintiffs' claim of notice to Rough Country. Just as Plaintiffs argue that *Bacho* and *Mendoza* put Rough Country on notice, the inverse can also be true: that the lack of deaths or serious injury attributable to lift kits placed

Rough Country on notice that its lift kits were not defective or dangerous. The Court should not preemptively preclude Rough Country from presenting testimony, evidence, or argument on this topic.

Testimony, evidence, and argument covered by this topic may also be relevant to Plaintiffs' claim for punitive damages. As discussed elsewhere, Plaintiffs contend that Rough Country acted with "conscious indifference," and matters covered by this topic go to this issue. Again, Rough Country's ability to present testimony, evidence, or argument about the lack of deaths or serious injuries attributable to lift kits arguably shows a lack of conscious indifference because Rough Country is not consciously aware of something for it to be indifferent to.

Further, even if the Court is inclined to limit testimony, evidence, or argument about this topic, it should be limited. Rough Country should not be precluded from presenting testimony, evidence, or argument that few people are killed or seriously injured given the number of its lift kits on the road, as evidenced by the limited number of lawsuits filed against it.

      13.    *Argument or testimony about Rough Country's supposed general character.*

Rough Country does not object to Plaintiffs' request as to this topic, *provided* that it is mutual and Plaintiffs are similarly precluded from raising such argument or

testimony to the jury (*i.e.*, that Plaintiffs are "good people" or other affirmations of Plaintiffs' character).

14.  *Argument or testimony about any alleged prejudice arising from Rough Country's inability to rely on tests or testimony excluded by this Court*

Rough Country does not object to Plaintiffs' request as to this topic, *provided* that it is mutual and Plaintiffs are similarly precluded from raising such argument or testimony to the jury as to their evidentiary matters that are excluded by this Court.

15.  *Argument or testimony about statistics.*

This request lacks sufficient detail, is impermissibly vague, and lacks context. However, as Rough Country understands it, Rough Country does not object to Plaintiffs' request as to this topic, *provided* that it is mutual and Plaintiffs are similarly precluded from raising such argument or testimony to the jury (*i.e.*, that Plaintiffs similarly have not disclosed any "expert to discuss statistics and [they] ha[ve] not disclosed any statistics [they] plan[] to rely upon").

16.  *Argument or testimony that Rough Country counsel represents "employees of Rough Country," "engineers of Rough Country," or that Rough Country employees or engineers have been sued, or that Rough Country or any of its employees have been accused of criminal conduct.*

Rough Country does not object to Plaintiffs' request as to this topic, *provided* that it is mutual and Plaintiffs are similarly precluded from raising such argument or

testimony to the jury (*i.e.*, that Plaintiffs represent the "public" or that anything about Rough Country's actions may relate to criminal conduct).

17. *Effect of verdict on Rough Country's employees and operations.*

Rough Country does not object to Plaintiffs' request as to this topic, *provided* that it is mutual and Plaintiffs are similarly precluded from raising such argument or testimony to the jury (*i.e.*, the effect that a verdict would have on Plaintiffs).

18. *Any reference to Plaintiffs' experts being challenged, excluded, or having their testimony limited in prior unrelated cases.*

Rough Country does not object to Plaintiffs' request as to this topic, *provided* that it is mutual and Plaintiffs are similarly precluded from raising such argument or testimony to the jury (*i.e.*, that Rough Country's experts may have been challenged, excluded, or had their testimony limited in prior unrelated cases).

19. *Any reference to cars driven by the witnesses.*

Plaintiffs contend that whether a witness – and especially a Rough Country witness – drives a lifted truck lacks any probative value. They are wrong, especially in light of Plaintiffs' claim for punitive damages. (Tellingly, when Plaintiffs summarize their claims in support of this topic, they pointedly fail to include their claim for punitive damages.)

In order to be awarded punitive damages, Plaintiffs must convince the jury by clear and convincing evidence that Rough Country "actions showed willful

misconduct, malice, fraud wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." O.C.G.A. § 51-12-5.1; *see also* Doc. 109 (Order on Rough Country's Motion for Summary Judgment), at 16. And, as the Court previously noted, "[a] jury may award punitive damages where the clear and convincing evidence *only creates an inference* of the defendant's conscious indifference," [Doc. 109, at 17 (italics added)]. Thus, because only an "inference" is required, evidence need not address something directly. For example, Plaintiffs will not ask Rough Country's witnesses straight up whether they had a "conscious indifference" in connection with Rough Country's lift kit. Rather, it is the circumstantial evidence – such as whether they "own[] or drive a vehicle like the subject vehicle or bought a vehicle like the subject vehicle for their children," (Doc. 156, at 23) – that shows Rough Country did not act with "conscious indifference." Such evidence is necessary and appropriate for Rough Country to fully and fairly defend itself against Plaintiffs' claims, and especially their punitive damages claim.

*[Signature Page Follows.]*

This 17th day of March, 2025.

WEINBERG, WHEELER, HUDGINS, GUNN & DIAL, LLC

/s/ Aaron Chausmer

3344 Peachtree Road, N.E.
Suite 2400
Atlanta, GA 30326
Phone: 404-876-2700
Fax:   404-875-9433
rhill@wwhgd.com
achausmer@wwhgd.com

Richard H. Hill, II
Georgia Bar No. 354425
Aaron B. Chausmer
Georgia Bar No. 119998
*Attorneys for Defendant Rough Country, LLC*

**RULE 7.1D CERTIFICATE OF TYPE, FORMAT AND FONT SIZE**

Pursuant to Local Rule 7.1D of the United States District Court of the Northern District of Georgia, the undersigned certifies that the foregoing submission to the Court complies with Local Rule 5.1 in that it was computer-processed, double-spaced between lines, and used Times New Roman font of 14 point size.

This 17th day of March, 2025.

/s/ Aaron Chausmer
Aaron B. Chausmer
Georgia Bar No. 119998

## **CERTIFICATE OF SERVICE**

This is to certify that I have electronically served the foregoing filing with the

Clerk of Court via CM/ECF, which will send a copy to the following attorneys of

record:

Tedra L. Cannella
Robert H. Snyder, Jr.
Devin Mashman
CANNELLA SNYDER LLC
315 W Ponce de Leon Ave
Suite 885
Decatur, GA 30030

### *ATTORNEYS FOR PLAINTIFFS*

This 17th day of March, 2025.

*/s/ Aaron Chausmer*
Aaron B. Chausmer
Georgia Bar No. 119998