UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

Santana Bryson and Joshua Bryson,    *
as Administrators of the             *
Estate of C.Z.B., and as surviving   *
parents of C.Z.B., a deceased minor, *
                                     *    Civil Action File
        Plaintiffs,                  *
                                     *    No. 2:22-cv-17-RWS
v.                                   *
                                     *
Rough Country, LLC                   *
                                     *
        Defendant.                   *

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT
ROUGH COUNTRY'S MOTION IN LIMINE REGARDING
_BACHO, MENDOZA_, AND ANY OTHER LAWSUITS**

Rough Country—through testimony of a designated 30(b)(6)

representative—has admitted that it reviewed and evaluated _Bacho_ and _Mendoza_ to

decide if its suspension lifts caused injury.  That admission makes this case

different than most any other products case where other similar instance ("OSI")

evidence is at issue.  If **Defendant** considered _Bacho_ and _Mendoza_ to decide the

reasonableness of its design, then **the jury** must be able to as well.

Rough Country has no internal safety analysis.  It did not do any tests—

crash testing or otherwise—to assess whether the lifts would be safe in crashes.[1]  It

---

[1] Doc. 138-1, 2023-10-12, Report of Christopher Roche at 24; Doc. 97, RC

did not even do the bare minimum, i.e., it did not conduct a written "design failure effects mode analysis" ("DFMEA") to understand the risks of its products.[2] Instead, it testified that it relied on consumer complaints in the form of warranty claims **or lawsuits** to know if its suspension lifts were dangerous.

Also unlike the typical product liability lawsuit, Defendant—not just Plaintiffs—says that the prior lawsuits gave it notice of a potential defect. Rough Country testified it has been sued twice for what it calls "height or override" allegations.[3] In addition to Rough Country's admissions that *Bacho* and *Mendoza* constituted notice of potential "height or override" dangers, the *Bacho* and *Mendoza* collisions also meet the legal criteria for admission as OSIs. The *Bacho* and *Mendoza* incidents both involve five touchstones of similarity. Both wrecks involved: (a) Rough Country suspension lifts; (b) installed on pickup trucks; (c) allegations that the lifts caused override of crash protections; (d) head injuries to the occupant near the intrusion due to the suspension lift; and (e) Rough Country knew about them. Georgia law makes these incidents admissible for notice of the defect at issue, the magnitude of the dangerousness of Rough Country's lifts, its ability to correct this known defect, its ability to warn of the danger, and the cause

---

30(b)(6) Dep. at 15:15-17:15 ("We have not personally conducted any testing. That is accurate.").

[2] *See* Doc. 138-1, Roche Rep. at 24.

[3] *See* Doc. 97, RC 30(b)(6) Dep., at 50:22-51:10.

of C.Z.B.'s death.  In addition, prior lawsuits may also serve to impeach Rough

Country witnesses, depending on the testimony in the case.

Plaintiffs' claim for negligent design requires the jury to decide if Rough

Country acted reasonably.  Plaintiffs will present evidence that Rough Country did

no testing and no DFMEA to know whether its product was defective.  They will

also present testimony from Rough Country in which RC admits it relied upon

*Bacho* and *Mendoza* to determine its suspension lifts were not dangerous.  They

will present evidence that, in fact, *Bacho* and *Mendoza* proved the opposite: that

the design was dangerous and Rough Country should have done testing and

investigation into the problem and ways to fix it.  Prior lawsuits related to "height

or override" make it clear that Rough Country's failure to conduct testing or a

DFMEA was unreasonable.  *Bacho* and *Mendoza* are highly relevant to the factors

that Georgia law requires the jury to consider.

## LEGAL STANDARD

The Court should only grant a motion in limine and exclude evidence if the

evidence is clearly inadmissible for any purpose.  *Wilson v. Pepsi Bottling Grp.,*

*Inc.*, 609 F. Supp. 2d 1350, 1359 (N.D. Ga. 2009).  Rough Country bears the

burden of proving that the evidence or argument it asks be excluded is

inadmissible.  *Id.*; *see also Conklin v. R T Eng'g Corp.*, No. 3:17-cv-415, 2018 WL

7291430, at *1 (M.D. Fla. Nov. 16, 2018) ("M[ILs] should be limited to specific

pieces of evidence and not serve as reinforcement regarding the various rules

governing trial . . . .").  Because there are many ways prior lawsuits could be

admissible at trial it is not proper to grant a motion and limine before trial begins.

## ARGUMENT AND CITATION TO AUTHORITY

*Bacho* and *Mendoza* are relevant in this case (1) because Rough Country

made them so when it admitted it relied on its review of those cases to conclude its

product was not defective; and (2) they are sufficiently similar to put Rough

Country on notice that vehicle "height and override" can cause injury.

**1.    Plaintiffs should be permitted to introduce evidence of *Bacho* and *Mendoza* because they are relevant to Rough Country's design decisions and reasonableness.**

The jury in this case will be charged that "the manufacturer has a duty to

exercise reasonable care in choosing the design for a product."[4]  It "must decide

whether the manufacturer acted reasonably in choosing a particular product design

by considering ***all*** relevant evidence."[5]  In this case, the Defendant testified that

*Bacho* and *Mendoza* **were relevant** to its decision.  Rough Country admitted it

*used those specific lawsuits* to make decisions about its products.  Plaintiffs are

entitled to put that evidence in front of a jury so that the jury can decide whether

Rough Country's conduct was reasonable.

---

[4] Ga. Pattern Civil Jury Instructions, 62.640 Strict Liability.
[5] Ga. Pattern Civil Jury Instructions, 62.650 Strict Liability; Design Defect; Risk-Utility Test and Factors.

Rough Country testified that its review of *Bacho* and *Mendoza* (plus reading one NHTSA article) is the sum total of Rough Country's efforts to determine whether suspension lifts cause injury or death as the result of override in collisions. When Rough Country was asked what it had done to determine whether its lift kits would increase the chances of injury or death, it testified that it "reviewed data from the *Bacho* case," including the expert report in that case, to determine it didn't "have any evidence that the inherent nature of our kits cause any issue."[6] Paul Lewis, Plaintiffs' expert in this case, wrote the biomechanic expert report in the *Bacho* case—the same one that Rough Country reviewed when it concluded its lift kits are not dangerous. Rough Country admitted that it reviewed the *Mendoza* evidence, too, and Mr. Lewis also generated an expert report in the *Mendoza* case, in addition to discussing the *Mendoza* case in his report in *Bacho*.[7]

Rough Country testified further that it considered *Bacho* and *Mendoza* when it decided its products did not cause injury in real world crashes. It specified these cases were "complaints or notifications" "related to height or override:"

> Q: Correct me if I'm wrong, but I thought earlier today you testified that Rough Country considers the fact that its customers have not complained about injuries being caused by lifts; is that correct?
>
> [objection]
>
> A: I'm stating that -- yes, customer complaints, you know, either

---

[6] *See* Doc. 97, 30(b)(6) Dep. 9:17-25, 11:14-12:13.
[7] *Id*. at 40:10-15 (*Mendoza* was referenced in the *Bacho* case).

> general complaints or via any lawsuits similar to Bacho and Mendoza, we've had no -- other than Bacho and Mendoza in the 30-year history of this company, I'm unaware of any, you know, height or override complaints or notifications.[8]

*Bacho* and *Mendoza* not only gave Rough Country notice of the exact defect that caused C.Z.B.'s death, Rough Country testified that its review of that "consumer feedback" was its only method of evaluating the safety of its products.[9]  It reviewed the lawsuit evidence and concluded there were no "incidents where the – where our kit is clearly defined as being an inherent negative factor in any type of incident."[10]

Rough Country also contends that its only duty to investigate the dangerousness of its product arises when it receives the kinds of "notifications" that the *Bacho* and *Mendoza* cases provided.[11]  It considered the allegations and evidence in *Mendoza* and "based on the -- kind of the conclusion of the evidence in that case, I don't think there was any evidence that warranted any redirection of the design of our product."[12]

These cases are highly relevant and probative.  Where a manufacturer uses prior lawsuits as the only way to evaluate safety, excluding them would be akin to

---

[8] *See* Doc. 97, RC 30(b)(6) Dep., at 50:22-51:10.
[9] *Id.* at 9:17-12:9.
[10] *Id.* at 10:16-11:3.
[11] *Id.* at 42:23-43:5
[12] *Id.* at 43:7-17.

excluding the manufacturer's crash testing or DFMEA (had Rough Country actually done any such testing or analysis).

Rough Country complains that it will be unfairly prejudiced if *Bacho* and *Mendoza* come into evidence. While Rough Country may be prejudiced, that prejudice will not be *unfair*—if Rough Country can consider this evidence to decide safety, then how could it be unfair to allow the jury to consider the same thing? How could the jury decide the ultimate issue—i.e., whether Rough Country acted reasonably—when it does not have all the information Rough Country relied upon?

Allowing the jury to consider the evidence that the Defendant itself used to evaluate its product's risk and utility does not prejudice Rough Country simply because it is bad for its case. *United States v. Jones*, No. 1:05-CR-617-WSD, 2007 WL 2301420, at *18 (N.D. Ga. July 18, 2007) ("'[e]vidence that is highly probative invariably will be prejudicial to the defense,' and legitimate 'damage to a defendant's case is not a basis for excluding probative evidence'"); *United States v. Terzado-Madruga*, 897 F.2d 1099, 1119 (11th Cir. 1990) ("[s]imply because the evidence is damaging or prejudicial to a defendant's case does not mean, however, that the evidence should be excluded.")

Courts throughout the country have admitted prior lawsuits into evidence because they were relevant to the issues in the case. *See Vision Power, LLC v.*

*Midnight Express Power Boats, Inc.*, No. 18-CV-61700, 2020 WL 770547, at \*1

(S.D. Fla. Feb. 18, 2020) (denying defendant's motion in limine to exclude

evidence of lawsuits against defendant and acknowledging that if "defendant opens

the door—that is, raises the defense that no other customers have experienced

issues with their center consoles—then Plaintiff may respond with evidence of

other lawsuits against Defendant"); *see also In re Tylenol (Acetaminophen) Mktg.*,

Sales Pracs. & Prods. Liab. Litig., 181 F. Supp. 3d 278, 300 (E.D. Pa. 2016)

(acknowledging that "evidence of past lawsuits may be probative of

notice/knowledge of a possible defect and/or of the motive of the defendants").

Further, Rough Country's halfhearted hearsay objection makes no sense.

Mr. Lewis personally investigated both *Bacho* and *Mendoza*, so certainly he can

testify about his own investigation.  *Bacho* and *Mendoza* can also be introduced for

many other reasons outside of the truth of the matter asserted.  *See e.g., Brogdon v.*

*Ford Motor Co*., No. 4:23-CV-88 (CDL), 2025 WL 283209, at \*2 (M.D. Ga. Jan.

23, 2025) ("Ford also argues that the OSI evidence should be excluded as

inadmissible hearsay. It is the Court's understanding that Plaintiffs intend to

introduce the OSI evidence to show notice of the defect, among other things, and

not for the truth of the matter asserted. If the OSI is introduced for that purpose,

then it is not hearsay"); *see also Pease v. Lycoming Engines*, No. 4:10-CV-00843,

2012 WL 162551, at \*5 (M.D. Pa. Jan. 19, 2012) ("It is well-established that

evidence of other accidents may be offered for the non-hearsay purpose of proving that a manufacturer had notice of the defective condition of its product"). Because *Bacho* and *Mendoza* can be admitted for non-hearsay purposes, and are clearly relevant in this matter, it is proper to admit them.

Rough Country relies heavily on *Smith v. E-backgroundchecks.com, Inc.*[13] But that unpublished case alleges violations of the Fair Credit Reporting Act—it contains no product liability allegations at all.[14] Unsurprisingly, there is no OSI analysis in the opinion Rough Country cites because the OSI rule *applies to product liability cases*. The fact that Rough Country had to rely on a Fair Credit Reporting Act case to try to eke out an argument against admission of the OSIs is proof itself that the caselaw is in Plaintiffs' favor.

2.    **Plaintiffs have established that *Bacho* and *Mendoza* meet the touchstones of similarity, and those cases are therefore admissible as "OSIs."**

The unrebutted opinion of Plaintiffs' expert is that *Bacho* and *Mendoza*, "are similar cases," because "[e]ach striking vehicle was equipped with a Rough Country lift-kit," and the "lift-kits elevated the striking vehicles such that when they impacted the struck vehicle, due to the elevation and resultant size

---

[13] No. 1:13-CV-02658-RGV, 2015 WL 11233453, at *1 (N.D. Ga. June 4, 2015).
[14] *Id.*

differentiation, the structural intrusion they caused was catastrophic."[15]  The goal

of the substantial similarity requirement is "'to allow the jury to draw a reasonable

inference' regarding the defendant's knowledge or ability to foresee the incident at

issue." *Brogdon*, No. 4:23-CV-88 (CDL), 2025 WL 283209, at *1 (quoting

*Henderson v. Ford Motor Co.*, 72 F.4th 1237, 1243 (11th Cir. 2023)).

The collisions in *Bacho* and *Mendoza* have touchstones that make them

sufficiently "similar" to allow the jury to draw a reasonable inference regarding

Rough Country's knowledge or ability to foresee what happened in the Bryson

crash.  They all involve: (a) Rough Country suspension lifts; (b) installed on

pickup trucks; (c) allegations that the lifts caused override of crash protections; (d)

head injuries to the occupant near the intrusion due to the suspension lift; and (e)

Rough Country knew about them.

### A. Each crash meets the touchstones of similarity.

#### a.  The collision in *Bacho*.

The striking vehicle in the Bacho's wreck was a pickup truck equipped with

a Rough Country aftermarket 6-inch suspension lift.[16]  "The Bachos allege[d] that

the lift kit 'increases a vehicle's ride-height, causing the vehicle's bumper to

---

[15] *See* Doc. 128-4, Lewis Supplemental Report at 2.  Plaintiffs disclosed this
opinion on March 15, 2024.  Rough Country's rebuttal opinions were due June 17,
2024.  *See* Doc. 76 at 2. However, it never rebutted Mr. Lewis's conclusion.
[16] *Bacho v. Rough Country, LLC*, No. 3:14-CV-40-TCB, 2016 WL 4607880, at *1
(N.D. Ga. Mar. 17, 2016)

override the side impact protection of a target vehicle which causes intrusion into the target vehicle's occupant compartment.'"[17]

The lifted pickup truck struck the Bacho's vehicle, in which 9-year-old A.B. was properly restrained, seated behind the driver.[18]  The impact from the lifted pickup truck was in the area of the injured child and caused significant intrusion in her occupant area.[19]  As in the *Bryson* crash, the pickup had relatively little damage from the collision.[20]

The child died from a fatal brain injury.[21]  Mr. Lewis personally investigated this collision, inspected the vehicle, reviewed the relevant records, and considered the opinions of the other experts.[22]  He concluded A.B.'s "fatal head injuries are proximately related to the altered front height due to the lift kit on the Chevrolet and its aggressive interaction with the upper panel of the Toyota."[23]

---

[17] *Id.*

[18] *See* Doc. 128-4, Lewis Supp. Rep. at 1.

[19] Even Rough Country's expert found that there was 12 inches of inboard intrusion with a width of 96.  Ex. 1, Fenton Rep. (Rough Country's expert) at 10. Rough Country produced its expert report in this case.  *Id.* (containing Rough Country's *Bryson v. RC* Bates stamps).

[20] *See* Ex. 2, Mendoza striking vehicle, (DSC_0582).

[21] Ex. 3, Lewis Bacho Rep. at 3.

[22] *See generally* Ex. 3, Lewis Bacho Rep.

[23] Ex. 3, Lewis Bacho Rep. at 28.

### b. The collision in *Mendoza.*

As in *Bacho* and the present case, the striking vehicle in *Mendoza* was a pickup truck equipped with a Rough Country suspension lift.[24]  In *Mendoza*, the lift was 5 inches.[25]  Desiree Mendoza was a properly restrained passenger[26] who suffered a traumatic injury to her head and brain, including a skull fracture.[27]  The plaintiff alleged that the lift kit resulted in "an unreasonably dangerous bumper height that bypasses most, if not all, safety protections afforded by passenger vehicles in foreseeable accidents."[28]  The lawsuit alleged that the lift caused the bumper to strike Desiree Mendoza's head, causing a skull fracture and brain injury.[29]  Mr. Lewis personally investigated this collision, inspected the vehicle, reviewed the relevant records, and considered the other expert opinions in the case.[30]  He concluded that if the truck had not been lifted, it would have "engaged

---

[24] *See* Ex. 4, Ken Dunn Dep., at 81:17-82:1, *Bacho v. Rough Country*, 3:14-CV-40 (N.D. Ga. 2014).

[25] *Id.*

[26] Ex. 5, Lewis Rep., at 7, *Mendoza v. Heckathorne d/b/a Rough Country* (April 27, 2011).

[27] *Id.* at 5

[28] Ex. 6, Third Am. Compl., at 3, *Mendoza v. Heckathorn, d/b/a/ Rough Country Suspension Sys.*, Case No. 2010-CV-0172-A (197th Jud. Dist., Willacy Co., Tex. 2011).

[29] *See generally* Ex. 6, Third Am. Compl., *Mendoza v. Heckathorn, d/b/a/ Rough Country Suspension Sys.*, Case No. 2010-CV-0172-A (197th Jud. Dist., Willacy Co., Tex. 2011).

[30] *See generally* Ex. 5, Lewis Rep., *Mendoza v. Heckathorne d/b/a Rough Country* (April 27, 2011).

the appropriate structures of the [struck vehicle] that are designed to manage crash forces and would not have intruded/invaded into the [struck vehicle's] survival space."[31] Ms. Mendoza therefore would not have gotten her catastrophic brain injury.[32]

### c. The Bryson collision.

The Court knows the facts of this case well. The striking vehicle in the Bryson's collision was another pickup truck equipped with a Rough Country suspension lift. Rough Country marketed the lift as a 4-inch lift, but it effectively raised the F-250 5-6 inches.[33] Plaintiffs allege that the suspension lift caused the F-250 to override the crash protections of the Bryson's Ford Escape and allowed excessive intrusion into the Bryson's vehicle. That intrusion, which started at the rear of the Escape but reached the second row where C.Z.B was seated. As a result of the intrusion, he received a skull fracture and atlanto-occipital dislocation, which caused his death.

### B. The OSIs are admissible.

The substantial similarity requirement does not require identical circumstances, and allows for some play in the joints depending on the scenario presented and the desired use of the evidence." *Brogdon*, 2025 WL 283209, at *1

---

[31] *Id.* at 13.

[32] *Id.*

[33] *See* Doc. 103-3, 2023-10-12, Report of Bryant Buchner at 10.

(quoting *Henderson v. Ford Motor Co.*, 72 F.4th 1237, 1243 (11th Cir. 2023)). The fundamental question is whether the prior incident is "similar enough to the present incident to allow the jury to draw a reasonable inference regarding the defendant's knowledge or ability to foresee the incident at issue." *Id.*

Rough Country has been previously sued twice for the exact same defect at issue in this case.[34]  In *Mendoza*, a Rough Country lift kit caused a pickup truck to pass over a vehicle's bumper and contact the driver's head, leaving her with permanent brain damage.[35]  *See* Doc. 103-8, *Mendoza* Compl.  In *Bacho*, a Rough Country lift kit caused a pickup truck to bypass a minivan's crash protection features and intrude into the back seat, causing the death of a nine-year-old child.[36] Here, Rough Country's lift kit caused the F-250 to bypass the Bryson family's Escape's crash protection features, intrude into the second row, and shove C.Z.B.'s head into the structures of the driver's seat, causing his death.[37]  In each case, the lifted pickup truck shows very little damage, the struck vehicle shows catastrophic damage that overrides the crash protections, and the occupant compartment is severely compromised.[38]

---

[34] *See* Doc. 103-7, *Bacho v. Rough Country* Compl.; Doc. 103-8, *Mendoza v. Heckenthorn Products* Compl.; Doc. 128-4, Lewis Supp. Rep.
[35] *See* Doc. 103-8, *Mendoza* Compl.
[36] Doc. 103-7, *Bacho* Compl.
[37] *See* Doc. 103-3, Buchner Report; Doc. 103-4, Lewis Dep. at 117:11-18.
[38] *See* Appendix A for a photo comparison.

Of course there are differences among the three collisions—there always are differences between an OSI and the subject crash, because every crash is different. What matters is that they are the same in ways that matter: they involve the same defect, with similar injuries, and they put the defendant on notice of a potential danger. *Brogdon*, 2025 WL 283209, at *1; *Skil Corp. v. Lugsdin*, 168 Ga. App. 754, 755, 309 S.E.2d 921, 923 (1983).

In *Crawford v. ITW Food Equip. Grp., LLC*, the defendant argued that prior incidents were not substantially similar because they did not fit the exact facts of plaintiff's injury.[39] While acknowledging that those incidents were different from the plaintiff's, the Eleventh Circuit held the "reports were substantially similar in the manner most relevant in this case—i.e., the serious danger that exists, and the foreseeable serious injury… that occurs when inevitable human error combines" with the defect at issue. *Id.* at 1351. *Bacho* and *Mendoza* both illustrate the danger presented by Rough Country's lift kit and the foreseeable injuries it can cause during a rear-end collision.

Further, "the mere fact that certain factors relating to each incident are inconsistent with a plaintiff's accident, alone, does not automatically render the past incident(s) inadmissible." *Jarvis v. Carnival Corp.*, No. 16-CV-23727, 2017 WL 6989149, at *3 (S.D. Fla. Aug. 24, 2017), report and recommendation

---

[39] 977 F.3d 1331, 1350 (11th Cir. 2020).

adopted, No. 16-23727-CIV, 2017 WL 6989081 (S.D. Fla. Aug. 31, 2017).  In

*Jarvis,* the defendant sought to exclude any incidents where the person slipped on a

different substance than what plaintiff slipped on.  *Id.*  The court rejected this

approach and allowed evidence of prior incidents regardless of the alleged

conditions that led to the person slipping and falling. *Id.; see also Walsh v.

Carnival Corp.*, No. 20-CV-21454-UU, 2021 WL 2195528, at *6 (S.D. Fla. Apr. 1,

2021) (denying defendant's motion to preclude evidence of prior incidents despite

defendant arguing that the prior incidents had different factual circumstances from

plaintiff's complaint).  "To the extent the particular circumstances of each incident

vary, that is an issue of weight that will be evaluated by the finder of fact at trial."

*Id.*

As Mr. Lewis explained, "in all three of these cases had the striking vehicles

not been equipped with a Rough Country lift kit, the intrusion would have been

significantly lessened, the safety features of the struck vehicles would have been

allowed to function as designed, and these occupants would not have received fatal

or permanently debilitating injuries."[40] Rough Country's complaint about the

differences among the OSIs is a subject for cross-examination, not grounds for

exclusion.

---

[40] *See* Doc. 128-4, Lewis Supplemental Report.

Rough Country's complaint that the incidents are too remote in time also fails. The Northern District of Georgia has previously admitted similar incidents that were ten years older than the date of injury. *See Reid v. BMW of N. Am.*, 464 F. Supp. 2d 1267, 1272 (N.D. Ga. 2006). The Bryson's collision was March 15, 2020. The *Mendoza* case was not submitted for dismissal until 2011.[41] It was also an issue in the *Bacho* case, which was in suit until 2017.[42] Rough Country testified it considered the *Mendoza* case and during the time it was litigating the *Bacho* case.[43] And most importantly, Rough Country is *still relying* on those cases as its only evidence that its suspension lifts are not dangerous.

**3.      Prior lawsuits may be admissible for impeachment.**

A blanket prohibition against the introduction of prior crashes or lawsuits is improper, because they may be admissible for impeachment evidence, depending on the testimony of Rough Country's witnesses. *In re Tylenol*, 181 F. Supp. 3d at 300 ("information related to past lawsuits also may be relevant for impeachment purposes"); *Barbee v. Se. Pa. Transp. Auth.*, 323 F. App'x 159, 162 (3d Cir. 2009) (affirming admission of "24 prior civil suits for impeachment purposes").

---

[41] Ex. 7, Mendoza Proposed Order of Dismissal at 2.

[42] *See* Stipulation of Dismissal, Doc. 139, *Bacho v. Rough Country*, 3:14-cv-40 (N.D. Ga., May 16, 2017).

[43] Doc. 97, RC 30(b)(6) Dep., at 40:10-15.

Rough Country has made statements in the prior cases that may be used for impeachment. There is no way for Plaintiffs or the Court to know what Rough Country's testimony will be, and so any ruling prohibiting this evidence would be premature. Plaintiffs ask the Court to defer ruling on the admissibility of any other incidents unless or until that issue is ripe and the Court has the benefit of context to make that ruling.

## 4. Plaintiffs will not reference the fact that Rough Country settled other lawsuits.

Rough Country seeks to preclude Plaintiffs from discussing or introducing evidence that it settled the prior litigations. Plaintiffs agree that generally evidence of prior settlements is inadmissible and agree not to proactively introduce evidence of Rough Country's settlements. However, if Rough Country opens the door to this evidence in some way, then Plaintiffs should be able to respond as the situation warrants.

## CONCLUSION

The jury should be able to consider the same information Rough Country itself considered when deciding if the danger of the lift outweighed its utility. Because Rough Country has admitted that *Bacho* and *Mendoza* were the basis for its decision that its suspension lifts were safe, and because the collisions at issue are substantially similar, the prior lawsuits and collisions can properly be admitted

into evidence.  For each of these reasons, this evidence must be presented to a jury and Rough Country's Motion is properly denied.

Respectfully submitted this 17th day of March, 2025

CANNELLA SNYDER LLC

*/s/ Tedra L. Cannella*

TEDRA L. CANNELLA
  Georgia Bar No. 881085
  tedra@cannellasnyder.com
ROBERT H. SNYDER, JR.
  Georgia Bar No. 404522
  rob@cannellasnyder.com
DEVIN L. MASHMAN
  Georgia Bar No. 257588
  devin@cannellasnyder.com

315 W. Ponce de Leon Ave.
Suite 885
Decatur, GA 30030
(404) 800-4828
(404) 393-0365 (fax)
***Attorneys for Plaintiffs***

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rules 5.1(B) and 7.1(D), I hereby certify that the

foregoing filing complies with the applicable font and size requirements and is

formatted in 14-point Times New Roman font.

CANNELLA SNYDER LLC

*/s/ Tedra L. Cannella*

TEDRA L. CANNELLA
  Georgia Bar No. 881085
  tedra@cannellasnyder.com
ROBERT H. SNYDER, JR.
  Georgia Bar No. 404522
  rob@cannellasnyder.com
DEVIN L. MASHMAN
  Georgia Bar No. 257588
  devin@cannellasnyder.com

315 W. Ponce de Leon Ave.
Suite 885
Decatur, GA 30030
(404) 800-4828
(404) 393-0365 (fax)

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was electronically filed with the Clerk of Court via CM/ECF, which will automatically serve the following attorneys of record:

Richard H. Hill
Claire C. Murray
Lindsay G. Ferguson
Aaron B. Chausmer
3344 Peachtree Road, N.E.
Suite 2400
Atlanta, GA 30326
rhill@wwhgd.com
cmurray@wwhgd.com
lferguson@wwhgd.com
achausmer@wwhgd.com

This 17th day of March, 2025.

CANNELLA SNYDER LLC

*/s/ Tedra L. Cannella*
Tedra L. Cannella
Georgia Bar No. 881085
*Attorney for Plaintiffs*