# EXHIBIT 4

|  | Page 1 |
|---|---|
| 1 | IN THE UNITED STATES DISTRICT COURT FOR |
| 2 | THE NORTHERN DISTRICT OF GEORGIA |
| 3 | NEWNAN DIVISION |
| 4 |  |
| 5 | CIVIL ACTION NUMBER |
| 6 | 3:14-cv-40-TCB |
| 7 |  |
| 8 | NATALIE BACHO and STEPHEN BACHO, as |
| 9 | surviving Parents of A.B., a deceased minor, |
| 10 |    Plaintiff(s), |
| 11 | vs. |
| 12 | ROUGH COUNTRY, LLC, et al., |
| 13 |    Defendant(s). |
| 14 |  |
| 15 |  |
| 16 | VIDEO DEPOSITION TESTIMONY OF: |
| 17 | KEN DUNN |
| 18 |  |
| 19 | August 4, 2014 |
| 20 | 9:55 a.m. |
| 21 |  |
| 22 |  |
| 23 |  |
| 24 | COURT REPORTER: |
| 25 | DAVID L. MILLER, CCR, RMR |

|  | Page 3 |
|---|---|
| 1 | I N D E X |
| 2 | EXAMINATION BY:                        PAGE NO. |
| 3 | Mr. Willingham                              8 |
| 4 | Certificate                               283 |
| 5 | Deponent's Certificate                    286 |
| 6 |  |
| 7 |  |
| 8 | INDEX OF EXHIBITS |
| 9 | EXHIBITS                              PAGE NO. |
| 10 | PLAINTIFF'S 1    Judge's instructions    9 |
| 11 | PLAINTIFF'S 2    RC filing information  12 |
| 12 | PLAINTIFF'S 3    Mendoza complaint      82 |
| 13 | PLAINTIFF'S 4    Photographs            85 |
| 14 | PLAINTIFF'S 5    Mendoza settlement    109 |
| 15 | PLAINTIFF'S 6    Code of Ethics        115 |
| 16 | PLAINTIFF'S 7    Deposition notice     132 |
| 17 | PLAINTIFF'S 8    Southside Liners order 137 |
| 18 | PLAINTIFF'S 9    Taylor Long invoice   137 |
| 19 | PLAINTIFF'S 10   RC web page           146 |
| 20 | PLAINTIFF'S 11   RC suspension kit     150 |
| 21 | PLAINTIFF'S 12   Warning to Driver     154 |
| 22 | PLAINTIFF'S 13   AAMVA Study           156 |
| 23 | PLAINTIFF'S 14   GM placard            166 |
| 24 | PLAINTIFF'S 15   Zurich Loss Prevention 188 |
| 25 | PLAINTIFF'S 16   F-150 Owner's manual  195 |

|  | Page 2 |
|---|---|
| 1 | S T I P U L A T I O N |
| 2 | IT IS STIPULATED AND AGREED by and |
| 3 | between the parties throught their respective |
| 4 | counsel that the deposition of KEN DUNN, may be |
| 5 | taken before David L. Miller, Registered Merit |
| 6 | Reporter and Notary Pulbic, State at Large, at |
| 7 | The Westin Memphis Beale Street, Memphis, |
| 8 | Tennessee, on August 4, 2014, commencing at |
| 9 | approximately 9:55 a.m. |
| 10 | IT IS FURTHER STIPULATED AND AGREED |
| 11 | that the signature to and the reading of the |
| 12 | deposition by the witness is NOT waived, the |
| 13 | deposition to have the same force and effect as |
| 14 | if full compliance had been had with all laws |
| 15 | and rules of Court relating to the taking of |
| 16 | depositions. |
| 17 | IT IS FURTHER STIPULATED AND AGREED |
| 18 | that it shall not be necessary for any |
| 19 | objections to be made by counsel to any |
| 20 | questions, except as to form or leading |
| 21 | questions, and that counsel for the parties may |
| 22 | make objections and assign grounds at the time |
| 23 | of trial or at the time said deposition is |
| 24 | offered in evidence, or prior thereto. |
| 25 |  |

|  | Page 4 |
|---|---|
| 1 | INDEX OF EXHIBITS |
| 2 | EXHIBITS                              PAGE NO. |
| 3 | PLAINTIFF'S 17   Photograph            224 |
| 4 | PLAINTIFF'S 18   Photograph            221 |
| 5 | PLAINTIFF'S 19   Photograph            222 |
| 6 | PLAINTIFF'S 20   Photograph            223 |
| 7 | PLAINTIFF'S 21   Photograph            225 |
| 8 | PLAINTIFF'S 22   Photograph            226 |
| 9 | PLAINTIFF'S 23   Stax survey           235 |

Ken Dunn                                                                                8/4/2014

Page 81

1  manufactured the lift kit that was at issue in
2  the Gomez case, or is that something that is
3  unknown?
4     A.   We don't manufacture, but we cause
5  the manufacture.  But to answer your question, I
6  don't believe anything has been determined.
7     Q.   Do you know what the allegation is
8  by the Gomez family in that case?
9     A.   To be honest, I'm not familiar
10 with the details in terms of what the allegation
11 is.  The focus has been on if there was a
12 product on the truck that was involved, and how
13 it was modified; and then whose product was on
14 it.  I don't think we have ever got past that.
15    Q.   You got past that in the Mendoza
16 cash, correct?
17         You don't dispute that that was a
18 Heckethorn product that was involved in the
19 Mendoza case, correct?
20    A.   Yeah.  That was a Rough Country
21 suspension system.
22    Q.   It was a five-inch suspension
23 system on a Dodge pickup truck; does that meet
24 with your recollection?
25    A.   A three-quarter ton Dodge pickup

Page 82

1  truck, yes.
2     Q.   Do you recall what the allegation
3  that was made by the Mendoza family in that case
4  was?
5     A.   The exact allegation I -- no.
6     Q.   Let me show you what I have marked
7  as Plaintiff's Exhibit Number 3.
8          (WHEREUPON, a document was marked
9  as Plaintiff's Exhibit 3 and is attached to the
10 original transcript.)
11         MR. BEANS:  Aren't we four?  Three
12 was the Secretary of State of Tennessee.
13         MR. WILLINGHAM:  That was 2, I
14 thought.
15         MR. BEANS:  Okay.  My mistake.
16 Sorry.
17         MR. WILLINGHAM:  You will find
18 that I will do that not only from time to time,
19 but all the time.  That's why have I Mary Leah
20 helping me.
21    Q.   (BY MR. WILLINGHAM) If you would,
22 please, sir, look at Plaintiff's Exhibit Number
23 3.  Let me ask you, first off, have you seen
24 that document before today?
25    A.   I'm sure I have; but it's been

Page 83

1  obviously, what, four years -- three or four
2  years.
3     Q.   Do you have any recollection of
4  seeing this document before I just handed it to
5  you?
6     A.   Like I said, I'm sure I have.  I
7  mean, I --
8     Q.   If you will look at the second
9  page, under Roman numeral five, Causes of
10 Action, bottom of the page.  Do you see that?
11    A.   Yes.
12    Q.   Could you read that first sentence
13 for me.
14    A.   "The lift kit installed on the
15 subject 2006 Dodge Ram 2500 pickup truck was
16 designed, manufactured, marketed, and sold by
17 the defendant, Heckethorn Products, Inc."
18    Q.   And, again, Heckethorn Products,
19 Inc., is the predecessor of Rough Country, LLC,
20 correct?
21    A.   Correct.
22    Q.   And on the next page, paragraph
23 one, it states that, "The lift kit was
24 defectively designed because, once installed, it
25 results in an unreasonably dangerous bumper

Page 84

1  height on the subject vehicle."
2          Did I read that correctly?
3     A.   That's the allegation; and, yes,
4  you read it correctly.
5     Q.   Number two, that, "The lift kit
6  was defective and unreasonably dangerous
7  because, once installed, it resulted in an
8  unreasonably dangerous bumper height that
9  bypasses most, if not all, of the safety
10 protections afforded by passenger vehicles in
11 foreseeable accidents."
12         Did I read that correct?
13    A.   Again, that was the allegation;
14 and, yes, you read that correctly.
15    Q.   You understood that was the
16 allegation made by the Mendoza family?
17    A.   That was the allegation made by
18 their attorney.  I never actually interacted
19 with the Mendoza family.
20    Q.   You gave a deposition in that
21 case, did you not?
22    A.   Yes, I did.
23    Q.   I will show you that.  Let's mark
24 these.  We will make these, collectively,
25 Plaintiff's Exhibit Number 4.

21 (Pages 81 to 84)

BIRMINGHAM REPORTING SERVICE
(205) 326-4444

RC-BRYSON 000953

Ken Dunn                                                                8/4/2014

Page 281

1   A.   Based on what I understand, I
2   would -- I would say that that is our
3   understanding of the situation.
4       Q.   And Rough Country does not accept
5   any responsibility for Abby's injury and death,
6   correct?
7       A.   We don't, at this point, see
8   anything that would indicate that we were
9   responsible.
10      Q.   Do you in any way -- strike that.
11          I assume that you do not in any
12  way attribute any fault in causing this crash or
13  Abby's injury to her mother, Natalie, or anyone
14  else who was riding in that vehicle, do you?
15      A.   I am not in a position to try to
16  make that determination.  That's not something
17  that I -- I don't have comfort trying to make
18  any determination like that.
19      Q.   All right.  You don't have some
20  reason to believe, do you, that Natalie Bacho
21  was somehow responsible for causing this crash,
22  do you?
23      A.   I have no idea.
24      Q.   Okay.  How many lift kits --
25  six-inch lift kits does Rough Country sell every

Page 282

1   year?  Ballpark.
2       A.   I can -- I -- I would hate to
3   guess.  I don't know a number.
4       Q.   Your annual sales, as you told me,
5   should exceed thirty million dollars; is that
6   right?
7       A.   Yes.
8           MR. WILLINGHAM:  Okay.  I would
9   offer Plaintiff's Exhibits 1 through 23.
10          And with that, thank you very
11  much.
12          MR. BEANS:  Thank you.
13          THE WITNESS:  Thank you.
14          VIDEOGRAPHER:  This marks the end
15  of tape number six, and concludes the
16  deposition.  We are off the record at 4:52 PM.
17
18          FURTHER DEPONENT SAITH NOT
19
20
21
22
23
24
25

Page 283

1              C E R T I F I C A T E
2
3   STATE OF ALABAMA)
4   JEFFERSON COUNTY)
5
6       I hereby certify that the above and
7   foregoing deposition was taken down by me in
8   stenotype, and the questions and answers thereto
9   were transcribed by means of computer-aided
10  transcription, and that the foregoing represents
11  a true and correct transcript of the proceedings
12  taken down by me and transcribed by me.
13      I further certify that I am neither of
14  counsel nor of kin to the parties to the action,
15  nor am I in anywise interested in the result of
16  said cause.
17      I further certify that I am duly
18  licensed by the ABCR as a Certified Court
19  Reporter as evidenced by the ACCR number
20  following my name found below.
21
22
23          DAVID L. MILLER, ACCR #347
24  Georgia License #6322-0018-0740-9152
25  My commission expires 2-11-2018

Page 284

1              KEN DUNN
2
3       INSTRUCTIONS TO THE WITNESS
4
5       Please read your deposition over
6   carefully before you sign it.  You should make
7   all your changes on the attached errata sheet.
8       After making any changes which you have
9   noted on the attached errata sheet, sign your
10  name on the Deponent's Certificate and date it.
11  You are signing it subject to the changes you
12  have made on the errata sheet, which will be
13  attached to the deposition.
14      Return the attached errata sheet and
15  Deponent's Certificate to Birmingham Reporting
16  Service, Read & Sign Department, 600 North 20th
17  Street, Birmingham, Alabama 35203.
18      According to the Rules of Civil
19  Procedure, you will have thirty (30) days from
20  the date you receive this deposition in which to
21  read it, sign it, and return the errata sheet
22  and Deponent's Certificate to the above office.
23  If you fail to do so, you automatically waive
24  your right to make any corrections to your
25  deposition.

71 (Pages 281 to 284)

**BIRMINGHAM REPORTING SERVICE**
(205) 326-4444