UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

Santana Bryson and Joshua Bryson,　*
as Administrators of the　　　　　　*
Estate of C.Z.B., and as surviving　*
parents of C.Z.B., a deceased minor,　*
　　　　　　　　　　　　　　　　*　　Civil Action File
　　　　Plaintiffs,　　　　　　　　*
　　　　　　　　　　　　　　　　*　　No. 2:22-cv-17-RWS
v.　　　　　　　　　　　　　　　*
　　　　　　　　　　　　　　　　*
Rough Country, LLC　　　　　　　*
　　　　　　　　　　　　　　　　*
　　　　Defendant.　　　　　　　　*

**PLAINTIFFS' RESPONSE TO DEFENDANT ROUGH COUNTRY'S
MOTION IN LIMINE REGARDING GEORGIA'S OLD O.C.G.A. § 40-8-6**

It is no surprise that Rough Country seeks to exclude evidence or even mention of O.C.G.A. § 40-8-6. This public safety statute, which was in effect when the collision happened, made it illegal to use the subject Rough Country lift on public roads in this State. Evidence that Rough Country knowingly sold suspension lifts that were illegal to use in this State proves the egregiousness of its conduct and supports Plaintiffs' defect allegations. It is, without question, highly relevant and admissible.

Rough Country's arguments for exclusion of any reference to the statute that made its lift kit illegal are contrary to the evidence, the law, and common sense. The version of O.C.G.A. § 40-8-6 in effect when Rough Country sold the defective

lift and when it killed C.Z.B. made it illegal to lift the frame of any passenger motor vehicle more than two inches above factory recommendations.  O.C.G.A. § 40-8-6.  The police cited Hunter Elliott, the driver of the F-250 with the defective Rough Country lift installed, for violating O.C.G.A. § 40-8-6, the State indicted him for violating that statute, and Mr. Elliott pled guilty to the charge.  Despite the fact that law enforcement and the prosecutor decided O.C.G.A. § 40-8-6 applied, Rough Country makes a convoluted statutory interpretation argument that the F-250 was instead governed by O.C.G.A. § 40-8-6.1 because it claims the Ford F-250 is not a passenger vehicle but was instead designed and used primarily for transporting property.  Obviously, the State of Georgia and Mr. Elliott himself disagreed, as does Rough Country's own expert Mr. Grimes, who agreed in his deposition that the primary purpose of the Ford F-250 is "to transport people,"[1] and thus is governed by O.C.G.A. § 40-8-6.

To avoid the obvious conclusion that everyone else has come to, Rough Country lodges a series of unpersuasive and illogical arguments.  It argues that a revised version of O.C.G.A. § 40-8-6 – passed just last year – governed the conduct at issue here.  That argument violates the "timeless and universal" principle that the "legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place."  *Landgraf v. USI Film Products*,

---

[1] *See* Doc. 102-3, 2024-05-09 Dep. of Wesley Grimes at 13:4-17.

511 U.S. 244, 265 (1994) (citation and punctuation omitted).  It also ignores that Mr. Elliott is still in jail for violating the old version of the statute.

Rough Country's final Hail Mary argument is a challenge that O.C.G.A. § 40-8-6 is unconstitutionally vague.  But as explained below, Rough Country complains of vagueness that simply does not exist.  And even if the statute was vague, which it is not, Rough Country lacks standing to challenge it.

The evidence demonstrates that Rough Country sold a lift kit that violated a Georgia public safety statute when used on the roads.  It did so with full knowledge of the dangers of selling such a lift kit and of the Georgia legislatures' intent to keep lifts like the one that killed C.Z.B. off the roads of this State.  Evidence related to O.C.G.A. § 40-8-6 is admissible in this case.

## ARGUMENT

The Court should only exclude evidence if the evidence is clearly inadmissible for any purpose.  *Wilson v. Pepsi Bottling Grp., Inc.*, 609 F. Supp. 2d 1350, 1359 (N.D. Ga. 2009).  Rough Country bears the burden of proving that the evidence or argument it asks be excluded is inadmissible.  *Id.*; *see also Conklin v. R T Eng'g Corp.*, No. 3:17-cv-415, 2018 WL 7291430, at *1 (M.D. Fla. Nov. 16, 2018) ("M[ILs] should be limited to specific pieces of evidence and not serve as reinforcement regarding the various rules governing trial . . .").

"Relevant evidence is admissible unless the Constitution, a federal statute, the Federal Rules of Evidence, or other rules prescribed by the Supreme Court provide otherwise." *U.S. v. Macrina*, 109 F.4th 1341, 1349 (11th Cir. 2024). "The standard for what constitutes relevant evidence is a low one." *United States v. Tinoco*, 304 F.3d 1088, 1120 (11th Cir. 2002).

Excluding probative evidence under Rule 403 is "an extraordinary remedy which should be used sparingly." *Aycock v. R.J. Reynolds Tobacco Co.*, 769 F.3d 1063, 1069 (11th Cir. 2014). In ruling on requests to exclude evidence as unfairly prejudicial, "courts must 'look at the evidence in a light most favorable to admission, maximizing its probative value and minimizing its undue prejudicial impact.'" *Id.* "Relevant evidence is inherently prejudicial; but it is only Unfair prejudice, Substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403." *United States v. McRae*, 593 F.2d 700, 707 (5th Cir.), cert. denied, 444 U.S. 862, (1979).

Allowing the jury to consider the evidence that Rough Country's lifts violated O.C.G.A. § 40-8-6 does not unfairly prejudice Rough Country simply because that evidence is bad for Rough Country. *United States v. Jones*, No. 1:05-CR-617-WSD, 2007 WL 2301420, at *18 (N.D. Ga. July 18, 2007) ("'[e]vidence that is highly probative invariably will be prejudicial to the defense,' and legitimate 'damage to a defendant's case is not a basis for excluding probative evidence'");

*United States v. Terzado-Madruga*, 897 F.2d 1099, 1119 (11th Cir. 1990)

("[s]imply because the evidence is damaging or prejudicial to a defendant's case

does not mean, however, that the evidence should be excluded.").  As argued more

fully below, none of Rough Country's arguments warrant exclusion of references

to O.C.G.A. § 40-8-6.

## I.    The version of O.C.G.A. § 40-8-6 in effect when Rough Country sold the lift and when the collision occurred is the relevant version of the statute.

It is undisputed that the version of O.C.G.A. § 40-8-6 in effect at the time of

the sale of the lift kit on June 21, 2016, and the subject wreck on March 15, 2020

was the previous version of the statute that barred any lifts over two inches on

passenger vehicles, like the Ford F-250.  Rough Country asks the Court to ignore

that evidence and instead conclude that the jury should view Rough Country's

conduct based on a *retroactive* application of the amended O.C.G.A. § 40-8-6.

But, "the retroactive application of statutes has long been disfavored in the law,

even if it is not always forbidden."  *Deal v. Coleman*, 751 S.E.2d 337, 342 (Ga.

2013).  While legislation that involves "mere procedural or evidentiary changes"

might apply retroactively, legislation that "affects substantive rights" applies only

prospectively.  *Enger v. Erwin*, 267 S.E.2d 25 (Ga. 1980).  That is because the

"principle that the legal effect of conduct should ordinarily be assessed under the

law that existed when the conduct took place has timeless and universal appeal."

*Landgraf*, 511 U.S. at 265.

Rough Country's sale of an illegal product must be assessed under the law at the time of the sale, not under a later version that changed the law. The actual risk of prejudice here is to Plaintiffs if the Court bars them from discussing the version of O.C.G.A. § 40-8-6 in effect when Rough Country sold the lift and instead allows the jury to consider Rough Country's conduct under the now amended version of O.C.G.A. § 40-8-6. Rough Country must be judged by the law in effect when it designed and sold the defective lift kit, not by a law that passed mere months ago and years after C.Z.B. was killed by Rough Country.

## II. The two-inch limitation in O.C.G.A. § 40-8-6 applied to Rough Country's lift kit.

To prevent Plaintiffs from discussing Rough Country's decision to sell a product that violated Georgia safety laws, Rough Country argues that its lift kit was not subject to O.C.G.A. § 40-8-6 because the F-250 was not a passenger motor vehicle but was instead a "truck" designed primarily for transporting property and thus subject to O.C.G.A. § 40-8-6.1. This argument fails for several reasons.

First, as noted above, the police and prosecutors who enforce Georgia's criminal statutes concluded that O.C.G.A § 40-8-6 applied to Mr. Elliott's lifted truck. Mr. Elliott was cited by officers on the night of the accident for violations of O.C.G.A. § 40-8-6,  not § 40-8-6.1.[2] The Appalachian Circuit District Attorney's

---

[2] Ex. 1, 2020-03-15 Crash Report (Mr. Elliott cited for violation of O.C.G.A. § 40-8-6).

6

Office indicted and pursued charges against Mr. Elliott under O.C.G.A. § 40-8-6, not § 40-8-6.1, specifically noting Mr. Elliott's operation of a "***2016 Ford Super Duty pickup truck, a private passenger motor vehicle***."[3]  And Mr. Elliott ultimately accepted a plea deal where an additional year was added to his sentence for his violation of O.C.G.A. § 40-8-6.[4]  Mr. Elliott was represented by counsel, who surely would have challenged the application of § 40-8-6 to Mr. Elliott if there was a reasonable basis to do so.  He did not.  So, the State of Georgia through the Appalachian Circuit DA's Office, the law enforcement officers, Mr. Elliott, and Mr. Elliott's criminal defense attorney all agree that § 40-8-6 applied to Mr. Elliott's F-250.  Those facts alone conclusively establish that O.C.G.A. § 40-8-6 applied to Mr. Elliott's lifted F-250.  This issue is settled with respect to the lift involved in this collision.

Second, the language of the statute is clear and evidences that § 40-8-6 applies to the F-250.  In interpreting the language of O.C.G.A. § 40-8-6, the Court must "interpret the statute as a whole, striving to make all its parts harmonize and to give a sensible and intelligent effect to each part … and to avoid constructions that make some language mere surplusage."  *State v. Free At Last Bail Bonds*, 647

---

[3] Ex. 2, Elliott Bill of Indictment at Fannin DA 000541 (indictment for violations of O.C.G.A. § 40-8-6) (emphasis added).

[4] *See* Doc. 120-12, Elliott Plea Agreement at 20-22 (one year of Mr. Elliott's sentence was for his violation of ***O.C.G.A. § 40-8-6, not O.C.G.A. § 40-8-6.1***.)

S.E.2d 402, 405 (Ga. App. 2007) (citations and punctuation omitted). As Rough

Country acknowledges, O.C.G.A. § 40-8-6 applies to any lift kit installed on a

"private passenger motor vehicle." While O.C.G.A. § 40-8-6 does not define

"private passenger motor vehicle," the definitions that apply to every statute in

Title 40 of the Georgia code are in O.C.G.A. § 40-1-1. § 40-1-1(41) defines

"passenger car" as "every motor vehicle, except [a series of inapplicable

exceptions], designed for carrying ten passengers or less and used for the

transportation of persons."

Rough Country first argues the "passenger car" definition does not apply

because O.C.G.A. § 40-8-6 uses the language "passenger motor vehicle." That

argument is ridiculous. A privately owned "passenger car" qualifies as a "private

passenger motor vehicle." Cars are necessarily included in the definition of motor

vehicles because they are a subtype of motor vehicle.[5] Notably, other Georgia

statutes also expressly define motor vehicle to include automobiles (i.e. cars).[6]

---

[5] *See U.S. v. McGlamory*, 441 F.2d 130, 133 (5th Cir. 1971) (motor vehicles "includes an automobile [i.e. car], automobile truck, automobile wagon, motor cycle, or any other self-propelled vehicle designed for running on land but not on rails); *see also Allstate Ins. Co. v. Wood*, No. CV 05-1335-S, 2006 WL 8436592, at *2 (N.D. Ala. June 22, 2006) ("The *American Heritage Dictionary* defines 'motor vehicle' as a 'self-propelled wheeled conveyance, such as a car or truck, that does not run on rails.'") (citation omitted).

[6] O.C.G.A. § 10-1-31(a)(4) ("'Motor vehicle' means any device or vehicle *including automobiles*, motorcycles, motor trucks, trailers, and all other vehicles operated over the public highways and streets of this state and propelled by power other than muscular power…") (emphasis added); O.C.G.A. § 36-92-1(6)( "'Motor

Because passenger car is encompassed under the definition of passenger motor vehicle, if the F-250 fits the definition of passenger car, it also fits the definition of passenger motor vehicle. And the F-250 does fit squarely within the definition of a passenger car, because it is designed to carry fewer than ten passengers, one of its uses is to transport people, and it does not fall under any statutory exception. Thus, the F-250 is subject to the requirements of § 40-8-6.

Rough Country's argument that the Court should instead apply O.C.G.A. § 40-8-6.1 equally fails. As Rough Country noted, § 40-8-6.1 only applies to "trucks." O.C.G.A. § 40-1-1(70) defines a "truck" as "every motor vehicle designed, used, or maintained ***primarily*** for the transportation of property." (emphasis added). Plaintiffs do not dispute that the F-250 could be used to transport property. The statute, however, requires that transportation of property be the ***primary*** reason for its design or use. There is not a shred of record evidence that the F-250 was primarily designed for the transportation of property. No one has even suggested that except for lawyer statements in a brief, and that is not evidence.

---

vehicle' means any *automobile*, bus, motorcycle, truck, trailer, or semitrailer, including its equipment, and any other equipment permanently attached thereto, designed or licensed for use on the public streets, roads, and highways of the state.") (emphasis added).

Rough Country fails to cite any document or any statement from Ford that proves the F-250's primary purpose is to move property, not people.  At most, this argument is merely Rough Country's own speculation about the primary purpose of the F-250, but speculation is not sufficient.

For example, Rough Country argues the F-250 would not have been designed to haul a large amount of weight if its primary purpose wasn't to transport property.  But Rough Country ignores that large SUVs—which Rough County agrees are passenger cars—also come equipped with high towing capacities.[7]  And although the bed of the F-250 can transport property, that is no different than any other passenger vehicle that has a trunk, or any SUV with folding rear seats and large cargo areas, also designed to transport property.  And most glaringly, unlike a tractor-trailer which is indisputably designed and used for the primary purpose of transporting property, the F-250 has a backseat added specifically to transport up to four passengers.

Rough Country's own expert expressly admitted that the primary purpose of an F-250 was to transport people, not property.  Despite Rough Country's attempt to backtrack that admission, his testimony was clear:

---

[7] *See* Fred Meier, *These 10 SUVs Have the Highest Towing Capacity*, Cars.com (Jul. 10, 2024), available at https://www.cars.com/articles/these-10-suvs-have-the-highest-towing-capacity-425666/ (identifying several SUVs with 10,000 pound towing capacities) (last visited Mar. 17, 2025).

```
4     Q.  And you mentioned the phrase "heavy truck."
5         How do you define a heavy truck crash?
6     A.  Well, a crash involving a heavy truck.
7     Q.  What --
8     A.  Like a tractor-trailer, a tractor
9  semitrailer, commercial heavy truck:  A Freightliner,
10 a Peterbilt.
11    Q.  So you're talking about something like an
12 18-wheeler where the primary purpose of it is to
13 transport commercial property --
14    A.  Yes, sir.
15    Q.  -- as opposed to this case, an F-250, the
16 primary purpose is to transport people, right --
17    A.  That's a fair breakdown.  Yes, sir.
```

*See* Doc. 102-3, Grimes Dep. at 13:4-17.

It also cannot be disputed that on the night of the collision, the F-250 in question was not being used to transport property, but to transport its single passenger.  Anecdotally, we also know that this is not uncommon in the state of Georgia.  F-250s and similar trucks are used across the state not to transport property, but to transport people.  In fact, in two recent verdicts, Georgia juries found the Ford F-250 was defective when it rolled over and killed the occupants.[8]

---

[8] *See* Alia Pharr, *Jury Imposes $1.7 Billion Verdict, Largest in State History, Against Ford*, Atlanta Journal-Constitution (Aug. 22, 2022), https://www.ajc.com/news/jury-imposes-17-billion-verdict-largest-in-state-history-against-ford/E3C6WROKCFEOFCECTIO3VY7BDA/ (last visited Mar. 14, 2025) (deceased couple were 74 and 62); Jozsef Papp, *Ford Hit with Record $2.5B Verdict in Georgia Truck Rollover Suit*, Atlanta Journal-Constitution (Feb. 15, 2025), https://www.ajc.com/news/crime/ford-hit-with-record-25b-verdict-in-georgia-truck-rollover-suit/G4U55HMX75G5JOGE5T6DPV27VU/ (last visited Mar. 14, 2025) (deceased couple were 74 and 64).

In both instances, the deceased were an elderly couple using the F-250 as a passenger vehicle.[9]

In short, Rough Country has not established as a matter of law that the Ford F-250 was designed or used primarily to transport property. As a result, its argument that references to O.C.G.A. § 40-8-6 would unfairly prejudice it must be denied.

## III.    Rough Country lacks standing to challenge the constitutionality of O.C.G.A. § 40-8-6.

Rough Country has never been prosecuted under O.C.G.A. § 40-8-6 and, in fact, could not be prosecuted under the statute. O.C.G.A. § 40-8-6 prohibits a person from *"alter[ing]"* a suspension more than two inches or *"operat[ing]"* a vehicle that has been so altered on Georgia's highways, roadways, or streets. Rough Country itself did not alter or operate the subject F-250. Only Rough Country's *customer*, Mr. Elliott, faced prosecution and pled guilty for using Rough Country's illegal lift.[10] Because Rough Country has never been prosecuted under that provision, it has not suffered an "injury in fact" sufficient to confer standing to

---

[9] *Id.*

[10] *See* Doc. 120-12, Elliott Plea Agreement at 20-22 (one year of Mr. Elliott's sentence was for his violation of O.C.G.A. § 40-8-6); Ex. 1, Crash Report (Mr. Elliott was cited for violation of O.C.G.A. § 40-8-6); Ex. 2, Elliott Bill of Indictment at Fannin DA 000541 (State of Georgia Arrest Warrant for violation of O.C.G.A. § 40-8-6).

challenge the statute.  *See Harrell v. The Florida Bar*, 608 F.3d 1241, 1253 (11th Cir. 2010).

Rough Country argues that Plaintiffs' "invocation of the statute against it" is sufficient to establish an injury in fact to confer standing.  That is wrong for two reasons.  First, as explained above, because Rough Country did not alter or operate the subject F-250 the statute cannot be applied to its conduct and result in a criminal charge against Rough Country.  Second, Plaintiffs have not "invoked" O.C.G.A. § 40-8-6 against Rough Country.  This is an enhanced injury products liability case.  Plaintiffs have not asserted a negligence per se claim or argued that Rough Country's conduct somehow violates the statute.  Instead, Plaintiffs have referenced the statute to support their claim that Rough Country's lift kit was defective by showing that Rough Country had notice of the defect and danger of its product because, at the time it sold the lift on the F-250, the lift kit violated the express terms of a Georgia public safety statute.  At no point have Plaintiffs sought to "invoke" O.C.G.A. § 40-8-6 against Rough Country to seek criminal charges.

Parties may only raise constitutional vagueness challenges to statutes that have been applied _to them_.[11]  *See Mann v. State*, 603 S.E.2d 283, 286 (Ga. 2004) (holding defendant did not have standing to challenge a provision in sex offender

---

[11] Although there is a limited exception to this rule for First Amendment cases, that exception does not apply here.

statute as vague because it "was not applied to him"); *State v. Shepherd Const. Co., Inc.*, 281 S.E.2d 151, 155 (Ga. 1981) (defendant lacks standing to challenge the vagueness of a statute applied to someone else except for First Amendment challenges).

In *Bankshot Billiards, Inc. v. City of Ocala*, the Eleventh Circuit explained the standing requirement for constitutional vagueness challenges.  634 F.3d 1340 (11th Cir. 2011).  A court may review "statutes for vagueness concerns only when a litigant alleges a constitutional harm." *Id.* at 1349.  "The harms—or injury, if you like—come in two forms." *Id.*  A litigant has only suffered sufficient "constitutional harm" to provide standing when (1) the litigant "violates the vague law, is indicted, and then moves the trial court to dismiss the indictment [] or reverse a conviction," or (2) "the litigant is chilled from engaging in constitutionally protected activity" such as free speech. *Id.* at 1349-50.  In the second scenario, a business does not have standing merely because it was chilled from engaging in "normal business activity." *Id.*  Applying that framework, the *Bankshot* court held that a pool hall did not have standing to challenge a statute because it was "simply unsure whether it may simultaneously serve alcohol and permit entry to persons under twenty-one." *Id.*

As in *Bankshot*, Rough Country has not suffered an injury that permits it to challenge O.C.G.A. § 40-8-6 as unconstitutional.  Rough Country has not faced

indictment, conviction, fine, or other state action.  Rough Country also has not

been "chilled" from engaging in any constitutionally protected activity—Rough

Country does not even attempt to cite an instance where Georgia's lift kit statute

prevented it from engaging in any conduct.  Instead, it continued selling its illegal

lift kits directly to Georgia customers despite its awareness of Georgia's two-inch

limit.[12]

    Because Rough Country has not suffered an "injury in fact," it lacks

standing to challenge the constitutionality of Georgia's lift kit statute.  The Court

should reject Rough Country's constitutional challenge to O.C.G.A. § 40-8-6.

## IV.   O.C.G.A. § 40-8-6 is not unconstitutionally vague.

    Even if Rough Country could bring a vagueness challenge, it would not

succeed.  Statutes overcome constitutional vagueness challenges when they "give

the person of ordinary intelligence a reasonable opportunity to know what is

prohibited, so that he may act accordingly[.]"  *Leib v. Hillsborough County Pub.*

*Transp. Comm'n*, 558 G.3d 1301, 1310 (11th Cir. 2009) (quoting *Grayned v. City*

*of Rockford*, 408 U.S. 104, 108 (1972)).  O.C.G.A. § 40-8-6 plainly spells out the

conduct it prohibits in clear terms – "[i]t shall be unlawful to alter the suspension

---

[12] According to Rough Country's discovery responses, it sold ▮▮▮ lift kits in
Georgia from 2018-2022 that were designed to raise the suspension of Ford F-250s
by more than two inches.  *See* Doc. 157-1, 2023-02-21 Rough Country's Resp's. to
Plaintiffs' Second Interrogatories Attachment B at 10.

system of any private passenger vehicle which may be operated on any public street or highway more than two inches above or below the factory recommendation for any such vehicle."[13]

Rough Country's vagueness challenge centers on the phrase "factory recommendation." Although the statute does not specifically define the phrase "factory recommendation," the ordinary meaning is more than clear. *See Ruiz v. Wing*, 991 F.3d 1130, 1138 (11th Cir. 2021) (courts interpret undefined terms in statutes according to their ordinary meaning). In fact, "[a] criminal statute is sufficiently definite if its terms furnish a test based on normal criteria which men of common intelligence who come in contact with the statute may use with reasonable safety in determining its command." *Wilson v. State*, 262 S.E.2d 810, 813 (Ga. 1980). "Many statutes will have some inherent vagueness, for in most English words and phrases there lurk uncertainties." *Rose v. Locke*, 423 U.S. 48, 50 (1975) (citation and punctuation omitted). Indeed, "[a]ll the Due Process Clause requires is that the law give sufficient warning that men may conduct themselves so as to avoid that which is forbidden." *Id*.; *Dunn v. State*, 686 S.E.2d 772, 775 (Ga. 2009) ("temporary residence" did not render statute unconstitutionally vague despite being undefined because it "provides fair warning

---

[13] O.C.G.A. § 40-8-6(b) makes it unlawful to "operate" such a vehicle upon any highway, roadway, or street.

to persons of ordinary intelligence as to what is required to comply with the statute."); *Freeman v. State*, 805 S.E.2d 845, 848 (Ga. 2017) ("tumultuous" did not render statute unconstitutionally vague despite being undefined).

The plain definition of both "factory" and "recommendation," make the meaning of "factory recommendation" clear – a suggestion from the place where the product was manufactured.[14] The phrase "factory recommendation" is not unfamiliar for anyone who has purchased a car and received an owners' manual containing the manufacturer's guidance for maintaining and operating the vehicle, i.e. the factory recommendations.[15] Anyone of common intelligence would understand precisely what the statute refers to when using the phrase factory recommendation and could view their own vehicle's owners' manual to determine the factory recommendation for advisable suspension height.

---

[14] *See* Merriam Webster's Online Dictionary, https://www.merriam-webster.com/dictionary/factory (last visited March 13, 2025) (defining "factory" as "a building or set of buildings with facilities for manufacturing"); *see also* Merriam Webster's Online Dictionary, https://www.merriam-webster.com/dictionary/recommend (last visited March 13, 2025) (defining "recommend" as "to suggest (an act or course of action) as advisable").

[15] *See, e.g., Myers v. BMW of N.A., LLC*, No. 16-CV-00412-WHO, 2016 WL 11791913, at *1 (N.D. Cal. Dec. 19, 2016) ("The owners' manual for her car provides instructions for operating the comfort access system…"); *Bezirganyan v. BMW of N.A., LLC*, 562 F. Supp. 3d 633, 639 (C.D. Cal. 2021) (owners' manual indicated both that braking could produce "louder function noises," and that these noises were particularly likely to occur in certain circumstances); *Ramirez v. Michelin N.A., Inc.*, No. SA-07-CA-1032-OG, 2010 WL 11506740, at *2 (W.D. Tex. Feb. 18, 2010) ("Owners' manuals in cars of the type Carmax sold in the 1990s had warnings about using tires in excess of six years old.").

Here, Ford's "factory recommendation" for the F-250's suspension height is unambiguous—the Owner's Manual for the F-250 "strongly ___recommends___ that you do not make modifications such as adding or removing parts (i.e. ___lift kits___ or stabilizer bars) . . . ."[16]  Ford reiterated that factory recommendation against any change to the default suspension height with several warnings, including that aftermarket lift kits (1) increase the chances of vehicle rollovers,[17] (2) adversely affect the performance of Ford's Advance Trac safety system, causing "an increased risk of loss of vehicle control, vehicle rollover, personal injury and death[,]"[18] and (3) result in "wheel shimmy" while driving.[19]

Rough Country's lift kit plainly altered the F-250's suspension by more than two inches above the "factory recommendation."  Rough Country advertised its lift kit as a "4.5 [inch] suspension lift."[20]  Because Ford's factory recommendation prohibits lifting the suspension of its vehicles *at all*, Rough Country's advertised 4.5-inch lift kit (which *actually* lifted the F-250's suspension by 6 inches) clearly raised Mr. Elliott's suspension by more than two inches above any interpretation of Ford's "factory recommendation."  It therefore plainly violated O.C.G.A. § 40-8-6.

---

[16] *See* Doc. 120-12 at 23-27, 2016 Ford Super Duty Owner's Manual Excerpts at 24-27 (emphasis added).

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] *See* Doc. 95-10, Rough Country's Order Confirmation for the subject lift kit.

Because a party "who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others[,]" Rough Country could not raise theoretical challenges to the term "factory recommendation" where its lift kit plainly violated the factory recommendation, even if it had standing to do so. *Holder v. Humanitarian L. Project*, 561 U.S. 1, 18-19 (2010); *see also Harrell*, 608 F.3d at 1254 ("One may not challenge the vagueness of rules as they might hypothetically be applied to others if one's actions fall squarely within the ambit of the prohibitions.").

## V.     Rough Country's remaining Rule 403 arguments do not warrant exclusion of any reference to O.C.G.A. § 40-8-6.

Rough Country makes several additional arguments against admission supposedly under the guise of prejudice and misleading the jury.

First, Rough Country argues that jurors would be left to speculate as to what "factory recommendation" in O.C.G.A. § 40-8-6 is or should be and could be misled. As Plaintiffs explained above, factory recommendation as used in the statute is not vague and has a common-sense definition that jurors will understand. Rough Country does not actually take issue with Plaintiffs' definition of factory recommendation, in fact, it does not even attempt to present a contradictory definition. Instead, Rough Country takes issue with what Ford's factory recommendation is for the F-250. Plaintiffs introduced evidence from Ford's own owner's manual for the F-250 that "strongly recommends that you do not make

modifications such as adding or removing parts (i.e. lift kits or stabilizer bars)

…"[21]  Rough Country contests that is the actual recommendation, but a

disagreement over what the factory recommendation is does not require exclusion

of evidence that Rough Country violated the statute.  What Ford's factory

recommendation was is not a question of law, but a question of fact for the jury to

decide.  Plaintiffs have presented their evidence of the recommendation and Rough

Country may present its own evidence, if it has any, at trial to support its theory of

the recommendation.

While not relevant to whether the statute should be excluded, Plaintiffs feel

it important to correct Rough Country's statements in support of this argument.

First, Plaintiffs agree that there are various trim levels of Ford F-250 trucks that

have different front bumper heights.  However, Rough Country conveniently omits

that Ford manufactures all trim levels of the F-250 to fall within the guidelines of

the Vehicle Compatibility Agreement and the differences in the trim levels are

minor.  Further, the lift kits offered by Ford Performance and referenced in Rough

Country's brief are 2-inch lifts which would have been legal under O.C.G.A. § 40-

8-6.  Regardless, whether Ford or any Ford dealership sold lifts does not change

the language of Ford's owner's manual specifically recommending that customers

---

[21] *See* Doc. 120-12 at 23-27, 2016 Ford Super Duty Owner's Manual Excerpts at
24-27.

not alter the suspension of the F-250 at all. Rough Country hopes that by introducing these arguments, it can suggest that Ford has somehow blessed the installation of suspension lifts. That suggestion is false: Ford specifically advised against altering the F-250's suspension and the lifts Ford designed were only two inches which aligns with the specific goal of keeping the bumper at a level that would be compatible with other cars in crashes.

Plaintiffs' case is centered around the Enhancing Vehicle-to-Vehicle Crash Compatibility Agreement (EVC), a voluntary agreement Ford helped to create and which Ford abided by when it built the F-250 to keep its trucks at a height that would be compatible with other vehicles in crashes. Suggesting without evidence that Ford would bless installation of lifts that would raise a trucks suspension and violate the EVC would be unfairly prejudicial, especially when such a suggestion is not supported by admissible evidence. If Rough Country had evidence that contradicted Plaintiffs' evidence about Ford's factory recommendation against altering the F-250's suspension, presumably it would have produced it by now and it could have used it at trial. But the jury will not be misled by the admission of O.C.G.A. § 40-8-6 because there is no vagueness in what factory recommendation means in the context of the statute.

Second, Rough Country's argument that reference to the statute would be improper because it couldn't have known how its lift kits would be used by its

buyers—here, on a public road—is contrary to the evidence.  Rough Country stipulated that it "agrees that its lifts have to be designed to be safe in crashes because crashes happen."[22]  Throughout this litigation, Rough Country has made clear that its lift kits can be used on public roads, not merely for off-roading.[23] Rough Country's own website provides even more proof that it knew the lift installed on the F-250 would be used on a public road resulting in a violation of Georgia law.  Its webpage linked to a "know your local laws" page that cited O.C.G.A. § 40-8-6 and stated "Georgia has a suspension lift limit of only 2 inches" and that "suspension lift kits might as well be deemed illegal."[24]

Indeed, *ten years ago*, Rough Country told this Court in another case about its illegal lifts that the purpose of O.C.G.A. § 40-8-1, *et seq*. is to avoid "endanger[ing] the driver or other occupant or any person upon the highway."  *See* Rough Country's 5/1/15 Br. Supp. Mot. Summ. J. at 12, *Bacho v. Rough Country*,

---

[22] Doc. 120-7, Plaintiffs' Proposed Facts Stipulated, at ¶¶ 12 & 13.

[23] *See* Doc. 97, 2023-08-04 30(b)(6) Dep. of Rough Country at 10:23-25 ("And with the millions of our product on the road, we've never had any incidents"); 59:21-24 ("we've -- again, your statement as far as for on vehicle – for on road use, you know, our vehicles and our kits, you know would need to comply"); Doc. 103-18, 2023-06-07 Rough Country's Second Supp. Resp. to Plaintiffs' First Interrogatories, ¶ 6 (admitting that it knew its lift kits were used on public roadways), Doc. 156-6, Rough Country 4.5 in Ford Suspension Lift Kit (15-16 F-250 4WD), (under features, explaining that it includes shock absorbers which "offer the best in balanced performance for on and off-road use").

[24] https://www.roughcountry.com/state-lift-laws (last visited Mar. 14, 2025), linking to https://www.liftlaws.com/georgia_lift_laws.htm (last visited Mar. 14, 2025).

3:14-cv-00040, Doc. 71-1.  That means Rough Country knew before it sold the lift that killed C.Z.B. that O.C.G.A § 40-8-6 was in place to protect the public and that Georgia law prohibited the installation or use of lift kits over two inches.  *Id*., n. 29.  And it knew Georgia was legislating these lifts over two inches off the street due to the dangers posed by their use.  Despite that knowledge, it continued selling lifts in Georgia that violated the express terms of a public safety statute.

Rough Country's decision not to investigate the dangers of its product, not to test its products for safety in a crash, and its choice to continue to sell lift kits that were illegal on Georgia's roads are all admissible to show notice and danger, which are both part of the defect test under *Banks v. ICI Americas, Inc*.,  450 S.E.2d 671 (Ga. 1994).  Evidence that Rough Country knew drivers could not legally use its lifts in Georgia is highly probative of the core question the jury must answer in this case.  In short, Rough Country has not met its burden of establishing that evidence related to O.C.G.A. § 40-8-6 would be ***unfairly*** prejudicial and thus inadmissible.

## CONCLUSION

For the reasons discussed above, Rough Country's motion in limine regarding O.C.G.A. § 40-8-6 should be denied.

Respectfully submitted this 17th day of March, 2025.

CANNELLA SNYDER LLC

*/s/ Tedra L. Cannella*

TEDRA L. CANNELLA
  Georgia Bar No. 881085
  tedra@cannellasnyder.com
ROBERT H. SNYDER, JR.
  Georgia Bar No. 404522
  rob@cannellasnyder.com
DEVIN L. MASHMAN
  Georgia Bar No. 257588
  devin@cannellasnyder.com

315 W. Ponce de Leon Ave.
Suite 885
Decatur, GA 30030
(404) 800-4828
(404) 393-0365 (fax)
***Attorneys for Plaintiffs***

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rules 5.1(B) and 7.1(D), I hereby certify that the

foregoing filing complies with the applicable font and size requirements and is

formatted in 14-point Times New Roman font.

CANNELLA SNYDER LLC

*/s/ Tedra L. Cannella*
TEDRA L. CANNELLA
  Georgia Bar No. 881085
  tedra@cannellasnyder.com
ROBERT H. SNYDER, JR.
  Georgia Bar No. 404522
  rob@cannellasnyder.com
DEVIN L. MASHMAN
  Georgia Bar No. 257588
  devin@cannellasnyder.com

315 W. Ponce de Leon Ave.
Suite 885
Decatur, GA 30030
(404) 800-4828
(404) 393-0365 (fax)

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was electronically filed with the Clerk of Court via CM/ECF, which will automatically serve the following attorneys of record:

Richard H. Hill
Claire C. Murray
Lindsay G. Ferguson
Aaron B. Chausmer
3344 Peachtree Road, N.E.
Suite 2400
Atlanta, GA 30326
rhill@wwhgd.com
cmurray@wwhgd.com
lferguson@wwhgd.com
achausmer@wwhgd.com

This 17th day of March, 2025.

CANNELLA SNYDER LLC

*/s/ Tedra L. Cannella*
Tedra L. Cannella
Georgia Bar No. 881085
*Attorney for Plaintiffs*