# Exhibit 7

Case 2:22-cv-00017-RWS   Document 183-7   Filed 03/17/25   Page 2 of 5
Christopher D. Roche                          July 17, 2024
Bryson, Santana and Joshua v. Rough Country, LLC

Page 1

```
 1              UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF GEORGIA
 2                  GAINESVILLE DIVISION
 3       SANTANA BRYSON and
         JOSHUA BRYSON, as Admnistrators
 4       of the Estate of C.Z.B. and as
         surviving parents of C.Z.B, a
 5       deceased minor,
 6              Plaintiffs,
 7       vs.              CASE NO.:  2:22-CV-017-RWS
 8       ROUGH COUNTRY, LLC,
 9              Defendant.
10       _____
         VIDEOTAPED
11       DEPOSITION OF:    CHRISTOPHER D. ROCHE
12       DATE:             July 17, 2024
13       TIME:             9:14 a.m.
14       LOCATION:         Ann Arbor, Michigan
15       TAKEN BY:         Counsel for the Defendant
16       REPORTED BY:      Mary K. Stepp, Court Reporter
17       _____
18
19
20
21
22
23
24
25
```

1       particular case.
2           Q.   Okay.  So testing hasn't actually occurred
3       in that other case?
4           A.   That's correct.
5           Q.   All right.  And is that the only case in
6       the litigation context where you have either
7       organized, directed or participated in any way in --
8       in an actual crash test?
9           A.   No.  There's been other cases where we
10      were looking at the possibility or actually
11      determining the test setup and procedures.  So there
12      have been other instances where I was involved in
13      test setup, test planning.
14          Q.   And did those tests actually go forward?
15          A.   They -- they did not in that case.
16          Q.   Okay.  So has there ever been a case where
17      you have participated in, in the ways you've
18      described, a crash test that actually went forward in
19      the litigation context?
20          A.   Well, the -- the example I gave you
21      earlier was the case where I was deposed last year,
22      where two crash tests were performed.  And I was able
23      to review all the materials related to those crash
24      tests.
25          Q.   Yeah.  Maybe I asked it the wrong way.  I

Page 32

1    subject crash with direct contact damage.  And so
2    that measurement of four inches is the width of the
3    sheet metal to the right of the flipper glass.
4         Q.   The last part is what I didn't understand.
5    And I put up the -- I think you can see my screen --
6    the photo -- the image you're referring to.
7         A.   Yes.
8         Q.   And when you say the width, the very last
9    thing you said, are you talking about the width from
10   the -- where I'm pointing to here, the glass to the
11   edge of the vehicle?  What exactly are you
12   referencing, when you say the width of that
13   structure?
14        A.   Yes.  I -- I -- in some of my work
15   product, you'll see there's an actual measurement
16   taken from the exemplar scan data.  So I measured the
17   width of the liftgate sheet metal towards the base of
18   this structure, but that's above that lower edge of
19   the lift glass -- the liftgate through the flipper
20   glass.
21        Q.   All right.  In the subject crash, just so
22   I understand this, the -- there was an offset in the
23   subject crash.  Do you know what that offset was?
24        A.   I know that Mr. Grimes reported it at
25   around 10.8 inches.

1       But my question is, have you done anything
2  to quantify how the crash test would have been
3  different, if the offset or overlap matched the
4  subject crash?
5       A.   The purpose of my analysis was to really
6  understand how representative the crash test is to
7  the subject crash.  That's -- that's, uh -- that was
8  what I -- my objective and that's why I've written
9  this report and formed the opinions I've had -- I --
10 I have.
11      Q.   All right.  Well, have you done any
12 testing to determine the impact of the difference in
13 offset on the results of the crash test?
14           MS. CANNELLA:  Asked and answered.
15 BY MR. HILL:
16      Q.   Go ahead.
17      A.   No, I haven't.  I've simply identified the
18 discrepancy between the crash test that was performed
19 and the subject crash.
20           MR. HILL:  We've been going about an hour,
21 let's take a quick break.  I need --
22           MS. CANNELLA:  Okay.
23           MR. HILL:  -- to use the restroom.  I'll
24 be back fast.
25           THE VIDEOGRAPHER:  Off the record 10:06.