UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| Santana Bryson and Joshua Bryson, as Administrators of the Estate of C.Z.B., and as surviving parents of C.Z.B., a deceased minor,<br><br>    Plaintiffs,<br><br>v.<br><br>Rough Country, LLC<br><br>    Defendant. | Civil Action File<br><br>No. 2:22-cv-17-RWS |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S *DAUBERT* MOTION TO EXCLUDE CERTAIN OPINIONS FROM PAUL R. LEWIS, JR.**

**I.    INTRODUCTION**

RC asks the Court to prevent an expert biomechanical engineer from offering his biomechanical opinions on collisions he personally studied. Mr. Lewis's conclusions about his analysis of the *Bacho* and *Mendoza* collisions fall well within his expertise. The Court should permit Mr. Lewis to offer those opinions at trial.

Mr. Lewis is a biomedical engineer with decades of experience. He has an M.S. in Biomedical Engineering and a B.S. in industrial engineering.[1] He has

---

[1] *See* Ex. 1, Lewis CV.

decades of experience studying and researching biomedical and biomechanical engineering, occupant kinematics, and injury causation. He has published countless research papers on those topics and presented at conferences across the country.[2] Mr. Lewis has personally investigated approximately 4,900 traumatic incidents to analyze injury causation.[3]

RC does not even *attempt* to challenge Mr. Lewis's qualifications or any of his opinions about the collision at issue in this case. And for good reason—Mr. Lewis's opinions about how C.Z.B. suffered his fatal injuries are based on his extensive biomechanical analysis of C.Z.B.'s injury patterns, physical evidence, and (unlike RC's biomechanic expert) surrogate testing he performed.

Despite conceding Mr. Lewis's qualifications to offer his opinions related to *this case*, RC claims that those qualifications somehow do not apply to Mr. Lewis's near-identical opinions concerning the *Bacho* and *Mendoza* cases. Mr. Lewis's conclusions in *Bacho* and *Mendoza* fall directly within his area of expertise: how collision forces caused the injuries sustained in those collisions.[4] His reliance on accident reconstructions to reach those conclusions does not *approach* a basis to exclude his opinions—the law expressly permits experts to

---

[2] *Id.* at 1446-1448.
[3] *See* Doc. 104-2, Lewis Report, at 1443.
[4] *See* Ex. 2, Lewis Affidavit, at ¶¶ 3, 13, 43, 46-49 ; *see also* Doc. 128-4, Lewis Supp. Report.

rely on other experts' opinions to reach their own. *See* Fed. R. Evid. 703.

The Court should deny RC's motion and permit Mr. Lewis to offer his expert conclusions about the *Bacho* and *Mendoza* collisions.

## II.  SUMMARY OF MR. LEWIS'S OPINIONS

Based on Mr. Lewis's analysis of C.Z.B.'s injury patterns and the intrusion present in the crash, Mr. Lewis determined C.Z.B.'s fatal atlanto-occipital disarticulation injury was caused by the F-250's intrusion into the Bryson family's Ford Escape.[5] By comparing C.Z.B.'s fatal injuries with the highest possible G-forces produced in the crash, Mr. Lewis was able to rule out ordinary collision forces as a cause of C.Z.B.'s death.[6]

Mr. Lewis also performed a surrogate/exemplar study. Mr. Lewis placed a child of C.Z.B.'s height and weight into an exemplar Ford Escape's second-row seat where C.Z.B. would have been sitting.[7] Mr. Lewis's measurements of the survival space around the surrogate child confirmed C.Z.B. had significant clearance between his seat and the driver's seat pre-impact:[8]

---

[5] *See* Doc. 104-2, Lewis Report, at 1434.
[6] *Id.* at 1440.
[7] *Id.* at 1440.
[8] *Id.* at 1439-1442.

3

 

*Fig 1 (left) compares C.Z.B.'s survival space in a stock F-250 versus the subject crash. Fig. 2 (right) shows Mr. Lewis's exemplar-surrogate study illustrating C.Z.B.'s distance from the front-row seat in front of him.*

Even with the seat in front of C.Z.B. fully reclined, C.Z.B. had sufficient survival space to avoid contacting it.[9] Using this surrogate/exemplar study, Mr. Lewis confirmed that C.Z.B.'s intrusion-based injuries could not have occurred without the F-250 *significantly* pushing his seat forward into the seat in front of him.[10]

Although Mr. Lewis and RC's expert Dr. Gwin disagree about precisely *what* C.Z.B. contacted during the crash to receive his fatal injury, they both agree his injuries were caused by the dramatic intrusion and reduction in survival space that occurred when the lifted F-250's bumper pushed his second-row seat forward during the crash.[11]

RC does not seek to exclude any opinions contained in Mr. Lewis's initial report. RC has no challenge to *any* of Mr. Lewis's methodologies or conclusions

---

[9] *Id.* at 1441, Par. 1.19.
[10] *Id.* at 1442.
[11] *Compare* Ex. 3, Gwin Dep., 138:8-18 *with* Doc. 104-2, Lewis Report, at 1440.

related to the collision at issue in this case. Due to the reliability of Mr. Lewis's methodologies, RC does not seek to exclude his opinions about C.Z.B.'s cause of death, injury causation, surrogate/exemplar study, or the absence of non-intrusion-based injuries.

Instead, RC's challenges are limited to Mr. Lewis's analysis of prior collisions involving RC lift kits. In *Mendoza v. Heckenthorn Products*, an RC lift kit caused a pickup truck to bypass a Ford Mustang's bumper and directly contact the driver's head, causing permanent brain damage.[12] In *Bacho v. Rough Country*, a nine-year-old girl was killed when an RC lift kit caused a truck to bypass the crash protection features of the family's minivan.[13] In both cases, Mr. Lewis was retained as an expert in biomechanics and occupant kinematics, and drafted detailed reports detailing his opinions on injury causation.

In *Bacho*, Mr. Lewis concluded A.B.'s fatal injuries were caused by her head contacting the side minivan panel, which was pushed into her by the intruding pickup truck.[14] Mr. Lewis based his conclusions on A.B.'s injury pattern and the direction of force and intrusion he observed.[15] Mr. Lewis confirmed the truck's intrusion into the area A.B. was sitting caused her fatal injuries given the low

---

[12] *See* Doc. 128-1, Lewis *Bacho* Report.
[13] *See* Doc. 128-2, Lewis *Mendoza* Report.
[14] *See* Doc 128-1, Lewis *Bacho* Report, at 26.
[15] *Id.* at 26-27.

collision forces, which could not have produced fatal injury forces without intrusion.[16] Mr. Lewis also received an accident reconstruction report, which identified the RC lift kit as the cause of the excessive intrusion into the area where A.B. was seated.[17] Based on that conclusion, Mr. Lewis determined that A.B. would not have suffered her fatal injuries without the lift kit-induced intrusion.[18]

In *Mendoza*, Mr. Lewis determined Ms. Mendoza's skull fractures and brain injury were caused by direct contact between her head and the pickup truck's front bumper.[19] Mr. Lewis reached that opinion based on Ms. Mendoza's injury patterns, the forces in the collision, and the significant intrusion of the truck's front bumper into the area where Ms. Mendoza's head would have been:[20]



*Fig. 3. The green circle shows the structure Mr. Lewis concluded caused Ms. Mendoza's head injuries.*

---

[16] *Id.* at 30.
[17] *Id.* at 31.
[18] *Id.*
[19] *See* Doc. 128-2, Lewis *Mendoza* Report, at 9.
[20] *Id.*

Based on the accident reconstruction report, physical evidence, injury patterns, and laws of physics, Mr. Lewis also concluded that an unlifted truck would not have caused Ms. Mendoza's injury.[21]

Mr. Lewis issued his supplemental report in this case on March 18, 2023, disclosing his opinions on his analysis of the *Bacho* and *Mendoza* collisions. Mr. Lewis disclosed his opinion that A.B.'s death was caused by her head impacting the elevated bumper of the lifted pickup truck.[22] He also disclosed his opinion that Ms. Mendoza's skull fractures and brain injury were caused by her head impacting the elevated bumper of the lifted pickup truck.[23]

Plaintiffs disclosed Mr. Lewis's supplemental report *three months* before the close of expert discovery. RC was able to fully discover Mr. Lewis's opinions about the *Bacho* and *Mendoza* collisions. RC deposed Mr. Lewis extensively about his opinions in *Bacho* and *Mendoza* and Mr. Lewis answered every question RC's counsel had about his basis for those opinions. Despite having three months to designate any rebuttal expert, RC declined to do so.[24]

---

[21] *Id.* at 13-16.
[22] *See* Doc. 128-4, Lewis Supp. Report, at 1-2.
[23] *Id.* at 2.
[24] Plaintiffs disclosed Mr. Lewis's supplemental report on March 15, 2024. The Court's deadline for rebuttal disclosures was June 17, 2024. *See* Doc. 76, at 2.

7

### III. LEGAL STANDARD

Federal Rule of Evidence 702 governs the admissibility of expert testimony. It provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702(b). The party proffering expert testimony must prove that the Rule 702 requirements have been satisfied. *United States v. Frazier,* 387 F.3d 1244, 1260 (11th Cir. 2004) (en banc).

*Daubert*'s admissibility standards do not substitute the adversarial process. Instead, cross-examination and presentation of contrary evidence at trial remain the "traditional and appropriate means" of attacking an expert witness's conclusions. *Daubert*, 509 U.S. at 596. "[W]here the expert's testimony has a reasonable factual basis, a court should not exclude it. Rather, it is for opposing counsel to inquiry into the expert's factual basis." *United States v. 0.161 Acres of Land*, 837 F.2d 1036, 1040 (11th Cir. 1988). Because trial examination is the proper

mechanism for assessing an expert's opinions, "case law after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule." *Kilgore v. Reckitt Benckiser, Inc.*, 917 F. Supp. 2d 1288, 1293 (N.D. Ga. 2013) (quoting Fed. R. Evid. 207 advisory committee's note to 2000 amendments).

## IV. ARGUMENT

Mr. Lewis has ample expertise and qualifications to offer expert opinions on biomechanics, occupant kinematics, and injury causation. Despite conceding that point, RC seeks to exclude his opinions on those exact topics related to the *Bacho* and *Mendoza* cases. The Court should deny RC's motion and permit Mr. Lewis to offer his injury causation opinions related to those cases.

### A. Mr. Lewis can testify to the biomechanics, occupant kinematics, and injury causation opinions he reached in *Bacho* and *Mendoza*.

Mr. Lewis is more than qualified to offer opinions on biomechanics, occupant kinematics, and injury causation. RC concedes that. That expertise is not limited to a particular collision—Mr. Lewis is equally qualified to offer his biomechanical opinions about the *Bacho* and *Mendoza* collisions.

Mr. Lewis's conclusions about the causes of Ms. Mendoza's brain injury and A.B.'s death are *true* biomechanical opinions. Mr. Lewis's specialized knowledge in biomechanics and occupant kinematics allows him to study and opine the "effect

9

of motion and forces on the human body."[25] His role "is to identify the injury and consider the forces and motions necessary to cause the injury due to his/her specialized knowledge in injury mechanisms and tolerance values."[26] Those are the exact opinions Mr. Lewis seeks to offer about the *Bacho* and *Mendoza* collisions—how the pickup trucks' occupant compartment intrusion caused the occupants' injuries.[27]

    RC's objection has nothing to do with Mr. Lewis's biomechanical opinions, but his partial reliance on accident reconstructions to reach those conclusions. However, black letter law permits experts to rely on other experts' opinions and findings to reach their own. *See* Fed. R. Evid. 703 (permitting experts to rely on otherwise inadmissible facts or data provided experts in their field "would reasonably rely on those kinds of facts or data" to form an opinion); *see also In re Wright Med. Tech., Inc., Conserve Hip Implant Prods. Liab. Litig.*, 127 F. Supp. 1306, 1320 (N.D. Ga. 2015); *Erebia v. Allstate Prop. & Cas. Ins. Co.*, No. 1:15-CV-312-MHC, 2016 WL 4435089, at *6 (N.D. Ga. July 18, 2016) ("Experts routinely rely on the work of others, a practice permitted by Fed. R. Evid. 703, so long as the facts or data on which they rely is of the type reasonably relied on by experts in the relevant field.").

---

[25] *See* Doc. 104-2, at 1425.
[26] *Id.*
[27] *See* Ex. 2, Lewis Aff., at ¶¶ 36-44.

Biomechanics routinely rely on other experts' accident reconstructions to form their expert opinions.[28] The Court needs to look no further than RC's expert biomechanic, Dr. Gwin, who relied on Mr. Grimes' accident reconstruction to form her opinions.[29] Because Mr. Lewis's reliance on the accident reconstruction opinions from other evidence is a proper basis for a biomechanic to "reasonably rely on" in reaching their conclusions, he can base his opinions on the accident reconstructions performed in *Bacho* and *Mendoza*. Fed. R. Evid. 703.

### B. Mr. Lewis's biomechanical opinions about *Bacho* and *Mendoza* do not violate the substantial similarity requirement or the hearsay rule.

RC dedicates a portion of its brief to re-asserting its separately-filed motion in limine argument that *Bacho* and *Mendoza* are not "substantially similar" to the subject collision. Plaintiffs have already submitted briefing to the Court about the admissibility of *Bacho* and *Mendoza* and will not re-hash their argument here.[30] For purposes of this motion, it suffices to say that evidence of the *Bacho* and *Mendoza* collisions is admissible because (1) those collisions were substantially

---

[28] *See* Ex. 2, Lewis Aff., at ¶ 32.
[29] *See* Doc. 147-1, RC's Expert Disclosure, at 6 (disclosing Dr. Gwin's opinions are based in part on "the crash reconstructions and simulations"); Ex. 3, Gwin Dep., at 172:24-173:19 (testifying she relied on Mr. Grimes' crash reconstruction to form opinions).
[30] *See* Doc. 155, Pls' Affirmative Motions in Limine; Doc. 173, Pls' Resp. to RC's Motion in Limine to Exclude Other Lawsuits.

11

similar to the Bryson family's crash, and (2) RC put those collisions at issue by testifying it *used those cases* to make design decisions about its products.

RC also cannot exclude Mr. Lewis's *Bacho* and *Mendoza* opinions on hearsay grounds. As RC acknowledges, expert opinions *are admissible* even when based partly on inadmissible hearsay. *See* Fed. R. Evid. 703 ("If experts in the field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted."); *Colardo-Keen v. CorrectHealth, LLC*, No. 1:14-CV-489-MHC, 2022 WL 18778990, at *7 (N.D. Ga. June 7, 2022) (quoting *Knight through Kerr v. Miami-Dade Cnty.*, 856 F.3d 795, 809 (11th Cir. 2017)). RC has no support for its claimed limitation of Rule 703 to treatises and papers—the law provides exactly the opposite. *See Fox v. Gen. Motors, LLC*, No. 1:17-CV-209-MHC, 2019 WL 3483171, at *25 (N.D. Ga. Feb. 4, 2019) (permissible facts or data for reaching an expert opinion "*includes the opinions and findings of other experts*, if experts in their respective fields would reasonably rely on other expert's opinions and findings") (citing *United States v. Winston*, 372 F.App'x 17, 20 (11th Cir. 2010)) (emphasis added).

RC's "hearsay" objection also ignores that Mr. Lewis conducted investigations of these crashes personally. He reviewed the photos, records, and inspected the physical evidence just like Rough Country did in those cases.

12

RC's objection to Mr. Lewis's reliance on accident reconstructions performed in *Bacho* and *Mendoza* to form his opinions is not a basis for exclusion; at most, it is a topic for cross-examination. *See In re Wright*, 127 F. Supp. 3d at 1325 (11th Cir. 2015) ("As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned to that opinion rather than its admissibility and should be left for a jury's consideration.").

### C. Mr. Lewis should be permitted to disclose his underlying facts and data to the jury under Rule 703.

RC next argues for the wholesale exclusion of Mr. Lewis's opinions about the *Bacho* and *Mendoza* collisions due to the claimed prejudice caused by Mr. Lewis's underlying facts and data. RC's claim misses the mark—Rule 703 allows an expert's *opinion* to be admitted regardless of whether the underlying facts or data may be prejudicial. *See* Fed. R. Evid. 703. Rule 703 only considers the prejudicial effect of an expert's underlying data when deciding whether to disclose *the underlying data itself* to the jury. *Id.* ("But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.").

RC's sole prejudice argument conflates its claimed "harm" from Plaintiffs' *disclosure* of Mr. Lewis's supplemental opinions with any "prejudice" caused by the *jury* hearing the evidence at trial. *See* Fed. R. Evid. 703 (weighing the

13

prejudicial effect and probative value of the facts or data *themselves*).  RC's claim that it did not have time to identify rebuttal experts is flatly incorrect—Plaintiffs' disclosed Mr. Lewis's supplemental report three months before RC's deadline for rebuttal disclosures.[31]  RC extensively deposed Mr. Lewis about his analysis and opinions about the *Bacho* and *Mendoza* collisions.  In addition to not informing the Rule 703 analysis, RC's claimed "harm" caused by Mr. Lewis's supplemental report is non-existent.[32]

    The probative value of disclosing Mr. Lewis's underlying facts and data substantially outweighs any prejudice—it is essential to understanding the basis of Mr. Lewis's opinions.  RC has identified no reason why disclosing Mr. Lewis's reliance on accident reconstruction studies would unduly prejudice the jury.  Because the probative value of the underlying evidence substantially outweighs its prejudicial effect, the Court should permit Mr. Lewis to disclose his reliance on accident reconstruction studies to form his biomechanical opinions in *Bacho* and *Mendoza*.

---

[31] Plaintiffs disclosed Mr. Lewis's supplemental report on March 15, 2024.  The Court's deadline for rebuttal disclosures was June 17, 2024.  *See* Doc. 76, at 2.
[32] This analysis relates to RC's pending motion to strike Mr. Lewis's supplemental report.  *See* Doc. 118; 128.  Because RC suffered no harm due to Mr. Lewis's supplemental report, that motion should be denied.

### D. Mr. Lewis's testimony about *Bacho* and *Mendoza* does not go to the ultimate issue in this case.

RC's attempt to exclude Mr. Lewis's opinions about *Bacho* and *Mendoza* because they relate to the "ultimate issue" is both factually and legally incorrect.

*First*, Mr. Lewis's opinions about *Bacho* and *Mendoza* relate to evidence about "Other Similar Incidents" ("OSIs") and the facts behind the real-world collisions RC considered when making design decisions, not the ultimate issue in this case. The *Bacho* and *Mendoza* cases are not before the jury—Mr. Lewis's conclusions about those cases do not "merely tell the jury what result to reach" in *this* case. *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990). Mr. Lewis's conclusions merely relate facts from two prior OSIs involving RC lift kits.

*Second*, even if Mr. Lewis's opinions about *Bacho* and *Mendoza* concerned an ultimate issue in this case (they don't), that would not make them inadmissible. *See* Fed. R. Civ. P. 704(a) ("An opinion is not objectionable just because it embraces an ultimate issue."). Because Mr. Lewis's testimony about *Bacho* and *Mendoza* does not state a legal conclusion or direct the jury on what result to reach in this case, it does not violate Rule 704.

*Third*, there is underlying evidence regarding these collisions in the case. RC testified it received notice of the allegation that its products caused override collisions through *Bacho* and *Mendoza*, and that its primary method of evaluating

15

the safety of its products was to review "consumer feedback."[33] In this case, Plaintiffs have produced ample evidence related to both collisions, including hundreds of photos of the vehicles involved in each collision, Mr. Lewis's reports, and Mr. Lewis's detailed case review notes from both collisions. Most of the evidence related to *Bacho* and *Mendoza* has come *from RC*, who produced virtually all the expert reports from *Bacho*, the *Bacho* collision report, and depositions from both cases. Plaintiffs do not know what other evidence RC has about those collisions. RC's claim that it was somehow prejudiced by a perceived lack of information about the facts of *Bacho* and *Mendoza* is backwards—RC was a party in those cases, not Plaintiffs.

### E. The Court should individually evaluate each expert's methodology.

The Court should reject RC's plea to exclude all opinions of Plaintiffs' other experts "to the extent" they rely on Mr. Lewis's opinions. Experts can have more than one basis for their opinions—excluding one basis for an expert's opinion does not automatically render it invalid. The Court should reject RC's blanket attempt to exclude expert testimony that references Mr. Lewis's opinions and instead address the merits of each expert's opinions individually.

---

[33] *See* Doc. 97, RC 30(b)(6) Dep., at 9:17-25; 11:14-12:13; 50:22-51:10; 9:17-12:9.

## V. CONCLUSION

Mr. Lewis personally analyzed the biomechanics, occupant kinematics, and injury causation in the *Bacho* and *Mendoza* collisions. His conclusions are properly based on reliable principles and methods in his fields. The Court should permit Mr. Lewis to offer his opinions about those collisions at trial.

Respectfully submitted on March 17, 2025.

      CANNELLA SNYDER LLC

      */s/ Tedra L. Cannella*
      TEDRA L. CANNELLA
       Georgia Bar No. 881085
       tedra@cannellasnyder.com
      ROBERT H. SNYDER, JR.
       Georgia Bar No. 404522
       rob@cannellasnyder.com
      DEVIN L. MASHMAN
       Georgia Bar No. 257588
       devin@cannellasnyder.com

      315 W. Ponce de Leon Ave.
      Suite 885
      Decatur, GA 30030
      (404) 800-4828
      (404) 393-0365 (fax)

      ***Attorneys for Plaintiffs***

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rules 5.1(B) and 7.1(D), I hereby certify that the foregoing filing complies with the applicable font and size requirements and is formatted in 14-point Times New Roman font.

                                        CANNELLA SNYDER LLC

                                        */s/ Tedra L. Cannella*
                                        TEDRA L. CANNELLA
                                          Georgia Bar No. 881085
                                          tedra@cannellasnyder.com
                                        ROBERT H. SNYDER, JR.
                                          Georgia Bar No. 404522
                                          rob@cannellasnyder.com
                                        DEVIN L. MASHMAN
                                          Georgia Bar No. 257588
                                          devin@cannellasnyder.com

                                        315 W. Ponce de Leon Ave.
                                        Suite 885
                                        Decatur, GA 30030
                                        (404) 800-4828
                                        (404) 393-0365 (fax)

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was electronically filed with the Clerk of Court via CM/ECF, which will automatically serve the following attorneys of record:

Richard H. Hill
Claire C. Murray
Lindsay G. Ferguson
Aaron B. Chausmer
3344 Peachtree Road, N.E.
Suite 2400
Atlanta, GA 30326
rhill@wwhgd.com
cmurray@wwhgd.com
lferguson@wwhgd.com
achausmer@wwhgd.com

This 17th day of March, 2025.

CANNELLA SNYDER LLC

*/s/ Tedra L. Cannella*
Tedra L. Cannella
Georgia Bar No. 881085
*Attorney for Plaintiffs*
