# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# GAINESVILLE DIVISION

SANTANA BRYSON and JOSHUA
BRYSON, as Administrators of the
Estate of C.Z.B., and as surviving
parents of a deceased minor, C.Z.B.,

      Plaintiffs,

      v.

ROUGH COUNTRY, LLC,

      Defendant.

Civil Action No.

2:22-CV-17-RWS

## <u>ORDER</u>

This case comes before the Court on Plaintiffs Santana and Joshua Bryson's and Defendant Rough Country, LLC's respective Evidentiary Motions ("Motions"). [Dkts. 115–16, 118–19, 137–47, 150–56]. The Court held oral arguments on these Motions at the March 24, 2024 Pretrial Conference ("Pretrial Conference"). Upon consideration of the Parties' briefs and oral arguments, the Court enters the following Order.

As a preliminary matter, the Parties agree to proceed with a bench trial. Accordingly, the prejudicial effect of certain evidence is less impactful, enabling the Court to admit evidence that would arguably be otherwise inadmissible to a

jury. <u>Gulf States Utils. Co. v. Ecodyne Corp.</u>, 635 F.2d 517, 519 (5th Cir. 1981). Nevertheless, the Parties are expected to consider the actual probative value of evidence before submitting it at trial.

Regarding the Court's rulings on the Motions, this Order neither guarantees nor forecloses the use of any evidence at trial. If a motion is granted, the non-moving party may request to introduce otherwise excluded evidence if the non-moving party believes the door to admission is opened during trial. Likewise, denying a motion does not equate to a finding that the challenged evidence is admissible. Any party seeking to admit challenged evidence at trial must lay a proper foundation when proffering the evidence, and the opposing party may still object to its admission.

## I.    **Withdrawn Motions**

The Parties have withdrawn several outstanding Motions, including: (1) Defendant's Motion in Limine regarding summary judgment issues [Dkt. 145]; (2) Defendant's Omnibus Motion in Limine subsections 1–3, 5–6, 8, 11, and 15–19 [Dkt. 146(1)–(3), (5)–(6), (8), (11), (15)–(19)]; and (3) Plaintiffs' Omnibus Motion in Limine subsections 3–4, 6, 9–10, 12–14, 16–19 [Dkt. 156(3)–(4), (6), (9)–(10), (12)–(14), (16)–(19)]. Those Motions [Dkt. 145; Dkt. 146(1)–(3), (5)–(6), (8), (11),

(15)–(19); Dkt. 156(3)–(4), (6), (9)–(10), (12)–(14), (16)–(19)] are therefore

**DENIED** as moot.

## II.    Stipulated Motions

The Parties have agreed to defer rulings on Defendant's Omnibus Motion in

Limine subsections 4, 7, 9–10, and 13 [Dkt. 146(4), (7), (9)–(10), (13)]. Those

subsections of Defendant's Motion [Dkt. 146(4), (7), (9)–(10), (13)] are therefore

**DENIED**. Further, the Parties have agreed to exclude evidence of any offers of

settlement or compromise—the subject of Plaintiffs' Omnibus Motion in Limine

subsection 8. [Dkt. 160, at 2; Dkt. 156(8)]. Subsection 8 of Plaintiffs' Motion [Dkt.

156(8)] is therefore **GRANTED**.

## III.    Motions in Limine

"A motion in limine is 'any motion, whether made before or during trial, to

exclude anticipated prejudicial evidence before the evidence is actually offered.'"

Gold Cross EMS, Inc. v. Children's Hosp. of Ala., 309 F.R.D. 699, 700 (S.D. Ga.

2015) (quoting Luce v. United States, 105 S. Ct. 460, 462 n.2 (1984)). It is "an

important tool available to the trial judge to ensure the expeditious and evenhanded

management of the trial proceedings." United States v. Roland, 2016 WL

11628077, at *1 (N.D. Ga. June 1, 2016) (citing Jonasson v. Lutheran Child &

Fam. Servs., 115 F.3d 436, 440 (7th Cir. 1997)). "The district court has wide

discretion in determining the relevance of evidence produced at trial." Id. (quoting Boyd v. Ala Dep't of Corr., 296 F. App'x 907, 908 (11th Cir. 2008)). That said, courts' "discretion to exclude evidence under Rule 403 is limited." United States v. Nowak, 370 F. App'x 39, 41 (11th Cir. 2010) (citing United States v. Terzado-Madruga, 897 F.2d 1099, 1117 (11th Cir. 1990)).

However, "[i]n bench trials, judges routinely hear inadmissible evidence that they are presumed to ignore when making decisions." Harris v. Rivera, 102 S. Ct. 460, 465 (1981). "We presume that, when making a decision, trial judges are able to exclude from their minds the improper inferences that one might draw from a piece of evidence." United States v. Vigne, 571 F. App'x 932, 934 n.2 (11th Cir. 2014) (citing Gulf States Utils. Co., 635 F.2d at 519). Thus, "Rule 403's weighing of probative value against prejudice" "has no logical application to bench trials." Gulf States Utils. Co., 635 F.2d at 519.

## A.  Defendant's Motion in Limine – O.C.G.A. § 40-8-6 [Dkt. 140]

Defendant argues that any evidence concerning the prior version of O.C.G.A. § 40-8-6 should be excluded. [Dkt. 140, at 1]. O.C.G.A. § 40-8-6 addresses alterations to vehicle suspensions. [Id.]. Prior to 2024, the statute distinguished between "private passenger motor vehicles" and "trucks," requiring that both types of motor vehicles adhere their suspension systems to "the factory

4

recommendation." O.C.G.A. § 40-8-6 (1992). The statute was amended in 2024 to apply broadly to "any motor vehicle" and regulate suspension height from "the surface of the street." O.C.G.A. § 40-8-6 (2024). Defendant argues any evidence concerning the prior version of the statute should be excluded because (1) it would prejudice the jury; (2) the lift kit did not violate the prior version of the statute as applied to Mr. Elliot's truck; and (3) the prior version of the statute is unconstitutionally vague. [Dkt. 140, at 4–17].

Plaintiffs filed a Response, arguing that (1) applying the new version of the statute would constitute a disfavored retroactive application; (2) Mr. Elliot's truck was a "private passenger motor vehicle" under the statute; (3) Defendant's constitutional challenge is inappropriate; and (4) Defendant's Rule 403 arguments are misguided. [Dkt. 176].

Given the Parties have agreed to a bench trial, the Court will deny Defendant's Motion so long as the challenged evidence has some probative value and "is [not] cumulative or a waste of time." Gulf States Utils. Co., 635 F.2d at 519. Accordingly, the Court **DENIES** Defendant's Motion [Dkt. 140] because the Court cannot—at this time—determine that evidence regarding the prior version of O.C.G.A. § 40-8-6 carries absolutely no probative value, will waste time, or

amounts to cumulative evidence. Plaintiffs may offer the evidence subject to objection at trial.

**B.      Defendant's Motion in Limine – Plaintiffs' Injuries [Dkt. 141]**

Defendant argues that any evidence—including video provided by police bodycam footage—of Joshua and Satana Bryson's injuries should be excluded for a lack of relevance and unfair prejudice. [Dkt. 141, at 3–5]. Plaintiffs respond that this Motion is vague and would exclude evidence of C.Z.B.'s injuries. [Dkt. 179, at 4–8]. At the Pretrial Conference, Plaintiffs further clarified that they do not plan to offer bodycam footage but generally plan to highlight the difference between the passengers' injuries.

Considering the Parties' arguments and representations at the Pretrial Conference, the Court **GRANTS in part and DENIES in part** Defendant's Motion [141]. It is **GRANTED** as to evidence of Santana Bryson's premature delivery of her newborn baby. It is **DENIED** as to the comparison of C.Z.B.'s fatal injury and Plaintiffs' less severe injuries.

**C.      Defendant's Motion in Limine – Expert Use and Acceptance of Liability [Dkt. 142]**

Defendant argues that Plaintiffs should not discuss (1) Defendant's use or non-use of experts and (2) Defendant's failure to "accept liability." [Dkt. 142, at 3, 5]. First, Defendant references Plaintiffs' statements about Defendant's alleged

6

"inability" to find an expert. [Dkt. 142, at 1 (citing Dkt. 115, at 1)]. Plaintiffs argue

that this Motion is vague, excluding otherwise probative evidence from trial. [Dkt.

180, at 1–2]. The Court agrees with Plaintiffs and accordingly **DENIES**

Defendant's Motion [Dkt. 142] for a lack of specificity.

### D.    Defendant's Motion in Limine – Prior Lawsuits [Dkt. 143]

Defendant argues that any evidence regarding prior lawsuits against

Defendant should be excluded for three reasons. [Dkt. 143]. First, Defendant

emphasizes "'[e]vidence of other lawsuits is generally considered to be

inadmissible hearsay.'" [Id. at 6 (quoting Smith v. E-Backgroundchecks.com, Inc.,

2015 WL 11233453, at *1 (N.D. Ga. June 4, 2015) (citations omitted))]. Second,

Defendant emphasizes that even if evidence of prior lawsuits has probative value,

"[t]he burden is on Plaintiffs to show that [the prior lawsuits] are 'substantially

similar.'" [Id. at 7 (quoting Willis v. Royal Caribbean Cruises, Ltd., 2022 WL

1521193, at *9 (S.D. Fla. May 4, 2022))]. To that end, Defendant emphasizes the

prior lawsuits (1) "involved different vehicles, different points of impact (i.e.,

front, side, and rear), different heights for the lift kits, different speeds, and

different 'Delta-Vs'" and (2) occurred several years prior to the current incident.

[Dkt. 143, at 9]. Third, Defendant argues the injuries sustained in any prior

lawsuits should be excluded because the dissimilarities between the collisions

would render the evidence unfairly prejudicial. [Id. at 10]. Fourth, Defendant argues that evidence of settlements related to prior lawsuits should be excluded under Rule 408. [Id.].

However, Plaintiffs maintain the prior incidents were substantially similar because each incident involved: "(a) [Defendant's] suspension lifts; (b) installed on pickup trucks; (c) allegations that the lifts caused override of crash protections; (d) head injuries to the occupant near the intrusion due to the suspension lift; and (e) [Defendant] knew about them." [Dkt. 173, at 2]. Plaintiffs agree that no settlement evidence may be admitted during trial. [Id. at 17]. However, Plaintiffs argue that the prior incidents could be used for impeachment and to show notice of prior incidents involving Defendant's lift kits. [Id. at 17–18].

The Court highlights that the substantial similarity analysis exists "[b]ecause of the potential impact that evidence of similar accidents can have on juries." Weeks v. Remington Arms Co., 733 F.2d 1485, 1491 (11th Cir. 1984) (citing Ramos v. Liberty Mut. Ins. Co., 615 F.2d 334, 339 (5th Cir. 1980)). But in the case of bench trials, however, these considerations are not as prevalent. See Harris, 102 S. Ct. at 465 ("In bench trials, judges routinely hear inadmissible evidence that

they are presumed to ignore when making decisions.").[1] Accordingly, the Court **DENIES** Defendant's Motion [Dkt. 143] and **LIMITS** the use of evidence regarding prior lawsuits to Defendant's notice of accidents involving Defendant's lift kits.

### E.    Defendant's Motion in Limine – Fatality Analysis Reporting System ("FARS") [Dkt. 144]

Defendant argues that evidence regarding whether it monitored the Fatality Analysis Reporting System ("FARS") database should be excluded as irrelevant. [Dkt. 144, at 4]. Specifically, Defendant emphasizes that FARS does not consider whether a particular accident occurs between lifted and un-lifted vehicles and thus cannot have probative value in the current case. [Id.]. In their Response, Plaintiffs argue that they plan to introduce the evidence to show Defendant's failure to monitor an important database regarding crashes—namely, to highlight Defendant's sole reliance upon customer feedback when making its design decisions. [Dkt. 175]. The Court **DENIES** Defendant's Motion [Dkt. 144] because the Court cannot—at this time—determine FARS evidence carries absolutely no

---

[1] Addressing Defendant's hearsay argument, the Court cannot determine whether evidence of prior lawsuits against Defendant constitutes hearsay at this time. Defendant, however, is free to object to the admission of such evidence if it believes the evidence, as proffered, would amount to hearsay.

probative value, will waste time, or amounts to cumulative evidence. Accordingly, Plaintiffs may offer the evidence subject to objection at trial.

### F.    Defendant's Omnibus Motions in Limine [Dkt. 146].

While Defendant originally included 19 subsections in its Omnibus Motion in Limine [Dkt. 146], all but one subsection has been resolved via stipulation or withdrawal. In the remaining subsection, Defendant argues that any evidence describing how Plaintiffs' injury has impacted friends or family should be excluded, as it would "improperly solicit sympathy from the jury." [Dkt. 146, at 14–15]. Plaintiffs respond that this portion of the Motion is "overly broad and vague." [Dkt. 174, at 13]. The Court agrees with Plaintiffs and accordingly **DENIES** this portion of Defendant's Motion [Dkt. 146(12)] for a lack of specificity.

### G.    Plaintiffs' Motion in Limine – Hunter Elliot [Dkt. 154]

Plaintiffs argue that Defendant should be foreclosed from entering evidence concerning Hunter Elliot's actions giving rise to the incident—namely, his drunken and distracted driving on a suspended license. [Dkt. 154, at 1]. Defendant rebuts that excluding these actions would omit probative evidence, such as the speed of Hunter Elliot's truck when the collision occurred. [Dkt. 171, at 2–3]. The Court

agrees with Defendant and accordingly **DENIES** Plaintiffs' Motion [Dkt. 154] for a lack of specificity.

### H.   Plaintiffs' Affirmative Motion in Limine – Prior Accidents and Witness Testimony on O.C.G.A. § 40-8-6 [Dkt. 155]

Plaintiffs argue they are entitled to use two pieces of evidence: (1) prior accidents involving Defendant's lift kits; and (2) witness testimony regarding O.C.G.A. § 40-8-6. First, Plaintiffs argue evidence of prior accidents is admissible because the accidents are all substantially similar. [Dkt. 155, at 1–4]. Plaintiffs further argue that Defendant has placed these accidents at issue by recognizing they have occurred. [Id. at 5].[2]

Second, Plaintiffs argue the prior version of O.C.G.A. § 40-8-6 is relevant. [Id. at 6–8]. Plaintiffs emphasize Hunter Elliot's truck is a "private passenger vehicle" rather than a "truck" under the statute. [Dkt. 155, at 6]. Plaintiffs further suggest that Ford's factory recommendations prohibited the installation of lift kits. [Id. at 7]. In closing, Plaintiffs argue that "[e]vidence that [Defendant] knew drivers could not legally use its lifts in Georgia is highly probative . . . ." [Id. at 8].

Consistent with the Court's ruling on Defendant's Motions regarding the same evidence [Dkt. 140; Dkt. 143], the Court **GRANTS in part** Plaintiffs'

---

[2] Defendant argues the prior accidents fail the substantial similarity analysis. [Dkt. 170, at 2; Dkt. 143, at 1].

Motion [Dkt. 155]. It is **GRANTED in part** as to evidence of prior lawsuits, as Plaintiffs may introduce that evidence for the limited purpose of showing notice. It is also **GRANTED** as to witness testimony on O.C.G.A. § 40-8-6, subject to Defendant's objections at trial.

## I.     Plaintiffs' Omnibus Motions in Limine [Dkt. 156]

While Plaintiffs originally included 19 subsections in their Omnibus Motion in Limine [Dkt. 156], all but six have been resolved via stipulation or withdrawal. The Court discusses the remaining subsections in turn:

### 1.     Product Tests or Safety Tests Unrelated to Vehicle Intrusion or Crash Compatibility [Dkt. 156(1)]

Plaintiffs argue that Defendant should be prohibited from introducing any evidence of stability testing performed on lifted vehicles because these tests are irrelevant when determining whether the lift kit caused excessive intrusion to the Brysons' car. [Dkt. 156, at 2–3]. The Court **DENIES** this subsection of Plaintiffs' Motion [Dkt. 156(1)] because the Court cannot—at this time—determine the evidence carries absolutely no probative value, will waste time, or amounts to cumulative evidence. Accordingly, Defendant may offer the evidence subject to objection at trial.

### 2.    FMVSS or the Alleged Lift Kit's "Overall Safety" [Dkt. 156(2)]

Plaintiffs argue that Defendant should be prohibited from introducing evidence that its lift kits complied with the federal standard for handling and stability because such standards are unrelated to whether Defendant's lift caused excessive intrusion into the Brysons' car. [Dkt. 156, at 3–4]. The Court **DENIES** this subsection of Plaintiffs' Motion [Dkt. 156(2)] because the Court cannot—at this time—determine the evidence carries absolutely no probative value, will waste time, or amounts to cumulative evidence. Accordingly, Defendant may offer the evidence subject to objection at trial.

### 3.    The Lift Kit's Intended Use [Dkt. 156(5)]

Plaintiffs argue that Defendant should be prohibited from arguing that Mr. Elliot "misused" the lift kit or that the lift kits were not intended for use on public roads. [Dkt. 156, at 8]. Defendant argues this Motion is vague and may exclude evidence with probative value. [Dkt. 172, at 9]. The Court agrees with Defendant and accordingly **DENIES** this subsection of Plaintiffs' Motion [Dkt. 156(5)] for a lack of specificity.

### 4.    Ford's Involvement with Lift Kits [Dkt. 156(7)]

Plaintiffs argue that Defendant should be prohibited from introducing evidence of Ford installing lift kits on vehicles or Ford dealerships shipping

13

vehicles to converters to install lift kits. [Dkt. 156, at 10–11]. Plaintiffs argue that any evidence suggesting Ford accepted the lift kits as safe would rely upon hearsay, given that no such testimony has been elicited directly from Ford. [Id. at 11]. Defendant argues this subsection of Plaintiffs' Motion is overbroad because it would otherwise prevent Defendant from eliciting the undisputed fact that Mr. Elliot's truck was originally lifted at a Ford dealership. [Dkt. 172, at 12]. The Court agrees with Defendant and accordingly **DENIES** this subsection of Plaintiffs' Motion [Dkt. 156(7)] for a lack of specificity.

### 5.    Number of Lift Kits [Dkt. 156(11)]

Plaintiffs argue that Defendant should be prohibited from making exaggerated claims regarding (1) the number of lift kits installed each year and (2) the number of lifted vehicles because Defendant has not produced a valid basis for its claims. [Dkt. 156, at 16–17]. Defendant argues that its witnesses have personal knowledge to testify about these matters under Rule 701. [Dkt. 172, at 16]. The Court **DENIES** this subsection of Plaintiffs' Motion [Dkt. 156(11)] because it cannot—at this time—determine that Defendant has no basis for the evidence. Accordingly, Defendant may offer the evidence subject to objection at trial.

### 6.    Statistics [Dkt. 156(15)]

Plaintiffs argue that Defendant should be excluded from introducing

crash-related statistics involving lift kits because it "has not disclosed any expert to

discuss statistics and it has not disclosed any statistics it plans to rely upon."

[Dkt. 156, at 19]. Defendant "does not object" so long as "it is mutual and

Plaintiffs are similarly precluded from raising such argument or testimony to the

jury." [Dkt. 172, at 18]. Accordingly, the Court **GRANTS** this subsection of

Plaintiffs' Motion [Dkt. 156(15)].

## IV.  **<u>Daubert</u> Motions**

Federal Rule of Evidence 702 governs the admissibility of expert testimony,

providing:

> A witness who is qualified as an expert by knowledge, skill,
> experience, training, or education may testify in the form of an
> opinion or otherwise if:
>
> > (a) the expert's scientific, technical, or other specialized
> >     knowledge will help the trier of fact to understand the evidence
> >     or to determine a fact in issue;
> >
> > (b) the testimony is based on sufficient facts or data;
> >
> > (c) the testimony is the product of reliable principles and
> >     methods; and
> >
> > (d) the expert has reliably applied the principles and methods to
> >     the facts of the case.

FED. R. EVID. 702(b).

Rule 702 further "requires the trial court 'to act as a gatekeeper to [e]nsure that speculative and unreliable opinions do not reach the jury.'" Williams v. Mosaic Fertilizer, LLC, 889 F.3d 1239, 1244 (11th Cir. 2018) (quoting McCain v. Metabolife Int'l, Inc., 401 F.3d 1233, 1237 (11th Cir. 2005)). Thus, the trial court must conduct its own assessment of "'whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.'" Id. at 1244–45 (quoting Daubert v. Merrell Dow Pharms., Inc., 113 S. Ct. 2786, 2796 (1993)). Still, the trial court has "considerable leeway in deciding how to go about determining whether the particular expert testimony is reliable," and the decision is ultimately discretionary. Id. (citing Kumho Tire Co. v. Carmichael, 119 S. Ct. 1167 (1999)).

## A.    Plaintiffs' Motion to Exclude – Crash Test [Dkt. 115]

Plaintiffs argue that Defendant's crash test should be excluded because: (1) it featured more than five additional inches of lateral offset between the vehicles, allegedly due to the lack of a marker pin; (2) the Ford Escape used during the crash test did not have a sunroof, unlike the Brysons' Escape; (3) the tested Escape lacked cargo present in the Brysons' Escape; and (4) Defendant's crash test

did not account for pre-impact braking. [Dkt. 115, at 10–20]. Plaintiffs emphasize that crash tests used to replicate accidents "'must be so nearly the same in substantial particulars as to afford a fair comparison in respect to the particular issue to which the test is directed.'" [Id. at 11–12 (quoting Burchfield v. CSX Transp., Inc., 636 F.3d 1330, 1336–37 (11th Cir. 2011))]. If not excluded on Daubert grounds, Plaintiffs seek to exclude under Rule 403. [Id. at 21–22].

In response, Defendant argues its crash test was sufficiently similar to the Brysons' incident. [Dkt. 127, at 7–8]. Specifically, Defendant emphasizes that Plaintiffs' crash simulations used many of the same variables as Defendant's crash test, including: (1) a similar offset; (2) no sunroof; (3) no cargo; (4) no pre-impact braking; and (5) a similar speed. [Id. at 8–22]. It further argues that Plaintiffs may address any alleged deficiencies on cross-examination. [Id. at 22–24]. Likewise, Defendant argues that the probative nature of the crash test outweighs any prejudice, confusion, or misleading effect. [Id. at 24–25].

In their Reply, Plaintiffs reiterate that admitting the crash test would constitute reversible error under Burchfield because Defendant's crash test introduces too many confounding variables. [Dkt. 131, at 2]. Burchfield's substantial similarity inquiry—much like the inquiry previously discussed for prior similar accidents—is used "[t]o avoid unfair prejudice and confusion of the

issues." McHale v. Crown Equip. Corp., 2022 WL 4350702, at *2 (11th Cir. Sept. 20, 2022) (citing Burchfield, 636 F.3d at 1336). Because the Parties have agreed to a bench trial, the "weighing of probative value against prejudice" "has no logical application." Gulf States Utils. Co., 635 F.2d at 519. Thus, Plaintiffs may address the differences between Defendant's crash test and the actual incident during cross-examination. The Court accordingly **DENIES** Plaintiffs' Motion [Dkt. 115].

### B.   Defendant's Motion to Exclude – Buchner Expert Testimony [Dkt. 137]

Defendant argues that any evidence elicited by Dr. Buchner that is "(1) based on his mathematical 'crush analysis;' (2) related to his computerized HVE simulations; [or] (3) [relates to Defendant]'s test crash . . . should be excluded." [Dkt. 137, at 1]. Defendant argues (1) the methods Dr. Buchner used are generally unreliable; (2) the simulations were not substantially similar to the Brysons' incident; and (3) it would be more prejudicial than probative to allow Dr. Buchner's testimony. [Id. at 12–23]. In their Response, Plaintiffs argue there is a sufficient basis for Mr. Buchner's methods, tests, and resulting testimony. [Dkt. 182, at 2–4]. During the Pretrial Conference, the Parties further argued about the reliability of Mr. Buchner's mathematical calculations and simulations.

At this time, the Court is not convinced that Mr. Buchner's methods, tests, and resulting testimony lack the requisite foundation for use at trial. Accordingly, the Court **DENIES** Defendant's Motion [Dkt. 137].

### C.    Defendant's Motion to Exclude – Roche Expert Testimony [Dkt. 138]

Defendant argues that Mr. Roche should be excluded from testifying about (1) the subject matter of this case; (2) Defendant's failure to warn; (3) possible alternative designs of Defendant's lift kit; (4) Ford's testing; and (5) certain details of Defendant's crash test (i.e., offset, cargo, and the lack of a sunroof). [Dkt. 138, at 7–18]. While Defendant seeks to exclude Mr. Roche entirely under Rule 702, it alternatively argues that his testimony should be excluded under Rule 403. [Id.].

Here, the Court agrees with Plaintiffs that Mr. Roche is qualified as an expert. [See Dkt. 183, at 2–3 (establishing Mr. Roche's qualifications as an expert)]. As previously discussed, any Rule 403-based arguments are ameliorated by the Parties' consent to a bench trial. Gulf States Utils. Co., 635 F.2d at 519. The Court accordingly **DENIES** Defendant's Motion [Dkt. 138].

### D.    Defendant's Motion to Exclude – Lewis Expert Testimony [Dkt. 139]

Defendant argues that Mr. Lewis (1) is unqualified to discuss relevant issues because he is a biomechanical engineer rather than an accident reconstruction

expert and (2) should not be allowed to introduce evidence from prior lawsuits involving Defendant's lift kits. [Dkt. 139, at 3–5]. In their Response, Plaintiffs argue that Mr. Lewis is qualified as an expert. [Dkt. 184, at 9–11]. Plaintiffs further argue several grounds for allowing Mr. Lewis to testify about the prior lawsuits. [Id. at 11–16].

The Court agrees with Plaintiffs that Mr. Lewis is qualified to testify as an expert in this case. The Court will also defer ruling on Mr. Lewis's capacity to testify as to the prior lawsuits because the Parties have raised that issue in several other Motions [Dkt. 118; Dkt. 143; Dkt. 155]. Accordingly, the Court **DENIES** Defendant's Motion [Dkt. 139].

### E.    Plaintiffs' Motion to Exclude – Gwin Expert Testimony [Dkt. 147]

Plaintiffs argue that Dr. Gwin should be excluded from (1) testifying about C.Z.B.'s fatal injuries based upon Defendant's crash test; and (2) opining that C.Z.B.'s death occurred due to contact between his head and the top of his car seat. [Dkt. 147, at 3]. First, Plaintiffs argue that Dr. Gwin should not rely upon Defendant's allegedly unreliable crash test to form her opinions, and in the alternative, Plaintiffs argue that Dr. Gwin cannot give her opinion based upon her visual observations of Defendant's crash test. [Id. at 11–14]. Second, Plaintiffs argue that Dr. Gwin did not have a valid basis for concluding that C.Z.B.'s fatal

20

injury occurred when his head collided with the top of his car seat. [Id. at 17–18].

Defendant emphasizes Dr. Gwin's qualifications and methods supporting her

opinions, arguing Dr. Gwin (1) has extensive experience in crash-related injuries;

and (2) performed an extensive Injury Causation Analysis—a scientific

examination of a vehicular collision aimed at identifying injury causation.

[Dkt. 166, at 5–6].

The Court finds that Dr. Gwin is sufficiently qualified as an expert. Further,

Dr. Gwin's opinions are based upon a scientific evaluation of the crash, which may

be challenged by Plaintiffs on cross-examination. Doe v. Gwinnett Cnty. Sch.

Dist., 2021 WL 12298920, at *4 (N.D. Ga. June 11, 2021) ("Issues of accuracy are

best resolved through cross-examination and the adversarial process."). The Court

accordingly **DENIES** Plaintiffs' Motion [Dkt. 147].

### F.   Plaintiffs' Motion to Exclude – Grimes Expert Testimony [Dkt. 150]

Plaintiffs argue Defendant should be prevented from introducing

Mr. Grimes's opinions relating to (1) any information based upon Defendant's

crash test; and (2) the impact of cargo in accounting for seat deformation and crash

velocity. [Dkt. 150, at 1–2]. First, Plaintiffs argue that Mr. Grimes cannot elicit

opinions based upon Defendant's crash test because the crash test is inadmissible.

[Id. at 11]. Second, Plaintiffs argue that Mr. Grimes cannot opine that the presence

of cargo would have changed seat deformation or crash velocity in Defendant's crash test. [Id. at 12–14].

In response, Defendant defends its crash test and asserts that Mr. Grimes's opinions relating to differences in seat deformation and crash velocity are sufficiently supported. [Dkt. 167, at 5–14]. Specifically, Defendant contends that any issues related to Mr. Grimes's opinions can be addressed during cross-examination. [Id. at 10–11].

The Court **DENIES** Plaintiffs' Motion [Dkt. 150] because Plaintiffs will be provided an opportunity to cross-examine Mr. Grimes during the Court's bench trial. As discussed earlier, this ruling does not prevent Plaintiffs from challenging this evidence at trial.

## G.  Plaintiffs' Motion to Exclude – Pascarella Expert Testimony [Dkt. 151]

Plaintiffs argue that Defendant should be excluded from producing Mr. Pascarella's expert testimony on Ford's awareness of lift kits installed on Ford vehicles. [Dkt. 151, at 4–5]. Plaintiffs emphasize that Mr. Pascarella was not part of the F-250 design team but was rather employed as an engineer to help Ford with lawsuit-prone designs. [Id. at 2–4]. Also, Plaintiffs point to an alleged lack of evidence from which Mr. Pascarella bases his opinions. [Id.]. Plaintiffs further argue Mr. Pascarella is not qualified to testify about Ford's intent to include a

warning against installing lift kits in the Ford ownership manual. [Id. at 13–16].

Last, Plaintiffs argue the testimony should be excluded under Rule 403. [Id. at 17].

In its Response, Defendant emphasizes that Plaintiffs chose not to depose

Mr. Pascarella and instead cite to former deposition answers he has given

regarding different cases and unrelated third parties. [Dkt. 168, at 2]. Further,

Defendant argues that Mr. Pascarella has shown the requisite background to

qualify as an expert—or at a minimum, as a lay witness—to testify because he

worked at Ford. [Id. at 3–5].

The Court recognizes that Mr. Pascarella likely has personal knowledge of

several topics Plaintiffs' Motion seeks to exclude. Thus, the Court **DENIES**

Plaintiffs' Motion [Dkt. 151].

### H.   Plaintiffs' Motion to Exclude – Crosby Expert Testimony [Dkt. 152]

Plaintiffs argue that Defendant should be prohibited from introducing Mr.

Crosby's expert testimony because it is based on a crash test that "eyeballed" the

exact offset between the crash-tested vehicles rather than using a marker pin. [Dkt.

152, at 1–3]. Defendant emphasizes the Motion is reminiscent of Plaintiffs' Motion

to exclude the underlying crash test [Dkt. 115] and does not persuasively

undermine Mr. Crosby's personal qualification as an expert. [Dkt. 165, at 1–2].

The Court agrees and accordingly **DENIES** Plaintiffs' Motion [Dkt. 152].

I.     **Plaintiffs' Motion to Exclude – Expert Testimony on Defect [Dkt. 153]**

Plaintiffs argue that Defendant should be excluded from offering any expert testimony on "defectiveness" because (1) Defendant has not disclosed experts on this issue and (2) "none of [Defendant's experts] have the necessary qualifications to offer opinion testimony about whether Defendant's lift kit was defective." [Dkt. 153, at 2]. Defendant argues this Motion is overbroad and vague because the "defect" issue depends upon whether Defendant's lift kit caused significant intrusion into the Brysons' vehicle—a matter that Defendant's experts were called to discuss. [Dkt. 169, at 1]. The Court agrees with Defendant and accordingly **DENIES** Plaintiffs' Motion [Dkt. 153] for a lack of specificity.

V.     **Motions to Strike for Untimeliness**

"The Federal Rules of Civil Procedure provide that a trial court may set a deadline for expert disclosures." Corwin v. Walt Disney Co., 475 F.3d 1239, 1252 (11th Cir. 2007) (citing FED. R. CIV. P. 26(a)(2)(C)). A party may be prohibited from using information not properly disclosed as required by Federal Rule of Civil Procedure 26 "unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). "[A] supplemental expert report may be excluded if a party fails to file it prior to the deadline imposed." Corwin, 475 F.3d at 1252 (citing Williamson Oil Co. v. Philip Morris USA, 346 F.3d 1287, 1323 (11th Cir. 2003)).

24

Consistent with the law, the Court's Local Rules state that the use of an expert witness should be designated "sufficiently early in the discovery period" and "[a]ny party who does not comply with the [required timeline for disclosure] shall not be permitted to offer the testimony of the party's expert, unless expressly authorized by court order based upon a showing that the failure to comply was justified." LR 26.2(C).

### A. Plaintiffs' Motion to Strike – "Untimely" Grimes Report [Dkt. 116]

Plaintiffs argue that the November 26, 2024 Grimes Report ("Grimes Report") should be struck for violating the Court's Scheduling Order [Dkt. 76], the Federal Rules of Civil Procedure, and the Local Rules. [Dkt. 116, at 1]. Plaintiffs argue the Grimes Report should be struck for two reasons. First, Plaintiffs argue there was no "substantial justification" for Defendant's late disclosure. [Id. at 10]. Second, Plaintiffs argue that the Grimes report is not a "supplemental" report under Federal Rule of Civil Procedure 26(e)(1)(A). [Id. at 13]. Plaintiffs emphasize that the Grimes Report does not redress any incompleteness or inaccuracy, but rather resembles a rebuttal. [Id. at 13–14].

Pursuant to Federal Rule of Civil Procedure 37(c)(1), Plaintiffs ask the Court to strike the Grimes Report and prevent Mr. Grimes from testifying about the conclusions contained in the report. [Id.]. Alternatively, Plaintiffs ask the Court

time to (1) obtain discovery on the new materials; (2) depose Mr. Grimes on his new work; (3) permit their own experts time to disclose opinions on the new material; and (4) re-file their Motion to exclude Defendant's crash test [Dkt. 115] if necessary to address Mr. Grimes's new opinions. [Id. at 4–5].

In its Response, Defendant argues that its conduct does not justify striking the Grimes Report—rather, much of the blame allegedly falls on Plaintiffs. [Dkt. 126, at 2]. First, Defendant emphasizes that the delay was attributable to Plaintiffs' expert's late disclosure. [Id. at 3–6]. Second, Defendant argues that it disclosed the necessary supporting materials pursuant to Federal Rule of Civil Procedure 26(a)(2)(B) and that it will provide—consistent with the Parties' usual course of dealing—any other requested supporting materials. [Id. at 12]. Third, Defendant emphasizes that Plaintiffs waited two months—and just before the Pretrial Order was due—to raise this issue with the Court. [Id. at 13]. Fourth, Defendant argues (1) Plaintiffs should not be surprised by Mr. Grimes's opinions; (2) any surprise can be cured through discovery requests; (3) the trial schedule will not be disrupted because no trial date has been set; and (4) Defendant did not exhibit bad faith by disclosing the report late. [Id. at 18]. Defendant further emphasizes that it is willing to conduct further discovery as needed. [Id. at 19].

In their Reply, Plaintiffs identify several contentions with Defendant's Response. [Dkt. 130]. First, Plaintiffs argue that the Court's Scheduling Order [Dkt. 76] stated that any rebuttal expert witnesses had to be disclosed by June 17, 2024, and all rebuttal expert witnesses had to be deposed by July 15, 2024. [Id. at 5 (citing Dkt. 76, at 2)]. Second, Plaintiffs argue that Defendant did not adequately address the contention that its report is a sur-rebuttal. [Id. at 6–7]. Third, Plaintiffs argue that the Court should exclude the Grimes Report because there was no substantial justification for its lateness, and the late disclosure was not otherwise harmless. [Id. at 8].

The Court agrees with Plaintiffs. A party may issue a "supplemental" report if the party learns that an earlier report or deposition was "incomplete or inaccurate." FED. R. CIV. P. 26(e)(1)(A). "Rule 26(e) . . . is not a device to allow a party's expert to engage in additional work, or to annul opinions or to offer new ones to perfect a litigating strategy." Coward v. Forestar Realty, Inc., 282 F. Supp. 3d 1317, 1329 (N.D. Ga. 2017) (internal citation omitted). The Grimes Report was not an attempt to fix an earlier report, as it produced new opinions. Accordingly, the Court finds the Grimes Report not to be a supplemental report under the Federal Rules of Civil Procedure.

Further, the Grimes Report's prolonged delay necessitates its exclusion. Mr. Grimes issued his second report six months after the discovery deadline and six days after the Court's November 20, 2024 Order [Dkt. 109] denying Defendant's Motion for Summary Judgment [Dkt. 95]. Admitting the report under these circumstances would utterly disregard the Court's Scheduling Order deadlines. The Court thus **GRANTS** Plaintiffs' Motion [Dkt. 116].

## B. Defendant's Motion to Strike – "Untimely" Lewis Disclosures [Dkt. 118]

Defendant argues that Mr. Lewis's March 15, 2024 Report ("Lewis Report") was untimely because it was issued nearly six months after Plaintiffs' expert disclosure deadline. [Dkt. 118; see Dkt. 63, at ¶ 2 ("Plaintiff's expert witnesses must be disclosed to Defendant no later than October 16, 2023.")]. In Mr. Lewis's initial report, he does not mention prior lawsuits against Defendant. [Dkt. 118, at 4]. However, the Lewis Report references (1) two prior lawsuits regarding Defendant's lift kits; and (2) "testing data for two sets of testing" from those lawsuits. [Id. at 6]. Defendant emphasizes that the correction is attributable to Plaintiffs' realization that they made a mistake by not including this information earlier—a contention that Plaintiffs fail to rebut. [Id. at 5].

In their Response, Plaintiffs argue the former lawsuits against Defendant should be admissible but provide no justification for the delay. [See Dkt. 128, at 5

n.8 ("The omission from Mr. Lewis's initial report of the Bacho and Mendoza cases was entirely an oversight of Plaintiffs' counsel. It was not 'substantially justified' under the Rules, it was simply a mistake.")]. Plaintiffs emphasize that they "disclosed Mr. Lewis's supplemental report on March 15, 2024, as soon as the error of omitting Mr. Lewis's opinions about the [prior] cases was discovered." [Id. at 8].

In its Reply, Defendant reiterates its argument that the Lewis Report was not a supplemental report because it offers new opinions to "'perfect a litigating strategy.'" [Dkt. 133, at 3 (quoting Cochran v. Brinkmann Corp., 2009 WL 4823858, at *5 (N.D. Ga. Dec. 9, 2009))]. In doing so, Defendant argues Plaintiffs seek to "'cover failures of omission because the expert did an adequate or incomplete preparation.'" [Id. at 3–4 (quoting Culliver v. BP EXploration & Prod., Inc., 2023 WL 11261158, at *6 (N.D. Fla. Sept. 19, 2023))].

The Court agrees with Defendant because the Lewis Report referenced entirely new information that, as Plaintiffs concede, could have been disclosed earlier. Further, the Lewis Report does more than rectify an incomplete or inaccurate prior report, it introduces a new subject of testimony—prior lawsuits against Defendant—that helps perfect Plaintiffs' litigation strategy. This, however,

is an improper basis to deviate from the Court's scheduling order. Accordingly, the Court **GRANTS** Defendant's Motion [Dkt. 118].

### C.     Defendant's Motion to Strike – "Untimely" Buchner Disclosures [Dkt. 119]

Defendant argues that Mr. Buchner's "untimely" May 8, 2024 Amended Report ("Amended Report") and related simulations should be excluded. [Dkt. 119]. On October 12, 2023, Mr. Buchner issued his initial report regarding his mathematical calculations and subsequent crash simulations. [Id. at 2]. In his report, he relies on simulated crash tests that require the inputting of substantial data into a program. [Id. at 3]. The program then uses the data to perform iterative simulations of a vehicle accident. [Id. at 3–4]. However, Mr. Buchner failed to save the data from the initial simulations. [Id.]. This failure, Defendant argues, renders his initial report unverifiable. [Id.].

Considering his inability to produce the underlying data for his first report, Mr. Buchner produced a second round of simulations, reflected in his Amended Report. [Id. at 3, 6]. While the results between the two reports are nearly identical, the input data is slightly different. [Id. at 7–8]. Defendant argues that Mr. Buchner's Amended Report and related simulations should be excluded as an abuse of Federal Rule of Civil Procedure 26(E)—namely, by merely bolstering an

30

already-defective report. [Id. at 12–13]. It likewise argues that the Amended

Report was neither justified nor harmless. [Id. at 13–14].

In their Response, Plaintiffs first emphasize that the computer simulations

were used to confirm Mr. Buchner's mathematical calculations regarding the

crash—those which have not changed since his initial report. [Dkt. 125]. Further,

Plaintiffs reiterate that the input data and results are nearly identical. [Id. at 8–10].

Even if the new report was untimely, Plaintiffs state that it was substantially

justified and harmless to Defendant. [Id. at 17–20].

The Court agrees with Plaintiffs because the Mr. Buchner's Amended

Report accomplished the exact purpose for a supplemental report—it rectified his

prior report by providing input data for his computer simulations that were

technically unavailable (albeit, by his own mistake) at the time of his original

report. Accordingly, the Court **DENIES** Defendant's Motion [Dkt. 119].

**SO ORDERED** this 31st day of March, 2025.

_____
**RICHARD W. STORY**
United States District Judge

31